THE HONORABLE BENJAMIN H. SETTLE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD BRINKMEYER

Petitioner,

v.

WASHINGTON STATE LIQUOR AND
CANNABIS BOARD,

Respondent.

Case No. 3:20-cv-05661-BHS

**MOTION FOR PRELIMINARY INJUNCTION**

**NOTE ON MOTION CALENDAR: August 28, 2020**

**ORAL ARGUMENT REQUESTED**

MOTION FOR PRELIMINARY INJUNCTION - i
USDC No. 3:20-cv-05661-BHS

# TABLE OF CONTENTS

I.  INTRODUCTION AND RELIEF REQUESTED.................................................................1

II.  EVIDENCE RELIED UPON.........................................................................................2

III.  FACTS ...........................................................................................................................3

    A.  Washington Voters Approved Recreational Marijuana in 2012......................3

    B.  Washington Law Imposes a Durational Residency Requirement on All Licensees and True Parties of Interest to Marijuana Licenses.................................3

    C.  The LCB has Vetted and Approved Brinkmeyer as a Debt Financier for Marijuana Businesses, but Will Not Allow Him to Obtain an Equity Interest Because He is an Idaho Resident.................................................................5

    D.  Procedural History ...........................................................................................7

IV.  AUTHORITY AND ARGUMENT ..................................................................................7

    A.  Brinkmeyer is Likely to Succeed on the Merits of his Claims Because the Residency Requirements Facially Discriminate Against Nonresidents. ...........8

        1.  Privileges and Immunities under the U.S. Constitution Article IV.............................8

            a.  The Residency Requirements violate Brinkmeyer's right to pursue a livelihood and his right to travel. .......................................9

            b.  The State lacks a substantial reason for the Residency Requirements...............10

            c.  The Residency Requirements are not substantially related to a legitimate state objective. ...............................13

        2.  Dormant Commerce Clause................................................................14

        3.  Equal Protection and Privileges or Immunities Clauses of Fourteenth Amendment to U.S. Constitution ...............................................16

        4.  Due Process Clause of Fourteenth Amendment .................................18

        5.  Privileges or Immunities Clause under Washington State Constitution ..................19

        6.  The Residency Requirements in the Rules Exceed the LCB's Statutory Authority...21

    B.  Brinkmeyer Will Suffer Irreparable Harm. ...................................................22

    C.  The Equities Weigh in Brinkmeyer's Favor. .................................................23

    D.  Striking the Residency Requirements is in the Public Interest.......................23

    E.  No Bond is Required.......................................................................................24

V.  CONCLUSION ...............................................................................................................24

MOTION FOR PRELIMINARY INJUNCTION - ii
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

## TABLE OF AUTHORITIES

**Cases**

*Alliance for the Wild Rockies v. Pena*,
865 F.3d 1211 (9th Cir. 2017) ...................................................8

*Amunrud v. Bd. of Appeals*,
143 P.3d 571 (Wash. 2006) ....................................................18

*Attorney Gen. of New York v. Soto-Lopez*,
476 U.S. 898 (1986) ...................................................... 12, 17

*Barnard v. Thorstenn*,
489 U.S. 546 (1989) ................................................. 9, 13, 14

*Bostain v. Food Exp., Inc.*,
153 P.3d 846 (Wash. 2007) ....................................................21

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*,
520 U.S. 564 (1997) ...............................................................15

*City of Redmond v. Moore*,
91 P.3d 875 (Wash. 2004) .....................................................8

*Conservation Force, Inc. v. Manning*,
301 F.3d 985 (9th Cir. 2002) ........................................ 15, 16

*Dunn v. Blumstein*,
405 U.S. 330 (1972) ..................................................... 16, 17

*Garcia v. Google, Inc.*,
786 F.3d 733 (9th Cir. 2015) .................................................8

*Giovani Carandola, Ltd. v. Bason*,
303 F.3d 507 (4th Cir. 2002) ..............................................23

*Grandpa Bud, LLC v. Chelan Cty. Washington*,
No. 2:19-CV-51-RMP, 2020 WL 2736984 (E.D. Wash. May 26, 2020) ...............................7

*Granholm v. Heald*,
544 U.S. 460 (2005) ...................................................... 12, 15

*Gulch Gaming, Inc. v. State of S.D.*,
781 F. Supp. 621 (D.S.D. 1991).................................. 15, 18, 19

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

*Hicklin v. Orbeck*,
437 U.S. 518 (1978) ............................................................................................. 12

*Hughes v. Oklahoma*,
441 U.S. 322 (1979) ............................................................................................. 15

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
232 F.3d 979 (9th Cir. 2000) ............................................................................... 24

*Laborers Local Union No. 374 v. Felton Const. Co.*,
654 P.2d 67 (Wash. 1982) ............................................................................... 9, 12

*Left Coast Ventures Inc. v. Bill's Nursery Inc.*,
No. C19-1297 MJP, 2019 WL 6683518 (W.D. Wash. Dec. 6, 2019) .................... 7

*Lenander v. Washington State Dep't of Ret. Sys.*,
377 P.3d 199 (Wash. 2016) ................................................................................. 21

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ......................................................................... 22, 23

*Organo Gold Int'l, Inc. v. Ventura*,
No. C16-487RAJ, 2016 WL 1756636 (W.D. Wash. May 3, 2016) ...................... 22

*Ralph v. City of Wenatchee*,
209 P.2d 270 (Wash. 1949) ........................................................................... 19, 20

*Reitz v. Kipper*,
674 F. Supp. 2d 1194 (D. Nev. 2009) ................................................................. 10

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
944 F.2d 597 (9th Cir. 1991) ............................................................................... 23

*Saenz v. Roe*,
526 U.S. 489 (1999) ............................................................................... 10, 12, 17

*Schroeder v. Weighall*,
316 P.3d 482 (Wash. 2014) ........................................................................... 19, 20

*Silver v. Garcia*,
760 F.2d 33 (1st Cir. 1985) ............................................................................ 11, 12

*Smith v. D.C.*,
387 F. Supp. 3d 8 (D.D.C. 2019) ........................................................................ 17

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

*State v. Vance*,
70 P. 34 (Wash. 1902) ...............................................................................19

*State v. Villela*,
450 P.3d 170 (Wash. 2019) ..........................................................................8

*Supreme Court of New Hampshire v. Piper*,
470 U.S. 274 (1985) ........................................................................ 9, 10, 11

*Supreme Court of Virginia v. Friedman*,
487 U.S. 59 (1988) ....................................................................................8, 9

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
139 S. Ct. 2449 (2019) .........................................................................*passim*

*Toomer v. Witsell*,
334 U.S. 385 (1948) ...................................................................... 8, 9, 10, 11

*Tri-M Grp., LLC v. Sharp*,
638 F.3d 406 (3d Cir. 2011) .......................................................................15

*United Bldg. & Constr. Trades Council v. Mayor of Camden*,
465 U.S. 208 (1984) .....................................................................................9

*Washington State Hosp. Ass'n v. Washington State Dep't of Health*,
353 P.3d 1285 (Wash. 2015) .......................................................................21

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) .........................................................................................8

**Statutes**

28 U.S.C §1447(c) ...............................................................................................7

RCW 34.05.570(2)(c) ........................................................................................21

RCW 69.50.331(1)(b) ................................................................................ 2, 4, 22

RCW 69.50. ..........................................................................................................3

**Other Authorities**

WAC 314-55-020(10) .................................................................................. 2, 4, 5

WAC 314-55-035 ........................................................................................ 2, 4, 5

WAC 314-55-083(4) .........................................................................................21

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

## I.   INTRODUCTION AND RELIEF REQUESTED

A fundamental purpose of the United States Constitution was to create interstate harmony and national unity, particularly in economic matters. Multiple provisions of the Constitution guarantee that residents of any state can participate in the economies of other states without obstruction. In a direct violation of these constitutional principles, the State of Washington created a multi-billion dollar market, but limits ownership in that market to Washington residents. Not only that, but once a person obtains an ownership share in that market, they can never reside anywhere but Washington or the State will eliminate their ownership.

This type of express economic protectionism and discrimination has always been anathema to the Constitution. That the market at issue involves the licensed sale of marijuana changes nothing. Washington's laws that expressly restrict investment in the marijuana industry to Washington residents violate multiple provisions of the United States and Washington State Constitutions.

Petitioner Todd Brinkmeyer, an Idaho resident, asks only for Respondent the Washington State Liquor and Cannabis Board (the "LCB" or the "State") to process his application to obtain an equity interest in a Washington marijuana retail store on equal footing as a Washington resident. The matter is urgent because Brinkmeyer's close personal friend of 25 years, Scott Atkison, is a stage IV cancer survivor and wants to make arrangements that ensure continuity of his business interests in the event his disease progresses. Such arrangements would include a partial or complete transfer of his equity interest in licensed marijuana retail stores to Brinkmeyer. Because the State has already approved Brinkmeyer's fitness to loan money to Atkison's stores, the State has performed the same rigorous criminal and financial background checks on Brinkmeyer (and his spouse) that it performs on equity owners of marijuana businesses, and the State found nothing problematic. Nevertheless, the State has confirmed that it will not approve Brinkmeyer's application to obtain Atkison's equity in the stores solely because Brinkmeyer does not live in Washington.

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

The State cannot enforce laws that limit investment opportunities to only its residents, so Brinkmeyer is likely to prevail on his facial constitutional challenges to the laws imposing the residency requirements (the "Residency Requirements").[1] In addition to the irreparable injury caused by the State violating his constitutional rights, Brinkmeyer's inability to provide peace of mind to Atkison by confirming Brinkmeyer will be allowed to take over Atkison's ownership and oversight responsibilities constitutes a separate irreparable injury. The equities weigh in Brinkmeyer's favor because the State has no interest in enforcing unconstitutional laws, and the State has already found there is nothing in Brinkmeyer's background (other than his residence) that disqualifies him from obtaining a license. Further, enjoining the enforcement of the Residency Requirements will not prevent the State from rigorously scrutinizing applicants and verifying their compliance with the plethora of other rules that the LCB imposes on equity holders—rules that, unlike the Residency Requirements, relate to public health and safety. The injunction will benefit the public by aligning Washington's marijuana laws with the Constitution. That will further benefit the public by allowing nonresidents of Washington to access its marijuana market, and thereby increase competition (which benefits consumers) and increase access to capital (which benefits existing marijuana businesses). Because Brinkmeyer can establish each element to obtain a preliminary injunction, he asks this Court to enjoin the State from enforcing the Residency Requirements.

## II.    EVIDENCE RELIED UPON

This motion relies upon the Declaration of Todd Brinkmeyer in Support of Motion for Preliminary Injunction ("Brinkmeyer Decl."), the Declaration of Scott Atkison in Support of Motion for Preliminary Injunction ("Atkison Decl."), the Declaration of Chris Masse in Support of Motion for Preliminary Injunction ("Masse Decl."), the Declaration of Andy Murphy in Support of Motion for Preliminary Injunction ("Murphy Decl."), and the Court's file.

---

[1] As described more fully below, the "Residency Requirements" are in RCW 69.50.331(1)(b), WAC 314-55-020(10), and WAC 314-55-035.

## III.    FACTS

**A.    Washington Voters Approved Recreational Marijuana in 2012.**

In 2012, the people of Washington approved Initiative Measure 502 ("I-502"), which legalized the possession and sale of marijuana for recreational purposes. In codifying I-502, the legislature affirmed the stated intent of I-502 "to stop treating adult marijuana use as a crime and try a new approach that: (1) Allows law enforcement resources to be focused on violent and property crimes; (2) Generates new state and local tax revenue for education, health care, research, and substance abuse prevention; and (3) Takes marijuana out of the hands of illegal drug organizations and brings it under a tightly regulated, state-licensed system similar to that for controlling hard alcohol." I-502 §1.[2]

The marijuana industry has been an economic powerhouse for the State of Washington. In its answer, the State admitted it has received more than $1.7 billion in excise tax and fees generated from the sale of marijuana since 2014. Dkt. No. 1, App. Ex. 7 ("Answer") ¶ 7. Public data indicates Washington's marijuana industry has yielded more than $8.4 billion in sales since 2014. Murphy Decl., Ex. A.

**B.    Washington Law Imposes a Durational Residency Requirement on All Licensees and True Parties of Interest to Marijuana Licenses.**

The LCB tightly regulates the marijuana industry, and there are hundreds of rules that marijuana businesses must follow. *See generally,* WASH. REV. CODE ("RCW") 69.50 *et seq.*; WASH. ADMIN. CODE ("WAC") 314-55 *et seq.* (collectively, the "LCB Rules"). The LCB Rules require owners of marijuana businesses to obtain licenses from the LCB. Answer. ¶ 9. The LCB Rules also include criteria applicants must satisfy to become an owner of a licensed marijuana business. *See id.* ¶ 8. Those interested in becoming a licensee must submit an application, after which the LCB investigates the applicant to verify compliance with the LCB Rules. *Id.* ¶ 9

In addition to verifying the applicant would not pose a threat to public health and safety if

---

[2] There is no residency requirement in the purportedly analogous regulatory scheme for hard alcohol.

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

given a license, the LCB also verifies that the applicant has resided in Washington for at least six months. *Id.* ¶ 10. That is because, by statute and rule, Washington law imposes a durational residency requirement on those who apply for marijuana licenses. The statutory Residency Requirement is in RCW 69.50.331(1)(b), which provides the following:

> No license of any kind may be issued to:
>
> > (i) A person under the age of twenty-one years;
> >
> > (ii) A person doing business as <u>a sole proprietor who has not lawfully resided in the state for at least six months prior to applying to receive a license;</u>
> >
> > (iii) A partnership, employee cooperative, association, nonprofit corporation, or corporation unless formed under the laws of this state, and unless all of the members thereof are qualified to obtain a license as provided in this section; or
> >
> > (iv) A person whose place of business is conducted by a manger or agent, unless the manager or agent possesses the same qualifications required of the licensee.

(Emphasis added.) Notably, this statutory Residency Requirement applies only to sole proprietorships and "members" of certain corporate entities, but the LCB expanded the Residency Requirements by administrative rule. WAC 314-55-020(10) expressly requires <u>all</u> marijuana license applicants to reside in Washington for "at least six months" before submitting their application to the LCB:

> Under RCW 69.50.331 (1)(c) [sic], <u>all applicants applying for a marijuana license must have resided in the state of Washington for at least six months prior to application for a marijuana license. All business entities</u> including, but not limited to, partnerships, employee cooperatives, associations, nonprofit corporations, corporations and limited liability companies, applying for a marijuana license <u>must be formed in Washington. All members, governors, or agents of business entities must also meet the six month residency requirement. Managers or agents who manage a licensee's place of business must also meet the six month residency requirement.</u>

(Emphasis added.) The LCB further expanded the Residency Requirements in WAC 314-55-035,

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

which requires all true parties of interest ("TPIs") to be applicants for a marijuana license. TPIs, which include shareholders, members, managers, partners, officers, stockholders, those who exercise control over a marijuana business, and any of their spouses must meet the residency requirement in WAC 314-55-020(10). Only approved licensees and TPIs (and thus Washington residents) are entitled to receive a share of the profits from a marijuana business operating in Washington. WAC 314-55-035.

Moreover, through policy and practice, the LCB requires all applicants it approves as a licensee or TPI to remain a Washington resident. *See* Answer ¶ 15. In other words, once a licensee obtains a license, they will forfeit their license (and their business) if they become a resident of anywhere other than Washington.

**C.    The LCB has Vetted and Approved Brinkmeyer as a Debt Financier for Marijuana Businesses, but Will Not Allow Him to Obtain an Equity Interest Because He is an Idaho Resident.**

For 25 years, Brinkmeyer has been friends with Atkison. Brinkmeyer Decl. ¶ 2; Atkison Decl. ¶ 3. Although they live just thirty minutes from each other, they reside in different states. Brinkmeyer Decl. ¶ 2. Brinkmeyer lives in Idaho, and Atkison lives in Washington. *Id.*

Atkison is fortunate to have survived for over five and one-half years with Stage IV cancer, however, his health has progressed to where it is prudent for him to plan the disposition of his estate. Atkison Decl. ¶ 5. That includes making arrangements to ensure continuity of business operations at marijuana retail stores he partially owns in Washington (the "Stores"). *Id.* Atkison cares about the team who has contributed to the Stores' success and does not wish to see his ownership sold under duress, which could put undue stress on the Stores' other owners and business operations. *Id.* He wants to make sure that he can hand his ownership over to someone who he trusts will do right by the other owners, the Stores, and the team members. *Id.* Indeed, the person Atkison believes to be the best for carrying on the same ownership values and principles he has brought to the Stores is Brinkmeyer. *Id.*

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

With the LCB's knowledge and approval, Brinkmeyer and Atkison already work together on the Stores. Brinkmeyer has provided business advice to Atkison and loans to the Stores. Brinkmeyer Decl. ¶ 4; Atkison Decl. ¶ 4. Indeed, the LCB approved Brinkmeyer three times as a debt financier to the Stores. Answer ¶ 20. The LCB subjects financiers of licensed marijuana businesses to the same vetting and approval process that it performs on licensees and TPIs, including rigorous criminal and financial background checks, except debt financiers like Brinkmeyer are not subject to the Residency Requirements. *See* Answer ¶¶ 19–22. Through its repeated approval of Brinkmeyer as a financier, the LCB has evidently concluded there is nothing concerning in Brinkmeyer's background. *See id.*

Despite the valued advice that Brinkmeyer has provided, the Residency Requirements prohibit Atkison from giving equity in the Stores to Brinkmeyer as compensation in the same manner that other, non-cannabis businesses are able to compensate their advisors or employees. Atkison Decl. ¶ 4. The inability to compensate advisors and employees with equity interferes with the Stores' ability to attract and retain the best talent. Atkison Decl. ¶ 4; *see also* Brinkmeyer Decl. ¶ 5.

As part of his estate planning, Atkison would like to transfer his ownership interest in the Stores to Brinkmeyer, and will do so if the LCB will allow it. Atkison Decl. ¶ 5. Brinkmeyer is willing and able to assume Atkison's interest. Brinkmeyer Decl. ¶ 6. To obtain approval for the transfer of equity, counsel for Brinkmeyer inquired with the LCB about whether it would approve him as an owner of the Stores. Masse Decl., Ex. A. On May 20, 2020, the LCB confirmed it would deny Brinkmeyer's application to be added to the Stores' license because Brinkmeyer does not comply with the Residency Requirements. *Id.* As the State has predetermined the issue, filing the change of ownership application would be futile and a waste of time and money.

Thus, while Brinkmeyer is able to invest in the Stores by providing debt financing and

receiving interest payments, the Residency Requirements prevent him from sharing in the profits of the Stores by providing equity financing or becoming an owner solely because he is not a Washington resident. *See* Answer ¶ 22. The LCB has thus concluded it is safe for the Stores to take Brinkmeyer's money, but against public policy for Brinkmeyer to become an owner of the businesses he provides advice for and invests in.

**D.      Procedural History**

On June 8, 2020, Brinkmeyer filed this lawsuit in Thurston County Superior Court for the State of Washington. Dkt. No. 1-2. The LCB filed its answer on June 29, 2020. Dkt. No. 1, App. Ex. 7. The LCB then removed the case to this Court on July 7, 2020.[3] Dkt. No. 1. Brinkmeyer brings this motion early in the case because the uncertainty regarding what will happen to the Stores after Atkison passes causes Atkison distress, and it would give him peace of mind if he knew that the LCB would allow Brinkmeyer to take over his ownership and oversight responsibility in the Stores. *See* Atkison Decl. ¶ 6. Brinkmeyer seeks to provide comfort to his friend and protect his potential interest in the Stores. Brinkmeyer Decl. ¶¶ 6, 8.

## IV.      AUTHORITY AND ARGUMENT

A party seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the

---

[3] This case seeks to enjoin the LCB from enforcing statutory and regulatory language that facially discriminates against nonresidents. Accordingly, this case does not involve the enforcement of a contract that may be illegal under federal law, which distinguishes this case from others where federal district courts declined to exercise their jurisdiction and resolve disputes involving the marijuana industry on their merits. *See, e.g., Left Coast Ventures Inc. v. Bill's Nursery Inc.*, No. C19-1297 MJP, 2019 WL 6683518 (W.D. Wash. Dec. 6, 2019). Indeed, this case is more similar to *Grandpa Bud, LLC v. Chelan Cty. Washington*, No. 2:19-CV-51-RMP, 2020 WL 2736984 (E.D. Wash. May 26, 2020), where the petitioner challenged the constitutionality of a county law restricting the marijuana industry in Washington State court, and the county removed the case to federal court. The court expressed no concern regarding the propriety of ruling on the constitutionality of those laws and decided the case on its merits. *Id.* Because this case involves the constitutionality of state laws, and the LCB removed this case from exercising its jurisdiction State court, Brinkmeyer asks the Court to exercise its jurisdiction and decide this case on the merits. Alternatively, should the Court conclude this case's connection to Washington's marijuana industry renders it inappropriate for a decision on the merits in federal court, Brinkmeyer asks the Court to abstain from exercising its jurisdiction and remand this action to state court for the same reasons the court identified in *Left Coast Ventures*, 2019 WL 6683518, at *2. Otherwise, Brinkmeyer will be denied a forum that will issue a timely decision on his important constitutional challenges to Washington law. To the extent the Court construes this request in the alternative as a motion to remand, Brinkmeyer has made it within the 30-day deadline imposed by 28 U.S.C §1447(c).

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

balance of the equities tips in its favor, and that an injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first *Winter* factor—likelihood of success—is often considered the most important. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). But a plaintiff can still obtain a preliminary injunction when success on the merits is uncertain if there are "serious questions" going to the merits, "the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). Noting the availability of this "sliding scale" approach does not undermine the strong showing Brinkmeyer makes under each element, including his likelihood of success.

**A.  Brinkmeyer is Likely to Succeed on the Merits of his Claims Because the Residency Requirements Facially Discriminate Against Nonresidents.**

Brinkmeyer seeks a declaration under Washington's Uniform Declaratory Judgment Act that the Residency Requirements are invalid for being facially unconstitutional and exceeding statutory authority. Brinkmeyer bears the burden of proving the Residency Requirements are invalid. *State v. Villela*, 450 P.3d 170, 173 (Wash. 2019). Brinkmeyer is likely to succeed in his challenges because the facial discrimination embedded in the text of the Residency Requirements means there is no set of circumstances where the laws as currently written can be constitutionally applied. *See City of Redmond v. Moore*, 91 P.3d 875, 878 (Wash. 2004).

**1.  Privileges and Immunities under the U.S. Constitution Article IV**

The Privileges and Immunities Clause of Article IV provides that the "Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."[4] "The primary purpose of the Privileges and Immunities Clause was to help fuse into one Nation a collection of independent, sovereign States." *Toomer v. Witsell*, 334 U.S. 385, 395 (1948). The

---

[4] "While the Privileges and Immunities Clause cites the term 'Citizens,' for analytic purposes citizenship and residency are essentially interchangeable." *Supreme Court of Virginia v. Friedman,* 487 U.S. 59, 64 (1988).

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

clause was "intended to create a national economic union," *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 280 (1985), and was "designed to place the citizens of each State upon the same footing with citizens of other States, so far as the advantages resulting from citizenship in those States are concerned." *Friedman*, 487 U.S. at 64 (1988) (internal quotation omitted). The Privileges and Immunities Clause of Article IV bars "discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other States." *Toomer*, 334 U.S. at 396.

Courts apply a two-step test to determine whether a residency requirement violates the Privileges and Immunities Clause by discriminating against nonresidents. *Barnard v. Thorstenn*, 489 U.S. 546, 552–53 (1989). First, the court must determine whether the alleged discrimination bears upon a fundamental right that is protected by the Privileges and Immunities Clause. *United Bldg. & Constr. Trades Council v. Mayor of Camden*, 465 U.S. 208, 218 (1984). Second, if the challenged law does deprive nonresidents of a protected privilege or immunity, it is invalid unless "(i) there is a substantial reason for the difference in treatment; and (ii) the discrimination practiced against nonresidents bears a substantial relationship to the State's objective." *Barnard*, 489 U.S. at 552–53 (internal quotation and citation omitted).

### a.   The Residency Requirements violate Brinkmeyer's right to pursue a livelihood and his right to travel.

The Residency Requirements violate two privileges and immunities protected by Article IV: the right to pursue a livelihood and the right to travel. It is firmly established that the Privileges and Immunities Clause protects a nonresident's right to pursue a livelihood in a State other than their own. *Laborers Local Union No. 374 v. Felton Const. Co.*, 654 P.2d 67, 69 (Wash. 1982) (citing cases); *see also United Bldg.*, 465 U.S. at 219 ("[T]he pursuit of a common calling is one of the most fundamental of those privileges protected by the Clause… Many, if not most, of our cases expounding the Privileges and Immunities Clause have dealt with this basic and essential activity."). Because the Residency Requirements impose a six-month waiting

period before nonresidents can qualify for a marijuana license, and the LCB interprets these rules to require continuing Washington residency of licensees, the Residency Requirements infringe on the right to pursue a livelihood. *Toomer*, 334 U.S. at 396 ("[I]t was long ago decided that one of the privileges which the clause guarantees to citizens of State A is that of doing business in State B on terms of substantial equality with the citizens of that State.").

The right to travel is also a fundamental right protected, in part, by the Privileges and Immunities Clauses in Article IV. *Saenz v. Roe,* 526 U.S. 489, 500–01 (1999). The right to travel, as protected by Article IV, includes the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in a second state. *Id.* at 500. In protecting the right to travel, the Supreme Court has struck residency requirements related to obtaining employment, medical services, and licensing restrictions for commercial activity. *Saenz*, 526 U.S. at 502 (citing cases). Thus, the LCB's outright ban on nonresidents from obtaining a license for commercial activity in Washington implicates the right to travel under the Privileges and Immunities Clause.

> **b.** **The State lacks a substantial reason for the Residency Requirements.**

Because the Residency Requirements violate two of Brinkmeyer's rights protected by the Privileges and Immunities Clause, the State has the burden of showing a substantial reason for the discrimination against nonresidents that bears a substantial relationship to the State's objective. *See, e.g., Piper*, 470 U.S. at 284. A substantial reason for discrimination does not exist "unless there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." *Reitz v. Kipper*, 674 F. Supp. 2d 1194, 1201 (D. Nev. 2009) (quoting *Toomer,* 334 U.S. at 398). Thus, the State must prove that nonresidents are somehow more "evil" than residents, and its reasons for imposing the Residency Requirements mitigate that evil. It cannot, so the Residency Requirements violate the Privileges and Immunities Clause.

To be sure, there is nothing inherently problematic about nonresidents, and the First

Circuit has cautioned against assuming residency disqualifies a person from receiving a commercial license. In *Silver v. Garcia*, 760 F.2d 33 (1st Cir. 1985), the First Circuit struck a residency requirement that Puerto Rico imposed on insurance professionals for violating the Privileges and Immunities Clause. Puerto Rico attempted to justify its residency requirement by claiming it was more difficult to investigate the trustworthiness and competence of nonresidents. *Id.* at 38. The First Circuit recognized that "[t]here is no evidence that nonresidents are inherently less trustworthy or less competent insurance professionals than Puerto Rican residents, nor may we assume that this is so." *Id.* at 38; *see also Piper*, 470 U.S. at 285 (refusing to assume nonresident lawyers were less competent than resident lawyers). The same is true in Washington, and the State has not identified why nonresidents are inherently more problematic than residents when it comes to owning a share of a marijuana business.

Instead, the LCB advanced only four justifications for the Residency Requirements. In its Answer, the LCB stated "the residency requirements are important for several reasons, including, but not limited to, creating business opportunities and jobs for Washingtonians, improving public safety due to easier enforcement of relevant cannabis laws within the State, respecting the federal government's concerns regarding the federal illegality of cannabis, and respecting other states, such as Idaho, who chose not to legalize marijuana." Answer ¶ 18. None of these justifications render the facial discrimination in the Residency Requirements constitutional.

The first reason the LCB relies upon—express economic protectionism in favor of Washington residents—is exactly the kind of discrimination that the Privileges and Immunities Clause prohibits. *See, e.g., Toomer*, 334 U.S. at 395. In striking a durational residency requirement to obtain welfare benefits, the Supreme Court noted that "our cases have not identified any acceptable reason for qualifying the protection afforded by the Clause for the citizen of State A who ventures into State B to settle there and establish a home. Permissible justifications for discrimination between residents and nonresidents are simply inapplicable to a

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

nonresident's exercise of the right to move into another State and become a resident of that State." *Saenz*, 526 U.S. at 501–02 (internal quotations and citations omitted); *see also Attorney Gen. of New York v. Soto-Lopez*, 476 U.S. 898, 904 (1986) ("[T]he right to migrate protects residents of a State from being disadvantaged, or from being treated differently, simply because of the timing of their migration, from other similarly situated residents."); *Laborers Local Union No. 374 v. Felton Const. Co.*, 654 P.2d 67, 70 (Wash. 1982) (rejecting improving local economies as a justification for a local hiring requirement as "an example of the highly protectionist economic policies the privileges and immunities clause was designed to protect against."); *Hicklin v. Orbeck,* 437 U.S. 518 (1978) (striking a statute giving hiring preferences to state residents for violating the Privileges and Immunities Clause). The State's admitted economic protectionism is a basis to strike the Residency Requirements, not a substantial reason to uphold them.

The Supreme Court has also rejected the rationale underlying the LCB's second reason for the Residency Requirements. In striking Tennessee's durational residency requirement for liquor store owners, the Court found that residency was not needed for Tennessee to maintain oversight of liquor store licensees because the stores were located in state, and the state's ability to revoke licenses provided strong incentives to comply with state law. *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2475 (2019); *see also Granholm v. Heald*, 544 U.S. 460, 490 (2005) ("Out-of-state wineries face the loss of state and federal licenses if they fail to comply with state law. This provides strong incentives not to sell alcohol to minors.").[5] The same rationale applies to this case. Because marijuana businesses licensed by the State must operate within Washington, and the State can revoke licenses if the businesses violate its regulations, the

---

[5] The LCB's rationale in this regard is similar to the rationale advance by Puerto Rico in *Silver v. Garcia*, 760 F.2d 33 (1st Cir. 1985). As previously noted, Puerto Rico claimed it had difficulty investigating trustworthiness of nonresidents, much as the LCB here argues that it is easier to enforce cannabis laws because vetting and approving out of state owners is purportedly burdensome or more difficult. This argument does not withstand any degree of scrutiny, however, as the LCB not only has no problem investigating nonresidents, it has in fact already investigated and approved Brinkmeyer using the same standards it applies to Washington residents.

residency of equity holders does not impact the State's enforcement ability. In other words, nonresident owners are no more "evil" than resident owners when it comes to the LCB's enforcement of business operations occurring in Washington, so LCB's enforcement does not provide a substantial reason for the Residency Requirements.

The State's final two justifications for the Residency Requirements are a purported respect to the federal government and other states that have not legalized marijuana. This "respect" is illusory as several other states with licensed marijuana markets have no residency requirement, the absence of which has not drawn the ire of the federal government or other states. Those other legalized markets continue operating with the federal government's tacit approval, and states that have chosen not to legalize regulate their own markets as they choose.[6] Regardless, the LCB cannot explain why its "respect" allows nonresidents to obtain revenue from Washington marijuana businesses through debt, but not equity. Moreover, respecting other states would include allowing them to legislate how they will treat equity owners of marijuana businesses in other states, not banning them altogether. This so-called "substantial reason" is nothing more than a post-hoc justification for facial discrimination that does not withstand the slightest scrutiny.

  **c.**  **The Residency Requirements are not substantially related to a legitimate state objective.**

In addition to lacking a substantial reason for Residency Requirements, the State cannot establish its discrimination against nonresidents bears a substantial relationship to its objectives. When evaluating the substantial relation element of the Privileges and Immunities Clause, courts should consider whether less restrictive means of regulation are available. *Barnard*, 489 U.S. at 552–53. For example, the *Barnard* Court struck a residency requirement for lawyers barred in the Virgin Islands that was premised, in part, on how nonresidents would be less likely to attend

---

[6] As of 2019, California, Nevada, and Oregon had no residency requirement for marijuana business owners. Murphy Decl., Ex. C at 9.

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

court proceedings on short notice compared to residents. *Id.* The Court held that a less restrictive means to accomplish that objective would be requiring lawyers to retain local attorneys to be available for unscheduled meetings and hearings. *Id.* at 554.

Similarly, even if the State had articulated a legitimate state interest for the Residency Requirements, that interest could be addressed through the LCB's oversight of the marijuana industry. The vetting and approval process that the LCB performs on applicants works well at rooting out areas of concern. In rejecting Tennessee's residency requirement for liquor licenses, the Court held that "the State can thoroughly investigate applicants without requiring them to reside in the State for two years before obtaining a license." *Tennessee Wine*, 139 S. Ct. at 2475. The same is true for Washington's six-month Residency Requirement. Indeed, the LCB has already completed three background investigations on Brinkmeyer while he was a nonresident.

Further, and as recognized above, in holding that the "2-year residency requirement is not needed to enable the State to maintain oversight over liquor store operators[,]" the Supreme Court recognized that the stores were physically located in the state, so the state could monitor the operations through on-site inspections, audits, and the like. *Id.* The same applies to Washington's marijuana industry. The State's broad oversight powers, which this case does not seek to modify, already provide less restrictive means for the State to accomplish any legitimate interest it has in determining who can hold equity in a marijuana business.

### 2.     Dormant Commerce Clause

The economic protectionism underlying the Residency Requirements causes them to violate the Dormant Commerce Clause for a related, but separate, basis. The LCB has prevented nonresidents from investing in Washington's marijuana industry by obtaining equity, and economic discrimination against nonresidents violates the Dormant Commerce Clause. *Tennessee Wine*, 139 S. Ct. at 2464. For example, in striking a South Dakota statute that prohibited corporations with nonresident shareholders from owning gaming licenses, a federal

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

district court recognized that preventing out-of-state investment unconstitutionally burdens

interstate commerce:

> The gambling itself, however, is not the interstate commerce at issue in this case. South Dakota is not regulating the individual gamblers who come to Deadwood to try their luck at the slot machines. <u>The interstate commerce allegedly affected by this statute</u>, which prohibits certain types of business entities from obtaining a license to operate gaming establishments in South Dakota, <u>is the out-of-state investment in businesses holding South Dakota gaming licenses</u>."

*Gulch Gaming, Inc. v. State of S.D.*, 781 F. Supp. 621, 625–26 (D.S.D. 1991) (emphasis added).

Under the Dormant Commerce Clause, if a state law discriminates against nonresident

economic actors, "the law can be sustained only on a showing that it is narrowly tailored to

advance a legitimate local purpose." *Tennessee Wine*, 139 S. Ct. at 2461 (internal quotation and

brackets omitted). The burden to show discrimination rests on Brinkmeyer as the party

challenging the validity of the Residency Requirements. *Hughes v. Oklahoma,* 441 U.S. 322, 336

(1979). States discriminate against interstate commerce by treating differently in-state and out-

of-state economic interests. *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 995 (9th Cir.

2002). Here, the Residency Requirements are plainly discriminatory because they expressly

favor Washington residents over nonresidents. *See Tennessee Wine*, 139 S. Ct. at 2461; *see also*

*Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 428 (3d Cir. 2011). Consequently, the Residency

Requirements are subject to strict scrutiny review. *Conservation Force*, 301 F.3d at 995.

Thus, the burden falls on the State to justify the Residency Requirements both in terms of

the local benefits flowing from the Residency Requirements and the unavailability of

nondiscriminatory alternatives adequate to preserve the local interests at stake. *Hughes,* 441 U.S.

at 336. This is no easy task. "State laws discriminating against interstate commerce on their face

are virtually *per se* invalid." *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520

U.S. 564, 575 (1997) (internal quotation omitted); *see also Granholm*, 544 U.S. at 487 ("When a

state statute directly regulates or discriminates against interstate commerce, or when its effect is

MOTION FOR PRELIMINARY INJUNCTION - 15
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry."). Under strict scrutiny review, the LCB must show a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives. *Conservation Force*, 301 F.3d at 997. Put another way, the State must show that Residency Requirements are the "least discriminatory alternative" to advance a legitimate purpose. *Id.*

The LCB's justifications for the Residency Requirements fail the Dormant Commerce Clause analysis for the same reasons they fail under the Privileges and Immunities Clause. This issue was foreclosed in *Tennessee Wine*, which is precisely on point. Indeed, the only difference is *Tennessee Wine* involved liquor and this case involves marijuana. Participants in the multi-billion dollar marijuana market the State created are entitled to the same constitutional protections that participants in any other licensed market in Washington enjoy.

As the *Tennessee Wine* Court made clear, the LCB can address any legitimate local interest with nondiscriminatory alternatives. The LCB has broad enforcement power and has already implemented a tight enforcement scheme. As in *Tennessee Wine*, the LCB can thoroughly vet licensee applicants without requiring residency, residency is not needed to maintain oversight of the licensees because the marijuana stores are located in state, and the LCB's ability to revoke licenses provides strong incentives to comply with state law. *See* 139 S. Ct. at 2475. This is a straightforward case of explicit discrimination against nonresidents that is per se invalid under the Dormant Commerce Clause.[7]

### 3. Equal Protection and Privileges or Immunities Clauses of Fourteenth Amendment to U.S. Constitution

The Residency Requirements violate the Equal Protection and Privileges or Immunities Clauses of the Fourteenth Amendment for similar reasons. Durational residency requirements have been challenged under both clauses, and the analysis is similar for both. *Compare Dunn v.*

---

[7] The Dormant Commerce Clause violation is so facially apparent that when a lawsuit filed in federal court asserted Maine's residency requirement for marijuana businesses violated the Dormant Commerce Clause, the State of Maine declined to defend the residency requirement before a single motion was heard in the case. Murphy Decl., Ex. B.

MOTION FOR PRELIMINARY INJUNCTION - 16
USDC No. 3:20-cv-05661-BHS

*Blumstein*, 405 U.S. 330 (1972) (equal protection) *with Saenz*, 526 U.S. 489 (privileges or immunities). Both clauses protect the right to travel, which provides "for those travelers who elect to become permanent residents, the right to be treated like citizens of their new state of residence." *Saenz*, 526 U.S. at 500. State law burdens the right to travel "when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Soto–Lopez*, 476 U.S. at 903 (citations and internal quotation marks omitted).

As durational residency requirements that restrict the privilege of receiving a marijuana license, the Residency Requirements are constitutionally suspect for infringing on the fundamental right to travel, and thus are subject to strict scrutiny review. *See Saenz*, 526 U.S. at 501–03; *see also Dunn*, 405 U.S. at 341–42 ("The right to travel is an 'unconditional personal right,' a right whose exercise may not be conditioned"); *Soto–Lopez*, 476 U.S. at 904–06; *Smith v. D.C.*, 387 F. Supp. 3d 8, 28–30 (D.D.C. 2019). The Supreme Court has held that durational residency laws single out the class of bona fide residents who have recently exercised their constitutionally protected right to travel, and penalize those travelers directly. *Dunn*, 405 U.S. at 338. "Absent a compelling state interest, a State may not burden the right to travel in this way." *Id.* at 341–42. Under strict scrutiny, the LCB must prove the Residency Requirements are narrowly tailored to serve a compelling governmental interest. *Id.*

The Residency Requirements violate the Equal Protection and Privileges or Immunities Clauses of the Fourteenth Amendment for the same reasons the Residency Requirements violate the Privileges and Immunities Clause in Article IV and the Dormant Commerce Clause. The reasons the LCB has identified to justify the Residency Requirements are not compelling governmental interests. The lone exception may be the interest in improving public safety, but, as with the other interests the LCB has identified, the Residency Requirements are not narrowly tailored to accomplish those interests. As described above, the LCB's broad oversight powers—

MOTION FOR PRELIMINARY INJUNCTION - 17
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

which tightly regulate the operations of licensed marijuana businesses—provide less restrictive means to promote public safety without requiring that equity holders must be and must remain Washington residents. Moreover, the LCB arbitrarily distinguishes between financiers (which are permissible) and equity owners (which are not), despite having no basis for showing that allowing equity ownership poses some risk to public safety. Consequently, the Residency Requirements fail strict scrutiny review and violate the Equal Protection and Privileges or Immunities Clauses of the Fourteenth Amendment.

### 4.     Due Process Clause of Fourteenth Amendment

The Residency Requirements also violate the Fourteenth Amendment's Due Process Clause, which protects the right to pursue a profession. Unlike the Article IV Privileges and Immunities context, the right to pursue a profession is not considered a fundamental right under the Fourteenth Amendment Due Process Clause, and is subject to rational basis review. *Amunrud v. Bd. of Appeals*, 143 P.3d 571, 576 (Wash. 2006), *abrogated on other grounds by Yim v. City of Seattle*, 451 P.3d 694 (Wash. 2019). Thus, the Residency Requirements survive if they are rationally related to a legitimate state interest. *Amunrud,* 143 P.3d at 578.

Assuming the justifications the LCB identified pass the low bar to qualify as a legitimate state interest, the Residency Requirements are not rationally related to them. In *Gulch Gaming*, 781 F. Supp. at 631, South Dakota asserted its residency requirement for gaming licenses was rationally related to its goals to protect the "health, safety, morals, good order, and general welfare" of those inhabiting the state. The court concluded those legitimate interests failed rational basis review because the state required applicants for gaming licenses to meet various character standards, and the state also would not issue licenses unless the applicant's background indicated that they posed no threat to the public or the state's ability to control gaming. *Id*. at 631–32. Given these existing standards, the court found the additional residency requirement did not "further the goal of preventing potentially illegal or dangerous activity from occurring within

MOTION FOR PRELIMINARY INJUNCTION - 18
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

the gaming industry." *Id*. at 632.[8]

The Residency Requirements fail here for similar reasons. The LCB imposes rigorous qualifications that applicants must satisfy before the LCB will issue a license. Striking the Residency Requirement will not modify those qualifications. And as the *Tennessee Wine* Court held, applicants need not reside in Washington for the LCB to evaluate whether they meet the qualifications to receive a license. Imposing the Residency Requirements on top of the already robust regulatory framework that applicants must satisfy is not rationally related to the State's interests. Instead, it operates to unconstitutionally violate Brinkmeyer's due process right to pursue a profession in Washington while remaining an Idaho resident.

### 5.     Privileges or Immunities Clause under Washington State Constitution

In addition to violating the U.S. Constitution, the Residency Requirements also violate Article I, section 12 of the Washington Constitution, which provides that "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." Courts employ a two-step inquiry to determine whether a law violates this Privileges or Immunities Clause. Courts first evaluate whether the challenged law grants a "privilege" or "immunity" for purposes of the Washington Constitution. *Schroeder v. Weighall*, 316 P.3d 482, 486 (Wash. 2014). If the answer is yes, courts will then consider whether there is a "reasonable ground" for granting that privilege or immunity. *Id*.

This case implicates the right to carry on a business, a long-recognized fundamental right protected by the Washington State Privileges or Immunities Clause. *State v. Vance*, 70 P. 34, 41 (Wash. 1902). State laws, like the Residency Requirements, that commercially benefit residents at the expense of nonresidents violate the Washington State Privileges or Immunities Clause. For example, in *Ralph v. City of Wenatchee*, 209 P.2d 270, 274 (Wash. 1949), the Supreme Court of

---

[8] Although *Gulch Gaming* was decided in the equal protection context, it applied the same rational basis test that courts apply in due process challenges.

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Washington struck down a municipal ordinance that required nonresident photographers to pay substantial licensing fees and prohibited photography solicitation, while exempting resident photographers from the licensing fees. The ordinance implicated the right to carry on a business by attempting to insulate resident photographers from nonresident competition. *Id.* at 272. The Court held the ordinance unfairly discriminated against a class of businesses to the benefit of another class of the same business, and deprived nonresidents of the "common right to engage in trade." *Id.* at 272–74.

As in *Ralph*, this case involves licensing requirements that impose barriers to participate in a local economy. While the licensing fees in *Ralph* were prohibitively expensive for the affected photographers, the Residency Requirements go further by prohibiting nonresidents from participating in the marijuana industry altogether. Further, the Residency Requirements discriminate between classes of the same business, as marijuana companies owned by residents have the privilege of operating in Washington while marijuana companies owned by nonresidents do not.

Consequently, the analysis progresses to the reasonable ground test, under which "the court will scrutinize the legislative distinction to determine whether it *in fact* serves the legislature's stated goal." *Schroeder*, 316 P.3d at 486 (emphasis in original). This standard is more exacting than rational basis review. *Id.* For example, in *Schroeder*, the Washington Supreme Court found there was no reasonable ground justifying a statute that limited medical malpractice defendants' liability to patients injured while minors. *Id.* The justification for the statute was addressing escalating insurance rates, which the Court recognized was a legitimate goal. *Id.* at 487. But the Court struck the statute because there was no evidence that it reduced insurance premiums. *Id.*

Here, the legislature has not stated a goal that the Residency Requirements fulfill. The stated intent behind I-502 generally is to allow law enforcement to focus on violent and property

MOTION FOR PRELIMINARY INJUNCTION - 20
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

crimes, generate state and local tax revenue, and remove marijuana from illegal drug organizations by bringing marijuana under a tightly regulated state-licensed system. *See* Answer ¶ 6. Residency has no impact on law enforcement resources nor does it reduce the amount of taxes collected from marijuana businesses. And the *Tennessee Wine* Court has already held that residency is not necessary for the state to tightly regulate licensees when the businesses themselves remain in-state. That means the only stated intent that residency arguably could implicate is the ability of the LCB to remove cannabis from illegal drug organizations. Thus, the Residency Requirements should be struck for violating the Privileges and Immunities Clause unless the State can present evidence that *in fact* nonresident equity holders of marijuana licenses are more likely to successfully divert marijuana to criminal entities than residents. The LCB will be hard-pressed to do so. Considering that the State tracks every single piece of marijuana grown from seed to sale, WAC 314-55-083(4), any diversion would be discovered regardless of whether the business owner was a resident or nonresident. In the absence of any convincing evidence from the LCB that shows nonresidents that pass the LCB's background checks and receive licenses are more likely to divert marijuana than residents, the Residency Requirements violate the Privileges or Immunities Clause of the Washington Constitution.

### 6. The Residency Requirements in the Rules Exceed the LCB's Statutory Authority.

Finally, Brinkmeyer is likely to succeed on the merits because the regulatory Residency Requirements exceed the LCB's statutory authority. RCW 34.05.570(2)(c). Administrative "rules that are inconsistent with the statutes they implement are invalid. An agency's rule is invalid if it is not reasonably consistent with the statute being implemented." *Bostain v. Food Exp., Inc.*, 153 P.3d 846, 853 (Wash. 2007); *see also Washington State Hosp. Ass'n v. Washington State Dep't of Health*, 353 P.3d 1285, 1289 (Wash. 2015). The LCB receives no deference in determining the scope of its statutory authority. *Lenander v. Washington State Dep't of Ret. Sys.*, 377 P.3d 199, 208 (Wash. 2016).

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

The inconsistency between the statutory and regulatory Residency Requirements is that RCW 69.50.331(1)(b) requires residency of sole proprietors and the "members" of a "partnership, employee cooperative, association, nonprofit corporation, or corporation" but the regulations require residency from every single licensee and TPI. The regulatory Residency conflict with the statute by requiring residency from every person who receives profits from a marijuana business (including shareholders and their spouses) even if they are not a sole proprietor or "member" of a business licensed to participate in Washington's marijuana industry. This presents a direct conflict that warrants striking the regulatory Residency Requirements.

**B.      Brinkmeyer Will Suffer Irreparable Harm.**

Brinkmeyer is likely to prevail on his constitutional challenges to the Residency Requirements, thus he has also established that he will suffer irreparable harm without the injunction. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"). Additional irreparable harm in this case arises out Brinkmeyer's close friendship with Atkison. Atkison wants to transfer his ownership interest and oversight responsibilities in the Stores to Brinkmeyer, but the LCB will not let him. Brinkmeyer is willing and able to assume that equity interest, in part so he can honor his friend by continuing the business and also to give Atkison and the other owners peace of mind that the Stores will be well-capitalized and in strong, experienced hands. Should Atkison pass before the State is enjoined from enforcing the Residency Requirements, then his equity interest could only transfer to a Washington resident because Brinkmeyer will remain unqualified to obtain the license based solely on his resident status. The only Washington marijuana businesses Brinkmeyer is interested in obtaining an interest in are Atkison's Stores. The Stores are unique to Brinkmeyer, and the loss of them as a going concern constitutes irreparable harm. *See Organo Gold Int'l, Inc. v. Ventura*, No. C16-487RAJ, 2016 WL 1756636, at *10 (W.D. Wash. May 3, 2016) (citing cases). Further, being

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

unable to take over the Stores' ownership and oversight responsibility at a time that would give Atkison comfort and security is additional irreparable harm to Brinkmeyer. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (intangible injuries qualify as irreparable harm).

## C. The Equities Weigh in Brinkmeyer's Favor.

Because Brinkmeyer has already passed the LCB's background checks, the equities weigh in his favor. The LCB has already determined that, other than his residency, he has nothing in his background to prevent him from participating in Washington's cannabis industry. Further, the State and its marijuana oversight system are "in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).

The equities also weigh in Brinkmeyer's favor because he asks very little from the State. Brinkmeyer is not asking the State to change the thorough background, financial, and criminal checks that all cannabis licensees must pass. He is not asking the State to relax its standards when it identifies acts or omissions of concern. He is not even asking the State to issue him a license. Instead, Brinkmeyer is asking that his application be treated with the exact same scrutiny that the LCB applies to applications submitted by Washington residents. No more, no less. Because the LCB can still review and process applications in a manner that thoroughly protects the public interest, it will suffer no harm while subject to the requested injunction.

## D. Striking the Residency Requirements is in the Public Interest.

It "is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002 (9th Cir. 2012). The injunction will also benefit the public by allowing nonresidents of Washington who meet the LCB's qualifications to become a licensed marijuana business owner to access its lucrative marijuana market. Expanding the market for

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

potential equity holders thereby increases competition, which benefits consumers, and increases access to capital for existing marijuana businesses. *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988 (9th Cir. 2000) (recognizing competition is "vital to the public interest").

**E.     No Bond is Required.**

Because the LCB can still fully vet marijuana license applicants under the terms of the injunction, and reject applicants that are unqualified, there is no risk of harm to the State or the public. Accordingly, the Court should require no bond when issuing the injunction.

**V.     CONCLUSION**

The Residency Requirements facially discriminate against nonresidents like Brinkmeyer. His likelihood of establishing that the Residency Requirements are unconstitutional is high. The LCB's enforcement of the Residency Requirements is preventing Brinkmeyer from obtaining an interest in the Stores, and Atkison's health necessitates that the Residency Requirements be enjoined now. Only then can Brinkmeyer's application be reviewed fairly and not subject to discrimination based solely on living in a state other than Washington.

DATED this 6th day of August, 2020.

MILLER NASH GRAHAM & DUNN, LLP

*/s/ Andy Murphy*
Daniel J. Oates, WSBA No. 39334
Andy Murphy, WSBA No. 46664
MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way, Suite 300
Seattle, WA 98121
Tel: 206-624-8300
Fax: 206-340-9599
Email: *Dan.Oates@millernash.com*
        *Andy.Murphy@millernash.com*
*Attorneys for Petitioner*

MOTION FOR PRELIMINARY INJUNCTION - 24
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

## DECLARATION OF SERVICE

I, Brie Geffre, hereby declare under penalty of perjury under the laws of the United States and of the state of Washington, that on this 6th day of August, 2020, I caused the foregoing to be filed using the CM/ECF system which will send notice of the same to all registered parties

SIGNED at Seattle, Washington this 6th day of August, 2020.

*s/Brie Geffre*
Brie Geffre, Legal Assistant

4841-8647-9557.6

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599