1  JOSHUA D. ORF-RODRIGUEZ
   Assistant Attorney General
2  1125 Washington Street SE
   PO Box 40110
3  Olympia, WA 98504-0110
   (360) 570-3405
4

5

6                                          The Honorable Benjamin H. Settle

7

8              UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
9                     AT TACOMA

10

   TODD BRINKMEYER,                    NO: 3:20-cv-05661-BHS
11
                        Petitioner,    DECLARATION OF REBECCA
12                                     SMITH IN SUPPORT OF BOARD'S
                                       RESPONSE TO MOTION FOR
13 vs.                                 PRELIMINARY INJUNCTION

   WASHINGTON STATE LIQUOR AND
14 CANNABIS BOARD,

15                        Respondent

16      I, REBECCA SMITH make the following Declaration of my own personal knowledge

17 under penalty of perjury under the laws of the United States and the state of Washington that the

18 foregoing is true and correct.  I am over the age of 18 and competent to testify to the matters

19 stated here:

20      1.      In 2012, I-502, an initiative for the legalization of recreational marijuana in the

21 State of Washington, was approved by a popular vote. I was initially the Marijuana Licensing

22 Manager, and then shortly thereafter, the Director of Licensing with the Washington State

23 Liquor and Cannabis Board (Board) when I-502 was being implemented. As Licensing

24 Director, I oversee and work with hundreds of Board employees, including licensing

25 specialists, enforcement officers, and their leadership all to ensure that the Washington

26 marijuana industry runs smoothly and in accord with its intent. In my eight years working at

DocuSign Envelope ID: 3A6D8158-E40C-4271-98FD-045ACB37E4C4

1    the top level of this new and evolving industry, I am intimately familiar with marijuana statutes

2    and rules, and the underlying policies which supports those laws.

3         2.     In voting for I-502, the people of Washington approved a residency

4    requirement. As Washington was one of the first two states (the other being Colorado), it was

5    of paramount importance to meet the Initiative's goal to having a "tightly-regulated" industry

6    and ensure that marijuana stayed as much as possible within the borders of Washington.

7         3.     I am aware that Mr. Todd Brinkmeyer, an Idaho resident, has challenged our

8    residency requirement in this State. Mr. Brinkmeyer sought to receive ownership interest from

9    Michael "Scott" Atkison, who currently has ownership interest in four marijuana retailer

10   licenses, three of which Mr. Brinkmeyer helped finance. It is not clear if Mr. Brinkmeyer

11   sought to receive ownership from all four businesses, or just the three he finances.

12        a.     First, through his ownership of No. 259 Inc., Mr. Atkison owns

13        Insangu, LLC which has an 80% ownership interest in Canna4Life LLC, a marijuana

14        retailer – Mr. Brinkmeyer, through his company ATC 2, LLC loaned $400,000 for this

15        business. Attached as **Exhibit 1** is a true and accurate copy of a Report of Application

16        demonstrating the ownership structure, and **Exhibit 2** is a true and accurate copy of a

17        Source of Funds document reflecting Mr. Brinkmeyer's contribution.

18        b.     Second, again through his ownership of No 259, Inc., Mr. Atkison owns

19        Insangu, LLC which has a 50% ownership in 317 Retail, LLC, a marijuana retailer.

20        Mr. Brinkmeyer, through his company ATC 2, LLC loaned $800,000. Attached as

21        **Exhibit 3** is a is a true and accurate copy of a Report of Application demonstrating

22        the ownership structure, and **Exhibit 4,** is a true and accurate copy of a Source of

23        Funds document reflecting Mr. Brinkmeyer's contribution.

24        c.     Third, through his ownership of No 259, Inc., Mr. Atkison owns

25        Insangu, LLC which has a 50% ownership in 3213 Retail, Inc., a marijuana retailer –

26

DECLARATION OF REBECCA SMITH
ISO BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

DocuSign Envelope ID: 3A6D8158-E40C-4271-98FD-045ACB37E4C4

Mr. Brinkmeyer is not a financier for this business. Attached as **Exhibit 5** is a true and accurate copy of a Report of Application demonstrating the ownership structure.

       d.       Finally, Mr. Atkison has a direct 50% ownership in 2215 Retail, LLC, a marijuana retailer – Mr. Brinkmeyer through his company ATC2, LLC provided $1,400,000 for this business. Attached as **Exhibit 6** is a is a true and accurate copy of a Report of Application demonstrating the ownership structure, and **Exhibit 7** is a true and accurate copy of a Source of Funds document reflecting Mr. Brinkmeyer's contribution.

       4.       There are many reasons the residency requirement is necessary for the functioning of Washington's legal marijuana industry. First, the Controlled Substances Act treats any marijuana possession, transfer, and delivery, as a federal crime. After I-502 passed, the federal government issued the *Cole* memorandum, which signaled to any state that chose to legalize marijuana, including Washington, that if certain enforcement priorities were met, the federal government would leave the state industry alone. Some of those priorities included preventing sales to minors, preventing marijuana from becoming associated with criminal affiliates, and preventing diversion of marijuana to other states. The *Cole* memo also generally expected that States enacting "laws authorizing marijuana-related conduct" to "implement strong and effective regulatory and enforcement systems that will address the threat those state laws could pose to public safety, public health and other law enforcement interests." It further warned that "If state enforcement efforts are not sufficiently robust to protect against the harms . . . the federal government may seek to challenge the regulatory structure itself." While the *Cole* memo has since been rescinded by Former Attorney General Jeff Sessions, it still serves as the hallmark guidance that states follow, and the federal government has continued to implicitly follow that guidance. To that end, the residency requirement is a foundational element to maintain the robust Washington marijuana system—both in minimizing federal criminal activity, as well as better ensuring that the Board can enforce the laws and rules.

DECLARATION OF REBECCA SMITH
ISO BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

3

Attached as **Exhibit 8** is true and accurate copy of the *Cole* memorandum. Attached as **Exhibit 9** is true and accurate copy of a recent article entitled "2 years after Sessions Rescinded Cole Memo, Prosecutors Continue to Adhere to Obama-Era Enforcement Guidelines." Upon looking at DOJ prosecutions from 2018-2020, the article concludes that the DOJ still follows the Cole Memo despite it being rescinded. An online version of the article is located: https://www.benzinga.com/markets/marijuana/20/01/15093079/2-years-after-sessions-rescinded-cole-memo-prosecutors-continue-to-adhere-to-obama-era-enforceme

5.     The residency requirement ensures that all owners can actually be properly investigated. All owners must undergo a financial investigation, criminal and civil background investigation, interviews, fingerprinting, and other requirements in order to successfully pass the Board's vetting requirements and be eligible for licensure. In order to complete a successful criminal background check, the Board needs to be able to conduct criminal background checks in local Washington jurisdictions that are not available on any federal database. Even a pattern of misdemeanors that may not show up on the federal database will disqualify an applicant for licensure. See WAC 314-55-040. The residency requirements ensure that the Board can contact local law enforcement and access the tools they have to conduct these checks. Where the owner is located in another state, the ability to conduct local criminal background checks would be made much more difficult—no relationships with local and state law enforcement, 49 States with 49 different types of local criminal background systems, and states where marijuana is illegal could be understandably reluctant to help out another state where it has been legalized.

6.     The residency requirement for owners also ensures a physical presence so that our criminal and marijuana laws may be prosecuted in the event the owner, and its business, violates our laws. The Board requires that all owners of the business be responsible for the conduct of the business, their employees, and even visitors on the premises. WAC 314 55-110(4). Enforcement officers need the ability to access the physical marijuana locations and to be able to interview owners in the case of an alleged conduct violation

DECLARATION OF REBECCA SMITH
ISO BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

DocuSign Envelope ID: 3A6D8158-E40C-4271-98FD-045ACB37E4C4

1    occurred. While employees or another representative could perhaps help Enforcement conduct

2    its investigation, it is the owner(s) who must be able to answer for any marijuana regulatory

3    violations or criminal activity. If, for example, a marijuana retailer sets up the business so that

4    it routinely sells to minors or diverts marijuana, it becomes more than a regulatory issue at that

5    point, and the owner needs to be held accountable for its criminal activity, which can be

6    prosecuted under local Washington law.

7        7.    Furthermore, in part because of marijuana' federal illegality, Washington

8    Enforcement Officers cannot enforce marijuana laws in another State. They are limited to

9    Washington State. I am aware that unlike the Board's Enforcement Officers, the Washington

10   State Gambling Commission's Enforcement Officers *can* leave Washington to enforce

11   gambling laws, including even going outside the country if need be to conduct investigations.

12       8.    In addition, I-502 empowered local jurisdictions to object to any marijuana

13   applicant within their area. RCW 69.50.331(7). This can reveal details about an individual that

14   the Board may not be aware of, including threats to public safety, that may necessitate the

15   denial of the applicant for a marijuana license. If marijuana licensees could be out-of-state, the

16   Board would lose this meaningful perspective in evaluating marijuana applicants and

17   determining whether they should be issued a license. The Washington residency requirement

18   is needed to hold those who decide to own a precarious and highly regulated business to be

19   within the bounds of the State so to be properly investigated and held responsible.

20       9.    There is a separate, but also important basis for the residency requirement.

21   Washington, unlike any other state that has legalized marijuana, has a tiered system. That

22   means an individual or business can only participate on one side of the industry—either, the

23   marijuana retailer side, or the marijuana production and processing side. As Washington's

24   marijuana system was intended to be similar to the liquor industry, the goal of which was to

25   prevent "tied houses," where liquor became big business and invited criminal activity by not

26   limiting the bounds of one enterprise's influence. To my knowledge, no other state has

DECLARATION OF REBECCA SMITH
ISO BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

Washington's set-up. By eliminating the residency requirement, Washington's tiered marijuana system, as set up by the people of Washington, would be undermined. This is because any other State resident could be involved with marijuana production, retail, or even both in their own State, and then apply to be a retailer or producer in Washington—the best enforcement mechanism we would have is to "ask" the individual whether they are involved with marijuana—but they could simply lie. Given the illicit nature of the industry, there would be a high incentive for individuals looking to be involved on both sides of the industry to try to slip in out-of-state, where as described above, it is simply harder to investigate and confirm the details of any marijuana applicant. As demonstrated by the some of the LLC set up of Mr. Atkison's ownership in his marijuana retailers, the corporate structure can become very complicated and make it difficult for the Board to track down whether the individual is in fact involved with marijuana outside of Washington.

10.    This problem is further compounded by the fact that Washington only allows one individual/business to own up to five marijuana retailer licenses. RCW 69.50.325(3)(b). Such a limitation ensures that big business and criminal activity cannot dominate the market in State—but if residency were eliminated, this safeguard to Washington's marijuana industry would be threatened because it would be difficult to know who already is involved with other retailers in other states. By keeping all ownership of marijuana businesses in Washington, we can work within our State's regulatory structure to ensure the tiered system and limitation on marijuana licenses remains intact.

11.    As tightly regulated as this industry has been, the Board has continued to listen to its constituents and loosened restrictions to the extent it can without risking public safety or Washington's marijuana structure. For example, financiers were previously required to be Washington residents, but industry stakeholders in conversation with the Board determined that vetting of a financier can be accomplished without residency. This makes sense because financiers, generally speaking, are limited to providing loans on a fixed interest rate to

DECLARATION OF REBECCA SMITH
ISO BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

DocuSign Envelope ID: 3A6D8158-E40C-4271-98FD-045ACB37E4C4

marijuana licensees. That is it—they are purely investors. While the vetting of financiers and owners is similar, it is not exactly the same. The investigation into an owner is more searching and thorough as compared to a financier. By way of example, Licensing Specialists and Enforcement Officers will spend more time reviewing the character of an owner, including local criminal background checks not available out of state. An out-of-state financier is not subject to the same local background scrutiny (because of the difficulty as described in Paragraph 5). Another difference is a financier's funds can be more easily traced because they have a one-time determinate amount of money that they are investing. The vetting process for that is straightforward. Comparatively, an owner's financial accounts receive additional vetting as they are more dynamic in nature; they can be used to deposit and withdraw revenue/profits from marijuana business, so additional tracking is required so the ebb and flow of marijuana money can be tracked. Moreover, owners are held responsible for the operation of the business, regulatory compliance, and for any criminal conduct that may occur. WAC 314-55-110(4). Because of the level of accountability between financiers and owners, there is less of a need for financiers to be domiciled in the State. In contrast, an owner must be located here so that they oversee business operations, timely respond to investigations, be present for inspections as needed, and properly respond to the Board's requests for documents or information, *see* WAC 314-55-185.

12.    In addition, the Board believes the six-month residency requirement is the shortest amount of time that accomplishes the goals discussed above. When I-502 was initially passed, it was only a three-month residency requirement. While we would have liked to make that work, we had issues with individuals who came into Washington for three months for the sole purpose of receiving a marijuana license and then would leave the State. This caused issues on the licensure side as well, as applications often take three months or more to process, so they would start out qualifying, but by the end, would not. To that end, Second Engrossed Second Substitute House Bill 2136 in 2015 was passed that raised the residency requirement

DECLARATION OF REBECCA SMITH
ISO BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    from 3-months to six months. In my opinion, this small increase has better achieved the policies

2    of the residency requirements set forth in this Declaration.

3        13.    It is no secret that if marijuana is federally legal, that may be a time for another

4    discussion on whether a residency requirement is needed. Though I would have concerns it

5    may still affect Washington's tiered-system, we would be able to make it more like liquor or

6    tobacco, which are federally legal. Banks then too would have regulations in place to accept

7    marijuana money and their own safeguards to ensure a marijuana business remains legal. As it

8    stands now, however, only state-chartered banks and credit unions and none of the large

9    federally-chartered banks will take marijuana money, and marijuana is still often times a cash-

10   based business.

11       14.    I also understand that other States have chosen to not include a residency

12   requirement in their marijuana system. While that may work for them, other states have issues

13   with overproduction and diversion of marijuana out of state, like Oregon, where no residency

14   requirement exists. Overproduction of marijuana is a common issue that leads to diversion, as

15   marijuana licensees will become desperate and sell out of state to earn money to keep their

16   business afloat. Even Exhibit C, an article attached to the Declaration of Andy Murphy, on

17   page 9 reflects that the elimination of the residency requirement may have caused Oregon to

18   be the "target of federal attention due to marijuana diversion" due to its overproducing

19   marijuana. For convenience, a true and accurate copy of that article is attached as **Exhibit 10.**

20   That article on page 4 also states that "[t]he main cost of residency requirements is loss of

21   funding." That concern is not as great in Washington anymore, because as previously

22   discussed, we have allowed out-of-state financiers to provide money and loans to marijuana

23   retailers. I am also proud to say that Washington's marijuana regulations have ensured that

24   70% of marijuana in Washington right now has come from legal sources, displacing the illegal

25   market. While that number may seem low, it is one of the highest in the nation for legal

26   marijuana production.

15.     Other states, including Mr. Brinkmeyer's residence, Idaho, have chosen to not even decriminalize marijuana. Attached as **Exhibit 11** is a true and accurate copy of an explanation of laws and map detailing the current legality of marijuana in each state (retrieved online at https://disa.com/map-of-marijuana-legality-by-state).    Without the residency requirement, Mr. Brinkmeyer—and other residents of Idaho—could start getting into Washington marijuana business, much, I imagine, to Idaho's concern for public safety. The US District Attorney in Idaho could exercise its discretion and determine that ownership goes one-step too far—and Idaho residents are subject to criminal prosecution. The residency requirement, therefore, not only protects the integrity of our State's legal marijuana system, it better respects other States that have chosen not to legalize marijuana and protects those citizens from criminal prosecution.

16.     I am aware that Mr. Brinkmeyer is attempting to take action to immediately eliminate the residency requirement not only for himself, but for everyone. The impacts on our agency, especially during the COVID-19 pandemic, would be devastating. The COVID-19 pandemic has caused the Board employees to take monthly furloughs due to budget shortfalls and to telework; this has impacted our work to a degree. The Board has already been following emergency declarations issued by the Governor to ensure that marijuana and liquor businesses can remain open safely, but that is an ongoing and evolving process. If the requirement were removed, not only would we deal with the impact of COVID-19, it would be anticipated that potentially hundreds of new applications for ownership would come flooding into our office— causing delays which may subject the Board to lawsuits and costing State tax dollars. This is because along with individuals simply wanting to be owners of Washington marijuana businesses, many individuals have contracted with each other to have a "first buyer" right if Washington ever lost its residency requirement. If it was later determined the residency requirement was valid by a later ruling, to reverse all of that work by the Board would be an almost impossible task—in essence, the Board would have to revoke marijuana licenses for

DECLARATION OF REBECCA SMITH
ISO BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

DocuSign Envelope ID: 3A6D8158-E40C-4271-98ED-045ACB37E4C4

1 having individuals that are not state residents. This would greatly impact the Washington

2 marijuana industry.

3       17.    In my opinion as Licensing Director for the last eight years and a dedicated

4 advocate for the integrity of Washington's marijuana industry, it is paramount that the

5 residency requirement be maintained.

6       Pursuant to 18 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is

7 true and correct to the best of my knowledge.

8       Signed this _24_ day of August, 2020, at Olympia, Washington.

9

10                       REBECCA SMITH

11                       Licensing Director
                      Washington State Liquor and Cannabis Board

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF REBECCA SMITH
ISO BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006