# Exhibit 1

> Special Instructions to Issue Desk:
>
> JV Number 86383 | Entity Expiration Date 10/31/2020
>
> Email Address for Issue Letter: Licensee – **SCOTTCANNA4LIFE@GMAIL.COM**

## WASHINGTON STATE LIQUOR AND CANNABIS BOARD
## REPORT OF APPLICATION – SARAH WORLEY

LICENSE NUMBER: 414211 | UBI NO.:  6034482820010001
EO CODE:  7V
LICENSE TYPE: RETAILER/MEDICAL | APPLICATION TYPE: CHANGE IN GOVERNING PEOPLE APPLICATION

ENTITY: CANNA4LIFE LLC | TRADE NAME: CANNA4LIFE

LICENSEES/TRUE PARTIES OF INTEREST:

| | |
|---|---|
| **INSANGU LLC** | **MGR/MBR 80%** |
| **NO 259, INC** | **MGR/100%** |
| **MICHAEL "SCOTT" ATKISON** | **MGR/100%** |
| **PAULA LORRAINE ATKISON** | **SPOUSE** |
| **ROBIN DEAN COOK** | **MBR/20%** |
| **KIA COOK** | **SPOUSE** |

FINANCIER(S):

| | |
|---|---|
| CANNA4LIFE LLC | FINANCIER |
| INSANGU LLC | MGR/MBR 80% |
| NO 259, INC | MGR/100% |
| MICHAEL "SCOTT" ATKISON | MGR/100% |
| ROBIN COOK | SPOUSE |
| KIA COOK | MBR/20% |
| | SPOUSE |

**LOCAL AUTHORITY:** N/A for this application- TPI being removed
Approved:
Conditional Approval:
Neutral:
No Response:
Disapproved:
Objections/Courtesy Information:

## Application Summary:

### Application Information:

This application is for changing the entity structure of a licensed Marijuana Retailer/Medical  located in The City of Clarkston. This application was received on 2/26/2020.

The business has applied to remove Bethany Frost from the entity structure.

### Licensee/Applicant Information/Violation/Criminal History:

The currently licensed entity is a LLC consisting of 2 married members.

The licensee's associated administrative violation history is as follows for the last two years:

Page **1** of 3

Exhibit 1
Page 1 of 3

<u>Marijuana Retail/Medical License # 414211  (From 01/26/2018 to Current)</u>:
- There is no associated administrative violation history to report.

<u>Marijuana Retail/Medical License # 084154  (From 12/7/2018 to Current)</u>:
- There is no associated administrative violation history to report.

<u>Marijuana Retail/Medical License # 427634  (From 10/31/2018 to Current)</u>:
- There is no associated administrative violation history to report.

<u>Marijuana Retail/Medical License # 423754  (From 7/10/2019 to Current)</u>:
- There is no associated administrative violation history to report.

The business has applied to remove a true party of interest. The member being removed is Bethany Frost.

**Business Property:**
Applicant Robin Cook is purchasing Bethany Frosts 10% for $130,000.00, and will be paid within 10 days upon WSLCB's approval. Canna4life LLC will be the financier, lending the $130,000 to Robin to pay Bethany Frost. Robin Cook signed a promissory note with Canna4life LLC for the loan of $130,000. The terms of this agreements reflect that the loan of $130,000 is to be repaid by December 31, 2021.

The applicants have submitted a copy of the required business property documents to reflect and record the terms of this transaction. The business property documents verify that Bethany Frost is selling her 10% to Robin Cook for $130,000.

**Source of Funds:**
Funds of $130,000 are coming from Canna4Life LLC. The applicant has submitted 6 months of business bank statements to verify the eligibility and availability of these funds.

**Special Requests/Protests/Support:**
None received.

**Enforcement Officer Comments:**
None received and Final Inspection is not required for this application.

**Hold Terms/Manager Comments/Notes:**

## LICENSE SPECIALIST SENIOR/REVIEWER/MANAGER

| | | |
|---|---|---|
| License Specialist Sr.<br>Sarah Worley | Date<br>3/31/2020 | Approval |
| Reviewer<br>supervisor review not required for this application, self-review completed | Date | Approval |
| Manager (Threshold Only) | Date | Approval |

Exhibit 1
Page 2 of 3

**THRESHOLD  DECISION:**

| Name | Date | Approved | Disapproved | Discuss |
|------|------|----------|-------------|---------|

# Exhibit 2



**Washington State**
**Liquor and Cannabis Board**

| | |
|---|---|
| License Number | 414211 |
| UBI Number | 6034482820010001 |
| Trade Name | CANNA4LIFE |

## Source of Funds

**Identify where your money is coming from.**

*Examples include but are not limited to:*

- *Bank/Lending Institution*
- *Loan or gift from an individual or company*

- *Sale of property*
- *Inheritance*
- *Deferred contract*
- *Cash*

- *Promissory note*
- *Credit card*
- *Investment account*
- *Sweat equity/labor*

**Only detail the source(s) and dollar amount you are using to fund the business** *(include the name of any financial institution, credit card lender or investment company)*

| Source (see examples above) | Account Number (if applicable) | Amount Contributing |
|---|---|---|
| Loan from Todd Brinkmeyer (ATC2, LLC) | none | 400000 |
| | | |
| | | |
| | | |
| | | |
| | **Total:** | $   400,000.00 |

**Does the money you have gifted, loaned or invested give you a percentage of profit or part ownership in the business?**   NO ☒   YES ☐   If yes, what percentage? _____

I certify under penalty of perjury that all answers and statements are true, correct and complete. I understand that untruthful or misleading answers are cause for rejection of my application and/or revocation of any license granted. I hereby authorize investigation of my criminal history, financial records and other sources as necessary for licensing.

PRINT NAME      Michael Scott Atkison

SIGNATURE      *Michael Scott Atkison*
DocuSigned by:
D2A0AB3CFEE6440...

DATE      9/26/2017

**Continuation Sheet Attached?**   ☐ YES   ☐ NO

LIQ1229   07/2016

Exhibit 2
Page 1 of 1

# Exhibit 3

Special instructions to Issue desk:

Email Address for Issue Letters: SCOTTATKISON@MAC.COM

Ok Issue

**Washington State Liquor and Cannabis Board**
**REPORT OF APPLICATION – MICHAEL WALKER**

LICENSE NUMBER/AGENT'S CODE  427634-1R     UBI NO.  6042736840010002
LICENSE TYPE: RETAILER

APPLICATION TYPE: ENTITY STRUCTURE

ENTITY: 317 RETAIL, LLC

PEOPLE:
| | |
|---|---|
| **INSANGU, LLC** | **MGR/MBR/50%** |
| **NO 259, INC.** | **MBR/100%** |
| **MICHAEL SCOTT ATKISON** | **PRES/100%** |
| **PAULA LORRAINE ATKISON** | **(SPOUSE)SEC** |
| **BRIAN DAVID JENNINGS** | **MBR/25%** |
| **ANTHONY ALLEN PESCHEK** | **MBR/25%** |
| **BRITTANY ANNE PESCHEK** | **SPOUSE** |

TRADE NAME: ZIPS CANNABIS

| | | | | |
|---|---|---|---|---|
| Street Address: | 317 S 72ND ST | Mailing Address: | 317 S 72nd ST |
| City: | TACOMA | City: | TACOMA |
| County: | PIERCE | State: | WA |
| Zip: | 98408-6003 | Zip: | 98408-6003 |

**LOCAL AUTHORITY/DATE SENT:**  LAN Sent to the City of Tacoma on May 7, 2019.

Approved: The City of Tacoma Responded with Approval to the Applicant and Location on May 15, 2019.
Conditional Approval:
Disapproved:
Neutral:
No Response:

**WITHIN 1,000 FEET OF:**  Child Care Center, Elementary School, Secondary School, Playground, Game Arcade, Library, Public Park, Public Transit Center, Recreation Center or Facility?     ☐ Yes   ☐ No   ☒ N/A
**WITHIN 1,000 FEET OF:**  Tribal Land, Trust Land or Fee Land?
IF YES, date Local Authority Notice was sent:          Response:     ☐ Yes   ☐ No   ☒ N/A

## Report/Review Summary:

**Location Information:**

This application is for changing the governing people and percentages of ownership of a licensed Marijuana Retailer located in the City of Tacoma. The premises consists of a single-story building structure. There is no direct access into another business or living quarters from within this business.

**Applicant Information/Violation History:**

Exhibit 3
Page 1 of 4

The currently licensed entity is a limited liability company consisting of two officers, who are married to each other, and one member who is unmarried. The licensed members' associated administratively violation history is as follows:

Marijuana Retailer License 414211 (January 26, 2018, to Current):
- No administrative violations assessed during this timeframe.

Marijuana Retailer License 414889 (June 27, 2018, to October 31, 2018):
- A written warning issued on September 12, 2018, for (MJ) Advertising: Violations (statements/illustrations) (WAC 314-55-155).

Marijuana Retailer License 084154 (December 7, 2018, to Current):
- No administrative violations assessed during this timeframe.

Marijuana Retailer License 427634 (October 31, 2018, to Current):
- No administrative violations have been assessed to this license.

Marijuana Retailer License 412923 (November 16, 2016, to Current):
- An administrative violation issued on December 28, 2016, for (MJ) Failure to utilize and/or maintain traceability (processor or retail licensee) (WAC 314-55-083(4)), (MJ) Failure to maintain required security alarm and surveillance systems (WAC 314-55-083(3)), and (MJ) Retail outlet selling unauthorized products (RCW 69.50.357), which was closed on May 12, 2017.
- A verbal warning issued on June 29, 2017, for (MJ) Failure to utilize and/or maintain traceability (processor or retail licensee) (WAC 314-55-083(4)).
- A verbal warning issued on October 26, 2017, for (MJ) Advertising: Violations (statements/illustrations) (WAC 314-55-155).
- A verbal warning issued on December 12, 2017, for (MJ) Advertising violations (WAC 314-55-017).
- A written warning issued on September 12, 2018, for (MJ) Advertising: Violations (statements/illustrations) (WAC 314-55-155).
- An administrative violation issued on December 6, 2018, for (MJ) Advertising: Violations (statements/illustrations) (WAC 314-55-155), which is currently pending an administrative hearing.

Marijuana Retailer License 422570 (August 4, 2017, to March 11, 2019):
- An administrative violation issued on January 12, 2018, for (MJ) Allowing a minor to frequent a restricted area (RCW 69.50.357) and (MJ) Sale or service to a minor (WAC 314-55-079), which was closed on January 16, 2019.

The new applicant member that is being added with this application is Anthony Peschek. Anthony Peschek is married to Brittany Peschek. The applicants' associated administrative violation history is as follows:

Marijuana Retailer License 084154 (December 7, 2018):
- No administrative violations assessed during this timeframe.

All parties are eligible for licensure having passed their fingerprinting and background checks.

**Real Property:**

Real property verification is not required for Entity Structure applications.

**Business Property:**

The business has applied to add a new governing member. The new member, Anthony Peschek, is a current marijuana retailer licensee (084154).

Exhibit 3
Page 2 of 4

The business has also applied to change the percentages of ownership within this entity. Currently 67% of *317 Retail LLC* is owned by *Insangu, LLC. Insangu, LLC* is 100% owned by *No 259, Inc.*, which is 100% owned by Michael Atkison. Brian Jennings owns 33% of *317 Retail, LLC.*

Anthony Peschek is acquiring his 25% ownership interest in *317 Retail, LLC*, through a $1,000 share purchase and due to contributions of sweat equity. An agreement has been submitted to reflect and record the terms of this transaction. The agreement shows that Anthony Peschek is receiving 25% ownership interest in this company for $1,000 and previous contributions of sweat equity. Brian Jennings will be transferring 8% of his current 33% ownership interest to Anthony Peschek and *Insangu LLC* will be transferring 17% of their current 67% ownership interest to Anthony Peschek.

After this application is processed Brian Jennings will own 25% of *317 Retail LLC,* Anthony Peschek will own 25% of *317 Retail LLC*, and *Insangu, LLC* will own 50% of *317 Retail LLC.*

**Source of Funds:**

Funds of $1,000 are coming from applicant member Anthony Peschek's personal account with Tacoma Longshore Credit Union.

**License Requirements/Operating Plan:**

Description of operation and premises – No changes are occurring to the business's operations or premises with this Entity Structure application.

MJ Examiner – Not required for Marijuana Retailers.

Fire Marshal Approval – Not Required for Marijuana Retailers.

Security – Security badges will be issued to employees. A complete surveillance system of management and monitoring will be utilized for coverage of all controlled access areas, security areas, and points of ingress/egress. The cameras will provide image acquisition, and are IP compatible, recording at a resolution of 640x470. Sounding alarms have been placed at all exterior entrances, exits, and windows. Recordings will be kept for a minimum of 45 days on a storage device, and all cameras will be continuously recording for 24 hours a day.

Traceability – The licensee has previously passed Traceability Testing.

Insurance – The licensee has previously provided proof of adequate insurance coverage.

**Local Authority Objections/Special Requests/Protests/Support:**

The Local Authority Notice was sent to the City of Tacoma on May 7, 2019. The City of Tacoma responded with approval to the applicant and location on May 15, 2019.

**Enforcement Officer Comments:**

None Received.

| LICENSE SPECIALIST/REVIEWER/MANAGER | | |
|---|---|---|
| License Specialist | Date | Approval |
| *Michael A. Walker* | 6/6/19 | |
| Reviewer | Date | Approval |
| | 6·6·19 | ✓ |
| Manager | Date | Approval |
| | | |
| Director | Date | Approval |

Page | 3

Exhibit 3
Page 3 of 4

**Hold Terms:**

## DESIGNEE  DECISION:

| Name | Date | Approved | Disapproved | Discuss |
|------|------|----------|-------------|---------|

MANAGER/DIRECTOR COMMENTS/NOTES:

Exhibit 3
Page 4 of 4

# Exhibit 4



**Washington State**
**Liquor and Cannabis Board**

| License Number | 414889 |
| UBI Number | 6042736840010001 |
| Trade Name | HIGHWAY 7 |

## Source of Funds

**Identify where your money is coming from.**

**Detail each source(s) and dollar amount of where the money is coming from that you are using to fund the business** *(include the name of any financial institution(s), credit card lender or Investment Company)*

| Source | Account Number | Amount Contributing |
|---|---|---|
| sale of Oregon property | ██████ | 520000 |
| stock account | ██████ | 280000 |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  | **Total:** | $   800,000.00 |

**Does the money you have gifted, loaned or invested give you a percentage of profit or part ownership in the business?**     NO ☒     YES ☐     If yes, what percentage? 0

I certify under penalty of perjury that all answers and statements are true, correct and complete. I understand that untruthful or misleading answers are cause for rejection of my application and/or revocation of any license granted. I hereby authorize investigation of my criminal history, financial records and other sources as necessary for licensing.

**PRINT NAME**     Todd Brinkmeyer

**SIGNATURE**     *Todd Brinkmeyer*
DocuSigned by:
DC6343CEBBD44F1...
**DATE**     5/13/2018

**Continuation Sheet Attached?**     ☐ YES     ☐ NO

# Exhibit 5

Special instructions to Issue desk:
Include 15 day window in approval letter: ☐ Yes   X No
Email Address for Issue Letters: scottatkison@mac.com


Ok Issue

### Washington State Liquor and Cannabis Board
### REPORT OF APPLICATION - AGW

LICENSE NUMBER/AGENT'S CODE  **084154**        UBI NO.  **6043267590010001**
LICENSE TYPE: **Retailer/Medical**

APPLICATION TYPE: **ASSUMPTION** from 25 Trees, LLC

ENTITY: 3213 RETAIL, LLC

PEOPLE:
**INSANGU, LLC**                              **MBR/50%**
   NO 259, INC                        MBR/100%
      MICHAEL S. ATKISON              PRES/SH/100%
      PAULA ATKISON                  SEC
**BRIAN D. JENNINGS**                         **MBR/25%**
**ANTHONY A. PESCHEK**                        **MBR/25%**
   BRITTANY A. PESCHEK                 SPOUSE

**NO 259, INC**                               **FINANCIER**
   MICHAEL S. ATKISON                 PRES/SH/100%
   PAULA L ATKISON                    SEC
**317 RETAIL LLC**                            **FINANCIER**
   INSANGU                            MBR/67%
      NO 259, INC                MBR/100%
      MICHAEL S. ATKISON         PRES/SH/100%
      PAULA ATKISON              SEC
   BRIAN JENNINGS                     MBR/33%

TRADE NAME: **25 TREES**

| | | | |
|---|---|---|---|
| Street Address: | **3213 S 38TH STE C** | Mailing Address: | **2020 S ROCKWOOD BLVD** |
| City: | **TACOMA** | City: | **SPOKANE** |
| County: | **PIERCE** | State: | **WA** |
| Zip: | **98404-1094** | Zip: | **99203-3460** |

**LOCAL AUTHORITY/DATE SENT:** 9/28/18

Approved:        City of Tacoma
Conditional Approval:
Disapproved:
Neutral:
No Response:

**WITHIN 1,000 FEET OF:** Child Care Center, Elementary School, Secondary School, Playground, Game Arcade, Library, Public Park, Public Transit Center, Recreation Center or Facility?    ☐ Yes    X No
**WITHIN 1,000 FEET OF:** Tribal Land, Trust Land or Fee Land?
IF YES, date Local Authority Notice was sent:        Response:    ☐ Yes    X No

Page **1** of 3

Exhibit 5
Page 1 of 4

084154 pg. 2

## Report/Review Summary:

**Location Information:**

This is an application for the assumption of a retail marijuana store located in the City of Tacoma. The premises is located in a single story strip mall. There is no direct access to another business or living quarters.

**Applicant Information/Violation History:**

The applying entity is a LLC consisting of 3 members, one of which is another LLC. The applicant has not been previously licensed by the Board. LLC member Anthony Peschek has not been previously licensed by the Board. LLC members Michael and Paula Atkison and Brian Jennings are currently licensed at 414889 (retail marijuana), since June 2018 with no violation history.
In addition LLC members Michael and Paula Atkison are currently licensed at the following:4
- 414211 (retail marijuana), since January 2018 with no violation history.

LLC member Brian Jennings is currently licensed at the following:
- 412923 (retail marijuana), since November 2016 with the following violation history:
  - 9/12/18 – Written Warning, Advertising violations, Ended
  - 12/28/16 – AVN 1R6363A, Failure to maintain required alarm/video. Ended – paid $1,500 fine 5/12/17.
  - 11/3/16 – Written Warning, allowing a minor to frequent a restricted area. Ended
- 422570 (retail marijuana), since August 2017 with the following violation history:
  - 1/12/18 – AVN 3H8012A, 1) Allowing a minor to frequent a restricted area 2) Sale or service to minor. Pending.
  - 6/7/17 – AVN 3E5178A, Sale or service to minor. Ended – paid $1,500 fine 8/21/17
  - 6/7/17 – AVN 3E5178B, Allowing a minor to frequent a restricted area. Ended – paid $600 fine 8/23/17

**Real Property:**

The applicant is leasing the real property for a term of 3 years, terminating September 30, 2021. The monthly rent is $4,000. There is a $4,000 security deposit. There are 2 options to extend for 5 years each.

**Business Property:**

On July 10, 2018 the current licensee and the Board reached a Stipulated Settlement Agreement where the licensee acknowledged that it currently owes approximately $430,629.35 in back taxes, interest and penalties. In return for payment in full balance of taxes, interest and penalties the Board has agreed to allow the licensee to attempt to sell its business and have the buyer assume and remove Chad Dagais from license number 084154. In addition the licensee acknowledges and agrees that all members to include Chad Dagais will have no further involvement, including employment, with marijuana retail license number 084154. The licensee also agrees that no member of the current licensee will be approved for a marijuana license or as a true party of interest on a marijuana license for a period of 5 years. The Licensee and the buyer will have 120 days from the date of the Stipulated Settlements Agreement (July 10, 2018) to complete the assumption and removal of Chad Dagais from the license.

The applicant is purchasing the business for $1,500,000 with $700,000 to be paid at closing. The balance of $800,000 will be paid in 13 "Earn Out Payments" to begin 1 month after the closing. The payments begin at $40,000 per month and escalate to a final payment of $170,000. In addition the applicant will be spending $154,000 on lease costs, inventory costs and operating expenses.

**Source of Funds:**

Funds of $352,000 are coming from LLC member Insagnu LLC's corporate bank account, $1,000 each from LLC members Brian Jennings' and Anthony Peschek's personal bank accounts, $250,000 from financier Canna4Life's corporate bank account and $250,000 from financier 317 Retail, LLC's corporate bank account.

Page | 2

Exhibit 5
Page 2 of 4

084154 pg. 3

**License Requirements/Operating Plan:**

<u>**Description of operation and premises**</u> – There are 2 points of ingress/egress, one is for the general public to use and another at the rear of the store with controlled access. The business consists of 5 rooms; the retail area where the display cases and POS stations are located, an office where surveillance recording equipment is located, a controlled access area, a storage room where the quarantine and product storage are located and a restroom. The applicant intends to sell usable marijuana, marijuana infused products, marijuana concentrates and marijuana related paraphernalia.

<u>**MJ Examiner**</u> – N/A

<u>**Fire Marshal Approval**</u> – N/A

<u>**Security**</u> – All employees will have identification badges. All points of ingress/egress will be alarmed. Surveillance cameras will be located in all required locations capable of 640x470 resolution and IP compatible. All recordings will be stored for a minimum of 45 days.

<u>**Traceability**</u> – The applicant will be using GreenBits software to meet traceability requirements.

<u>**Insurance**</u> – The applicant will have insurance with the state and its employees, agents, and volunteers shall be named as an additional insured at the time of final inspection.

**Local Authority Objections/Special Requests/Protests/Support:**

None received

**Enforcement Officer Comments:**

None received
11/15/18 – Passed final inspection with EO Kraig Selter

---

## LICENSE SPECIALIST/REVIEWER/MANAGER

| License Specialist | Date 11/21/18 | Approval |
|---|---|---|
| Reviewer | Date 11/26/18 | Approval X |
| Manager | Date | Approval |
| Director | Date | Approval |

**Hold Terms:**

---

## DESIGNEE  DECISION:

| Name | Date | Approved | Disapproved | Discuss |
|---|---|---|---|---|

MANAGER/DIRECTOR COMMENTS/NOTES:

Exhibit 5
Page 3 of 4

Exhibit 5
Page 4 of 4

# Exhibit 6

Special instructions to Issue desk:

Email Address for Issue Letters: SCOTTATKISON@MAC.COM

Ok Issue

**Washington State Liquor and Cannabis Board**
**REPORT OF APPLICATION – Lauren Ware**

LICENSE NUMBER/AGENT'S CODE  423754          UBI NO.  6043975500010001
LICENSE TYPE: Retailer

APPLICATION TYPE:          Assumption from Diego Pellicer, Inc.

ENTITY: 2215 RETAIL, LLC

PEOPLE:

| | |
|---|---|
| **MICHAEL SCOTT ATKISON** | **MGR/MBR/50%** |
| **PAULA LORRAINE ATKISON** | **SPOUSE** |
| **BRIAN DAVID JENNINGS** | **MBR/25%** |
| **ANTHONY ALLAN PESCHEK** | **MBR/25%** |
| **BRITTANY PESCHEK** | **SPOUSE** |
| ATC2 LLC | FINANCIER |
| TODD BRINKMEYER | MBR/50% |
| ANGELA MAROZZO | MBR/50% |
| INSANGU, LLC | FINANCIER |
| NO 259, INC. | MBR/100% |
| MICHAEL S ATKISON | PRES/100% |
| PAULA L ATKISON | SPOUSE |
| 317 RETAIL LLC | FINANCIER |
| INSANGU, LLC | MBR/67% |
| NO 259, INC. | MBR/100% |
| MICHAEL S ATKISON | PRES/100% |
| PAULA L ATKISON | SPOUSE |
| BRIAN D JENNINGS | MBR/33% |

TRADE NAME: ZIPS CANNABIS

| | | | |
|---|---|---|---|
| Street Address: | 2215 4TH AVE S | Mailing Address: | 518 W RIVERSIDE |
| City: | SEATTLE | City: | SPOKANE |
| County: | KING | State: | WA |
| Zip: | 981341516 | Zip: | 99201 |

**LOCAL AUTHORITY/DATE SENT:** 5/2/19

Approved:
Conditional Approval:
Disapproved:
Neutral:
No Response:  City of Seattle

| | | | |
|---|---|---|---|
| **WITHIN 1,000 FEET OF:**  Child Care Center, Elementary School, Secondary School, Playground, Game Arcade, Library, Public Park, Public Transit Center, Recreation Center or Facility? | ☐ Yes | ☒ No | ☐ N/A |
| **WITHIN 1,000 FEET OF:**  Tribal Land, Trust Land or Fee Land? | | | |
| IF YES, date Local Authority Notice was sent:          Response: | ☐ Yes | ☒ No | ☐ N/A |

Page **1** of 3

Exhibit 6
Page 1 of 4

## Report/Review Summary:

**Location Information:**

This application is for the assumption of a marijuana retailer located in the city of Seattle.  It is located in a one story building with no direct access to another business or living quarters from the interior.

**Applicant Information/Violation History:**

The applicant is an LLC consisting of three members, two of which are married.  The applicant entity has never been licensed by the board. Michael Atkison, Brian Jennings, and Anthony Peschek are currently licensed at 084154 (12/18) without any violations.  Brian and Michael are currently licensed at 427634 (10/18) without any violations.  Michael is licensed at 414211 (01/18) without any violations. Brian is licensed at 412923 (11/16) with one written warning and one pending AVN 1O8340A received 12/6/18 for advertising violations.  **The selling entity, Diego Pellicer, Inc., has received two AVN's, one that is still pending.  The first AVN, C2N8094A, was received 8/6/18 for misrepresentation of fact and true party of interest violation.  A settlement was reached on 4/9/2019 that stipulated the selling entity must pay $50,000 and serve a three day suspension. The three day suspension has been served and the $50,000 has been broken up to monthly payment plans.  Two payments have been made, and the purchasing entity will pay the remaining balance before the sale is complete.  The second AVN was received 4/5/19 for sale or service to a minor; it was completed on 5/31/19.**

**Real Property:**

The applicant is assuming the lease of the previous tenant.  The previous tenant was operating on a five year lease extension that stated the current monthly rent is $7,126.12 per month.  The rent increases on a yearly basis.  The lease will expire on September 30, 2023 with no additional options to renew.

**Business Property:**

The applicant is purchasing the business for a total cost of $2,034,000. The actual purchase of the business is $1,300,000.  The applicant is paying an additional $550,000 to Diego Pellicer Worldwide, Inc. for the lease assumption, $100,000 to Alejandro Canto (seller) for a non-compete agreement, and $45,000 to Alejandro Canto for transition services.  The applicant is vetting an additional $470,000 for operating capital.  The applicant has also agreed to pay the $39,000 remaining balance for the AVN the previously licensed entity received.

**Source of Funds:**

Funds in the amount of $2,034,000 are coming from multiple sources.  $1,400,000 is coming from a loan from financier, ATC 2, LLC.  The principal of ATC 2, LLC, Todd Brinkmeyer, is getting the money from a UBS personal line of credit.  Scott and Paula Atkison are going to be loaning the LLC $200,000 from their Charles Schwab account.  Insangu, LLC is going to be loaning 2215 Retail, LLC $600,000 from their business profits from their other retail licenses.  They will also be investing $2,000 from their business profits that is not part of the loan. 317 Retail, LLC is loaning 2215 Retail, LLC $300,000 from their business profits from their retail store.  Brian Jennings is investing $1,000 from his TAPCO Credit Union account, and Anthony Peschek is investing $1,000 from his Tacoma Longshoremen Credit Union account.

**License Requirements/Operating Plan:**

Description of operation and premises – The business will consist of 6 rooms; the retail area, three offices, a quarantine/product storage room, and a restroom.  The security will be housed in an office.  All product will be kept in locked glass display cases.

MJ Examiner – MJ Examiner is not required for this application.

Fire Marshal Approval – Fire Marshal approval is not required for this application.

Security – Security badges have been issued to all employees. Perimeter entry points have alarms. Cameras posted in proper location for clear identification of activities. Fixed cameras cover controlled access areas,

Exhibit 6
Page 2 of 4

security areas and all points of ingress and egress. All cameras meet pixel resolution requirements, are IP compatible, have a recording system of 24/7 capacity for at least 45 days and clearly display time and date.

Insurance – A copy of the insurance certificate is on file.

**Local Authority Objections/Special Requests/Protests/Support:**

None received.

**Enforcement Officer Comments:**

The applicant passed a final inspection on 6/26/19 which was conducted by officer Jordan Anderson.

**LICENSE SPECIALIST/REVIEWER/MANAGER**

| License Specialist | Date | Approval |
|---|---|---|
| Lauren Ware | 6/27/19 | x |

| Reviewer | Date | Approval |
|---|---|---|
| | 6.28.19 | ℘ |

| Manager | Date | Approval |
|---|---|---|

| Director | Date | Approval |
|---|---|---|

**Hold Terms:**

1. Insurance

**DESIGNEE  DECISION:**

| Name | Date | Approved | Disapproved | Discuss |
|---|---|---|---|---|

**MANAGER/DIRECTOR COMMENTS/NOTES:**

Exhibit 6
Page 3 of 4

Exhibit 6
Page 4 of 4

# Exhibit 7



**Washington State**
**Liquor and Cannabis Board**

| | |
|---|---|
| **License Number** | 423754 |
| **UBI Number** | 6043975500010001 |
| **Trade Name** | ZIPS CANNABIS |

## Source of Funds

**Identify where your money is coming from.**

**Detail each source(s) and dollar amount of where the money is coming from that you are using to fund the business** *(include the name of any financial institution(s), credit card lender or Investment Company)*

| Source | Account Number | Amount Contributing |
|---|---|---|
| UBS personal line of credit | ▉▉▉▉▉▉ | 1400000 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **Total:** | **$** 1,400,000.00 |

**Does the money you have gifted, loaned or invested give you a percentage of profit or part ownership in the business?**   **NO** ☒   **YES** ☐   If yes, what percentage?
_____

I certify under penalty of perjury that all answers and statements are true, correct and complete. I understand that untruthful or misleading answers are cause for rejection of my application and/or revocation of any license granted. I hereby authorize investigation of my criminal history, financial records and other sources as necessary for licensing.

**PRINT NAME**     Todd Brinkmeyer

**SIGNATURE**

DocuSigned by:
*T.B.Brinkmeyer*
DC6343CEBBD44F1...

**DATE**     5/12/2019

**Continuation Sheet Attached?**   ☐ **YES**   ☒ **NO**

LIQ1229   07/2016

Exhibit 7
Page 1 of 1

# Exhibit 8



**U.S. Department of Justice**

Office of the Deputy Attorney General

---

The Deputy Attorney General                    *Washington, D.C. 20530*

August 29, 2013

MEMORANDUM FOR ALL UNITED STATES ATTORNEYS

FROM:       James M. Cole
            Deputy Attorney General

SUBJECT:    Guidance Regarding Marijuana Enforcement

In October 2009 and June 2011, the Department issued guidance to federal prosecutors concerning marijuana enforcement under the Controlled Substances Act (CSA). This memorandum updates that guidance in light of state ballot initiatives that legalize under state law the possession of small amounts of marijuana and provide for the regulation of marijuana production, processing, and sale. The guidance set forth herein applies to all federal enforcement activity, including civil enforcement and criminal investigations and prosecutions, concerning marijuana in all states.

As the Department noted in its previous guidance, Congress has determined that marijuana is a dangerous drug and that the illegal distribution and sale of marijuana is a serious crime that provides a significant source of revenue to large-scale criminal enterprises, gangs, and cartels. The Department of Justice is committed to enforcement of the CSA consistent with those determinations. The Department is also committed to using its limited investigative and prosecutorial resources to address the most significant threats in the most effective, consistent, and rational way. In furtherance of those objectives, as several states enacted laws relating to the use of marijuana for medical purposes, the Department in recent years has focused its efforts on certain enforcement priorities that are particularly important to the federal government:

- Preventing the distribution of marijuana to minors;
- Preventing revenue from the sale of marijuana from going to criminal enterprises, gangs, and cartels;
- Preventing the diversion of marijuana from states where it is legal under state law in some form to other states;
- Preventing state-authorized marijuana activity from being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity;

Exhibit 8
Page 1 of 4

Memorandum for All United States Attorneys                                    Page 2
Subject:  Guidance Regarding Marijuana Enforcement

- Preventing violence and the use of firearms in the cultivation and distribution of marijuana;
- Preventing drugged driving and the exacerbation of other adverse public health consequences associated with marijuana use;
- Preventing the growing of marijuana on public lands and the attendant public safety and environmental dangers posed by marijuana production on public lands; and
- Preventing marijuana possession or use on federal property.

These priorities will continue to guide the Department's enforcement of the CSA against marijuana-related conduct.  Thus, this memorandum serves as guidance to Department attorneys and law enforcement to focus their enforcement resources and efforts, including prosecution, on persons or organizations whose conduct interferes with any one or more of these priorities, regardless of state law.[1]

Outside of these enforcement priorities, the federal government has traditionally relied on states and local law enforcement agencies to address marijuana activity through enforcement of their own narcotics laws.  For example, the Department of Justice has not historically devoted resources to prosecuting individuals whose conduct is limited to possession of small amounts of marijuana for personal use on private property.  Instead, the Department has left such lower-level or localized activity to state and local authorities and has stepped in to enforce the CSA only when the use, possession, cultivation, or distribution of marijuana has threatened to cause one of the harms identified above.

The enactment of state laws that endeavor to authorize marijuana production, distribution, and possession by establishing a regulatory scheme for these purposes affects this traditional joint federal-state approach to narcotics enforcement.  The Department's guidance in this memorandum rests on its expectation that states and local governments that have enacted laws authorizing marijuana-related conduct will implement strong and effective regulatory and enforcement systems that will address the threat those state laws could pose to public safety, public health, and other law enforcement interests.  A system adequate to that task must not only contain robust controls and procedures on paper; it must also be effective in practice. Jurisdictions that have implemented systems that provide for regulation of marijuana activity

---

[1] These enforcement priorities are listed in general terms; each encompasses a variety of conduct that may merit civil or criminal enforcement of the CSA.  By way of example only, the Department's interest in preventing the distribution of marijuana to minors would call for enforcement not just when an individual or entity sells or transfers marijuana to a minor, but also when marijuana trafficking takes place near an area associated with minors; when marijuana or marijuana-infused products are marketed in a manner to appeal to minors; or when marijuana is being diverted, directly or indirectly, and purposefully or otherwise, to minors.

Exhibit 8
Page 2 of 4

Memorandum for All United States Attorneys                                                  Page 3
Subject:  Guidance Regarding Marijuana Enforcement

must provide the necessary resources and demonstrate the willingness to enforce their laws and regulations in a manner that ensures they do not undermine federal enforcement priorities.

In jurisdictions that have enacted laws legalizing marijuana in some form and that have also implemented strong and effective regulatory and enforcement systems to control the cultivation, distribution, sale, and possession of marijuana, conduct in compliance with those laws and regulations is less likely to threaten the federal priorities set forth above.  Indeed, a robust system may affirmatively address those priorities by, for example, implementing effective measures to prevent diversion of marijuana outside of the regulated system and to other states, prohibiting access to marijuana by minors, and replacing an illicit marijuana trade that funds criminal enterprises with a tightly regulated market in which revenues are tracked and accounted for.  In those circumstances, consistent with the traditional allocation of federal-state efforts in this area, enforcement of state law by state and local law enforcement and regulatory bodies should remain the primary means of addressing marijuana-related activity.  If state enforcement efforts are not sufficiently robust to protect against the harms set forth above, the federal government may seek to challenge the regulatory structure itself in addition to continuing to bring individual enforcement actions, including criminal prosecutions, focused on those harms.

The Department's previous memoranda specifically addressed the exercise of prosecutorial discretion in states with laws authorizing marijuana cultivation and distribution for medical use.  In those contexts, the Department advised that it likely was not an efficient use of federal resources to focus enforcement efforts on seriously ill individuals, or on their individual caregivers.  In doing so, the previous guidance drew a distinction between the seriously ill and their caregivers, on the one hand, and large-scale, for-profit commercial enterprises, on the other, and advised that the latter continued to be appropriate targets for federal enforcement and prosecution.  In drawing this distinction, the Department relied on the common-sense judgment that the size of a marijuana operation was a reasonable proxy for assessing whether marijuana trafficking implicates the federal enforcement priorities set forth above.

As explained above, however, both the existence of a strong and effective state regulatory system, and an operation's compliance with such a system, may allay the threat that an operation's size poses to federal enforcement interests.  Accordingly, in exercising prosecutorial discretion, prosecutors should not consider the size or commercial nature of a marijuana operation alone as a proxy for assessing whether marijuana trafficking implicates the Department's enforcement priorities listed above.  Rather, prosecutors should continue to review marijuana cases on a case-by-case basis and weigh all available information and evidence, including, but not limited to, whether the operation is demonstrably in compliance with a strong and effective state regulatory system.  A marijuana operation's large scale or for-profit nature may be a relevant consideration for assessing the extent to which it undermines a particular federal enforcement priority.  The primary question in all cases – and in all jurisdictions – should be whether the conduct at issue implicates one or more of the enforcement priorities listed above.

Exhibit 8
Page 3 of 4

Memorandum for All United States Attorneys                                    Page 4
Subject:  Guidance Regarding Marijuana Enforcement

As with the Department's previous statements on this subject, this memorandum is
intended solely as a guide to the exercise of investigative and prosecutorial discretion.  This
memorandum does not alter in any way the Department's authority to enforce federal law,
including federal laws relating to marijuana, regardless of state law.  Neither the guidance herein
nor any state or local law provides a legal defense to a violation of federal law, including any
civil or criminal violation of the CSA.  Even in jurisdictions with strong and effective regulatory
systems, evidence that particular conduct threatens federal priorities will subject that person or
entity to federal enforcement action, based on the circumstances.  This memorandum is not
intended to, does not, and may not be relied upon to create any rights, substantive or procedural,
enforceable at law by any party in any matter civil or criminal.  It applies prospectively to the
exercise of prosecutorial discretion in future cases and does not provide defendants or subjects of
enforcement action with a basis for reconsideration of any pending civil action or criminal
prosecution.  Finally, nothing herein precludes investigation or prosecution, even in the absence
of any one of the factors listed above, in particular circumstances where investigation and
prosecution otherwise serves an important federal interest.

cc:     Mythili Raman
        Acting Assistant Attorney General, Criminal Division

        Loretta E. Lynch
        United States Attorney
        Eastern District of New York
        Chair, Attorney General's Advisory Committee

        Michele M. Leonhart
        Administrator
        Drug Enforcement Administration

        H. Marshall Jarrett
        Director
        Executive Office for United States Attorneys

        Ronald T. Hosko
        Assistant Director
        Criminal Investigative Division
        Federal Bureau of Investigation

Exhibit 8
Page 4 of 4

# Exhibit 9

# 2 Years After Sessions Rescinded Cole Memo, Prosecutors Continue To Adhere To Obama-Era Enforcement Guidelines

*Benzinga Cannabis Contributors*

**By Tom Firestone of *Baker McKenzie*.**

January 4, 2020 marked the two year anniversary of the "Sessions Memorandum" in which (then) Attorney General Jeff Sessions rescinded the Cole Memorandum and other Obama era DOJ guidance which essentially stated that DOJ would not prosecute state-compliant marijuana-related activity.  Many saw the statement as a declaration of a new "War on Drugs." However, a review of DOJ cases brought over the last two years reveals that the Trump Justice Department has largely adhered to the Obama Administration's enforcement priorities.

## The Cole Memorandum

The Cole Memorandum stated that federal cannabis enforcement resources would be concentrated on cases involving:

---

## THE Trading and Investing Boot Camp

Learn everything about stock trading and investing from start to finish.

You can register for free to our 3-week Boot Camp for 1:1 coaching, a 24/hour discord chat, and a paper trading competition.

## Click here to claim your Boot Camp registration

---

- Revenue from the sale of cannabis going to criminal enterprises, gangs, and cartels,
- State authorized cannabis activity being used as a cover or pretext for the trafficking of other illegal drugs or other illegal activity,
- Violence and the use of firearms in the cultivation and distribution of cannabis,
- Distribution of cannabis to minors,
- Diversion of cannabis from states where it is legal under state law in some form to other states,
- Drugged driving and the exacerbation of other adverse public health consequences associated with cannabis use,

Exhibit 9
Page 1 of 4

- Growing of cannabis on public lands and the attendant public safety and environmental dangers posed by cannabis production on public lands, and
- Cannabis possession or use on federal property.

The Cole Memorandum also stated that:

> In jurisdictions that have enacted laws legalizing marijuana in some form and that have also implemented strong and effective regulatory and enforcement systems to control the cultivation, distribution, sale, and possession of marijuana, conduct in compliance with those laws and regulations is less likely to threaten the federal priorities set forth above.... The primary question in all cases – and in all jurisdictions-should be whether the conduct at issue implicates one or more of the enforcement priorities listed above.

In other words, so long as a marijuana business complied with state law, it would not be subject to federal prosecution unless it violated one of the Cole Memorandum priorities.  At his confirmation hearing in 2018, Attorney General Barr suggested that DOJ would not prosecute state compliant marijuana activity but has left the Sessions Memorandum in place as official DOJ policy.  Nevertheless, the Sessions Memorandum appears to have done little to change Obama Administration policy.

## DOJ Cases

We reviewed DOJ press releases on approximately 50 federal prosecutions involving marijuana during the period 2018-2020 and did not find one that involved purely state compliant activity. In fact, almost all involved Cole Memorandum priorities – most commonly, organized crime, the use of firearms, and trafficking of other illegal drugs. Those prosecutions which did not involve one of the Cole Memorandum priorities took place in states where recreational marijuana has not (or had not yet) been legalized, such as Texas, Oklahoma and Georgia.

This review also revealed another federal enforcement priority not identified in the Cole Memorandum – public corruption in the marijuana industry.  For example, one reported case involved a former Maryland state delegate who allegedly took bribes in exchange for voting in favor of a bill to increase the number of medical marijuana grower and processing licenses available to an out-of-state company. Another involved a police officer who used his official position to protect a marijuana trafficking business. One case involved a Border Patrol Agent who took bribes from a suspected drug trafficker in exchange for information about Customs Border Protection surveillance. Another involved the prosecution of the Mayor of Fall River, Massachusetts for extorting more than $250,000 in bribes from cannabis businesses in return for assistance with licenses.

In such official extortion cases, legitimate marijuana businesses, far from

Exhibit 9
Page 2 of 4

being prosecuted, are actually treated as victims. We did not identify any cases involving the prosecution of financial institutions for laundering marijuana proceeds. Nor did we identify any cases involving the prosecution of ancillary legitimate businesses that supported marijuana businesses by providing them with otherwise legitimate products or services.

Finally, almost all of the DOJ press releases express appreciation to state and local law enforcement and many cited the Organized Crime Drug Enforcement Task Force (OCDETF) program, a federal multi-agency, multi-jurisdictional task force that supplies supplemental federal funding to federal and state agencies to help them disrupt and dismantle drug trafficking organizations. Such statements indicate the great extent to which federal narcotics enforcement is dependent on assistance from state and local law enforcement. As long as this remains the case, state compliant behavior is unlikely to be prosecuted, regardless of DOJ's publicly stated policy.

See Also: MedMen CEO On Recent Layoffs: 'We're On Chapter Two, Where Execution Means Profitability'

*Tom Firestone is a Partner at Baker & McKenzie LLP. He is Co-chair of the firm's North American Government Enforcement practice and is a member of the Firm's Global Compliance & Investigations Steering Committee. He represents clients in matters involving anti-corruption and the US Foreign Corrupt Practices Act (FCPA), internal investigations and transactional due diligence. Prior to joining the Firm, he spent 14 years at the US Department of Justice. He worked as an Assistant US Attorney in the Eastern District of New York where he prosecuted transnational organized crime cases. He also worked as Resident Legal Adviser and Acting Chief of the Law Enforcement Section at the US Embassy in Moscow.*

The preceding article is from one of our external contributors. It does not represent the opinion of Benzinga and has not been edited.

---

## These Options Trades Make Me Money

I'm Nic Chahine -- The guy who made a massive 300% return in two weeks with BA options this year. Then I 4X'd my investment with ETF calls in June.

So obviously, I trade options *for a living*.

Now I'm sharing my trades as I make them with Benzinga Options. And I want you to join me for the ride.

**Click here to subscribe to Benzinga Options.**

---

© 2020 Benzinga.com. Benzinga does not provide investment advice. All

*rights reserved.*

# Exhibit 10



# RESIDENCY REQUIREMENTS FOR MARIJUANA LICENSURE

by Allie Howell
January 2019



Exhibit 10
Page 1 of 16



Reason Foundation's mission is to advance a free society by developing, applying and promoting libertarian principles, including individual liberty, free markets and the rule of law. We use journalism and public policy research to influence the frameworks and actions of policymakers, journalists and opinion leaders.

Reason Foundation's nonpartisan public policy research promotes choice, competition and a dynamic market economy as the foundation for human dignity and progress. Reason produces rigorous, peer-reviewed research and directly engages the policy process, seeking strategies that emphasize cooperation, flexibility, local knowledge and results. Through practical and innovative approaches to complex problems, Reason seeks to change the way people think about issues, and promote policies that allow and encourage individuals and voluntary institutions to flourish.

Reason Foundation is a tax-exempt research and education organization as defined under IRS code 501(c)(3). Reason Foundation is supported by voluntary contributions from individuals, foundations and corporations. The views are those of the author, not necessarily those of Reason Foundation or its trustees.

Exhibit 10
Page 2 of 16

# TABLE OF CONTENTS

**RESIDENCY REQUIREMENTS FOR MARIJUANA LICENSURE** ..................................................... **1**

    1.1 JUSTIFICATIONS FOR RESIDENCY REQUIREMENTS ...................................... 1

    1.2 COSTS OF RESIDENCY REQUIREMENTS ................................................................. 4

    1.3 SUMMARY OF RESIDENCY REQUIREMENTS ......................................................... 5

    1.4 DO RESIDENCY REQUIREMENTS ACHIEVE ECONOMIC GOALS? ................... 8

    1.5 DO RESIDENCY REQUIREMENTS REDUCE MARIJUANA DIVERSION? ......................... 9

    1.6 RESIDENCY REQUIREMENTS AND TAXES ......................................................... 10

    1.7 CONCLUSIONS ........................................................................................................... 11

**ABOUT THE AUTHOR** .......................................................................................................... **12**

Exhibit 10
Page 3 of 16

**PART 1**

# RESIDENCY REQUIREMENTS FOR MARIJUANA LICENSURE

Many states that have legalized recreational or medical marijuana have included requirements that marijuana license holders, employees, or even consumers be state residents. The requirement is justified as a way to ensure safety in the industry and keep out-of-state investors from reaping all the economic benefits. Yet by limiting investment and entry into the legal marijuana business, residency requirements could prevent potential entrepreneurs from getting the capital they need.

**1.1**   ## JUSTIFICATIONS FOR RESIDENCY REQUIREMENTS

Many marijuana regulations are justified as necessary to comply with the federal government's marijuana enforcement priorities laid out in the Cole Memo, a 2013 memo issued by then-Deputy Attorney General James Cole in response to legalization in Colorado and Washington. Related to residency requirements is the priority of "[p]reventing the

diversion of marijuana from states where it is legal under state law in some form to other states."[1]

The Financial Crimes Enforcement Network (FinCEN) later issued guidance related to the Bank Secrecy Act for financial institutions interested in providing services to marijuana businesses. The guidance provides a long list of "red flags" that may signal a business is violating state law or implicating a Cole Memo priority. Two of these red flags directly relate to residency requirements:

1. A marijuana-related business engages in international or interstate activity, including by receiving cash deposits from locations outside the state in which the business operates, making or receiving frequent or large interstate transfers, or otherwise transacting with persons or entities located in different states or countries.

2. The owner(s) or manager(s) of a marijuana-related business reside outside the state in which the business is located.

The existence of red flags could lead to a financial institution filing a "marijuana priority" suspicious activity report, which includes "(iii) details regarding the enforcement priorities the financial institution believes have been implicated; and (iv) dates, amounts, and other relevant details of financial transactions involved in the suspicious activity"—or terminating the relationship altogether.[2] While financial institutions typically avoid working with cannabis businesses altogether due to the difficulties of complying with FinCEN regulations and the risk of losing federal bank insurance, there were 486 depository institutions serving marijuana businesses in September 2018.[3]

---

[1] Cole, James M. "Memorandum for all United States Attorneys." *U.S. Department of Justice Office of the Attorney General.* Aug. 29, 2013.
https://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf

[2] "BSA Expectations Regarding Marijuana-Related Businesses." *United States Department of Treasury Financial Crimes Enforcement Network.* Feb. 14, 2014.
https://www.fincen.gov/resources/statutes-regulations/guidance/bsa-expectations-regarding-marijuana-related-businesses

[3] Reiners, Lee and John Matthews. "Federal Law Leaves Banks Shying Away from Marijuana Businesses." *The FinReg Blog.* Dec. 5, 2016.
https://sites.duke.edu/thefinregblog/2016/12/05/federal-law-leaves-banks-shying-away-from-marijuana-businesses/; "Marijuana Banking Update." *Financial Crimes Enforcement Network.*
https://www.fincen.gov/sites/default/files/shared/Marijuana_Banking_Update_September_2018.pdf

Exhibit 10
Page 5 of 16

Additionally, early residency requirements, such as those in Colorado and Washington, were based on a fear that legal marijuana would be easily diverted into the black market. Residency requirements could, according to regulators, keep profits out of international drug cartels and keep the industry smaller and easier to manage.[4] When discussing residency requirements in Alaska, Assistant Attorney General Harriet Milks commented that with unchecked outside investment, "there's no way to control any of it, so it's a big problem."[5]

Residency requirements are also a form of economic protectionism for state residents. Since marijuana businesses may be illegal in neighboring states, there is fear that out-of-state businesses will swoop in and take advantage of voters' hard work in passing legalization. As summarized by a business owner in Ohio: "We're the ones who fought for this. Allowing people from outside the state is not benefiting Ohio or Ohioans or our unemployment."[6]

Requirements are further justified as simply giving state residents a head start since entrepreneurs can move into the state and eventually overcome the restriction. In newly legal states, inexperienced locals will have a chance to establish their business before experienced businesses from legal states can compete.[7]

Finally, by reducing investment in the marijuana industry, residency requirements are defended as necessary to keep the industry from being overrun by big business. In Colorado, for example, some credit the residency requirements with allowing small businesses to set up shop. As summarized by Colorado attorney Rachel Gillette: "It's

---

[4]   Wyatt, Kristen. "Legalized States Taking Fresh Look at Out-Of-State Marijuana Investing." *The Cannabist.* Jan. 20, 2016. https://www.thecannabist.co/2016/01/20/marijuana-investing-lawmakers-out-of-state-ownership/46945/

[5]   Andrews, Laurel. "Alaska Marijuana Regulators Loosen Residency Requirements for New Business Owners." *Anchorage Daily News.* Sept. 28, 2016. https://www.adn.com/cannabis-north/article/alaska-marijuana-control-board-makes-major-residency-requirement-change-last-minute/2015/11/21/

[6]   Borchardt, Jackie. "Ohio Medical Marijuana Entrepreneurs Want Residency Requirement for Business Licenses." *Cleveland.com.* Mar. 21, 2017. https://www.cleveland.com/metro/index.ssf/2017/03/ohio_medical_marijuana_entrepr.html

[7]   Overton, Penelope. "First Pot-Business Licenses Would Go to Maine Residents of at Least 4 Years." *Portland Press Herald.* https://www.pressherald.com/2018/04/03/first-pot-business-licenses-would-go-to-maine-residents-of-at-least-4-years/

[residency requirements] allowed for small businesses, mom and pops. It doesn't allow for corporate consolidation in the marketplace. You can be a small business in Colorado and compete."[8]

| 1.2 | ## COSTS OF RESIDENCY REQUIREMENTS |
|-----|-----------------------------------|

Any entry restriction in the legal marijuana industry has the potential to reduce investment and prevent the industry from developing. Reductions in the size of the marijuana market may make it harder for the legal market to replace the illicit one as the main supplier of marijuana.

The main cost of residency requirements is a loss of funding. A lack of capital in the marijuana industry is important for two reasons. First, because marijuana is still illegal on the federal level, businesses have extremely limited access to traditional bank loans. Further, marijuana entrepreneurs cannot write off business expenses on their federal taxes and growers have a hard time obtaining crop insurance.[9] Second, state licenses to start a marijuana business are prohibitively expensive. Without access to banks, only state residents with access to non-bank financing or who independently have start-up cash can enter the industry. Out-of-state investors eager to join the industry could be another source of capital.

This is what happened in Oregon. The state initially required 51% of a marijuana business to be owned by two-year state residents, but repealed these requirements in 2016. Portland attorney and Executive Director of the Oregon Cannabis Association Amy Margolis pushed for the change because "[f]or every five people who came into my office, three or four of them were looking for capital, and they couldn't find it here in Oregon. It became clear that

---

[8]   Crombie, Noelle. "Out-Of-State Companies Eye Oregon Marijuana Market for Expansion." *The Oregonian.* April 25, 2016. https://www.oregonlive.com/marijuana/index.ssf/2016/04/colorado_marijuana_entrepreneu.html

[9]   Weed, Julie. "California Marijuana Start-Ups, Shut Out From Banks, Turn to Private Backing." *The New York Times.* Dec. 27, 2017. https://www.nytimes.com/2017/12/27/business/smallbusiness/california-marijuana-start-ups.html

unless people could reach outside the state for investment money, we weren't going to have a very successful market."[10]

Colorado also updated its residency requirements to allow out-of-state investors more access to the industry. Residency requirements could become problematic as other states open up markets with less restrictive rules, as summarized by head of the Colorado Cannabis Chamber of Commerce, Tyler Henson: "We can't go get a loan from the bank to grow our business to help us accelerate. We are susceptible to falling behind other states."[11]

The change allowed U.S. citizens to have ownership interest in marijuana businesses, but all businesses must still have at least one Colorado resident direct beneficial interest owner. Businesses with any non-resident owners are capped at 15 owners while resident owned businesses can have an unlimited number of owners. Officers with day-to-day operational control must have been residents for at least one year and must maintain residency while they have day-to-day control.[12] Legislation passed by the legislature but vetoed by the governor in June 2018 could have lifted the 15 owner cap and allowed publicly traded cannabis companies.[13]

| 1.3 | ## SUMMARY OF RESIDENCY REQUIREMENTS |

For recreational marijuana, state residency restrictions were included in the initial marijuana regulations for both Colorado and Washington. California, Nevada, and Oregon have no residency restrictions, with Alaska and Massachusetts following suit.

---

[10]   Schroyer, John. "Flood of Investment Money Flowing to Oregon Cannabis Firms After Residency Change." *Marijuana Business Daily*. July 28, 2016. https://mjbizdaily.com/flood-of-investment-money-flowing-to-oregon-cannabis-firms-after-residency-change/

[11]   Wyatt, Kristen. "Legalized States Taking Fresh Look at Out-Of-State Marijuana Investing."

[12]   Code of Colorado Regulations. 1 CCR 212-2. https://www.colorado.gov/pacific/sites/default/files/ColoradoRegister.pdf1%20CCR%20212%20-2%20Retail%20Effective%2002022018.pdf

[13]   "HB18-1011: Marijuana Business Allow Publicly Traded Owners." *Colorado General Assembly*. https://leg.colorado.gov/bills/hb18-1011

| TABLE 1: RESIDENCY RESTRICTIONS IN LEGAL RECREATIONAL MARIJUANA STATES | | |
|---|---|---|
| **State** | **Owners** | **Employees** |
| Alaska[14] | The sole proprietor, each business partner, each member of a limited liability company, and all shareholders in a corporation must be state residents. | None |
| California[15] | None | None |
| Colorado[16] | Each marijuana establishment must have at least one direct beneficial interest owner who holds an associated key license and has been a state resident for at least one year. Businesses can have an unlimited number of direct beneficial interest owners if they have been residents for one year. U.S. citizens who are not Colorado residents may apply for an associated key license only if there has been a "finding of suitability." Businesses with non-resident owners can only have 15 owners. The associated key license application fee for non-residents is $4,925 and $725 for residents. | Key and support employees must be residents. There is a potential workforce training or development exemption to the residency requirement. |
| Massachusetts[17] | The majority of microbusiness members or executives and all craft marijuana cooperative members must have resided in the state for 12 months prior to application. Applicants for the social equity program also must be residents. | None |
| Nevada[18] | None | None |
| Oregon[19] | None | None |
| Washington[20] | The sole proprietor or all members of any other business organization structure must have resided in the state six months prior to application. Managers, spouses, and persons expecting a share of profit also must meet residency requirement. | The six-month residency requirement applies to managers or agents who manage the business. |

[14]   Alaska Administrative Code. 3 AAC Chapter 306. https://www.commerce.alaska.gov/web/Portals/9/pub/MCB/StatutesAndRegulations/MarijuanaRegulations.pdf; "Marijuana Handler Permit Application Instructions." *Alcohol and Marijuana Control Office*. July 3, 2018. https://www.commerce.alaska.gov/web/Portals/9/pub/MCB/MJHandlerPermit/Marijuana%20Handler%20Permit%20Application%20Instructions.pdf

[15]   Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA). California Law. https://leginfo.legislature.ca.gov/faces/codes_displayexpandedbranch.xhtml?tocCode=BPC&division=10.&title=&part=&chapter=&article

[16]   1 CCR 212-2.

[17]   Code of Massachusetts Regulations. 953 CMR. Cannabis Control Commission. https://www.mass.gov/files/documents/2018/03/27/935cmr500.pdf

[18]   Nevada Revised Statues (NRS). Chapter 453D. https://www.leg.state.nv.us/NRS/NRS-453D.html#NRS453DSec230; email correspondence with the Nevada Department of Taxation.

[19]   "OLCC Marijuana Program: Frequently Asked Questions (all)." *Oregon Liquor Control Commission*. https://www.oregon.gov/olcc/marijuana/Documents/MJ_FAQS.pdf

[20]   Washington Administrative Code. Title 314. Chapter 314-55. Marijuana Licenses, Application Process, Requirements, and Reporting. http://apps.leg.wa.gov/wac/default.aspx?cite=314-55

Exhibit 10
Page 9 of 16

Most marijuana residency restrictions use a time period to determine eligibility for licensure. In Alaska, residency is determined by eligibility for the state's permanent fund dividend, which typically requires one year of state residency.[21] The residency requirement had previously been met by being eligible to vote in the state, which only requires an Alaska address. The less burdensome regulation was thrown out only a month after it was enacted.[22]

While Massachusetts does not have any specific residency requirements for marijuana business employees, the state has created an incentive system to encourage resident hiring. For example, businesses can achieve a "local employment leader" leadership rating when at least 51% of employees and executives have been state residents for 12 months prior to an application. Leadership ratings are taken into consideration when the Cannabis Control Commission levies fines or imposes disciplinary action.[23]

Some states also restrict investments from non-resident investors that do not qualify as licensed owners but wish to provide capital to a business. Colorado differentiates so that state residency requirements do not apply to indirect beneficial interest owners, qualified limited passive investors, or permitted economic interests.[24] Yet in Washington, for example, the six-month residency requirement is especially burdensome because it applies to all investors—even those with only .01% ownership and their spouses. In fact, the requirement is so extensive that it even includes royalties on branded products.[25] Washington only allows gifts and loans from out-of-staters and still requires background checks for this source of financing.[26]

---

[21]   3 AAC 306; "Permanent Fund Dividend Statutes and Regulations 2017." *State of Alaska Department of Revenue.* Jan. 1, 2017. https://pfd.alaska.gov/LinkClick.aspx?fileticket=rxyLww36su8%3d&tabid=495&portalid=6

[22]   "Alaska Tightens Residency Requirements for MJ Licenses." *Marijuana Business Daily.* Dec. 2, 2015. https://pfd.alaska.gov/LinkClick.aspx?fileticket=rxyLww36su8%3d&tabid=495&portalid=6

[23]   935 CMR.

[24]   1 CCR 212-2.

[25]   McVay, Robert. "Washington Marijuana: Residency and Ownership Revisited." *Canna Law Blog.* Dec. 20, 2017. https://www.cannalawblog.com/washington-marijuana-residency-and-ownership-revisited/

[26]   Bricken, Hillary. "Washington State Will Allow for Out of State Cannabis Financing (Sort Of)." *Canna Law Blog.* May 25, 2016. https://www.cannalawblog.com/washington-state-will-allow-for-out-of-state-cannabis-financing-sort-of/

Finally, local governments may impose their own residency requirements. In California, a state where the new marijuana market has been severely hampered by burdensome local regulations, many localities have imposed residency requirements.

For example, Hollister, California requires that 75% of applicants and managers of the cannabis facility have been state residents for the past three years.[27] Applicants also must submit in writing that they will give preference to hiring city residents.[28]

Medical marijuana programs also have residency requirements. When Hawaii updated its medical marijuana program in 2015, it included a five-year residency requirement for 51% of owners.[29]

## 1.4  DO RESIDENCY REQUIREMENTS ACHIEVE ECONOMIC GOALS?

Reducing investment in the legal marijuana industry is clearly problematic. As more states legalize marijuana and more investors become interested in the market, states with residency requirements will be at a disadvantage. Colorado already adjusted its regulation to avoid being left behind as investors looked to more-open states.

Many regulators claim that residency requirements allow small businesses a chance to compete or at least get their foot in the door. In reality, this claim is not always true. In Washington, for example, the ten largest farms harvested 16.79% of all dry weight weed from January to September 2017. The 500 smallest firms harvested only 13.12%. The edible market is especially dominated by large firms. Of the over 1,000 companies with licenses that would allow them to process edibles between September 2016 and September 2017, only 74 companies sold one. The five largest edible producers sold 51.15% of the $38.7

---

[27]   "Hollister Cannabis Facilities Permit Application and Information." *City of Hollister California.* http://hollister.ca.gov/business/medical-cannabis/

[28]   Hollister Municipal Code. Title 5 Business Licenses and Registrations. Chapter 5.42 Cannabis Facilities Regulatory Permit. 5.42.050 Regulatory Permit Required. https://library.municode.com/ca/hollister/codes/code_of_ordinances

[29]   House Bill 321. State of Hawaii. 2015. https://www.capitol.hawaii.gov/session2015/bills/HB321_CD1_.HTM

Exhibit 10
Page 11 of 16

million in edibles sold in 12 months. During the same time period, the top 20 producers sold 90.48% of edibles.[30]

While Washington only has a six-month residency requirement, it is quite expansive. Yet after a few years of legal sales, consolidation took place as companies began to take advantage of economies of scale or bought expensive equipment to produce cutting edge marijuana products. Reducing license fees or opening up access to banking would be more beneficial to small business owners than residency requirements.

## 1.5 DO RESIDENCY REQUIREMENTS REDUCE MARIJUANA DIVERSION?

The effectiveness of residency requirements in preventing marijuana diversion is a difficult question to answer. Residency requirements did not prevent Colorado from being sued by border states for marijuana diversion.[31]

Further, it is almost impossible to make a comparison because most states without residency requirements are relatively new to recreational sales. Nevada began legal sales in 2017 but is yet to fully open up license applications.[32] California's rollout of legal marijuana has been rocky and an estimated 85–90% of marijuana sales still take place illegally.[33]

Oregon rolled back residency requirements in 2016. The state has recently been a target of federal attention due to marijuana diversion. At a summit in February 2018, U.S. Attorney Billy Williams said the following: "Here's what I know in terms of the landscape here in Oregon, and that is, we have an identifiable and formidable marijuana overproduction and

---

[30]  Black, Lester. "Legal Weed Isn't The Boon Small Businesses Thought It Would Be." *FiveThirtyEight.* Dec. 29, 2017. https://fivethirtyeight.com/features/legal-weed-isnt-the-boon-small-businesses-thought-it-would-be/

[31]  Wolf, Richard and Trevor Hughes. "Justices Won't Hear Nebraska, Oklahoma Marijuana Dispute With Colorado." *USA Today.* March 21, 2016. https://www.usatoday.com/story/news/2016/03/21/marijuana-lawsuit-colorado-oklahoma-nebraska-supreme-court/81984006/

[32]  "Getting a License." *Marijuana in Nevada.* http://marijuana.nv.gov/Businesses/GettingALicense/; email correspondence with Nevada Department of Taxation.

[33]  White, Martha C. "Growing Like a Weed? California Marijuana Market Off to Slow Start." *NBC News.* April 20, 2018. https://www.nbcnews.com/business/business-news/growing-weed-california-marijuana-market-slow-start-n867871

diversion problem. And make no mistake about it, we're going to do something about it."
Overproduction was blamed for the diversion—the state is estimated to produce three
times more than it can consume a year.[34] This should not come as a huge surprise; the
industry is fairly new and it may simply take some time for the market to stabilize.

The state was also known for a thriving black market before legalization.[35] With increased
federal and state attention to marijuana trafficking with legalization, diversion may be the
same as before and only gaining federal attention now.

## 1.6   RESIDENCY REQUIREMENTS AND TAXES

It is useful to note that residency requirements have little impact on tax revenue from
marijuana. This is especially important to consider as many states designed marijuana
regulations to maximize tax revenue. California, for example, collects taxes from both
residents and non-residents in the industry. If income is California-sourced, out-of-state
partners, limited liability company members, or S corporation shareholders will be taxed by
California on that income. These non-residents must fill out a California non-resident tax
return. Further, S corporations, partnerships, and limited liability companies must withhold
7% on distributions of California-sourced income to out-of-state shareholders, partners, or
owners if distributions exceed $1,500 annually. This mandatory withholding tends to
encourage non-residents to file California tax returns.[36]

For traditional C corporations, income taxes are paid by the corporation, not the
stockholders. Non-resident stockholders are then taxed by their resident state on all
dividends and capital gain distributions annually and when the stock is sold. An exception
is if the California corporation pays a salary or director fees to an investor, then that income
is taxable to California.[37]

There may be slightly less compliance in non-residents than in residents. Most states do,
however, have reciprocal agreements with other states and the IRS to assist in collecting

---

[34]   The Associated Press. "U.S. Prosecutor: Oregon Has a Big Pot Overproduction Problem." *NY Daily News*. Feb. 2, 2018. http://www.nydailynews.com/newswires/news/business/prosecutor-oregon-big-pot-overproduction-problem-article-1.3794431

[35]   Ibid.

[36]   Email correspondence with Michael R. Snell, Tax and Accounting Offices of Michael R. Snell.

[37]   Ibid.

taxes owed in other states. So, for example, if an Arizona resident owes taxes on California-sourced income, Arizona will help collect the taxes.[38]

In New Jersey, a state considering marijuana legalization with policymakers highly motivated by tax revenue, the rules are similar. Withholding for non-residents ranges from 6.37% to 9% depending on organization type.[39]

Tax collection is an important concern when discussing recreational marijuana rules, but it should not be used to justify residency requirements. In fact, lifting residency requirements could potentially increase tax revenue by increasing industry investment.

## 1.7  CONCLUSIONS

Residency requirements are justified as both a public safety regulation and form of economic protectionism. While the use of residency requirements to avoid federal intervention makes some sense, it is not clear that the requirements reduce marijuana diversion or trafficking. The requirements are also used by regulators to keep the industry small and manageable. Yet reductions in enforcement costs come at the expense of the legal market—keeping the legal marijuana industry small means money still must be spent prosecuting those involved in the black market.

Economic protectionism also has the effect of reducing overall market size. Advocates of protectionism claim that the marijuana industry can be made up of small businesses because of residency restrictions. In Washington, however, consolidation has taken place despite strict requirements.

In New Jersey, draft regulations for marijuana legislation contain residency requirements as seen in many other states. Policymakers would be wise to consider if the reduction in investment is worth the supposed benefits for regulators. With the requirements, the industry will likely suffer as out-of-state investment and expertise flow into other states.

---

[38]   Ibid.
[39]   Ibid.

# ABOUT THE AUTHOR

**Allie Howell** is a research intern at Reason. Previously, she was a Burton C. Gray Memorial intern at Reason and an economic policy intern at the Manhattan Institute. Allie has been published on Economics21.org, the Foundation for Economic Education, and Reason. She is a recent graduate of Hillsdale College where she majored in economics and mathematics. Allie is attending Notre Dame Law School.

Exhibit 10
Page 15 of 16



Exhibit 10
Page 16 of 16

# Exhibit 11



HOME / **MAP OF MARIJUANA LEGALITY BY STATE**

OUR SERVICES    THE DISA DIFFERENCE    BLOG    CAREERS    ABOUT    CONTACT

# MAP OF MARIJUANA LEGALITY BY STATE

## WONDERING WHAT THE LAW IS IN YOUR STATE?



### Start A Drug Testing Policy

Educating your employees and enforcing a consistent drug testing policy is crucial to keeping your workplace safe. Talk with a DISA representative today and get the information you need to start a drug testing policy at your company.

CONTACT US

Marijuana laws are changing at a rapid pace across all 50 states, making things a bit confusing at times. In order to keep up with the ever-changing laws, DISA has provided this interactive map for information on legalization, medical use, recreational use, and anything in between.

**Are you wondering what the marijuana laws are in your state?**

This marijuana legalization map clearly defines the laws in each state and remains up-to-date with the latest changes on a monthly basis. It's important to understand and respect the rules that vary across the U.S. regarding marijuana use, and whether you're a visiting tourist, or a resident the following

Exhibit 11
Page 1 of 7

Map of Marijuana Legality by State                                              Page 2 of 7

information will help you steer clear of any misunderstandings or trouble. Scroll over each state to

learn more about their individual legalization laws.

**Not sure where to start with Drug Testing?**

>> Drug & Alcohol Testing Overview
>> DOT & Transportation Compliance
>> Pre-Employment Drug Testing
>> Random Drug Testing
>> Cost of Drug Testing Calculator

**Last Updated:** July 2020

**Note:** State status reflects current laws at time of update, not pending legislation or future dates upon

which marijuana becomes available medicinally or recreationally.

* Enactment is pending until future date.

■Legalized ■Medical and Decriminalized ■Medical ■Decriminalized
□Fully illegal

Exhibit 11
Page 2 of 7

Map of Marijuana Legality by State



| State | Legal Status | Medicinal | Decriminalized | State Laws |
|-------|--------------|-----------|----------------|------------|
| Alabama | Fully Illegal | No | No | View State Laws |
| Alaska | Fully Legal | Yes | Yes | View State Laws |
| Arizona | Mixed | Yes | No | View State Laws |
| Arkansas | Mixed | Yes | No | View State Laws |
| California | Fully Legal | Yes | Yes | View State Laws |
| Colorado | Fully Legal | Yes | Yes | View State Laws |
| Connecticut | Mixed | Yes | Yes | View State Laws |
| Delaware | Mixed | Yes | Yes | View State Laws |

Exhibit 11
Page 3 of 7

Map of Marijuana Legality by State

Page 4 of 7

| State | Legal Status | Medicinal | Decriminalized | State Laws |
|---|---|---|---|---|
| District of Columbia | Fully Legal | Yes | Yes | View State Laws |
| Florida | Mixed | Yes | No | View State Laws |
| Georgia | Mixed | CBD Oil Only | No | View State Laws |
| Hawaii | Mixed | Yes | Yes | View State Laws |
| Idaho | Fully Illegal | No | No | View State Laws |
| Illinois | Fully Legal | Yes | Yes | View State Laws |
| Indiana | Mixed | CBD Oil Only | No | View State Laws |
| Iowa | Mixed | CBD Oil Only | No | View State Laws |
| Kansas | Fully Illegal | No | No | View State Laws |
| Kentucky | Mixed | CBD Oil Only | No | View State Laws |
| Louisiana | Mixed | Yes | No | View State Laws |
| Maine | Fully Legal | Yes | Yes | View State Laws |
| Maryland | Mixed | Yes | Yes | View State Laws |
| Massachusetts | Fully Legal | Yes | Yes | View State Laws |
| Michigan | Fully Legal | Yes | Yes | View State Laws |
| Minnesota | Mixed | Yes | Yes | View State Laws |
| Mississippi | Fully Illegal | No | Yes | View State Laws |
| Missouri | Mixed | Yes | Yes | View State Laws |
| Montana | Mixed | Yes | No | View State Laws |
| Nebraska | Fully Illegal | No | Yes | View State Laws |
| Nevada | Fully Legal | Yes | Yes | View State Laws |

https://disa.com/map-of-marijuana-legality-by-state

8/21/2020

Exhibit 11
Page 4 of 7

Map of Marijuana Legality by State

Page 5 of 7

| State | Legal Status | Medicinal | Decriminalized | State Laws |
|---|---|---|---|---|
| New Hampshire | Mixed | Yes | Yes | View State Laws |
| New Jersey | Mixed | Yes | No | View State Laws |
| New Mexico | Mixed | Yes | Yes | View State Laws |
| New York | Mixed | Yes | Yes | View State Laws |
| North Carolina | Fully Illegal | No | Yes | View State Laws |
| North Dakota | Mixed | Yes | Yes | View State Laws |
| Ohio | Mixed | Yes | Yes | View State Laws |
| Oklahoma | Mixed | Yes | No | View State Laws |
| Oregon | Fully Legal | Yes | Yes | View State Laws |
| Pennsylvania | Mixed | Yes | No | View State Laws |
| Rhode Island | Mixed | Yes | Yes | View State Laws |
| South Carolina | Fully Illegal | No | No | View State Laws |
| South Dakota | Fully Illegal | No | No | View State Laws |
| Tennessee | Fully Illegal | No | No | View State Laws |
| Texas | Mixed | CBD Oil Only | No | View State Laws |
| Utah | Mixed | Yes | No | View State Laws |
| Vermont | Fully Legal | Yes | Yes | View State Laws |
| Virginia | Mixed | CBD Oil Only | Yes | View State Laws |
| Washington | Fully Legal | Yes | Yes | View State Laws |
| West Virginia | Mixed | Yes | No | View State Laws |
| Wisconsin | Fully Illegal | No | No | View State Laws |

https://disa.com/map-of-marijuana-legality-by-state

8/21/2020

Exhibit 11
Page 5 of 7

Map of Marijuana Legality by State

| State | Legal Status | Medicinal | Decriminalized | State Laws |
|-------|-------------|-----------|----------------|------------|
| Wyoming | Fully Illegal | No | No | View State Laws |



TELL US ABOUT YOURSELF AND A DISA EXPERT WILL CONTACT YOU ABOUT HOW WE CAN CUSTOMIZE OUR SOLUTIONS TO MEET YOUR NEEDS

CONTACT US

Subscribe to our        Subscribe

**DISA Global Solutions**

**General**
About DISA
The DISA Difference
Blog
Careers

**Services**
Drug and Alcohol Testing
Background Screening

**Contact**
Call Us: 1-800-752-6432
Email: sales@disa.com
Contact Us

Map of Marijuana Legality by State

10900 Corporate
Centre Drive Ste.
250

Houston, TX
77041

Privacy
Policy

DOT &
Transportation
Compliance

Copyright © 2020 DISA Global Solutions. All rights reserved.