1

2
                                                        The Honorable Benjamin H. Settle
3

4

5

6
                        UNITED STATES DISTRICT COURT
7                       WESTERN DISTRICT OF WASHINGTON

8   TODD BRINKMEYER,                        NO. 3:20-cv-05661-BHS

9                        Petitioner,        BOARD'S RESPONSE TO MOTION
                                            FOR PRELIMINARY INJUNCTION
10         v.

11  WASHINGTON STATE LIQUOR &
    CANNABIS BOARD,
12
                        Respondent.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

BOARD'S RESPONSE TO MOTION FOR                    ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                  1125 Washington Street SE
3:20-cv-05661-BHS                                            PO Box 40110
                                                        Olympia, WA 98504-0110
                                                            (360) 664-9006

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ..................................... 2

      A.    Background ................................................................. 2

      B.    Residency Requirement ........................................................ 2

      C.    The Justifications for the Residency Requirement ........................... 3

      D.    Mr. Atkison and Mr. Brinkmeyer ............................................. 5

      E.    Procedure ................................................................. 5

      F.    Implications of Removing Residency ......................................... 5

III.  AUTHORITY AND ARGUMENT .................................................. 6

      A.    Preliminary Injunction Legal Principles ..................................... 6

      B.    Petitioner Has Failed to Show Four Factors To Be Entitled to Relief .......... 6

            1.    Likelihood of Success on the Merits ................................ 7

            2.    Article IV Privileges and Immunities .............................. 8

                  a.    No fundamental right exists to own a business which
                        engages in a federally illegal activity ..................... 8

                  b.    The Justifications Are Substantial Reasons for Residency ...... 9

            3.    Dormant Commerce Clause (DCC) ................................. 10

                  a.    The residency requirement is invulnerable to a
                        Dormant Commerce Clause challenge ..................... 10

                  b.    The Residency Requirement is Narrowly Tailored to
                        Accomplish Legitimate Purposes ........................ 11

            4.    Fourteenth Amendment Equal Protection and Privileges or
                  Immunities Clauses ............................................. 12

            5.    Fourteenth Amendment Due Process Clause ...................... 14

            6.    Washington's Privilege and Immunities Clause .................. 15

                  a.    Petitioner is not a Washington Citizen ..................... 15

                  b.    No Fundamental Right of State Citizenship is Implicated ..... 15

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

|  |  |  |
|---|---|---|
| | c. | There are reasonable grounds to support the Residency Requirement ..... 17 |
| 7. | Rule Challenge ............................................... 18 |
| | a. | Petitioner Lacks Standing To Challenge The Rules ................................. 18 |
| | b. | Residency Requirements Do Not Exceed the Board's Authority............. 19 |
| C. | Petitioner fails to show irreparable harm. ............................................... 20 |
| D. | The Balance of the Equities Does Not Favor Petitioner; Instead, Public Interest Warrants Denial of Preliminary Injunctive Relief ...................................... 22 |
| IV. | CONCLUSION ....................................................... 23 |

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1

## TABLE OF AUTHORITIES

2

### Cases

3

*All. for the Wild Rockies v. Cottrell*,
4
   632 F.3d 1127 (9th Cir. 2011) ........................................................ 6

5
*Allan v. Univ. of Wash.*,
   140 Wash. 2d 323 (2000)............................................................... 18

6
*Am. Legion Post #149 v. Wash. State Dep't of Health*,
7
   164 Wn.2d 570 (2008) .................................................................. 16

8
*Am. Trucking Associations, Inc. v. City of Los Angeles*,
   559 F.3d 1046 (9th Cir. 2009) ...................................................... 21

9
*Ariz. Dream Act Coalition v. Brewer*,
10
   757 F.3d 1053 (9th Cir. 2014) ...................................................... 20

11
*Attorney General of New York v. Soto-Lopez*,
   476 U.S. 898 (1986)................................................................ 12, 13

12
*Baldwin v. Fish  & Game Comm'n of Montana*,
13
   436 U.S. 371 (1978)................................................................... 8, 9

14
*Caribbean Marine Servs. Co., v. Baldrige*,
   844 F.2d 668 (9th Cir. 1988) ........................................................ 20

15
*Chadwick Farms Owners Ass'n v. FHC LLC*,
16
   166 Wash. 2d 178 (2009).......................................................... 18-19

17
*City of Redmond v. Moore*,
   151 Wash. 2d 664, 91 P.3d 875 (2004) .......................................... 7

18
*Cobra Roofing Serv., Inc. v. Dep't of Labor and Indus.*,
19
   122 Wash. App. 402 (2004)........................................................... 19

20
*Dunn v. Blumstein*,
   405 U.S. 330 (1972).................................................................... 13

21
*Gonzales v. Raich*,
22
   545 U.S. 1 (2005).................................................................... 10, 11

23
*Gorre v. City of Tacoma*,
   184 Wash. 2d 30 (2015).............................................................. 19

24
*Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*,
25
   150 Wash. 2d 791 (2004)............................................... 15, 16, 17

26

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

*Gulch Gaming, Inc. v. South Dakota,*
   781 F. Supp. 621 (D.S.D. 1991) ......................................................... 14

*Haines-Marchel v. Wash. State Liquor & Cannabis Bd.,*
   1 Wash. App. 2d 712 (2017) ...................................................... 19, 20

*Jow Sin Quan v. Liquor Control Bd.,*
   69 Wash. 2d 373 (1966) .................................................................... 16

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton,*
   752 F.3d 755 (9th Cir. 2014) ............................................................ 22

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .......................................................................... 18

*Lummi Indian Nation v. State,*
   170 Wash. 2d 247, 241 P.3d 1220 (2010) ......................................... 7

*Martinez v. Bynum,*
   461 U.S. 321 (1983) .......................................................................... 14

*Martinez v. Goddard,*
   521 F. Supp. 2d 1002 (D. Ariz. 2007) ............................................. 14

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997) ...................................................................... 6, 20

*Melendres v. Arpaio,*
   695 F.3d 990 (9th Cir. 2012) ............................................................ 21

*Mem'l Hosp. v. Maricopa Cty.,*
   415 U.S. 250 (1974) .................................................................... 12, 13

*Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.,*
   472 U.S. 159 (1985) .................................................................... 10, 11

*Ockletree v. Franciscan Health Sys.,*
   179 Wash. 2d 769 (2014) ............................................................ 15, 17

*Ralph v. City of Wenatchee,*
   34 Wash. 2d 638 (1949) ......................................................... 15, 16, 17

*Randles v. Liquor Control Bd.,*
   33 Wash. 2d 688 (1949) .................................................................... 16

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,*
   944 F.2d 597 (9th Cir. 1991) ...................................................... 21, 22

*Saenz v. Roe,*
   526 U.S. 489 (1999) .................................................................... 8, 13

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

*Sch. Dists.' Alliance for Adequate Funding of Special Educ. v. State*,
   170 Wash. 2d 599 (2010) ................................................................................................ 15

*Shapiro v. Thompson*,
   394 U.S. 618 (1969) ........................................................................................................ 13

*Sierra Club v. Trump*,
   379 F. Supp. 3d 883 (N.D. Cal. 2019),
   *aff'd*, 963 F.3d 874 (9th Cir. 2020) ................................................................................ 20

*State v. Vance*,
   29 Wash. 435, 70 P. 34 (1902) ...................................................................................... 15

*Supreme Court of New Hampshire v. Piper*,
   470 U.S. 274 (1985) ...................................................................................................... 8, 9

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
   139 S. Ct. 2449, 204 L. Ed. 2d 801 (2019) ....................................................... 11, 12, 13

*Toomer v. Witsell*,
   334 U.S. 385 (1948) .......................................................................................................... 8

*Trepanier v. City of Everett*,
   64 Wash. App. 380 (1992) .............................................................................................. 18

*United Bldg. & Constr. Trades Council of Camden Cty. & Vicinity v.*
   *Mayor & Council of the City of Camden*,
   465 U.S. 208 (1984) .......................................................................................................... 8

*United Parcel Service, Inc. v. Dep't of Revenue*,
   102 Wash. 2d 355 (1984) ............................................................................................... 17

*United States v. Nat'l Treasury Employees Union*,
   513 U.S. 454 (1995) .......................................................................................................... 7

*Ventenbergs v. City of Seattle*,
   163 Wash. 2d 92 (2008) ................................................................................................. 17

*W. & S. Life Ins. Co. v. State Bd. of Equalization of California*,
   451 U.S. 648 (1981) ........................................................................................................ 10

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008) .......................................................................................................... 7

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ........................................................................................................ 22

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ....................................................................................... 6, 20, 21, 22

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

**Constitutional Provisions**

U.S. Const. art. IV, § 2..............................................................................8

Wash. Const. art. I, § 12.....................................................................15, 17

**Statutes**

21 U.S.C. §§ 801 et seq............................................................................1

21 U.S.C. § 812........................................................................................2

2013 Wash. Laws, ch. 3 (Initiative 502) ..............................................1, 2

2015 Wash. Laws, ch. 70 (Initiative 502) ................................................1

2015 Wash. Sess. Laws, 2d Spec. Sess., ch. 4, § 301 ..............................2

Wash. Rev. Code § 25.15.006(6) ............................................................18

Wash. Rev. Code § 69.50.101 ...................................................................2

Wash. Rev. Code § 69.50.331(1) ..............................................................2

Wash. Rev. Code § 69.50.331(1)(b)(ii) ............................................18, 19

Wash. Rev. Code § 69.50.331(1)(b)(iii) ...........................................18, 19

Wash. Rev. Code § 69.50.331(7) ..............................................................4

Wash. Rev. Code § 69.50.342 ...................................................................2

Wash. Rev. Code § 69.50.342(1) ............................................................20

Wash. Rev. Code § 69.50.345 ...................................................................2

Wash. Rev. Code § 34.05.530 .................................................................18

Wash. Rev. Code 69.50 .............................................................................2

**Regulations**

Wash. Admin. Code 314-55 ......................................................................2

Wash. Admin. Code § 314-55-020 ............................................................3

Wash. Admin. Code § 314-55-020(1) ....................................................18

Wash. Admin. Code § 314-55-035 ......................................................3, 20

Wash. Admin. Code § 314-55-040 ..........................................................20

vi

Wash. Admin. Code § 314-55-110(4)........................................................................ 4, 10

Wash. Admin. Code § 314-55-140 ............................................................................... 21

Wash. Reg. 16-11-110 ................................................................................................... 3

**Other Authorities**

*Corporate    Member*,    Merriam-Webster.com,    https://www.merriam-webster.com/
    dictionary/corporate%20member (last visited Aug. 21, 2020)........................................19-20

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

vii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

# I.   INTRODUCTION

Since the passing of Initiative 502 (I-502) in 2012, Washington has required all owners of marijuana businesses to be Washington residents. Initiative 502, 2013 Wash. Laws, ch. 3; 2015 Wash. Laws, ch. 70. In implementing the initiative's residency requirement, the duty of the Washington State Liquor and Cannabis Board (Board) was to bring the marijuana industry "under a tightly regulated, state-licensed system." Initiative 502, 2013 Wash. Laws (ch. 3 § c(3)). Among other reasons discussed *infra*, the residency requirement directly serves the purpose of maintaining an effective regulatory enforcement over marijuana-related activity. This is because a full criminal background check cannot be run on a nonresident, and because marijuana distribution remains illegal under the Controlled Substances Act (CSA). 21 U.S.C. §§ 801 et seq. The residency requirement also protects the integrity of the Washington's unique tiered marijuana system.

Mr. Todd Brinkmeyer (Petitioner), an Idaho resident, now seeks to overturn the will of Washingtonians and disrupt Washington's marijuana industry by erasing the residency requirement that has been intact for eight years. Petitioner fails to meet his high burden showing the four factors to be entitled to relief.

First, Petitioner has failed to meet his burden that he is likely to win on the merits—the Constitution does not confer upon him a constitutional right to be an owner of a Washington marijuana retailer under any of his asserted theories, and in any event, the justifications for residency are tailored to support the integrity of the marijuana industry. Second, some awkwardness in a close friendship falls far short of showing "irreparable" harm. Third, the balance of equities and harm to public interest falls in favor of the Board—the Petitioner's asserted relief seeks to eliminate residency for everybody, the ramifications of which would severely impact the Board during the COVID-19 pandemic and may cause irreversible harm to licensees if the ruling was later overturned.

Petitioner's motion for preliminary injunction must be denied.

1

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Background

In 2012, Washington voters approved I-502. 2013 Wash. Laws, ch. 3 (*codified in* part of Wash. Rev. Code 69.50). I-502 established a regulatory system for the sale, production, and processing of limited amounts of marijuana for recreational use by adults. Washingtonians empowered the Board to enforce I-502 and to implement additional rules to meet the goal of creating a "tightly regulated, state-licensed system similar to that for controlling hard alcohol" Initiative 502, Laws of 2013§ c(3);Wash. Rev. Code § 69.50.101, .342, .345. Board rules are codified in chapter Wash. Admin. Code. 314-55.

Pursuant to the CSA, marijuana is considered a Schedule I drug under federal law. 21 USC §812. The federal government thus views marijuana as a drug with "high potential for abuse," "no currently accepted medical use in treatment" or "lack of accepted safety for use of the drug." 21 USC §812(b)(1)(A)–(C). Though marijuana is illegal in the United States pursuant to the CSA, some states have authorized the agriculture, sale, and possession of marijuana in some circumstances, and are tasked with its regulation. *See* Declaration of Licensing Director Rebecca Smith (Smith Decl.) ¶ 15. There are also some states, including Idaho, where marijuana remains entirely illegal under state law. Smith Decl. ¶ 15, Ex. 11.

### B.     Residency Requirement

Since I-502's passage, any individual holding ownership or equity interest in a marijuana business must be a Washington resident. Originally, the residency requirement was only three months. Smith Decl. ¶ 12. However, in 2015, the Legislature expanded it to six months. 2015 Wash. Laws, 2d Spec. Sess., ch. 4, § 301. The residency requirement is codified in Wash. Rev. Code § 69.50.331(1):

> (b) No license of any kind may be issued to:
> (i) A person under the age of twenty-one years;
> (ii) A person doing business as a sole proprietor **who has not lawfully resided in the state for at least six months** prior to applying to receive a license;

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1   (iii) A partnership, employee cooperative, association, nonprofit corporation, or
2   corporation unless formed under the laws of this state, **and unless all of the members thereof are qualified to obtain a license as provided in this section**; or

3   (Emphasis added).

4       Essentially, any corporate business structure—its owners and members—must all have
5   Washington residency for six months before qualifying for a marijuana license.

6       While not directly at issue in this case, the Board expanded the residency requirement in
7   rule to those that exercised control over the marijuana business (even though they were not a
8   named owner/member) and to spouses[1] of owners/members.[2] The Board had also originally
9   expanded the residency requirement to financiers, who are individuals whose role in the
10  marijuana business is generally limited to a loan on a fixed interest rate. Smith Decl. ¶ 11.
11  However, in 2016, the Board rescinded the residency requirement for financiers because of the
12  need for additional financing options. Smith Decl. ¶ 11.; Wash. Reg. 16-11-110 (amending
13  Wash. Admin. Code § 314-55-020).

14  **C.      The Justifications for the Residency Requirement**

15      Board Licensing Director Rebecca Smith has been a leader in implementing I-502,
16  including the residency requirement, in order to implement Washington's regulated marijuana
17  industry. Smith Decl. ¶ 1. Director Smith has identified several reasons for the residency
18  requirement.

19  •   Marijuana is federally illegal under the CSA. Since I-502 passed, Washington has
20      followed the guidance of the *Cole* Memo, which laid out several enforcement priorities
21      for states to follow if they legalized marijuana. Smith Decl. ¶ 4. Those priorities include
22      preventing diversion of marijuana out of State and other criminal activity. Ex. 8. The
23      *Cole* Memo further asserts that states should have a strong and effective regulatory

---

[1] The Board is currently considering whether to eliminate the residency requirement for spouses and may make that determination as soon as next month.
[2] Collectively, the Board refers to all individuals that needed to meet residency as True Parties of Interest (TPI) per Wash. Admin Code § 314-55-035.

BOARD'S RESPONSE TO MOTION FOR           3        ATTORNEY GENERAL OF WASHINGTON
PRELIMINARY INJUNCTION                                      1125 Washington Street SE
3:20-cv-05661-BHS                                                  PO Box 40110
                                                            Olympia, WA 98504-0110
                                                                 (360) 664-9006

system in order to protect public safety. Smith Decl. ¶ 4. The residency requirement maintains the strong and effective regulatory system and effectuates the priorities of the *Cole* memorandum. Smith Decl. ¶ 4.

• The domicile of marijuana business owners in Washington ensures that a sufficient background check can occur. Smith Decl. ¶ 5. A background check of an owner includes the ability to access local databases, where misdemeanors that a federal background check would not pick up. Smith Decl. ¶ 5. Knowing the character of a future marijuana owner is essential to know whether to license them or not. Smith Decl. ¶ 5.

• Local jurisdictions are also empowered to object and provide further insight into any applicant in a Washington marijuana business. Smith Decl. ¶ 8 (citing Wash. Rev. Code § 69.50.331(7). Domicile in Washington gives the Board ability to contact local authorities and find out additional information regarding any individual who wishes to enter the precarious marijuana industry. Smith Decl. ¶ 8.

• Washington marijuana owners are held responsible for the conduct of their business, both through regulatory and criminal prosecution. Smith Decl. ¶ 6; *see also* Wash. Admin Code § 314 55-110(4). With residency established in Washington, Enforcement can locate, interview, and ultimately, hold accountable the individuals who choose to enter the marijuana industry. Smith Decl. ¶ 7. Because Board Enforcement Officers have no jurisdiction outside of Washington, it would impede their ability to conduct investigations and file prosecutions. Smith Decl. ¶ 7.

• The Washington marijuana industry is a uniquely tiered system—an owner can only be on the retailer, or the producer/processor side. Smith Decl. ¶ 9. This is modeled on the liquor regulatory system to prevent big business from taking over the industry, and the overall goal of preventing criminal enterprise. Smith Decl. ¶ 9. Washington also limits retailers to only five licenses total. Smith Decl. ¶ 10. Given that no other state has this set up, elimination of the residency requirement would jeopardize Washington's unique

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1   system, as it would be difficult to determine whether an out-of-state applicant already

2   was involved in the marijuana business. Smith Decl. ¶¶ 9-10.

3   • Washington boasts a 70 percentage rate of displacement of the illegal market by legal

4   marijuana, one of the higher percentages in the United States. Smith Decl. ¶ 14. Given

5   that overproduction and diversion are issues in other states where no residency

6   requirement exists, such as Oregon, there is a correlation of the integral nature of the

7   residency requirement. Smith Decl. ¶ 14.

8   • Washington's residency requirement also protects and respects other states that have

9   chosen not to legalize marijuana. Smith Decl. ¶ 15. A US attorney in a state that has taken

10   a more conservative approach may decide to prosecute citizens of that decide to take

11   ownership interest in an out-of-state marijuana business. Smith Decl. ¶ 15

12   For ease of reference, the reasons for the residency requirement above will be collectively

13   referred to as the "Justifications."

**D.   Mr. Atkison and Mr. Brinkmeyer**

15   Mr. Michael "Scott" Atkison—through his membership in three separate LLCs—has

16   some ownership interest in four separate Washington marijuana retailers. Smith Decl. ¶ 3, Exs. 1,

17   3, 5-6. Petitioner has financed three of the four retailers for over two million dollars total in

18   funding. Smith Decl. ¶ 3, Exs. 2, 4, 7. Mr. Atkison is a Washington resident, and Petitioner is an

19   Idaho resident. Docket # 8 ¶ 3.

**E.   Procedure**

21   This matter was originally filed in Thurston County Superior Court, but the Board

22   removed it to this Court. Docket # 1. The Petitioner moved for a preliminary injunction.

23   Docket # 6.

**F.   Implications of Removing Residency**

25   Removal of the residency requirement would greatly impact the Board. Smith Decl. ¶ 16.

26   COVID-19 already is affecting the Board's operations due to mandatory furloughs and telework.

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1  Smith Decl. ¶ 16. In addition, potentially hundreds of new applications for out-of-state residents

2  would immediately come in, in part, due to the "first buyer" right that many individuals have

3  contracted with Washington marijuana businesses. Smith Decl. ¶ 16. To get rid of the residency

4  requirement now, but then later find out that it was valid, would require the Board to then revoke

5  newly approved marijuana business structures that include an out-of-state resident. Smith Decl.

6  ¶ 16. This has the potential to ruin the Washington marijuana industry. Smith Decl. ¶ 16.

7  ### III.    AUTHORITY AND ARGUMENT

8  **A.    Preliminary Injunction Legal Principles**

9  A preliminary injunction is an "extraordinary remedy never awarded as of right."

10  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction,

11  the Petitioner has the burden to demonstrate that (1) they are likely to succeed on the merits;

12  (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance

13  of the equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S.

14  at 20. Alternatively, the Petitioner may secure preliminary injunctive relief by raising "serious

15  questions" going to the merits and showing that a balancing of the hardships "tips sharply" in

16  the Petitioner's favor. *All for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

17  This alternative approach does not eliminate the remaining factors; the Petitioner must still

18  demonstrate a likelihood of irreparable harm and that an injunction is in the public interest. *Wild*

19  *Rockies*, 632 F.3d 1127.

20  Under either formulation, Petitioner bears the burden of persuasion to make a "clear

21  showing" that he is entitled to this "extraordinary and drastic remedy." *Mazurek v. Armstrong*,

22  520 U.S. 968, 972 (1997).

23  **B.    Petitioner Has Failed to Show Four Factors To Be Entitled to Relief**

24  Petitioner fails to carry its heavy burden to demonstrate the four factors entailing it to

25  preliminary injunctive relief.

26

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

**1.      Likelihood of Success on the Merits**

In his motion, the Petitioner argues that he is likely to succeed in a facial challenge and does not raise an as applied challenge. Docket #6 at 8. Because the Petitioner only raises a facial challenge, he seeks to render the residency requirement "totally inoperative" rather than limit his remedy to his particular situation. *City of Redmond v. Moore*, 151 Wash. 2d 664, 668-69, 91 P.3d 875 (2004); *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 477–78 (1995); *see also* Docket. # 6, Attachment #1 Proposed Order. "A Petitioner can only succeed in a facial challenge by establishing that no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (internal quotation marks omitted). In a facial challenge, statutes are presumed constitutional. *Lummi Indian Nation v. State,* 170 Wash. 2d 247, 257-58, 241 P.3d 1220 (2010).

Facial challenges are generally disfavored for several reasons, notably for "threaten[ing] to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange*, 552 U.S. at 450-51. Here, Petitioner—an out of state Idaho resident—seeks to invalidate the will of Washingtonians who approved I-502 with a residency requirement and threatens to dismantle the unique tiered marijuana system in Washington. This militates against providing the relief he seeks pursuant to a facial challenge.

More to the point, Petitioner's federal and state constitutional claims are not likely to succeed. There is no constitutional right to own a marijuana retailer business, and even if somehow there was, the Justifications supply the necessary bases to pass the applicable level of scrutiny. The Petitioner's excess of authority challenge also fails, because he lacks standing to challenge the rules he believes are overly expansive—but even if he does have standing, those rules are reasonably consistent with the Board's task to implement a legalized marijuana industry. Petitioner is not likely to win on the merits.

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

## 2. Article IV Privileges and Immunities

### a. No fundamental right exists to own a business which engages in a federally illegal activity

"The citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." U.S. Const. art. IV, § 2 "Only with respect to those privileges and immunities bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 383 (1978) (internal quotations omitted). States are not required to treat nonresidents and residents alike in all respects—only with regard to those rights that are fundamental. *Baldwin* 436 U.S. at 383, 387. Accordingly, the threshold inquiry for this Court is whether producing, processing or selling a federally illegal substance is a fundamental right. It is not.

The Petitioner unpersuasively attempts to reframe this privilege under either the right to pursue a livelihood or the right to travel.[3] Docket #6 at 9. The right to travel to another State and pursue a livelihood or follow a "common calling" has included the right to seek employment, *United Bldg. & Constr. Trades Council of Camden Cty. & Vicinity v. Mayor & Council of the City of Camden,* 465 U.S. 208, 220-22 (1984), practice law, *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 280–81 (1985), and commercial shrimp fish in the marginal sea, *Toomer v. Witsell*, 334 U.S. 385, 403 (1948). On the other hand, the Supreme Court has found that no such right exists in an elk-hunting license because it was recreational and not "basic to the maintenance of well-being of the union." *Baldwin*, 436 U.S. at 388.

Here, the threshold inquiry then is whether Washington's distinction of resident and nonresidents in owning a marijuana business is a "common calling" that violates the privileges and immunities clause? As in *Baldwin*, "Merely to ask the question seems to provide the answer."

---

[3] The Plaintiff frames these as two separate rights to consider by this Court. However, the "second component" of the right to travel that is argued by the Plaintiff appears to be the same as the right to livelihood or common calling described in *Saenz v. Roe,* 526 U.S. 489, 501–02 (1999), which cites "common calling" cases as embracing the second component of the right to travel. While two rights are argued, in essence it is one right contained in U.S. Const. art. IV, § 2.

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1    *Baldwin*, 436 U.S. at 388. Because of its federally illegal nature, being able to own a marijuana

2    business is neither "fundamental" to the promotion of interstate harmony, *Baldwin*, 436 U.S. at

3    388, nor "important to the national economy," *Piper*, 470 U.S. at 281. In fact, owning a marijuana

4    business is even further from being a fundamental right than elk-hunting was, because at least

5    elk-hunting was a federally legal activity. Petitioner fails to meet his burden to show a

6    fundamental right at issue.

7               **b.      The Justifications Are Substantial Reasons for Residency**

8          Even if having ownership interest in a marijuana retailer license was a fundamental right,

9    such a right "is not an absolute." *Piper*, 470 U.S. at 284. "Some distinctions between residents

10   and nonresidents merely reflect the fact that this is a Nation composed of individual States, and

11   are permitted." *Baldwin*, 436 U.S. at 383. Therefore, the Court will uphold such a distinction

12   "where (i) there is a substantial reason for the difference in treatment; and (ii) the discrimination

13   practiced against nonresidents bears a close relationship to the State's objective." *Piper*, 470 U.S.

14   at 284. The Court may consider the availability of least restrictive means in whether the

15   distinction bears a close relationship to the objective. *Piper*, 470 U.S. at 284.

16         Here, substantial reasons exist for requiring residency to own a Washington marijuana

17   business. The Justifications laid out *supra* provide numerous bases including, but not limited to,

18   protecting Washington's unique tiered system and marijuana regulatory system, ensure owners

19   who are responsible for the business to be domiciled here to be properly investigated, and follow

20   the enforcement priorities of the *Cole* memo. All the Justifications supply the close relationship

21   of maintaining Washington's tightly regulated marijuana industry.

22         The six-month residency requirement is also the least restrictive means. Washington

23   initially tried to use only a three-month requirement, but the Legislature increased it to six

24   months. As Licensing Director Smith declared, the Board

25              had issues with individuals who came into Washington for three months for the
                sole purpose of receiving a marijuana license and then would leave the State. This

26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

caused issues on the licensure side as well, as applications often take 3-months or more to process, so they would start out qualifying, but by the end, would not.

Smith Decl. ¶ 12. Moreover, out-of-state residents are not wholly prevented from the Washington marijuana market—they can become employees in Washington marijuana businesses and financiers. Only the owners are held ultimately accountable and liable for the business activities and must remain domiciled here to enforce marijuana laws. *See* Wash. Admin. Code § 314-55-110(4). Substantial reasons and Justifications support the residency requirement, which bear a close relationship to maintain the Washington marijuana industry.

### 3.   Dormant Commerce Clause (DCC)

#### a.   The residency requirement is invulnerable to a Dormant Commerce Clause challenge

The Petitioner's DCC challenge fails because Congress has exercised its commerce clause power by enacting the CSA and making marijuana illegal. *See Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 472 U.S. 159, 174–75 (1985). "When Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack under the Commerce Clause." *Ne. Bancorp*, 472 U.S. at 174; *see also W. & S. Life Ins. Co. v. State Bd. of Equalization of California*, 451 U.S. 648, 652 (1981) ("In the exercise of this plenary authority, Congress may confer upon the States an ability to restrict the flow of interstate commerce that they would not otherwise enjoy." Internal quotation marks omitted.)).

In *Gonzales v. Raich*, 545 U.S. 1, 7-8 (2005), Petitioners argued that the CSA's reach into intrastate affairs, namely the federal government's seizure of Petitioners' medical marijuana plants, violated the DCC. The Court rejected the claim, holding in part that "enforcement difficulties" and "concerns about diversion into illicit channels" justified Congress' desire to regulate intrastate marijuana affairs and that the CSA was a proper exercise of its DCC power. *Gonzales*, 545 U.S. at 22.

Because *Gonzales* found that Congress had authority in the DCC to enact the CSA, it logically follows that no DCC right can exist in the very activity CSA prohibits. The CSA must

be read to give its effect: Congress has empowered the States to *criminalize* all marijuana-commerce related activities, including interstate activities; this is why states like Idaho, where Petitioner is a resident, has continued to make marijuana completely illegal. Smith Decl. ¶ 15, Ex. 11. Therefore, under *Gonzales,* it does not matter *how* much a marijuana license is restricted—whether it be residency requirement or complete criminalization of such activity—Congress has acted and has permitted States to take actions it sees fit to encumber marijuana activity. *Ne. Bancorp, Inc.*, 472 U.S. at 174–75. Accordingly, the DCC challenge fails.

### b. The Residency Requirement is Narrowly Tailored to Accomplish Legitimate Purposes

Even if the Petitioner could establish that it can challenge the residency requirement under the DCC, it fails. Under the DCC, "if a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2461-62 (2019) (internal quotations omitted).

Here, the six-month residency requirement is narrowly tailored to maintain the tightly regulated Washington marijuana industry in substance and length. As argued *supra,* the Justifications demonstrate the legitimate local purposes needed for domicile of owners, and only requiring six-months is narrowly tailored to advance those goals. Unlike *Tennessee Wine*, this is a six-month residency requirement,[4] not a two-year requirement. Furthermore, as discussed, the three-month residency requirement did not work in Washington—this is because out-of-state residents merely would leave after the three months, and the licensure process was jeopardized by only having a three-month requirement. In addition, marijuana is federally illegal, which, even if certain aspects of the Justifications may have been rejected in *Tennessee Wine*, they are now imbued with a new lens and aspect that make them satisfy the legitimate purposes test.

---

[4] Plaintiff lacks standing to challenge any continuing aspect of the residency requirement. *See* Section 7.a. *infra* p. 18. As he has not even established residency *at all* in Washington, he cannot complain about any Washington rule that expanded the residency requirement to be continuing.

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1   Moreover, other Justifications not at issue in *Tennessee Wine*, 139 S. Ct. at 2474-76, supply

2   legitimate reasons, including the unique tiered system of Washington, the need for local authority

3   input/local criminal background checks, the ability to hold owners liable for civil/criminal

4   violations, and the limitation on Board enforcement officers to only enforce the laws within the

5   bounds of Washington.

6          The residency requirements for acquiring a marijuana license are narrowly tailored to

7   achieve legitimate state interests and do not violate the DCC.

8          **4.      Fourteenth Amendment Equal Protection and Privileges or Immunities
              Clauses**

9          The Petitioner's arguments under the Fourteenth Amendment also fail. The Petitioner

10  asserts that any infringement on the right to travel is subject to strict scrutiny. Docket #6 at 17.

11  But whether strict scrutiny or rational basis should apply in a right to travel challenge turns on

12  two considerations: (1) whether the waiting period would deter migration; and (2) the extent to

13  which the residence requirement served to penalize the right to travel. *Mem'l Hosp. v. Maricopa*

14  *Cty.*, 415 U.S. 250, 256–57 (1974).

15         For example, in *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 900, 908-09

16  (1986), the Court struck down a statute that granted a civil service employment preference to

17  only veterans who, among other things, had been residents of New York when they enlisted in

18  the army. Importantly, the Court noted that the impact on the right to travel was "unquestionably

19  substantial" because the statute denied a "significant benefit" and was the difference "between

20  winning or losing civil service employment, with its attendant job security, decent pay, and good

21  benefits." *Soto-Lopez*, 476 U.S. 898. The Court also noted that because the veterans could not

22  change whether they were New York residents at the time of enlistment, the benefit was

23  permanently deprived and the statute "clearly operate[d] to penalize appellees for exercising their

24  right to migrate." *Soto-Lopez*, 476 U.S. at 909. Only after conducting this analysis did the Court

25

26

turn to the State's justifications for the law and apply a strict scrutiny standard of review. *See Soto-Lopez*, 476 U.S. at 909-10.

The Petitioner's reliance on *Saenz* for the strict scrutiny standard is misplaced. In *Saenz v. Roe,* 526 U.S. 489, 492-93, 502-04 (1999), the Court applied a heightened standard of review since the third component of right of travel was implicated—that is, individuals who had already traveled to and were living in California could only receive limited welfare benefits for one year. In contrast, the Petitioner does *not* live in Washington and has expressed no intent to come to Washington. Therefore, he is not a Washington citizen who has "completed their interstate travel" envisioned under *Saenz* entitled to this level of review. *Saenz,* 526 U.S. at 504. Even if he did live in Washington, *Saenz* indicates that other considerations might trigger lesser scrutiny, such as if California had only partially withheld benefits, if there was concern whether state residency was bona fide, or if the residency requirement protected against a "readily portable benefit" such as divorce or college education.[5] *See Saenz,* 526 U.S. at 504-505 (citing cases).

While the rational basis standard should apply, the Washington residency requirement easily meets either standard. The waiting period is six months, as compared to two years in *Tennessee Wine*. The cases that struck down a one-year waiting period (some of which Petitioner cites to), penalized the right to travel in a more significant way, such as ability to receive public assistance benefits, *Shapiro v. Thompson,* 394 U.S. 618, 622 *(*1969), ability to vote, *Dunn v. Blumstein*, 405 U.S. 330 (1972), ability to access medical care, *Mem'l Hosp.*, 415 U.S. at 250, or ability to obtain employment, *Soto-Lopez*, 476 U.S. at 898. Here, the inability to receive an ownership interest in a federally illegal activity for six months does not penalize the right to travel in a way that violates the Fourteenth Amendment.

_____

[5] Like a "partially withheld benefit" described in *Saenz*, the Plaintiff is not precluded from employment or from becoming a financier in Washington businesses—only equity. Furthermore, Director Smith declared there were issues with individuals moving into the State just to satisfy the residency requirement and then leave, Smith Decl. ¶ 12; following the teachings of *Saenz*, this would suggest issues regarding bona fide residency were at play, and demonstrates the portable nature of the benefit being able to own the business and not live in Washington.

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1    In *Martinez v. Bynum*, 461 U.S. 321 (1983), the Court upheld a residency requirement

2  to attend public schools, holding that the State had a substantial interest because without "proper

3  planning and operation of the schools would suffer significantly . . ." *Martinez*, 461 U.S. at 329.

4  Like *Martinez*, the State has a substantial interest in having a residency requirement as set forth

5  in the Justifications, including preserving Washington's unique tiered marijuana system

6  separating retailers and producers/processors, ensuring the marijuana rules and regulations can

7  be enforced by the Board's Enforcement Officers, preventing the criminal element from entering

8  Washington's marijuana market, and following the *Cole* Memo. The Petitioner's argument fails.

9         **5.      Fourteenth Amendment Due Process Clause**

10     Petitioner is incorrect that his right to pursue a profession under the Due Process Clause

11  was violated. The Petitioner correctly concedes that rational basis review is the appropriate

12  standard for this challenge. Docket #6 at 18; *see,* e.g. *Martinez v. Goddard*, 521 F. Supp. 2d

13  1002, 1005-06 (D. Ariz. 2007). Petitioner also concedes for purposes of his motion that the Board

14  has identified legitimate state interests in the residency requirements for marijuana licensure.

15  Docket #6 at 18. The Petitioner only asserts that the legitimate state interests are not rationally

16  related to the residency requirement. *Martinez*, 521 F. Supp. 2d at 1008.

17     Here, as argued *supra*, the Justifications set forth legitimate reasons and are rationally

18  related to the residency requirement. Petitioner's analogy to *Gulch Gaming, Inc. v. South Dakota*,

19  781 F. Supp. 621, (D.S.D. 1991) falls flat. First, the Court noted, significantly, in the context of

20  the case, that the South Dakota statute only authorized "*legal* gambling" and did not implicate

21  federal criminal laws. *Gulch Gaming*, 781 F. Supp. at 626. The illegality of marijuana

22  strengthens the reasons for the Justifications—for example, the physical presence of marijuana

23  owners for accountability and investigation is essential. Of particular relevance to the

24  comparison, gambling enforcement officers uniquely can cross state lines or go out of the

25  country to perform enforcement investigation—the Board's enforcement officers are limited to

26  Washington only. Smith Decl. ¶ 7. For these reasons, the Due Process claim easily fails.

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS                               14                    ATTORNEY GENERAL OF WASHINGTON
                                                                              1125 Washington Street SE
                                                                                   PO Box 40110
                                                                              Olympia, WA 98504-0110
                                                                                  (360) 664-9006

1

### 6.    Washington's Privilege and Immunities Clause

2

#### a.    Petitioner is not a Washington Citizen

3    The Washington Constitution's privileges and immunities clause states, "No law shall be

4    passed granting to any citizen, class of citizens, or corporation other than municipal, privileges

5    or immunities which upon the same terms shall not equally belong to all citizens, or

6    corporations." Wash. Const. art. I, § 12. "[T]he terms 'privileges and immunities pertain alone

7    to those fundamental rights which belong to the **citizens of the state by reason of such**

8    **citizenship**'" *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake* (*Grant County II*), 150

9    Wash. 2d 791, 812-13, 83 P.3d 419 (2004) (emphasis added) (quoting *State v. Vance*, 29 Wash.

10   435, 458, 70 P.34 (1902)). Washington's Privileges and Immunities clause concerns itself with

11   unconstitutional distinctions between classes of Washington citizens—not United States citizens

12   like its federal counterpart. *See*, e.g., *Ralph v. City of Wenatchee*, 34 Wash. 2d 638, 640-41, 209

13   P.2d 270 (1949) (Washington resident could challenge city of Wenatchee's license fees that only

14   applies to non-citizens of Wenatchee).

15   Here, Petitioner is not a Washington resident and does not argue he is a Washington

16   citizen. The State Privileges and Immunities clause only protects Washington citizens—not

17   Idaho citizens. Because he is not a Washington citizen, this claim should fail.

18

#### b.    No Fundamental Right of State Citizenship is Implicated

19   Even if Washington Privileges and Immunities protects out-of-state citizens, his claim

20   still fails. Statutes are presumed constitutional, and the challenging party must prove

21   unconstitutionality beyond a reasonable doubt. *Sch. Dists.' Alliance for Adequate Funding of*

22   *Special Educ. v. State*, 170 Wash. 2d 599, 605 (2010). A violation of art. I, § 12 does not occur

23   unless a law or its application confers a privilege to a class of citizens.[6] *Grant County* II, 150

24   Wash. 2d at 812. The party challenging the provision must first establish that there is a

25

26   _____
[6] The Washington Supreme Court uses the terms "privilege" and "immunity" interchangeably. *Ockletree v. Franciscan Health Sys.*, 179 Wash. 2d 769, 777 n.6 (2014).

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1   fundamental right of state citizenship at issue in the case. *Grant County* II, 150 Wash. 2d at 811-

2   14. If no fundamental privilege or immunity is implicated by the challenged provision, the claim

3   fails. *Grant County* II, 150 Wash. 2d at 814.

4       Petitioner argues that Washington's residency requirement infringes on his "right to carry

5   on business therein." Docket #6 at 19. But simply because a provision creates a class of persons

6   does not mean the provision involves a "privilege" subject to art. I, § 12. *See Grant County* II,

7   150 Wash. 2d at 812 ("[N]ot every statute authorizing a particular class to do or obtain something

8   involves a 'privilege' subject to article I, section 12."). This Court should reject the Petitioner's

9   attempt to broadly characterize "business" and graft onto it a fundamental right to engage in a

10  federally illegal business.

11      Washington case law involving liquor business rights is instructional. The Washington

12  Supreme Court has long held that "[t]here is no natural or constitutional right to sell or engage

13  in the business of selling or dispensing intoxicating liquor." *Randles v. Liquor Control Bd.*,

14  33 Wash. 2d 688, 694 (1949). A license to sell liquor "does not become a vested property right

15  . . . rather, [it is] a temporary permit, in the nature of a privilege, to engage in a business that

16  would otherwise be unlawful." *Jow Sin Quan v. Liquor Control Bd.*, 69 Wash. 2d 373, 382

17  (1966). In other words, when considering claims of disparate treatment of businesses, "the

18  distinction between a lawful business which a citizen has the right to engage in and one in which

19  he may engage only as a matter of grace of the state" must be considered. *Randles*, 33 Wn.2d at

20  694. If liquor businesses do not implicate privileges and immunities, certainly the federally

21  illegal business of producing and selling marijuana does not include a fundamental right.

22      For its position, Petitioner primarily relies on *Ralph*, 34 Wash. 2d at 638. However,

23  *Ralph* did not determine whether the right to engage in a photography business was a

24  fundamental right of state citizenship—it assumed so. *Ralph*, 34 Wash. 2d  at 641-42. Even if it

25  is a fundamental right, a photography business is far different from marijuana. *See also Am.*

26  *Legion Post #149 v. Wash. State Dep't of Health*, 164 Wn.2d 570, 608 (2008) (no fundamental

1 | right to smoke inside a place of employment). Moreover, *Ralph* found Wenatchee's municipal

2 | power to create the discrimination against non-residents of Wenatchee more suspect. *Ralph*, 34

3 | Wash. 2d at 642. In contrast, the Washington Legislature, as an exercise of its police power, can

4 | regulate the production and sale of marijuana – to the point of prohibiting it entirely. *Cf. Grant*

5 | *Cy.* II, 150 Wash. 2d at 813 (the Legislature has plenary power to adjust municipal boundaries

6 | and authorize annexation); *Ventenbergs v. City of Seattle*, 163 Wash. 2d 92, 103-04 (2008) (no

7 | fundamental right to provide Seattle's garbage service because the duty to collect and dispose of

8 | solid waste rests solely with Legislature as an exercise of its police power, which Legislature can

9 | delegate to local government). There is no fundamental right to engage in marijuana sale or

10 | production.

11 |              **c.     There are reasonable grounds to support the Residency Requirement**

12 | Even if the rule involved a fundamental right of State citizenship, the Court still must

13 | uphold the Residency Requirement if there is a "reasonable ground" to support it.

14 | *Ockletree v. Franciscan Health Sys.*, 179 Wash. 2d 769, 776 (2014). The differences "need not

15 | be great' to allow differential treatment under the privileges and immunities clause. *United*

16 | *Parcel Service, Inc. v. Dep't of Revenue*, 102 Wash. 2d 355, 368 (1984) (citation and internal

17 | quotation marks omitted). "The test is merely whether any state of facts can reasonably be

18 | conceived that would sustain the classification." *United Parcel Service* 102 Wash. 2d at 369.

19 | The party challenging bears the burden of showing there was no reasonable basis for the

20 | questioned classification. *United Parcel Service* 102 Wash. 2d at 369.

21 | As argued above, the Justifications supply reasonable grounds for requiring residency to

22 | own a Washington marijuana business, including Washington's unique tiered system, ensuring

23 | that the Washington's marijuana rules and regulations can be enforced, and the protection from

24 | interstate marijuana issues. Petitioner cannot meet his heavy burden of showing that the

25 | challenged rule violates art. I, § 12, of the Washington Constitution.

26 |

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1    **7.    Rule Challenge**

2        **a.    Petitioner Lacks Standing to Challenge the Rules**

3        Petitioner alleges that the Board exceeded its rulemaking authority. Docket #6 at 21-22.

4    However, Petitioner cannot challenge the breadth of the Board's rules because he lacks standing.

5        Pursuant to Washington's Administrative Procedure Act (APA), "a person has standing

6    to obtain judicial review of agency action if that person is aggrieved or adversely affected by the

7    agency action." Wash. Rev. Code 34.05.530. The APA standing standard applies to rule

8    challenges. *Allan v. Univ. of Wash.*, 140 Wash. 2d 323, 327 (2000). A person is aggrieved or

9    adversely affected only if that person is or is likely to be prejudiced by the agency action, the

10   agency was required to consider that person's asserted interests, and a judgment in that person's

11   favor would redress the prejudice. *Allan*, 140 Wash. 2d at 334.

12       The first and third prongs of the standing test are referred to as the "injury in fact" test.

13   *Allan*, 140 Wn.2d at 327. A person must allege specific and perceptible harm by the agency

14   decision to satisfy the prejudice requirement. *Trepanier v. City of Everett*, 64 Wash. App. 380,

15   382-83 (1992). If merely conjectural or hypothetical injury is alleged, there is no standing.

16   *Trepanier*, 64 Wash. App. at 383. Petitioner has the burden to establish his standing to challenge

17   the rule. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

18       Here, Mr. Atkison's ownership interest is through him being a member in LLCs that are

19   marijuana retailers. Smith Decl. ¶ 3. Petitioner does not contend that members of LLCs are not

20   included in the statutory requirement.[7] Wash. Rev. Code § 69.50.331(1)(b)(ii), (iii). Instead, the

21   Petitioner only specifically argues that the Board's rules impermissibly include shareholders and

22   spouses to meet the residency requirement. *See* Docket #6 at 22. LLCs are not made up of

23   shareholders; they are of members, which are included in the statutory residency requirement.

24   *See* Wash. Rev. Code 25.15.006(6); *Chadwick Farms Owners Ass'n v. FHC LLC*, 166 Wash. 2d

25

26          [7] Even if he did, the Board's inclusion of LLC members in rule is within the Board's rulemaking authority.
     *See* Wash. Admin. Code § 314-55-020(1).

178, 187 (2009). Moreover, because Petitioner is seeking to receive ownership interest—and by extension become a member of an LLC—he will not be subject to the residency requirement due to his spousal status. Because none of the challenged aspects of the rule applies to Petitioner's situation, Petitioner lacks an applicable injury. Because the statutory residency requirement alone would apply based on Petitioner's position, he lacks standing to challenge the rules that expanded it further.

### b.   Residency Requirements Do Not Exceed the Board's Authority

Even if the Petitioner has standing to challenge the rules, the rules do not exceed the Board's authority. Petitioner argues that the rules exceed the Board's authority because the rule includes shareholders and spouses as TPIs. *See* Docket #6 at 22. He is mistaken.

The Legislature requires that "all members thereof qualified to obtain a license" to have resided in Washington at least six months prior to receiving a marijuana license. Wash. Rev. Code § 69.50.331(1)(b)(ii), (iii). This requirement extends to a sole proprietor and members of a "partnership, employee cooperative, association, nonprofit corporation, or corporation." Wash. Rev. Code § 69.50.331(1)(b)(ii), (iii).

A shareholder is included in the statutory requirement. The court's primary goal in interpreting statutes or agency regulations is to ascertain the Legislature's intent. *Haines-Marchel v. Wash. State Liquor & Cannabis Bd.*, 1 Wash. App. 2d 712, 745 (2017); *Cobra Roofing Serv., Inc. v. Dep't of Labor and Indus.*, 122 Wash. App. 402, 409 (2004). In determining legislative intent, this Court begins with the plain meaning of a statute or regulation. *Gorre v. City of Tacoma*, 184 Wash. 2d 30, 36-37 (2015). "Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Gorre*, 184 Wash. 2d at 30. (internal quotation marks omitted).

Here, a corporate member is "an actual or voting member of a corporation as distinct from an associate or honorary member." "Corporate member." *Corporate Member*, Merriam-

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1  Webster.com, https://www.merriam-webster.com/dictionary/corporate%20member (last visited

2  Aug. 21, 2020). There is no difference between a shareholder and a corporate member as each is

3  a member of the corporation. The legislative intent was to include a shareholder in the statute

4  and any reference in rule to shareholders is merely synonymous with the statute.

5      With regard to spouses having to qualify, the Legislature empowered the Board with

6  broad authority to enact rules to carry out the "true intent or of supplying any deficiency therein...

7  deemed necessary or advisable" to carry out Initiative 502. Wash. Rev. Code § 69.50.342(1).

8  Spouses were required because of the fear they may be straw individuals and defeat the

9  Justifications of the residency requirements. In addition, *Haines-Marchel*, 1 Wash. App. 2d at

10  716, 748 already held that Wash. Admin. Code. § 314-55-035 and -040, which requires spouses

11  of cannabis applicants to pass criminal background checks, was a proper exercise of the Board's

12  authority and consistent with the intent of I-502. The Board did not exceed its rulemaking

13  authority.

14  **C.      Petitioner fails to show irreparable harm.**

15      As the party seeking injunctive relief, Petitioner must make a "clear showing" that

16  irreparable harm is likely—a mere possibility is not enough. *Winter*, 555 U.S. at 22;

17  *Mazurek*, 520 U.S. at 972. "Irreparable harm is traditionally defined as harm for which there is

18  no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coalition v. Brewer*,

19  757 F.3d 1053, 1068 (9th Cir. 2014). Petitioner has not provided evidence to show an "immediate

20  threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs.*

21  *Co., v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

22      Petitioner is incorrect that any constitutional violation demonstrates irreparable harm.

23  Docket #6 at 22. Instead, "plaintiff must demonstrate some likely irreparable harm in the absence

24  of a preliminary injunction barring the challenged action, **and not simply a constitutional**

25  **violation."** *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 925 (N.D. Cal. 2019), *aff'd*, 963 F.3d

26  874 (9th Cir. 2020) (emphasis added). Indeed, a constitutional violation must be "coupled with

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS                          20          ATTORNEY GENERAL OF WASHINGTON
                                                              1125 Washington Street SE
                                                                    PO Box 40110
                                                              Olympia, WA 98504-0110
                                                                   (360) 664-9006

1    the damages incurred" to demonstrate irreparable harm. *Am. Trucking Associations, Inc. v. City*

2    *of Los Angeles*, 559 F.3d 1046, 1058–59 (9th Cir. 2009).

3        Petitioner cites to *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) for the

4    proposition that a constitutional injury constitutes irreparable injury. Docket #6 at 22. But a

5    blanket application of this rule would mean that the irreparable injury prong is completely

6    eliminated from the preliminary injunction standard so long as any constitutional violation could

7    be shown. This was not the intent. Moreover, *Melendres* involved the illegal detainment of

8    individuals solely based on their immigration status and physical appearance. *Melendres*,

9    695 F.3d at 994-95, 1002. That is to say—not all constitutional deprivations are the same in

10   determining their injurious effect. Assuming that the Petitioner can even demonstrate a

11   likelihood of success on his constitutional claims (which he cannot), the Petitioner's inability to

12   receive an ownership interest in a marijuana business is a far cry from a group of individuals

13   being physically detained at the border based on racial profiling.

14       To be clear, the Board empathizes with Mr. Atkison's situation and hopes the best for his

15   health. However, the Petitioner's harms as it involves Mr. Atkison's marijuana businesses do not

16   rise to the level of irreparable harm. The Petitioner concedes that it already provides financial

17   loans to the stores and is involved with the stores. Docket #6 at 6. Furthermore, the stores would

18   not be lost without transferring the ownership to Petitioner. Mr. Atkison can transfer the

19   ownership interest to another person, or it will pass to someone else through the regulatory

20   process. *See* Wash. Admin. Code § 314-55-140.

21       Relying on *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,

22   944 F.2d 597, 603 (9th Cir. 1991), the Petitioner also argues that the "goodwill" of the business

23   will be erased without transferring ownership to him. *Rent-A-Ctr., Inc.* is distinguishable. First,

24   *Rent-A-Ctr., Inc.*, 944 F.2d at 603 involves the outdated "possibility" of irreparable injury

25   standard rejected by the Supreme Court in *Winter*, 555 U.S. at 22. Second, the intangible injuries

26   in *Rent-A-Car* involved two household good rental businesses, where one intentionally opened

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

21

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1   a store in direct competition to the other business and violating a non-compete clause. *Rent-A-*

2   *Ctr., Inc.*, 944 F.2d at 599. Because they were the same type of business, the threat to recruitment

3   efforts and goodwill together qualified as irreparable harm. *See Rent-A-Ctr., Inc.*, 944 F.2d at

4   603. Comparatively, the injuries in this case are even more esoteric, as it is merely the threat of

5   one person's emotional distress and harm from not being able to become an owner.

6        Finally, a review of Mr. Atkison's ownership interest in Washington marijuana retailers

7   reveals he is not alone in each business, other members in the LLCs are involved, and there is

8   no evidence establishing their business acumen cannot address any ongoing concerns with the

9   marijuana businesses. Smith Decl. ¶ 3. The Petitioner failed to carry his heavy burden in showing

10   irreparable injury.

11   **D.      The Balance of the Equities Does Not Favor Petitioner; Instead, Public Interest**

12          **Warrants Denial of Preliminary Injunctive Relief**

13        When injunctive relief is sought against the government, the public interest factor is often

14   merged with the balancing of the equities factor. *League of Wilderness Defenders/Blue*

15   *Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). In balancing

16   the equities, a court "must balance the competing claims of injury and must consider the effects

17   on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24.

18        Courts may not issue an injunction that is contrary to the public interest, even if the

19   movant is likely to suffer irreparable injury. *See Winter*, 555 U.S. at 22-23; *see also Weinberger*

20   *v. Romero-Barcelo*, 456 U.S. 305, 312-13 (1982) ("[W]here an injunction is asked which will

21   adversely affect a public interest… the court may in the public interest withhold relief… though

22   the postponement may be burdensome to the plaintiff.") (citation omitted).

23        Here, the Petitioner asserts that because he has been vetted as a financier, there is no harm

24   done. Docket #6 at 23. But Petitioner would likely receive additional vetting if he received

25   ownership interest in a marijuana business. *See* Smith Decl. ¶ 11. Moreover, Petitioner grossly

26   misunderstands the nature of the relief he is asking for, and minimizes the impact it would have

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

22

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1   in Washington. As Director Smith asserts, removing the residency requirement would

2   overwhelm the Board's operations and the viability of the Washington marijuana industry. Smith

3   Decl. ¶ 16. As there are many individuals who have a contractual right to purchase equity as soon

4   as the residency requirement is removed, it would likely create a large backlog of applicants.

5   Smith Decl. ¶ 16. The COVID 19-pandemic, with requiring furloughs of employees and remote

6   work, would compound the difficulty in addressing these applicants. Smith Decl. ¶ 16.

7         Even more concerning, if the Court granted relief, and then later found the residency

8   requirement was proper, it would require the Board to *undo* all the applicants it had just allowed

9   on licenses, which would be nearly an impossible task to do. Smith Decl. ¶ 16. In addition, the

10   residency requirement has been in place since the implementation of I-502, approximately 8

11   years; the Court would simply be maintaining the status quo by denying the preliminary

12   injunction. Smith Decl. ¶ 16. If Washingtonians or the state legislature found the residency

13   requirement inequitable, they have had plenty of time to remove the requirement—they have

14   chosen not to.

15         In addition, the Petitioner also seems to ignore that in his State, marijuana is completely

16   illegal. Smith Decl. ¶ 15. The relationship between Washington and Idaho may be harmed by

17   impermissibly allowing the marijuana industry to creep into a state that has chosen to not have a

18   legal marijuana industry. Smith Decl. ¶ 15. The equities are greatly favor of the Board, in

19   particular when weighing the public interest.

20                        **IV.   CONCLUSION**

21         The Petitioner has not made a clear showing of the four required factors to be entitled to

22   extraordinary injunctive relief. First, he has fallen far short of showing that he is likely to prevail

23   on his facial constitutional or rule challenges of the residency requirement. Second, the inability

24   to become a member in a friend's marijuana business does not establish irreparable harm.

25   Finally, the equities tip far in the Board's favor and public interest, as this simply preserves the

26

BOARD'S RESPONSE TO MOTION FOR
PRELIMINARY INJUNCTION
3:20-cv-05661-BHS

23

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40110
Olympia, WA 98504-0110
(360) 664-9006

1    status quo, and the impact on the agency would be overwhelming and chaotic. The Court must

2    deny this motion in order to preserve Washington's marijuana industry.

3         DATED this 24th day of August, 2020.

4                                        ROBERT W. FERGUSON
                                         Attorney General
5

6                                        */s/ Joshua Orf-Rodriguez*
                                         JOSHUA ORF-RODRIGUEZ, WSBA No. 50101
7                                        HAYLEE P. MILLS, WSBA No. 48074
                                         Assistant Attorneys General
8                                        1125 Washington St SE
                                         Olympia, WA 98501
9                                        Phone: (360) 753-2702
                                         Email: Joshua.OrfRodriguez@atg.wa.gov
10                                              Haylee.Mills@atg.wa.gov
                                         *Attorneys for Respondent*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26