THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TODD BRINKMEYER,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>WASHINGTON STATE LIQUOR AND CANNABIS BOARD,<br><br>　　　　　Respondent. | Case No. 3:20-cv-05661-BHS<br><br>**REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - i
USDC No. 3:20-cv-05661-BHS

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

**TABLE OF CONTENTS**

A. The State Cannot Rely on Federal Illegality to Limit Constitutional Protections for the Market it Profits from and Created. ................................................................................... 1

B. The State's Post-hoc Justifications Fail as a Matter of Law and Fact. .................................. 2

C. Brinkmeyer is Likely to Prevail on the Merits. ..................................................................... 5

    1. Article IV Privileges and Immunities ................................................................. 5

    2. Dormant Commerce Clause ................................................................................ 6

    3. Fourteenth Amendment Equal Protection and Privileges or Immunities ........... 7

    4. Fourteenth Amendment Due Process ................................................................. 8

    5. Washington Constitution Privileges and Immunities Clause ............................. 9

    6. The Regulations Exceed Statutory Authority .................................................. 10

D. Brinkmeyer will Suffer Irreparable Harm ........................................................................... 11

E. The Equities and Public Interest Weigh in Brinkmeyer's Favor ......................................... 12

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - ii
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Having received more than $1.7 *billion* in tax revenue from marijuana sales, the State is by far the biggest beneficiary of Washington's marijuana market.[1] The State's response brief, Dkt. 13-1 ("Resp."), argues the participants in that market waive their constitutional rights by generating the revenue from which the State profits. But the State authorized its federally illegal marijuana market, so the usual constitutional rules apply. The Residency Requirements violate Brinkmeyer's constitutional rights, so a preliminary injunction should be granted.

### A. The State Cannot Rely on Federal Illegality to Limit Constitutional Protections for the Market it Profits from and Created.

It is unfair for the State to regulate and profit from its marijuana market while claiming that its participants lack the same constitutional protections as any other person because the market is illegal. The State should be equitably estopped from relying on marijuana's federal illegality when defending the unconstitutional laws the State enacted. Equitable estoppel prevents a state from raising a defense when (1) there is affirmative misconduct by the state going beyond negligence, (2) a serious injustice outweighing the damage to the public interest of estopping the state, (3) knowledge of the true facts by the party to be estopped, (4) intent to induce reliance or actions giving rise to a belief in that intent, (5) ignorance of the true facts by the relying party, and (6) detrimental reliance. *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011)*; see also Watkins v. U.S. Army*, 875 F.2d 699, 707–11 (9th Cir. 1989).

This case satisfies each element. I-502 was an act of the State. *See Washington v. Seattle Sch. Dist. No. 1*, 458 U.S. 457, 469–70 (1982) (treating an initiative as a state action). The State also established the abundant LCB regulations that govern the industry. The State thus engaged in affirmative misconduct by creating a public market that was federally illegal. The public is not harmed if the State recognizes the constitutional rights of its licensed industries, but Brinkmeyer faces the serious injustice of the State continuing to violate his constitutional rights. Mot. at 23–

---

[1] This brief uses the same abbreviations as Brinkmeyer's Motion for Preliminary Injunction. Dkt. 6 (the "Motion").

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 1
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

24. The State knew marijuana was federally illegal, but created a state-licensed system to induce participation in the market. The State committed to "stop treating adult marijuana use as a crime," but the State now seeks to treat its market participants like drug dealers. I-502 § 1. Brinkmeyer began his participation in Washington's cannabis market with the expectation that the State would treat the market as a legal one. Second Decl. of Todd Brinkmeyer in Supp. of Mot. for Prelim. Inj. ("Second Brinkmeyer Decl.") ¶ 2. Brinkmeyer would not have become a financier or sought to obtain equity in the Stores had he known the State would characterize that licensed business conduct as criminal. *Id*.

Brinkmeyer thus satisfies each element, so the State should be equitably estopped.

**B.     The State's Post-hoc Justifications Fail as a Matter of Law and Fact.**

Abandoning the justifications identified in its Answer, the State advances a new set of post-hoc "Justifications" for the Residency Requirements from Licensing Director Rebecca Smith. None of the Justifications save the Residency Requirements. Smith's declaration, Dkt. 12 ("Smith Decl."), lacks any studies, data, or rationale, but is heavy on conclusory facts. Conclusory facts lack evidentiary value. *See Doe v. Trump*, 418 F. Supp. 3d 573, 601–02 (D. Or. 2019). The State does not account for the Supreme Court's holding that residency is unnecessary to maintain effective oversight when the licensed business will remain in state, and the state's ability to revoke licenses provides strong incentives to comply with the law. *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2475 (2019). The Justifications ultimately relate to preventing criminality, but the State's existing enforcement abilities—including tracking all marijuana from seed-to-sale, requiring 24/7 security camera surveillance of marijuana facilities, and the right to access and audit all business records of licensees—successfully prevent criminality from leeching into the industry. WAC 314-55-083, -087, -185; Smith Decl. ¶ 14.

While the Justifications fail generally for these reasons, they fail individually too. Contrary to the State's assertions, *id.* ¶ 4, residency is unnecessary to comply with the Cole Memo. Numerous states have licensed cannabis markets without residency requirements. Mot. at

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 2
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

13. The Cole Memo focuses on preventing diversion, and the State does not explain why owner residency is necessary when diversion would originate in Washington where the businesses exist.

The State claims residency is needed to perform another unspecified background check on Brinkmeyer. Smith Decl. ¶ 5. The only alleged difference from the checks Brinkmeyer already passed while in Idaho is that the State will review misdemeanor charges from local jurisdictions. *Id.* ¶ 11. The State can require applicants to provide their full criminal history, including misdemeanors in other states. And, if applicants "simply lie" in their application, *id*. ¶ 9, the resulting penalty is cancellation of the license, RCW 69.50.562(2)(b)(v). The State makes the conclusory claim that financial vetting is more dynamic for owners than financiers. Smith Decl. ¶ 11. But the State gives no reason why an applicant must be a resident while the State reviews their financial records. The State can ask for information it requires to fully vet applicants, and deny applications if they provide inadequate information. WAC 314-55-050.

The State claims the objections local jurisdictions can make to applications is a valuable source of information about the applicant's character. Smith Decl. ¶¶ 8, 11. Residency is not necessary to investigate an applicant's character. *Tennessee Wine*, 139 S. Ct. at 2475. The State also misstates the purpose of local input, which focuses on existing business operations, not the applicant's character. RCW 69.50.331(10). Regardless, whatever facts relate to the undefined issues the Board purportedly values from local jurisdictions can be demanded from the applicant.

The State claims residency is needed for effective enforcement. Smith Decl. ¶¶ 6, 11. The Supreme Court disagrees. *Tennessee Wine*, 139 S. Ct. at 2475. A nonresident owner will not change the location of the licensed business, which must be in Washington, and interviews or responses to inquiries can be provided remotely. The State does not require that owners be physically present in their facility or physically present to interact with enforcement officers.

The State claims residency is necessary to hold owners accountable. Smith Decl. ¶ 6. The State can hold nonresidents accountable by canceling their license. *See Tennessee Wine*, 139 S. Ct. at 2475. Should the State need to prosecute a nonresident, the State can pursue its usual

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - 3
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

means to obtain custody of a nonresident defendant. The State can also require "a nonresident to designate an agent to receive process or to consent to suit in the [Washington] courts." *Id.* Notably, the State provides no evidence that a nonresident applicant who passes the background check and receives a license is more likely to engage in criminal conduct than a resident.

The State laments it cannot enforce marijuana laws in other states. Smith Decl. ¶ 7. The State has no need to. All licensed marijuana activity occurs in Washington and is reflected in records that must be kept in Washington and accessible to the State upon request.

The State claims residency is necessary to prevent forming "tied houses" across state lines. *Id.* ¶ 9. The State does not describe why this same risk does not apply to existing licensees who can become owners of marijuana businesses in other tiers in other states right now. Nevertheless, State law does not prohibit interstate tied houses, but only restricts financial interests among businesses licensed by the State. RCW 69.50.328; RCW 69.50.101 (aa), (bb), (ee). This Justification reveals the State's unlawful desire to regulate business conduct outside its borders. *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). Similarly problematic is the State's claim that residency is necessary to enforce its limit on holding no more than five retail licenses as nonresidents may have retail stores in other states. Smith Decl. ¶ 10. Regardless, the State could require applicants to disclose their interests in out-of-state marijuana businesses.

Using Oregon as an example, the State claims residency prevents overproduction and thereby prevents diversion. *Id.* ¶ 14. The overproduction issues Oregon experienced were not caused by the removal of its residency requirement, but because Oregon did not cap the number of licenses it issued and had a low cost of entry in the market. Second Decl. of Andy Murphy in Supp. of Mot. for Prelim. Inj., Ex. A. That concern does not apply to Washington, which has capped licenses and the plant canopy for marijuana businesses since it created the market. *See id.*, Exs. B and C; WAC 314-5-075(6). Regardless, the State's existing system prevents diversion through, among other resources, its traceability system and the required security surveillance for marijuana facilities, which is all available to the State at its discretion.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 4
USDC No. 3:20-cv-05661-BHS

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Finally, Smith speculates that nonresidents holding equity in a Washington cannabis business may be criminally charged in Idaho. Smith Decl. ¶ 15. The State does not identify an Idaho law that Brinkmeyer would violate by owning an interest in the Stores, and the license Brinkmeyer seeks would not allow him to take marijuana into Idaho. Brinkmeyer is committed to following the laws of his state. Second Brinkmeyer Decl. ¶ 2. Rather than presume how Idaho will treat its residents, the State should let Idaho make its own decisions. Speculation regarding prosecution in other states does not justify the enforcement of unconstitutional laws.

**C.   Brinkmeyer is Likely to Prevail on the Merits.**

The premise of the State's arguments is that participation in the market that it created is a waiver of constitutional rights. That argument is meritless. Brinkmeyer is likely to prevail.

### 1.   Article IV Privileges and Immunities

The State argues Brinkmeyer's Privileges and Immunities claim fails because there is no right to sell an illegal substance. Resp. at 8. But Brinkmeyer is not asking the Court to let him sell marijuana outside of the State's licensing system. He asks for the State to treat his application for a license to operate a business in the same way it treats similar applications from its residents. The Privileges and Immunities Clause protects the right for a nonresident to pursue a commercial opportunity on the same footing as residents of another state. Mot. at 9–10.

In arguing against Brinkmeyer's right to pursue a livelihood, the State relies solely on *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371 (1978), which involved recreational elk hunting. Resp. at 8–9. The *Baldwin* Court acknowledged that recreational hunting is different from a license for commercial activity, and the latter implicates the right to pursue a livelihood. *Id*. at 386. Protecting commercial opportunities is so important that the right to travel separately protects the right of nonresidents to engage in commerce in other states, a fundamental right that the Residency Requirements also violate. *Saenz v. Roe*, 526 U.S. 489, 500–02 (1999). The license at issue here is not a recreational activity, it is a commercial venture.

The State argues the Justifications provide substantial reasons for the discrimination in

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 5
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

the Residency Requirements. Resp. at 9. But it does not submit evidence that nonresident licensees are more likely to be criminal than residents, and thus more "evil," which it must to prevail. *Council of Ins. Agents & Brokers v. Molasky-Arman*, 522 F.3d 925, 934 (9th Cir. 2008). The State has therefore failed to show a substantial reason to justify its discrimination. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 285 (1985)

The State asserts the Residency Requirements bear a substantial relationship to the Justifications because applicants returned to their home states when the residency requirement was three months. Resp. at 9–10. That travel was constitutionally protected. *See Saenz*, 526 U.S. at 500. Denying an application on that protected basis is an unconstitutional penalty, not a justification to restrict fundamental rights. *See Harman v. Forssenius*, 380 U.S. 528, 540 (1965). Further, the duration of the requirement is irrelevant when there are less restrictive means to accomplish the State's objectives. *Barnard v. Thorstenn*, 489 U.S. 546, 552–53 (1989). As described above, less restrictive means already exist due to the State's tight regulation. Thus, the Residency Requirements violate the Privileges and Immunities Clause of the U.S. Constitution.

### 2. Dormant Commerce Clause

The State asserts the Controlled Substances Act ("CSA") renders the Residency Requirements invulnerable to a dormant Commerce Clause ("DCC") challenge. Resp. at 10. Another federal court rejected that precise argument. The City of Portland, Maine developed a system to issue marijuana licenses, and gave a preference for applicants who lived in the city. *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *2 (D. Me. Aug. 14, 2020). After a nonresident challenged that residential preference, the court ruled the law likely violated the DCC and preliminarily enjoined its enforcement. *Id.* at *12.

The court observed that "congressional action can alter the application of the dormant Commerce Clause" and "Congress may use its powers under the Commerce Clause to confer upon the States an ability to restrict the flow of interstate commerce that they would not otherwise enjoy." *Id.* at *9 (internal quotation and brackets omitted). The court described the

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - 6
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

"high" standard to find Congress consented to allow burdens on interstate commerce:

> [T]he state or local jurisdiction has the burden of demonstrating Congress's "unmistakably clear intent to allow otherwise discriminatory regulations." *United Egg Producers v. Dep't of Agric. of P.R.*, 77 F.3d 567, 570 (1st Cir. 1996); *see also Maine v. Taylor*, 477 U.S. 131, 138–39 (1986) ("[B]ecause of the important role the Commerce Clause plays in protecting the free flow of interstate trade, this Court has exempted state statutes from the implied limitations of the Clause only when the congressional direction to do so has been 'unmistakably clear.'"); *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 430–32 (3d Cir. 2011).

*Id*. In rejecting the same argument the State makes here, the court found the CSA did not provide "unmistakably clear intent" to burden interstate commerce. "[The CSA] nowhere says that states may enact laws that give preference to in-state economic interests. In other words, although the [CSA] criminalizes marijuana, it does not affirmatively grant states the power to burden interstate commerce in a manner which would otherwise not be permissible." *Id.* at *10 (internal quotation omitted). Ignoring this ruling, the State relies on *Gonzales v. Raich*, 545 U.S. 1, 22 (2005), where the Court held Congress acted within its Commerce Clause power when passing the CSA to restrict intrastate medical marijuana. *Gonzales* says nothing about allowing states that legalize marijuana to restrict nonresident ownership, and the State identifies nothing in the CSA that provides an "unmistakably clear intent" to allow the State to violate the DCC.

Thus, the State bears the burden of proving its facially discriminatory and admittedly economic protectionist Residency Requirements survive strict scrutiny. Mot. at 11, 15. The State does not dispute that facially discriminatory laws are virtually per se invalid, but asserts the laws are narrowly tailored because the State previously imposed a three-month residency requirement. Resp. 11. But the State needs to justify why a residency requirement of any duration is needed when its goals can be accomplished with less restrictive means. Mot. at 6. *Tennessee Wine* already resolved that residency is unnecessary to maintain enforcement and oversight of in-state businesses. The Residency Requirements thus violate the DCC.

### 3. Fourteenth Amendment Equal Protection and Privileges or Immunities

In defense of its imposition on Brinkmeyer's fundamental right to travel, the State asserts

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 7
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

rational basis review applies by citing decades-old *Memorial Hospital v. Maricopa*, 415 U.S. 250 (1974). Resp. at 13. Summarizing the next thirty years of precedent on the issue, a federal court recognized that strict scrutiny applies to laws that "impose a durational residency requirement and infringe on the right to travel." *Walsh v. City & Cty. of Honolulu*, 423 F. Supp. 2d 1094, 1101 (D. Haw. 2006). The State asserts strict scrutiny does not apply because Brinkmeyer has not moved to Washington. Resp. at 13. The *Memorial Hospital* Court rejected that argument. 415 U.S. at 257–58. Indeed, requiring actual deterrence to travel to trigger strict scrutiny is a "fundamental misunderstanding of the law." *Dunn v. Blumstein*, 405 U.S. 330, 339 (1972).

Strict scrutiny applies, and the Residency Requirements violate the Equal Protection and Privileges or Immunities Clauses for the same reasons they violate the DCC. The State cites *Martinez v. Bynum,* 461 U.S. 321 (1983), to suggest the Residency Requirements survive strict scrutiny. Resp. at 14. *Martinez* involved a bona fide residency requirement, not a durational residency requirement. 461 U.S. at 333. Bona fide residency requirements may be legitimate, but durational residency requirements are highly suspect. *Id.* at 325–29; *see also Walsh*, 423 F. Supp. 2d at 1102. The State has not proved the durational Residency Requirements pass strict scrutiny.

### 4. Fourteenth Amendment Due Process

The State opposes Brinkmeyer's due process challenge by claiming his reliance on *Gulch Gaming, Inc. v. State of S.D.*, 781 F. Supp. 621 (D.S.D. 1991), "falls flat" because that case involved gambling that was federally legal. Resp. at 14. The State misses the point. The residency requirement in *Gulch Gaming* failed rational basis because, like the LCB, the state's oversight of the gambling industry accomplished the state's legitimate objectives without requiring residency. 781 F. Supp. at 631–32. Federal legality was irrelevant to that analysis. *Id.*

The State asserts the Justifications are rationally related to the Residency Requirements. Resp. at 14. But the underlying basis for the Residency Requirements is reducing criminality. The Justifications do not prevent criminality, *supra*, but they do prevent nonresidents from pursuing a livelihood in Washington as owners of a licensed cannabis business. The Residency

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 8
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

1 Requirements thus violate Brinkmeyer's due process right to pursue a livelihood. Mot. at 18–19.

### 5. Washington Constitution Privileges and Immunities Clause

The State argues the Washington Privileges and Immunities Clause applies only to Washington citizens, and differs from its federal counterpart in this regard. Resp. at 15. But the same case the State cited makes clear that the terms of the Washington Privileges and Immunities Clause "should receive a like definition and interpretation as that applied to them when interpreting the federal constitution." *Grant Cty. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 83 P.3d 419, 429 (Wash. 2004) (quoting *State v. Vance,* 70 P. 34, 41 (Wash. 1902)). As Brinkmeyer is protected by the U.S. Privileges and Immunities Clause, he is also protected by its Washington counterpart. *See State v. Osman*, 139 P.3d 334, 340–41 (Wash. 2006) (recognizing the Washington Privileges and Immunities Clause protects aliens).

The State again relies on the federal illegality of the market it greatly profits from in arguing Brinkmeyer does not seek to vindicate his fundamental right to carry on a business, but rather a right to engage in a federally illegal business. Resp. at 16. The State cites cases to illustrate there is no right to sell liquor, and therefore no right to sell marijuana. *Id.* (citing *Randles v. Liquor Control Bd.*, 206 P.2d 1209, 1213 (Wash. 1949); *Jow Sin Quan v. Liquor Control Bd.*, 418 P.2d 424, 429 (Wash. 1966)). Those cases stand for how the State can issue licenses to allow only some parties to sell liquor, and not others. The State's argument would make sense if Brinkmeyer was asking to operate an unlicensed marijuana business. But he is asking to become an owner of a licensed business—that is to carry on a business—which *Ralph v. City of Wenatchee,* 209 P.2d 270 (Wash. 1949), protects as a fundamental right.

The State argues its police power allows it to discriminate against nonresidents. Resp. at 17. The *Ralph* Court rejected the State's argument when it held that "police power may be exercised only in the pursuit of the general welfare," which did not occur when the defendant passed a law with the primary purpose of economic protectionism. 209 P.2d at 273. As admitted in the State's Answer, the primary justification for the Residency Requirements is express

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 9
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

economic protectionism. Mot. at 11. That means the Residency Requirements are a violation of the Washington Privileges and Immunities Clause, not a valid exercise of police power.

In arguing the Residency Requirements can be sustained on any state of facts, the State cites an old test. Resp. at 17 (citing *United Parcel Service, Inc. v. Dep't of Revenue*, 687 P.2d 186, 194 (Wash. 1984)). Under the current test, "the court will scrutinize the legislative distinction to determine whether it *in fact* serves the legislature's stated goal." *Schroeder v. Weighall*, 316 P.3d 482, 486 (Wash. 2014) (emphasis in original). In its disregard of the correct test, the State ignores how the Residency Requirements must accomplish the *legislature's* stated goal. *Id*. It cites no case where a court accepted rationale presented by agency staff, so the Justifications are irrelevant. The only identified legislative objectives for the Residency Requirements are in I-502. Mot. at 20–21. The State does not dispute Brinkmeyer's analysis for why the Residency Requirements do not fulfill those objectives. *Id*. And, the State provides no evidence that the discrimination in the Residency Requirements *in fact* achieves those objectives. Thus, the Residency Requirements violate the Washington Privileges and Immunities Clause.

### 6. The Regulations Exceed Statutory Authority

The State asserts Brinkmeyer lacks standing to raise his statutory authority argument because, although the regulatory Residency Requirements impose residency on shareholders and spouses when the corresponding statute does not, Brinkmeyer is not injured as a shareholder or spouse. Resp. at 18–19. The State ignores the evidence it submitted that shows Atkison owns his interest in the Stores as the sole shareholder of No. 259, Inc. Smith Decl. ¶ 3, Exs. 1, 3, 5. Because Brinkmeyer seeks to obtain Atkison's interest in the Stores, he seeks to become a shareholder, and thus is directly affected by the inconsistency between the regulatory and statutory Residency Requirements. He can also challenge the unlawful requirement that applies to spouses, because Brinkmeyer violates the Residency Requirements through himself and his spouse, who also resides in Idaho. Second Brinkmeyer Decl. ¶ 3. Brinkmeyer has standing.

The State defends the inconsistency between the regulatory and statutory Residency

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 10
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  Requirements by relying on a definition of "corporate member." Resp. at 19–20. The words
2  "corporate member" are not used in the Residency Requirements, so the definition is irrelevant.
3  Further, the State's argument disregards how RCW 69.50.331(1)(b) imposes a residency
4  requirement on only certain applicants, while the regulatory Residency Requirements impose
5  them on all licensees, TPIs, and their spouses. Mot. at 21–22. By identifying only certain
6  applicants that would need to establish residency, the plain language of RCW 69.50.331(1)(b)
7  shows the legislative intent for no other applicants to establish residency. *See State v. LG Elecs.,*
8  *Inc.*, 375 P.3d 636, 640 (Wash. 2016). The LCB exceeded its statutory authority in enacting rules
9  that subjected parties to a residency requirement that the statute intentionally omitted.

10  **D.   Brinkmeyer will Suffer Irreparable Harm**

11  The State asserts its violations of Brinkmeyer's constitutional rights do not constitute an
12  irreparable harm because he is not being detained and he lacks damages. Resp. at 20–21. The
13  State ignores the "well established" case law that a violated constitutional right constitutes
14  irreparable harm. Mot. at 22; *see also Walsh*, 423 F. Supp. 2d at 1108 (D. Haw. 2006) (citing
15  cases). Damages are not required to establish irreparable harm, but Brinkmeyer has them. The
16  Residency Requirements preclude him from receiving a share of profits in the Stores. Mot. at 7.

17  More importantly, the State callously suggests it is unimportant to whom Atkison
18  transfers his interest in the Stores. Resp. at 22–23. That ignores the evidence that Atkison wants
19  only Brinkmeyer to continue on in his shoes given Brinkmeyer's valued business experience and
20  their decades-long friendship. Mot. at 5–6. The State also disregards how Brinkmeyer wants only
21  Atkison's Stores, which are unique to Brinkmeyer, and resolving ownership is critical now
22  because of Atkison's health. Dkt. 7 ¶ 6. Brinkmeyer's inability to obtain ownership of the Stores
23  would be an irreparable injury. *Starlight Sugar, Inc. v. Soto*, 114 F.3d 330, 332 (1st Cir. 1997).
24  The State further disregards how the uncertainty regarding who can assume Atkison's interest
25  causes him and Brinkmeyer distress. Mot. at 7. The State does not dispute that intangible injuries
26  may qualify as an irreparable harm, and they do here. Mot. at 22–23; *Chalk v. U.S. Dist. Court*

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - 11
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

*Cent. Dist. of California*, 840 F.2d 701, 709–10 (9th Cir. 1988).

E.     **The Equities and Public Interest Weigh in Brinkmeyer's Favor**

The State does not dispute that there is no harm when a state is enjoined from enforcing an unconstitutional law. Mot. at 23. It instead argues, without evidence, that nonresidents would file applications, which would increase demands on the agency. Resp. at 23. Administrative convenience does not justify violating the Constitution. *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 785 (9th Cir. 2014). The State also makes the unsupported conclusion that a delay in processing applications would damage the viability of the industry. Resp. at 23. Not so. It would merely make people wait longer for a decision.

The State speculates relations with Idaho may be harmed. Resp. at 23. But the State points to no hostility that Idaho has shown Washington since it legalized cannabis in 2012 or began allowing Idaho citizens to invest in Washington's market. There is no reason to believe Idaho's stance will change. If anything, the national trend is toward acceptance of marijuana.

The State also claims it will be impossible to undo licenses issued to nonresidents while the preliminary injunction is in effect. Resp. at 23. In the same breath, the State acknowledges that it would simply revoke those licenses. Smith Decl. ¶ 16. Further, the State could notify nonresidents who submit applications while the preliminary injunction order is in effect that the applicants do so at the risk the order will change and their equity interests will be revoked. Nonresidents can then choose whether to assume that risk or not. Regardless, no threatened devastation to the public or industry exists. Indeed, the State would only approve applications after it verified the applicants satisfied all of its demanding criteria, just not residency.

\* \* \* \*

Brinkmeyer does not ask the State to lower its standards when evaluating whether an applicant is fit to hold equity in the State's marijuana market or change its enforcement practices. He asks only to be treated similarly to Washington residents, and the Constitution demands that fair treatment. The State should be enjoined from enforcing the Residency Requirements.

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION - 12
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  DATED this 28th day of August, 2020.

3  MILLER NASH GRAHAM & DUNN LLP

4  *s/Andy Murphy*
   Daniel J. Oates, WSBA No. 39334
   Andy Murphy, WSBA No. 46664
   Pier 70 ~ 2801 Alaskan Way, Suite 300
   Seattle, WA 98121
   Tel: 206-624-8300
   Fax: 206-340-9599
   Email: *Dan.Oates@millernash.com*
          *Andy.Murphy@millernash.com*
   *Attorneys for Petitioner*

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY
INJUNCTION - 13
USDC No. 3:20-cv-05661-BHS

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

**DECLARATION OF SERVICE**

I, Brie Geffre, hereby declare under penalty of perjury under the laws of the United States and of the state of Washington, that on this 28th day of August, 2020, I caused the foregoing to be filed using the CM/ECF system which will send notice of the same to all registered parties

SIGNED at Seattle, Washington this 28th day of August, 2020.

*s/Brie Geffre*
Brie Geffre, Legal Assistant

4824-0120-3913.3

DECLARATION OF SERVICE - 14
USDC No. 3:20-cv-05661-BHS

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599