UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD BRINKMEYER,

                              Petitioner,

        v.

WASHINGTON STATE LIQUIR AND
CANNABIS BOARD,

                              Respondent.

CASE NO. C20-5661 BHS

ORDER INVOKING *PULLMAN*
ABSTENTION, REMANDING
STATE LAW CLAIMS, AND
STAYING FEDERAL CLAIMS

        This matter comes before the Court on Petitioner Todd Brinkmeyer's

("Brinkmeyer") petition for declaratory relief, Dkt. 1-2, the Court's order to show cause,

Dkt. 17, and the parties' responses, Dkts. 18, 19.

## I.   PROCEDURAL AND FACTUAL BACKGROUND

        On June 8, 2020, Brinkmeyer filed a petition for declaratory relief against

Defendant Washington State Liquor and Cannabis Board ("Board") in Thurston County

Superior Court for the State of Washington.  Dkt. 1-2.  Brinkmeyer asserts numerous

claims based on the theory that the Board's residency requirements are unlawful.  *Id.*

1      In 2012, Washington voters approved the legalization and sale of marijuana.  The

2  relevant statutes set forth certain requirements and delegates additional rule making

3  authority to the Board.  The statutory residency requirement provides in part as follows:

4  "No license of any kind may be issued to: . . . (ii) A person doing business as a sole

5  proprietor who has not lawfully resided in the state for at least six months prior to

6  applying to receive a license."  RCW 69.50.331(1)(b)(ii).  The Board expanded the

7  residency requirement as follows:

8          Under RCW 69.50.331 (1)(c), all applicants applying for a
       marijuana license must have resided in the state of Washington for at least
9      six months prior to application for a marijuana license. All business entities
       including, but not limited to, partnerships, employee cooperatives,
10     associations, nonprofit corporations, corporations and limited liability
       companies, applying for a marijuana license must be formed in
11     Washington. All members, governors, or agents of business entities must
       also meet the six month residency requirement. Managers or agents who
12     manage a licensee's place of business must also meet the six month
       residency requirement.

13  WAC 314-55-020(10).

14      Brinkmeyer alleges that the Board developed the residency requirements because

15  the federal government initially refused to cooperate in the State's legalization of

16  marijuana.  Specifically, he alleges:

17          The [Board] initially included the Residency Requirements because
       of concerns regarding criminal background investigations. After the people
18     of Washington approved I-502, the FBI indicated it would not provide
       Washington with access to its national criminal database, and the State was
19     concerned it could verify applicants' criminal histories only through the
       Washington State Patrol database. But the FBI relented—before the very
20     first license was issued under I-502—and agreed to give the [Board] access
       to the federal database.
21          The [Board] has since justified the Residency Requirements by
       asserting it is beneficial to exclude nonresidents from participating in the
22

1    state's marijuana industry to the same degree as residents. [Board]
     members have justified the Residency Requirements as necessary to protect
2    "mom and pop" marijuana businesses in Washington.

3    Dkt. 1-2, ¶¶ 17–18.

4        Regarding Brinkmeyer, he alleges that the Board has twice vetted and approved

5    him as a debt financer for marijuana businesses. *Id.* ¶ 20.  The Board's residency

6    requirements, however, prevent Brinkmeyer "from sharing in the profit of those

7    businesses by providing equity financing because he is not a Washington resident." *Id.*

8    ¶ 22.  Brinkmeyer alleges that an owner of a marijuana retailer "would like to bequeath in

9    part and sell in part his ownership interest in the" business to Brinkmeyer. *Id.* ¶ 24.  "On

10   May 20, 2020, the [Board] confirmed it would deny [Brinkmeyer's] application to be put

11   on the Retailer's license because [Brinkmeyer's] does not comply with the Residency

12   Requirements." *Id.* ¶ 25.  Brinkmeyer asserts that the residency requirements are

13   unlawful because they violate numerous provisions of the United States constitution,

14   violate the privileges and immunities clause of the Washington constitution, and the

15   Board has exceeded its rulemaking authority under the relevant Washington statute. *Id.*

16   ¶¶ 30–65.

17       On July 7, 2020, the Board removed the matter to this Court asserting federal

18   question jurisdiction under 28 U.S.C. § 1331.  Dkt. 1.

19       On August 6, 2020, Brinkmeyer filed a motion for preliminary injunction.  Dkt. 6.

20   On August 24, 2020, the Board responded.  Dkt. 11.  On August 28, 2020, Brinkmeyer

21   replied.  Dkt. 14.  On September 8, 2020, the Court ordered the parties to show cause

22   why the Court has jurisdiction over a state licensing issue for a controlled substance

1  under the Controlled Substances Act ("CSA").  Dkt. 17.  On September 14, 2020, both

2  parties responded.  Dkts. 18, 19.  Brinkmeyer argues that the Court has jurisdiction but

3  that some type of abstention may be appropriate.  Dkt. 19.  The Board contends that

4  jurisdiction is appropriate and that the Court should dismiss all of Brinkmeyer's claims

5  with prejudice.  Dkt. 18 at 8 & n.2.

6  ## II.  DISCUSSION

7       Upon review of the parties' responses, the Court concludes that it has jurisdiction

8  to hear Brinkmeyer's claims despite the illegality of marijuana under the CAS.  The

9  Court, however, "may *sua sponte* consider *Pullman* abstention at any time."  *Columbia*

10  *Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 802 (9th Cir. 2001).  Abstention

11  under *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), "is a narrow exception

12  to the district court's duty to decide cases properly before it. *Pullman* allows

13  postponement of the exercise of federal jurisdiction when 'a federal constitutional issue .

14  . . might be mooted or presented in a different posture by a state court determination of

15  pertinent state law.'"  *Kollsman v. City of Los Angeles*, 737 F.2d 830, 833 (9th Cir. 1984)

16  (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)).

17  Specifically, *Pullman* holds that "federal courts should abstain from decisions when

18  difficult and unsettled questions of state law must be resolved before a substantial federal

19  constitutional question can be decided. By abstaining in such cases, federal courts . . .

20  avoid both unnecessary adjudication of federal questions and 'needless friction with state

21  policies . . . .'"  *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (citation

22  omitted); *see also Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir. 1983) ("When a

1  court abstains in order to avoid unnecessary constitutional adjudication . . . it is not

2  seeking to protect the rights of one of the parties; it is seeking to promote a harmonious

3  federal system by avoiding a collision between the federal courts and state (including

4  local) legislatures.").

5       The Ninth Circuit has set forth three criteria to determine whether *Pullman*

6  abstention is appropriate.  First, the case must touch on a sensitive area of social policy

7  upon which federal courts ought not to enter unless no alternative to its adjudication is

8  open. Second, it must be plain that the constitutional adjudication can be avoided if a

9  definite ruling on the state issue would terminate the controversy. Finally, the possible

10 determinative issue of state law must be uncertain.  *Columbia Basin*, 268 F.3d at 802

11 (citing *Confederated Salish v. Simonich*, 29 F.3d 1398, 1407 (9th Cir. 1994)).

12       In this case, the Court concludes *sua sponte* that *Pullman* abstention is warranted

13 because all three criteria are met.  First, the Court concludes that the case touches on the

14 issue of licenses for marijuana, which is prohibited under the CSA.  This is a sensitive

15 area of social policy that federal courts should not enter unless no other alternative exists.

16 Such restraint allows the States to experiment so long as they do not infringe on

17 fundamental constitutional rights.

18       Second, it is clear that the federal constitutional questions may be avoided if

19 Brinkmeyer obtains a definitive ruling on the state issues.  If the Board exceeded its

20 rulemaking authority by extending the residency requirements, then there is no need to

21 pass upon the federal questions.  Similarly, a definitive ruling on whether the

22

1  requirements violate the privileges and immunities clause of the Washington constitution

2  would clarify the Board's position and could terminate the controversy.

3  Third, the state laws on this evolving experiment are unclear.  Thus, the Court

4  need not pass upon the federal questions when such constitutional determinations could

5  ultimately be advisory opinions.  *See, e.g., PDK Labs., Inc. v. United States Drug Enf't*

6  *Admin.*, 362 F. 3d 786, 799 (D.C. Cir. 2004) (The "cardinal principle of judicial restraint"

7  is that "if it is not necessary to decide more, it is necessary not to decide more.")

8  (Roberts, J., concurring in part and concurring in judgment).

9  Finally, the proper procedure for *Pullman* abstention is to stay determination of

10  the federal claims and remand the state law claims for further proceedings in state court.

11  *San Remo Hotel v. City & Cty. of San Francisco*, 145 F.3d 1095, 1104 (9th Cir. 1998)

12  ("Once *Pullman* abstention is invoked by the federal court, the federal plaintiff must then

13  seek a definitive ruling in the state courts on the state law questions before returning to

14  the federal forum.").  Therefore, the Court will sever and remand Brinkmeyer's state law

15  claims and then stay and administratively close the federal claims.

16  ### III.  ORDER

17  Therefore, it is hereby **ORDERED** that the Court *sua sponte* invokes *Pullman*

18  abstention on Brinkmeyer's federal claims and severs Brinkmeyer's state law claims.

19  The Clerk shall remand the matter to Thurston County Superior Court for resolution of

20  Brinkmeyer's state law claims, terminate the pending motion, and administratively close

21  this matter pending final resolution of the state law claims.  The parties shall file a motion

22

1   to lift the stay once state court matter is resolved or move to dismiss this case if the

2   dispute is otherwise resolved.

3       Dated this 5th day of October, 2020.

4

5

                              BENJAMIN H. SETTLE

6                               United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22