1
2
3
4
5
6
7                                             The Honorable Benjamin H. Settle
8                    **UNITED STATES DISTRICT COURT**
                    **WESTERN DISTRICT OF WASHINGTON**
9                              **AT TACOMA**

10   TODD BRINKMEYER,                    NO: 3:20-cv-05661-BHS

11                    Petitioner,         DECLARATION OF
                                         REBECCA SMITH IN SUPPORT OF
12       v.                              THE BOARD'S MOTION FOR
                                         SUMMARY JUDGMENT
13   WASHINGTON STATE LIQUOR AND
     CANNABIS BOARD,
14
15                    Respondent.

16       I, REBECCA SMITH make the following Declaration of my own personal knowledge

17   under penalty of perjury under the laws of the United States and the state of Washington that the

18   foregoing is true and correct. I am over the age of 18 and competent to testify to the matters

19   stated here:

20       1.       In 2012, I-502, an initiative for the legalization of recreational marijuana in the

21   state of Washington, was approved by a popular vote. I was initially the Marijuana Licensing

22   Manager, and then shortly thereafter became the Director of Licensing with the Washington

23   State Liquor and Cannabis Board (Board) when I-502 was being implemented. As Licensing

24   Director, I oversee and work with hundreds of Board employees, including Licensing Specialists,

25   Enforcement Officers, and their leadership, all to ensure that the Washington marijuana industry

26   runs smoothly and in accord with the intent of the law. In my nine years working at the top level

1    of this new and evolving industry, I am intimately familiar with marijuana statutes and rules, and

2    the underlying policies that support those laws.

3        2.        In voting for I-502, the people of Washington approved a residency requirement

4    for licensees. Wash. Rev. Code § 69.50.331(1)(b) (2013). As Washington was one of the first

5    two states (the other being Colorado) to legalize the marijuana industry, it was of paramount

6    importance to meet the Initiative's goal of having a "tightly-regulated" industry and to ensure

7    that marijuana remained within Washington's borders. The Board promulgated rules that clarify

8    the residency requirement applies to all applicants applying for a marijuana license, including

9    all true parties of interest. *See* Wash. Admin. Code § 314-55-020(11) (2021) and Wash. Admin.

10   Code § 314-55-035(1) (2020). These rules and statute are collectively referred to as the

11   "Residency Requirements."

12       3.        In 2015, Washington merged its recreational and medical marijuana markets and

13   expanded the number of retail licenses available. The Legislature mandated that the Board

14   prioritize the applicants, giving priority to those applicants who had experience in Washington's

15   collective garden system.[1] Washington's collective garden system allowed qualifying patients

16   to produce, process, transport and deliver cannabis for medical use. One reason for prioritizing

17   those who had Washington collective garden experience was to ensure that Washington's

18   medical marijuana patients would continue to receive the products and assistance they needed

19   as the markets merged.

20       4.        Additionally, in 2020, Washington adopted a Social Equity Program for cannabis

21   licenses. The Legislature passed E2SHB 2870, a bill meant to provide business opportunities to

22   people disproportionately impacted by the enforcement of marijuana prohibition laws by

23   providing them with the opportunity to apply for marijuana retail licenses. It recognizes that

24

---

25   [1] Former Revised Code of Wash. §69.50.331 (2015) gave first priority to those applicants who had applied for a
     marijuana license in 2014, who owned or were employed by a collective garden before January 1, 2013, maintained

26   relevant business licenses and paid all applicable state taxes and fees. Second priority was given to those who owned
     or were employed by a collective garden before January 1, 2013, maintained relevant business licenses and paid all
     applicable state taxes and fees. And third priority was given to all other candidates.

DECLARATION OF REBECCA SMITH
IN SUPPORT OF THE BOARD'S
MOTION FOR SUMMARY JUDGMENT
NO: 3:20-cv-05661-BHS

2

1    these laws were disproportionately enforced for decades and that the cumulative harms from this

2    enforcement remain.

3        5.     I am aware that Todd Brinkmeyer, an Idaho resident, has challenged

4    Washington's Residency Requirements. Per the Petition filed in this case, Brinkmeyer would

5    like to receive an ownership interest in Michael "Scott" Atkison's cannabis retail licenses.

6    Neither Brinkmeyer nor Atkison have submitted an application to add Brinkmeyer as a true party

7    of interest on any of the five marijuana licenses that Atkinson currently holds an interest in.

8        6.     Of the five marijuana retailer licenses that Atkison holds an interest in,

9    Brinkmeyer helped finance four of them. It is not clear if Brinkmeyer anticipates ownership in

10    all five businesses, just the four he helped finance or some other arrangement. Below are the

11    current ownership details of each of the five licenses that Atkison currently has ownership in:

12        a.     **CANNA4LIFE**. Atkison owns 80 percent of Canna4Life LLC, a

13    marijuana retailer, License Number 414211. Atkison's ownership is through his

14    company Insangu, LLC. Insangu, LLC is owned by No. 259, Inc., and No. 259, Inc. is

15    owned by Atkison and his spouse. Robin Cook owns the remaining 20 percent of

16    Canna4Life. Brinkmeyer, through his company, ATC 2, LLC, loaned $400,000 to this

17    business to help finance Atkison's purchase of the business.

18        b.     **317 Retail, LLC.** Atkison owns 50 percent of 317 Retail, LLC, a

19    marijuana retailer, License No. 427634. Atkison's ownership is through his company

20    Insangu, LLC. Insangu, LLC is owned by No. 259, Inc., and No. 259, Inc. is owned by

21    Atkison and his spouse. Brian Jennings and Anthony Peschak each own 25 percent of

22    317 Retail, LLC. Brinkmeyer loaned $800,000 to the business.

23        c.     **3213 Retail, Inc.** Atkison owns 50 percent of 3213 Retail, Inc., a

24    marijuana retailer, License No. 084154. Atkison's ownership is through his company

25    Insangu, LLC. Insangu, LLC is owned by No. 259, Inc., and No. 259, Inc. is owned by

26

DECLARATION OF REBECCA SMITH
IN SUPPORT OF THE BOARD'S
MOTION FOR SUMMARY JUDGMENT
NO: 3:20-cv-05661-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  Atkison and his spouse. Jennings and Peschek each own 25 percent of this business.

2  Brinkmeyer did not provide any financing to this business.

3      d.  **2215 Retail, LLC**. Atkison directly owns 50 percent of 2215 Retail, LLC,

4  a marijuana retailer, License No. 423754. Jennings and Peschek each own 25 percent of

5  this business. Brinkmeyer, through his company ATC2, LLC, provided $1,400,000 to

6  the business. Atkison also provided a loan of $800,000 from his personal accounts and

7  from his company Insangu, LLC. Additional funds were also provided from 317 Retail,

8  and each of the other two owners.

9      e.  **RD Tacoma LLC**. Finally, Atkison and his partners, Brian Jennings and

10  Anthony Peschek, acquired a fifth marijuana retail license, RD Tacoma, LLC, License

11  No. 415010 on September 10, 2020. Atkison owns 50 percent of RD Tacoma, LLC

12  through Insangu, LLC. Jennings and Peschek each own 25 percent of the business.

13  A change of location was approved February 10, 2021. The change in location caused

14  the license number to change to 358302. Brinkmeyer assisted in financing the change

15  of location.

16      7.      Brinkmeyer alleges that there is no reason why he could not hold a Washington

17  marijuana license, because the Board has already vetted him. However, whether a person may

18  hold a Washington State marijuana license is a decision that the Board determines after fully

19  vetting a person at the time they apply. Brinkmeyer was vetted as a financier in October 2020,

20  and until he is vetted as an owner, the Board does not know whether he would qualify, absent

21  the Residency Requirements. Further, any criminal check done for Brinkmeyer as an out-of-state

22  financier would have been insufficient for a marijuana license application. See paragraphs 10,

23  17 *infra* for a more detailed explanation. As a result, Brinkmeyer's assertion that he has already

24  been vetted for ownership is incorrect.

25      8.      Washington's Residency Requirements are a necessary component of

26  Washington's strong and effective regulatory and enforcement systems for its regulated

1    marijuana industry. Residency Requirements help Washington meet the *Cole* memorandum

2    guidelines and, as a result, help to prevent federal interference in our market. The federal

3    Controlled Substances Act (CSA) makes any marijuana possession, transfer, or delivery a federal

4    crime. After I-502 passed, the federal government issued the *Cole* memorandum, which signaled

5    the federal government would be unlikely to investigate or prosecute those within the regulated

6    marijuana market if certain enforcement priorities were met. Those priorities included

7    preventing sales to minors, preventing marijuana from becoming associated with criminal

8    affiliates, and preventing diversion of marijuana to other states. The *Cole* memorandum also

9    generally expected that states enact "laws authorizing marijuana-related conduct" to "implement

10   strong and effective regulatory and enforcement systems that will address the threat those state

11   laws could pose to public safety, public health and other law enforcement interests." It further

12   warned, "If state enforcement efforts are not sufficiently robust to protect against the harms . . .

13   the federal government may seek to challenge the regulatory structure itself." Attached as

14   **Exhibit 1** is a true and accurate copy of the *Cole* memorandum.

15        9.    While the *Cole* memorandum was rescinded by Former Attorney General Jeff

16   Sessions, it still serves as the hallmark guidance that states follow, and the federal government

17   has continued to implicitly follow that guidance as well. Attached as **Exhibit 2** is a true and

18   accurate copy of a recent article entitled "2 years after Sessions Rescinded Cole Memo,

19   Prosecutors Continue to Adhere to Obama-Era Enforcement Guidelines." Upon looking at

20   Department of Justice's prosecutions from 2018-2020, the article concludes that the DOJ still

21   follows the *Cole* memorandum despite it being rescinded. Attorney General Merrick Garland

22   has not yet reissued the *Cole* memorandum, but has reiterated that the Department of Justice

23   should not be using its limited resources to go after people using marijuana in compliance with

24   state law.

25        10.   Residency Requirements ensure that all potential owners are properly

26   investigated and prevent criminal elements from gaining a foothold in Washington's market.

DECLARATION OF REBECCA SMITH
IN SUPPORT OF THE BOARD'S
MOTION FOR SUMMARY JUDGMENT
NO: 3:20-cv-05661-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  All potential licensees must undergo a financial investigation, a criminal background check, and

2  interviews to successfully pass the Board's vetting requirements and be eligible for licensure. In

3  order to complete a successful criminal background check, the Board needs to be able to conduct

4  criminal background checks in local Washington jurisdictions for crimes and violations that are

5  not available in any federal database. The federal database includes only those convictions where

6  a person is fingerprinted and not all jurisdictions fingerprint, so it is incomplete. This is

7  important, because a pattern of criminal conduct, including just misdemeanors, may disqualify

8  an applicant for licensure. *See* Wash. Admin. Code § 314-55-040 (2021). Furthermore, each state

9  has a slightly different type of local criminal background system, making it more difficult for

10  the Board to determine whom to work with to obtain the necessary information. Conducting such

11  in-depth investigation of out of state applicants would both increase the expense of the

12  investigation and the time necessary to complete it. Finally, states where marijuana is illegal,

13  such as Idaho, could be understandably reluctant to assist another state where it has been

14  legalized, particularly when the states share a border.

15      11.    Local authorities must be notified of marijuana applications and the associated

16  applicants, and can object to the location or the applicants. Wash. Rev. Code § 69.50.331(7)

17  (2020). In their objections, local authorities may provide details about an individual that the

18  Board may not be aware of, including threats to public safety that may necessitate the denial of

19  the applicant for a marijuana license. While it does not happen frequently, I am aware of several

20  cases in which information from a local authority prevented individuals from receiving a

21  marijuana license. If a marijuana licensee could live out-of-state, local authorities in Washington

22  would be unlikely to be able to provide any additional information, and the Board would lose

23  this meaningful perspective in evaluating marijuana applicants.

24      12.    Our licensing investigations will also be hampered by our inability to receive

25  information about a business entity's make up. Not all states have open and easily accessible

26  business information. For example, Delaware, Wyoming, New Mexico, and Nevada allow

DECLARATION OF REBECCA SMITH
IN SUPPORT OF THE BOARD'S
MOTION FOR SUMMARY JUDGMENT
NO: 3:20-cv-05661-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1   limited liability companies to file without listing the names of the owners, which protects the

2   owners' identities. Without being able to fully confirm who is involved, the Board cannot know

3   who is actually a true party of interest and whether they qualify to be part of the license.

4       13.     The Residency Requirements also support Washington's prohibition on vertical

5   integration. Wash. Rev. Code § 69.50.328 (2013). Washington's vertical prohibition means an

6   individual or business can only participate on one side of the industry—either, the marijuana

7   retailer side, or the marijuana production and processing side. Washington's marijuana system

8   was patterned on Washington's alcohol rules, which separate retail sellers from manufacturers

9   and distributors to prevent vertical integration. Historically, an alcohol manufacturer's undue

10  influence over a retail seller invited criminal activity and unsafe business practices.

11      14.     By eliminating the Residency Requirements, Washington's prohibition on

12  vertical integration, as set up by the people of Washington, would be undermined. This is because

13  another state's resident could be involved with marijuana production, retail, or even both in their

14  own state, and then apply to be a producer or retailer in Washington. As there is no federal

15  database of those involved in the industry, the best enforcement mechanism we would have is to

16  "ask" the individual whether they are involved with marijuana and rely on their truthfulness.

17  As demonstrated by some of Atkison's companies, corporate structure can become very

18  complicated and make it difficult for the Board to track down whether the individual is in fact

19  involved with marijuana outside of Washington. Residency Requirements provide meaningful

20  inquiries into applicants' involvement in the marijuana industry within Washington. An influx

21  of out-of-state residents, who likely have out-of-state involvement in the marijuana industry,

22  would make this inquiry untenable and weaken the Board's ability to enforce the prohibition on

23  vertical integration.

24      15.     Washington allows one individual/business to own up to five marijuana retailer

25  licenses. Wash. Rev. Code § 69.50.325(3)(b) (2020). Such a limitation ensures that big business

26  and criminal activity cannot dominate the market in our state—but if Residency Requirements

DECLARATION OF REBECCA SMITH
IN SUPPORT OF THE BOARD'S
MOTION FOR SUMMARY JUDGMENT
NO: 3:20-cv-05661-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    were eliminated, this safeguard to Washington's marijuana industry would be threatened because

2    it would be difficult to know who is already involved with other retailers in other states. It could

3    allow large interstate companies to form that would dominate not only Washington's market but

4    a national market as well. If the history with Big Tobacco is any indication, the rise of large

5    national cannabis companies will bring negative impact to Washington's market. By keeping all

6    ownership of marijuana businesses in Washington, we can work within our state's regulatory

7    structure to ensure Washington's reasonable limitations on marijuana licenses remain intact.

8          16.     Additionally, Residency Requirements are a necessary component of the state's

9    Social Equity Program the Legislature passed in 2020. The Social Equity Program provides that

10   the remaining 39 licenses that have been returned to the Board may only be issued to a

11   "social equity applicant," which is defined in part as someone who has lived in a

12   disproportionately impacted area. This legislation builds upon the Residency Requirements and

13   seeks to undo harm that the state's marijuana prohibition laws caused to Washington residents.

14   Washington State is not equipped to address the disproportionate effects of marijuana's

15   prohibition laws across this nation, but it is rightfully attempting to address them within our state.

16   Gutting the Residency Requirements would in effect gut this Social Equity Program.

17         17.     While the vetting of financiers and owners is similar, it is not exactly the same.

18   Simply because a person can pass vetting as a financier does not mean that they would pass

19   vetting as an owner. The investigation into an owner is more searching and thorough as compared

20   to a financier. By way of example, Licensing Specialists and Board Enforcement Officers will

21   spend more time reviewing the character of an owner, including local criminal background

22   checks not available for out-of-state financiers. Also, an out-of-state financier is not subject to

23   the same local background scrutiny (because of the difficulty as described in paragraph 11).

24   Another difference is a financier's funds can be more easily traced because they have a one-time

25   determinate amount of money that they are investing. The vetting process for that is

26   straightforward.

DECLARATION OF REBECCA SMITH
IN SUPPORT OF THE BOARD'S
MOTION FOR SUMMARY JUDGMENT
NO: 3:20-cv-05661-BHS                          8                ATTORNEY GENERAL OF WASHINGTON
                                                                1125 Washington Street SE
                                                                PO Box 40100
                                                                Olympia, WA 98504-0100
                                                                (360) 664-9006

18.     Moreover, owners, and not financiers, are held responsible for the operation of the business, regulatory compliance, and for any criminal conduct that may occur. Wash. Admin. Code § 314-55-110(4) (2016). Because of the difference in accountability between financiers and owners, there is less of a need for financiers to be domiciled in the state. In contrast, an owner must be located here so they can oversee business operations, timely respond to investigations, be present for inspections as needed, and properly respond to the Board's requests for documents or information. *See* Wash. Admin. Code § 314-55-185 (2018).

19.     The Board determined that the six-month residency requirement is the shortest amount of time to accomplish the goals discussed *supra*. When I-502 was initially passed, the Residency Requirements were only a three-month period. While we would have liked to make that work, the Board had issues with individuals who came into Washington for three months for the sole purpose of receiving a marijuana license and then would return to their home state. This caused issues on the Licensing side as well as on the Enforcement side, as applications often take three months or more to process, so applicants would start out qualifying for a license, but by the end would not, because they were no longer a resident. To that end, Second Engrossed Second Substitute House Bill 2136 in 2015 was passed and raised the Residency Requirements from three months to six months. This small increase has better achieved the purposes of the Residency Requirements set forth in this Declaration.

20.     If marijuana becomes federally legal, it may be time for another discussion regarding the Residency Requirements. In a recent article, cannabis policy experts discussed proposed federal legislation to legalize marijuana. Although the experts support it, they raised concerns about the federal government creating an interstate cannabis market overnight. They warn that the sudden application of the dormant Commerce Clause would remove requirements such as residency requirements, social equity programs, and track-and-trace systems. They also warn that removal of these policies would inhibit state regulators' abilities to prevent diversion.

/ / /

DECLARATION OF REBECCA SMITH
IN SUPPORT OF THE BOARD'S
MOTION FOR SUMMARY JUDGMENT
NO: 3:20-cv-05661-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  Attached as **Exhibit 3** is true and accurate copy of a recent article entitled, "Commerce Clause

2  'Chaos' Could Follow Fed. Pot Legalization."

3      21.    I also understand that other states have chosen not to include residency

4  requirements in their marijuana system. While that may work for them, other states have issues

5  with overproduction and diversion of marijuana out of state. For example, Oregon does not have

6  a residency requirement and it has significant overproduction. Overproduction of marijuana is a

7  common issue that leads to diversion, as marijuana licensees may become desperate to make a

8  sale in an over saturated market, so they end up selling their marijuana out of state to earn money

9  to keep their business afloat. As explained by a recent article, "Residency Requirements for

10  Marijuana License," on page 9, the elimination of the residency requirement may have caused

11  Oregon to be the "target of federal attention due to marijuana diversion." That article on page 4

12  also states that "[t]he main cost of residency requirements is a loss of funding." That concern is

13  not as great in Washington anymore, because as previously discussed, we have allowed out-of-

14  state financiers to provide money and loans to marijuana retailers. A true and accurate copy of

15  that article is attached as **Exhibit 4.**

16      22.    I am proud to say that Washington's marijuana regulations have ensured that

17  70 percent of marijuana in Washington right now has come from legal sources, displacing the

18  illegal market. While that number may seem low, it is one of the highest in the nation for legal

19  marijuana production.

20      23.    Some states, including Brinkmeyer's residence, Idaho, have not chosen to

21  decriminalize marijuana. Attached as **Exhibit 5** is a true and accurate copy of an explanation of

22  laws and map detailing the current legality of marijuana in each state.

23  / / /

24  / / /

25  / / /

26

DECLARATION OF REBECCA SMITH IN SUPPORT OF THE BOARD'S MOTION FOR SUMMARY JUDGMENT NO: 3:20-cv-05661-BHS     10     ATTORNEY GENERAL OF WASHINGTON 1125 Washington Street SE PO Box 40100 Olympia, WA 98504-0100 (360) 664-9006

1    24.    In my opinion as Licensing Director for the last nine years, and a dedicated

2  advocate for the integrity of Washington's marijuana industry, it is paramount that the Residency

3  Requirements be maintained.

4    Pursuant to 18 U.S.C. § 1746 (1976), I declare under penalty of perjury that the

5  foregoing is true and correct.

6    Signed this ___28___ day of ___January___ 2022, at Olympia, Washington.

7

8    *Rebecca Smith*
     REBECCA SMITH
     Licensing Director

9    Washington State Liquor and Cannabis Board

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26