Todd Brinkmeyer v. Washington State Liquor and Cannabis Board – No. 3:20-cv-05661-BHS

Exhibit 3 to Declaration of Rebecca Smith in Support of Respondent's Motion for Summary Judgment



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Commerce Clause 'Chaos' Could Follow Fed. Pot Legalization

By **Sam Reisman**

Law360 (September 9, 2021, 10:40 PM EDT) -- Cannabis policy experts warned on Thursday that federal legalization could trigger a regulatory crisis for an industry that's been governed by state law for close to a decade, potentially rolling back social equity programs and eroding years of regulations.

The ramifications of creating an interstate cannabis market overnight would be felt most acutely by smaller businesses unable to compete with multistate giants, and by state regulators suddenly forced to adapt their policies in ways that would likely limit their power.

The comments were aired at a webinar moderated by Andrew Kline, senior counsel at Perkins Coie LLP, and echo many in the industry who have urged federal lawmakers to **slowly roll out legalization** so as not to radically alter state cannabis markets.

"It's always the smallest businesses and most marginalized groups that suffer the most when you introduce this kind of chaos," said panelist Shaleen Title, a former regulator with the Massachusetts Cannabis Control Commission and CEO of the social equity-focused think tank Parabola Center.

According to panelist Robert Mikos, a professor at the Vanderbilt Law School who has studied the intersection of federalism and cannabis policy, many states enacted their regimes under the assumption that the federal prohibition on cannabis effectively turned off the dormant commerce clause: a constitutional doctrine that limits states' power over interstate commerce.

Federal legalization, as envisioned by the Cannabis Administration and Opportunity Act, or CAO Act — **released in draft form in July** by Senate Democrats — would "remove any doubts that this normal background principle of constitutional law applies to the cannabis market," Mikos said. "And because of that principle, you're going to see challenges to all sorts of state regulations."

For example, many states put in place residency criteria requiring that cannabis licensees have in-state residency on the grounds that it makes the industry easier to oversee or because voters expected legalization to benefit their fellow residents.

These requirements have been **frequently challenged in court** on constitutional grounds, with uneven results, but panelists warned that federal legalization without explicit congressional legislation suspending the dormant commerce clause could be their undoing.

Some states implemented their social equity policies by privileging applicants that hail from certain zip codes disproportionately harmed by prohibition, and these rules too could be struck down as de facto residency requirements, the panelists said.

While some of these policies may have been designed with protectionist intentions, many were developed as practical matters to help regulators track marijuana to guard against diversion to minors, non-patients and out-of-state sellers, Mikos said.

"They developed these track-and-trace systems, and those are only feasible as long as you restrict interstate commerce in cannabis," he said. "They created these closed-loop systems within a state. ... Those sorts of things don't work very well when you bring in product from outside the loop."

The panelists also warned of a potential "race to the bottom," with more onerous regulations being

Exhibit 3
Page 1 of 2

struck down in favor of more relaxed ones as policymakers angle to make their state more welcoming to cannabis businesses that can freely move to another state.

The panelists were generally supportive of the CAO Act — co-authored by Senate Majority Leader Chuck Schumer, D-N.Y., and Sens. Cory Booker, D-N.J. and Ron Wyden, D-Ore. — and they applauded its criminal justice reform and cannabis descheduling components.

Kline, former director of public policy for the National Cannabis Industry Association, said that despite the draft bill's silence on the dormant Commerce Clause and the industry's concerns about an interstate market, stakeholders agreed that descheduling cannabis should have happened "yesterday."

But the bill's relative lack of substance in preserving state autonomy is still a pressing concern. According to panelist Jeremy Unruh, a public and regulatory affairs executive at multistate cannabis company PharmaCann LLC, the provision of the CAO Act that outlines states' rights to regulate cannabis may be more toothless than it seems, since it borrows language from preprohibition laws governing how states can regulate alcohol.

Decades of Supreme Court decisions have interpreted those laws under the 21st Amendment, which ended alcohol prohibition, with the upshot that states have less power. "They've eroded that language that's in the CAO Act so it doesn't give the states much more discretion to regulate cannabis coming in from other states than any other commodity," Unruh said.

"There really aren't any special protections states can use to ensure the stability of their state programs," he added.

--Editing by Adam LoBelia.

All Content © 2003-2022, Portfolio Media, Inc.

Exhibit 3
Page 2 of 2