Todd Brinkmeyer v. Washington State Liquor and Cannabis Board – No. 3:20-cv-05661-BHS

Exhibit 4 to Declaration of Rebecca Smith in Support of Respondent's Motion for Summary Judgment



# RESIDENCY REQUIREMENTS FOR MARIJUANA LICENSURE

by Allie Howell
January 2019



Exhibit 4
Page 1 of 16



Reason Foundation's mission is to advance a free society by developing, applying and promoting libertarian principles, including individual liberty, free markets and the rule of law. We use journalism and public policy research to influence the frameworks and actions of policymakers, journalists and opinion leaders.

Reason Foundation's nonpartisan public policy research promotes choice, competition and a dynamic market economy as the foundation for human dignity and progress. Reason produces rigorous, peer-reviewed research and directly engages the policy process, seeking strategies that emphasize cooperation, flexibility, local knowledge and results. Through practical and innovative approaches to complex problems, Reason seeks to change the way people think about issues, and promote policies that allow and encourage individuals and voluntary institutions to flourish.

Reason Foundation is a tax-exempt research and education organization as defined under IRS code 501(c)(3). Reason Foundation is supported by voluntary contributions from individuals, foundations and corporations. The views are those of the author, not necessarily those of Reason Foundation or its trustees.

Exhibit 4
Page 2 of 16

# TABLE OF CONTENTS

**RESIDENCY REQUIREMENTS FOR MARIJUANA LICENSURE ................................................................ 1**
    1.1 JUSTIFICATIONS FOR RESIDENCY REQUIREMENTS ............................................................. 1
    1.2 COSTS OF RESIDENCY REQUIREMENTS ................................................................................ 4
    1.3 SUMMARY OF RESIDENCY REQUIREMENTS ........................................................................ 5
    1.4 DO RESIDENCY REQUIREMENTS ACHIEVE ECONOMIC GOALS? .................................. 8
    1.5 DO RESIDENCY REQUIREMENTS REDUCE MARIJUANA DIVERSION? ......................... 9
    1.6 RESIDENCY REQUIREMENTS AND TAXES ........................................................................... 10
    1.7 CONCLUSIONS .............................................................................................................................. 11
**ABOUT THE AUTHOR ...................................................................................................................................... 12**

**PART 1**

# RESIDENCY REQUIREMENTS FOR MARIJUANA LICENSURE

Many states that have legalized recreational or medical marijuana have included requirements that marijuana license holders, employees, or even consumers be state residents. The requirement is justified as a way to ensure safety in the industry and keep out-of-state investors from reaping all the economic benefits. Yet by limiting investment and entry into the legal marijuana business, residency requirements could prevent potential entrepreneurs from getting the capital they need.

## 1.1  JUSTIFICATIONS FOR RESIDENCY REQUIREMENTS

Many marijuana regulations are justified as necessary to comply with the federal government's marijuana enforcement priorities laid out in the Cole Memo, a 2013 memo issued by then-Deputy Attorney General James Cole in response to legalization in Colorado and Washington. Related to residency requirements is the priority of "[p]reventing the

diversion of marijuana from states where it is legal under state law in some form to other states."[1]

The Financial Crimes Enforcement Network (FinCEN) later issued guidance related to the Bank Secrecy Act for financial institutions interested in providing services to marijuana businesses. The guidance provides a long list of "red flags" that may signal a business is violating state law or implicating a Cole Memo priority. Two of these red flags directly relate to residency requirements:

1. A marijuana-related business engages in international or interstate activity, including by receiving cash deposits from locations outside the state in which the business operates, making or receiving frequent or large interstate transfers, or otherwise transacting with persons or entities located in different states or countries.

2. The owner(s) or manager(s) of a marijuana-related business reside outside the state in which the business is located.

The existence of red flags could lead to a financial institution filing a "marijuana priority" suspicious activity report, which includes "(iii) details regarding the enforcement priorities the financial institution believes have been implicated; and (iv) dates, amounts, and other relevant details of financial transactions involved in the suspicious activity"—or terminating the relationship altogether.[2] While financial institutions typically avoid working with cannabis businesses altogether due to the difficulties of complying with FinCEN regulations and the risk of losing federal bank insurance, there were 486 depository institutions serving marijuana businesses in September 2018.[3]

---

[1] Cole, James M. "Memorandum for all United States Attorneys." *U.S. Department of Justice Office of the Attorney General.* Aug. 29, 2013.
 https://www.justice.gov/iso/opa/resources/3052013829132756857467.pdf

[2] "BSA Expectations Regarding Marijuana-Related Businesses." *United States Department of Treasury Financial Crimes Enforcement Network.* Feb. 14, 2014. https://www.fincen.gov/resources/statutes-regulations/guidance/bsa-expectations-regarding-marijuana-related-businesses

[3] Reiners, Lee and John Matthews. "Federal Law Leaves Banks Shying Away from Marijuana Businesses." *The FinReg Blog.* Dec. 5, 2016. https://sites.duke.edu/thefinregblog/2016/12/05/federal-law-leaves-banks-shying-away-from-marijuana-businesses/; "Marijuana Banking Update." *Financial Crimes Enforcement Network.* https://www.fincen.gov/sites/default/files/shared/Marijuana_Banking_Update_September_2018.pdf

Additionally, early residency requirements, such as those in Colorado and Washington, were based on a fear that legal marijuana would be easily diverted into the black market. Residency requirements could, according to regulators, keep profits out of international drug cartels and keep the industry smaller and easier to manage.[4] When discussing residency requirements in Alaska, Assistant Attorney General Harriet Milks commented that with unchecked outside investment, "there's no way to control any of it, so it's a big problem."[5]

Residency requirements are also a form of economic protectionism for state residents. Since marijuana businesses may be illegal in neighboring states, there is fear that out-of-state businesses will swoop in and take advantage of voters' hard work in passing legalization. As summarized by a business owner in Ohio: "We're the ones who fought for this. Allowing people from outside the state is not benefiting Ohio or Ohioans or our unemployment."[6]

Requirements are further justified as simply giving state residents a head start since entrepreneurs can move into the state and eventually overcome the restriction. In newly legal states, inexperienced locals will have a chance to establish their business before experienced businesses from legal states can compete.[7]

Finally, by reducing investment in the marijuana industry, residency requirements are defended as necessary to keep the industry from being overrun by big business. In Colorado, for example, some credit the residency requirements with allowing small businesses to set up shop. As summarized by Colorado attorney Rachel Gillette: "It's

---

[4] Wyatt, Kristen. "Legalized States Taking Fresh Look at Out-Of-State Marijuana Investing." *The Cannabist*. Jan. 20, 2016. https://www.thecannabist.co/2016/01/20/marijuana-investing-lawmakers-out-of-state-ownership/46945/

[5] Andrews, Laurel. "Alaska Marijuana Regulators Loosen Residency Requirements for New Business Owners." *Anchorage Daily News*. Sept. 28, 2016. https://www.adn.com/cannabis-north/article/alaska-marijuana-control-board-makes-major-residency-requirement-change-last-minute/2015/11/21/

[6] Borchardt, Jackie. "Ohio Medical Marijuana Entrepreneurs Want Residency Requirement for Business Licenses." *Cleveland.com*. Mar. 21, 2017. https://www.cleveland.com/metro/index.ssf/2017/03/ohio_medical_marijuana_entrepr.html

[7] Overton, Penelope. "First Pot-Business Licenses Would Go to Maine Residents of at Least 4 Years." *Portland Press Herald*. https://www.pressherald.com/2018/04/03/first-pot-business-licenses-would-go-to-maine-residents-of-at-least-4-years/

[residency requirements] allowed for small businesses, mom and pops. It doesn't allow for corporate consolidation in the marketplace. You can be a small business in Colorado and compete."[8]

## 1.2 COSTS OF RESIDENCY REQUIREMENTS

Any entry restriction in the legal marijuana industry has the potential to reduce investment and prevent the industry from developing. Reductions in the size of the marijuana market may make it harder for the legal market to replace the illicit one as the main supplier of marijuana.

The main cost of residency requirements is a loss of funding. A lack of capital in the marijuana industry is important for two reasons. First, because marijuana is still illegal on the federal level, businesses have extremely limited access to traditional bank loans. Further, marijuana entrepreneurs cannot write off business expenses on their federal taxes and growers have a hard time obtaining crop insurance.[9] Second, state licenses to start a marijuana business are prohibitively expensive. Without access to banks, only state residents with access to non-bank financing or who independently have start-up cash can enter the industry. Out-of-state investors eager to join the industry could be another source of capital.

This is what happened in Oregon. The state initially required 51% of a marijuana business to be owned by two-year state residents, but repealed these requirements in 2016. Portland attorney and Executive Director of the Oregon Cannabis Association Amy Margolis pushed for the change because "[f]or every five people who came into my office, three or four of them were looking for capital, and they couldn't find it here in Oregon. It became clear that

---

[8] Crombie, Noelle. "Out-Of-State Companies Eye Oregon Marijuana Market for Expansion." *The Oregonian*. April 25, 2016. https://www.oregonlive.com/marijuana/index.ssf/2016/04/colorado_marijuana_entrepreneu.html

[9] Weed, Julie. "California Marijuana Start-Ups, Shut Out From Banks, Turn to Private Backing." *The New York Times*. Dec. 27, 2017. https://www.nytimes.com/2017/12/27/business/smallbusiness/california-marijuana-start-ups.html

unless people could reach outside the state for investment money, we weren't going to have a very successful market."[10]

Colorado also updated its residency requirements to allow out-of-state investors more access to the industry. Residency requirements could become problematic as other states open up markets with less restrictive rules, as summarized by head of the Colorado Cannabis Chamber of Commerce, Tyler Henson: "We can't go get a loan from the bank to grow our business to help us accelerate. We are susceptible to falling behind other states."[11]

The change allowed U.S. citizens to have ownership interest in marijuana businesses, but all businesses must still have at least one Colorado resident direct beneficial interest owner. Businesses with any non-resident owners are capped at 15 owners while resident owned businesses can have an unlimited number of owners. Officers with day-to-day operational control must have been residents for at least one year and must maintain residency while they have day-to-day control.[12] Legislation passed by the legislature but vetoed by the governor in June 2018 could have lifted the 15 owner cap and allowed publicly traded cannabis companies.[13]

## 1.3  SUMMARY OF RESIDENCY REQUIREMENTS

For recreational marijuana, state residency restrictions were included in the initial marijuana regulations for both Colorado and Washington. California, Nevada, and Oregon have no residency restrictions, with Alaska and Massachusetts following suit.

---

[10]  Schroyer, John. "Flood of Investment Money Flowing to Oregon Cannabis Firms After Residency Change." *Marijuana Business Daily*. July 28, 2016. https://mjbizdaily.com/flood-of-investment-money-flowing-to-oregon-cannabis-firms-after-residency-change/

[11]  Wyatt, Kristen. "Legalized States Taking Fresh Look at Out-Of-State Marijuana Investing."

[12]  Code of Colorado Regulations. 1 CCR 212-2. https://www.colorado.gov/pacific/sites/default/files/ColoradoRegister.pdf1%20CCR%20212%20-2%20Retail%20Effective%2002022018.pdf

[13]  "HB18-1011: Marijuana Business Allow Publicly Traded Owners." *Colorado General Assembly*. https://leg.colorado.gov/bills/hb18-1011

### TABLE 1: RESIDENCY RESTRICTIONS IN LEGAL RECREATIONAL MARIJUANA STATES

| State | Owners | Employees |
|---|---|---|
| Alaska[14] | The sole proprietor, each business partner, each member of a limited liability company, and all shareholders in a corporation must be state residents. | None |
| California[15] | None | None |
| Colorado[16] | Each marijuana establishment must have at least one direct beneficial interest owner who holds an associated key license and has been a state resident for at least one year. Businesses can have an unlimited number of direct beneficial interest owners if they have been residents for one year. U.S. citizens who are not Colorado residents may apply for an associated key license only if there has been a "finding of suitability." Businesses with non-resident owners can only have 15 owners. The associated key license application fee for non-residents is $4,925 and $725 for residents. | Key and support employees must be residents. There is a potential workforce training or development exemption to the residency requirement. |
| Massachusetts[17] | The majority of microbusiness members or executives and all craft marijuana cooperative members must have resided in the state for 12 months prior to application. Applicants for the social equity program also must be residents. | None |
| Nevada[18] | None | None |
| Oregon[19] | None | None |
| Washington[20] | The sole proprietor or all members of any other business organization structure must have resided in the state six months prior to application. Managers, spouses, and persons expecting a share of profit also must meet residency requirement. | The six-month residency requirement applies to managers or agents who manage the business. |

[14] Alaska Administrative Code. 3 AAC Chapter 306. https://www.commerce.alaska.gov/web/Portals/9/pub/MCB/StatutesAndRegulations/MarijuanaRegulations.pdf; "Marijuana Handler Permit Application Instructions." *Alcohol and Marijuana Control Office*. July 3, 2018. https://www.commerce.alaska.gov/web/Portals/9/pub/MCB/MJHandlerPermit/Marijuana%20Handler%20Permit%20Application%20Instructions.pdf

[15] Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA). California Law. https://leginfo.legislature.ca.gov/faces/codes_displayexpandedbranch.xhtml?tocCode=BPC&division=10.&title=&part=&chapter=&article

[16] 1 CCR 212-2.

[17] Code of Massachusetts Regulations. 953 CMR. Cannabis Control Commission. https://www.mass.gov/files/documents/2018/03/27/935cmr500.pdf

[18] Nevada Revised Statues (NRS). Chapter 453D. https://www.leg.state.nv.us/NRS/NRS-453D.html#NRS453DSec230; email correspondence with the Nevada Department of Taxation.

[19] "OLCC Marijuana Program: Frequently Asked Questions (all)." *Oregon Liquor Control Commission*. https://www.oregon.gov/olcc/marijuana/Documents/MJ_FAQS.pdf

[20] Washington Administrative Code. Title 314. Chapter 314-55. Marijuana Licenses, Application Process, Requirements, and Reporting. http://apps.leg.wa.gov/wac/default.aspx?cite=314-55

Most marijuana residency restrictions use a time period to determine eligibility for licensure. In Alaska, residency is determined by eligibility for the state's permanent fund dividend, which typically requires one year of state residency.[21] The residency requirement had previously been met by being eligible to vote in the state, which only requires an Alaska address. The less burdensome regulation was thrown out only a month after it was enacted.[22]

While Massachusetts does not have any specific residency requirements for marijuana business employees, the state has created an incentive system to encourage resident hiring. For example, businesses can achieve a "local employment leader" leadership rating when at least 51% of employees and executives have been state residents for 12 months prior to an application. Leadership ratings are taken into consideration when the Cannabis Control Commission levies fines or imposes disciplinary action.[23]

Some states also restrict investments from non-resident investors that do not qualify as licensed owners but wish to provide capital to a business. Colorado differentiates so that state residency requirements do not apply to indirect beneficial interest owners, qualified limited passive investors, or permitted economic interests.[24] Yet in Washington, for example, the six-month residency requirement is especially burdensome because it applies to all investors—even those with only .01% ownership and their spouses. In fact, the requirement is so extensive that it even includes royalties on branded products.[25] Washington only allows gifts and loans from out-of-staters and still requires background checks for this source of financing.[26]

---

[21]   3 AAC 306; "Permanent Fund Dividend Statutes and Regulations 2017." *State of Alaska Department of Revenue*. Jan. 1, 2017. https://pfd.alaska.gov/LinkClick.aspx?fileticket=rxyLww36su8%3d&tabid=495&portalid=6

[22]   "Alaska Tightens Residency Requirements for MJ Licenses." *Marijuana Business Daily*. Dec. 2, 2015. https://pfd.alaska.gov/LinkClick.aspx?fileticket=rxyLww36su8%3d&tabid=495&portalid=6

[23]   935 CMR.

[24]   1 CCR 212-2.

[25]   McVay, Robert. "Washington Marijuana: Residency and Ownership Revisited." *Canna Law Blog*. Dec. 20, 2017. https://www.cannalawblog.com/washington-marijuana-residency-and-ownership-revisited/

[26]   Bricken, Hillary. "Washington State Will Allow for Out of State Cannabis Financing (Sort Of)." *Canna Law Blog*. May 25, 2016. https://www.cannalawblog.com/washington-state-will-allow-for-out-of-state-cannabis-financing-sort-of/

Finally, local governments may impose their own residency requirements. In California, a state where the new marijuana market has been severely hampered by burdensome local regulations, many localities have imposed residency requirements.

For example, Hollister, California requires that 75% of applicants and managers of the cannabis facility have been state residents for the past three years.[27] Applicants also must submit in writing that they will give preference to hiring city residents.[28]

Medical marijuana programs also have residency requirements. When Hawaii updated its medical marijuana program in 2015, it included a five-year residency requirement for 51% of owners.[29]

## 1.4 DO RESIDENCY REQUIREMENTS ACHIEVE ECONOMIC GOALS?

Reducing investment in the legal marijuana industry is clearly problematic. As more states legalize marijuana and more investors become interested in the market, states with residency requirements will be at a disadvantage. Colorado already adjusted its regulation to avoid being left behind as investors looked to more-open states.

Many regulators claim that residency requirements allow small businesses a chance to compete or at least get their foot in the door. In reality, this claim is not always true. In Washington, for example, the ten largest farms harvested 16.79% of all dry weight weed from January to September 2017. The 500 smallest firms harvested only 13.12%. The edible market is especially dominated by large firms. Of the over 1,000 companies with licenses that would allow them to process edibles between September 2016 and September 2017, only 74 companies sold one. The five largest edible producers sold 51.15% of the $38.7

---

[27] "Hollister Cannabis Facilities Permit Application and Information." *City of Hollister California*. http://hollister.ca.gov/business/medical-cannabis/

[28] Hollister Municipal Code. Title 5 Business Licenses and Registrations. Chapter 5.42 Cannabis Facilities Regulatory Permit. 5.42.050 Regulatory Permit Required. https://library.municode.com/ca/hollister/codes/code_of_ordinances

[29] House Bill 321. State of Hawaii. 2015. https://www.capitol.hawaii.gov/session2015/bills/HB321_CD1_.HTM

Allie Howell | Residency Requirements for Marijuana Licensure

Exhibit 4
Page 11 of 16

million in edibles sold in 12 months. During the same time period, the top 20 producers sold 90.48% of edibles.[30]

While Washington only has a six-month residency requirement, it is quite expansive. Yet after a few years of legal sales, consolidation took place as companies began to take advantage of economies of scale or bought expensive equipment to produce cutting edge marijuana products. Reducing license fees or opening up access to banking would be more beneficial to small business owners than residency requirements.

## 1.5  DO RESIDENCY REQUIREMENTS REDUCE MARIJUANA DIVERSION?

The effectiveness of residency requirements in preventing marijuana diversion is a difficult question to answer. Residency requirements did not prevent Colorado from being sued by border states for marijuana diversion.[31]

Further, it is almost impossible to make a comparison because most states without residency requirements are relatively new to recreational sales. Nevada began legal sales in 2017 but is yet to fully open up license applications.[32] California's rollout of legal marijuana has been rocky and an estimated 85–90% of marijuana sales still take place illegally.[33]

Oregon rolled back residency requirements in 2016. The state has recently been a target of federal attention due to marijuana diversion. At a summit in February 2018, U.S. Attorney Billy Williams said the following: "Here's what I know in terms of the landscape here in Oregon, and that is, we have an identifiable and formidable marijuana overproduction and

---

[30] Black, Lester. "Legal Weed Isn't The Boon Small Businesses Thought It Would Be." *FiveThirtyEight*. Dec. 29, 2017. https://fivethirtyeight.com/features/legal-weed-isnt-the-boon-small-businesses-thought-it-would-be/

[31] Wolf, Richard and Trevor Hughes. "Justices Won't Hear Nebraska, Oklahoma Marijuana Dispute With Colorado." *USA Today*. March 21, 2016. https://www.usatoday.com/story/news/2016/03/21/marijuana-lawsuit-colorado-oklahoma-nebraska-supreme-court/81984006/

[32] "Getting a License." *Marijuana in Nevada*. http://marijuana.nv.gov/Businesses/GettingALicense/; email correspondence with Nevada Department of Taxation.

[33] White, Martha C. "Growing Like a Weed? California Marijuana Market Off to Slow Start." *NBC News*. April 20, 2018. https://www.nbcnews.com/business/business-news/growing-weed-california-marijuana-market-slow-start-n867871

diversion problem. And make no mistake about it, we're going to do something about it." Overproduction was blamed for the diversion—the state is estimated to produce three times more than it can consume a year.[34] This should not come as a huge surprise; the industry is fairly new and it may simply take some time for the market to stabilize.

The state was also known for a thriving black market before legalization.[35] With increased federal and state attention to marijuana trafficking with legalization, diversion may be the same as before and only gaining federal attention now.

## 1.6 RESIDENCY REQUIREMENTS AND TAXES

It is useful to note that residency requirements have little impact on tax revenue from marijuana. This is especially important to consider as many states designed marijuana regulations to maximize tax revenue. California, for example, collects taxes from both residents and non-residents in the industry. If income is California-sourced, out-of-state partners, limited liability company members, or S corporation shareholders will be taxed by California on that income. These non-residents must fill out a California non-resident tax return. Further, S corporations, partnerships, and limited liability companies must withhold 7% on distributions of California-sourced income to out-of-state shareholders, partners, or owners if distributions exceed $1,500 annually. This mandatory withholding tends to encourage non-residents to file California tax returns.[36]

For traditional C corporations, income taxes are paid by the corporation, not the stockholders. Non-resident stockholders are then taxed by their resident state on all dividends and capital gain distributions annually and when the stock is sold. An exception is if the California corporation pays a salary or director fees to an investor, then that income is taxable to California.[37]

There may be slightly less compliance in non-residents than in residents. Most states do, however, have reciprocal agreements with other states and the IRS to assist in collecting

---

[34] The Associated Press. "U.S. Prosecutor: Oregon Has a Big Pot Overproduction Problem." *NY Daily News*. Feb. 2, 2018. http://www.nydailynews.com/newswires/news/business/prosecutor-oregon-big-pot-overproduction-problem-article-1.3794431

[35] Ibid.

[36] Email correspondence with Michael R. Snell, Tax and Accounting Offices of Michael R. Snell.

[37] Ibid.

taxes owed in other states. So, for example, if an Arizona resident owes taxes on California-sourced income, Arizona will help collect the taxes.[38]

In New Jersey, a state considering marijuana legalization with policymakers highly motivated by tax revenue, the rules are similar. Withholding for non-residents ranges from 6.37% to 9% depending on organization type.[39]

Tax collection is an important concern when discussing recreational marijuana rules, but it should not be used to justify residency requirements. In fact, lifting residency requirements could potentially increase tax revenue by increasing industry investment.

## 1.7 CONCLUSIONS

Residency requirements are justified as both a public safety regulation and form of economic protectionism. While the use of residency requirements to avoid federal intervention makes some sense, it is not clear that the requirements reduce marijuana diversion or trafficking. The requirements are also used by regulators to keep the industry small and manageable. Yet reductions in enforcement costs come at the expense of the legal market—keeping the legal marijuana industry small means money still must be spent prosecuting those involved in the black market.

Economic protectionism also has the effect of reducing overall market size. Advocates of protectionism claim that the marijuana industry can be made up of small businesses because of residency restrictions. In Washington, however, consolidation has taken place despite strict requirements.

In New Jersey, draft regulations for marijuana legislation contain residency requirements as seen in many other states. Policymakers would be wise to consider if the reduction in investment is worth the supposed benefits for regulators. With the requirements, the industry will likely suffer as out-of-state investment and expertise flow into other states.

---

[38] Ibid.

[39] Ibid.

# ABOUT THE AUTHOR

**Allie Howell** is a research intern at Reason. Previously, she was a Burton C. Gray Memorial intern at Reason and an economic policy intern at the Manhattan Institute. Allie has been published on Economics21.org, the Foundation for Economic Education, and Reason. She is a recent graduate of Hillsdale College where she majored in economics and mathematics. Allie is attending Notre Dame Law School.



Exhibit 4
Page 16 of 16