Exhibit C

THE HONORABLE JOHN C. SKINDER

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF THURSTON

| | |
|---|---|
| TODD BRINKMEYER,<br><br>          Petitioner,<br><br>    v.<br><br>WASHINGTON STATE LIQUOR AND CANNABIS BOARD,<br><br>          Respondent. | Case No. 20-2-01568-34<br><br>**MOTION FOR PRELIMINARY INJUNCTION**<br><br>**NOTE ON MOTION CALENDAR: January 8, 2021**<br><br>**ORAL ARGUMENT REQUESTED** |

MOTION FOR PRELIMINARY INJUNCTION - i
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1

## TABLE OF CONTENTS

2    TABLE OF AUTHORITIES ...................................................................................... iii

3    I.      INTRODUCTION AND RELIEF REQUESTED .................................................. 1

     II.     EVIDENCE RELIED UPON ................................................................................ 2

4    III.    FACTS .................................................................................................................. 2

5            A.      Washington Voters Approved Recreational Marijuana in 2012. ........................... 2

6            B.      The State Imposes a Durational Residency Requirement on All Licensees
                     and True Parties of Interest to Marijuana Licenses. ................................ 3

7            C.      The LCB has Vetted and Approved Brinkmeyer as a Debt Financier for
                     Marijuana Businesses, but will not Allow him to Obtain an Equity Interest
8                    because he is an Idaho Resident .............................................................. 4

9            D.      Procedural History ................................................................................. 6

     IV.     AUTHORITY AND ARGUMENT ........................................................................ 6

10           A.      The Residency Requirements Violate Brinkmeyer's Clear Legal Rights. ............. 7

11                   1.      Privileges or Immunities Clause under the Washington State
                             Constitution ............................................................................ 7

12                           a.      The Residency Requirements deprive Brinkmeyer of his
13                                   right to carry on a business. .......................................... 7

14                                   i.      The LCB artificially seeks to narrow the Privileges
                                             or Immunities Clause. ........................................ 8

15                                   ii.     The LCB should be estopped from relying on
                                             marijuana's federal illegality to limit cannabis
16                                           industry members' rights under the state
                                             constitution ........................................................ 9

17                           b.      The Residency Requirements do not serve the legislature's
                                     goals. .................................................................. 10

18                   2.      The regulatory Residency Requirements exceed the LCB's
19                           statutory authority. ................................................................ 12

20           B.      The LCB Confirmed it will Deny Brinkmeyer's Application because of his
                     Residency. .......................................................................... 13

21           C.      Brinkmeyer will Suffer Actual and Substantial Injury. ...................................... 14

             D.      The Equities Weigh in Brinkmeyer's Favor. ..................................................... 14

22           E.      No Bond is Required. ........................................................................ 15

23   V.      CONCLUSION ................................................................................................... 15

24

25

26

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

# TABLE OF AUTHORITIES

**Cases**

*Bostain v. Food Exp., Inc.*,
 159 Wn.2d 700, 153 P.3d 846 (2007)................................................................................12

*Chalk v. U.S. Dist. Court Cent. Dist. of California*,
 840 F.2d 701 (9th Cir. 1988)............................................................................................14

*City of Redmond v. Moore*,
 151 Wn.2d 664, 91 P.3d 875 (2004)...................................................................................8

*Fisher v. Parkview Properties Inc.*,
 71 Wn. App. 468, 859 P.2d 77 (1993)..............................................................................15

*Giovani Carandola, Ltd. v. Bason*,
 303 F.3d 507 (4th Cir. 2002) ...........................................................................................14

*Granholm v. Heald*,
 544 U.S. 460 (2005)...........................................................................................................11

*Grant Cty. Fire Prot. Dist. No. 5 v. City of Moses Lake*,
 150 Wn.2d 791, 83 P.3d 419 (2004)...................................................................................8

*Guile v. Ballard Cmty. Hosp.*,
 70 Wn. App. 18, 25, 851 P.2d 689 (1993).........................................................................11

*Knevelbaard Dairies v. Kraft Foods, Inc.*,
 232 F.3d 979 (9th Cir. 2000) ...........................................................................................15

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) ......................................................................................14, 15

*Organo Gold Int'l, Inc. v. Ventura*,
 No. C16-487RAJ, 2016 WL 1756636 (W.D. Wash. May 3, 2016)....................................14

*Rabon v. City of Seattle*,
 135 Wn.2d 278, 957 P.2d 621 (1998)..................................................................................7

*Ralph v. City of Wenatchee*,
 34 Wn.2d 638, 209 P.2d 270 (1949)...............................................................................8, 9

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
 944 F.2d 597 (9th Cir. 1991) ...........................................................................................14

MOTION FOR PRELIMINARY INJUNCTION - iii
Case No. 20-2-01568-34

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

*Schroeder v. Weighall*,
  179 Wn.2d 566, 316 P.3d 482 (2014)........................................................7, 10, 12

*Silverstreak, Inc. v. Washington State Dep't of Labor & Indus.*,
  159 Wn.2d 868, 154 P.3d 891 (2007).................................................................10

*Starlight Sugar, Inc. v. Soto*,
  114 F.3d 330 (1st Cir. 1997).................................................................................14

*State v. LG Elecs., Inc.*,
  186 Wn.2d 1, 375 P.3d 636 (2016)......................................................................13

*State v. Osman*,
  157 Wn.2d 474, 139 P.3d 334 (2006).....................................................................9

*State v. Vance*,
  29 Wash. 435, 70 P. 34 (1902).................................................................................7

*State v. Villela*,
  194 Wn.2d 451, 450 P.3d 170 (2019).....................................................................7

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
  139 S. Ct. 2449 (2019).................................................................................11, 12

*Washington Rest. Ass'n v. Washington State Liquor Bd.*,
  200 Wn. App. 119, 401 P.3d 428 (2017)..............................................................13

*Washington State Hosp. Ass'n v. Washington State Dep't of Health*,
  183 Wn.2d 590, 353 P.3d 1285 (2015).................................................................12

*Wilson v. Washington State Dep't of Ret. Sys.*,
  475 P.3d 193 (Wash. Ct. App. 2020)....................................................................10

**Statutes**

RCW 7.40.020 .................................................................................................................7

RCW 34.05.570(2)(c) ...................................................................................................12

RCW 69.50.331(1)(b) ...................................................................................1, 3, 12, 13

**Other Authorities**

Initiative Measure 502 ............................................................................................2, 11

WAC 314-55-020(10)...............................................................................................1, 3, 4

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

WAC 314-55-035.................................................................................................1, 4

WAC 314-55-083 ...................................................................................................12

WAC 314-55-087.....................................................................................................12

WAC 314-55-185.....................................................................................................12

MOTION FOR PRELIMINARY INJUNCTION - v
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

## I.   INTRODUCTION AND RELIEF REQUESTED

Petitioner Todd Brinkmeyer, an Idaho resident, asks only for Respondent the Washington State Liquor and Cannabis Board ("LCB" or "State") to process his application to obtain an equity interest in a Washington marijuana retail store on equal footing as a Washington resident. The matter is urgent because Brinkmeyer's close friend of 25 years, Scott Atkison, is a stage IV cancer survivor who wants to make arrangements that ensure continuity of his business interests in the event his disease progresses. Such arrangements would include a partial or complete transfer of his equity interest in licensed marijuana retail stores ("Stores") to Brinkmeyer. Because the State has already approved Brinkmeyer's fitness to loan money to the Stores, the State has performed the same rigorous criminal and financial background checks on Brinkmeyer that it performs on equity owners of marijuana businesses. The State found nothing problematic. Nevertheless, the State confirmed it will not approve Brinkmeyer's application to obtain Atkison's equity in the Stores solely because Brinkmeyer does not live in Washington.

The State created its multi-billion dollar cannabis market, but improperly limits ownership in that market to certain Washington residents. This type of economic protectionism and discrimination has always been unconstitutional, so Brinkmeyer is likely to prevail on his claims to invalidate the "Residency Requirements"[1]—both as a facial violation of the Privileges or Immunities Clause in the Washington State Constitution and for exceeding statutory authority. The State has stated it will deny Brinkmeyer's application, so Brinkmeyer has more than a well-grounded fear the State will violate his rights.

Brinkmeyer is injured through the violation of his constitutional rights and his inability to provide peace of mind to Atkison by confirming Brinkmeyer will be allowed to take over for Atkison at the Stores. The equities weigh in Brinkmeyer's favor. The State has no interest in enforcing unconstitutional laws, and the State has already found there is nothing in Brinkmeyer's

---

[1] As described more fully below, the "Residency Requirements" are in RCW 69.50.331(1)(b), WAC 314-55-020(10), and WAC 314-55-035.

MOTION FOR PRELIMINARY INJUNCTION - 1
Case No. 20-2-01568-34

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  background (other than his residence) that disqualifies him from obtaining a license.

2      This lawsuit does not threaten the I-502 system. The requested injunction will not prevent

3  the State from scrutinizing applicants and verifying their compliance with the plethora of other

4  rules that the LCB imposes on equity holders. The injunction will benefit the public by aligning

5  Washington's laws with the constitution. That will further benefit the public by allowing

6  nonresidents of Washington to access its marijuana market, and thereby increase competition

7  (which benefits consumers) and increase access to capital (which benefits existing marijuana

8  businesses). Because Brinkmeyer can establish each element to obtain a preliminary injunction,

9  he asks this Court to enjoin the State from enforcing the Residency Requirements.

10                    **II.    EVIDENCE RELIED UPON**

11      This motion relies upon the Declaration of Todd Brinkmeyer ("Brinkmeyer Decl."), the

12  Declaration of Scott Atkison ("Atkison Decl."), the Declaration of Chris Masse ("Masse Decl."),

13  the Declaration of Andy Murphy ("Murphy Decl."), and the Court's file.

14                        **III.    FACTS**

15  **A.    Washington Voters Approved Recreational Marijuana in 2012.**

16      In 2012, the people of Washington approved Initiative Measure 502 ("I-502"), which

17  legalized the possession and sale of marijuana for recreational purposes. In codifying I-502, the

18  legislature affirmed the stated intent of I-502 "to stop treating adult marijuana use as a crime and

19  try a new approach that: (1) Allows law enforcement resources to be focused on violent and

20  property crimes; (2) Generates new state and local tax revenue for education, health care,

21  research, and substance abuse prevention; and (3) Takes marijuana out of the hands of illegal

22  drug organizations and brings it under a tightly regulated, state-licensed system similar to that for

23  controlling hard alcohol." I-502 §1.[2]

24      The marijuana industry has been an economic powerhouse for the State of Washington.

25  The State has received more than $1.7 billion in excise tax and fees generated from the sale of

26  _____
[2] There is no residency requirement in the purportedly analogous regulatory scheme for hard alcohol.

MOTION FOR PRELIMINARY INJUNCTION - 2
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

marijuana since 2014. Dkt. No. 8 ("Answer") ¶ 7. Public data indicates Washington's marijuana industry has yielded more than $8.4 billion in sales since 2014. Murphy Decl., Ex. A.

**B.    The State Imposes a Durational Residency Requirement on All Licensees and True Parties of Interest to Marijuana Licenses.**

The LCB tightly regulates the marijuana industry, and there are hundreds of rules that marijuana businesses must follow. *See generally,* ch. 69.50 RCW; ch. 314-55 WAC (collectively, the "LCB Rules"). The LCB Rules require owners of marijuana businesses to obtain licenses from the LCB. Answer ¶ 9. Those interested in becoming a licensee must apply, after which the LCB investigates the applicant to verify compliance with the LCB Rules. *Id*. ¶ 9

In addition to verifying the applicant would not pose a threat to public health and safety if given a license, the LCB verifies that the applicant has resided in Washington for at least six months. *Id*. ¶ 10. That is because, by statute and rule, Washington law imposes a durational residency requirement on those who apply for marijuana licenses. The statutory Residency Requirement is in RCW 69.50.331(1)(b), which provides the following:

No license of any kind may be issued to:

(i) A person under the age of twenty-one years;

(ii) A person doing business as <u>a sole proprietor who has not lawfully resided in the state for at least six months prior to applying to receive a license;</u>

(iii) A partnership, employee cooperative, association, nonprofit corporation, or corporation unless formed under the laws of this state, and unless all of the members thereof are qualified to obtain a license as provided in this section; or

(iv) A person whose place of business is conducted by a manger or agent, unless the manager or agent possesses the same qualifications required of the licensee.

(Emphasis added.) This statutory Residency Requirement applies only to sole proprietorships and "members" of certain corporate entities, but the LCB expanded the Residency Requirements by administrative rule. WAC 314-55-020(10) requires <u>all</u> marijuana license applicants to reside

MOTION FOR PRELIMINARY INJUNCTION - 3
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

in Washington for "at least six months" before submitting their application to the LCB:

> Under RCW 69.50.331 (1)(c) [sic], all applicants applying for a marijuana license must have resided in the state of Washington for at least six months prior to application for a marijuana license. All business entities including, but not limited to, partnerships, employee cooperatives, associations, nonprofit corporations, corporations and limited liability companies, applying for a marijuana license must be formed in Washington. All members, governors, or agents of business entities must also meet the six month residency requirement. Managers or agents who manage a licensee's place of business must also meet the six month residency requirement.

(Emphasis added.) The LCB further expanded the Residency Requirements in WAC 314-55-035, which requires all true parties of interest ("TPIs") to be applicants for a marijuana license. TPIs, which include stockholders, members, managers, partners, officers, and those who exercise control over a marijuana business must meet the residency requirement in WAC 314-55-020(10). Only approved licensees and TPIs (and thus Washington residents) may receive a share of the profits from a marijuana business operating in Washington. WAC 314-55-035.

Moreover, through policy and practice, the LCB requires all applicants it approves as a licensee or TPI to remain a Washington resident. *See* Answer ¶ 15. In other words, licensees must forfeit their license (and their business) if they move out of Washington.

**C.    The LCB has Vetted and Approved Brinkmeyer as a Debt Financier for Marijuana Businesses, but will not Allow him to Obtain an Equity Interest because he is an Idaho Resident.**

For 25 years, Brinkmeyer has been friends with Atkison. Brinkmeyer Decl. ¶ 2. Although they live just thirty minutes from each other, they reside in different states. *Id*. Brinkmeyer lives in Idaho, and Atkison lives in Washington. *Id*.

Atkison is fortunate to have survived for over five and one-half years with Stage IV cancer, however, his health has progressed to where it is prudent for him to plan the disposition of his estate. Atkison Decl. ¶ 5. That includes making arrangements to ensure continuity of business operations at marijuana retail Stores he partially owns in Washington. *Id*. Atkison cares about the team who has contributed to the Stores' success and does not wish to see his ownership

MOTION FOR PRELIMINARY INJUNCTION - 4
Case No. 20-2-01568-34

Miller Nash Graham & Dunn llp
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

sold under duress, which could put undue stress on the Stores' other owners and business operations. *Id*. He wants to make sure that he can transfer his ownership to someone who he trusts will do right by the other owners, the Stores, and the team members. *Id*. The person Atkison believes to be best suited for carrying on the same ownership values and principles he has brought to the Stores is Brinkmeyer. *Id*.

With the LCB's knowledge and approval, Brinkmeyer and Atkison already work together on the Stores. Brinkmeyer has provided business advice to Atkison and loans to the Stores. Brinkmeyer Decl. ¶ 4; Atkison Decl. ¶ 4. Indeed, the LCB approved Brinkmeyer three times as a debt financier to the Stores. Answer ¶ 20. The LCB subjects financiers of licensed marijuana businesses to the same vetting and approval process that it performs on licensees and TPIs, including rigorous criminal and financial background checks, except debt financiers like Brinkmeyer are not subject to the Residency Requirements. *See* Answer ¶¶ 19–22. Through its repeated approval of Brinkmeyer as a financier, the LCB has evidently concluded there is nothing concerning in Brinkmeyer's background. *See id*.

Despite the valued advice that Brinkmeyer has provided, the Residency Requirements prohibit Atkison from giving equity in the Stores to Brinkmeyer as compensation in the same manner that other, non-cannabis businesses are able to compensate their advisors or employees. Atkison Decl. ¶ 4. The inability to compensate advisors and employees with equity interferes with the Stores' ability to attract and retain the best talent. *Id*.; *see also* Brinkmeyer Decl. ¶ 5.

As part of his estate planning, Atkison would like to transfer his ownership interest in the Stores to Brinkmeyer, and will do so if the LCB will allow it. Atkison Decl. ¶ 5. Brinkmeyer is willing and able to assume Atkison's interest. Brinkmeyer Decl. ¶ 6. To obtain approval for the transfer of equity, counsel for Brinkmeyer inquired with the LCB about whether it would approve him as an owner of the Stores. Masse Decl., Ex. A. On May 20, 2020, the LCB confirmed it would deny Brinkmeyer's application to be added to the Stores' license because Brinkmeyer does not comply with the Residency Requirements. *Id*.

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Thus, while Brinkmeyer is able to invest in the Stores by providing debt financing and receiving interest payments, the Residency Requirements prevent him from sharing in the profits of the Stores by providing equity financing or becoming an owner solely because he is not a Washington resident. *See* Answer ¶ 22. The LCB has thus concluded it is safe for the Stores to take Brinkmeyer's money, but against public policy for Brinkmeyer to become an owner of the businesses he provides advice for and invests in.

**D.    Procedural History**

On June 8, 2020, Brinkmeyer filed this lawsuit in this Court. Dkt. No. 2. The LCB filed its answer on June 29, 2020. Dkt. No. 8. The LCB then removed the case to United States District Court on July 7, 2020. Dkt. No. 9. Brinkmeyer filed a motion for preliminary injunction on August 6, 2020, which asserted the Residency Requirements facially violated numerous provisions of the United States Constitution and the state law claims raised in this motion. Murphy Decl., Ex. D. On August 24, 2020, the LCB filed its response and a supporting declaration from Rebecca Smith, the Director of Licensing at the LCB. *Id.*, Exs. E ("Resp."), F ("Smith Decl."). Brinkmeyer submitted his reply on August 28, 2020. *Id.*, Ex. G ("Reply").

On September 8, 2020, the court issued an order to show cause why the court had jurisdiction over a state licensing issue for a controlled substance under the federal Controlled Substances Act. *Id.*, Ex. I. The parties submitted their responses to the order on September 14, 2020, agreeing the court had jurisdiction. *Id.*, Exs. J, K. On October 5, 2020, the court issued an order that concluded it had jurisdiction to hear Brinkmeyer's claims, but *sua sponte* invoked *Pullman* abstention. *Id.*, Ex. L. The court stayed Brinkmeyer's federal claims, and severed and remanded his state law claims to this Court. *Id*. at 6; *see also* Dkt. No. 12.

**IV.    AUTHORITY AND ARGUMENT**

A party seeking a preliminary injunction must show that (1) they have a clear legal or equitable right, (2) a well-grounded fear of immediate invasion of that right, and (3) the acts complained of are either resulting in or will result in actual and substantial injury to them.

RCW 7.40.020; CR 65; *Rabon v. City of Seattle*, 135 Wn.2d 278, 284, 957 P.2d 621 (1998). Since injunctions are within the equitable power of the Court, "these criteria must be examined in light of equity, including the balancing of the relative interests of the parties and the interests of the public, if appropriate." *Id*. Brinkmeyer meets each element to obtain an injunction.

A.     **The Residency Requirements Violate Brinkmeyer's Clear Legal Rights.**

To establish the existence of a clear legal or equitable right, Brinkmeyer must show he is likely to prevail on the merits. *See id.* Brinkmeyer bears the burden of proving the Residency Requirements are invalid. *State v. Villela*, 194 Wn.2d 451, 456, 450 P.3d 170 (2019). Brinkmeyer is likely to succeed on two independent bases: the Residency Requirements violate the Privileges or Immunities Clause and the regulatory Residency Requirements exceed the Board's statutory authority.

1.     **Privileges or Immunities Clause under the Washington State Constitution**

The Residency Requirements violate Article I, section 12 of the Washington Constitution, which provides that "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." When analyzing whether a law violates the Privileges or Immunities Clause, courts first evaluate whether the challenged law grants a "privilege" or "immunity" for purposes of the Washington Constitution. *Schroeder v. Weighall*, 179 Wn.2d 566, 573, 316 P.3d 482 (2014). If the answer is yes, courts will then consider whether there is a "reasonable ground" for granting that privilege or immunity. *Id*.

a.     **The Residency Requirements deprive Brinkmeyer of his right to carry on a business.**

This case implicates the right to carry on a business, a long-recognized fundamental right protected by the Privileges or Immunities Clause. *State v. Vance*, 29 Wash. 435, 458, 70 P. 34 (1902). Brinkmeyer is likely to prevail on the merits because the discrimination embedded in the text of the Residency Requirements means there is no set of circumstances where the laws as

MOTION FOR PRELIMINARY INJUNCTION - 7
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

currently written can be constitutionally applied. *See City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). State laws, like the Residency Requirements, that commercially benefit certain residents at the expense of nonresidents violate the Privileges or Immunities Clause.

For example, in *Ralph v. City of Wenatchee*, 34 Wn.2d 638, 209 P.2d 270 (1949), the Court struck down a municipal ordinance that required nonresident photographers to pay substantial licensing fees, while exempting resident photographers from the fees. The ordinance implicated the right to carry on a business by attempting to insulate resident photographers from nonresident competition. *Id.* at 641–43. The Court held the ordinance unfairly discriminated against a class of businesses to the benefit of another class of the same business, and deprived nonresidents of the "common right to engage in trade." *Id.* at 641–44.

As in *Ralph*, this case involves licensing requirements that impose barriers to participate in a local economy. While the licensing fees in *Ralph* were prohibitively expensive for the affected photographers, the Residency Requirements go further by prohibiting nonresidents from participating in the marijuana industry altogether. Further, the Residency Requirements discriminate between classes of the same business, as marijuana companies owned exclusively by people who have resided in Washington longer than six months may operate in Washington while marijuana companies owned by anyone else may not.

            i.       **The LCB artificially seeks to narrow the Privileges or Immunities Clause.**

In federal court, the State argued the Privileges or Immunities Clause applies only to Washington citizens, which misses the point. Resp. at 15. The Privilege or Immunities Clause prevents the State from granting privileges to certain citizens or corporations. *Grant Cty. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 806–07, 83 P.3d 419 (2004). The Residency Requirements grant the privilege of carrying on a marijuana business in Washington only to people who have resided in Washington longer than six months and businesses owned exclusively by them. That favoritism, which harms Brinkmeyer and businesses in which he owns

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    a stake, violates the Privileges or Immunities Clause. Moreover, nonresidents of Washington

2    may challenge Washington laws that violate the Privileges or Immunities Clause. *See, e.g., State*

3    *v. Osman*, 157 Wn.2d 474, 483–84, 139 P.3d 334 (2006) (recognizing the Washington Privileges

4    or Immunities Clause protects aliens).

5         The State has asserted that Brinkmeyer does not seek to vindicate his fundamental right

6    to carry on a business, but rather a right to engage in a federally illegal business. Resp. at 16.

7    Citing cases to illustrate there is no right to sell liquor, the State argued there is no right to sell

8    marijuana. *Id.* (citing *Randles v. Liquor Control Bd.*, 33 Wn.2d 688, 694, 206 P.2d 1209 (1949);

9    *Jow Sin Quan v. Washington State Liquor Control Bd.*, 69 Wn.2d 373, 382, 418 P.2d 424

10   (1966)). Those cases stand for the proposition that as the State may choose to prohibit the sale of

11   liquor, it can similarly decide, by regulation, to allow only some parties to sell liquor under

12   prescribed conditions. Brinkmeyer does not dispute the Board's police power enables it to

13   *regulate* the sale of marijuana. But as the State has chosen to allow the sale of cannabis, those

14   regulations cannot unconstitutionally discriminate.

15        While the State has argued its police power allows it to discriminate against nonresidents,

16   Resp. at 17, the Supreme Court disagrees. The *Ralph* Court held the State's "police power may be

17   exercised only in the pursuit of the general welfare," which did not occur when the defendant

18   passed a law with the primary purpose of economic protectionism. 34 Wn.2d at 644. The State

19   admitted the primary justification for the Residency Requirements is economic protectionism.

20   Answer ¶ 18. That means the Residency Requirements are a violation of the Privileges or

21   Immunities Clause, not a valid exercise of police power.

22           ii.      **The LCB should be estopped from relying on marijuana's**
23                     **federal illegality to limit cannabis industry members' rights under the state constitution.**

24        It is unfair for the State to regulate and profit from its marijuana market while claiming

25   that its participants lack the same constitutional protections as any other person because the

26   market is illegal. The State should be equitably estopped from relying on marijuana's federal

MOTION FOR PRELIMINARY INJUNCTION - 9
Case No. 20-2-01568-34

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

illegality when defending the unconstitutional laws the State enacted. A party asserting equitable estoppel against the government must establish five elements by clear, cogent, and convincing evidence: "(1) a statement, admission, or act by the party to be estopped, which is inconsistent with its later claims, (2) the asserting party acted in reliance upon the statement or action, (3) injury would result to the asserting party if the other party were allowed to repudiate its prior statement or action, (4) estoppel is necessary to prevent a manifest injustice, and (5) estoppel will not impair governmental functions." *Wilson v. Washington State Dep't of Ret. Sys.*, 475 P.3d 193, 200 (Wash. Ct. App. 2020) (quoting *Silverstreak, Inc. v. Washington State Dep't of Labor & Indus.*, 159 Wn.2d 868, 887, 154 P.3d 891 (2007)).

This case satisfies each element. In passing I-502, the State committed to "stop treating adult marijuana use as a crime," but the State seeks to treat its market participants like drug dealers. Brinkmeyer relied on the State's commitment to treat its marijuana market as a legal one when he began participating in Washington's cannabis market. Brinkmeyer Decl. ¶ 9. "In Washington, the 'injury' element requires the party asserting equitable estoppel to show a detrimental change of position based upon the government's representation." *Silverstreak*, 159 Wn.2d at 889. Brinkmeyer would not have become a financier or sought to obtain equity in the Stores had he known the State would characterize that licensed business conduct as criminal. Brinkmeyer Decl. ¶ 9. The public is not harmed if the State recognizes the constitutional rights of its licensed industries, but Brinkmeyer faces the manifest injustice of the State continuing to violate his constitutional rights. Finally, because Brinkmeyer's requested relief does not interfere with the LCB's ability to fully vet and approve candidates before issuing them licenses, government functions will not be impaired. The State should be equitably estopped.

### b.    The Residency Requirements do not serve the legislature's goals.

Under the reasonable ground test, "the court will scrutinize the legislative distinction to determine whether it *in fact* serves the legislature's stated goal." *Schroeder*, 179 Wn.2d at 574 (emphasis in original). The stated intent behind I-502 is to allow law enforcement to focus on

MOTION FOR PRELIMINARY INJUNCTION - 10
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1   violent and property crimes, generate tax revenue, and remove marijuana from illegal drug

2   organizations by bringing marijuana under a tightly regulated state-licensed system. I-502 §1.

3           The Residency Requirements do not further the intent of I-502. Residency has no impact

4   on law enforcement resources nor does it reduce the taxes collected from marijuana businesses.

5   The United States Supreme Court has already held that residency is not necessary for states to

6   tightly regulate licensees when the businesses remain in-state, and the state's ability to revoke

7   licenses provides strong incentives to comply with state law. *Tennessee Wine & Spirits Retailers*

8   *Ass'n v. Thomas*, 139 S. Ct. 2449, 2475 (2019); *see also Granholm v. Heald*, 544 U.S. 460, 490

9   (2005) ("Out-of-state wineries face the loss of state and federal licenses if they fail to comply

10  with state law. This provides strong incentives not to sell alcohol to minors."). In striking a

11  residency requirement for liquor store owners, the Court held that Tennessee could maintain its

12  oversight of liquor store licensees because the state could monitor the in-state business

13  operations through on-site inspections, audits, and the like. *Tennessee Wine*, 139 S. Ct. at 2475.

14  The same rationale applies to this case. Because licensed marijuana businesses must operate

15  within Washington, the State can monitor business operations and revoke licenses if the

16  businesses violate the LCB Rules. Thus, the residency of equity holders does not impact the

17  State's enforcement ability.

18          That means the only stated intent that residency arguably could implicate is the ability of

19  the LCB to remove cannabis from illegal drug organizations. Thus, the Residency Requirements

20  should be struck unless the State can present evidence that *in fact* nonresidents who pass the

21  LCB's background checks and receive licenses are more likely to divert marijuana than residents.

22  The evidence the State provided in federal court was the Smith Declaration, which lacks any

23  studies, data, or rationale, but is heavy on conclusory facts. Conclusory facts lack evidentiary

24  value. *See Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993). Further,

25  neither Ms. Smith nor the LCB account for how the State's existing enforcement abilities—

26  including tracking all marijuana from seed-to-sale, requiring 24/7 security camera surveillance of

MOTION FOR PRELIMINARY INJUNCTION - 11
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

marijuana facilities, and the right to access and audit all business records of licensees—successfully prevent criminality from leeching into the industry. WAC 314-55-083, -087, -185; Smith Decl. ¶ 14. Nor do they explain how enforcement would be hindered when the business operations will remain in Washington and readily accessible to the LCB. *See Tennessee Wine*, 139 S. Ct. at 2475. Given the LCB's robust enforcement scheme, which this case does not seek to modify, any diversion would be discovered regardless of whether the business owner was a resident or nonresident.

Ms. Smith identified other justifications for the Residency Requirements, but the State must provide evidence that the Residency Requirements accomplish the *legislature's* stated goal. *Schroeder*, 179 Wn.2d at 574. The LCB cited no case where a court accepted rationale presented by agency staff, so Ms. Smith's personal views on the Residency Requirements are irrelevant. Regardless, each of her purported justifications do not withstand scrutiny. *See* Reply at 4–7. Because the State cannot identify a reasonable ground that justifies the discrimination within the Residency Requirements, they violate the Privileges or Immunities Clause.

### 2. The regulatory Residency Requirements exceed the LCB's statutory authority.

Brinkmeyer is likely to succeed on his claim that the regulatory Residency Requirements exceed the LCB's statutory authority. RCW 34.05.570(2)(c). Administrative "rules that are inconsistent with the statutes they implement are invalid. An agency's rule is invalid if it is not reasonably consistent with the statute being implemented." *Bostain v. Food Exp., Inc.*, 159 Wn.2d 700, 715, 153 P.3d 846 (2007); *see also Washington State Hosp. Ass'n v. Washington State Dep't of Health*, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015).

RCW 69.50.331(1)(b) requires residency only for sole proprietors and the "members" of a "partnership, employee cooperative, association, nonprofit corporation, or corporation" but LCB regulations require residency from every single licensee and TPI. The regulatory Residency Requirements conflict with the statute by requiring residency from every person who receives

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

profits from a marijuana business, including stockholders, even if they are not a sole proprietor or "member" of a business licensed to participate in Washington's marijuana industry. This presents a direct conflict that warrants striking the regulatory Residency Requirements. *See Washington Rest. Ass'n v. Washington State Liquor Bd.*, 200 Wn. App. 119, 126–31, 401 P.3d 428 (2017).

The State has asserted Brinkmeyer lacks standing to raise his statutory authority argument because Brinkmeyer is not injured as a stockholder. Resp. at 18–19. The State ignores the evidence it submitted that shows Atkison owns his interest in the Stores as the sole stockholder of No. 259, Inc. Smith Decl. ¶ 3, Exs. 1, 3, 5. Because Brinkmeyer seeks to obtain Atkison's interest in the Stores, he seeks to become a stockholder, and thus is directly affected by the inconsistency between the regulatory and statutory Residency Requirements.

The State defended the inconsistency between the regulatory and statutory Residency Requirements by relying on a definition of "corporate member." Resp. at 19–20. The words "corporate member" are not used in the Residency Requirements, so the definition is irrelevant. Further, the State's argument disregards how RCW 69.50.331(1)(b) imposes a residency requirement on only certain applicants, but the regulatory Residency Requirements impose them on all licensees and TPIs. By identifying only certain applicants that would need to establish residency, the plain language of RCW 69.50.331(1)(b) shows the legislative intent for no other applicants to establish residency. *See State v. LG Elecs., Inc.*, 186 Wn.2d 1, 9, 375 P.3d 636 (2016). The LCB exceeded its statutory authority in enacting rules that subjected parties to a residency requirement that the statute intentionally omitted.

**B.      The LCB Confirmed it will Deny Brinkmeyer's Application because of his Residency.**

Despite repeatedly passing the LCB's background checks, the LCB has already stated that it will not allow Brinkmeyer to assume Atkison's interest in the Stores because Brinkmeyer is not a Washington resident. Masse Decl., Ex. A. Brinkmeyer has more than a well-grounded fear the

MOTION FOR PRELIMINARY INJUNCTION - 13
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1   LCB will violate his rights—the LCB has confirmed it will.

2   **C.     Brinkmeyer will Suffer Actual and Substantial Injury.**

3           Because the Residency Requirements violate Brinkmeyer's constitutional rights, he has

4   established that he will suffer actual and substantial injury without the injunction. *See Melendres*

5   *v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of

6   constitutional rights 'unquestionably constitutes irreparable injury.'").

7           Additional injuries to Brinkmeyer arise out of his friendship with Atkison. The only

8   Washington marijuana businesses Brinkmeyer is interested in obtaining an interest in are

9   Atkison's Stores. The Stores are unique to Brinkmeyer, and the loss of them as a going concern

10  constitutes irreparable harm. *See Organo Gold Int'l, Inc. v. Ventura*, No. C16-487RAJ, 2016 WL

11  1756636, at *10 (W.D. Wash. May 3, 2016) (citing cases); *Starlight Sugar, Inc. v. Soto*, 114 F.3d

12  330, 332 (1st Cir. 1997) (recognizing "the loss of a unique or fleeting business opportunity can

13  constitute irreparable injury."). Further, being unable to take over the Stores' ownership and

14  oversight responsibility at a time that would give Atkison comfort and security is additional

15  irreparable harm to Brinkmeyer. *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental,*

16  *Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (intangible injuries qualify as irreparable harm); *Chalk v.*

17  *U.S. Dist. Court Cent. Dist. of California*, 840 F.2d 701, 709–10 (9th Cir. 1988) (emotional

18  distress arising from professional limitations was irreparable harm).

19  **D.     The Equities Weigh in Brinkmeyer's Favor.**

20          The equities weigh in Brinkmeyer's favor because he has already passed the LCB's

21  background checks. The LCB has determined that, other than his residency, he has nothing in his

22  background to prevent him from participating in Washington's cannabis industry. In contrast, the

23  State is "in no way harmed by issuance of a preliminary injunction which prevents the state from

24  enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by

25  such an injunction." *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002).

26          The equities further weigh in Brinkmeyer's favor because he asks very little from the

MOTION FOR PRELIMINARY INJUNCTION - 14
Case No. 20-2-01568-34

State. Brinkmeyer is not asking the State to change the thorough background, financial, and criminal checks that all cannabis licensees must pass. He is not asking the State to relax its standards when it identifies acts or omissions of concern. He is not even asking the State to issue him a license. Instead, Brinkmeyer is asking that his application be treated with the exact same scrutiny that the LCB applies to applications submitted by Washington residents. No more, no less. Because the LCB can still review and process applications in a manner that thoroughly protects the public interest, it will suffer no harm while subject to the requested injunction.

As for the public, it "is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. The injunction will further benefit the public by allowing nonresidents to access Washington's marijuana market. Expanding the market for equity holders increases competition, which benefits consumers, and increases access to capital for existing marijuana businesses. *See Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979, 988 (9th Cir. 2000) (recognizing competition is "vital to the public interest").

**E.     No Bond is Required.**

The power to set the amount of an injunction bond is soundly within the discretion of the trial court. *See Fisher v. Parkview Properties Inc.*, 71 Wn. App. 468, 479, 859 P.2d 77 (1993). Brinkmeyer's requested relief will not materially affect the I-502 system. The LCB can still fully vet marijuana license applicants under the terms of the injunction, and reject applicants that are unqualified, so there is no risk of harm to the State or the public. Accordingly, the Court should require no bond when issuing the injunction.

## V.     CONCLUSION

For the foregoing reasons, the Court should grant the motion.

DATED this 30th day of December, 2020.

MOTION FOR PRELIMINARY INJUNCTION - 15
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

MILLER NASH GRAHAM & DUNN, LLP

*/s/ Andy Murphy*
Daniel J. Oates, WSBA No. 39334
Andy Murphy, WSBA No. 46664
MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way, Suite 300
Seattle, WA 98121
Tel: 206-624-8300
Fax: 206-340-9599
Email: *Dan.Oates@millernash.com*
        *Andy.Murphy@millernash.com*
*Attorneys for Petitioner*

MOTION FOR PRELIMINARY INJUNCTION - 16
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of December, 2020, a copy of the foregoing

document was served upon the attorneys of record in the above cause as follows:

JOSHUA ORF-RODRIGUEZ, WSBA No. 50101   ☐  via Hand Delivery
HAYLEE P. MILLS, WSBA No. 48074       ☒  via U.S. Mail
Assistant Attorneys General                  ☐  via Facsimile
1125 Washington St SE                      ☐  via E-Service
Olympia, WA 98501                        ☒  via Email
Phone: (360) 753-2702
Email: Joshua.OrfRodriguez@atg.wa.gov
Haylee.Mills@atg.wa.gov

*Attorneys for Respondent*

Under the laws of the state of Washington, the undersigned hereby declares, under

the penalty of perjury, that the foregoing statements are true and correct to the best of my

knowledge.

Executed at Seattle, Washington, this 30th day of December, 2020.

*s/ Nikki Kunz*
Nikki Kunz, Legal Assistant

4817-9142-0371.7

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599