Exhibit E

Hearing Date: July 23, 2021
Hearing Time: 9:00 a.m.
Judge: The Honorable Mary Sue Wilson

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF THURSTON

TODD BRINKMEYER

               Petitioner,

    v.

WASHINGTON STATE LIQUOR AND
CANNABIS BOARD,

           Respondent.

Case No. 20-2-01568-34

**MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION AND RELIEF REQUESTED

Petitioner Todd Brinkmeyer, an Idaho resident, asks only for Respondent the Washington State Liquor and Cannabis Board ("LCB" or "State") to process his application to obtain an equity interest in a Washington marijuana retail store on equal footing as a Washington resident. Brinkmeyer's close friend of 25 years, Scott Atkison, is a stage IV cancer survivor who wants to make arrangements that ensure continuity of his business interests in the event his disease progresses. Such arrangements would include a partial or complete transfer of his equity interest in licensed marijuana retail stores ("Stores") to Brinkmeyer. Because the State has already approved Brinkmeyer's fitness to loan money to the Stores, the State has performed the same

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

rigorous criminal and financial background checks on Brinkmeyer that it performs on equity owners of marijuana businesses. The State found nothing problematic. Nevertheless, the State confirmed it will not approve Brinkmeyer's application to obtain Atkison's equity in the Stores solely because Brinkmeyer does not live in Washington.

The State created its multi-billion dollar cannabis market, but improperly limits ownership in that market to certain Washington residents. Because this type of economic protectionism and discrimination has always been unconstitutional, the "Residency Requirements"[1] must be invalidated as a matter of law—both for facially violating the Privileges or Immunities Clause in the Washington State Constitution and for exceeding statutory authority.

## II.    EVIDENCE RELIED UPON

This motion relies upon the Declaration of Andy Murphy in Support of Motion for Summary Judgment ("Murphy Decl.") and the Court's file.

## III.    FACTS

### A.    Washington Voters Approved Recreational Marijuana in 2012.

In 2012, the people of Washington approved Initiative Measure 502 ("I-502"), which legalized the possession and sale of marijuana for recreational purposes. In codifying I-502, the legislature affirmed the stated intent of I-502 "to stop treating adult marijuana use as a crime and try a new approach that: (1) Allows law enforcement resources to be focused on violent and property crimes; (2) Generates new state and local tax revenue for education, health care, research, and substance abuse prevention; and (3) Takes marijuana out of the hands of illegal drug organizations and brings it under a tightly regulated, state-licensed system similar to that for controlling hard alcohol." I-502 §1.[2]

The marijuana industry has been an economic powerhouse for the State of Washington. The State has received more than $1.7 billion in excise tax and fees generated from the sale of

---

[1] As described more fully below, the "Residency Requirements" are in RCW 69.50.331(1)(b), WAC 314-55-020(10), and WAC 314-55-035.
[2] There is no residency requirement in the purportedly analogous regulatory scheme for hard alcohol.

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

marijuana since 2014. Dkt. No. 8 ("Answer") ¶ 7. Public data indicates Washington's marijuana industry has yielded more than $10.5 billion in sales since 2014. Murphy Decl., Ex. A.

**B.     The State Imposes a Durational Residency Requirement on All Licensees and True Parties of Interest to Marijuana Licenses.**

The LCB tightly regulates the marijuana industry, and there are hundreds of rules that marijuana businesses must follow. *See generally,* ch. 69.50 RCW; ch. 314-55 WAC (collectively, the "LCB Rules"). The LCB Rules require owners of marijuana businesses to obtain licenses from the LCB. Answer ¶ 9. Those interested in becoming a licensee must apply, after which the LCB investigates the applicant to verify compliance with the LCB Rules. *Id*. ¶ 9.

In addition to verifying the applicant would not pose a threat to public health and safety if given a license, the LCB verifies that the applicant has resided in Washington for at least six months. *Id*. ¶ 10. This is because, by statute and rule, Washington law imposes a durational residency requirement on those who apply for marijuana licenses. The statutory Residency Requirement is in RCW 69.50.331(1)(b), which provides the following:

No license of any kind may be issued to:

(i) A person under the age of twenty-one years;

(ii) A person doing business as <u>a sole proprietor who has not lawfully resided in the state for at least six months prior to applying to receive a license</u>;

(iii) A partnership, employee cooperative, association, nonprofit corporation, or corporation unless formed under the laws of this state, and unless all of the members thereof are qualified to obtain a license as provided in this section; or

(iv) A person whose place of business is conducted by a manger or agent, unless the manager or agent possesses the same qualifications required of the licensee.

(Emphasis added.) This statutory Residency Requirement applies only to sole proprietorships and "members" of certain corporate entities, but the LCB expanded the Residency Requirements by administrative rule. WAC 314-55-020(10) requires <u>all</u> marijuana license applicants to reside

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

in Washington for "at least six months" before submitting their application to the LCB:

> Under RCW 69.50.331 (1)(c) [sic], <u>all applicants applying for a marijuana license must have resided in the state of Washington for at least six months prior to application for a marijuana license. All business entities</u> including, but not limited to, partnerships, employee cooperatives, associations, nonprofit corporations, corporations and limited liability companies, applying for a marijuana license <u>must be formed in Washington. All members, governors, or agents of business entities must also meet the six month residency requirement. Managers or agents who manage a licensee's place of business must also meet the six month residency requirement.</u>

(Emphasis added.) The LCB further expanded the Residency Requirements in WAC 314-55-035, which requires all true parties of interest ("TPIs") to be applicants for a marijuana license. TPIs, which include stockholders, members, managers, partners, officers, and those who exercise control over a marijuana business, must meet the residency requirement in WAC 314-55-020(11). Only approved licensees and TPIs (and thus Washington residents) may receive a share of the profits from a marijuana business operating in Washington. WAC 314-55-035.

Moreover, through policy and practice, the LCB requires all applicants it approves as a licensee or TPI to <u>remain</u> a Washington resident. *See* Answer ¶ 15. In other words, licensees must forfeit their license (and their business) if they move out of Washington.

## C. The LCB has Vetted and Approved Brinkmeyer as a Debt Financier for Marijuana Businesses, but will not Allow him to Obtain an Equity Interest because he is an Idaho Resident.

For 25 years, Brinkmeyer has been friends with Atkison. Dkt. No. 13 ("Brinkmeyer Decl.") ¶ 2. Although they live just thirty minutes from each other, they reside in different states. *Id*. Brinkmeyer lives in Idaho, and Atkison lives in Washington. *Id*.

Atkison is fortunate to have survived for nearly six years with Stage IV cancer; however, his health has progressed to where it is prudent for him to plan the disposition of his estate. Dkt. No. 12 ("Atkison Decl.") ¶ 5. That includes making arrangements to ensure continuity of business operations at marijuana retail Stores he partially owns in Washington. *Id*. Atkison cares about the team who has contributed to the Stores' success and does not wish to see his ownership

MOTION FOR SUMMARY JUDGMENT - 4
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    sold under duress, which could put undue stress on the Stores' other owners and business

2    operations. *Id*. He wants to make sure that he can transfer his ownership to someone who he

3    trusts will do right by the other owners, the Stores, and the team members. *Id*. The person

4    Atkison believes is best suited for carrying on the same ownership values and principles he has

5    brought to the Stores is Brinkmeyer. *Id*.

6            With the LCB's knowledge and approval, Brinkmeyer and Atkison already work together

7    on the Stores. Brinkmeyer has provided business advice to Atkison and loans to the Stores.

8    Brinkmeyer Decl. ¶ 4; Atkison Decl. ¶ 4. Indeed, the LCB approved Brinkmeyer three times as a

9    debt financier to the Stores. Answer ¶ 20. The LCB subjects financiers of licensed marijuana

10   businesses to the same vetting and approval process that it performs on licensees and TPIs,

11   including rigorous criminal and financial background checks, except debt financiers like

12   Brinkmeyer are not subject to the Residency Requirements. *See* Answer ¶¶ 19–22. Through its

13   repeated approval of Brinkmeyer as a financier, the LCB has evidently concluded there is

14   nothing concerning in Brinkmeyer's background. *See id*.

15           Despite the valued advice that Brinkmeyer has provided, the Residency Requirements

16   prohibit Atkison from giving equity in the Stores to Brinkmeyer as compensation in the same

17   manner that other, non-cannabis businesses are able to compensate their advisors or employees.

18   Atkison Decl. ¶ 4. The inability to compensate advisors and employees with equity interferes

19   with the Stores' ability to attract and retain the best talent. *Id*.; *see also* Brinkmeyer Decl. ¶ 5.

20           As part of his estate planning, Atkison would like to transfer his ownership interest in the

21   Stores to Brinkmeyer, and will do so if the LCB will allow it. Atkison Decl. ¶ 5. Brinkmeyer is

22   willing and able to assume Atkison's interest. Brinkmeyer Decl. ¶ 6. To obtain approval for the

23   transfer of equity, counsel for Brinkmeyer inquired with the LCB about whether it would

24   approve him as an owner of the Stores. Dkt. No. 15 ("Masse Decl."), Ex. A. On May 20, 2020,

25   the LCB confirmed it would deny Brinkmeyer's application to be added to the Stores' license

26   because Brinkmeyer does not comply with the Residency Requirements. *Id*.

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Thus, while Brinkmeyer is able to invest in the Stores by providing debt financing and receiving interest payments, the Residency Requirements prevent him from sharing in the profits of the Stores by providing equity financing or becoming an owner solely because he is not a Washington resident. *See* Answer ¶ 22. The LCB has thus concluded it is safe for the Stores to take Brinkmeyer's money, but against public policy for Brinkmeyer to become an owner of the businesses he provides advice for and invests in.

**D.     Procedural History**

On June 8, 2020, Brinkmeyer filed this lawsuit in this Court. Dkt. No. 2. The LCB filed its answer on June 29, 2020. Dkt. No. 8. The LCB then removed the case to United States District Court on July 7, 2020. Dkt. No. 9. Brinkmeyer filed a motion for preliminary injunction on August 6, 2020, which asserted the Residency Requirements facially violated numerous provisions of the United States Constitution and the state law claims raised in this motion. Murphy Decl., Ex. D. On August 24, 2020, the LCB filed its response and a supporting declaration from Rebecca Smith, the Director of Licensing at the LCB. *Id.*, Exs. E ("WDWA Resp."), F. Brinkmeyer submitted his reply on August 28, 2020. *Id.*, Ex. G.

On September 8, 2020, the court issued an order to show cause why the court had jurisdiction over a state licensing issue for a controlled substance under the federal Controlled Substances Act. *Id.*, Ex. I. The parties submitted their responses to the order on September 14, 2020, agreeing the court had jurisdiction. *Id.*, Exs. J, K. On October 5, 2020, the court issued an order that concluded it had jurisdiction to hear Brinkmeyer's claims, but *sua sponte* invoked *Pullman* abstention. *Id.*, Ex. L. The court stayed Brinkmeyer's federal claims, and severed and remanded his state law claims to this Court. *Id*. at 6; *see also* Dkt. No. 12.

On December 30, 2020, Brinkmeyer filed a motion for preliminary injunction in this Court, which argued that the Residency Requirements facially violated the Privileges or Immunities Clause of the Washington State Constitution and that the regulatory Residency Requirements exceed the LCB's statutory authority. Dkt. No. 14. On January 5, 2020, and over

MOTION FOR SUMMARY JUDGMENT - 6
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1   Brinkmeyer's objection, the Court granted the State's request to continue the hearing for the

2   preliminary injunction motion and modified deadlines for the parties' briefing. Dkt. No. 28. Also

3   on January 5, 2020, the State filed its response and a second supporting declaration from

4   Rebecca Smith. Dkt. Nos. 26 ("Resp."), 25 ("Smith Decl."). Brinkmeyer submitted his reply on

5   January 22, 2021. Dkt. No. 31. On January 29, 2021, the Court denied Brinkmeyer's motion for

6   preliminary injunction. Dkt. No. 35.

7   ## IV.   AUTHORITY AND ARGUMENT

8         Brinkmeyer asks this Court to follow the precedent set by the United States Supreme

9   Court and find, on summary judgment, that the durational Residency Requirements are

10  unconstitutional as a matter of law. *See Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,

11  139 S. Ct. 2449, 2475, 204 L.Ed.2d 801 (2019). Summary judgment is proper where there is no

12  genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

13  CR 56(c). If the moving party demonstrates that there is an absence of any material fact, the

14  nonmoving party must identify a material fact creating a genuine issue for trial. *Young v. Key*

15  *Pharm., Inc.*, 112 Wn.2d 216, 225–26, 770 P.2d 182 (1989); CR 56(e). The nonmoving party

16  must "set forth specific facts showing there is a genuine issue for trial." *LaPlante v. State*,

17  85 Wn.2d 154, 158, 531 P.2d 299 (1975). The nonmoving party may not rely on speculation that

18  unresolved factual issues remain. *Herman v. Safeco Ins. Co. of Am.*, 104 Wn. App. 783, 787–88,

19  17 P.3d 631 (2001). At summary judgment, the substantive law determines which facts are

20  material, and only facts "upon which the outcome of the litigation depends, in whole or in part'"

21  are deemed material. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346

22  (1979); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202

23  (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*,

24  477 U.S. at 248.

25  **A.    The Residency Requirements are Invalid as a Matter of Law.**

26         Durational residency requirements are highly suspect, and throughout the many times the

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

State has opposed Brinkmeyer's relief in this case, the State has not cited a single case where a court upheld a durational residency requirement in commerce. Rather than depart from the overwhelming weight of authority that consistently strikes durational residency requirements as unconstitutional, Brinkmeyer asks the Court to rule that the Residency Requirements are invalid as a matter of law for two reasons: the Residency Requirements violate the Privileges or Immunities Clause of the Washington State Constitution and the regulatory Residency Requirements exceed the LCB's statutory authority.

1. **Privileges or Immunities Clause under the Washington State Constitution**

The Residency Requirements violate Article I, section 12 of the Washington Constitution, which provides that "No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." When analyzing whether a law violates the Privileges or Immunities Clause, courts first evaluate whether the challenged law grants a "privilege" or "immunity" for purposes of the Washington Constitution. *Schroeder v. Weighall*, 179 Wn.2d 566, 573, 316 P.3d 482 (2014). If the answer is yes, courts will then consider whether there is a "reasonable ground" for granting that privilege or immunity. *Id*.

a. **The Residency Requirements deprive Brinkmeyer of his right to carry on a business.**

This case implicates the right to carry on a business, a long-recognized fundamental right protected by the Privileges or Immunities Clause. *State v. Vance*, 29 Wash. 435, 458, 70 P. 34 (1902). Summary judgment is proper because discrimination embedded in the text of the Residency Requirements means there is no set of circumstances where the laws as currently written can be constitutionally applied. *See City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). State laws, like the Residency Requirements, that commercially benefit certain residents at the expense of nonresidents violate the Privileges or Immunities Clause.

For example, in *Ralph v. City of Wenatchee*, 34 Wn.2d 638, 209 P.2d 270 (1949), the

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    Court struck down a municipal ordinance that required nonresident photographers to pay

2    substantial licensing fees, while exempting resident photographers from the fees. The ordinance

3    implicated the right to carry on a business by attempting to insulate resident photographers from

4    nonresident competition. *Id*. at 641–43. The Court held the ordinance unfairly discriminated

5    against a class of businesses to the benefit of another class of the same business, and deprived

6    nonresidents of the "common right to engage in trade." *Id.* at 641–44.

7            As in *Ralph*, this case involves licensing requirements that impose barriers to participate

8    in a local economy. While the licensing fees in *Ralph* were prohibitively expensive for the

9    affected photographers, the Residency Requirements go further by prohibiting nonresidents from

10   participating in the marijuana industry altogether. Further, the Residency Requirements

11   discriminate between classes of the same business, as marijuana companies owned exclusively

12   by people who have resided in Washington longer than six months may operate in Washington

13   while marijuana companies owned by anyone else may not.

14                            i.      **The LCB artificially seeks to narrow the Privileges or
                                      Immunities Clause by arguing Brinkmeyer is not entitled to its
15                                    protections.**

16           In its response to Brinkmeyer's motion for preliminary injunction, the State argued the

17   Privileges or Immunities Clause applies only to Washington citizens. Resp. at 5–6. This misses

18   the point. The Privileges or Immunities Clause prevents the State from granting privileges to

19   certain citizens or corporations. *Grant Cty. Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150

20   Wn.2d 791, 806–07, 83 P.3d 419 (2004). The Residency Requirements grant the privilege of

21   carrying on a marijuana business in Washington only to people who have resided in Washington

22   longer than six months and businesses owned exclusively by them. That favoritism, which harms

23   Brinkmeyer and businesses in which he owns a stake, violates the Privileges or Immunities

24   Clause. Moreover, Brinkmeyer is not a stranger to Washington, but is actively doing business in

25   Washington and seeks to own a Washington business. Adopting the State's argument would

26   mean that the State can abuse participants in Washington's economy solely because they reside

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

elsewhere while doing business in Washington.

Furthermore, nonresidents of Washington may challenge Washington laws that violate the Privileges or Immunities Clause. For example, in *State v. Osman*, 157 Wn.2d 474, 483–84, 139 P.3d 334 (2006), the Court recognized non-citizens can challenge a state action for violating the Washington Constitution. While the *Osman* Court found the challenged state action passed muster, here it does not. Notably, while the *Osman* Court expressly stated the plaintiff was not a citizen of the United States, the State has asserted at oral argument that the plaintiff was a Washington resident. There is no language in the opinion that suggests the plaintiff was a resident of Washington other than he committed a crime here. Brinkmeyer has a more established connection to Washington than the *Osman* plaintiff, as Brinkmeyer has done business in Washington since at least 2017. *See* Smith Decl., Ex. 2.

### ii. The State's ability to regulate marijuana does not allow the State to enforce discriminatory regulations.

The State has asserted that Brinkmeyer does not seek to vindicate his fundamental right to carry on a business, but rather a right to engage in a federally illegal business. Resp. at 7. Citing cases to illustrate there is no right to sell liquor, the State argued there is no right to sell marijuana. *Id.* (citing *Randles v. Liquor Control Bd.*, 33 Wn.2d 688, 694, 206 P.2d 1209 (1949); *Jow Sin Quan v. Washington State Liquor Control Bd.*, 69 Wn.2d 373, 382, 418 P.2d 424 (1966)). Those cases reflect the recognized rule that "states have wide latitude to regulate liquor distribution and sales within their borders," 45 Am. Jur. 2d Intoxicating Liquors § 17, and participants in the liquor industry must operate within a state's licensed system.[3] But even with that vast authority, states' liquor laws may not violate constitutional rights. *See, e.g., 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516–17, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *Francis v. Fitzpatrick*, 129 Conn. 619, 622, 30 A.2d 552 (1943); *Schwegmann Bros. v. Louisiana Bd. of Alcoholic Beverage Control*, 216 La. 148, 163, 43 So. 2d 248 (1949); *Shoot v.*

---

[3] The *Randles* Court, 33 Wn.2d at 697, recognized the American Jurisprudence Intoxicating Liquors treatise provided the "applicable rules guiding governing authority" for regulation of liquor.

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    *Illinois Liquor Control Comm'n*, 30 Ill. 2d 570, 575, 198 N.E.2d 497 (1964); *Haas v. Remick*,

2    31 Ohio C.D. 38, 41, 1910 WL 1225 (Ohio Cir. Ct. 1910); *see also* 45 Am. Jur. 2d Intoxicating

3    Liquors § 22 ("The power of the states to regulate, restrict, or ban the sale of alcoholic beverages

4    within their borders may not be used to violate a person's constitutional rights."). Notably, the

5    State's authority over cannabis is even less than liquor because the federal constitution grants

6    broad authority to states to regulate liquor. *See* U.S. Const. Amend. XXI, sec. 2; *see also*

7    *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.,* 445 U.S. 97, 110, 100 S. Ct.

8    937, 63 L.Ed.2d 233 (1980). There is no comparable constitutional grant of state authority to

9    regulate cannabis.

10         Even so, Brinkmeyer does not dispute the State's police power enables it to *regulate* the

11   sale of marijuana. But because the State has chosen to allow the sale of cannabis, those

12   regulations cannot unconstitutionally discriminate. Because the State created a cannabis industry,

13   its laws regulating the industry must comply with the constitution and its protection of the right

14   to carry on a business.

15              **iii.      The LCB should be estopped from relying on marijuana's**
                 **federal illegality to limit cannabis industry members' rights**
16               **under the state constitution.**

17         It is unfair for the State to regulate and profit from its marijuana market while claiming

18   that its participants lack the same constitutional protections as any other person because the

19   market is illegal. The State should be equitably estopped from relying on marijuana's federal

20   illegality when defending the unconstitutional laws the State enacted. A party asserting

21   equitable estoppel against the government must establish five elements by clear, cogent, and

22   convincing evidence: "(1) a statement, admission, or act by the party to be estopped, which is

23   inconsistent with its later claims, (2) the asserting party acted in reliance upon the statement or

24   action, (3) injury would result to the asserting party if the other party were allowed to repudiate

25   its prior statement or action, (4) estoppel is necessary to prevent a manifest injustice, and

26   (5) estoppel will not impair governmental functions." *Wilson v. Washington State Dep't of Ret.*

MOTION FOR SUMMARY JUDGMENT - 11
Case No. 20-2-01568-34

1    *Sys.*, 475 P.3d 193, 200 (Wash. Ct. App. 2020) (quoting *Silverstreak, Inc. v. Washington State*

2    *Dep't of Labor & Indus.*, 159 Wn.2d 868, 887, 154 P.3d 891 (2007)).

3         This case satisfies each element. In passing I-502, the State committed to "stop treating

4    adult marijuana use as a crime," but the State seeks to treat its market participants like drug

5    dealers. Brinkmeyer relied on the State's commitment to treat its marijuana market as a legal one

6    when he began participating in Washington's cannabis market. Brinkmeyer Decl. ¶ 9. "In

7    Washington, the 'injury' element requires the party asserting equitable estoppel to show a

8    detrimental change of position based upon the government's representation." *Silverstreak*,

9    159 Wn.2d at 889. Brinkmeyer would not have become a financier or sought to obtain equity in

10   the Stores had he known the State would characterize that licensed business conduct as criminal.

11   Brinkmeyer Decl. ¶ 9. The public is not harmed if the State recognizes the constitutional rights of

12   its licensed industries, but Brinkmeyer faces the manifest injustice of the State continuing to

13   violate his constitutional rights. Finally, because Brinkmeyer's requested relief does not interfere

14   with the LCB's ability to fully vet and approve candidates before issuing them licenses,

15   government functions will not be impaired. The State should be equitably estopped.

16              **b.      The Residency Requirements do not serve the legislature's goals.**

17        The Privileges or Immunities Clause prevents the State from showing "favoritism and

18   special treatment for a few to the disadvantage of others." *Martinez-Cuevas v. DeRuyter Bros.*

19   *Dairy, Inc.*, __ Wn.2d __, 475 P.3d 164, 171 (2020). Despite the fact that the State must comply

20   with this constitutional mandate at all times, the Residency Requirements grant the privilege of

21   doing business in the cannabis industry solely to long-term Washington residents and

22   Washington businesses composed exclusively of them. Thus, the Residency Requirements must

23   be struck because there is no evidence that discrimination serves the legislature's stated goals of

24   I-502. Under the reasonable ground test, "the court will scrutinize the legislative distinction to

25   determine whether it *in fact* serves the legislature's stated goal." *Schroeder*, 179 Wn.2d at 574

26   (emphasis in original). The stated intent behind I-502 is to allow law enforcement to focus on

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    violent and property crimes, generate tax revenue, and remove marijuana from illegal drug

2    organizations by bringing marijuana under a tightly regulated state-licensed system. I-502 §1.

3         The Residency Requirements do not further the intent of I-502. Residency has no impact

4    on law enforcement resources nor does it reduce the taxes collected from marijuana businesses.

5    In reviewing a summary judgment ruling, the United States Supreme Court has already held that

6    residency is not necessary for states to tightly regulate licensees when the businesses remain in-

7    state, and the state's ability to revoke licenses provides strong incentives to comply with state

8    law. *Tennessee Wine*, 139 S. Ct. at 2475; *see also Granholm v. Heald*, 544 U.S. 460, 490, 125 S.

9    Ct. 1885, 161 L.Ed.2d 796 (2005) ("Out-of-state wineries face the loss of state and federal

10   licenses if they fail to comply with state law. This provides strong incentives not to sell alcohol

11   to minors."). In striking a residency requirement for liquor store owners, the Court held that

12   Tennessee could maintain its oversight of liquor store licensees because the state could monitor

13   the in-state business operations through on-site inspections, audits, and the like. *Tennessee Wine*,

14   139 S. Ct. at 2475.

15        The same rationale applies to this case. Because licensed marijuana businesses must

16   operate within Washington, the State can monitor business operations and revoke licenses if the

17   businesses violate the LCB Rules, and the residency of equity holders does not impact the State's

18   enforcement ability. That means the only stated intent that residency arguably could implicate is

19   the ability of the LCB to remove cannabis from illegal drug organizations. Thus, the Residency

20   Requirements should be struck unless the State can present evidence that *in fact* nonresidents

21   who pass the LCB's background checks and receive licenses are more likely to divert marijuana

22   than residents. It cannot.

23        In its response to Brinkmeyer's motion for preliminary injunction, the State advanced a

24   set of post-hoc justifications for the Residency Requirements from LCB Licensing Director

25   Rebecca Smith. Resp. at 8–10. But the Residency Requirements must accomplish the

26   *legislature's* stated goal. *Schroeder*, 179 Wn.2d at 574. Ms. Smith does not speak for the

MOTION FOR SUMMARY JUDGMENT - 13
Case No. 20-2-01568-34

**MILLER NASH GRAHAM & DUNN LLP**
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

legislature, nor did the State cite any case where a court accepted rationale presented by agency staff. Thus, the purported justifications Ms. Smith offers are irrelevant.

Furthermore, none of Ms. Smith's justifications save the Residency Requirements. At most, Ms. Smith's justifications relate to preventing criminality and maintaining oversight. The State's enforcement scheme—none of which Brinkmeyer seeks to change—effectively prevents criminality by tracking all marijuana from seed-to-sale, requiring 24/7 security camera surveillance of marijuana facilities, and the right to access and audit all business records of licensees. WAC 314-55-083, -087, -185; Smith Decl. ¶ 18. Importantly, Ms. Smith's conclusory allegations are immaterial due to the Supreme Court's holding that, as a matter of law, residency is unnecessary to maintain effective oversight of a licensed in-state business. *Tennessee Wine*, 139 S. Ct. at 2475.

While Ms. Smith's justifications fail generally for these reasons, they fail individually too. Contrary to the State's assertions, Resp. at 9, residency is unnecessary to comply with the Cole Memo. Numerous states have licensed cannabis markets without residency requirements. Murphy Decl., Ex. C at 6. There is no evidence the federal government views the absence of a residency requirement in these states as a Cole Memo violation. Further, the Cole Memo focuses on preventing diversion, and the State does not explain why owner residency is necessary when diversion would originate in Washington where the licensed businesses are located.

The State claimed residency is needed to investigate applicants' misdemeanor convictions from local jurisdictions. Resp. at 9. The State can ask applicants for all the information it requires to vet their character and deny applications if they provide inadequate information.[4] WAC 314-55-050. If applicants provide incomplete or inaccurate responses to the

---

[4] In its response to Brinkmeyer's motion for preliminary injunction, the LCB attempted to smear Brinkmeyer's character by referring to an inaccurate news article about a civil lawsuit in which he was a defendant. Smith Decl., Ex. 14. Brinkmeyer has appealed a trial court order that found him civilly liable for tortious interference after he participated in a transaction to buy and preserve a wetland nearby his home. Dkt. No. 32, Second Declaration of Todd Brinkmeyer, Ex. A. No crime has been alleged or charged in relation to the case. *Id*. ¶ 2. This civil matter has no bearing on Brinkmeyer's fitness for a license. *Cf.* WAC 314-55-020(6).

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1    LCB, then the resulting penalty is license cancellation. RCW 69.50.562(2)(b)(v).

2         The State claimed residency makes it easier to prosecute licensees. Resp. at 9. The

3    Supreme Court rejected this justification as a matter of law, noting states can require "a

4    nonresident to designate an agent to receive process or to consent to suit" in state courts.

5    *Tennessee Wine*, 139 S. Ct. at 2475. The State has also offered no evidence that a nonresident

6    who passes the LCB's background check is more likely to engage in criminal conduct than a

7    resident. But if the LCB needs to prosecute a nonresident, the State can pursue its usual means to

8    obtain custody of the defendant.

9         The State claimed residency is necessary to prevent "tied houses" from forming across

10   state lines and to enforce its limit on holding no more than five retail licenses because

11   nonresidents may have retail stores in other states. Resp. at 9. These justifications reveal the

12   State's unlawful desire to regulate business conduct outside its borders. *Healy v. Beer Inst., Inc.*,

13   491 U.S. 324, 336, 109 S. Ct. 2491, 105 L. Ed. 2d 275 (1989). Moreover, the State has not

14   described why these same risks do not apply to existing favored licensees who have unrestricted

15   freedom to acquire marijuana businesses in other states right now. The LCB has also misstated

16   its own rules, which do not prohibit interstate tied houses, but instead restrict interests among

17   businesses licensed by the State. RCW 69.50.328; RCW 69.50.101 (aa), (bb), (ee). This tied

18   house concern is actually a red herring because state law prohibits sale of marijuana across state

19   lines. *See* RCW 69.50.325(1). Interstate tied houses cannot be formed if they cannot do business

20   with each other. Regardless, the LCB could require applicants to disclose their interests in out-

21   of-state marijuana businesses.

22        Finally, Ms. Smith speculated that eliminating the Residency Requirements would cause

23   concern for Idaho as a bordering state. Smith Decl. ¶ 19. Although Oregon and Nevada border

24   Idaho, the LCB presented no evidence of Idaho's concern regarding their lack of a residency

25   requirement. *See* Murphy Decl., Ex. C at 6. Rather than presume how Idaho will treat its

26   residents, the State should let Idaho make its own decisions.

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

I-502 identifies the legislative objectives for the Residency Requirements. The State has provided no evidence that the discrimination in the Residency Requirements *in fact* achieves those objectives. Thus, there is no reasonable ground for the favoritism embodied in the Residency Requirements, and they violate the Privileges or Immunities Clause as a matter of law.

   c.   **The Residency Requirements fail rational basis review because the State enacted them for the improper purpose of economic protectionism.**

Regardless of whether the Residency Requirements fail under the reasonable ground test, they should be struck because they also fail rational basis review. When a fundamental right is not implicated, courts analyze whether state action violates the Privileges or Immunities Clause by applying the rational basis test.[5] *Osman*, 157 Wn.2d at 485–86. Applying this test, courts find that state action is lawful if there is a rational relationship between the state's classification and a legitimate state interest. *Id.* at 486. Courts will uphold state action unless "it rests on grounds wholly irrelevant to the achievement of legitimate state objectives." *Id.* (quoting *State v. Shawn P.*, 122 Wn.2d 553, 561, 859 P.2d 1220 (1993)). "Disparate treatment of those within and without a designated class rationally relates to achievement of the State's objective if there is some basis in reality for the distinction between the two classes and the distinction serves the purpose intended by the legislature." *Id.*

The State has justified the Residency Requirements as a valid exercise of its police power. Resp. at 7–10. The Washington State Supreme Court disagrees. The *Ralph* Court held the State's "police power may be exercised only in the pursuit of the general welfare," which did not occur when the defendant passed a law with the primary purpose of economic protectionism. 34 Wn.2d at 644. The State admitted the primary justification for the Residency Requirements is economic protectionism. Answer ¶ 18. This admission means the Residency Requirements are

---

[5] The *Osman* Court applied the rational basis test to an equal protection challenge; however, courts construe the Privileges or Immunities Clause in a "substantially similar" way as the equal protection clause in situations where a fundamental right is not implicated. *Schroeder*, 179 Wn.2d at 571.

MOTION FOR SUMMARY JUDGMENT - 16
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  not intended to achieve a legitimate state objective and are not a valid exercise of police power.

2  As such, they fail rational basis review.

### 2. The regulatory Residency Requirements exceed the LCB's statutory authority.

The regulatory Residency Requirements also fail because they exceed the LCB's statutory authority. RCW 34.05.570(2)(c). Administrative "rules that are inconsistent with the statutes they implement are invalid. An agency's rule is invalid if it is not reasonably consistent with the statute being implemented." *Bostain v. Food Exp., Inc.*, 159 Wn.2d 700, 715, 153 P.3d 846 (2007); *see also Washington State Hosp. Ass'n v. Washington State Dep't of Health*, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015).

RCW 69.50.331(1)(b) requires residency only for sole proprietors and the "members" of a "partnership, employee cooperative, association, nonprofit corporation, or corporation," but LCB regulations require residency from every single licensee and TPI. The regulatory Residency Requirements conflict with the statute by requiring residency from every person who receives profits from a marijuana business, including stockholders, even if they are not a sole proprietor or "member" of a business licensed to participate in Washington's marijuana industry. Further, the LCB regulations require residency from members of limited liability companies ("LLC") even though LLCs are omitted from the list of entities in the statutory Residency Requirements. This presents a direct conflict that warrants striking the regulatory Residency Requirements. *See Washington Rest. Ass'n v. Washington State Liquor Bd.*, 200 Wn. App. 119, 126–31, 401 P.3d 428 (2017).

As a threshold matter, the State has argued that Brinkmeyer lacks standing to raise his statutory authority argument because Brinkmeyer is not injured as a stockholder. WDWA Resp. at 18–19. In doing so, the State ignores the evidence it submitted that shows Atkison and his spouse are the sole stockholders of No. 259, Inc., which owns Insagu, LLC, and Insagu, LLC holds Atkison's interest in most of the Stores. Smith Decl. ¶ 3, Exs. 1, 3, 5. Because Brinkmeyer

MOTION FOR SUMMARY JUDGMENT - 17
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

seeks to obtain Atkison's interest in the Stores, he seeks to become not only a stockholder of No. 259, Inc., but a member of Insagu, LLC. He is prohibited from doing either by the inconsistency between the regulatory and statutory Residency Requirements.

More substantively, the State has defended the inconsistency between the regulatory and statutory Residency Requirements by alleging the conflict is consistent with legislative intent. Resp. at 10. Not so. When interpreting a statute enacted via initiative, a court's "goal is to determine the collective intent of the people who enacted the initiative measure." *Washington Rest. Ass'n*, 200 Wn. App. at 127. The LCB asserted its regulatory definition of "member" aids in determining legislative intent because its interpretation does not conflict with the statute. Resp. at 10. Aside from the circularity of that conclusion, "deference to an agency interpretation is appropriate only if the statute is ambiguous[.]" *Bostain v. Food Exp., Inc.*, 159 Wn.2d 700, 716 n.6, 153 P.3d 846 (2007). "Under the age old rule expressio unius est exclusio alterius, where a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions." *State v. LG Elecs., Inc.*, 186 Wn.2d 1, 9, 375 P.3d 636 (2016) (internal brackets and quotations omitted). Applying this rule, there is no ambiguity in the statutory Residency Requirement. The plain language of RCW 69.50.331(1)(b) shows the legislature's intent to require residency from only certain applicants by expressly identifying them.

Even assuming the statute is ambiguous, the State's argument fails. Courts construe initiatives in relation to related statutes and the surrounding statutory scheme to "avoid interpreting statutes to create conflicts between different provisions so that [courts] can achieve a harmonious statutory scheme." *Am. Legion Post #149 v. Washington State Dep't of Health*, 164 Wn.2d 570, 585, 192 P.3d 306 (2008). The Controlled Substances Act, where I-502 is codified, provides that "'Member' has the same meaning as in RCW 25.15.005, except that the term only includes members of member-managed limited liability companies." RCW 69.50.565(7)(f). Although that provision of the LLC Act was repealed and replaced by the current LLC Act, it

1  still shows that the legislature can identify LLCs when it intends to regulate them, and that the

2  legislature intended for "member" to have the formal statutory meaning in the LLC Act. Indeed,

3  "member" as used in the context of business entities is a legal term that refers to equity holders

4  of an LLC. *See* RCW 25.15.006(10). "[L]egal terms in a statute are presumed to have been used

5  in their legal sense in the absence of a legislative intent to the contrary." *Ludwig v. Mut. Real*

6  *Estate Inv'rs*, 18 Wn. App. 33, 40, 567 P.2d 658 (1977), *overruled on other grounds by Kittilson*

7  *v. Ford*, 93 Wn.2d 223, 608 P.2d 264 (1980).

8      The State has also defended the inconsistency between the regulatory and statutory

9  Residency Requirements by relying on a dictionary definition of "corporate member." Resp. at

10  11. The LCB does not explain why the definition is relevant when the words "corporate

11  member" are not used in the Residency Requirements. Further, the State's argument disregards

12  how RCW 69.50.331(1)(b) imposes a residency requirement on only certain applicants, but the

13  regulatory Residency Requirements impose them on all licensees and TPIs. Thus, because the

14  regulatory Residency Requirement prohibits what the statute allows, the regulation is invalid.

15              **V.    CONCLUSION**

16      Brinkmeyer's request is narrow. He is not asking the State to change the thorough

17  background, financial, and criminal checks that all cannabis licensees must pass. He is not asking

18  the State to relax its standards when evaluating whether an applicant is fit to hold equity in the

19  State's marijuana market, to change its enforcement powers, or to limit its discretion. He is not

20  even asking the State to issue him a license.

21  //

22  //

23  //

24  //

25  //

26  //

MOTION FOR SUMMARY JUDGMENT - 19
Case No. 20-2-01568-34

1    Instead, Brinkmeyer is asking that his application be treated with the exact same scrutiny that the

2    LCB applies to applications submitted by Washington residents. No more, no less. The

3    Constitution demands that fair treatment. Accordingly, Brinkmeyer asks the Court to grant

4    summary judgment, and permanently enjoin the State from enforcing the Residency

5    Requirements

6            DATED this 7th day of April, 2021.

7

8                                                MILLER NASH GRAHAM & DUNN, LLP

9                                                */s/ Andy Murphy*
                                                 Daniel J. Oates, WSBA No. 39334
10                                               Andy Murphy, WSBA No. 46664
                                                 MILLER NASH GRAHAM & DUNN LLP
11                                               Pier 70 ~ 2801 Alaskan Way, Suite 300
                                                 Seattle, WA 98121
12                                               Tel: 206-624-8300
                                                 Fax: 206-340-9599
13                                               Email: *Dan.Oates@millernash.com*
14                                                           *Andy.Murphy@millernash.com*
                                                 *Attorneys for Petitioner*
15

16

17

18

19

20

21

22

23

24

25

26

MOTION FOR SUMMARY JUDGMENT - 20
Case No. 20-2-01568-34

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

# CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of April, 2021, a copy of the foregoing

document was served upon the attorneys of record in the above cause as follows:

JOSHUA ORF-RODRIGUEZ, WSBA No. 50101
HAYLEE P. MILLS, WSBA No. 48074
Assistant Attorneys General
1125 Washington St SE
Olympia, WA 98501
Phone: (360) 753-2702
Email: Joshua.OrfRodriguez@atg.wa.gov
Haylee.Mills@atg.wa.gov
GCEEF@atg.wa.gov
Kelli.Lewis@atg.wa.gov

☐ via Hand Delivery
☐ via U.S. Mail
☐ via Facsimile
☐ via E-Service
☒ via Email

*Attorneys for Respondent*

Under the laws of the state of Washington, the undersigned hereby declares, under the penalty of perjury, that the foregoing statements are true and correct to the best of my knowledge.

Executed at Seattle, Washington, this 7th day of April, 2021.

*s/ Brie Geffre*
Brie Geffre, Legal Assistant

4835-4252-3617.2

MILLER NASH GRAHAM & DUNN LLP
Pier 70 ~ 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599