# Exhibit F

Hearing date: July 23, 2021
Hearing time: 9:00 a.m.
Judge/Calendar: Honorable Mary Sue Wilson

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON**
**IN AND FOR THE COUNTY OF THURSTON**

TODD BRINKMEYER,

                Petitioner,

   v.

WASHINGTON STATE LIQUOR
CONTROL BOARD,

           Defendant.

NO. 20-2-01568-34

RESPONSE TO SUMMARY
JUDGMENT

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION ......................................................................................... 2

3   II.   RELIEF REQUESTED ............................................................................... 2

4   III.  EVIDENCE RELIED ON ........................................................................... 2

5   IV.   FACTUAL AND PROCEDURAL BACKGROUND ................................ 3

6         A.   Background ...................................................................................... 3

7         B.   Residency Requirement .................................................................. 3

8         C.   Mr. Atkison and Mr. Brinkmeyer ................................................... 4

9   V.    AUTHORITY AND ARGUMENT ............................................................ 4

10        A.   *Tennessee Wine* Is Not Applicable ................................................ 4

11        B.   The Board is Entitled to Summary Judgment ................................. 4

12        C.   The Petitioner Failed to Present a Justiciable Controversy Under the
           Declaratory Judgments Act ............................................................. 5
13

14             1.   Petitioner fails to demonstrate an actual and existing dispute .......... 6

15             2.   Petitioner fails to raise a dispute involving interests that are direct and
                substantial, rather than potential, theoretical, abstract or academic ......... 7

16             3.   This case should not be considered without a justiciable controversy ........... 9

17        D.   There is No Violation of Washington's Privilege and Immunities Clause ............. 10

18             1.   Washington's privilege and immunities clause protections are reserved for
                Washington State citizens .................................................................. 11
19

20             2.   Even if Mr. Brinkmeyer could invoke the rights of a Washington citizen,
                the residency requirement does not violate the privileges and immunities
21              clause ................................................................................................. 12

22                  a.   No fundamental right of State Citizenship is implicated ........................ 13

23                  b.   There are reasonable grounds to support the Residency Requirement ..... 14

24        E.   The Board's Regulations Do Not Exceed Its Authority ......................................... 17

25             1.   Petitioner lacks standing to challenge WAC 314-55-020 and
                WAC 314-55-035 ................................................................................. 17

26             2.   WAC 314-55-020 does not conflict with RCW 69.50.331 ...................... 17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1

VI.   CONCLUSION ........................................................................................................ 20

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Allan v. Univ. of Wash.*,
   140 Wn.2d 323, 997 P.2d 360 (2000)................................................................... 17

*Am. Legion Post #149 v. Washington State Dep't of Health*,
   164 Wn.2d 570, 192 P.3d 306 (2008)..................................................................... 8

*Association of Washington Spirits and Wine Distributors v. Washington State Liquor and Cannabis Board*,
   182 Wn.2d 342, 340 P.3d 849 (2015)................................................................... 13

*Branson v. Port of Seattle*,
   152 Wn.2d 862, 101 P.3d 67 (2004).................................................................. 5, 7

*Campbell v. Dep't of Soc. & Health Servs.*,
   150 Wn.2d 881, 83 P.3d 999 (2004)..................................................................... 19

*City of Seattle v. State Dep't of Labor & Indus.*,
   136 Wn.2d 693, 965 P.2d 619 (1998)................................................................... 19

*Clise Inv. Co. v. Washington Sav. Bank*,
   18 Wash. 8,  50 P. 575 (1897) .............................................................................. 19

*Colgate v. Harvey*,
   296 U.S. 404, 56 S. Ct. 252, 80 L. Ed. 299 (1935)............................................. 11

*Denny Hotel Co. v. Schram*,
   6 Wash. 134, 32 P. 1002 (1893) ........................................................................... 19

*Dep't of Ecology v. Campbell & Gwinn*,
   146 Wn.2d 1, 43 P.3d 4 (2002)............................................................................ 18

*Diversified Indus. Dev. Corp. v. Ripley*,
   82 Wn.2d 811, 514 P.2d 137 (1973) ...................................................................... 6

*Elliot v. Puget Sound Wood Products Co.*,
   52 Wash. 637, 101 P. 228 (1909) ......................................................................... 19

*Five Corners Family Farmers v. State*,
   173 Wn.2d 296, 268 P.3d 892 (2011)..................................................................... 8

*Grant Cnty. Fire Prot. Dist. 5 v. City of Moses Lake* (*Grant County I*),
   145 Wn.2d 702, 42 P.3d 394 (2002)....................................................................... 8

*Grant Cnty. Fire Prot. Dist. 5 v. City of Moses Lake* (*Grant County II*),
   150 Wn.2d 791, 83 P.3d 419, 423 (2004)........................................... 8, 11, 13, 14

*Haines-Marchel v. Washington State Liquor and Cannabis Board*,
   1 Wn. App. 2d 712, 406 P.3d 1199 (2017)................................................... 13, 14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

*Hay v. Big Bend Land Co.*,
    32 Wn.2d 887, 204 P. 2d 488 (1949)...........................................................19

*Impecoven v. Dep't of Revenue*,
    120 Wn.2d 357, 841 P.2d 752 (1992)............................................................5

*Jow Sin Quan v. Liquor Control Bd.*,
    69 Wn.2d 373, 418 P.2d 424 (1966)............................................................14

*League of Educ. Of Voters v. State*,
    176 Wn.2d 808, 295 P.3d 743 (2013)...........................................................10

*Martinez-Cuevas v. Deruyter Bros Dairy, Inc.*,
    196 Wn.2d 506, 475 P.3d 164 (2020)...........................................................11

*Ockletree v. Franciscan Health Sys.*,
    179 Wn.2d 769, 317 P.3d 1009 (2014)......................................................13, 14

*Original Investments vs. Oklahoma*,
    CV-20-820-F (June 4, 2021)........................................................................4

*Ralph v. City of Wenatchee*,
    34 Wn.2d 638, 209 P.2d 270 (1949).......................................................11, 12

*Randles v. Liquor Control Bd.*,
    33 Wn.2d 688, 206 P.2d 1209 (1949)......................................................13, 14

*Sch. Dists.' Alliance for Adequate Funding of Special Educ. v. State*,
    170 Wn.2d 599, 244 P.3d 1 (2010)..............................................................10

*Slaughter Houses Cases v. Louisiana*,
    83 U.S. 36,  21 L.Ed. 394 (1872).................................................................11

*State ex rel. Hays v. Wilson*,
    17 Wn.2d 670, 137 P.2d 105 (1943)..............................................................8

*State v. Larson*,
    184 Wn.2d 843, 65 P.3d 740 (2015).......................................................17, 18

*State v. Osman*,
    157 Wn.2d 474, 139 P.3d 334 (2006)...........................................................12

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
    139 S.Ct. 2449, 204 L.ed.2d 801 (2019) .......................................................4

*To-Ro Trade Shows v. Collins*,
    144 Wn.2d 403, 27 P.3d 1149 (2001)......................................................6, 7, 8

*United Parcel Service v. Dep't of Revenue*,
    102 Wn.2d 355, 687 P.2d 186 (1984)...........................................................14

iv

1  *Walker v. Munro,*
      124 Wn.2d 402, 879 P.2d 920 (1994)..................................................................... 8, 9

2

3  *Yakima Cnty. Fire Prot. Dist. 12 v. City of Yakima,*
      122 Wn.2d 371, 858 P.2d 245 (1993)......................................................................... 9

4  <u>**Statutes**</u>

5  2015 Wash. Laws, 2d Spec. Sess., ch. 4, § 301 ............................................................. 3

6  21 U.S.C. § 812 .............................................................................................................. 3

7  RCW 25 ........................................................................................................................ 18

8  RCW 25.05 ................................................................................................................... 18

9  RCW 25.15 ................................................................................................................... 18

10  RCW 25.20 ................................................................................................................... 18

11  RCW 34.05.530 ............................................................................................................ 17

12  RCW 66.24.010 .............................................................................................................. 3

13  RCW 66.24.010(2) .......................................................................................................... 3

14  RCW 66.24.010(2)(a) ..................................................................................................... 3

15  RCW 66.24.010(2)(b) ..................................................................................................... 3

16  RCW 66.24.010(2)(c) ..................................................................................................... 3

17  RCW 66.24.010(2)(d) ..................................................................................................... 3

18  RCW 66.50.331 ....................................................................................................... 17, 20

19  RCW 69.50.101 ......................................................................................................... 2, 3

20  RCW 69.50.331 .................................................................................................... passim

21  RCW 69.50.331(1)(a) ................................................................................................... 16

22  RCW 69.50.331(1)(b) .............................................................................. 4, 10, 17, 18

23  RCW 69.50.342 .............................................................................................................. 3

24  RCW 69.50.345 .............................................................................................................. 3

25  RCW 69.50.565 ............................................................................................................ 20

26  RCW 69.50.565(7)(f) .................................................................................................... 20

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

RCW 7.24.020 ................................................................................................................ 5

U.S.C. Title 21 ............................................................................................................... 3

U.S. Constitution .......................................................................................................... 12

U.S. Const. amend. XIV ......................................................................................... 11, 12

Washington Constitution .......................................................................................... 2, 5, 11

WA. Const. art. 1 § 12 ............................................................................................ passim

**Other Authorities**

1 Victor Morawetz, A Treatise on the Law of Private Corporations § 43 (2nd ed. 1886).......... 19

Initiative 502 (I-502)............................................................................................ 2, 3, 14, 15

Initiative 502, §1 ......................................................................................................... 2, 3

Initiative 502, Laws of 2013, ch. 3 ............................................................................... 2, 3

Merriam-Webster.com, https://www.merriam-
   webster.com/dictionary/corporate%20member (last visited Jan. 2, 2021)........................... 18

**Regulations**

WAC 314-07-020(10) ..................................................................................................... 3

WAC 314-55 ................................................................................................................. 3

WAC 314-55-020 ......................................................................................... 9, 16, 17, 20

WAC 314-55-035 ............................................................................................ 9, 17, 19, 20

WAC 314-55-040 ........................................................................................................ 16

WAC 314-55-045 ........................................................................................................ 16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1

## I.      INTRODUCTION

2       Since Initiative 502 (I-502) passed in 2012, only Washington residents have been

3  permitted to hold a marijuana license. Initiative 502, Laws of 2013, ch. 3. This requirement helps

4  to fulfill I-502's mandate to create "a tightly regulated, state-licensed system." Initiative 502, §1,

5  (intent section; uncodified note following RCW 69.50.101). The residency requirement protects

6  the Washington marijuana system's integrity, respects marijuana's illegality under federal law

7  and in other states, and safeguards Washington's ability to fully enforce its laws regulating

8  marijuana.

9       Todd Brinkmeyer (Petitioner), an Idaho resident, seeks to rewrite Washington's

10  marijuana law, to allow out of state citizens to apply for Washington marijuana licenses. This

11  Court should reject Mr. Brinkmeyer's request on multiple, independent grounds. First,

12  Mr. Brinkmeyer has failed to present a justiciable issue and lacks standing because his ownership

13  is based on speculation and is contingent in nature. Second, Washington's Constitution confers

14  no constitutional right for an Idaho resident to own a Washington marijuana retailer. Third,

15  Washington has a rational reason for its residency requirements. Finally, the Washington State

16  Liquor and Cannabis Board's (Board or LCB) rules are entirely harmonious with its statutory

17  authority. This Court should deny Petitioner's Motion for Summary Judgment and dismiss his

18  Petition for Declaratory Judgment.

19

## II.      RELIEF REQUESTED

20       The Board requests that this Court deny Petitioner's Motion for Summary Judgement

21  and grant judgment to the Board, dismissing the Petition for Declaratory Judgment.

22

## III.      EVIDENCE RELIED ON

23       Declaration of Rebecca Smith, Director of Licensing for the Washington State Liquor

24  and Cannabis Board.

25

26

RESPONSE TO SUMMARY JUDGMENT              2

## IV.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Background

In 2012, Washington voters approved I-502. Laws of 2013, ch. 3 (*codified in* part in chapter 69.50 RCW). I-502 established a regulatory system for the sale, production, and processing of limited amounts of marijuana for recreational use by adults. Washingtonians empowered the Board to enforce I-502 and to implement additional rules to meet the goal of creating a "tightly regulated, state-licensed system similar to that for controlling hard alcohol" Initiative 502, Laws of 2013, §1; (uncodified note following RCW 69.50.101); RCW 69.50.342; RCW 69.50.345.[1] Board rules are codified in chapter 314-55 WAC. Although the licensed sale of marijuana does not violate Washington law, it remains a criminal offense everywhere in the United States under federal law.[2]

### B.   Residency Requirement

Since I-502's passage, any individual holding an ownership or equity interest in a marijuana business must be a Washington resident.[3] No marijuana license of "any kind may be issued to:"

> (i) A person under the age of twenty-one years;
> (ii) A person doing business as a sole proprietor **who has not lawfully resided in the state for at least six months** prior to applying to receive a license;
> (iii) A partnership, employee cooperative, association, nonprofit corporation, or corporation unless formed under the laws of this state, **and unless all of the members thereof are qualified to obtain a license as provided in this section**; or . . .

---

[1] Contrary to Mr. Brinkmeyer's assertion at footnote 2, Washington's liquor laws contain a residency requirement. See RCW 66.24.010(2)(a) – (d) and WAC 314-07-020(10). Washington's liquor residency requirements require that sole proprietors, partnership members and those in control of the business must also meet the qualifications in RCW 66.24.010(2) to obtain a license. Unlike RCW 69.50.331, RCW 66.24.010 does not have residency requirement for corporation members.

[2] Pursuant to the Controlled Substances Act (CSA), Title 21 U.S.C., marijuana is considered a Schedule I drug under federal law. 21 USC § 812. Though marijuana is illegal in the United States pursuant to the CSA, some states have authorized the production, sale, and possession of marijuana in some circumstances, and are tasked with its regulation. *See* Declaration of Licensing Director Rebecca Smith (Smith Decl.) ¶ 5-6. There are also some states, including Idaho, where marijuana remains entirely illegal under state law. Smith Decl. ¶ 7, Ex. 11.

[3] Originally, the residency requirement was only three months. Smith Decl. ¶ 16. However, in 2015, the Legislature expanded it to six months. 2015 Wash. Laws, 2d Spec. Sess., ch. 4, § 301.

3  ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  RCW 69.50.331(1)(b) (emphasis added).

2  **C.    Mr. Atkison and Mr. Brinkmeyer**

3       Michael "Scott" Atkison, a Washington resident, has an ownership interest in five

4  separate Washington marijuana retailers. Smith Decl. ¶ 3, Exs. 1, 3, 5-6, 12. Mr. Atkison owns

5  four of the five licenses with Brian Jennings and Anthony Peschek. *Id*. Mr. Atkison,

6  Mr. Jennings, and Mr. Peschek very recently assumed a fifth marijuana retail license.

7  Atkison Declaration (Atkison Decl.) ¶ 2, Smith Decl. ¶ 3, Ex. 12.

8       Todd Brinkmeyer, an Idaho resident, provided loans to four of the five retailers in

9  accordance with Washington law. Smith Decl. ¶ 3, 13, Exs. 2, 4, 7, 13. Although Mr. Brinkmeyer

10  was vetted and approved as a financier previously, he would still need to be vetted and approved

11  again before he would qualify to be a licensee. Smith Decl. ¶ 3, 4, Ex. 13.

12              **V.       AUTHORITY AND ARGUMENT**

13  **A.    *Tennessee Wine* Is Not Applicable**

14       The *Tennessee Wine* case, cited by Petitioner, is not relevant because that decision is

15  based on the federal dormant commerce clause, an issue that is still pending in federal court, and

16  which is not before this Court. *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,

17  139 S.Ct. 2449, 204 L.ed.2d 801 (2019). *See* Petitioner's Motion for Summary Judgement at 7.

18  Further, *Tennessee Wine* does not provide any guidance on Washington's constitutional

19  provisions. Moreover, the Oklahoma Federal District Court that considered the applicability of

20  the dormant commerce clause to residency requirements in the marijuana industry, distinguished

21  *Tennessee Wine* because marijuana remains federally illegal while alcohol is federally legal. *See*

22  *Original Investments vs. Oklahoma,* CV-20-820-F (June 4, 2021), copy attached.

23  **B.    The Board is Entitled to Summary Judgment**

24       The parties agree that summary judgment is appropriate if "the pleadings, depositions,

25  answers to interrogatories, and admissions on file, together with any affidavits, if any show that

26

1   there is no genuine issue as to any material fact that the moving party is entitled to judgment as

2   a matter of law." CR 56(c). The parties also agree that there are no material facts at issue here.

3          Even in the absence of a motion, summary judgment can be granted in favor of the non-

4   moving party if the non-moving party is entitled to a judgment as a matter of law. *See*

5   *Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 365, 841 P.2d 752 (1992). As such, the Board

6   need not file a cross-motion in order for this Court to rule against Petitioner. This Court may

7   enter a judgment in favor of the Board and dismiss the Petition for Declaratory Judgement.

8          Here, the undisputed facts show that Petitioner cannot, as a matter of law, sustain its claims

9   against the Board related to Washington's Residency Requirements for two reasons. First, Petitioner

10  failed to meet the jurisdictional prerequisites to obtain relief, as he cannot demonstrate that this case

11  is justiciable and he lacks standing. Second, even if Petitioner had satisfied jurisdictional

12  requirements to maintain his claims, the undisputed facts demonstrate that the Petitioner is not

13  entitled to the protections of Washington's Constitution, has not established that a fundamental right

14  of state citizenship is implicated, and the residency requirement is supported by rationale reasons.

15  Third, the Board's rules do not exceed its statutory mandate. The Board is entitled to judgement as

16  a matter of law.

17  **C.     The Petitioner Failed to Present a Justiciable Controversy Under the Declaratory**
        **Judgments Act**
18

19         RCW 7.24.020 authorizes an action for declaratory judgment, providing that

20  "[a] person . . . whose rights, status or other legal relations are affected by a statute . . . may have

21  determined any question of . . . validity arising under the . . . statute." In order to seek a

22  declaratory judgment, a litigant must present a justiciable controversy. *Branson v. Port of Seattle*,

23  152 Wn.2d 862, 877, 101 P.3d 67 (2004). A justiciable controversy under the declaratory

24  judgments act requires:

25

26

RESPONSE TO SUMMARY JUDGMENT            5

(1) . . . [A]n actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001) (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). This action fails to satisfy at least two requirements for a declaratory judgment action.

### 1.     Petitioner fails to demonstrate an actual and existing dispute

Petitioner's claims fail to satisfy the first prong of the justiciability requirement because this case presents no "actual, present and existing dispute or the mature seeds of one." *To-Ro*, 144 Wn.2d at 411. Rather, the Petitioner's claims present a "possible, dormant, hypothetical [and] speculative" disagreement. The Petitioner's claim relies on the future transfer of several marijuana retail stores upon Mr. Atkison's death. Although Mr. Atkison has suffered previous health issues, the record fails to establish that Mr. Atkison's cancer has returned or is likely to return, or that Mr. Atkison's death is in any way eminent. Atkison Decl. ¶ 5. Therefore, all that exists is that Mr. Atkison will die at some future time. But that is true of all people, and is not sufficient to create an actual, present dispute.

Not only is the date of any future transfer speculative, whether the Petitioner actually receives any store ownership is also speculative. The record does not establish that there is an estate document transferring the stores to the Petitioner upon Mr. Atkison's death. At best, Mr. Atkison's declaration indicates that he would include, as part of his estate planning, a transfer of the stores to the Petitioner if the LCB would allow it. Atkison Decl. at ¶ 5. His declaration does not state that his now existing estate planning documents includes such a bequest. At the time that Mr. Atkison completes those documents, he may have well changed his mind and leave the stores to his spouse, his family or to another person. And even if those estate documents existed, Mr. Atkison retains the right to change his estate documents and the bequest

at any time prior to his death.[4] This makes any future claim too speculative to support the Petitioner's request for declaratory judgment.

The Petitioner's claim is further contingent upon him surviving Mr. Atkison, him not moving to Washington and Washington still having a Residency Requirement.[5] Whether one, two or all three of these contingencies occur is nothing more than pure speculation on the part of the Petitioner.

The Petitioner's claims thus fail to satisfy the first prong for presenting a justiciable controversy. It does not allege " 'an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement.' " *To-Ro Trade Shows*, 144 Wn.2d at 411. On the contrary, the Petitioner seeks to present a purely hypothetical question for the consideration of this Court.[6]

**2. Petitioner fails to raise a dispute involving interests that are direct and substantial, rather than potential, theoretical, abstract or academic**

Similarly, the Petitioner's interest in this matter are "potential, theoretical, [and] abstract," rather than "direct and substantial" as they must be to satisfy the third prong of the justiciability standard. *To-Ro Trade Shows*, 144 Wn.2d at 411. The Petitioner asks this Court to decide in the abstract whether some speculative and future transfer of the stores to him impairs his alleged Washington constitutional rights, without reference to an existing and actual dispute between himself and the Board.

Moreover, "[i]nherent in the justiciability determination is the traditional limiting doctrine of standing." *Branson*, 152 Wn.2d at 877, citing *To-Ro Trade Shows*, 144 Wn.2d at 411.

---

[4] There is no evidence that Mr. Atkison and Mr. Brinkmeyer entered into an enforceable contract to devise the stores' ownership and that would prevent Mr. Atkison from changing his estate documents at any time prior to his death.

[5] As indicated by Ms. Smith, should cannabis be legalized at a federal level, Washington's residency requirement would likely need to be reevaluated. Smith Decl. ¶ 17.

[6] Mr. Brinkmeyer argues that the businesses that he already owns a stake in would be harmed. There is no factual support for such an assertion. Indeed, both the declarations of Mr. Brinkmeyer and Mr. Atkison state otherwise. Nor is there any factual support for Mr. Brinkmeyer's claim that he is actively doing business in Washington.

7

1   The elements required for a justiciable controversy under the UJDA tend to overlap with the

2   traditional two-part "zone of interest" and "injury in fact" test for standing, including harm to

3   the party that is substantial, rather than speculative or abstract. *Grant Cnty. Fire Prot. Dist. 5 v.*

4   *City of Moses Lake* (*Grant County I*), 145 Wn.2d 702, 712-14, 42 P.3d 394 (2002), *vacated in*

5   *part on rehearing* 150 Wn.2d 791, 83 P.3d 419 (2004). Although justiciability and standing tests

6   overlap, standing requirements are not the same. *Five Corners Family Farmers v. State*,

7   173 Wn.2d 296, 302 n. 2, 268 P.3d 892 (2011).

8       "The kernel of the standing doctrine is that one who is not adversely affected by a statute

9   may not question its validity." *Grant Cnty. Fire Prot. Dist. 5 v. City of Moses Lake* (*Grant County*

10  *II*), 150 Wn.2d 791, 802, 83 P.3d 419, 423 (2004), quoting *Walker v. Munro*,

11  124 Wn.2d 402, 419, 879 P.2d 920 (1994). The Petitioner cannot show that he is currently

12  adversely affected by the residency requirements and has standing to challenge it. There is a two-

13  part test for standing under the declaratory judgments act. *Grant County II*, 150 Wn.2d at 802.

14  The party must be within the zone of interests to be protected or regulated by the statute in

15  question, and the party must have suffered an "injury in fact." *Id.* "To establish harm in a

16  declaratory judgment action, a party must present a justiciable controversy based on allegations

17  of harm personal to the party that are substantial rather than speculative or abstract." *Id.; accord,*

18  *Am. Legion Post #149 v. Washington State Dep't of Health*, 164 Wn.2d 570, 593-94,

19  192 P.3d 306 (2008).

20      The Petitioner fails to satisfy the injury in fact element of the standing test required to

21  present a justiciable controversy. Under the declaratory judgments act -- injury in fact, must be

22  substantial and personal to the litigant. *Am. Legion Post #149*, 164 Wn.2d at 593-94. An interest

23  is "substantial" if it is more than "a mere expectancy or future, contingent interest." 

24  *State ex rel. Hays v. Wilson*, 17 Wn.2d 670, 672, 137 P.2d 105 (1943) (quoting 30 Am. Jur. 860);

25  *in accord*, *To-Ro Trade Shows*, 144 Wn.2d at 411. As discussed above, any harm alleged is a

26  mere expectancy and contingent upon multiple future factors.

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**3.      This case should not be considered without a justiciable controversy**

It is anticipated that the Petitioner will argue that he has standing based on the asserted importance of the claim he seeks to raise. The Supreme Court considered and rejected such a contention in *Walker*, 124 Wn.2d at 414-18. In *Walker*, the petitioners asked the court to follow what petitioners termed "the well-established rule that this court will hear matters of great public importance without regard to justiciability," and consider their challenge to provisions of the initiative at issue in that case. *Id*. at 414. The court rejected the existence of such a rule: "[E]ven if we do not always adhere to all four requirements of the justiciability test, this court will not render judgment on a hypothetical or speculative controversy, where concrete harm has not been alleged." *Id*. at 415. "We choose instead to adhere to the long-standing rule that this court is not authorized under the declaratory judgments act to render advisory opinions or pronouncements upon abstract or speculative questions." *Id*. at 418. Petitioner similarly seeks an advisory opinion and pronouncement on abstract and speculative questions in this case.

Nor is this a case of the sort in which, on rare occasion, the court has determined it appropriate to exercise jurisdiction over a request for declaratory relief without regard to justiciability requirements. *Walker*, 124 Wn.2d at 417 ("[T]his court has, on the rare occasion, rendered an advisory opinion as a matter of comity for other branches of the government or the judiciary."). No branch of government is before the court seeking an advisory opinion on the validity of RCW 69.50.331, WAC 314-55-020 or WAC 314-55-035. Unlike the rare exceptions discussed in *Walker* (and instead, much like the situation presented in *Walker*) "[h]ere, not only is there no request by the Legislature itself that we adjudicate this case," but the State seeks its dismissal. *Walker*, 124 Wn.2d at 417; *Yakima Cnty. Fire Prot. Dist. 12 v. City of Yakima*, 122 Wn.2d 371, 380-81, 858 P.2d 245 (1993) (noting that this Court has applied liberalized standing only in cases in which doing so was the only way that important public issues could

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

evade review.[7]   The undisputed facts demonstrate that Petitioner cannot establish either a justiciable controversy under the UDJA or standing as a matter of law, and the Board is entitled to judgment.

**D.     There is No Violation of Washington's Privilege and Immunities Clause**

Article 1 §12 of the Washington Constitution, the Privileges and Immunities Clause, provides "No law shall be passed granting to any citizen, class of citizen or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." Courts use a two-step process to determine if a law violates the Washington State's Privilege and Immunities Clause. *Id*. The first step is to determine whether the law in question is a privilege or immunity and the second step is to determine whether there is a "reasonable ground" for granting the privilege or immunity. *Id*. Those challenging a statute must prove unconstitutionality beyond a reasonable doubt and courts are to presume the statue is constitutional. *Sch. Dists.' Alliance for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 605, 244 P.3d 1 (2010).

Petitioner's claim under the Privileges and Immunities clause fails for two reasons. First, because the Petitioner, who is not a Washington citizen, is not entitled to protections of Washington's Privilege and Immunities Clause because those privileges are reserved for Washington State Citizens. Second, even if Washington's cannabis residency requirement involved a privilege or immunity, it would not violate Washington's Privileges and Immunities Clause because RCW 69.50.331(1)(b), and the Legislature had a reasonable ground for granting the privilege.

/ / /

/ / /

/ / /

---

[7] The Court in *League of Educ. Of Voters v. State*, 176 Wn.2d 808, 295 P.3d 743 (2013) seems to indicate that the court may hear a case under UDJA even it presented a matter of public importance. *League of Educ. Of Voters* at 808.  However, the Court still requires a case to be justiciable, and it is not here. *Id*.

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**1.    Washington's privilege and immunities clause protections are reserved for Washington State citizens**

As is recognized in the United States Constitution's Fourteenth Amendment, a person may be a citizen of the United States and a citizen of the State in which they reside. See also, *Colgate v. Harvey*, 296 U.S. 404, 429, 56 S. Ct. 252, 80 L. Ed. 299 (1935) ("The governments of the United States and of each state of the several states are distinct from one another. The rights of a citizen under one may be quite different from those which he has under the other"). While the Fourteenth Amendment concerns itself with protecting the privileges and immunities of U.S. citizens, Washington's Constitution instead focuses on Washington State citizens. *Martinez-Cuevas v. Deruyter Bros Dairy, Inc.,* 196 Wn.2d 506, 519, 475 P.3d 164 (2020) quoting *Slaughter Houses Cases v. Louisiana*, 83 U.S. 36, 74-76, 21 L.Ed. 394 (1872). ("Justice Miller then addressed the privileges or immunities clause in dicta, concluding that national rights were protected under the privileges or immunities clause of the Fourteenth Amendment, while state rights were covered by the privileges and immunities clause of article IV.") *See*, *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake* (*Grant County II*), 150 Wn.2d 791, 813, 83 P.3d 419 (2004) ("In this regard it must be remembered that not every statute authorizing a particular class to do or obtain something involves a 'privilege' subject to article I, section 12. Instead, as this court made quite clear early in this State's history, the terms "privileges and immunities" pertain alone to those fundamental rights which belong to the citizens of the state by reason of such citizenship."); *Martinez-Cuevas v. Deruyter Bros Dairy, Inc.,* 196 Wn.2d 506, 519, 475 P.3d 164 (2020) ("Benefits triggering this analysis are only those implicating fundamental rights of state citizenship").

Petitioner's misplaced reliance on *Ralph v. City of Wenatchee*, 34 Wn.2d 638, 640-41, 209 P.2d 270 (1949), is instructive here. In *Ralph*, a Wenatchee city ordinance prohibited non-residents of Wenatchee from engaging in the business of photography without paying for a license to do so. *Id.* at 639-40. It was challenged by a photographer who lived and worked in

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    Washington. *Id.* at 640. Because the ordinance discriminated between different classes of

2    Washingtonians, without a reasonable basis, the court determined it violated the Washington's

3    Privileges and Immunities Clause *Id.* at 643-44. *Ralph* does not stand for the proposition that

4    non-Washingtonians are protected by Washington's constitution.

5         Petitioner also attempts to rely on *State v. Osman*, 157 Wn.2d 474, 483, 139 P.3d 334

6    (2006), to support his claim. See Petitioner's Motion for Summary Judgment at 10. Again, this

7    case does not stand for the proposition that a non-Washington Resident is protected. *Osman*

8    concerned the sentencing of a sex offender who was not a U.S. citizen. *Osman*, 157 Wn.2d at

9    480-83. In its decision, the Court did not consider or discuss, whether Osman was a Washington

10   state citizen. And as noted by the Petitioner, the case in fact involves no discussion of any factual

11   basis on which to determine Osman's *state* citizenship as opposed to his *national* citizenship.

12   Without such information, the case does not support Petitioner's claim.

13        The fact remains that Mr. Brinkmeyer is not a Washington citizen and is not protected

14   under Washington's Privilege and Immunities Clause.[8] Petitioner has identified no precedent

15   holding that a non-Washington resident can avail himself of the protections of Washington's

16   Constitution.

17        **2.     Even if Mr. Brinkmeyer could invoke the rights of a Washington citizen, the**
          **residency requirement does not violate the privileges and immunities clause**
18

19        As explained above, Mr. Brinkmeyer is not a Washington resident, he is not present in

20   Washington, and he cannot invoke the rights of Washington citizenship, because he is a citizen

21   of Idaho. But, even if he could rely on the protections provided by *Washington's* privileges and

22   immunities clause, Mr. Brinkmeyer's claim would fail, as Washington's residency requirement

23   meets constitutional muster.

24   _____

25        [8] Petitioner argues that the State could abuse participants in Washington's economy simply because they
     reside elsewhere. Petitioner's Motion for Summary Judgment at 9. He is wrong. The U.S. Privileges and Immunities
     Clause under the Fourteenth amendment is still applicable and the issue of whether RCW 69.50.331 violates that
26   United States Constitution is still pending in federal court and is not before this Court.

RESPONSE TO SUMMARY JUDGMENT              12          ATTORNEY GENERAL OF WASHINGTON
                                                              1125 Washington Street SE
                                                                   PO Box 40100
                                                              Olympia, WA 98504-0100
                                                                  (360) 664-9006

a.       **No fundamental right of State Citizenship is implicated**

The first step to determine if there is a violation of Art. I, § 12, is to determine if its application confers a privilege on a class of Washington State citizens.[9] *Grant County II*, 150 Wn. 2d at 812. Like alcohol, a marijuana license does not involve a fundamental right of state citizenship. *Association of Washington Spirits and Wine Distributors v. Washington State Liquor and Cannabis Board*, 182 Wn.2d 342, 340 P.3d 849 (2015); *Haines-Marchel v. Washington State Liquor and Cannabis Board*, 1 Wn. App. 2d 712, 743, 406 P.3d 1199 (2017).

Petitioner argues that Washington's residency requirement infringes on his "right to carry on business therein." Petitioner's Motion for Summary Judgment at 8. Washington Courts, however, have rejected similar attempts to align a narrower privilege, such as the sale of alcohol, with that of the broader privilege of the right to carry on business. *Association of Washington Spirits and Wine Distributors*, 182 Wn.2d at 361. Similarly, this Court should reject the Petitioner's attempt to broadly characterize "business" and should focus on the narrower privilege of sale of marijuana.

In considering whether the sale of alcohol violated a privilege under Art. 1 § 12, the Washington Supreme Court has already held that the ability to sell alcohol does not implicate a "privilege" under Art. 1, § 12. *Ass'n of WA Spirits and Wine Distributors* at 362. In reaching its decision, the Court noted that there is a distinction between privileges and rights granted only at the discretion of the legislature. *Id*. The Washington Supreme Court has long held that "[t]here is no natural or constitutional right to sell or engage in the business of selling or dispensing intoxicating liquor." *Randles v. Liquor Control Bd.*, 33 Wn.2d 688, 694, 206 P.2d 1209 (1949). A license to sell liquor "does not become a vested property right . . . rather, [it is] a temporary permit, in the nature of a privilege, to engage in a business that would

---

[9] The Washington Supreme Court uses the terms "privilege" and "immunity" interchangeably. *Ockletree v. Franciscan Health Sys.*, 179 Wn.2d 769, 777 n.6, 317 P.3d 1009 (2014).

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    otherwise be unlawful." *Jow Sin Quan v. Liquor Control Bd.*, 69 Wn.2d 373, 382,

2    418 P.2d 424 (1966). In other words, when considering claims of disparate treatment of

3    businesses, "the distinction between a lawful business which a citizen has the right to engage in

4    and one in which he may engage only as a matter of grace of the state" must be considered.

5    *Randles*, 33 Wn.2d at 694. Likewise, Division I has also indicated that right to sell marijuana is

6    not a lawful right but may only be engaged within the state's discretion. *Haines-Marchel* at 743.

7    If liquor businesses do not implicate privileges and immunities, certainly the federally illegal

8    business of producing and selling marijuana does not include a fundamental right.[10] The people

9    and State of Washington can regulate the production and sale of marijuana – to the point of

10   prohibiting it entirely. *Cf. Grant Cy. II*, 150 Wn.2d at 813 There is no fundamental right to

11   engage in marijuana sale or production. As Petitioner cannot meet the first step, this Court should

12   dismiss his challenge.

          **b.**     **There are reasonable grounds to support the Residency Requirement**

14   Even if the rule involved a fundamental right of state citizenship—and it does not—the

15   Court still must uphold the requirement if there is a "reasonable ground" to support it.

16   *Ockletree v. Franciscan Health Sys.*, 179 Wn.2d 769, 776, 317 P.3d 1009 (2014) "The test is

17   merely whether any state of facts can reasonably be conceived that would sustain the

18   classification." *United Parcel Service v. Dep't of Revenue*, 102 Wn.2d 355, 369, 687 P.2d 186

19   (1984). The party challenging bears the burden of showing there was no reasonable basis for the

20   questioned classification. *United Parcel Service* 102 Wn.2d 335 at 369.

21   Board Licensing Director Rebecca Smith has been a leader in implementing I-502,

22   including the residency requirement, to implement Washington's regulated marijuana industry.

---

24   [10] Petitioners assert, without reasoning, that the Board is estopped from noting that marijuana is illegal under federal law. Petitioner's Motion for Summary Judgment at 11-12. But that is a simple factual statement, as is

25   marijuana's illegality in Idaho. And marijuana's federally illegal status necessarily implicates the scope of Washington's marijuana market, concerns about federal enforcement and interstate commerce, and whether there

26   is a fundamental right to sell marijuana.

1    Smith Decl. ¶ 1. Director Smith has identified several reasons for the residency requirement in

2    her declaration. Chief among those reasons are listed below.[11]

3         Petitioner argues that Ms. Smith's declaration is not relevant because it does not discuss

4    those reasons annunciated by the Legislature and because Ms. Smith may not speak on behalf of

5    the legislature. Petitioner's Motion for Summary Judgment at 13-14. Petitioner is wrong on both

6    accounts. First, as indicated in Ms. Smith's declaration, paragraph 2, her discussion relates to a

7    tightly regulate market which was one of the stated intents of I-502. I-502 Section 1. Second,

8    Ms. Smith is not speaking for the legislature, but provides her expertise on what is necessary to

9    make a tightly regulate market. Certainly, a declaration of the sole licensing authority in

10   Washington's strictly regulated marijuana industry may be considered.

11        First, Washington's residency requirement is a key component in assisting the state to

12   have a strong and effective regulatory system and to stay within the Cole memorandum guidance

13   by allowing the state to hold licensees responsible both through its regulatory process, and, if

14   necessary, through criminal prosecutions. Without a residency requirement, Board Enforcement

15   Officers may be unable to complete investigations of out of state licensees because they have no

16   jurisdiction out of state, and it may be difficult to criminally prosecute someone outside

17   Washington's jurisdiction. Petitioner suggests that appointing an agent within the state will cure

18   this problem but fails to explain how. An agent would likely have no firsthand knowledge about

19   the licensed business and would be unable to answer questions. Nor if the matter became a

20   criminal one, could an agent be arrested and charged in lieu of the owner. As is noted, federal

21   illegality causes unique challenges that are not present in the regulation of liquor, including out

22   of state diversion.

23        Second, requiring Washington residency ensures that a sufficient investigation prior to

24   licensing can occur. Smith Decl. ¶ 7-8. The Board investigates all applicants, including checking

25

26        [11] Some additional reasons and a more detailed discussion are in Ms. Smith's declaration and are not
     repeated here. Smith Decl.

1   local databases, which include misdemeanors that a federal background check would not pick

2   up. Smith Decl. ¶ 7-8. Washington State Patrol's background check system only provides access

3   to Washington criminal histories.[12] It would impede the Board's ability to contact local

4   authorities and discover needed information regarding an applicant. Smith Decl. ¶ 8. Knowing

5   the character of a future marijuana owner is essential to know whether or not to license them.

6   Smith Decl. ¶ 7-8. Brinkmeyer suggests that the Board should simply rely on an applicant to

7   provide the information during the licensing process. This same rationale could apply equally to

8   any criminal record or any other information investigated by the Board; however, the state has

9   rejected this idea and, instead of relying on applicants, requires a robust criminal background

10  check     investigation     on     each     applicant.     See     RCW     69.50.331(1)(a);

11  WACs 314-55-020, -040, -045.

12       Third, Washington's residency requirement is an integral part of Washington's tiered

13  marijuana system and helps to prevent industry control by a few large businesses.

14  Smith Decl. ¶ 11-12. Without it, Washington may unknowing allow a producer/processor from

15  another state to become a retailer in Washington or allow a person who already controls more

16  than five marijuana licenses to obtain a Washington license. *Id*. As many states also require a

17  residency requirement for owners, this will continue to prevent industry control by a few large

18  businesses.

19       Finally, Washington's residency requirement respects other states that have chosen not

20  to legalize marijuana, as well as the federal prohibition on marijuana and interstate activity

21  involving marijuana. Smith Decl. ¶ 19-20.

22

23

24

25       [12] For instance, Mr. Brinkmeyer was one of several people found to have engaged in a "conspiracy" to
    commit an unlawful act in a civil matter in Idaho. *See* Smith Decl. ¶ 4, Ex 13. There is no indication whether any

26  criminal charges stemmed from this action, but because Mr. Brinkmeyer is an Idaho resident, LCB cannot fully
    review Brinkmeyer's criminal history.

1   The Board has demonstrated a reasonable ground and more for limiting ownership of

2   Washington marijuana business. Petitioner cannot meet his heavy burden of showing that the

3   challenged rule violates Art. I, section 12, of the Washington Constitution.

4   **E.   The Board's Regulations Do Not Exceed Its Authority**

5   WACs 314-55-020 and 314-55-035 are not in conflict with RCW 69.50.331(1)(b). All

6   seek to ensure that all marijuana license applicants meet the criteria set out by the Legislature.

7   **1.   Petitioner lacks standing to challenge WAC 314-55-020 and
          WAC 314-55-035**

8

9   WACs 314-55-020 and 314-55-035 are not in conflict with RCW 69.50.331(1)(b). All

10  seek to ensure that all marijuana license applicants meet the criteria set out by the Legislature.

11  Like standing under the UDJA, a person must demonstrate that they have suffered an

12  "injury in fact" and were aggrieved or adversely impacted by an administrative rule in order to

13  challenge it. RCW 34.05.530, *Allan v. Univ. of Wash*., 140 Wn.2d 323, 327, 997 P.2d 360 (2000).

14  In addition to the speculative nature of the alleged harm argued above, it is also mere

15  speculation that, if and when any transfer occurs, it would be done through the transfer of

16  corporate shares instead of some other form of equity transfer. Over time, the nature of the stores'

17  ownership may change, and a corporation may not be involved at the time any transfer occurred.

18  For example, Mr. Atkison directly owns 50% of 2215 Retail, LLC and no corporation is

19  involved. Smith Decl. ¶ 3. As Petitioner argues only that corporate stockholders are not included

20  in the Residency Requirement in RCW 66.50.331, it is mere speculation that he would be

21  impacted by WAC 314-55-020. Without the ability to demonstrate an injury in fact, Petitioner

22  lacks standing and his claim should be dismissed.

23  **2.   WAC 314-55-020 does not conflict with RCW 69.50.331**

24  The fundamental purpose in interpreting a statute is to give effect to the Legislature's

25  intent. *State v. Larson*, 184 Wn.2d 843, 848, 365 P.3d 740 (2015). If the statute's meaning is

26  plain on its face, then the court must give effect to that plain meaning as an expression of the

1   Legislature's intent. *Id*. Plain meaning is discerned from the ordinary meaning of the language

2   at issue, the context of the statute in which that provision is found, related provisions, and the

3   statutory scheme as a whole. *Id; Dep't of Ecology v. Campbell & Gwinn*, 146 Wn.2d 1, 12,

4   43 P.3d 4 (2002).

5       Under the plain meaning of RCW 69.50.331, both limited liability companies (LLC) and

6   corporate stockholders are included within its purview. Section 1(b) of RCW 69.50.331 sets out

7   the criteria under which a marijuana license cannot be issued. That section prohibits issuing a

8   license to a person under the age of 21 and who has not lawfully resided in Washington for at

9   least six months. RCW 69.50.331(1)(b). The statute makes clear that these prohibitions apply to

10  everyone – sole proprietors, members of businesses and anyone who manages or controls a

11  licensed business.

12      Although LLCs were not specifically identified, the statute includes this type of business

13  by using the generic term "partnerships," similar to the way the term is used in the title of

14  Title 25 RCW – Partnerships. Included within Title 25 are chapters for partnerships (Chptr. 25.05

15  RCW), limited partnerships (Chptrs. 25.20 and 25.12 RCW) and limited liability companies

16  (Chptr. 25.15). In this same way, the term "members" was also used generically to refer to the

17  equity ownership in the diverse types of businesses already listed in the provision. To hold

18  otherwise, would allow persons under the age of 21 to hold a marijuana license – something that

19  the initiative and legislature did not intend.

20      Such a reading of the definition of members to include stockholders is also in accord with

21  the plain dictionary definition of a corporate member: "an actual or voting member of a

22  corporation as distinct from an associate or honorary member." Merriam-Webster.com,

23  https://www.merriam-webster.com/dictionary/corporate%20member (last visited Jan. 2, 2021).

24  There is no difference between a shareholder and a corporate member as each is a member of

25  the corporation.

26

Courts have also referred to shareholders as members. *See, Hay v. Big Bend Land Co.,* 32 Wn.2d 887, 901, 204 P. 2d 488 (1949) ("[i]n such matters the members of a corporation, as to authority lodged with them, and the board of directors in the field where that is the governing body, are supreme within the limits of honest administration and of the boundaries of discretion"); *Elliot v. Puget Sound Wood Products Co.,* 52 Wash. 637, 642, 101 P. 228 (1909) ("the legal relations into which the members of a corporation enter require them to seek redress of supposed wrongs done them as stockholders from its officers"); *Clise Inv. Co. v. Washington Sav. Bank,* 18 Wash. 8, 12, 50 P. 575 (1897) ("[t]he members of a corporation may be compelled to contribute their respective shares of the capital stock by an action at law brought in the name of the corporation"); *Denny Hotel Co. v. Schram,* 6 Wash. 134, 135, 32 P. 1002 (1893) ("[i]t is a general principle that the members of a corporation cannot be required to pay assessments upon their shares until the company is authorized by law to begin the prosecution of its enterprise.") The parenthetical explanations following the *Clise* and *Denny Hotel* citations are quotes from an 1886 treatise. The treatise states, "The members of a corporation formed for pecuniary profit are ordinarily called shareholders, or stockholders . . . ." 1 Victor Morawetz, A Treatise on the Law of Private Corporations § 43 (2nd ed. 1886).

Furthermore, the Board defined the term "member" to mean:

> a principal or governing person of a given entity, including but not limited to: LLC member/manager, president, vice president, secretary, treasurer, CEO, director, **stockholder**, partner, general partner, limited partner. This includes all spouses of all principals or governing persons named in this definition and referenced in WAC 314-55-035 (emphasis added).

And as the agency charged with administration and enforcement of Washington's marijuana program, its interpretation should be accorded great weight in determining legislative intent. *City of Seattle v. State Dep't of Labor & Indus.*, 136 Wn.2d 693, 704, 965 P.2d 619 (1998). The Board's definition is reasonable and avoids any alleged conflict and should be upheld. *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 892, 83 P.3d 999 (2004).

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    The Petitioners' reliance on RCW 69.50.565(7)(f) is misplaced. Petitioner's Motion for

2  Summary Judgment at 18. RCW 69.50.565 is directed only at limited liability businesses, a term

3  not used elsewhere necessitating a definition. RCW 69.50.331, on the other hand, uses language

4  that is more generic because it includes all types of business. These two statutes are harmonious.

5    There is no conflict between RCW 69.50.331 and WAC 314-55-020 and

6  WAC 314-55-035. They are part and parcel of a single, consistent regulatory scheme. All seek

7  to ensure that all marijuana license applicants meet the licensing criteria set out by the

8  Legislature.

9                                   **VI.    CONCLUSION**

10   Any claim of ownership Petitioner may have is dependent on a number of contingent

11  events that may or may not occur. This speculation is insufficient to make this matter justiciable

12  or to give Petitioner standing. Even if this matter may be heard, Petitioner cannot meet its heavy

13  burden and establish that RCW 69.50.331 violates Washington's Privilege and Immunities

14  Clause or is in conflict with WAC 314-55-020 and WAC 314-55-035.

15   DATED this 21st day of June, 2021

16

17                                   ROBERT W. FERGUSON
                                     Attorney General

18

19

20

21                                   _____
                                     PENNY ALLEN, WSBA No. 18821
22                                   JOSHUA ORF-RODRIGUEZ, WSBA No. 50101
                                     Assistant Attorneys General
23                                   Attorneys for Respondent
                                     1125 Washington Street SE, PO Box 40110
24                                   Olympia, WA 98504-0110
                                     Phone: (360) 753-2702
25                                   Email: Joshua.Orf-Rodriguez@atg.wa.gov

26

1

## **PROOF OF SERVICE**

2

    I certify that I served a true and correct copy of this **Response to Preliminary Injunction**

3

on all parties or their counsel of record on the date below as follows:

4

DANIEL J. OATES

5

ANDY MURPHY
MILLER NASH GRAHAM & DUNN, LLP
PIER 70 ~ 2801 ALASKAN WAY STE 300

6

SEATTLE, WA 98121

☐  U.S. Mail via state Consolidated
Mail Service (with proper postage
affixed)

☐ Courtesy copy via facsimile

7

☒ Courtesy copy via electronic mail
Daniel.Oates@millernash.com

8

Andy.Murphy@millernash.com
Jennifer.Schnarr@millernash.com

9

Brie.Geffre@millernash.com
Cara.Lowrance@millernash.com

10

☐ ABC/Legal Messenger

11

    I declare under penalty of perjury under the laws of the state of Washington that the

12

foregoing is true and correct.

13

    DATED this 21 day of June, 2021 at Olympia, Washington.

14

15

_____
HEATHER WULF,

16

Legal Assistant

17

18

19

20

21

22

23

24

25

26

RESPONSE TO SUMMARY JUDGMENT       21

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ORIGINAL INVESTMENTS, LLC, d/b/a DANK'S WONDER EMPORIUM, a Washington limited liability company,<br><br>Plaintiff,<br><br>-vs-<br><br>THE STATE OF OKLAHOMA, THE OKLAHOMA STATE DEPARTMENT OF HEALTH, COLONEL LANCE FRYE, M.D., COMMISSIONER OF THE OKLAHOMA STATE DEPARTMENT OF HEALTH, THE OKLAHOMA MEDICAL MARIJUANA AUTHORITY, and DR. KELLY WILLIAMS, PhD, DIRECTOR OF THE OKLAHOMA MEDICAL MARIJUANA AUTHORITY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CIV-20-820-F |

## <u>ORDER</u>

Selling marijuana is a criminal offense, punishable by imprisonment, *everywhere* in the United States.  The dispositive question in the matter now before the court is whether the court should facilitate the plainly criminal activity in which plaintiff proposes to engage in the State of Oklahoma.  The court declines to do so.

I.

Introduction

Plaintiff Original Investments, LLC, d/b/a Dank's Wonder Emporium, commenced this action, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, seeking declaratory and injunctive relief from the enforcement of section 427.14(E)(7) of the Oklahoma Medical Marijuana and Patient Protection Act, 63 O.S. § 427.1, *et seq.*, and implementing rules.  In its amended complaint, plaintiff asserts that the statute violates the dormant Commerce Clause of the United States Constitution because they discriminate against non-residents of Oklahoma.[1]  Specifically, plaintiff challenges section 427.14(E)(7) because it prohibits non-residents of Oklahoma from receiving Oklahoma medical marijuana business licenses and from owning more than 25 percent of any Oklahoma entity that has an Oklahoma medical marijuana business license.

Plaintiff alleges–and the court has absolutely no reason to doubt–that "[t]here is a vibrant marijuana industry" in the United States and in the State of Oklahoma. Amended Complaint, doc. no. 28, at 5.  Plaintiff, by its account, desires to "profit from Oklahoma's lucrative marijuana market." *Id.* at 8.  In pursuit of that objective, plaintiff desires to apply for an Oklahoma medical marijuana business license and to be the majority owner of an entity that has an Oklahoma medical marijuana business license.  To borrow Justice (then Judge) Gorsuch's phrase from a case involving distribution of marijuana in Colorado, plaintiff in the case at bar aspires, with the aid of this court, to "run [its] business with the blessing of state authorities but in defiance of federal criminal law." Feinberg v. Comm'r, 808 F.3d 813, 814 (10th Cir. 2015).  Plaintiff seeks a judgment declaring that section 427.14(E)(7) and

---

[1] Plaintiff is a Washington limited liability company with its principal place of business in Olympia, Washington.  Plaintiff is wholly owned by residents of Washington State, and all of its officers are residents of Washington State.

the implementing rules violate the United States Constitution and enjoining the enforcement of that section.

In its complaint, plaintiff named as defendants the State of Oklahoma, the Oklahoma State Department of Health, Colonel Lance Frye, M.D., Interim Commissioner of the Oklahoma State Department of Health, the Oklahoma Medical Marijuana Authority and Dr. Kelly Williams, Ph.D., Interim Director of the Oklahoma Medical Marijuana Authority.  After the pleadings closed, the parties filed motions for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P.  The court dismissed plaintiff's complaint without prejudice as to all defendants based upon Eleventh Amendment immunity.  However, because it appeared that plaintiff might be able to amend its pleading to assert its claims against one or both of the state officials in their official capacities under the Supreme Court's ruling in Ex parte Young, 209 U.S. 123 (1908), the court allowed plaintiff to file an amended complaint.

Plaintiff filed an amended complaint against both named state officials in their official capacities.[2]  The amended complaint requests the court to enter a judgment declaring section 427.14(E)(7) unconstitutional under the United States Constitution and enjoining Dr. Williams and Dr. Frye, acting in their official capacities, from enforcing section 427.14(E)(7).  In response to the amended complaint, defendants have moved to dismiss the pleading, under Rule 12(b)(6), Fed. R. Civ. P., presenting two reasons for dismissal: (1) the Commerce Clause does not implicitly protect an

---

[2] In the body of the Amended Complaint, plaintiff recognizes that Dr. Williams is now Director of the Oklahoma Medical Marijuana Authority and identifies Dr. Williams as such.  Dr. Frye is identified as Interim Commissioner of the Oklahoma State Department of Health.  However, subsequent to the filing of the amended complaint, the Oklahoma Senate confirmed him as Health Commissioner.  *See*, https://oklahoma.gov/health/organization/commissioner-of-health.html (last accessed June 1, 2021).  The caption of this action has been amended to reflect the correct official capacities.

interstate market for marijuana because Congress has expressly criminalized distribution of marijuana under the Controlled Substances Act (CSA), 21 U.S.C. § 801, *et seq.*, and (2) the court should not use its equitable powers to support, aid, or encourage illegal conduct.  Plaintiff has responded to the motion, opposing dismissal of its complaint.  Defendants have filed a reply brief.  Having reviewed the parties' submissions, the court concurs with defendants' second reason for dismissal and finds that dismissal of plaintiff's complaint under Rule 12(b)(6) is appropriate.

II.
The Rule 12(b)(6) Standard

In reviewing a motion to dismiss under Rule 12(b)(6), the court accepts the well-pleaded allegations of the amended complaint as true and construes them in a light most favorable to the plaintiff.  Doe v. City of Albuquerque, 667 F.3d 1111, 1118 (10th Cir. 2012).  To withstand a motion to dismiss, the amended complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Id*.  An affirmative defense, such as illegality, may be adjudicated on a motion to dismiss if the defense appears plainly on the face of the complaint.  Fourth Corner Credit Union v. Federal Reserve Bank of Kansas City, 861 F.3d 1052, 1058 (10th Cir. 2017) ("'If the defense appears plainly on the face of the complaint itself, the motion may be disposed of under [Rule 12(b)(6).]'") (quoting Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)); *see also*, Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2020) (assertion of illegality may be considered on a motion to dismiss under Rule 12(b)(6)).

III.
Defendants' Illegality Argument is Dispositive

Oklahoma has authorized the sale and use of marijuana for medicinal purposes.  Medical marijuana business licenses have been issued to applicants

4

meeting the Oklahoma residency requirements, permitting the growing, processing, dispensing, transporting, and testing of medical marijuana. *See*, 63 O.S. § 427.14(A) (enumerating the categories for which a medical marijuana business license is created). However, under federal law, specifically, the CSA, marijuana is classified as a Schedule I controlled substance, and with one exception not applicable here, it is a crime to produce or distribute marijuana. <u>Gonzales v. Raich</u>, 545 U.S. 1, 14 (2005). "The CSA designates marijuana as contraband for *any* purpose" and "by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses." *Id*. at 27 (emphasis in original).[3] It is also a federal crime to aid, abet or counsel the production or distribution of marijuana. 18 U.S.C. § 2; <u>United States v. Leos-Quijada</u>, 107 F.3d 786, 794 (10th Cir. 1997).

Plaintiff seeks declaratory and injunctive relief to prohibit the enforcement of the residency requirements in section 427.14(E)(7) so it can obtain an Oklahoma medical marijuana business license to pursue economic opportunities in Oklahoma's medical marijuana market. As stated, defendants argue that the court should not use its equitable power to facilitate conduct that is illegal under federal law. The court agrees.

There is no dispute that the relief plaintiff seeks against the defendant state officials is equitable. It is well-settled, however, that "a court won't use its equitable power to facilitate illegal conduct." <u>Fourth Corner</u>, 861 F.3d at 1054 (citing cases). Plaintiff invokes the court's equitable powers to facilitate activity that is illegal under federal law. Absent the relief plaintiff seeks from this court, plaintiff cannot obtain a medical marijuana business license. And without that license, plaintiff is unable,

---

[3] It is worth noting that, in <u>Gonzales</u>, the Court squarely upheld the CSA when pitted against state marijuana legislation even on what it called "the troubling facts" of that case, 545 U.S. at 9, facts which, at least from a humanitarian standpoint, were assuredly more compelling than the facts of the case at bar.

on its own,[4] to grow, process, dispense, transport, or test medical marijuana in Oklahoma.

In response, plaintiff argues that the illegality defense overlooks Oklahoma's own "wrongdoing" in licensing 2,221 marijuana dispensaries to date and in discriminating against non-residents in violation of the United States Constitution in granting licenses.  Plaintiff points out that in Johnson v. Yellow Cab Transit Co., 321 U.S. 383 (1944), the Supreme Court, in discussing the unclean hands doctrine, found that the doctrine "is not a rigid formula which trammels the free and just exercise of discretion." *Id*. at 387 (internal quotation omitted).  The Court explained that while "a federal court should not, in an ordinary case, lend its judicial power to a plaintiff who seeks to invoke that power for the purposes of consummating a transaction in clear violation of law," the court need not "always permit a defendant wrongdoer to retain the profits of [its] wrongdoing merely because the plaintiff [itself] is possibly guilty of transgressing the law in the transactions involved." *Id*. Plaintiff asserts that if it is engaged in any wrongdoing by owning 25 percent of several marijuana stores, Oklahoma is engaged in wrongdoing on a much larger scale, by licensing 2,221 dispensaries to sell medical marijuana and in doing so, discriminating against non-residents.  Plaintiff urges the court not to apply the illegality defense for Oklahoma's benefit, since it has created, and is now profiting from, an $800 million medical marijuana market which discriminates against non-residents of the state.

The court notes that the illegality defense raised by defendants is not based upon plaintiff's 25 percent ownership of medical marijuana dispensaries.  Rather, it is based upon plaintiff's pursuit of a decree from a federal court in order to obtain a

---

[4] Plaintiff alleges that it owns 25 percent of multiple licensed medical marijuana dispensaries in Oklahoma.

medical marijuana business license solely owned by it.  The court concludes that the Supreme Court's guidance in <u>Johnson</u> with respect to permitting "a defendant wrongdoer to retain the profits of [its] wrongdoing merely because the plaintiff [itself] is possibly guilty of transgressing the law in the transactions involved," 321 U.S. at 387, is not relevant here.  Denial of equitable relief will not permit Oklahoma to retain any profits of its alleged "wrongdoing" at plaintiff's expense.  Oklahoma will not be profiting by any alleged "wrongdoing."  Indeed, Oklahoma would benefit more by way of receipt of tax revenues if plaintiff and other nonresidents were able to obtain a medical marijuana business license.  The factual circumstances present in <u>Johnson</u> are not present in the case at bar.[5, 6]

Even assuming that the framework for the court's evaluation is "the [court's] free and just exercise of discretion," <u>Johnson</u> at 387, the court concludes that the circumstances confronting the court in this case warrant the denial of equitable relief. Plaintiff seeks equitable relief so that it may obtain a medical marijuana business license or own the majority of a company holding such a license.  It seeks that relief in order to engage in activities that Congress has expressly declared to be criminal

---

[5] Nor are the factual circumstances in this case similar to those in <u>Northbay Wellness Group, Inc. v. Beyries</u>, 789 F.3d 956 (9th Cir. 2015), cited by plaintiff, where the Ninth Circuit reversed application of the unclean hands doctrine that absolved an attorney who stole $25,000 from his client, a medical marijuana dispensary, from nondischargeability of the debt, finding that while both the attorney and client shared responsibility for the illegal marijuana sales which generated the $25,000, the attorney's wrongdoing (stealing the money) outweighed the client's wrongdoing and that absolving of the attorney would be contrary to the public interest in holding attorneys to high ethical standards.  As discussed in this order, plaintiff has not identified "wrongdoing" by Oklahoma that tips the scale against application of the illegality defense.  Moreover, in the court's view, plaintiff has not identified a public interest that would be frustrated by application of the illegality defense.

[6] The court notes that in <u>Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.</u>, 324 U.S. 806, 814 (1945), the Supreme Court also stated that "[H]e who comes into equity must come with clean hands . . . It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, *however improper may have been the behavior of defendant*."  (emphasis added).

under federal law.  The Supreme Court has instructed that "a court sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation." United States v. Oakland Cannabis Buyers' Co-op, 532 U.S. 483, 497 (2001) (internal quotation omitted).  While Oklahoma has authorized the use of marijuana for medicinal purposes but does not allow non-residents to have a license or own the majority of an entity that does, the court concludes that that activity (assuming without deciding that the latter constitutes "wrongdoing") does not tip the scale in favor of granting equitable relief in aid of plaintiff's proposed continuing course of activity criminalized under the express provisions of the CSA.  Granting plaintiff the equitable relief it seeks here would facilitate criminal activity more (by allowing non-residents to have medical marijuana business licenses) than would a denial of equitable relief.

Plaintiff also argues that the relief it requests would not facilitate any activity that it is not already engaged in since it currently owns 25 percent of multiple licensed dispensaries in the state.  With its ownership in the dispensaries, plaintiff asserts that it has already been profiting from the sale of marijuana in Oklahoma, with the state's blessing.  However, plaintiff does not dispute that the relief it specifically seeks from this court will, in fact, facilitate illegal activity as it will permit plaintiff to obtain a medical marijuana business license for itself to grow, process, dispense, transport, or test medical marijuana, all of which is criminal under the CSA.  Because the requested relief would facilitate criminal acts, the court "will not lend its aid to the perpetration of criminal acts."  Cartlidge v. Rainey, 168 F.2d 841, 845 (5th Cir. 1948).

In Fourth Corner, a state-chartered credit union, intending to service marijuana-related businesses, applied for a master account from the Federal Reserve Bank of Kansas City.  The bank denied the credit union's application.  The credit union sought a declaratory judgment that it was entitled to a master account and an

injunction requiring the bank to establish the master account.  The district court granted the bank's motion to dismiss, holding that it could not use its equitable power to grant a mandatory injunction that would facilitate criminal activity.

On appeal, the three Tenth Circuit judges on the panel each reached three different conclusions.  Each wrote a separate opinion, each of the three opinions effectively dissenting from the other two.  Reaching the merits of plaintiff's claim, Judge Nancy L. Moritz concluded that the district court's dismissal with prejudice should be affirmed based upon the bank's illegality argument.  She found that providing banking services to the marijuana-related businesses would facilitate activity that is prohibited by the CSA.  She determined that a master account at the bank would "serve as a linchpin for the [credit union's] facilitation of illegal conduct."  861 F.3d at 1055.  Judge Scott M. Matheson, Jr. concluded that the dismissal with prejudice should be vacated, and the case remanded with instructions to dismiss without prejudice on prudential-ripeness grounds.  In so concluding, Judge Matheson emphasized that the bank had not addressed whether it would grant a master account based upon the credit union's new allegation in the amended complaint that it would serve marijuana-related businesses only if doing so was legal.  Judge Robert E. Bacharach disagreed with Judge Matheson on the ripeness issue.  Judge Bacharach thought the court should take as true the account applicant's allegation that it would service marijuana-related businesses only if it was legal to do so.  861 F.3d at 1066.  He concluded that the dismissal should be reversed because the district court improperly discounted the credit union's allegation (also rejected by Judge Moritz) in the amended complaint that it would obey federal law.

While Judges Matheson and Bacharach approached the case differently than Judge Moritz, they did so on purely procedural grounds.  Indeed, in a reference to the merits of the matter, Judge Bacharach acknowledged that "servicing marijuana-related businesses is different, and the district court properly concluded

that this part of [the credit union's] plan would have violated federal drug laws." 861 F.3d at 1066. Taking into account Judge Matheson's passing reference to the "Credit Union's continuing inability to conduct legal business," 861 F.3d at 1063, the views of Judges Moritz and Bacharach on the illegality issue may well have been the view of Judge Matheson as well.

Though the splintered decision in Fourth Corner is not precedent for anything, it is discernible that, as far as that panel is concerned, an enterprise proposing to conduct business in violation of the CSA would have tough sledding on the merits of the illegality issue. In a case ripe for decision, Judge Moritz's view of the merits would carry the day. Her view of the matter will be followed here. The court accordingly concludes that plaintiff's attempt to distinguish the injunction requested by the credit union, purportedly "caus[ing] a whole shift in federal banking policy," from its requested relief, in this case, of "simply allow[ing] nonresidents to join residents on equal footing in selling marijuana in Oklahoma," doc. no. 30, pp. 12 and 13, provides no basis for avoidance of the illegality doctrine.

This conclusion as to the applicability of the doctrine of illegality is consistent with other decisions in this circuit. A year and a half after the Tenth Circuit's decision in Fourth Corner, the Colorado bankruptcy court had before it a debtor whose main business consisted of selling equipment and supplies for use in growing marijuana. In re: Way to Grow, Inc., 597 B.R. 111 (Bankr. D. Colo. 2018). The bankruptcy court, adhering to a pre-Fourth Corner decision from the Tenth Circuit Bankruptcy Appellate Panel (In re: Arenas, 535 B.R. 845 (10th Cir. BAP 2015)), concluded that it "cannot enforce federal law in aid of the Debtors because Debtors' ordinary course activities constitute a continuing federal crime." Id. at 131-32. Relying mainly on the Bankruptcy Code's requirement of a good-faith reorganization plan, the district court affirmed the dismissal. In re Way to Grow, Inc., 610 B.R. 338, 346 (D. Colo. 2019).

10

IV.

Executive Branch Inaction is Irrelevant to the Court's Analysis

Plaintiff argues that because "[t]he federal government could shut down [the marijuana] market if it wished," but has not done so, the "usual constitutional rules should apply." Doc. no. 30, at 4. Plaintiff traces the history of this selective inaction by the executive branch as follows:

> This federal policy is expressed in a document known as the Cole Memorandum. The Cole Memorandum, issued during the Obama administration, was purportedly "rescinded" by Attorney General Sessions, *see Memorandum for all United States Attorneys: Marijuana Enforcement*, Office of the Attorney General (Jan. 4, 2018), but his successor, Attorney General Barr, told Congress that the Justice Department is "operating under my general guidance that I'm accepting the Cole Memorandum for now." *Review of the FY2020 Budget Request for DOJ*, 116th Cong. (Apr. 10, 2019) (testimony of William Barr, Att'y Gen. of the United States). The Biden administration has said nothing to the contrary.

Doc. no. 30, at 4.

It is a complete answer to this argument to observe that Mr. Cole did not pen his memorandum, and Mr. Barr did not give his testimony, on the authority of Article I of the Constitution.  As Judge Gorsuch wrote in Feinberg: "[I]n our constitutional order it's Congress that passes the laws, Congress that saw fit to enact 21 U.S.C. § 841, and Congress that in § 841 made the distribution of marijuana a federal crime."  Feinberg, 808 F.3d at 816.  *See also,* the Colorado bankruptcy court's conclusion in Way to Grow:  "This Court is bound to follow the law as written and may not depart therefrom based on enforcement decisions made by the executive branch."  597 B.R. at 133.

V.

Conclusion

Although the court does not (and need not) intimate any conclusion on the merits of the underlying constitutional claim in this case, it will note that the underlying claim is not frivolous.  In <u>Action Wholesale Liquors v. Oklahoma Alcoholic Bev. Laws Enforcement Comm'n</u>, 463 F.Supp. 2d 1294 (W. D. Okla. 2006), the undersigned held unconstitutional, under the Commerce Clause, the provisions of Oklahoma law which allowed in-state wineries, but not out-of-state wineries, to ship wine directly to retailers and restaurants in Oklahoma.  But trafficking in wine is legal under federal law; trafficking in marijuana is not.

For the reasons stated, the Motion to Dismiss on Behalf of Defendants (doc. no. 29) is **GRANTED**.  Plaintiff's Amended Complaint against defendants, Colonel Lance Frye, M.D., Commissioner of the Oklahoma State Department of Health, and Dr. Kelly Williams, M.D., Director of the Oklahoma Medical Marijuana Authority, is **DISMISSED WITH PREJUDICE** under Rule 12(b)(6), Fed. R. Civ. P. Judgment shall be entered forthwith.

IT IS SO ORDERED this 4th day of June, 2021.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

20-0820p004.docx

12