1

2

3

4

5

6

7                                                    The Honorable Benjamin H. Settle

8                        UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
9                                 AT TACOMA

10   TODD BRINKMEYER,                         NO. 3:20-cv-05661-BHS

11                        Petitioner,          RESPONDENT'S MOTION FOR
                                               SUMMARY JUDGMENT
12          v.
                                               NOTE ON MOTION CALENDAR:
13   WASHINGTON STATE LIQUOR AND
     CANNABIS BOARD,                           MARCH 11, 2022
14
                          Respondent.
15

16

17

18

19

20

21

22

23

24

25

26

1

**TABLE OF CONTENTS**

2

3

I.    INTRODUCTION ............................................................................................. 2

4

II.   EVIDENCE RELIED ON .................................................................................. 3

5

III.  STATEMENT OF THE CASE ........................................................................... 3

     A.   Background ............................................................................................ 3

6

     B.   Residency Requirements ........................................................................ 4

7

     C.   The Parties ............................................................................................ 5

8

     D.   The Residency Requirements Are Necessary for Washington State's
         Licensing, Enforcement, and Social Equity Programs ............................. 6

9

     E.   Procedural History ................................................................................ 7

10

IV.  ISSUE STATEMENT ....................................................................................... 8

11

V.   ARGUMENT .................................................................................................... 8

12

     A.   Brinkmeyer Lacks Standing to Bring This Action and His Claims Are Not
         Ripe ...................................................................................................... 9

13

14

         1.   Brinkmeyer lacks standing because he failed to demonstrate that he
              suffered a concrete injury at the time he filed the petition ................. 9

15

         2.   Brinkmeyer's claims are not ripe ................................................ 11

16

     B.   Washington's Residency Requirements Do Not Violate the Dormant
         Commerce Clause ............................................................................... 12

17

18

         1.   Congress exercised its Commerce Clause powers with respect to the
              marijuana industry ...................................................................... 12

19

         2.   The dormant Commerce Clause cannot invalidate the Residency
              Requirements regulating an intrastate market where there is no legal
              interstate market ......................................................................... 13

20

21

         3.   The Residency Requirements are narrowly tailored to accomplish
              legitimate purposes .................................................................... 15

22

23

     C.   Brinkmeyer's Other Constitutional Challenges ..................................... 17

24

         1.   There is no fundamental right to sell or produce marijuana ............ 18

25

         2.   The State has a rational basis for its Residency Requirements ........ 20

26

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

D.   The Concerning Implications of Removing the Residency Requirements and Recognizing the Constitutional Right to Manufacture, Distribute and Sell Marijuana ............................................................................................................. 20

VI.   CONCLUSION .......................................................................................... 21

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1

2

# TABLE OF AUTHORITIES

## Constitutional Provisions

3   U.S. Const. art. I, § 8, cl. 3 ................................................................ 2, 8, 12-15, 17

4   U.S. Const. art. III, § 1 ........................................................................................... 9

5   U.S. Const. art. IV, § 1 ......................................................................................... 21

6   U.S. Const. art. IV, § 2 .......................................................................... 2, 8, 17, 20

7   U.S. Const. amend. XIV, § 1 .......................................................... 2, 8, 17, 18, 20

8

## Cases

9   *Baldwin v. Fish & Game Comm'n of Mont.*,
       436 U.S. 371 (1978) ...................................................................................... 19-20

10  *Benno v. Shasta Cty., Cal.*,
       No. 2:16-cv-01110-TLN-DMC, 2021 WL 3912187 (E.D. Cal. Sept. 1, 2021) ..... 18

11

12  *Bowman v. Chi. & N.W. Ry. Co.*,
       125 U.S. 465 (1888) ....................................................................................... 13-14

13  *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*,
       511 U.S. 383 (1994) ....................................................................................... 13, 17

14

15  *City of Phila. v. New Jersey*,
       437 U.S. 617 (1978) ............................................................................................ 21

16  *DaimlerChrysler Corp. v. Cuno*,
       547 U.S. 332 (2006) ......................................................................................... 9, 11

17

18  *Evans v. Cty. of Trinity*,
       No. 218-CV-00083-TLN-JDP, 2021 WL 516796 (E.D. Cal. Feb. 11, 2021) ...... 19

19

20  *Franchise Tx Bd. of Cal. v. Hyatt*,
       136 S. Ct. 1277 (2016) ....................................................................................... 21

21  *Gen. Motors Corp. v. Tracy*,
       519 U.S. 278 (1997) ....................................................................................... 13-14

22  *Gonzales v. Raich*,
       545 U.S. 1 (2005) ......................................................................................... 2, 12-13

23

24  *Grandpa Bud, LLC v. Chelan Cty. Wash.*,
       No. 2:19-CV-51-RMP, 2020 WL 2736984 (E.D. Wash. May 26, 2020) ............. 19

25  *Haines-Marchel v. Wash. Liquor & Cannabis Bd.*,
       406 P.3d 1199 (Wash. 2017) ............................................................................... 19

26

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

*Heller v. Doe*,
  509 U.S. 312 (1993) ................................................................................ 2, 18, 20

*Hoke v. United States*,
  227 U.S. 308 (1913) ................................................................................ 13

*Human Life of Wash., Inc. v. Brumsickle*,
  624 F.3d 990 (9th Cir. 2010) ................................................................. 9

*Hunt v. Wash. State Apple Adver. Comm'n*,
  432 U.S. 333 (1977) ................................................................................ 13

*Jow Sin Quan v. Wash. Liquor Control Bd.*,
  418 P.2d 424 (Wash. 1966) ..................................................................... 19

*Little v. Gore*,
  148 F. Supp. 3d 936 (S.D. Cal. 2015) ................................................... 2, 11, 19

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................ 9-11

*Maine v. Taylor*,
  477 U.S. 131 (1986) ................................................................................ 15

*Marin All. For Med. Marijuana v. Holder*,
  866 F. Supp. 2d 1142 (N.D. Cal. 2011) ................................................. 18

*Nat'l Council of La Raza v. Cegavske*,
  800 F.3d 1032 (9th Cir. 2015) ............................................................... 9

*Ne. Bancorp., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
  472 U.S. 159 (1985) ................................................................................ 13

*Nulankeyutmonen Nkihtaqmikon v. Impson*,
  503 F.3d 18 (1st Cir. 2007) ..................................................................... 9

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*,
  860 F.3d 1228 (9th Cir. 2017) ............................................................... 9

*Pac. Merch. Shipping Ass'n v. Goldstene*,
  639 F.3d 1154 (9th Cir. 2011) ............................................................... 15

*Pic-A-State PA, Inc. v. Pennsylvania*,
  42 F.3d 175 (3d Cir. 1994) ..................................................................... 14

*Predka v. Iowa*,
  186 F.3d 1082 (8th Cir. 1999) ............................................................... 14

*Raich v. Gonzales*,
  500 F.3d 850 (9th Cir. 2007) ................................................................. 18

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

*Saenz v. Roe*,
  526 U.S. 489 (1999) ................................................................................................. 10

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ................................................................................................. 10

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
  139 S. Ct. 2449 (2019) ................................................................................ 12, 15, 17

*Terk v. Ruch*,
  655 F. Supp. 205 (D. Colo. 1987) ........................................................................... 14

*Thomas v. Anchorage Equal Rts. Comm'n*,
  220 F.3d 1134 (9th Cir. 2000) ................................................................................ 11

*Trump v. New York*,
  141 S. Ct. 530 (2020) .......................................................................................... 9, 11

*United States v. Fogarty*,
  692 F.2d 542 (8th Cir. 1982) ................................................................................... 18

*United States v. Fry*,
  787 F.2d 903 (4th Cir. 1986) ................................................................................... 18

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ........................................................................................... 18, 20

*White Mountain Apache Tribe v. Williams*,
  810 F.2d 844 (9th Cir. 1985) ................................................................................... 13

*Zobel v. Williams*,
  457 U.S. 55 (1982) ................................................................................................... 10

## <u>Statutes</u>

2013 Wash. Sess. Laws 29 ................................................................................................ 3

2015 Wash. 2d Spec. Sess. Laws 1884 ............................................................................. 4

2015 Wash. Sess. Laws 287, 299-300 .............................................................................. 4

2015 Wash. Sess. Laws 287-88 ........................................................................................ 4

21 U.S.C. § 812(c) (2018) ............................................................................... 4, 13-14, 20

21 U.S.C. § 841(a)(1) (2018) ......................................................................... 2-4, 13-14, 20

21 U.S.C. § 844(a) (2010) .......................................................................................... 2-3, 20

Findings—Intent—2020 c 236 *in* Wash. Rev. Code § 69.50.335 .............................. 5, 16

Initiative Measure No. 502, 2013 Wash. Sess. Laws 28-67 ............................... 3, 4, 6

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1   Social Equity Program, 2020 Wash. Sess. Laws 1710 .................................................. 5, 7, 16

2   Wash. Rev. Code § 69.50.331(1)(b) (2020) ........................................................... 4, 17

3   Wash. Rev. Code § 69.50.331(4) (2013) ....................................................................... 3

4   Wash. Rev. Code § 69.50.335(6)(b) (2021) ........................................................... 5, 16

5   Wash. Rev. Code § 69.50.335(6)(c) (2021) ........................................................... 5, 16

6   Wash. Rev. Code § 69.50.342 (2013) ........................................................................... 3

7   Wash. Rev. Code § 69.50.345 (2013) ........................................................................... 3

8   Former Wash. Rev. Code § 69.50.331(1)(a) (2015) ...................................................... 4

9   Former Wash. Rev. Code § 69.50.331(1)(b) (2012) ...................................................... 4

10                          **Regulations**

11  Wash. Admin. Code § 314-12-010 (1982) ................................................................. 19

12  Wash. Admin. Code § 314-55-020(11) (2021) ........................................................ 5, 17

13  Wash. Admin. Code § 314-55-035(1) (2020) ......................................................... 5, 17

14  Wash. Admin. Code § 314-55-040 (2021) .................................................................... 6

15  Wash. Admin. Code § 314-55-110(4) (2016) ............................................................. 17

16                        **Other Authorities**

17  *Cole* Memo,
18      Memorandum for all United States Attorneys from James M. Cole, Deputy Attorney
        General, U.S. Dep't of Justice (Aug. 29, 2013) ................................................... 3, 6

19  Idaho Office of Drug Policy (ODP), "Policy Statement on Marijuana Legalization"
20      https://odp.idaho.gov/wp-content/uploads/sites/114/2022/01/ODP-Policy-Statement-
        on-Marijuana-Legalization_Final-Update_January-2022.pdf. ............................... 21

21  Washington State House Bill 1667,
22      https://lawfilesext.leg.wa.gov/biennium/2021-
        22/Pdf/Bills/HouseBills/1667.pdf?q=20220118145703 ....................................... 11

23

24

25

26

1

### I.  INTRODUCTION

2   Todd Brinkmeyer, an Idaho resident, seeks to rewrite Washington's marijuana laws to

3   allow out-of-state citizens to apply for and receive Washington marijuana licenses by petitioning

4   for a declaratory judgment based on federal constitutional challenges to Washington's Residency

5   Requirements. His Petition fails to demonstrate that any alleged harm is imminent, concrete, or

6   cognizable under federal law because he demonstrates only a "some day" interest in becoming

7   a Washington marijuana retail licensee.

8   Even if Brinkmeyer could establish his claims are justiciable, he cannot meet his burden

9   to establish any federal constitution violation. Congress, through the Controlled Substances Act

10  (CSA), has exercised its Commerce Clause powers to prohibit a legal interstate market.

11  *See Gonzales v. Raich*, 545 U.S. 1, 22, 27 (2005); 21 U.S.C. §§ 841(a)(1) (2018),

12  844(a) (2010); U.S. Const. art. I, § 8, cl. 3. Under the CSA, "marijuana is contraband per se,

13  which means no person can have a cognizable legal interest in it." *Little v. Gore*, 148 F. Supp.

14  3d 936, 955 (S.D. Cal. 2015) (citation omitted). Thus, no dormant Commerce Clause challenge

15  can stand.

16  Nor can he establish there is a fundamental right to engage in Washington's marijuana

17  retail market, meaning that Washington needs only a rational basis for its Residency

18  Requirements and the burden is on Brinkmeyer to negate every conceivable basis that might

19  support it. *See Heller v. Doe*, 509 U.S. 312, 320 (1993). In this motion, the Board demonstrates

20  a rational basis for treating Brinkmeyer and other non-residents differently from similarly

21  situated residents. As a result, he cannot establish a violation under the Article IV Privileges and

22  Immunities Clause, or the Fourteenth Amendment Privileges and Immunities Clause,

23  Equal Protection Clause, or Due Process Clause. U.S. Const. art. IV, § 2, U.S. Const. amend.

24  XIV, § 1.

25  If this Court were to rule in favor of Brinkmeyer, it would recognize a federally protected,

26  constitutional right to engage in the business of distributing marijuana across state lines for

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

economic profit – a ruling squarely in opposition to the CSA. It would also hamper the Board of its ability to: prevent diversion, maintain a robust regulatory scheme mandated by the *Cole* Memo,[1] and provide licenses to in-state social equity applicants pursuant to recent legislation. The Court should not employ its equitable powers to invalidate Washington's Residency Requirements when they are a necessary component of the state's legitimate interests in protecting public health and safety and the viability of a solely intrastate industry.

The Board requests that this Court grant its Motion for Summary Judgment and dismiss Brinkmeyer's Petition for Declaratory Judgment.

## II.     EVIDENCE RELIED ON

1.      Declaration of Rebecca Smith, Director of Licensing for the Washington State Liquor and Cannabis Board.

2.      Declaration of Captain Joshua Bolender, Washington State Liquor and Cannabis Board, Enforcement and Education Division.

## III.     STATEMENT OF THE CASE

### A.     Background

In 2012, Washington voters approved Initiative Measure No. 502 (I-502). *See* Smith Decl. ¶ 1. I-502 established a regulatory system for the sale, production, and processing of limited amounts of marijuana for recreational use by adults. I-502, 2013 Wash. Sess. Laws 28-67. Washingtonians empowered the Board to enforce I-502 and to implement rules to meet the goal of "tak[ing] marijuana out of the hands of illegal drug organizations" and create "a tightly regulated, state-licensed system similar to that for controlling hard alcohol." 2013 Wash. Sess. Laws 29; Wash. Rev. Code §§ 69.50.331(4), .342, .345 (2013).

Although the licensed sale of marijuana does not violate Washington law, it remains a criminal offense under federal law. Pursuant to the CSA, Congress deemed marijuana a

---

[1] Memorandum for all United States Attorneys from James M. Cole, Deputy Attorney General, U.S. Dep't of Justice (Aug. 29, 2013), attached as Exhibit 1 to the Declaration of Rebecca Smith.

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

Schedule I drug and made any interstate marijuana trade illegal. 21 U.S.C. § 812(c) (2018); 21 U.S.C. § 841(a) (2018). Despite the CSA, some states have authorized the intrastate production, sale, and possession of marijuana in certain circumstances, and have regulated their intrastate market to protect the health, safety and welfare of their state's citizens. *See* Smith Decl., Ex. 5. There are only a few states, such as Idaho, where marijuana remains entirely illegal under both state and federal law. *See* Smith Decl. ¶ 23, Ex. 5.

In 2015, Washington merged its recreational and medical marijuana markets and expanded the number of retail licenses available. 2015 Wash. Sess. Laws 287, 299-300. The Legislature mandated that priority for these new licenses be given to those who operated a Washington collective garden and paid Washington taxes. Former Wash. Rev. Code § 69.50.331(1)(a) (2015).

## B.    Residency Requirements

Since I-502's passage, any individual holding an ownership or equity interest in a marijuana business must be a Washington resident. No marijuana license of "any kind may be issued to:"

> (i) A person under the age of twenty-one years;
> (ii) A person doing business as a sole proprietor **who has not lawfully resided in the state for at least six months** prior to applying to receive a license;
> (iii) A partnership, employee cooperative, association, nonprofit corporation, or corporation unless formed under the laws of this state, **and unless all of the members thereof are qualified to obtain a license as provided in this section**; or

Wash. Rev. Code § 69.50.331(1)(b) (2020) (emphasis added). Originally, the residency requirement was only three months. Former Wash. Rev. Code § 69.50.331(1)(b) (2012). However, in 2015, the Legislature expanded it to six months at the same time they merged the medical and recreational markets. 2015 Wash. Sess. Laws 287-88; 2015 Wash. 2d Spec. Sess. Laws 1884. The Board promulgated rules that clarify the residency requirements apply to all

/ / /

/ / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

4

applicants applying for a marijuana license, including all true parties of interest. *See* Wash. Admin. Code §§ 314-55-020(11) (2021), -035(1) (2020). These rules and statute are collectively referred to as the "Residency Requirements."

The Legislature reaffirmed the necessity of a residency requirement in 2020 when it passed Washington's Social Equity Program. *See* Social Equity Program, 2020 Wash. Sess. Laws 1710; Smith Decl. ¶ 16. This Program provides that the 39 remaining marijuana retail licenses that have not been issued may be issued only to a "social equity applicant." Smith Decl. ¶ 16. A social equity applicant is defined in part as someone who has lived in a disproportionately impacted area. Wash. Rev. Code §§ 69.50.335(6)(b), (c) (2021). This legislation builds upon the Residency Requirements and seeks to undo harm that the state's marijuana prohibition laws caused to in-state residents. Smith Decl. ¶ 16; *see* Findings—Intent—2020 c 236 *in* Wash. Rev. Code § 69.50.335.

## C.     The Parties

Michael "Scott" Atkison, a Washington resident, has an ownership interest in five Washington marijuana retailers. Smith Decl. ¶ 6. Atkison owns four of the five licenses with Brian Jennings and Anthony Peschek. *Id*. Atkison, Jennings and Peschek gained their fifth license in September 2020 when the Board approved the transfer of an existing license to them. *Id.*

Todd Brinkmeyer, an Idaho resident, provided loans to four of the five retailers owned by Atkison. *Id.* Brinkmeyer has not applied to be added to or to assume ownership, in part or in whole, of any of Atkison's licenses. Smith Decl. ¶ 5. Instead he believes that at some point in the future Atkison will bequeath to him ownership upon his death. Dkt. # 1, Attach. 2, ¶ 24.

Brinkmeyer alleges that there is no reason why he could not hold a Washington marijuana license, because the Board has already vetted him. Dkt. # 1, Attach. 2, ¶¶ 20-23. However, whether a person may hold a Washington State marijuana license is a decision that the Board determines after fully vetting a person at the time they apply. Smith Decl. ¶ 7.

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  Brinkmeyer was vetted as a financier in October 2020, and until he is vetted as an owner, the

2  Board does not know whether he would qualify, absent the Residency Requirements. *Id.*

3  **D.      The Residency Requirements Are Necessary for Washington State's Licensing, Enforcement, and Social Equity Programs**

4       Brinkmeyer has challenged the Residency Requirements, suggesting that there is no

5  rational basis for distinguishing between resident marijuana licensee applicants and non-resident

6  marijuana applicants. Dkt. # 1, Attach. 2, ¶ 50. However, the Board has identified several reasons

7  for the Residency Requirements:

8    • Since I-502 passed, Washington has followed the guidance of the *Cole* Memo, which

9      laid out several enforcement priorities for states to follow if they legalized marijuana.

10      Smith Decl. ¶ 8. Those priorities include "[p]reventing the diversion of marijuana from

11      states where it is legal under state law in some form to other states." Smith Decl. Ex. 1

12      at 1. The *Cole* Memo warns that the federal government may challenge the state's

13      regulatory structure if states fail to prevent diversion. Smith Decl. ¶ 8, Ex. 1 at 3.

14    • Residency Requirements assist the Board in preventing diversion and maintaining

15      compliance with the *Cole* Memo. Smith Decl. ¶ 8; Bolender Decl. ¶ 1.

16      o They ensure that a sufficient background check can occur. Smith Decl. ¶ 10.

17        A background check of an owner includes the ability to access local databases, which

18        include misdemeanors that the federal databases may not have. *Id.* This is important,

19        because a pattern of misdemeanors may disqualify an applicant for licensure.

20        *See* Wash. Admin. Code § 314-55-040 (2021).

21      o They give a meaningful opportunity for input from local jurisdictions, regarding

22        applicants. Smith Decl. ¶ 11.

23      o They enable proper Enforcement investigations by allowing Enforcement to locate,

24        interview, and ultimately, hold accountable the individuals who choose to enter the

25        marijuana industry. Bolender Decl. ¶ 3. Because Board Enforcement Officers have

26

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

6

no jurisdiction outside of Washington, it would impede their ability to conduct investigations and file prosecutions. *Id.*

- The Residency Requirements ensure that Washington's collective garden owners continue to assist Washington's medical cannabis users. Smith Decl. ¶ 3.

- The Residency Requirements are a necessary component of the state's Social Equity Program. Smith Decl. ¶ 16.

- The Residency Requirements enable the Board's enforcement of the statutory prohibition on vertical integration and the limitation on the number of marijuana licenses. Smith Decl. ¶¶ 14, 15.

- The Residency Requirements protect and respect other states that have chosen not to legalize marijuana. Bolender Decl. ¶ 6.

For ease of reference, the reasons for the Residency Requirements above will be collectively referred to as the "Justifications."

**E.    Procedural History**

Brinkmeyer filed his Petition for Declaratory Judgment (Petition) in Thurston County Superior Court, but the Board removed it to the U.S. District Court for the Western District of Washington. Dkt. # 1. Brinkmeyer moved for a preliminary injunction and the Board responded. Dkt. # 6, 11. This Court did not rule on that motion, but instead requested briefing on whether it had jurisdiction. Dkt. # 17 at p. 2. While this Court determined it had jurisdiction to hear this matter, it also remanded the state law claims to Thurston County Superior Court in October 2020, staying all federal law claims pending resolution of the state case. Dkt. # 20 at pp. 4, 6.

On January 29, 2021, Thurston County Superior Court Judge Skinder denied Brinkmeyer's motion for a preliminary injunction. *See* Dkt. # 24, Ex C. On July 23, 2021, Thurston County Superior Court Judge Wilson granted the Board's summary judgment motion, dismissing all of Brinkmeyer's state law claims. Dkt. # 24, Ex F.

/ / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

7

As a result, this Court lifted the stay on November 23, 2021. Dkt. # 25 at p. 1. The parties submitted a Joint Status Report, which indicated that there were no issues of fact in this case and this case would likely be resolved on summary judgment. Dkt. # 30 at p. 1. In the Joint Status Report, the parties agreed to a briefing schedule. *Id.* at pp. 3-4.

## IV.    ISSUE STATEMENT

1. Whether the Commerce Clause of the United States Constitution permits Washington to enact residency restrictions in its intrastate marijuana market.

2. Whether the Privileges and Immunities Clause under Article IV of the United States Constitution permits Washington to enact residency restrictions on the privilege of owning a marijuana retail store.

3. Whether the Privileges and Immunities Clause and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution permits Washington to enact residency restrictions on the privilege of owning a marijuana retail store.

4. Whether the Due Process Clause of the Fourteenth Amendment to the United States Constitution permits Washington to enact residency restrictions on the privilege of owning a marijuana retail store.

## V.    ARGUMENT

The undisputed facts show that Brinkmeyer cannot, as a matter of law, sustain his claims against the Board related to Washington's Residency Requirements for two reasons. First, Brinkmeyer cannot demonstrate standing and ripeness. Second, even if Brinkmeyer demonstrates justiciability, as a matter of law, he cannot establish: (1) the dormant Commerce Clause applies where Congress's Commerce Clause powers are not dormant and where there is not a legal interstate market to protect, (2) owning a marijuana retail license is fundamental to the nation's unity and is a protected constitutional right, and (3) the State's basis for requiring residency is not rational. Hence, the Board is entitled to summary judgment.

/ / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**A.      Brinkmeyer Lacks Standing to Bring This Action and His Claims Are Not Ripe**

In order to proceed with his constitutional claims, Brinkmeyer must first demonstrate their justiciability. *Human Life of Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1000 (9th Cir. 2010). This includes demonstrating both standing and ripeness. *Trump v. New York*, 141 S. Ct. 530, 535 (2020). Whereas standing asks 'who' may bring a claim, ripeness concerns 'when' a claim may be brought. *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 32 (1st Cir. 2007). Brinkmeyer fails to demonstrate either.

### 1.      Brinkmeyer lacks standing because he failed to demonstrate that he suffered a concrete injury at the time he filed the petition

In his Petition, Brinkmeyer failed to show he has Article III standing that would allow him to pursue his claims. *See* U.S. Const. art. III, § 1. To establish standing, he must show that he suffered a concrete and particularized injury to a legally protected interest that is actual or imminent. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1039 (9th Cir. 2015); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Standing must exist at the time the complaint is filed and through all stages of the litigation. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Standing requires careful examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted. *See Or. Prescription Drug Monitoring Program (PDMP) v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017). Brinkmeyer has the burden to prove each element and his failure mandates dismissal. *Lujan*, 504 U.S. at 561.

This Court should not find that Brinkmeyer's injuries are "actual or imminent." "Some day" intentions—without any specification of when the some day will be—do not support a finding of "actual or imminent" injury. *Lujan*, 504 U.S. at 564. The Supreme Court has elaborated on "imminence," stating that it means certainly impending. *See Or. PMDP*, 860 F.3d at 1234-35 (citation omitted). It is not sufficient for an event to be in someone's lifetime or merely possible. *See Lujan*, 504 U.S. at 564 n.2. Brinkmeyer cannot show that he has suffered

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    an injury that is "actual or imminent." *See Lujan*, 504 U.S. at 560-61. His claims rely on a

2    "some day" future transfer of ownership upon Atkison's death. Dkt. # 1, Attach. 2, ¶ 24.

3    Although Atkison has suffered previous health issues, the Petition fails to establish that

4    Atkison's cancer has returned or is likely to return, or that Atkison's death is in any way

5    imminent. Therefore, all that exists is that Atkison will die at some point. But that is true of all

6    people, and is not sufficient to create an actual or imminent injury. *See Lujan*, 504 U.S. at

7    564 n.2.

8         Brinkmeyer has also failed to allege a concrete injury. An injury is "concrete" if it is real

9    and not abstract or based on conjecture or a hypothetical. *Lujan*, 504 U.S. at 560; *Spokeo, Inc. v.*

10   *Robins*, 578 U.S. 330, 339 (2016). For example, the Equal Protection Clause and Privileges and

11   Immunities Clause of the Fourteenth Amendment protect the rights of citizens new to a state as

12   compared to established state citizens. *See Saenz v. Roe*, 526 U.S. 489, 502-03 (1999); *Zobel v.*

13   *Williams*, 457 U.S. 55, 59-60 (1982). For these claims, Brinkmeyer fails to establish standing,

14   because he is not a new Washington citizen, nor does he intend to become one. *See* Dkt. # 1,

15   Attach. 2, ¶¶ 44, 54 (alleging discrimination against nonresidents). Rather, Brinkmeyer is an

16   Idaho resident that fully intends to stay in Idaho. *Id.* Therefore, his alleged injury as a nonresident

17   under constitutional claims meant to protect new residents of a state fail to create standing.

18        Brinkmeyer's other claims as an Idaho resident who would like to stay an Idaho resident

19   are based on conjecture. The Petition merely alleges that Atkison would like to bequeath in part

20   and sell in part his ownership interest upon his death or declining health. Dkt. # 1,

21   Attach. 2, ¶ 24. In order for Brinkmeyer to receive any ownership, Brinkmeyer must outlive

22   Atkison, and Atkison's estate documents must bequest Brinkmeyer an ownership interest.

23   There is no allegation that such estate documents or sale documents exist. Without those

24   documents, Brinkmeyer's ownership interest is purely speculative. And even if those estate

25   documents existed, Atkison retains the right to change his estate documents and the bequest at

26   any time prior to his death. Moreover, even if these contingencies are met in the future, any harm

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

10

1   would require that Washington still have a residency requirement.[2] This makes any claim by

2   Brinkmeyer too speculative for this Court's consideration. *See Lujan*, 504 U.S. at 566-67.

3       Nor can Brinkmeyer cure this speculation by now claiming that Atkison will immediately

4   transfer ownership to Brinkmeyer. Brinkmeyer was required to establish standing from the time

5   he filed his Petition. *DaimlerChrysler Corp.*, 547 U.S. at 352. He failed to do so, and cannot

6   correct it now.

7       Lastly, Brinkmeyer lacks standing, because he does not claim injury to a legally

8   cognizable interest. Because marijuana remains federally illegal and is contraband per se, no

9   person can have a cognizable legal interest in it. *See Lujan*, 504 U.S. at 560-61; *Little*,

10  148 F. Supp. 3d at 955 ("Thus, under federal law, marijuana is contraband per se, which means

11  no person can have a cognizable legal interest in it.") (citation omitted).

12      Brinkmeyer lacks standing to proceed because his alleged harm is not imminent,

13  concrete, nor cognizable under federal law. As such, this Court should dismiss this case.

14      **2.    Brinkmeyer's claims are not ripe**

15      In addition to Article III standing, a case must also be "ripe." *Thomas v. Anchorage Equal*

16  *Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc) (citations omitted). In order for a

17  case to be "ripe," it may not be dependent on "contingent future events that may not occur as

18  anticipated, or indeed may not occur at all." *Trump*, 141 S. Ct. at 535 (citations omitted).

19  As shown above, Brinkmeyer's claims are entirely dependent on contingent future events that

20  may not occur as anticipated, or indeed may not occur at all, making his claims not ripe for

21  consideration.

22  / / /

23  / / /

24  / / /

25  [2] See Washington State House Bill 1667, which would remove the Residential Requirement, https://lawfilesext.leg.wa.gov/biennium/2021-22/Pdf/Bills/HouseBills/1667.pdf?q=20220118145703.

26  Furthermore, should cannabis be legalized at a federal level, Washington's residency requirement would likely need to be reevaluated. Smith Decl. ¶ 20.

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

11

**B.      Washington's Residency Requirements Do Not Violate the Dormant Commerce Clause**

Brinkmeyer mistakenly assumes that Washington's Residency Requirements are subject to the dormant Commerce Clause. They are not. Congress affirmatively exercised its Commerce Clause powers in adopting the CSA, leaving no room for a dormant Commerce Clause violation. Further, the dormant Commerce Clause does not protect interstate markets that Congress deemed illegal. Finally, Washington's Residency Requirements are narrowly tailored to accomplish legitimate purposes.

**1.      Congress exercised its Commerce Clause powers with respect to the marijuana industry**

The Constitution's Commerce Clause grants Congress the power "[t]o regulate commerce with foreign nations, and among the several states, and with the Indian tribes." U.S. Const. art. I, § 8, cl. 3. No part of the Commerce Clause's text, as written, prohibits states from engaging in economic regulation. However, the Supreme Court has long read a negative implication into its text, known as the "dormant" Commerce Clause, which prohibits state laws and regulations that "unduly restrict interstate commerce." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). "Dormant Commerce Clause restrictions apply *only* when Congress has not exercised its Commerce Clause power to regulate the matter at issue." *Id.* at 2465 (emphasis added).

For marijuana, Congress's Commerce Clause power is not dormant. To the contrary, Congress enacted the CSA to establish "a *comprehensive* regime to combat the . . . interstate traffic in illicit drugs" by "devis[ing] a closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Raich*, 545 U.S. at 13 (emphasis added). By deeming marijuana a Schedule I drug, Congress expressly and unambiguously declared that marijuana is not among

/ / /

/ / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

the "legitimate subjects of trade and commerce" for any purpose. *Cf. Bowman v. Chi. & N.W. Ry. Co.*, 125 U.S. 465, 489 (1888); *see also Raich*, 545 U.S. at 27 ("The CSA designates marijuana as contraband for *any* purpose."). Congress has not lain dormant on this subject, and the dormant Commerce Clause's presumptions therefore cannot lawfully apply to Washington's Residency Requirement. *See Ne. Bancorp., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 472 U.S. 159, 174 (1985) (concluding that the dormant Commerce Clause did not apply to state banking regulations because "the commerce power of Congress is not dormant").

> **2.     The dormant Commerce Clause cannot invalidate the Residency Requirements regulating an intrastate market where there is no legal interstate market**

Brinkmeyer's dormant Commerce Clause claim also fails because the CSA's criminalization of marijuana forecloses the availability of a unified national market that the dormant Commerce Clause is inferred to protect. Indeed, the Supreme Court has explained that "the dormant Commerce Clause's fundamental objective [is to] preserve[] a national market for competition . . . ." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997); *see also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 350 (1977) (referring to "the Commerce Clause's overriding requirement of a national 'common market'") (citation omitted). To that end, the dormant Commerce Clause prohibits state regulation that "impedes free private trade in the national marketplace." *Tracy*, 519 U.S. at 287 (citations omitted). It does not confer civil rights upon individuals. *See White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 849-50 (9th Cir. 1985). At its core, "[t]he Commerce Clause presumes a national market." *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 393 (1994).

Inherent within Congress's affirmative Commerce Clause power is the ability to entirely prohibit products or activities from interstate commerce. *Hoke v. United States*, 227 U.S. 308, 322 (1913) ("Congress may prohibit [a product's] transportation between the states, and by that means defeat the motive and evils of its manufacture."). Congress's prohibition of certain

/ / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

interstate commerce reflects its "determin[ation] that commerce is not in the national interest." *Pic-A-State PA, Inc. v. Pennsylvania*, 42 F.3d 175, 179 (3d Cir. 1994). "Where such a determination has been made by Congress, it does not offend the purpose of the Commerce Clause for states to discriminate or burden that commerce." *Id*. Accordingly, when Congress prohibits a type of commercial activity, that activity no longer enjoys any of the constitutional protections that the Commerce Clause may have otherwise provided. *See Predka v. Iowa*, 186 F.3d 1082, 1085 (8th Cir. 1999); *Tracy*, 519 U.S. at 287, 299-303; *Bowman*, 125 U.S. at 489 (recognizing that states can regulate commercial activities that "are not legitimate subjects of trade and commerce" and "such exercises of [state] power cannot be considered regulations of commerce prohibited by the constitution."); *Terk v. Ruch*, 655 F. Supp. 205, 215 (D. Colo. 1987) (rejecting dormant Commerce Clause claim for products that were illegal to sell).

By enacting the CSA, Congress foreclosed a national legal market for marijuana. The Eighth Circuit recognized this critical fact when faced with a dormant Commerce Clause challenge to a state drug tax stamp law: "[M]arijuana is contraband and thus not an object of interstate trade protected by the Commerce Clause." *Predka*, 186 F.3d at 1085. Instead, there is a patchwork of *intrastate* commerce, regulated by state laws that support the CSA's prohibition on interstate commerce. *See* Smith Decl., Ex. 5. These state laws, including Washington's Residency Requirements, are not subject to the dormant Commerce Clause, because Congress prohibited a national market. Therefore, state laws and regulations that support encumbrance of interstate commerce for marijuana, such as the Washington's Residency Requirements or Idaho's outright ban on marijuana, support the CSA. Because there is not – and cannot presently be – a lawful national market for marijuana, Washington's Residency Requirements cannot and do not run afoul of the dormant Commerce Clause.

/ / /

/ / /

/ / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1

### 3.      The Residency Requirements are narrowly tailored to accomplish legitimate purposes

2

Even if this Court finds the dormant Commerce Clause applies, it should find that the Residency Requirements are necessary to accomplish legitimate state interests. Under the dormant Commerce Clause, "if a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose." *Tenn. Wine*, 139 S. Ct. at 2461-62 (internal quotations omitted). Here, the six-month residency requirement, in substance and duration, is narrowly tailored to maintain the tightly regulated Washington marijuana industry.

Each state retains broad regulatory authority to protect the health and safety of its citizens. *Maine v. Taylor*, 477 U.S. 131, 151 (1986). While free trade is important, the Supreme Court has cautioned that free trade is not paramount. *Id.* For example, the Ninth Circuit refused to bar California from exercising its own police powers to combat severe environmental problems. *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1181-82 (9th Cir. 2011). Here, the Board is tasked with regulating a controlled substance within its state and doing all that it can to prevent it from crossing state lines. *See* Smith Decl. ¶ 2, Ex. 1. Washington has a legitimate public interest in protecting the health and safety of its citizens.

Board Licensing Director Rebecca Smith and Captain Joshua Bolender explain how Residency Requirements are a necessary component of these legitimate state interests.[3] First, they allow the State to hold licensees responsible both through its regulatory process, and, if necessary, through criminal prosecutions. Bolender Decl. ¶ 2. Without a residency requirement, Board Enforcement Officers may be unable to complete investigations of out-of-state licensees because they have no jurisdiction or ability to travel out of state to conduct an investigation. Bolender Decl. ¶ 3.

/ / /

---

[3] Some additional reasons and a more detailed discussion are in their declarations and are not repeated here.

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

15

Second, Residency Requirements ensure that a sufficient investigation can occur prior to licensing. Smith Decl. ¶¶ 10-12. The Board investigates all applicants, including checking local databases, which include misdemeanors that a federal background check would not pick up. Smith Decl. ¶ 10. Without Residency Requirements, the Board would lose insight from local authorities regarding an applicant. Smith Decl. ¶ 11. Knowing the character of a future marijuana owner is essential to know whether or not to license them. Smith Decl. ¶ 10, 18.

Third, the Residency Requirements are an integral part of Washington's prohibition on vertical integration and help to prevent industry control by a few large businesses. Smith Decl. ¶¶ 13-15. Without them, Washington may unknowingly allow a producer/processor from another state to become a retailer in Washington or allow a person who already controls more than five marijuana licenses to obtain a Washington license. *Id.*

Fourth, the Residency Requirements are a necessary component of the Social Equity Program recently passed by the Legislature. Smith Decl. ¶ 16. This Program provides that the 39 remaining marijuana retail licenses that have not been issued may only be issued to a "social equity applicant." *Id.* A social equity applicant is defined in part as someone who has lived in a disproportionately impacted area. Wash. Rev. Code §§ 69.50.335(6)(b), (c) (2021). This legislation builds upon the Residency Requirements and seeks to undo harm that the State's marijuana prohibition laws caused to in-state residents. *Id.*; *see* Findings—Intent—2020 c 236 *in* Wash. Rev. Code § 69.50.335. Washington State is not equipped to address the disproportionate effects of marijuana's prohibition laws across this nation, but it rightfully is attempting to address them within the state. Smith Decl. ¶ 16. Gutting the Residency Requirements would in effect gut this Social Equity Program. *Id.*

Finally, the Residency Requirements respect other states that have chosen not to legalize marijuana, as well as the federal prohibition on marijuana and interstate activity involving marijuana. Bolender Decl. ¶¶ 5-6.

/ / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1   The Supreme Court's narrow tailoring analysis under the dormant Commerce Clause

2   focuses on the requirement that the state "demonstrate, under rigorous scrutiny, that it has no

3   other means to advance a legitimate local interest." *C & A Carbone, Inc.*, 511 U.S. at 392.

4   A six-month residency period is narrowly tailored to advance those goals. *See* Smith Decl. ¶ 19.

5   Unlike *Tennessee Wine*, Washington requires a six-month residency, not two-years.

6   *See* Residency Requirements; *Tennessee Wine*, 139 S. Ct. at 2457. The six-month residency

7   requirement is also the least restrictive means. Washington initially tried to use only a three-

8   month requirement, but the Legislature increased it to six months. As Licensing Director Smith

9   explained:

> [T]he Board had issues with individuals who came into Washington for three
> months for the sole purpose of receiving a marijuana license and then would return
> to their home state. This caused issues on the Licensing side as well as on the
> Enforcement side, as applications often take three months or more to process, so
> applicants would start out qualifying for a license, but by the end would not,
> because they were no longer a resident.

13   Smith Decl. ¶ 19. Moreover, the licensees are held ultimately accountable and liable for all

14   business activities related to their marijuana licensed business and it is crucial that Board

15   Enforcement Officers have access to licensees for enforcement purposes. *See* Wash. Admin.

16   Code § 314-55-110(4) (2016).

17   The Residency Requirements for acquiring a marijuana license are narrowly tailored to

18   achieve legitimate state interests and do not violate the dormant Commerce Clause.

19   **C.     Brinkmeyer's Other Constitutional Challenges**

20   Brinkmeyer also alleges that the Residency Requirements violate the Article IV

21   Privileges and Immunities Clause, and the Fourteenth Amendment Privileges and Immunities

22   Clause, Equal Protection Clause, and Due Process Clause.

23   Article IV provides, "The citizens of each state shall be entitled to all privileges and

24   immunities of citizens in the several states." U.S. Const. art. IV, § 2.

25   / / /

26   / / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    The Fourteenth Amendment to the United States Constitution provides, "No State shall

2    make or enforce any law which shall abridge the privileges or immunities of citizens of the

3    United States; nor shall any State deprive any person of life, liberty, or property, without due

4    process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

5    U.S. Const. amend. XIV, § 1.

6    For each of these rights, the analysis begins with whether the state laws impair a

7    fundamental right. *See Heller*, 509 U.S. at 319-21; *Washington v. Glucksberg*, 521 U.S. 702, 722

8    (1997). If not, the law is subject to rational basis scrutiny. *Heller*, 509 U.S. at 320. As explained

9    *infra*, Brinkmeyer has no fundamental right to engage in interstate marijuana commerce, and the

10   Justifications provide a rational basis for the Residency Requirements.

11   **1.    There is no fundamental right to sell or produce marijuana**

12   In analyzing whether an asserted right is "fundamental," courts consider whether it is

13   objectively, "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at

14   720-21 (citation omitted). In the case of marijuana, even where states have created state rights

15   regarding the use, sale, or distribution of marijuana, courts refuse to recognize these rights

16   pertaining to marijuana as a fundamental right protected by the United States Constitution.

17   This is in part, because marijuana is a federally prohibited substance. *See, e.g.*, *Raich v.

18   Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) (there is no fundamental right to use medical

19   marijuana); *Marin All. For Med. Marijuana v. Holder*, 866 F. Supp. 2d 1142, 1157 (N.D. Cal.

20   2011) (same); *Benno v. Shasta Cty., Cal.*, No. 2:16-cv-01110-TLN-DMC, 2021 WL 3912187,

21   at *9 (E.D. Cal. Sept. 1, 2021) (slip opinion) (no fundamental right to cultivate marijuana); *see

22   also United States v. Fry*, 787 F.2d 903, 905 (4th Cir. 1986) ("There is no fundamental right to

23   produce or distribute marijuana commercially."); *United States v. Fogarty*, 692 F.2d 542, 547

24   (8th Cir. 1982) ("[T]here is no fundamental constitutional right to import, sell, or possess

25   marijuana . . . .").

26   / / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    Federal courts have also repeatedly recognized that because Congress made marijuana

2    illegal for any purpose through the CSA, the Fourteenth Amendment's Due Process Clause does

3    not protect any property rights related to the use, cultivation, or distribution of marijuana.

4    *See Little*, 148 F. Supp. 3d at 955 ("Thus, under federal law, marijuana is contraband per se,

5    which means no person can have a cognizable legal interest in it."); *Evans v. Cty. of Trinity*,

6    No. 218-CV-00083-TLN-JDP, 2021 WL 516796, at *4 (E.D. Cal. Feb. 11, 2021) (dismissing

7    the plaintiff's Fifth and Fourteenth Amendment claims without leave to amend "[b]ecause there

8    is no cognizable federal property interest in marijuana") (slip opinion); *and Grandpa Bud, LLC*

9    *v. Chelan Cty. Wash.*, No. 2:19-CV-51-RMP, 2020 WL 2736984, at *4 (E.D. Wash.

10   May 26, 2020) ("Even when cannabis production is a legitimate use of one's property at the state

11   level, such use is not recognized as a protectable property interest under the U.S. Constitution.")

12   (slip opinion).

13   Even under Washington law, persons do not have property interest in a marijuana license.

14   The issuance of any license by the Board does not grant a vested property right in any of the

15   privileges so conferred. Wash. Admin. Code § 314-12-010 (1982); *Haines-Marchel v. Wash.*

16   *Liquor & Cannabis Bd.*, 406 P.3d 1199, 1217 (Wash. 2017) (license to sell cannabis does not

17   create a vested right). Washington courts have also long held that a license granted by the Board

18   is not a property right but, rather, is a temporary permit to engage in activity that would be

19   unlawful without a license. *Jow Sin Quan v. Wash. Liquor Control Bd.*, 418 P.2d 424, 429

20   (Wash. 1966) (holding that a license to sell intoxicants is not a vested property right; rather, it

21   constitutes "a temporary permit, in the nature of a privilege, to engage in a business that would

22   otherwise be unlawful").

23   Because of its federally illegal nature, owning a marijuana business cannot be said to be

24   "fundamental," because it has no "bearing upon the vitality of the Nation." *See Baldwin v. Fish*

25   *& Game Comm'n of Mont.*, 436 U.S. 371, 383 (1978). In fact, the very state where Brinkmeyer

26   / / /

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

19

resides, Idaho, prohibits the very privilege that Brinkmeyer seeks to obtain in Washington State. *See* Smith Decl. ¶ 23. As in *Baldwin*, equality in access to a marijuana license is not basic to the maintenance or well-being of the Union. *See Baldwin*, 436 U.S. at 388. Therefore, Brinkmeyer cannot show a fundamental right is at issue.

### 2. The State has a rational basis for its Residency Requirements

The Board has also shown that there is no fundamental right to engage in Washington's marijuana industry. *See* Section V.C.1, *supra*. As a result, the Residency Requirements are subject to a rational basis review. *See Heller*, 509 U.S. at 319-21; *Glucksberg*, 521 U.S. at 722. This means they are granted a strong presumption of validity. *Heller*, 509 U.S. at 319. And they must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 320. Furthermore, the burden is on the party challenging the law to negate every conceivable basis that might support it. *Id.* Here, Washington has a rational basis for basis for treating him differently from other similarly situated residents as described in the Board's Justifications. *See* Sections III.D, V.B.3, *supra*. Therefore, the Residency Requirements do not violate Brinkmeyer's rights under the Article IV Privileges and Immunities Clause, and the Fourteenth Amendment Privileges and Immunities Clause, Equal Protection Clause, and Due Process Clause.

### D. The Concerning Implications of Removing the Residency Requirements and Recognizing the Constitutional Right to Manufacture, Distribute and Sell Marijuana

As shown *supra*, there is no constitutional right for Brinkmeyer, or anyone else, to sell or distribute marijuana. Should this Court hold otherwise, it would be a seismic shift in how courts assess constitutional challenges related to marijuana and create a wholly new constitutional right related to marijuana, sub silentio striking down those portions of the CSA involving marijuana.

If, the constitutional protections apply to Washington's marijuana regulations similarly as it would to any other type of state law, then anyone from anywhere in the United States would

RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

20

1  be free to import marijuana grown outside of Washington into Washington's market.

2  Similarly, marijuana grown in Washington should then be allowed to be exported to other states

3  including those that strictly prohibit it such as Idaho. After all, "[t]he clearest example" of a law

4  that the dormant Commerce Clause deems invalid "is a law that overtly blocks the flow of

5  interstate commerce at a State's borders. *City of Phila. v. New Jersey*, 437 U.S. 617, 624 (1978).

6      In so opening a national federally protected marijuana trade, this Court would weaken

7  the Board's ability to regulate a controlled substance. *See* Smith Decl., Ex. 3. It would also set

8  Washington on a collision course with the Full Faith and Credit Clause, Article IV, Section 1.

9  Full Faith and Credit between the states "does not require a State to substitute for its own statute,

10  applicable to persons and events within it, the statute of another State reflecting a conflicting and

11  opposed policy," *Franchise Tx Bd. of Cal. v. Hyatt*, 136 S. Ct. 1277, 1281 (2016). But, no state

12  may adopt "any policy of hostility to the [P]ublic Acts of that other State." *Id.*

13  (citations and quotations omitted).

14      States that have not legalized marijuana, such as Idaho,[4] Washington's neighbor to the

15  east, would be effectively required to accept Washington's marijuana as an article of national

16  commerce. This result would directly conflict with Idaho's own policy to strictly prohibit

17  marijuana within its borders, and essentially, invite violation of Idaho laws. *See* Idaho Office of

18  Drug Policy (ODP), "Policy Statement on Marijuana Legalization,"[5] ("In response to proposed

19  legislation and ballot initiatives aimed at marijuana legalization, ODP finds it necessary, based

20  on the current evidence, to advise against the legalization of marijuana as a public health and

21  safety measure.").

22                          **VI.    CONCLUSION**

23  This Court should not use its equitable powers to issue a declaratory judgment that would impair

24  Washington's legitimate and paramount interests in public health and safety. The Residency

25  _____

[4] Idaho is one of only four states where marijuana is fully illegal. *See* Smith Decl., Ex. 5.

26  [5]            https://odp.idaho.gov/wp-content/uploads/sites/114/2022/01/ODP-Policy-Statement-on-Marijuana-
Legalization_Final-Update_January-2022.pdf.

RESPONDENT'S MOTION FOR                         21              ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                       1125 Washington Street SE
-- NO. 3:20-CV-05661-BHS                                                     PO Box 40100
                                                                        Olympia, WA 98504-0100
                                                                            (360) 664-9006

1   Requirements are a necessary foundation for Washington's proper stewardship, in regulating a

2   controlled substance and awarding licenses to social equity applicants. Instead, this Court

3   should preserve this necessary feature of Washington's regulatory scheme, grant the Board's

4   Motion for Summary Judgment, and deny Brinkmeyer's Petition for Declaratory Judgment.

5          DATED this 1st day of February 2022.

6                                          ROBERT W. FERGUSON
                                           Attorney General
7

8                                          s/Penny L. Allen
                                           PENNY ALLEN, WSBA No. 18821
9                                          ELLEN RANGE, WSBA No. 51334
                                           Assistant Attorneys General
10                                         1125 Washington St SE
                                           Olympia, WA 98501
11                                         Phone: (360) 586-0092
                                           Email: PennyL.Allen@atg.wa.gov
12                                         Email: Ellen.Range@atg.wa.gov
                                           Attorneys for Responden
13

14

15

16

17

18

19

20

21

22

23

24

25

26

RESPONDENT'S MOTION FOR                           22                ATTORNEY GENERAL OF WASHINGTON
SUMMARY JUDGMENT                                                         1125 Washington Street SE
-- NO. 3:20-CV-05661-BHS                                                      PO Box 40100
                                                                          Olympia, WA 98504-0100
                                                                             (360) 664-9006