HONORABLE BENJAMIN H. SETTLE

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9    TODD BRINKMEYER,                          No. 3:20-cv-05661-BHS

10                     Petitioner,              BRIEF OF AMICI CURIAE
                                                WASHINGTON CANNABUSINESS
11   v.                                         ASSOCIATION & CRAFT
                                                CANNABIS COALITION
12   WASHINGTON STATE LIQUOR AND
     CANNABIS BOARD,
13
                     Respondents.
14
15
16
17
18
19
20
21
22
23
24
25
26
27

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...........................................................................................1

II.   LEGAL AND FACTUAL BACKGROUND ...............................................1

    A.    The Federal Government Has Accepted, Protected, and Authorized State Cannabis...........................................................................................1

        1.    State-regulated cannabis becomes de facto legal under federal law............1

        2.    Congress prohibits federal interference with state medical marijuana.........................................................................................3

        3.    Hemp and CBD are federally legalized. ..................................3

    B.    Washington Has Created a Robust and Well-Regulated Cannabis Industry. ..........4

        1.    Washington and other states establish cannabis markets...........................4

        2.    Washington's LCB regulates cannabis licensees including those operating in medical marijuana, CBD, and hemp-derived products...........4

        3.    The Washington cannabis market supports the Washington economy and the livelihoods of thousands of Washingtonians. ..................5

III.  AUTHORITY AND ARGUMENT .........................................................6

    A.    Courts Consider Four Factors to Determine Whether Federal Rights May be Enforced in the Context of Illegal Activity.......................................................6

    B.    The Four Factors Demonstrate that the Federal Constitutional Rights of Participants in State-Regulated Cannabis Markets Can and Should Be Enforced. ........8

        1.    State-regulated cannabis is substantially legal under federal law...............8

        2.    Recognizing federal constitutional rights does not conflict with the CSA..........................................................................................9

        3.    The remedy sought here does not compel or authorize illegal activity.......................................................................................10

        4.    The important public interests at stake warrant enforcement. ..................11

IV.   CONCLUSION.............................................................................................12

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS - i

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Bart Street III v. ACC Enterprises, LLC*,
  No. 2:17-cv-00083-GMN-VCF, 2018 WL 4682318 (D. Nev. Sept. 27, 2018) ....................... 11

*Ginsburg v. ICC Holdings,* LLC,
  No. 3:16-cv-2311-D, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) ...................................... 11

*Gonzalez v. Raich*,
  545 U.S. 1 (2005) ......................................................................................................................... 1

*Green Earth Wellness Center, LLC v. Atain Specialty Ins. Co.*,
  163 F. Supp. 3d 821 (D. Colo. 2016) ..................................................................................... 7, 8

*Greenwood v. Green Leaf Lab LLC*,
  No. 3:17-cv-00415, 2017 WL 3391671 (D. Or. July 13, 2017) ...................................... 7, 9, 12

*Kenney v. Helix TCS, Inc.*,
  284 F. Supp. 3d 1186 (D. Colo. 2018) ...................................................................................... 9

*Lowe v. City of Detroit*,
  No. 21-CV-10709, 2021 WL 2471476 (E.D. Mich. June 17, 2021) ........................................ 10

*Mann v. Gullickson*,
  No. 15-cv-03630, 2016 WL 6473215 (N.D. Cal. Nov. 2, 2016) .................................... 7, 8, 11

*Marbury v. Madison*,
  5 U.S. 137 (1803) ...................................................................................................................... 12

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) .................................................................................................... 12

*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*,
  No. 1:20-CV-004680-NT, 2021 WL 3560840 (D. Me. Aug. 11, 2021) ........................ 9, 10, 11

*Northbay Wellness Group, Inc. v. Beyries*,
  789 F.3d 956 (9th Cir. 2015) ............................................................................................. 6, 7, 11

*NPG, LLC v. City of Portland, Maine*,
  No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020).................................... 10

*Standing Akimbo, LLC v. United States*,
  141 S. Ct. 2236 (2021) ................................................................................................................ 3

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

**United States Constitution**

2

Amendment V ........................................................................................................ 7

3

4

**Federal Statutes**

5

26 U.S. Code § 280E.......................................................................................... 5

6

Agricultural Improvement Act of 2019, Pub. L. 115-334, §§ 10113-14 ........................................ 4

7

Agricultural Improvement Act of 2019, Pub. L. 115-334, § 12619 ................................................ 4

8

Consolidated Appropriations Act of 2016, Pub. L. 114-113, Div. B, Title V, § 542 ................... 3

9

10

**State Statutes**

11

RCW 69.50.325 .............................................................................................. 5

12

RCW 69.50.326 .............................................................................................. 5

13

14

**Federal Rules**

15

Federal Rules of Evidence 201(b)......................................................................... 2

16

17

**State Regulations**

18

Washington Administrative Code, Chapter 314-55 ........................................................ 4

19

20

21

22

23

24

25

26

27

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I.     INTRODUCTION

In 2012, Washington State legalized cannabis for adult use. As a result, Respondent the Washington Liquor and Cannabis Board (the "LCB" or "State") closely regulates the cannabis industry in this state. Washington's cannabis market has grown year after year, and has generated billions of dollars in revenue for the state. Thousands of Washingtonians now depend on this industry for their livelihoods. In this case, the Court must determine whether LCB's regulation of this massive industry is subject to federal constitutional safeguards. Amici respectfully submit the constitutional rights of participants in this regulated cannabis industry are enforceable. As many courts have observed, cannabis is now substantially legal under federal law, the fundamental rights of participants in state cannabis markets do not conflict with the Controlled Substances Act, those rights can be enforced without compelling illegal activity, and the public interests at stake favor enforcement of such basic protections. The State has chosen to create and regulate the cannabis market, and thus has an obligation to do so in a constitutional manner. This Court thus can and should adjudicate the Petitioner's constitutional claims in this case.

## II.     LEGAL AND FACTUAL BACKGROUND

### A.     The Federal Government Has Accepted, Protected, and Authorized State Cannabis.

In the past decade, the federal government has become increasingly accepting—and even protective—of state cannabis. Cannabis historically has been legal; it did not become federally illegal until passage of the Controlled Substances Act ("CSA") in 1970. *Gonzalez v. Raich*, 545 U.S. 1, 14 (2005). Recently, however, the federal government has reversed course by allowing, protecting, and authorizing state-regulated cannabis markets in multiple significant ways.

### 1.     State-regulated cannabis becomes de facto legal under federal law.

For nearly a decade now, the federal government has followed a policy against intruding

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS - 1

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

on state legalization of cannabis or prosecuting individuals who comply with state cannabis laws. In 2013, the United States Department of Justice ("DOJ") released guidance to prosecutors concerning cannabis enforcement in light of Washington's and Colorado's laws legalizing and regulating cannabis.[1] This guidance, which subsequently became known as the "Cole Memorandum," outlined eight federal enforcement priorities to serve as the focus of federal investigative and prosecutorial efforts, including preventing distribution of cannabis to minors and preventing possession or use on federal property. The Cole Memorandum also directed that state and local law enforcement should remain the primary means of addressing cannabis-related activity in states that have enacted laws authorizing cannabis-related conduct, so long as the state has implemented strong and effective regulatory and enforcement systems that address federal priorities. The Cole Memorandum further provided that DOJ would not seek to intervene or challenge a state's legalization of cannabis so long as the state maintained such systems.

The Cole Memorandum continues to guide federal policy today. While it was formally withdrawn by former Attorney General Jeff Sessions in January 2018, that change was expressly made in favor of local prosecutorial decision-making.[2] Prosecutorial practices did not change as a result, including in Washington, where the approach established in the Cole Memorandum has continued to govern.[3] More recently, Attorney General Merrick Garland confirmed in his written

---

[1] James M. Cole, Deputy Attorney General, U.S. Department of Justice, *Memorandum for All United States Attorneys: Guidance Regarding Marijuana Enforcement* (August 29, 2013), available at https://www.justice.gov/iso/opa/resources/305201382913275687467.pdf. The Court may take judicial notice of the publicly available materials cited in this amici brief as they may be accurately and readily determined from sources whose accuracy cannot reasonably be questioned and are provided only for general background and context to inform the Court's legal analysis and reasoning, not for purposes of adjudicating the particular claims between the parties in this case. *See* Fed R. Evid. 201(b).

[2] *See* United States Department of Justice, Office of the Attorney General, Memorandum from Jefferson B. Sessions III, On Marijuana Enforcement, Jan. 4, 2018, available at https://www.justice.gov/opa/press-release/file/1022196/ (last accessed February 17, 2022).

[3] *See* United States Department of Justice, Office of the Attorney General, Statement from Annette L. Hayes on Federal Marijuana Prosecutions in the Western District of Washington, Jan. 4, 2018 available at https://www.justice.gov/usao-wdwa/pr/us-attorney-annette-l-hayes-statement-federal-marijuana-prosecutions-

---

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS - 2

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

confirmation testimony that the Department of Justice does not intend to use its limited resources "to pursue prosecutions of those who are complying with the laws in states that have legalized and are effectively regulating marijuana."[4] In sum, the federal government has not intervened or challenged state legalization and regulation of adult cannabis use.

### 2. Congress prohibits federal interference with state medical marijuana.

Going beyond simply tolerating state cannabis legalization, the federal government has also affirmatively protected state medical cannabis laws. Specifically, in every fiscal year since 2015, Congress has prohibited DOJ from spending any federal funds to "prevent" states such as Washington "from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Consol. Approps. Act, Pub. L. 114-113, Div. B, Title V, § 542 (2015); *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2237 (2021) (statement of Thomas, J. regarding denial of certiorari) (discussing consistent renewal of this protection). This policy has broad ramifications given that, as discussed below, a majority of states allow medical marijuana use. Congress has protected these regimes by prohibiting enforcement of any conflicting federal laws, in a form of reverse preemption.

### 3. Hemp and CBD are federally legalized.

Even more recently, federal law has explicitly authorized the production and sale of certain forms of cannabis. For decades, federal law did not differentiate between the varieties of cannabis plants and products. That changed with the 2018 Farm Bill, which removed hemp (a particular form of cannabis) and cannabis derivatives such as cannabidiol ("CBD") from the definition of

---

western-district (last accessed February 17, 2022); United States Department of Justice, Office of the Attorney General, Statement from Joseph H. Harrington on Federal Marijuana Enforcement Policy, Jan. 5, 2018, available at https://www.justice.gov/usao-edwa/pr/federal-marijuana-enforcement-policy (last accessed February 17, 2022).
[4] Responses to Questions for the Record to Judge Merrick Garland, Nominee to be United States Attorney General at 24, available at https://www.judiciary.senate.gov/imo/media/doc/QFR%20Responses%202-28.pdf.

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS - 3

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

marijuana in the CSA, meaning they are no longer illegal substances under federal law. Agricultural Improvement Act of 2019, Pub. L. 115-334, Title XII, Subtitle F, § 12619. The 2018 Farm Bill explicitly allows for the transfer of hemp-derived products across state lines for commercial or other purposes, and puts no restrictions on sale, transport, or possession of hemp-derived products produced in a manner consistent with the law. *Id.*, Title X, §§ 10113-14.

**B.   Washington Has Created a Robust and Well-Regulated Cannabis Industry.**

Proceeding in parallel with the federal government's increasingly permissive policies, states began developing legal cannabis regimes across the country. States such as Washington regulate nearly every aspect of production, processing, and sale, including medical marijuana and cannabis derivatives like CBD. The resulting market in Washington is now well established.

**1.   Washington and other states establish cannabis markets.**

Over the last decade, consistent with the development of federal law, many states have legalized or decriminalized cannabis for adult use, and even more have legalized cannabis for medical use. Colorado and Washington approved adult-use cannabis measures in 2012.  Alaska, Oregon, and the District of Columbia enacted similar measures in 2014. Currently 18 states, 2 territories, and the District of Columbia have legalized and regulate cannabis for adult use.[5] In 1996, California became the first state to legalize medical cannabis. As of February 3, 2022, at least 37 states and four territories allow for the medical use of cannabis products.[6]

**2.   Washington's LCB regulates cannabis licensees including those operating in medical marijuana, CBD, and hemp-derived products.**

Cannabis licensing in Washington State is regulated and enforced by Respondent the LCB.

---

[5] *See* Nat. Conference of State Legislatures, Cannabis Overview, July 6, 2021, available at https://www.ncsl.org/research/civil-and-criminal-justice/marijuana-overview.aspx (last accessed February 17, 2022).
[6] *See* Nat. Conference of State Legislatures, State Medical Cannabis Laws, Jan. 4, 2022, available at https://www.ncsl.org/research/health/state-medical-marijuana-laws.aspx (last accessed February 17, 2022).

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*See generally* Rev. Code Wash. ch. 69.50, Wash. Admin. Code ch. 314-55. The LCB issues licenses for businesses to produce, process, and sell cannabis and related products. RCW 69.50.325. The LCB licensing process covers businesses operating in medical marijuana, CBD and hemp-derived products. *See* LCB, *Add a Medical Marijuana Endorsement to an Existing Retail License* (2021) (citing Wash. Laws of 2015, ch. 70)[7]; RCW 69.50.326 (providing for licensee production and processing of CBD and hemp-derived products).

> **3.     The Washington cannabis market supports the Washington economy and the livelihoods of thousands of Washingtonians.**

Washington's cannabis industry is large, increasing, and a significant contributor of jobs, income, and tax revenues to the Washington economy. In 2020, there were over 1,600 unique businesses holding 2,795 cannabis licenses. Declaration of Vicki Christophersen ("Christophersen Decl.) Ex. A. A recent economic impact analysis found these businesses employ 11,330 workers—from growers, processors, transporters, laboratory personnel, and retailers—and generate over $1.4 billion in revenue; between 2016 and 2020, employment increased by 79%, or at a compound annual growth rate of 16%; and total wages and supplemental benefits paid out by cannabis businesses summed $465.4 million. *Id.*

Cannabis businesses generate significant tax revenue for the state. In 2020, cannabis directly generated $660.8 million in excise and sales taxes. Cannabis businesses also pay business & occupation taxes ("B&O"), as well as utility payments and various other state taxes and fees. *Id.* These businesses and their employees also pay taxes to the federal government, with no deduction or credit for business expenditures. *See* 26 U.S.C. § 280E.

In addition to consumer-based taxes, the cannabis industry supports additional economic activity through upstream and downstream business activities. Examples include purchases of

---

[7] *Available at* https://lcb.wa.gov/mjlicense/add-medical-mj-endorsement-to-an-existing-retail-license.

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS - 5

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

lighting, HVAC systems, packaging, and soil treatments. Retailers rent or purchase facilities and pay for various professional services, including marketing, accounting, and legal services.

The majority of cannabis firms in the state, many of which are WACA and CCC members, are small or family-owned businesses. *See id.* ¶ 3. The LCB's requirement that applicants for a cannabis license must have resided in the state for six months precludes out-of-state investment in the cannabis industry, which severely limits the ability of these small businesses to raise investment capital. *Id.* These limits adversely impact valuations and as a result may hinder the growth of retirement savings for business owners.

## III.    AUTHORITY AND ARGUMENT

The State's broad regulation of the cannabis industry must be subject to the constraints of the federal Constitution. The State suggests it is free to disregard the Constitution because there is no constitutional right to sell or distribute cannabis, and that the Court should not exercise its equitable powers to require the State to regulate the cannabis industry in a constitutional manner. *See* Dkt. #39 at 20-21. But this case is not about whether there is a fundamental right to distribute or sell cannabis. Instead, it is about whether the State has an obligation to regulate its cannabis market in accordance with the Constitution. Simply because an activity is in some respects illegal under federal law does not mean the Constitution does not apply. Instead, Courts consider certain factors to determine whether federal rights may be enforced in the context of illegal activity. Each of those factors demonstrates that the federal rights of participants in the State's cannabis market can and should be enforced.

**A.    Courts Consider Four Factors to Determine Whether Federal Rights May be Enforced in the Context of Illegal Activity.**

The mere fact that a party has engaged in activity that is arguably illegal under federal law does not mean they have no enforceable rights. *See, e.g.*, *Northbay Wellness Group, Inc. v. Beyries*,

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS - 6

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

789 F.3d 956, 959–60 (9th Cir. 2015). Indeed, some federal rights are designed specifically to be invoked by those accused of criminal activity. *See, e.g.*, U.S. Const. Amend. V. The extent to which a federal right is enforceable thus instead depends upon the scope and purpose of the right, how it intersects with the allegedly unlawful conduct at issue, and the surrounding circumstances of potential enforcement.

A review of cases in which courts have been tasked with addressing enforcement of federal rights in the context of arguably illegal activity reveals four factors that determine whether or not the right can be adjudicated and relief granted. The four factors are:

(1) the **extent of the illegality** of the activity, *see, e.g.*, *Green Earth Wellness Center, LLC v. Atain Specialty Ins. Co.*, 163 F. Supp. 3d 821, 832-33 (D. Colo. 2016) (finding that de facto federal legality of cannabis favored enforcement);

(2) the **purposes of the federal right** to be enforced and whether it would conflict with the underlying prohibition, *see, e.g.*, *Greenwood v. Green Leaf Lab LLC*, No. 3:17-cv-00415, 2017 WL 3391671, at *3-4 (D. Or. July 13, 2017) (finding no conflict between federal protections for employees and CSA's prohibition of cannabis);

(3) whether the court can award a **remedy** that does not compel or authorize illegal activity, *see, e.g.*, *Mann v. Gullickson*, No. 15-cv-03630, 2016 WL 6473215, at *7-8 (N.D. Cal. Nov. 2, 2016) (determining that enforcing contractual obligations would not require violation of the CSA); and

(4) the **public interests** at stake, *see, e.g.*, *Northbay*, 789 F.3d at 959-60 (holding that absolving an attorney of responsibility for stealing from his medical marijuana dispensary client would be against the public interest).

Courts applying these factors have found many rights enforceable in the context of cannabis. This includes enforcement of an insurance policy covering a medical marijuana business, *Green Earth*, 163 F. Supp. 3d at 834-35; application of the Fair Labor Standards Act ("FLSA") to workers of a cannabis laboratory, *Greenwood*, 2017 WL 3391671, at *3-4; and enforcement of contractual payments for ownership of cannabis-related businesses, *Mann*, 2016 WL 6473215, at *7-8. As demonstrated below, each of the four factors likewise supports enforcement of the federal constitutional rights of participants in state-regulated cannabis markets.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**B.      The Four Factors Demonstrate that the Federal Constitutional Rights of Participants in State-Regulated Cannabis Markets Can and Should Be Enforced.**

The State's broad regulation of the cannabis industry is subject to enforceable federal constitutional safeguards. These safeguards are particularly important in an era where cannabis is becoming increasingly accepted and authorized at the federal level, and where state cannabis markets continue to grow. Thousands of Washingtonians make their trade and support their families by participating in the State's cannabis market. The Court can and should require the State to respect the federal constitutional rights of participants in the State's own industry.

**1.      State-regulated cannabis is substantially legal under federal law.**

The first factor is the extent of illegality, which weighs heavily in favor of enforcing the federal constitutional rights of participants in state-regulated cannabis markets. As detailed above, cannabis is federally legal in multiple respects. The federal government has made clear it will not prosecute businesses complying with laws in states like Washington that have legalized and are regulating cannabis. *See supra* at Section II.A.1. Congress has also prohibited federal interference with state medical marijuana regimes and has legalized the production and sale of hemp and CBD products. *See supra* at Section II.A.2. The LCB licensing process at issue here covers businesses operating in medical marijuana, CBD, and hemp-derived products. *See supra* at Section II.B.2. What LCB is regulating in an unconstitutional manner thus includes operations protected against interference or that are de jure legal under federal law.

When considering whether to provide a remedy in cannabis-related disputes, federal courts have acknowledged the federal government's de facto legalization of state-regulated cannabis. *See, e.g.*, *Green Earth*, 163 F. Supp. 3d at 832-33 (observing that federal prohibition of cannabis is only "nominal"); *Mann*, 2016 WL 6473215 at *4 (noting the "continued erosion of any clear and consistent federal public policy" against cannabis). The extent of federal legalization has only

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

increased over time and now includes partial de jure legality. This Court should similarly be guided by the substantially legal status of cannabis under federal law. It would make little sense to hold that participants in cannabis markets are not protected by the federal constitution when federal law has accepted, protected, and authorized such markets.

### 2.     Recognizing federal constitutional rights does not conflict with the CSA.

The second factor is whether enforcement would conflict with the prohibition at issue. This factor also weighs in favor of enforcing the federal constitutional rights of participants in state-regulated cannabis markets. Courts analyzing this factor look to the purposes of the right invoked and whether it would directly conflict with the CSA's prohibition related to cannabis. *See, e.g.*, *Kenney v. Helix TCS, Inc.*, 284 F. Supp. 3d 1186 (D. Colo. 2018), *aff'd*, 939 F.3d 1106 (10th Cir. 2019) (holding violations of the CSA are not relevant to whether the FLSA applies to workers in the cannabis industry); *Greenwood*, 2017 WL 3391671 at *3-4 (D. Or. 2017) (finding no conflict between the FLSA's protections for employees and the CSA's prohibition of cannabis). Absent a demonstrable and direct conflict, courts will enforce federal rights rather than immunize a party involved with illegal activities from the application of federal restrictions or policies. *See, e.g.*, *Greenwood*, 2017 WL 3391671 at *2 ("That [an entity] is violating one federal law, does not give it licence to violate another.") (internal quotes omitted).

The enforcement of federal constitutional provisions requiring state governments to treat all citizens fairly, equally, and reasonably does not conflict with the CSA's prohibition against cannabis. The CSA does not address or authorize governments to enact isolationist economic policies that discriminate against out-of-state residents. *See  Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*, No. 1:20-CV-004680-NT, 2021 WL 3560840, at *5 (D. Me. Aug. 11, 2021) (noting CSA "says nothing about eliminating a national market" for cannabis, but instead "merely

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS - 9

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

criminalizes various acts of possession, manufacture, and distribution of controlled substances").
There is thus no conflict between the CSA and federal constitutional provisions that prevent economic discrimination. *See NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913, at *10 (D. Me. Aug. 14, 2020) ("Although the Controlled Substances Act criminalizes marijuana, it does not affirmatively grant states the power to burden interstate commerce in a manner which would otherwise not be permissible.") (cleaned up).

For these reasons, several courts have concluded that state or local laws favoring residents in the cannabis context are unconstitutional. Such laws raise exactly the form of economic protectionism the dormant Commerce Clause is designed to guard against, which the CSA does not address or authorize. *See  Ne. Patients Grp.*, 2021 WL 3560840, at *6 (finding residency requirement violated dormant Commerce Clause "given the . . . unmistakable antagonism towards state laws that explicitly discriminate against nonresident economic actors"); *NPG, LLC*, 2020 WL 4741913, at *12 (enjoining city from favoring in-state individuals in issuance of cannabis licenses); *Lowe v. City of Detroit*, No. 21-CV-10709, 2021 WL 2471476, at *9 (E.D. Mich. June 17, 2021) ("The Ordinance's facial favoritism toward Detroit residents of at least 10-15 years embodies precisely the sort of economic protectionism that the Supreme Court has long prohibited."). The same analysis applies to other constitutional rights governing how states treat citizens, including due process and equal protection. *See* Dkt. #34 at 21-24.

**3.     The remedy sought here does not compel or authorize illegal activity.**

The third factor is whether the Court can provide an appropriate remedy without requiring or authorizing illegal activity. This also weighs heavily in favor of enforcing the constitutional rights of participants in state-regulated cannabis markets. Courts have found suits involving participants in state cannabis markets are justiciable when the relief sought is not itself an illegal

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

act and does not compel conduct the CSA prohibits. *See, e.g.*, *Bart Street III v. ACC Enterprises, LLC*, No. 2:17-cv-00083-GMN-VCF, 2018 WL 4682318, at *5 (D. Nev. Sept. 27, 2018) (holding court could afford relief that "does not mandate any action that would violate the Controlled Substances act under federal law"); *Ne. Patients Grp.*, 2021 WL 3560840, at *6; *Mann*, 2016 WL 6473215, at *7 (ordering contract-based damages for cannabis business does not require defendant to violate CSA); *Ginsburg v. ICC Holdings,* LLC, No. 3:16-cv-2311-D, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) (ordering loan repayment does not violate CSA).

Here, granting Petitioner's requested relief would not mandate or authorize any illegal activity. Petitioner seeks only an order that directs the LCB, to the extent it processes licensing applications, to treat him the same as state residents and otherwise act in a constitutional manner. He is not asking the court to allow him "to possess, manufacture, or distribute" cannabis. *Mann*, 2016 WL 6473215, at *7. The Court has authority to declare certain LCB rules unconstitutional and to require the State to operate its cannabis licensing process in a way that comports with the Constitution. Because none of the relief requested by Petitioner would violate the CSA, the Court can and should adjudicate this dispute and enforce federal constitutional rights in this context.

### 4.      The important public interests at stake warrant enforcement.

The fourth and final factor is the balance of public interests. This also favors enforcing basic constitutional rights in the context of LCB licensing. Federal courts will order relief to a party engaged in possibly unlawful acts when substantial public interests are at stake. *Northbay*, 789 F.3d at 959-60. Basic concepts of equity and fairness support requiring the State to license and regulate cannabis in a way that comports with the Constitution, for at least two reasons.

First, the State chose to get involved in cannabis with full recognition of federal law and policy. The State should not be allowed to collect billions of dollars in tax revenue from an industry

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

it created and maintains while simultaneously claiming it can disregard the Constitution because that industry is in some respects illegal at the federal level. *See Greenwood*, 2017 WL 3391671 at *2. Refusing to enforce federal constitutional rights would not prevent licenses from being issued, it would only allow them to be issued in an unfair and inequitable manner.

Second, the livelihoods of thousands of citizens depend on this industry. These citizens are adversely affected by the State's exclusionary and protectionist policies that restrict their ability to raise capital and grow their businesses, along with any other unconstitutional LCB rules or practices. The State has an obligation to treat citizens consistent with the Constitution, including basic notions of due process and equal protection. The enforcement of such rights in the State's cannabis market is an issue of great concern to amici and their members, and should be adjudicated. *See* Mot. for Leave; *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (It "is always in the public interest to prevent the violation of a party's constitutional rights.").

To hold otherwise would invite the State to flout the Constitution in its regulation of a massive industry that impacts the lives of countless citizens throughout the state and elsewhere. The Constitution guarantees that these citizens have the right to be free from economic discrimination, isolationist policies, and unfair mistreatment by government. And "where there is a legal right, there is also a legal remedy." *Marbury v. Madison*, 5 U.S. 137, 163 (1803).

## IV.    CONCLUSION

Washington should be required to regulate its cannabis market in accordance with the Constitution. State-regulated cannabis is substantially legal under federal law, enforcement will neither undermine the CSA nor require that it be violated, and the public interests at stake warrant adjudication and enforcement. Amici respectfully request that the Court take all this into account in adjudicating Petitioner's constitutional claims in this case.

BRIEF OF AMICI CURIAE WACA & CCC
No. 3:20-cv-05661-BHS - 12

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DATED this 17th day of February, 2022.

PACIFICA LAW GROUP LLP

*s/ Taki V. Flevaris*
Taki V. Flevaris, WSBA #42555
Justin P. McCarthy, WSBA #58868

*Attorneys for Amici Curiae Washington CannaBusiness Association & Craft Cannabis Coalition*

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

**CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of February, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court using the CM/ECF system which will send notification of such filing to all parties who are registered with the CM/ECF system.

DATED this 17th day of February, 2022.

*s/ Thien Tran*

Thien Tran, Paralegal/Legal Assistant

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750