1
2
3
4
5
6
7                                                            The Honorable Benjamin H. Settle

8                    **UNITED STATES DISTRICT COURT**
                   **WESTERN DISTRICT OF WASHINGTON**
9                                **AT TACOMA**

10   TODD BRINKMEYER,                          NO. 3:20-cv-05661-BHS

11                         Petitioner,          RESPONDENT'S RESPONSE TO
                                                BRINKMEYER'S MOTION FOR
12         v.                                   SUMMARY JUDGMENT

13   WASHINGTON STATE LIQUOR AND                NOTE ON MOTION CALENDAR:
     CANNABIS BOARD,
14                                              MARCH 11, 2022
                          Respondent.
15
16
17
18
19
20
21
22
23
24
25
26

                                    1

# TABLE OF CONTENTS

I. INTRODUCTION AND REQUEST FOR RELIEF .......................................................... 2

II. EVIDENCE RELIED ON ............................................................................................... 2

      1. Declaration of Rebecca Smith, Director of Licensing for the Washington State Liquor and Cannabis Board, filed in support of Respondent's Motion for Summary Judgment. ........................................................................ 2

      2. Declaration of Captain Joshua Bolender, Washington State Liquor and Cannabis Board, Enforcement and Education Division, filed in support of Respondent's Motion for Summary Judgment.................................................. 2

III. ARGUMENT ..................................................................................................................... 3

  A. Brinkmeyer Lacks Standing to Bring This Action and His Claims Are Not Ripe ........................................................................................................................ 3

  B. Washington's Residency Requirements Do Not Violate the Dormant Commerce Clause ................................................................................................... 4

      1. *Tennessee Wine* does not support a finding of a dormant Commerce Clause violation for commerce banned by Congress ............................... 5

      2. Even so, *Tennessee Wine* supports the Justifications ......................... 6

      3. The District Court cases cited by Brinkmeyer do not support a finding of a dormant Commerce Clause violation for Washington's Residency Requirements ................................................................................. 8

          a. South Dakota gambling residency requirements ........................... 8

          b. Michigan and Maine marijuana residency requirements ............... 9

          c. Missouri's marijuana residency requirements ............................ 12

  C. Brinkmeyer's Other Constitutional Challenges ......................................... 14

      1. This Court should narrowly draw Brinkmeyer's asserted fundamental right as the right to obtain a license to sell marijuana .................... 15

      2. Brinkmeyer's right to travel is not impermissibly impinged by the Residency Requirements ................................................................. 16

          a. That is because the right to travel to pursue an illegal livelihood does not constitute a fundamental right ........................................ 16

          b. A six-month waiting period for a license does not impermissibly discriminate against new residents ........................................ 17

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

3.   Similar to the right to travel analysis, Brinkmeyer's alleged right to pursue a profession under the Fourteenth Amendment's due process right fails ................................................................................................ 18

4.   The Residency Requirements survive a rational basis review applied to laws affecting non-fundamental rights ............................................. 19

IV.   CONCLUSION ............................................................................................. 20

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT  --
NO.  3:20-CV-05661-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1

## TABLE OF AUTHORITIES

2

### Constitutional Provisions

3

U.S. Const. art. I, § 8, cl. 3.................................................................. 2, 6

4

U.S. Const. art. III, § 2, cl. 1 ................................................................... 4

5

U.S. Const. art. IV, § 2 ................................................................... 14, 16

6

U.S. Const. amend. XIV, § 1 ......................................................... 14, 16, 18

7

### Cases

8

*Allgeyer v. State of La.*,
    165 U.S. 578 (1897) ................................................................ 18

9

*Attorney General of New York v. Soto-Lopez*,
    476 U.S. 898 (1986).......................................................... 17-18

10

*Champion v. Ames*,
    188 U.S. 321 (1903) ................................................................ 10

11

12

*Chance Management, Inc. v. State of South Dakota*
    97 F.3d 1107 (8th Cir. 1996) ...................................................... 19

13

14

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)................................................................. 3

15

16

*Daly v. Harris*,
    215 F. Supp. 2d 1098 (D. Haw. 2002),
    aff'd, 117 Fed. Appx. 498 (9th Cir. 2004) ......................................... 14

17

18

*Gen. Motors Corp. v. Tracy*,
    519 U.S. 278 (1997)............................................................. 4-5

19

*Gonzales v. Raich*,
    545 U.S. 1 (2005)........................................................... 5-6, 9-10

20

21

*Gulch Gaming, Inc. v. State of S.D.*,
    781 F. Supp. 621 (D. S.D. 1991) ................................................. 8, 9

22

*H.P. Hood & Sons, Inc. v. Du Mond*,
    336 U.S. 525 (1949)............................................................. 2, 4

23

24

*Headspace Int'l LLC v. Podworks Corp.*,
    5 Wash. App. 2d 883 (2018)....................................................... 11

25

*Heller v. Doe*,
    509 U.S. 312 (1993)............................................................. 14

26

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

*Hicklin v. Orbeck,*
    437 U.S. 518 (1978) ................................................................................. 16-17

*In re Medpoint Mgmt., LLC,*
    2016 WL 3251581 (B.A.P. 9th Cir. June 3, 2016) ................................. 5

*In re Medpoint Mgmt., LLC,*
    528 B.R. 178 (Bankr. D. Ariz. 2015) .................................................... 5

*Lowe v. City of Detroit,*
    544 F.Supp.3d 804 (E.D. Mich. June 17, 2021) ................................ 9-10

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 564 (1992) ...................................................................... 3-4

*Maine v. Taylor,*
    477 U.S. 131 (1986) .............................................................................. 10

*Mem'l Hosp. v. Maricopa Cty.,*
    415 U.S. 250 (1974) .............................................................................. 17

*Nat'l Council of La Raza v. Cegavske,*
    800 F.3d 1032 (9th Cir. 2015) ............................................................... 4

*Nat'l Pork Producers Council v. Ross,*
    6 F.4th 1021 (9th Cir. 2021) ................................................................. 4

*Ne. Bancorp., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
    472 U.S. 159 (1985) ................................................................................ 6

*Ne. Patients Grp. v. Me. Dep't of Admin. and Fin. Servs.,*
    No. 1:20-cv-00468-NT, 2021 WL 3560840 (D. Me. Aug. 11, 2021) ........................ 9, 11-12

*NPG, LLC v. City of Portland,*
    No. 2:20-cv-00208, 2020 WL 4741913 (D. Me. Aug. 14, 2020) ...................... 9-10

*New England Power Co. v. N.H.,*
    455 U.S. 331 (1983) .............................................................................. 10

*Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.,*
    860 F.3d 1228 (9th Cir. 2017) ............................................................... 3

*Original Invs., LLC v. State,*
    542 F. Supp. 3d 1230 (W.D. Okla. 2021) .............................................. 5

*Pac. Merch. Shipping Ass'n v. Goldstene,*
    639 F.3d 1154 (9th Cir. 2011) ............................................................... 4

*Raich v. Gonzales,*
    500 F.3d 850 (9th Cir. 2007) ....................................................... 15-16, 18

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO.  3:20-CV-05661-BHS

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

*Raines v. Byrd*,
   521 U.S. 811 (1997).................................................................................... 3, 4

*Reno v. Flores*,
   507 U.S. 292 (1993)...................................................................................... 15

*Saenz v. Roe*,
   526 U.S. 489 (1999)...................................................................................... 16

*See Gamble v. United States*,
   139 S. Ct. 1960 (2019).................................................................................... 8

*Shapiro v. Thompson*,
   394 U.S. 618 (1969), *overruled in part on other grounds by*
   *Edelman v. Jordan*, 415 U.S. 651 (1974) ............................................... 17

*Sosna v. Iowa*,
   419 U.S. 393, 406-08 (1975) ................................................................... 17-18

*South-Central Timber Dev., Inc. v. Wunnicke*,
   467 U.S. 82 (1984)................................................................................... 12-13

*State v. Tracy*,
   128 Wash. App. 388, 396 (2005)................................................................ 11

*Sturgis v. State of Wash.*,
   368 F. Supp. 38 (W.D. Wash. 1973), aff'd sub nom.
   *Sturgis v. Washington*, 414 U.S. 1057 (1973). ................................... 17-18

*Sup. Ct. of N.H. v. Piper*,
   470 U.S. 274 (1985)...................................................................................... 16

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
   139 S. Ct. 2449, 2462 (2019)..................................................................... 5-7

*Toigo v. Dep't of Health & Senior Svcs.*,
   No. 2:20-cv-04243, 2021 WL 5533412 (W.D. Mo. June 21, 2021) ............... 12-13

*Trump v. New York*,
   141 S. Ct. 530 (2020)...................................................................................... 3

*Ward v. Maryland*,
   79 U.S. 418 (1871)........................................................................................ 17

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)................................................................................. 14-16

*Williamson v. Lee Optical of Okla. Inc.*,
   348 U.S. 483 (1955)................................................................................. 18-19

## **Statutes**

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO.  3:20-CV-05661-BHS

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

18 U.S.C. § 1084(b) (1994) ................................................................................ 8

18 U.S.C. § 1084(a) (1994) ................................................................................ 8

18 U.S.C. § 2 (1951) .......................................................................................... 5

2013 Wash. Sess. Laws 29 .............................................................................. 19

21 U.S.C § 812 (b)(1) (2018) ............................................................................ 7

21 U.S.C § 812(c) (2018) .................................................................................. 7

21 U.S.C. §§ 801-904 (CSA) (1970) ................................................................ 2

The Wire Act of 1961,
   H.R.REP. NO. 87–967 (1961) reprinted in
   1961 U.S.C.C.A.N. 2631, 2631 ..................................................................... 8

Wash. Rev. Code § 69.50.325 (2020)............................................................. 11

Wash. Rev. Code § 69.50.331(1)(b) (2020) .......................... 2, 6, 8-11, 13-14, 18-19

Wash. Rev. Code § 69.51A.010(19)(a)(iii) (2015)......................................... 11

**Regulations**

Wash. Admin. Code § 314-55-020(11) (2021)................................ 6-10, 13-14, 18-19

Wash. Admin. Code § 314-55-035(1) (2020)................................. 6-10, 13-14, 18-19

**Other Authorities**

"Using it" and "What if I'm traveling?,"
   https://www.knowthisaboutcannabis.org/the-law/, *available at:*
   https://lcb.wa.gov/mj-education/marijuana-education ....................................... 12

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

vi

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

## I.     INTRODUCTION AND REQUEST FOR RELIEF

Marijuana is federally illegal. Brinkmeyer asks this Court to ignore this salient fact and instead treat state laws regulating marijuana in the realm of apples, milk, or alcohol. If this was an apples to apples comparison, there would be little debate as to whether the dormant Commerce Clause applies. Those goods are each part of a collective national market, "fostered by the Commerce Clause, [such] that every farmer and every craftsman shall be encouraged to produce by the certainty that he will have free access to every market in the Nation, that no home embargoes will withhold his export, and no foreign state will by customs duties or regulations exclude them." *H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 539 (1949). Such lofty goals of our founders should be protected, and are by the dormant Commerce Clause. However, this case doesn't involve lawful goods or markets of lawful interstate commerce. This case relates entirely to commerce in marijuana, a substance that Congress, acting through its affirmative Commerce Clause power, eliminated from any form of lawful interstate commerce via the Controlled Substances Act, 21 U.S.C. §§ 801-904 (CSA) (1970). As a result, this Court should not find Washington's Residency Requirements violate the dormant Commerce Clause.

Likewise, our Constitution's Article IV and Fourteenth Amendment protect fundamental rights imperative to our nation's unity. They were not intended to protect a person's right to engage in a federally illegal enterprise, and because of this, Brinkmeyer can establish no violation.

This Court should deny Brinkmeyer's Motion for Summary Judgment (Motion).

## II.     EVIDENCE RELIED ON

1.     Declaration of Rebecca Smith, Director of Licensing for the Washington State Liquor and Cannabis Board, filed in support of Respondent's Motion for Summary Judgment.

**2.**     Declaration of Captain Joshua Bolender, Washington State Liquor and Cannabis Board, Enforcement and Education Division, filed in support of Respondent's Motion for Summary Judgment.

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO.  3:20-CV-05661-BHS

2

# III.   ARGUMENT

## A.   Brinkmeyer Lacks Standing to Bring This Action and His Claims Are Not Ripe

Brinkmeyer failed to demonstrate standing and ripeness in his Petition. *See* Dkt. # 1, Attach. 2, ¶ 24. In the Petition, Brinkmeyer hoped to obtain Atkison's ownership in his marijuana retailers upon Aktison's death or declining health. *Id*. Specifically, the Petition alleges, "One of the Retailer owners is in ill health, and, in planning out the transfer of his estate upon his declining health or death, would like to bequeath in part and sell in part his ownership interest in the Retailer to Petitioner." *Id.* Both Brinkmeyer's and Atkison's earlier declarations confirmed that any transfer was contingent upon Atkison's declining health or death. *See* Dkt. # 7 ¶ 8; Dkt. #8 ¶ 5;

It was not until June of 2021, a year after Brinkmeyer filed his Petition, that Atkison indicated for the first time that he would immediately transfer a portion of his interest in the stores to Brinkmeyer and he would transfer additional equity to Brinkmeyer upon his death. *See* Dkt. #35 ¶ 6. This newly-stated intent to immediately transfer a portion of ownership does not create standing, because it does not establish he suffered a concrete injury at the time that he filed his Petition. Standing must exist at the time the complaint is filed and through all stages of the litigation. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Or. Prescription Drug Monitoring Program v. U.S. Drug Enf't Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017); *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Here, the Petition evinces only a "some day" intent to transfer equity upon Atkison's death and it is not sufficient to establish standing or a ripe controversy. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("'Some day' intentions —without any . . . specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury.").

Brinkmeyer's claims in his Petition are entirely dependent on contingent future ownership that may never occur. *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (citations omitted). For example, Atkison may outlive Brinkmeyer, or sell his interests prior to his death

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1   to someone else. As a result, Brinkmeyer failed to establish in his Petition that he suffered a

2   concrete and particularized injury to a legally protected interest that is actual or imminent and

3   he has no standing to bring this suit. *Nat'l Council of La Raza v. Cegavske,* 800 F.3d 1032, 1039

4   (9th Cir. 2015); *see also Lujan*, 504 U.S. at 560-61; U.S. Const. Art. 3, § 2, cl. 1; *Raines*, 521

5   U.S. at 818-819.

6          Finally, the declarations submitted by Brinkmeyer with his motion, establish that he lacks

7   standing to bring his Fourteenth Amendment Equal Protection and Privileges and Immunities

8   claims. The basis for these claims is the discrimination he would face as a new resident of

9   Washington. *See* Dkt. #39 at p. 16. However, Brinkmeyer is an Idaho resident and does not want

10  to become a Washington resident. *See* Dkt. # 35 ¶¶ 3-4; Dkt # 36 ¶ 7. Therefore, he lacks standing

11  for these Fourteenth Amendment claims.

12  **B.     Washington's Residency Requirements Do Not Violate the Dormant Commerce
         Clause**

13

14         Usually, Congress exercises its Commerce Clause powers to support a national market.

    *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997) (quoting *H.P. Hood & Sons, Inc. v. Du*

15  *Mond,* 336 U.S. 525, 539 (1949)). The dormant Commerce Clause protects this national market

16  by ensuring that states do not interfere with the free flow of interstate commerce. *See Tracy*, 519

17  U.S. at 299; *Pac. Merch. Shipping Ass'n v. Goldstene*, 639 F.3d 1154, 1177 (9th Cir. 2011).

18  However, where there is no national market to protect, the dormant Commerce Clause does not

19  apply. *See Tracy,* 519 U.S. at 300; *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1031

20  (9th Cir. 2021). In *Tracy*, the Supreme Court held that Ohio's differential tax treatment of natural

21  gas sales by domestic public utilities and out-of-state independent marketers did not violate the

22  dormant Commerce Clause. 519 U.S. at 300. In reaching its conclusion that there was no

23  violation, the Court considered "the threshold question whether the conditions entailing

24  application of the dormant Commerce Clause are present," *id.* at 307, by comparing the "central

25  assumption[s]" of the dormant Commerce Clause to the natural gas market along with related

26

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO.  3:20-CV-05661-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

acts of Congress. *Id.* at 299. Upon review, it found no "single market" for natural gas, and therefore "no local preference . . . to which the dormant Commerce Clause may apply." *Id.* at 300.

Here, as in *Tracy*, there is no unified national market to protect. Congress used its Commerce Clause powers to ban a national market. *See Gonzales v. Raich*, 545 U.S. 1, 22, 27 (2005). The cases cited by Brinkmeyer do not support his contention that the dormant Commerce Clause should protect a national market for contraband. They either involve a product not banned from interstate commerce, such as alcohol in *Tennessee Wine*, *see* Section III.B.1, *infra*, or assume the dormant Commerce Clause applies. *See* Section III.B.3, *infra*. A court faced with a dormant Commerce Clause challenge must first ask, "[W]hether the conditions entailing application of the dormant Commerce Clause are present?" *Tracy*, 519 U.S. at 307. As explained below, Brinkmeyer's cited cases do not adequately address this question.

### 1. *Tennessee Wine* does not support a finding of a dormant Commerce Clause violation for commerce banned by Congress

*Tennessee Wine* provides this Court with no guidance for the threshold question posed in *Tracy*, whether the dormant Commerce Clause applies to an illegal market. For the Oklahoma Federal District Court, the illegality of marijuana was dispositive. *See Original Invs., LLC v. State*, 542 F. Supp. 3d 1230, 1233-36 (W.D. Okla. 2021). This district court refused to consider the application of the dormant Commerce Clause to residency requirements in the marijuana industry, because marijuana remains federally illegal. *Id.* Instead, it held that it could not use its equitable powers to facilitate illegal conduct. *See id.* at 1237, 1233 (citing in part 18 U.S.C. § 2 (1951); *see also In re Medpoint Mgmt., LLC*, 528 B.R. 178, 186 (Bankr. D. Ariz. 2015), vacated in part on other grounds, 2016 WL 3251581 (B.A.P. 9th Cir. June 3, 2016) (denying petition for relief that would then result in the appointed chapter 7 trustee necessarily violating the CSA in managing marijuana assets). This Court should follow suit: for the reasoning provided in *Original Investments, LLC,* 542 F. Supp. 3d at 1233-36, and under *Tracy*, *supra*.

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    *Tennessee Wine* also did not address whether Congress exercised its affirmative

2    Commerce Clause authority to prohibit marijuana commerce, or left its authority dormant.

3    The Supreme Court applied the dormant Commerce Clause presumptions only after concluding

4    that Section 2 of the Twenty-first Amendment *was not* an exercise of Congress's Commerce

5    Clause power over the matter. *Tennessee Wine and Spirits Retailers Ass'n v. Thomas*, 139 S. Ct.

6    2449, 2462 (2019). Two pre-Prohibition acts of Congress—the Wilson Act and the Webb-Kenyon

7    Act—outlined the federal-state regulatory structure, which did not include a "ban [on] all interstate

8    shipment of alcohol." *Id.* at 2466-67. These acts gave "each State a measure of regulatory authority

9    over the importation of alcohol" but also mandated that "States treat[] in-state and out-of-state liquor

10   on the same terms." *Id.*

11        Brinkmeyer suggests states have less authority to regulate marijuana than they have for

12   alcohol. *See* Dkt. # 34 at p. 12. However, this point is as incorrect as it is misplaced. At issue

13   here is whether Congress exercised its Commerce Clause powers. *Cf. Tennesee Wine*, 139 S. Ct.

14   at 2462. In *Tennessee Wine*, the Supreme Court found that Congress did not. *Id.* And in *Raich*, it

15   determined that Congress did. *See Raich*, 545 U.S. at 13, 27. This difference between Congress's

16   actions, directing states to treat in-state and out-of-state liquor on the same terms versus outright

17   banning marijuana, requires a different result than the one reached in *Tennessee Wine*. *Compare*

18   *Tennessee Wine*, 139 S. Ct. at 2466-67, *with Raich*, 545 U.S. at 13, 27. The dormant Commerce

19   Clause does not apply where Congress's powers are not dormant. *See Ne. Bancorp., Inc. v. Bd.*

20   *of Governors of Fed. Rsrv. Sys.*, 472 U.S. 159, 174 (1985). As a result, this Court should not

21   apply the dormant Commerce Clause to invalidate Wash. Rev. Code § 69.50.331(1)(b)

22   (2020), Wash. Admin. Code §§ 314-55-020(11) (2021), -035(1) (2020), collectively referred to

23   as the "Residency Requirements."

24        **2.    Even so, *Tennessee Wine* supports the Justifications**

25        The Supreme Court in *Tennesee Wine* permitted states to pursue their "legitimate

26   interests" in addressing the health and safety risks associated with the alcohol trade. 139 S. Ct.

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

at 2472 (alteration in original) (quotes omitted). The Court clarified the standard for evaluating a discriminatory alcohol-related regulation, charging courts to "ask whether the challenged [discriminatory] requirement can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground." *Id.* at 2474. If the "predominant effect" of the discriminatory law is protectionism and not "the protection of public health or safety," then it violates the dormant Commerce Clause. *Id.* In conducting the inquiry, courts must look for "concrete evidence" that the statute "actually promotes public health or safety," or evidence that "nondiscriminatory alternatives would be insufficient to further those interests." *Id.*

Here, the predominant effect of the Residency Requirements is to protect public health or safety from a Schedule I controlled substance. The health and safety risks associated with marijuana are such that the federal government prohibited any use, and deemed it contraband. *See* 21 U.S.C. § 812(c), (b)(1) (2018). The Board provided this Court with declarations and exhibits, providing concrete evidence why the Residency Requirements are necessary for the Board to protect public health and safety by preventing diversion. *See* Dkt. # 39 at p. 12-13 (collectively referred to as Justifications). This Court should find these Justifications compelling, because the State faces different challenges in regulating marijuana that were not at issue in *Tennessee Wine*. Because marijuana is still illegal in some states, the industry attracts organized crime. *Cf.* Dkt. # 33 ¶ 2. Washington's Residency Requirements serve to take marijuana out of the hands of organized crime. Dkt. # 32 ¶ 10, and Dkt. # 32, Ex. 4 at 6 ("[R]esidency requirements, such as those in Colorado and Washington, were based on a fear that legal marijuana would be easily diverted into the black market. Residency requirements could, according to regulators, keep profits our of international drug cartels . . . ."). They therefore serve a purpose that was not at issue in *Tennessee Wine*. Where organized crime has been a recognized issue, the Eighth Circuit supported residency requirements. *See* Section III.C.4 *infra.*

In his Motion, Brinkmeyer mischaracterizes the Board's Answer, by stating it "has admitted that a primary purpose of the Residency Requirements is economic protectionism."

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

Dkt. #34 at p. 25 (citing Answer ¶ 18). The Board did not identify a primary purpose in its Answer, rather it identified "several reasons, including, but not limited to, creating business opportunities and jobs for Washingtonians, improving public safety due to easier enforcement of relevant cannabis laws within the State, respecting the federal government's concerns regarding the federal illegality of cannabis, and respecting other states, such as Idaho, who chose not to legalize marijuana." Dkt. # 38, Ex. A ¶ 18. Based on this Answer and the Justifications, this Court should find that the predominant purpose is to protect public health and safety and the Residency Requirements serve to meet this legitimate interest of the State.

**3.    The District Court cases cited by Brinkmeyer do not support a finding of a dormant Commerce Clause violation for Washington's Residency Requirements**

Brinkmeyer cites to a string of district court cases from other circuits to support his argument that the Residency Requirements violate the dormant Commerce Clause. Dkt. # 34 at p. 12-13. However, these non-binding cases from other circuits are factually and legally distinguishable.

**a.    South Dakota gambling residency requirements**

In determining whether the dormant Commerce Clause applies, this Court should find *Gulch Gaming, Inc. v. State of S.D.*, 781 F. Supp. 621 (D. S.D. 1991), unavailing. Federal law does not *per se* deem gambling illegal. *See Gamble v. United States*, 139 S. Ct. 1960, 1969 (2019) (noting the federal government permits the sale of alcohol and gambling but states forbid or heavily restrict them and the federal government prohibits the sale of marijuana but states permit it is a product of our well-functioning federalist system). Instead, Congress passed several laws to support state enforcement of their gambling laws. *See, e.g.,* The Wire Act of 1961 (Wire Act), H.R.REP. NO. 87–967 (1961) reprinted in 1961 U.S.C.C.A.N. 2631, 2631. The Wire Act cited in *Gulch Gaming, Inc.*, 781 F. Supp. at 626, criminalizes the use of wire communication facilities to place bets through interstate or foreign commerce *only* when the states prohibit gambling. *See* 18 U.S.C. §§ 1084(a), (b) (1994). Congress did not grant such permissions for

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO.  3:20-CV-05661-BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  marijuana. *See Raich*, 545 U.S. at 13, 27. As a result, this Court should not find *Gulch Gaming*

2  persuasive authority.

3        Aside from the legal differences regarding the status of the activity under federal law, the

4  statutory scheme for residency requirements also differs. *Gulch Gaming* involved a state

5  regulatory scheme that granted licensure to foreign corporations, but demanded a majority of the

6  ownership interest in the corporation be held by South Dakota citizens. *Gulch Gaming*, 781 F.

7  Supp. at 623-24. The district court held the state's majority ownership requirement violated the

8  dormant Commerce Clause, in part because it could not find a rational basis for allowing foreign

9  corporations, but requiring majority shareholder residency. *Id.* at 627. Here, Washington's

10  Residency Requirements do not allow foreign corporations to obtain licensure. *See* Wash. Rev.

11  Code § 69.50.331(1)(b) (2020), Wash. Admin. Code §§ 314-55-020(11) (2021), -035(1) (2020).

12  Therefore, Washington's regulatory scheme is consistent in its rationale for requiring residency.

      **b.**    **Michigan and Maine marijuana residency requirements**

13

14        Second, Brinkmeyer cites to two cases out of Maine: *NPG, LLC v. City of Portland*,

15  No. 2:20-cv-00208, 2020 WL 4741913, (D. Me. Aug. 14, 2020) (slip opinion) (challenging city

16  ordinance granting preferential licensing treatment to long-time residents); and *Ne. Patients Grp.*

17  *v. Me. Dep't of Admin. and Fin. Servs.*, No. 1:20-cv-00468-NT, 2021 WL 3560840 (D. Me. Aug.

18  11, 2021) (slip opinion) (challenging state law requiring officers and directors of medical

19  marijuana dispensaries to be Maine residents). He additionally cites to *Lowe v. City of Detroit*,

20  544 F.Supp.3d 804 (E.D. Mich. June 17, 2021) (challenging ordinance granting preferential

21  status to long-term residents for marijuana licenses in recognition of the harm suffered by the

22  community due to the War on Drugs), which mirrors the dormant Commerce Clause analysis in

23  *NPG, LLC*, so the two can be considered in tandem. *See Lowe*, 544 F.Supp.3d at 815-16 (citing

24  the analysis in *NPG, LLC*). These cases fail to adequately analyze the question of whether the

25  Commerce Clause should apply at all.

26  / / /

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO.  3:20-CV-05661-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

In *NPG, LLC*, and in *Lowe*, the district court cases did not discuss whether the dormant Commerce Clause should apply to support a national market for a product Congress deemed illegal. *NPG, LLC*, 2020 WL 4741913, at *8; *Lowe*, 544 F.Supp.3d at 815. Rather they narrowly focused on the economic protectionist concerns of the dormant Commerce Clause, and then without asking whether the dormant Commerce Clause should apply, turned to the burden carried by the state to show a legitimate local purpose under the dormant Commerce clause. *NPG, LLC*, 2020 WL 4741913, at *8; *Lowe*, 544 F.Supp.3d at 815. In so doing, they fail to recall the purpose of the Commerce Clause, i.e., protecting national markets, and fully grapple with the contraband status of marijuana. Congress does not want there to be a national market for marijuana. Therefore, the dormant Commerce Clause should not apply to the Residency Requirements.

Additionally, the Maine District Court erred in *NPG, LLC*, by applying the wrong test to measure Congress's exercise of its affirmative Commerce Clause power to regulate marijuana in interstate commerce. *See* 2020 WL 4741913, at *9. The Court relied upon the narrow standard at issue in *New England Power Co.* and *Maine v. Taylor* to scrutinize the CSA for a specific grant of state authority to restrict ownership in state marijuana markets. *See id.* (citing *New England Power Co. v. N.H.*, 455 U.S. 331, 340 (1983); and *Maine v. Taylor*, 477 U.S. 131, 138-39 (1986)). This case, however, calls for an application of the far broader test articulated in *Champion v. Ames* recognizing Congress's right to completely prohibit certain kinds of interstate commerce. *Champion v. Ames*, 188 U.S. 321, 328-29 (1903). The resulting analysis missed the forest for the trees, overlooking the federal law's "comprehensive regime" "directly regulat[ing] economic, commercial activity" by "excluding [marijuana] entirely from the market," *Raich*, 545 U.S. at 12, 26, in its search for a hyper-specific grant of state rights specifically to burden the interstate commerce of Schedule I drugs. *See NPG*, LLC, 2020 WL 4741913, at *10. Under our federal system, states were allowed to incubate legalization of marijuana, but only so far as it did not challenge the CSA.

RESPONDENT'S RESPONSE TO BRINKMEYER'S MOTION FOR SUMMARY JUDGMENT -- NO.  3:20-CV-05661-BHS

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

In *Northeast Patients Group*, for the first time, a district court considered the argument that the dormant Commerce Clause should not apply to protect a national market for a contraband substance. *See Ne. Patients Grp.,* 2021 WL 3560840, at *4. The district court recognized that this argument "is not without logic," but then found fault with the argument on the basis that in Maine the marijuana industry is not wholly intrastate. *Id.* at *5. Maine allows nonresidents to purchase marijuana for medical use at Maine facilities, to purchase marijuana to take it home with them, and to participate in marijuana extraction facilities. *Id.* It then faulted Maine for failing to meet its burden under the dormant Commerce Clause. *Id.* Later, upon considering a motion to stay pending appeal, the district court recognized the Defendants could win its appeal. *See Ne. Patients Grp. v. Me. Dep't of Admin. & Fin. Servs.*, No. 1:20-cv-00468-NT, 2021 WL 5041216, at *3 (D. Me. Oct. 27, 2021) (slip opinion). As Maine made an adequate showing of their likelihood of success on the merits, the district court granted Maine's motion. *See id.*

Because Washington's regulatory scheme is distinct from Maine's, this Court should reach a different conclusion. Here, Washington has taken pains to make its marijuana industry wholly intrastate. *See Headspace Int'l LLC v. Podworks Corp.*, 5 Wash. App. 2d 883, 894 (2018) (describing the Residency Requirements' role in maintaining compliance with CSA). It does not allow nonresidents to obtain a medical marijuana card, or to participate in marijuana extraction, a.k.a., processor facilities. *See* Wash. Rev. Code § 69.51A.010(19)(a)(iii) (2015) (requiring patient to be a Washington resident), *State v. Tracy*, 128 Wash. App. 388, 396 (2005) (requiring that "only those physicians validly licensed in Washington may prescribe medical marijuana to persons in this state."); Wash. Rev. Code § 69.50.331(b)(1) (2020) (applying residency requirement to all marijuana licensees); Wash. Rev. Code § 69.50.325 (2020) (businesses that obtain a license to produce, process, or sell marijuana products must not permit any other person or entity to use the license or to participate in the production, processing, or sale of marijuana products). Although Washington does not expressly prohibit nonresidents from taking marijuana

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    home with them, it does warn residents and nonresidents that it remains a federally illegal

2    substance, so it's illegal to take marijuana across state lines or onto federal lands. *See* "Using it"

3    and "What if I'm traveling?," https://www.knowthisaboutcannabis.org/the-law/, *available at:*

4    https://lcb.wa.gov/mj-education/marijuana-education. Moreover, it is not clear that the Board

5    would have jurisdiction to prevent non-residents' activities in other states, so this expectation by

6    the Maine District Court is not reasonable. As Washington's regulatory scheme creates a well-

7    regulated, wholly intrastate market for activities within its jurisdiction, the dormant Commerce

8    Clause should not apply.

9           Finally, the Maine District Court failed to consider whether the dormant Commerce

10   Clause applied and assumed that it did. Without addressing this threshold issue, the court

11   incorrectly applied the dormant Commerce Clause to a market that Congress prohibits. *See Ne.*

12   *Patients Grp.,* 2021 WL 3560840, at *5. This burden should only apply if a court first determines

13   that the dormant Commerce Clause applies. As shown by the Board, it does not. Dkt. # 39 at p.

14   18-23.

15                **c.    Missouri's marijuana residency requirements**

16          A careful analysis of Missouri's Western District Court case leads to similar results. *See*

17   *Toigo v. Dep't of Health & Senior Svcs.*, No. 2:20-cv-04243, 2021 WL 5533412 (W.D. Mo. June

18   21, 2021) (slip opinion). In *Tiogo*, a nonresident of Missouri challenged the one-year residency

19   requirement for the majority owners of a business applying for a medical marijuana facility

20   license. 2021 WL 5533412, at *1-2. In deciding whether a preliminary injunction should be

21   granted, the district court incorrectly cited Supreme Court precedent for the following

22   proposition:

23         Courts have applied the dormant commerce clause to marijuana facilities
           regulated by states that have legalized or partially legalized the drug despite the

24         fact that it remains a controlled substance under federal law. *See . . . South-*
           *Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87-88, 104 S. Ct. 2237, 81

25         L.Ed.2d 71 (1984) (holding the Controlled Substances Act did not grant states the
           power to burden interstate commerce in substances regulated under the Act).

26

RESPONDENT'S RESPONSE TO                    12            ATTORNEY GENERAL OF WASHINGTON
BRINKMEYER'S MOTION FOR                                        1125 Washington Street SE
SUMMARY JUDGMENT --                                                  PO Box 40100
NO. 3:20-CV-05661-BHS                                          Olympia, WA 98504-0100
                                                                   (360) 664-9006

*Tiogo*, 2021 WL 5533412, at \*3. Although this case has been cited by petitioners similarly situated to Brinkmeyer, *South-Central Timber Development, Inc*. has nothing to do with the CSA. *See South-Central Timber Dev., Inc*., 467 U.S. at 88. The plurality, in *South-Central Timber Dev., Inc*., found state lumber laws to be protectionist because they required "business operations to be performed in the home State that could more efficiently be performed elsewhere." *Id.* at 100 (quotation omitted). And "block[ed] the flow of interstate commerce." *Id.* Here, there is no efficiency to be achieved with striking down the Residency Requirements. By striking down the Residency Requirements, Washington's markets will not be in competition with other states. Rather, to maintain compliance with federal law, it must be kept wholly intrastate. There can be no "flow of interstate commerce," and thus there can be no dormant Commerce Clause violation. *See id.* After mischaracterizing Supreme Court precedent, the *Tiogo* court applies the dormant Commerce Clause without recognizing the implications of Congress banning marijuana from an interstate market: the most obvious being that the dormant Commerce Clause does not apply.

Additionally, the district court's analysis of Missouri's justifications can be distinguished, because the Board presented a stronger record. The *Tiogo* court rejected administrative burden as an insufficient justification. 2021 WL 5533412, at \*4-5. It then rightly recognized that preventing the illicit diversion of medical marijuana was a legitimate interest. *Id.* at \*5. However, it went on to cite other regulatory measures as sufficient obstacles to preventing diversion, including tracking marijuana seed-to-sale, video surveillance, access to business records, and criminal background checks. *Id.*

Here, the Board presented evidence regarding the necessity of the Residency Requirements as opposed to the administrative ease rejected by the *Tiogo* court. *See id.* at \*4-5. For example, Captain Bolender declared they were necessary to conduct proper investigations. Dkt. # 33 ¶ 3. And Director Smith declared they were necessary for a thorough background check, the Board's social equity program, and maintaining our state's regulatory scheme.

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

Dkt. #32 ¶¶ 10-16. Also, contrary to the district court's analysis, the primary goal of Residency Requirements is to investigate licensees *before* they obtain their license and divert marijuana. Dkt. #32 ¶ 10.

Furthermore, the additional after-the-fact compliance measures cited by the district court would be impaired by the removal of the Residency Requirements. In his declaration, Captain Bolender declared that surveillance and business records are often within the control of the owner, making it difficult to investigate potential violations when owners are remote. Dkt. # 33 ¶ 3. He also declared removal of Residency Requirements would hamper investigations on account of their impaired ability to conduct in-person interviews. *Id.* Lastly, policy experts have pointed out that giving marijuana protection under the dormant Commerce Clause would hinder states' diversion prevention efforts, including the intrastate seed-to-sale tracking systems. Dkt. #32, Ex. 3 at 1 (track-and-trace systems are only feasible for restricted interstate commerce). In light of this evidence, this Court should deny Brinkmeyer's dormant Commerce Clause claims.

## C.    Brinkmeyer's Other Constitutional Challenges

Brinkmeyer also alleges that the Residency Requirements violate the Article IV Privileges and Immunities Clause, and the Fourteenth Amendment Privileges and Immunities Clause, Equal Protection Clause, and Due Process Clause.

For each of these rights, the analysis begins with whether the state laws impair a fundamental right. *See Heller v. Doe,* 509 U.S. 312, 319-21 (1993); *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997); *Daly v. Harris*, 215 F. Supp. 2d 1098, 1109 (D. Haw. 2002), aff'd, 117 Fed. Appx. 498 (9th Cir. 2004) (sustaining a $3 beach access fee for nonresidents over Privileges and Immunities claim as beach access is not a fundamental right). If not, the law is subject to rational basis scrutiny. *Heller,* 509 U.S. at 320. In analyzing whether an asserted right is "fundamental," Courts consider whether it is objectively, "deeply rooted in this Nation's history and tradition." *Glucksberg*, 521 U.S. at 720-21 (citation omitted). As demonstrated in the

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

Board's summary judgment motion, Brinkmeyer has no fundamental right to engage in interstate marijuana commerce. *See* Dkt. #39 at p. 24-26.

Brinkmeyer's Motion attempts to broadly shoehorn the fundamental rights at issue as his right to travel to pursue a livelihood or a profession, while ignoring that marijuana is federally illegal. This Court should reject such an attempt.

**1. This Court should narrowly draw Brinkmeyer's asserted fundamental right as the right to obtain a license to sell marijuana**

Brinkmeyer asserts no fundamental right, because marijuana remains federally illegal. In making a fundamental rights assessment, the Supreme Court requires a careful description of the asserted fundamental right. *Washington v. Glucksberg,* 521 U.S. 702, 721-22 (1997). The Ninth Circuit found this precedent required a court to "narrowly" identify the right at stake. *Raich v. Gonzales*, 500 F.3d 850, 863 (9th Cir. 2007) (citing *Glucksberg*, 521 U.S. at 722; *and Reno v. Flores*, 507 U.S. 292, 302 (1993) (noting that the asserted liberty interest must be construed narrowly to avoid unintended consequences)).

In the *Raich* Ninth Circuit case, a user of marijuana for medical purposes petitioned for an injunction against the threat of seizure of her marijuana plants based in part on a substantive due process claim. *Raich*, 500 F.3d at 854, 861. She described her right as one to "make life-shaping medical decisions that are necessary to preserve the integrity of her body, avoid intolerable physical pain, and preserve her life." *Id.* at 864. The Ninth Circuit rejected this broad characterization, and pointed out that the centerpiece of her right was missing – that is, she wanted to use marijuana. *Id.* It instead held that the petitioner's asserted right was more accurately characterized as "the right to use *marijuana* to preserve bodily integrity, avoid pain, and preserve her life." *Id.* In narrowly describing the asserted fundamental right, the court held that the asserted right was not a fundamental right, because marijuana was illegal under federal law. *Id.* at 866.

/ / /

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

15

Similar to the petitioner in *Raich*, Brinkmeyer broadly characterizes the fundamental right at issue as his right to travel or his right to pursue a livelihood.[1] As in *Raich*, this asserted right is missing its centerpiece – i.e., it involves marijuana. Therefore, the Court should reject Brinkmeyer's broad characterization of the fundamental right and instead narrow it to: the right to obtain a license to sell marijuana. This should conclude the Court's analysis. As marijuana is still federally illegal, it cannot be considered fundamental to this nation's unity. *See Raich*, 500 F.3d at 866; *Glucksberg*, 521 U.S. at 720-21.

### 2. Brinkmeyer's right to travel is not impermissibly impinged by the Residency Requirements

The right to travel raised by Brinkmeyer involves two rights: one, expressly addressed by the first sentence of Article IV, provides a citizen of one state who is temporarily visiting another state the same fundamental rights of a citizen of the latter state; and the second, based on the Equal Protection Clause and Privileges and Immunities Clause of the 14th Amendment, is the right of a new arrival to a state, who establishes citizenship in that state, to enjoy the same rights and benefits as other state citizens. *Saenz v. Roe*, 526 U.S. 489, 500 (1999). Here, this Court should find that the first right to travel does not include the right to pursue an illegal livelihood. For the second right protecting new residents, it should find that a six-month wait does not impermissibly impinge on a new resident's right to travel.

### a. That is because the right to travel to pursue an illegal livelihood does not constitute a fundamental right

The nature of the business is crucial to a court's analysis to determine if the right is basic to the maintenance of well-being of the union. *See, e.g., Sup. Ct. of N.H. v. Piper*, 470 U.S. 274, 281 (1985) (finding the practice of law is important to the national economy); *Hicklin v. Orbeck*, 437 U.S. 518, 533–34 (1978) (finding "oil and gas upon which Alaska hinges its discrimination against nonresidents are of profound national importance"). It must also be lawful.

---

[1] The Petitioner frames these as two separate rights to consider by this Court. However, the right to travel that is argued by the Petitioner appears to be the same as the right to livelihood or common calling described in *Saenz v. Roe*, 526 U.S. 489, 501–02 (1999), which cites "common calling" cases as embracing the right to travel. While two rights are argued, in essence it is one right contained in U.S. Const. art. IV, § 2.

RESPONDENT'S RESPONSE TO BRINKMEYER'S MOTION FOR SUMMARY JUDGMENT -- NO. 3:20-CV-05661-BHS

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

*Hicklin*, 437 U.S. at 525 (The Privileges and Immunities Clause "plainly and unmistakably secures and protects the right of a citizen of one State to pass into any other State of the Union for the purpose of engaging in *lawful* commerce, trade, or business without molestation.") (quoting *Ward v. Maryland*, 79 U.S. 418, 430 (1871) (emphasis added)). As a result, this Court should find that Brinkmeyer's asserted right to own a marijuana retail license is not protected as a fundamental right.

> **b.   A six-month waiting period for a license does not impermissibly discriminate against new residents**

In determining whether a durational residence requirement impinges on right to travel in an unconstitutional manner, consideration must be given to the extent the residence requirement serves to penalize exercise of right to travel. *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 256-57 (1974). In cases involving a delayed benefit, as opposed permanently lost, the Courts have found no violation. For example, it approved residency requirements for obtaining a divorce decree after some delay. *Sosna v. Iowa*, 419 U.S. 393, 406-08 (1975). This Court approved them for obtaining lower in-state tuition for college. *See Sturgis v. State of Wash.*, 368 F. Supp. 38, 41-42 (W.D. Wash. 1973), aff'd sub nom. *Sturgis v. Washington*, 414 U.S. 1057 (1973).

On the other hand, the Supreme Court has rejected durational residency requirements in circumstances where the benefits were permanently lost, and could not be recouped. For example, it rejected residency requirements for receipt of welfare benefits and healthcare benefits. *See Shapiro v. Thompson*, 394 U.S. 618, 627 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651, 670-72 (1974); *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 269-70 (1974). In *Attorney General of New York v. Soto-Lopez*, the Court struck down a statute that granted a civil service employment preference to only veterans who, among other things, had been residents of New York when they enlisted in the army. 476 U.S. 898, 900, 908-09 (1986). Importantly, the Court noted that the impact on the right to travel was "unquestionably substantial" because the statute denied a "significant benefit" and was the difference "between winning or losing civil service employment, with its attendant job security, decent pay, and good

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO. 3:20-CV-05661-BHS

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1    benefits." *Id*. The Court also noted that because the veterans could not change whether they were

2    New York residents at the time of enlistment, the benefit was permanently deprived and the

3    statute "clearly operate[d] to penalize appellees for exercising their rights to migrate." *Id*. at 909.

4        Here, it cannot be said that a six-month waiting period for a marijuana license penalizes

5    the right to travel under the Fourteenth Amendment. For new Washington residents, the privilege

6    is not lost, rather, they must wait their turn. Therefore, this Court should find that like the cases

7    involving divorce and in-state tuition, the Residency Requirements do not violate the Fourteenth

8    Amendment's Privileges and Immunities, and Equal Protection clauses. *See Sosna*, 419 U.S. at

9    406-08; *Sturgis*, 368 F. Supp. at 41-42.

10       **3.    Similar to the right to travel analysis, Brinkmeyer's alleged right to pursue
              a profession under the Fourteenth Amendment's due process right fails**

11       Brinkmeyer also raises a right to pursue a profession under the Fourteenth Amendment's

12   Due Process Clause. Dkt. #34 at p. 27.[2] However, this clause does not protect simply the "right

13   to pursue a profession." *Id*. Rather, the Supreme Court has recognized that the Due Process

14   Clause protects professions from arbitrary interference. *See Williamson v. Lee Optical of Okla.*

15   *Inc.*, 348 U.S. 483, 486, 491 (1955). However, in construing this clause, the Supreme Court has

16   held that the pursued livelihood must be "lawful." *See Allgeyer v. State of La.,* 165 U.S. 578, 589

17   (1897); *Raich*, 500 F.3d at 866 (due process liberty claim denied due to illegal status of

18   marijuana). In its Motion, the Board established that federal due process rights did not protect

19   liberties involving marijuana, even where states provided protections under state law. *See* Dkt.

20   #39 at p. 24-26. Federal law does not protect a person's liberty interests when it involves an

21   illegal activity. *Raich*, 500 F.3d at 866.

22       Moreover, as Brinkmeyer concedes, this right requires only a rational basis review.

23   In *Williamson*, the Supreme Court recognized that it is for the Legislature, not the courts, to

24   balance the advantages and disadvantages of a requirement. *Williamson*, 348 U.S at 487. It

25

26   _____
     [2] Brinkmeyer asserted a different basis in his Petition: "There is no rational basis for treating Petitioner differently
     from other similarly situated residents." Dkt. # 1, Attach. 2, ¶ 50.

RESPONDENT'S RESPONSE TO                          18                    ATTORNEY GENERAL OF WASHINGTON
BRINKMEYER'S MOTION FOR                                                        1125 Washington Street SE
SUMMARY JUDGMENT --                                                                  PO Box 40100
NO. 3:20-CV-05661-BHS                                                            Olympia, WA 98504-0100
                                                                                     (360) 664-9006

applied a rational basis review, explaining "the law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Id.* at 487-88. As shown *infra*, this Court should find the Residency Requirements survive this test.

### 4. The Residency Requirements survive a rational basis review applied to laws affecting non-fundamental rights

The Eighth Circuit provides a persuasive example where it gave credence to the role residency requirements serve a state when attempting to regulate an industry that attracts organized crime. In *Chance Management, Inc. v. State of South Dakota*, the Eighth Circuit upheld a residency requirement for gambling licenses in South Dakota over Equal Protection Clause claims. 97 F.3d 1107, 1114-15 (8th Cir. 1996). Under a rational basis review, the Eighth Circuit found that the residency requirement was rationally related to legitimate interests averred by the state. *Id.* at 1115. It recognized that "gambling is generally understood to have a greater tendency to attract criminal infiltration than most other types of business enterprises." *Id.* As a result, the court gave credence to the state's need to do a thorough background check, and concluded residency requirements served to meet this need. *Id.*

Similar to *Chance Management, Inc.*, this Court should recognize Washington is regulating a product that attracts organized crime. *See* Dkt. # 33 ¶ 2. Taking marijuana out of the hands of organized crime was an express purpose of the legislation. 2013 Wash. Sess. Laws 29. Economic protectionism was not. *Id.* Consequently, this Court should find that the Legislature, in passing I-502, had a rational basis to require residency and these requirements serve to meet a need unique to the marijuana industry: keeping it out of the hands of organized crime. *Id.* In *Chance Management, Inc.*, the Eighth Circuit held South Dakota's residency requirements served to meet this purpose. 97 F.3d at 1115. For this compelling interest, this Court should find that the Residency Requirements do not violate Brinkmeyer's Constitutional rights.

RESPONDENT'S RESPONSE TO BRINKMEYER'S MOTION FOR SUMMARY JUDGMENT -- NO. 3:20-CV-05661-BHS

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

# IV.   CONCLUSION

Under our federal system, Washington took the risk of legalizing an industry prohibited by the federal government. It did so in part to take marijuana out of the hands of organized crime. This purpose is unique to the marijuana industry, and as such, the Residency Requirements should be given special consideration and credence. The Court should preserve this necessary feature of Washington's regulatory scheme, grant the Board's summary judgment motion, and deny Brinkmeyer's Motion for Summary Judgment.

DATED this 22nd day of February 2022.

ROBERT W. FERGUSON
Attorney General


s/*Penny L. Allen*
PENNY ALLEN, WSBA No. 18821
ELLEN RANGE, WSBA No. 51334
Assistant Attorneys General
1125 Washington St SE
Olympia, WA 98501
Phone: (360) 586-0092
Email: PennyL.Allen@atg.wa.gov
Email: Ellen.Range@atg.wa.gov
*Attorneys for Respondent*

RESPONDENT'S RESPONSE TO
BRINKMEYER'S MOTION FOR
SUMMARY JUDGMENT --
NO.  3:20-CV-05661-BHS

20