THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD BRINKMEYER

　　　　　　　Petitioner,

　　　v.

WASHINGTON STATE LIQUOR AND
CANNABIS BOARD,

　　　　　　　Respondent.

Case No. 3:20-cv-05661-BHS

**PETITIONER'S RESPONSE TO
RESPONDENT'S MOTION FOR
SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR:
MARCH 11, 2022**

**ORAL ARGUMENT REQUESTED**

PETITIONER'S RESPONSE TO RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT - i
Case No. 20-2-01568-34

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

I.      INTRODUCTION ...................................................................................................... 1

II.     EVIDENCE RELIED UPON .................................................................................... 1

III.    ARGUMENT .............................................................................................................. 2

        A.      Brinkmeyer's claims are justiciable because the LCB confirmed it will
                deny his application because he does not comply with the Residency
                Requirements. ............................................................................................... 2

                1.      The Residency Requirements are currently injuring Brinkmeyer by
                        thwarting his transactions to hold equity in the Stores. ................... 3

                2.      The LCB's enforcement of the Residency Requirements and
                        predetermination of Brinkmeyer's application are concrete injuries.......... 4

                3.      Brinkmeyer has a legally cognizable interest in having the LCB
                        review his application without bias.................................................... 7

                4.      No other standing or justiciability principle bars this Court from
                        adjudicating Brinkmeyer's claim. ..................................................... 7

        B.      The Residency Requirements violate the dormant Commerce Clause by
                facially giving preference to long-term Washington residents. ................... 8

                1.      The CSA does not authorize the State to pass discriminatory laws
                        that limit economic opportunities for nonresidents. ......................... 9

                2.      The Residency Requirement burden the interstate market for
                        investment in licensed cannabis businesses. ................................... 10

                3.      The LCB's Justifications for the Residency Requirements are
                        insufficient as a matter of law. ....................................................... 11

        C.      The State ignores the fundamental rights Brinkmeyer is asserting by
                disregarding the commercial opportunities the Residency Requirements
                eliminate for nonresidents. ......................................................................... 16

                1.      The Residency Requirements violate the Article IV Privileges and
                        Immunities Clause. .......................................................................... 16

                2.      The Residency Requirements violate Brinkmeyer's rights under
                        the Equal Protection Clause and Privileges or Immunities Clause
                        of the Fourteenth Amendment ......................................................... 19

                3.      The State's justifications fail rational basis review for violating
                        Brinkmeyer's right to pursue a profession. ..................................... 20

        D.      The State's Wild Speculations About Butterfly Effects of This Suit are
                Unfounded. ................................................................................................... 22

IV.     CONCLUSION......................................................................................................... 23

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*44 Liquormart, Inc. v. Rhode Island*,
4
    517 U.S. 484 (1996)..................................................................................................23

5

*Assoc. of Public Agency Customers v. Bonneville Power Admin*,
    733 F.3d 939 (9th Cir. 2013) ........................................................................................4
6

7

*Attorney General of New York v. Soto–Lopez*,
    476 U.S. 898 (1986)..................................................................................................20

8

*Baldwin v. Fish & Game Comm'n of Montana*,
9
    436 U.S. 371 (1978)..................................................................................................17

10

*Barnard v. Thorstenn*,
    489 U.S. 546 (1989)..................................................................................................19

11

12

*Benno v. Shasta Cty., California*,
    2021 WL 3912187 (E.D. Cal. 2021)..........................................................................18

13

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*,
14
    520 U.S. 564 (1997)..................................................................................................12

15

*Carey v. Piphus*,
    435 U.S. 247 (1978)....................................................................................................5

16

*Catholic League for Religious and Civil Rights v. City and Cty. of San Francisco*,
17
    624 F.3d 1043 (9th Cir. 2010) ......................................................................................7

18

*Clements v. Fashing*,
19
    457 U.S. 957 (1982)................................................................................................5, 6

20

*Conservation Force, Inc. v. Manning*,
    301 F.3d 985 (9th Cir. 2002) ....................................................................................12

21

22

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)................................................................................................3, 4

23

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*,
24
    103 F.3d 814 (9th Cir. 1996) ......................................................................................6

25

*Dittman v. California*,
    191 F.3d 1020 (9th Cir. 1999) ..................................................................................20

26

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

*Dunn v. Blumstein*,
    405 U.S. 330 (1972) ................................................................................19, 20

*Ecological Rights Foundation v. Pacific Lumber Co.*,
    230 F.3d 1141 (9th Cir. 2000) .............................................................................4

*Gonzales v. Raich*,
    545 U.S. 1 (2005) ................................................................................................10

*Granholm v. Heald*,
    544 U.S. 460 (2005) ............................................................................................12

*Gratz v. Bollinger*,
    539 U.S. 244 (2003) ..............................................................................................5

*Gulch Gaming, Inc. v. South Dakota*,
    781 F. Supp. 621 (D. S.D. 1991) ...................................................................11, 21

*Hajro v. U.S. Citizenship and Immigration Svcs.*,
    811 F.3d 1086 (9th Cir. 2016) .............................................................................4

*Hicklin v. Orbeck*,
    437 U.S. 518 (1978) ............................................................................................18

*Lowe v. City of Detroit*,
    2021 WL 2471476 (E.D. Mich. June 17, 2021) ...............................8, 9, 15, 22

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ..........................................................................................2, 4

*Mem'l Hosp. v. Maricopa Cty.*,
    415 U.S. 250 (1974) ............................................................................................20

*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.*,
    2021 WL 3560840 (D. Me. Aug. 11, 2021) ...............................8, 9, 10, 22

*New England Power Co. v. New Hampshire*,
    455 U.S. 331 (1982) ..............................................................................................9

*Northeast Bancorp, Inc. v. Board of Governors of Federal Reserve System*,
    472 U.S. 159 (1985) ........................................................................................9, 10

*NPG, LLC v. City of Portland*,
    2020 WL 4741913 (D. Me. Aug. 14, 2020) ........................................... *passim*

*Oregon Waste Sys., Inc. v. Dept. of Environmental Quality of Or.*,
    511 U.S. 93 (1994) ..............................................................................................12

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

*Pacific Employers Ins. Co. v. Industrial Accident Commission of State of Cal.*,
  306 U.S. 493 (1939)................................................................................................22

 *Supreme Ct. of New Hampshire v. Piper*,
  470 U.S. 274 (1985)................................................................................................19

*Raich v. Gonzales*,
  500 F.3d 850 (9th Cir. 2007) ................................................................................18

*Reitz v. Kipper*,
  674 F. Supp. 2d 1194 (D. Nev. 2009)...................................................................19

*Saenz v. Roe*,
  526 U.S. 489 (1999)..................................................................................16, 19, 20

*South-Central Timber Development, Inc. v. Wunnicke*,
  467 U.S. 82 (1984)....................................................................................................9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 ..............................................................................................................4

*Standing Akimbo, LLC v. U.S.*,
  141 S. Ct. 2236 (2021)............................................................................................10

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)..................................................................................................3

*Taniguchi v. Schultz*,
  303 F.3d 950 (9th Cir. 2002) ..................................................................................6

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
  139 S. Ct. 2449 (2019)..................................................................................... *passim*

*Thomas v. Union Carbide Agr. Products Co.*,
  473 U.S. 568 (1985)..................................................................................................7

*Toigo v. Dept. of Health and Senior Svcs.*,
  2021 WL 5533412 (W.D. Mo. June 21, 2021) ............................................... *passim*

*Toomer v. Witsell*,
  334 U.S. 385 (1948)..........................................................................................16, 17

*United Bldg. & Constr. Trades Council v. Mayor of Camden*,
  465 U.S. 208 (1984)..........................................................................................16, 18

*Ward v. State*,
  79 U.S. 418 (1870)..................................................................................................16

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Statutes**

RCW 69.50.335 ..................................................................................................................14

**Other Authorities**

WAC 314-55-083(3) ...........................................................................................................13

WAC 314-55-185.................................................................................................................13

WAC 314-55-521.................................................................................................................13

WAC 314-55-522.................................................................................................................13

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1

## I.    INTRODUCTION

2      Brinkmeyer wishes to invest in a licensed Washington business that operates exclusively

3  in the State of Washington.[1] Although the LCB has repeatedly vetted and approved Brinkmeyer

4  to loan money to that business, the LCB confirmed it will not approve his application to own a

5  portion of that business solely because he lives in Idaho. The Constitution has always prevented

6  states from this type of economic discrimination against residents of other states. The fact that

7  the business involved is in the licensed cannabis industry changes nothing.

8      Facing a veritable mountain of adverse authority, the State bases its motion on an

9  argument that has been rejected by every federal court to consider it. No federal court has found

10  that the Controlled Substances Act ("CSA") gives states the authority to regulate cannabis

11  markets in a way that discriminates against residents of other states. The courts that ruled on that

12  question have uniformly found that durational residency requirements in cannabis markets are

13  unconstitutional for violating the dormant Commerce Clause. Brinkmeyer asks this Court to

14  follow that substantial majority by denying the LCB's Motion for Summary Judgment and

15  granting his pending motion.

16      By granting Brinkmeyer's petition, Brinkmeyer will get nothing but the LCB's fair

17  treatment when it reviews his application. This Court's relief will be strictly limited to

18  preventing the LCB from engaging in unconstitutional conduct, and this Court should not be

19  swayed by the LCB's alarmism and muddying of the issues into believing otherwise.

20

## II.    EVIDENCE RELIED UPON

21      This brief relies on the Declaration of Andy Murphy in Support of Petitioner's Motion for

22  Summary Judgment ("Murphy Decl."), the Declaration of Andy Murphy in Support of

23  Petitioner's Response to Respondent's Motion for Summary Judgment ("Murphy 2d Decl."), the

24  Declaration of Chris Masse in Support of Petitioner's Motion for Summary Judgment ("Masse

25

26  [1] This brief uses the same abbreviations as used in Petitioner's Motion for Summary Judgment, Dkt. #34 ("Pet'r's Mot.").

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 1
Case No. 20-2-01568-34

Decl."), the Declaration of Todd Brinkmeyer in Support of Petitioner's Motion for Summary Judgment ("Brinkmeyer Decl."), the Declaration of Todd Brinkmeyer in Support of Petitioner's Response to Respondent's Motion for Summary Judgment ("Brinkmeyer 2d Decl."), the Declaration of Scott Atkison in Support of Petitioner's Motion for Summary Judgment ("Atkison Decl."), and the Court's file.

## III.    ARGUMENT

Brinkmeyer asks this Court to follow binding precedent and find that the Residency Requirements are unconstitutional as a matter of law. *See Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2475 (2019). In its motion, the State tacitly concedes that the Residency Requirements would not survive a full constitutional review. Dkt. #39 ("LCB's Motion") at 11 n.2 (acknowledging if cannabis were made federally legal the Residency Requirements "would likely need to be reevaluated"). As such, the State focuses its brief on spurious arguments about why this Court should not reach the merits of Brinkmeyer's claims even though the State has already asked the Court to do so. The State, however, fails to account for the numerous federal courts that rejected the same arguments it makes here.

**A.    Brinkmeyer's claims are justiciable because the LCB confirmed it will deny his application because he does not comply with the Residency Requirements.**

The LCB has already confirmed it will deny any application Brinkmeyer submits to hold equity in the Stores because he does not comply with the Residency Requirements. Masse Decl. Ex. A. Nevertheless, the LCB asserts Brinkmeyer lacks standing to challenge the Residency Requirements because the transaction the Residency Requirements precludes would allegedly only occur after Atkison passes, and is therefore too speculative to give Brinkmeyer standing. Dkt. #39 ("LCB Mot.") at 9–11. But to have standing, Brinkmeyer need only demonstrate that he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). That injury must be fairly traceable to the defendant and it must be likely that a favorable decision by the court would redress the

injury alleged. *Id.* The LCB does not contest that the Residency Requirements are fairly traceable to it, nor does it contest that Brinkmeyer's injury would be redressed by an injunction preventing it from enforcing the Residency Requirements. LCB Mot. at 9–11. He also satisfies the remaining standing elements.

**1.    The Residency Requirements are currently injuring Brinkmeyer by thwarting his transactions to hold equity in the Stores.**

The LCB argues that Brinkmeyer has not shown an actual or imminent injury by inaccurately arguing that Brinkmeyer's "claims rely on a 'some day' future transfer ownership upon Atkison's death." LCB's Mot. at 10. The LCB further argues that Brinkmeyer cannot cure any standing issues by "now claiming that Atkison will immediately transfer ownership to Brinkmeyer." LCB Mot. at 11.

There is no standing issue for Brinkmeyer to cure. He has both actual and imminent injuries, which are injuries that are not conjectural or hypothetical, and in relation to future injuries, they must be either certainly impending or there is a substantial risk that the harm will occur. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). Brinkmeyer has been consistent through this case, including in his Petition, that Atkison "would like to bequeath in part and sell in part his ownership interest" to Brinkmeyer. Dkt. #1 ¶ 24. Brinkmeyer and Atkison then clarified by declaration that the sale would occur immediately if the State cannot enforce the Residency Requirements. Brinkmeyer Decl. ¶ 6; Atkison Decl. ¶ 6. While the bequest would occur at an unknown date, the fact that the Residency Requirements are actively blocking those transfers of equity is an actual injury to Brinkmeyer. The fact that the LCB will deny any application he submits to hold equity in the Stores is an imminent injury.

The LCB cites *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006), for the proposition that Brinkmeyer "was required to establish standing from the time he filed his petition." LCB Mot. at 11. Putting aside how Brinkmeyer plead both an immediate transaction and subsequent bequest that are both prohibited by the Residency Requirements,

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 3
Case No. 20-2-01568-34

1  *DaimlerChrysler* does not support that proposition. The portion of that case that the LCB cited

2  held that "a plaintiff must demonstrate standing for each claim he seeks to press."

3  *DaimlerChrysler Corp.*, 547 U.S. at 352. Brinkmeyer has.

4          Contrary to the LCB's assertion, it is settled law that plaintiffs may show they have

5  standing by offering evidence through affidavits when responding to summary judgment

6  motions. *Lujan*, 504 U.S. at 560–61; *see, e.g.*, *Ecological Rights Foundation v. Pacific Lumber*

7  *Co.*, 230 F.3d 1141, 1147–51 (9th Cir. 2000) (relying on affidavits submitted during summary

8  judgment briefing in finding plaintiff had standing); *Hajro v. U.S. Citizenship and Immigration*

9  *Svcs.*, 811 F.3d 1086, 1104 (9th Cir. 2016) (holding that plaintiff's allegations and declarations

10  presented a sufficient basis for standing); *Assoc. of Public Agency Customers v. Bonneville*

11  *Power Admin*, 733 F.3d 939, 952–53 (9th Cir. 2013) (relying on facts from affidavits to find

12  plaintiff had standing). Although Brinkmeyer properly plead facts to give him standing, the full

13  record before the Court shows there is no question he has actual and imminent injuries.

14       **2.**    **The LCB's enforcement of the Residency Requirements and**
                **predetermination of Brinkmeyer's application are concrete injuries.**

15

16     The LCB asserts Brinkmeyer has not suffered a concrete injury. LCB Mot. at 10. An

17  injury is concrete when it actually exists and is not abstract. *Spokeo, Inc. v. Robins*, 578 U.S.

18  330, 340 (noting that intangible constitutional violations are concrete injuries and sufficient

19  bases for standing). Brinkmeyer's concrete injuries include how the Residency Requirements

20  prevent his imminent transaction with Atkison, the LCB's predetermination that it would rely on

21  the Residency Requirements to deny any application he submitted, and the corresponding

22  deterrence on him from submitting an application.

23          In situations like Brinkmeyer's where the plaintiff is an object of the government's

24  action, "there is ordinarily little question that the action or inaction has caused him injury, and

25  that a judgment preventing or requiring the action will address it." *Lujan*, 504 U.S. at 561. The

26  fact that Residency Requirements violate Brinkmeyer's constitutional rights is its own concrete

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 4
Case No. 20-2-01568-34

and particularized injury. *See*, *e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266 (1978) (holding that violation of constitutional rights without any other proof of damages warranted compensation and implicitly holding that standing was attained) (collecting cases); *Gratz v. Bollinger*, 539 U.S. 244, 260–62 (2003) (holding intent to apply rather than actual denial of application was adequate injury to vest standing in a constitutional challenge and finding being denied an opportunity to compete on an equal basis vested plaintiff with standing) (citing *Quinn v. Millsap*, 491 U.S. 95, 103 n.8 (1989); *Turner v. Fouche*, 396 U.S. 346, 361–62 n.23 (1970) (plaintiff who did not own property had standing to challenge property ownership requirement for membership on school board even though there was no evidence that plaintiff had applied and been rejected)); *NPG, LLC v. City of Portland*, 2020 WL 4741913, at *6 (D. Me. Aug. 14, 2020) (holding plaintiff who had yet to apply for cannabis ownership license had standing to challenge residency requirement because it disadvantaged plaintiff); *Toigo v. Dept. of Health and Senior Svcs.*, 2021 WL 5533412, at *3 (W.D. Mo. June 21, 2021) (same).

The LCB does not dispute that the Residency Requirements prevent Brinkmeyer's desired transactions with Atkison. In fact, it confirmed that it would deny Brinkmeyer's application to hold Atkison's equity because of the Residency Requirements. Dkt. #1 ¶ 25; Masse Decl. Ex. A. This evidence, which Brinkmeyer has submitted repeatedly throughout this dispute, leaves no question the Residency Requirements apply to and injure Brinkmeyer. *E.g.*, Dkt. #10. Curiously, the LCB ignores this evidence in its motion.

Brinkmeyer was deterred from submitting an application to hold Atkison's equity after the LCB confirmed it would deny that application, but he and Atkison will complete their transaction if the LCB will allow it. Brinkmeyer Decl. ¶¶ 6–8; Atkison Decl. ¶¶ 5–6; Brinkmeyer 2d Decl. ¶ 2. Thus, Brinkmeyer has standing for similar reasons as the Court found in *Clements v. Fashing*, 457 U.S. 957 (1982). There, the Supreme Court found plaintiffs had standing where they were deterred from taking an activity due to a state law. *Id.* at 961–962. The Court reasoned that because "appellees have alleged in a precise manner that, but for the sanctions of the

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 5
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    constitutional provision they seek to challenge, they would engage in the very acts that would

2    trigger the enforcement of the provision," the plaintiffs had alleged a sufficient basis to have

3    standing. *Id.* Because Brinkmeyer has a specific transaction that the Residency Requirements

4    have thwarted, and was deterred from completing that transaction due to the LCB's

5    predetermination that it would deny his related application, Brinkmeyer has concrete and

6    particularized injuries.

7         Nevertheless, the LCB claims Brinkmeyer has alleged a conjectural injury instead of a

8    concrete one by relying solely on Atkison's bequest to Brinkmeyer. LCB Mot. at 10. But this

9    ignores the immediate transaction that would occur if the Residency Requirements are stricken.

10   Both Brinkmeyer and Atkison are unequivocal that "The only thing stopping [them] from

11   moving forward with the transactions [between them] is that the LCB has confirmed it will rely

12   on the Residency Requirements to deny [Brinkmeyer's] application." Atkison Decl. ¶ 6;

13   Brinkmeyer Decl. ¶ 6.

14        The LCB asserts the bequest is too conjectural because estate documents that transfer

15   Atkison's interest to Brinkmeyer have not been drafted. LCB Mot. at 10. But the LCB has

16   confirmed it would not approve the documents or transactions the estate documents would

17   require. Masse Decl. Ex. A. Brinkmeyer is not required to draw up unenforceable transfer

18   documents, attempt to engage in a sale or transfer the LCB will not allow, or take other

19   inevitably futile steps to obtain Atkison's interest to suffer a concrete injury. *See Desert Outdoor*

20   *Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) ("Desert and OMG

21   also have standing to challenge the permit requirement, even though they did not apply for

22   permits, because applying for a permit would have been futile"); *Taniguchi v. Schultz*, 303 F.3d

23   950, 957 (9th Cir. 2002) ("We have consistently held that standing does not require exercises in

24   futility.").

25        The LCB asserts the transfer to Brinkmeyer is speculative because Atkison could change

26   his mind. LCB Mot. at 10. The record shows Brinkmeyer is the only person Atkison would want

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 6
Case No. 20-2-01568-34

1  to hold his interest. Atkison Decl. ¶ 5. There is no evidence whatsoever that Atkison and

2  Brinkmeyer will change their minds. It is the LCB, not Brinkmeyer, that relies on speculation.

3   **3.**    **Brinkmeyer has a legally cognizable interest in having the LCB review his application without bias.**

4

5       The LCB argues that Brinkmeyer lacks standing because he cannot have a legally

6  cognizable interest in marijuana. LCB Mot. at 11. The State's position relies on the mistaken

7  premise that this suit seeks court approval to hold an interest in marijuana itself. This is not the

8  case. As the State previously acknowledged, granting Brinkmeyer's requested relief will only

9  require the LCB to review his application without disqualifying him based on his residency; it

10 will not allow him to participate in Washington's cannabis market without the LCB's approval.

11 Dkt. #18 at 7 ("regardless of whether the residency requirement is deemed constitutional or not,

12 [Brinkmeyer] would still have to file an application with the Board asking that he be vetted and

13 approved to be an owner."). The Constitution vests Brinkmeyer with a legally cognizable interest

14 to be treated fairly by the State when it assesses his fitness to participate in a licensed

15 commercial market. *See generally*, Pet'r's Mot.

16  **4.**    **No other standing or justiciability principle bars this Court from adjudicating Brinkmeyer's claim.**

17

18      The LCB asserts that Brinkmeyer's claims are not ripe because they rely on future

19 contingent events. LCB Mot. at 11. The LCB's ripeness and standing arguments fail for the same

20 reasons. Brinkmeyer's harm has already occurred and is ongoing. As long as the Residency

21 Requirements mandate the denial of applications Brinkmeyer submits to the LCB, this case is

22 ripe for resolution. *See Thomas v. Union Carbide Agr. Products Co.*, 473 U.S. 568, 580–81

23 (1985) (holding that where "issue presented in this case is purely legal, and will not be clarified

24 by further factual development" case was ripe for resolution).

25      The ripeness of Brinkmeyer's claims is further proven through their redressability, which

26 the LCB does not challenge. For a claim to be redressable, a favorable decision must be likely to

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 7
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1   address the underlying harm and claims. *Catholic League for Religious and Civil Rights v. City*

2   *and Cty. of San Francisco*, 624 F.3d 1043, 1053 (9th Cir. 2010). Brinkmeyer asks this Court to

3   prevent the LCB from enforcing the Residency Requirements, or in other words, cease

4   discriminating against applicants based on the states where they live. That injunction would

5   allow Brinkmeyer to apply free from discrimination based on his residency, and as such,

6   Brinkmeyer's claims are redressable and justiciable.

7   **B.      The Residency Requirements violate the dormant Commerce Clause by facially
            giving preference to long-term Washington residents.**

8

9         The State acknowledges that *Tennessee Wine & Spirits Ass'n v. Thomas*, 139 S. Ct. 2449

10  (2019), is the hallmark case governing the enforceability of the Residency Requirements under

11  the dormant Commerce Clause. LCB Mot. at 12–15. There, the Court found that the Commerce

12  Clause foreclosed residency requirements in the licensed alcohol industry even though the

13  Twenty First Amendment gives states a greater authority to regulate liquor than other goods. *Id.*

14  at 2474–76. Without a comparable Constitutional amendment about cannabis, States have even

15  less authority to regulate it, and so the Residency Requirements violate the dormant Commerce

16  Clause for the reasons stated in *Tennessee Wine*. Numerous federal courts have considered that

17  precise argument and reached the same conclusion. *See Ne. Patients Grp. v. Maine Dep't of*

18  *Admin. & Fin. Servs.*, 2021 WL 3560840 (D. Me. Aug. 11, 2021); *Toigo*, 2021 WL 5533412;

19  *Lowe v. City of Detroit*, 2021 WL 2471476 (E.D. Mich. June 17, 2021); *NPG, LLC*, 2020 WL

20  4741913. The LCB ignores all of this directly applicable authority, even though Brinkmeyer has

21  previously cited these cases in this dispute. *See*, *e.g.*, Dkt. 14 at 6–7.

22        Thus, rather than address adverse authority, the State attempts to muddy the issues by

23  claiming that this case is about the development of an interstate cannabis market. LCB Mot. at 12

24  (discussing the CSA's comprehensive regime to make unlawful the interstate traffic in illicit

25  drugs); at 13–14 (arguing the CSA forecloses a national market for marijuana); at 20–21 (arguing

26  that Brinkmeyer does not have a constitutional right to sell cannabis across state lines). Those are

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 8
Case No. 20-2-01568-34

1   strawman arguments and simply not what this case is about. Brinkmeyer has been clear

2   throughout this case that he is seeking to be an owner of an existing licensed Washington

3   business that only does business in Washington, and that he has no intention whatsoever of

4   contravening the law, including the laws of Idaho. Brinkmeyer Decl. ¶ 9.

       **1.   The CSA does not authorize the State to pass discriminatory laws that limit economic opportunities for nonresidents.**

7          The LCB does not dispute that the Residency Requirements facially discriminate against

8   nonresidents. Instead, the LCB asserts that the CSA constitutes a "comprehensive regime" that

9   forecloses the applicability of the dormant Commerce Clause. LCB Mot. at 12–14. Not so. The

10   dormant Commerce Clause prevents laws that discriminate against interstate commerce unless

11   the State can show a clearly evidenced intent from Congress specifically allowing the

12   discrimination at issue. *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 91–

13   92 (1984) ("[F]or a state regulation to be removed from the reach of the dormant Commerce

14   Clause, congressional intent must be unmistakably clear. The requirement that Congress

15   affirmatively contemplate otherwise invalid state legislation is mandated by the policies

16   underlying dormant Commerce Clause doctrine."). The LCB fails to identify any such express

17   grant of authority in the CSA or elsewhere. Every court that has ruled on this issue has found that

18   the CSA does not grant states the authority to enact residency requirements for licensed cannabis

19   markets. *See Ne. Patients Grp.*, 2021 WL 3560840; *Toigo,* 2021 WL 5533412; *Lowe*, 2021 WL

20   2471476; *NPG, LLC*, 2020 WL 4741913.

21          The LCB relies on the CSA's designation of marijuana as contraband to evince

22   legislative intent. LCB Mot. at 12–13. But this kind of generic statement does not authorize

23   states to enact economically discriminatory policies. *See New England Power Co. v. New*

24   *Hampshire*, 455 U.S. 331, 343 (1982) (congressional intent must be "expressly stated");

25   *Wunnicke*, 467 U.S. at 91–92 (and "unmistakably clear"). When Congress authorizes States to

26   adopt economically discriminatory laws, it does so in the text of a statute. For example, in

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 9
Case No. 20-2-01568-34

1   *Northeast Bancorp, Inc. v. Board of Governors of Federal Reserve System*, 472 U.S. 159, 168

2   (1985), a case relied on by the LCB, the Court relied on statutory language that allowed for states

3   to enact laws governing bank transfers. There, petitioners argued that state laws which limited

4   bank acquisitions to other states in New England violated the dormant Commerce Clause. *Id.* at

5   164. The Court held that the legislature intended to provide states regulatory control by relying in

6   part on an explicit grant in the statutory text that was supported by legislative history. *Id.* at 168–

7   72. By contrast, the LCB identifies no similar statutory language or legislative history showing

8   that Congress intended to allow states to discriminate against nonresidents when regulating

9   cannabis by passing the CSA. Thus, the State cannot rely on the CSA to excuse the

10  discrimination embedded in the Residency Requirements.

11         The State also relies on *Gonzales v. Raich*, 545 U.S. 1, 22 (2005), to show federal law is

12  unequivocal that marijuana is illegal. LCB Mot. at 12. But, the State does not account for recent

13  statements Justice Thomas made that criticized reliance on *Raich* and the CSA due to how

14  federal policy has shifted in favor of legalized cannabis. *Standing Akimbo, LLC v. U.S.*, 141 S.

15  Ct. 2236, 2238 (2021) (statement of Thomas, J. regarding denial of certiorari) ("Suffice it to say,

16  the Federal Government's current approach to marijuana bears little resemblance to the

17  watertight nationwide prohibition that a closely divided Court found necessary to justify the

18  Government's blanket prohibition in *Raich*."); *see also Ne. Patients Grp.*, 2021 WL 3560840, at

19  *4 (observing that "Congress has barred the Department of Justice from using funds 'to prevent

20  any [state] from implementing their own laws that authorize the use, distribution, possession, or

21  cultivation of medical marijuana[.]'"). Cannabis continues to gain favor federally, and no court

22  has found that Congress authorized states to pass economically discriminatory laws about

23  cannabis when Congress passed the CSA.

24         **2.      The Residency Requirement burden the interstate market for investment in licensed cannabis businesses.**

25

26         Further, the State mischaracterizes the interstate market it burdens with the Residency

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 10
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

Requirements. LCB Mot. at 13–14 (arguing there is no interstate cannabis market). Investments in licensed businesses—not the selling or cultivation of marijuana—is the interstate commerce at issue. This case is thus remarkably similar to *Gulch Gaming, Inc. v. South Dakota*, 781 F. Supp. 621, 625–26 (D. S.D. 1991), where a district court struck a residency requirement relating to gaming licenses for interfering with the interstate investment market:

> The gambling itself, however, is not the interstate commerce at issue in this case. South Dakota is not regulating the individual gamblers who come to Deadwood to try their luck at the slot machines. <u>The interstate commerce allegedly affected by this statute</u>, which prohibits certain types of business entities from obtaining a license to operate gaming establishments in South Dakota, <u>is the out-of-state investment in businesses holding South Dakota gaming licenses</u>."

(Emphasis added). This existing interstate investments market for legalized cannabis businesses is thriving. Multiple publically traded investment firms operate in different states' adult-use and medical cannabis industries including those in Arizona, Arkansas, California, Colorado, Connecticut, Florida, Illinois, Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Nevada, New Jersey, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Utah, and Vermont. Murphy 2d Decl. Ex. A at 66; Ex. B at 8, 22, and 51–64; Ex. C at 45–49. These investment opportunities are exactly the type of interstate commerce that the Residency Requirements shut down at Washington's borders.

Through this lens, the LCB's argument fails. The LCB has identified no portion of the CSA that enables discrimination in the interstate market for investment in state-licensed businesses. The State does not and cannot identify any act of Congress that has foreclosed the interstate investments market. That market exists, Brinkmeyer seeks to participate in it, and the LCB burdens it. The Commerce Clause thus applies to this dispute and bars the Residency Requirements for the same reasons described by the Court in *Tennessee Wine*.

**3.    The LCB's Justifications for the Residency Requirements are insufficient as a matter of law.**

The State admits that the Residency Requirements may only be upheld under the dormant

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 11
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

Commerce Clause analysis if the State can show they are narrowly tailored to advance a legitimate local purpose. LCB Mot. at 15 (citing *Tennessee Wine*, 139 S. Ct. at 2461–62). In other words, the Residency Requirements are subject to strict scrutiny review, and the LCB must show that they are the least discriminatory alternatives to advance the State's goals. *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 995–97 (9th Cir. 2002). This is no easy task. "State laws discriminating against interstate commerce on their face are virtually *per se* invalid." *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 575 (1997) (internal quotation omitted); *see also Granholm v. Heald*, 544 U.S. 460, 487 (2005) ("When a state statute directly regulates or discriminates against interstate commerce, or when its effect is to favor in-state economic interests over out-of-state interests, we have generally struck down the statute without further inquiry."). The State must show that its "justifications for discriminatory restrictions on commerce pass the 'strictest scrutiny.' The State's burden of justification is so heavy that 'facial discrimination by itself may be a fatal defect.'" *Oregon Waste Sys., Inc. v. Dept. of Environmental Quality of Or.*, 511 U.S. 93, 101 (1994) (citations omitted).

The LCB argues that the Residency Requirements protect the health and safety of Washington citizens. LCB Mot. at 15. The Supreme Court has already addressed—and rejected—these same justifications advanced by the State. In affirming the summary judgment enjoinment of a residency requirement for a state-licensed alcohol market, the *Tennessee Wine* Court held "the [petitioner] has attempted to defend the 2-year residency requirement on public health and safety grounds, but this argument is implausible on its face." 139 S. Ct. at 2474–75. Thus, the State's argument that the Residency Requirements are necessary to protect health and safety fail as a matter of law.

The LCB's primary justification appears to be that it will be unable to enforce regulations against nonresident licensees. LCB Mot. at 15 (citing Bolender Decl. ¶¶ 2–3). This argument was foreclosed in *Tennessee Wine* when the Supreme Court held, as a matter of law, that residency requirements are "not needed to enable the State to maintain oversight" of licensed in-state

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 12
Case No. 20-2-01568-34

1  businesses. 139 S. Ct. at 2475. The Court went further noting "the argument is even less

2  persuasive since the stores at issue are physically located within the State. For that reason, the

3  State can monitor the stores' operations through on-site inspections, audits and the like." *Id.* The

4  same is true in Washington. Moreover, the State's ability to revoke licenses provides sufficiently

5  strong incentives not to sell cannabis "in a way that threatens public health or safety. *Id*. The

6  State's existing tools already enable them to enforce regulations against nonresident licensees.

7       Brinkmeyer individually addressed why most of the State's Justifications fail in his

8  motion, and he incorporates that analysis by reference. *See* Pet'r's Mot. at 9–13. As for the new

9  Justifications the State asserts, Captain Bolender speculates that out-of-state licensees "may

10  refuse to assist with [an] investigation entirely and simply refuse to return to Washington,

11  stymieing the investigation." Bolender Decl. ¶ 3. But, this is equally true of in-state licensees,

12  who can leave the jurisdiction or otherwise refuse to cooperate with LCB investigations. In both

13  situations, the State's response remains the same: revoke the license for failure to cooperate with

14  an investigation, as suggested in *Tennesee Wine*. WAC 314-55-521.

15       Even more tenuous is Captain Bolender's justification that "out-of-state licensee[s] might

16  only be willing to discuss the investigation over the phone, preventing a Board Enforcement

17  Officer from being able to read their body language." Bolender Decl. ¶ 3. Taking Captain

18  Bolender at his word that he is able to derive significant investigatory information from body

19  language, the State fails to explain why this differs from an in-state licensee, who could similarly

20  agree to interviews only by phone. Regardless, in both situations the State can require that

21  licensees make themselves available for questioning without resorting to discrimination against

22  out-of-state licensees. Further, the LCB fails to identify any case where the ability to assess body

23  language qualifies as a compelling government interest.

24       Similarly unavailing is Captain Bolender's appeal to a possible delay in accessing

25  surveillance recordings from out-of-state licensees. Bolender Decl. ¶ 3. Those recordings must

26  be stored at the licensed premises, within the State's jurisdiction, and the State can compel

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 13
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    access to those files. WAC 314-55-083(3); WAC 314-55-185. If the licensee does not provide

2    the requested information, the LCB can penalize them. WAC 314-55-522. The State has

3    shown—and *Tennessee Wine* has held—that the State has sufficient enforcement authority to

4    achieve compliance through nondiscriminatory means and without the Residency Requirements.

5         The LCB then claims that the Residency Requirements are "a necessary component of

6    the Social Equity Program recently passed by the Legislature." LCB Mot. at 16. But nothing in

7    the Social Equity Program statutory scheme relates to the Residency Requirements. *See*

8    RCW 69.50.335. The Washington legislature's intent in creating the Social Equity Program was

9    to "reduce the barriers to entry to the cannabis industry for individuals and communities most

10   adversely impacted by the enforcement of cannabis related-laws" by "promoting business

11   ownership among individuals who have resided in areas of high poverty and high enforcement of

12   cannabis related laws." RCW 69.50.335 note (2020) (Findings—Intent). Notably, the Social

13   Equity Program does not restrict its findings to the State of Washington, and the legislature

14   defined a "disproportionately impacted area" through objective and nondiscriminatory measures

15   that are not limited to Washington. RCW 69.50.335(6)(b). The LCB cites no portion of the

16   Social Equity Program that relies on the Residency Requirements, and there is none.

17        To the contrary, removing the Residency Requirements better accomplishes the goals of

18   the Social Equity Program. A recent analysis regarding the Washington cannabis industry noted

19   that the absence of interstate investment threatens the viability of Washington's cannabis

20   businesses, including those new businesses to be developed under the Social Equity Program.

21   Dkt. #41 Ex. A at 14 (finding that restricted sources of investment caused by the Residency

22   Requirements cause "difficulties in raising capital to finance expansion" and "adversely impact

23   the valuations of these businesses"). If anything, maintaining the Residency Requirements will

24   make the success of Social Equity applicants harder by restricting where they can obtain funding

25   to start their new businesses.

26        Last, the LCB claims the "Residency Requirements ensure that Washington's collective

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 14
Case No. 20-2-01568-34

1    garden owners continue to assist Washington's medical cannabis users." LCB Mot. at 7. That is

2    nonsense. As the LCB knows well, collective gardens have not existed in Washington since July

3    1, 2016. Murphy 2d Decl. Ex. D. Collective gardens used to serve medical marijuana patients,

4    but they were eliminated when the legislature merged the medical and adult-use markets into one

5    system regulated by the LCB. *See id*. Ex. E. The legislature gave collective garden owners until

6    July 1, 2016 to become licensed retailers or shut their doors. *See id*. Ex. F. The legislature

7    created 222 new retailer licenses for this transition, and created a priority system for issuing

8    those licenses that favored collective garden operators. *Id*. Ex. G. The LCB accepted applications

9    for these licenses between October 12, 2015 and March 31, 2016; it stopped taking new

10   applications because it had received far more priority applicants than it had licenses to issue. *Id*.

11   Ex. H. Indeed, as of December 16, 2015, the LCB had received 1,194 applications. *Id*. Ex. G.

12   The LCB issued the new licenses, and then the legislature struck the priority system from statute

13   in 2017. *Id*. Exs. I–J. The collective gardens and associated priority system the LCB suggests are

14   furthered by the Residency Requirements have not existed for five years.

15           In sum, *Tennessee Wine* considered almost identical justifications in the context of

16   alcohol regulation where states have greater authority to regulate under the Twenty First

17   Amendment, and still the Court found that the residency requirements violated the dormant

18   Commerce Clause. That this case involves cannabis rather than alcohol is a distinction without a

19   difference. Additionally, the *NPG*, *Toigo*, *Northeast Patients Group*, and *Lowe* Courts

20   considered precisely this issue, and they all concluded that the residency requirement at issue did

21   or likely violated the dormant Commerce Clause. The State fails to identify any legitimate

22   interests served by the Residency Requirements that are not already better met by its extensive

23   and thorough licensing, investigatory, and enforcement regime. In the face of bedrock

24   Constitutional principles against economic discrimination among the states, the LCB asserts the

25   compelling state interests that allegedly save the Residency Requirements include the need to

26   read body language and a defunct collective garden system that has been obsolete for years. The

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 15
Case No. 20-2-01568-34

1    LCB fails to carry its burden under strict scrutiny, so the Residency Requirements should be

2    struck for violating the dormant Commerce Clause.

3    **C.    The State ignores the fundamental rights Brinkmeyer is asserting by disregarding**
         **the commercial opportunities the Residency Requirements eliminate for**
4        **nonresidents.**

5           Rather than address the fundamental rights Brinkmeyer has asserted, the LCB instead

6    asks this Court to dismiss Brinkmeyer's claims because there is "no fundamental right to sell or

7    produce marijuana." LCB Mot. at 18. That is a red herring. The State ignores that the Residency

8    Requirements prevent nonresidents from participating in a licensed commercial market that the

9    State created and limits to its long-term residents. Thus, by creating commercial opportunities for

10   its residents that nonresidents cannot access, the Residency Requirements violate Brinkmeyer's

11   fundamental rights to pursue a livelihood and travel.[2]

12          **1.    The Residency Requirements violate the Article IV Privileges and**
                    **Immunities Clause.**
13

14          Brinkmeyer's fundamental rights at play for his Article IV Privileges and Immunities

15   Clause claim are the rights to pursue a livelihood and to travel, which have long been recognized.

16   *United Bldg. & Constr. Trades Council v. Mayor of Camden,* 465 U.S. 208, 218 (1984); *Saenz v.*

17   *Roe,* 526 U.S. 489, 500–01 (1999). It has always been the law of this country that states violate

18   these fundamental rights by limiting commercial opportunities for nonresidents. *See, e.g.*, *United*

19   *Bldg.,* 465 U.S. at 219 (1984) ("[T]he pursuit of a common calling is one of the most

20   fundamental of those privileges protected by the Clause… Many, if not most, of our cases

21   expounding the Privileges and Immunities Clause have dealt with this basic and essential

22   activity."); *Ward v. State*, 79 U.S. 418, 430 (1870) ("the [Privileges and Immunities] clause

23   plainly and unmistakably secures and protects the right of a citizen of one State to pass into any

24   other State of the Union for the purpose of engaging in lawful commerce, trade, or business

25   _____

26   [2] Brinkmeyer has more fully briefed these arguments in his pending Motion for Summary Judgment, and he
     incorporates them by reference. Pet'r's Mot. at 16–24.

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1  without molestation[.]").

2  For example, in *Toomer v. Witsell*, 334 U.S. 385, 389 (1948), a group of nonresident

3  fisherman challenged a licensing statute that made shrimping in South Carolina waters

4  substantially more expensive for nonresidents. The Court considered whether the commercial

5  discrimination against nonresidents violated the Privileges and Immunities Clause under Article

6  IV and found that it did. *Id.* at 395. In that analysis, the Court recognized that "it was long ago

7  decided that one of the privileges which the clause guarantees to citizens of State A is that of

8  doing business in State B on terms of substantial equality with the citizens of that State." *Id.* at

9  396. Notably, the Court did not consider whether the fisherman had a fundamental right to

10  engage in shrimping. The fact that South Carolina's licensing scheme made it more difficult for

11  nonresidents to participate in the state's market was enough for the Court to find a Privileges and

12  Immunity Clause violation.

13  The same result should occur here for the same reason. There is no question that the

14  Residency Requirements make it impossible, not just more difficult, for nonresidents to compete

15  in Washington's cannabis market. As in *Toomer*, that discrimination shows the Residency

16  Requirements violate the Privileges and Immunities Clause.

17  While the blanket prohibition on residency requirements in commerce remains intact,

18  residency requirements in recreation may be allowed. In *Baldwin v. Fish & Game Comm'n of*

19  *Montana*, 436 U.S. 371 (1978), the Court held a residency requirement for elk hunting did not

20  violate the fundamental right to pursue a livelihood because elk hunting was "a recreation and a

21  sport" and "not a means to the nonresident's livelihood." *Id.* at 388. Nevertheless, the LCB relies

22  on *Baldwin* in asserting Brinkmeyer's claim fails because there is no fundamental right to

23  cultivate, sell, produce, or distribute cannabis just as there was no fundamental right to elk

24  hunting. LCB Mot. at 19–20.

25  The LCB disregards that Brinkmeyer seeks a commercial opportunity in Washington, not

26  a recreational activity or sport. *Baldwin* reaffirmed the Court's recognition that residency

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 17
Case No. 20-2-01568-34

requirements for commercial opportunities violate the right to pursue a livelihood. 436 U.S. at

386 (holding "a State's interest in its wildlife and other resources must yield when, without

reason, it interferes with a nonresident's right to pursue a livelihood in a State other than his

own, a right that is protected by the Privileges and Immunities Clause."). Moreover, the Court

need not find that Brinkmeyer has a fundamental right to cannabis to find a violation of the

Privileges and Immunities Clause—the economic discrimination against nonresidents is enough.

When residency requirements limit commercial opportunities for nonresidents, those lost

opportunities are "sufficiently fundamental to the promotion of interstate harmony so as to fall

within the purview of the Privileges and Immunities Clause." *See United Bldg.*, 465 U.S. at 218;

*see also Hicklin v. Orbeck*, 437 U.S. 518 (1978) (striking a residency requirement relating to oil

and gas pipeline construction without finding a fundamental right to participate in that industry).

The LCB's citation to cases where courts held individuals lack a fundamental right to

possess marijuana similarly has no impact on Brinkmeyer's fundamental rights to travel and

pursue a livelihood. LCB Mot. at 18–20. Those cases predominantly analyze a due process

property right in marijuana, which is a right Brinkmeyer does not assert. For example, the State

cites *Benno v. Shasta Cty., California*, 2021 WL 3912187 (E.D. Cal. 2021), for the proposition

that there is "no fundamental right to cultivate marijuana." LCB Mot. at 18. That case considered

whether the plaintiff had a specific liberty or property right to the cultivation of marijuana under

the Fourteenth Amendment to achieve § 1983 liability. *Benno*, 2021 WL 3912187, at *9.

Similarly, the State cites *Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) for the proposition

that there is no fundamental right to use medical marijuana. LCB Mot. at 18. These cases do not

show that Brinkmeyer has somehow lost his constitutional rights to pursue a livelihood and

travel.

The State's due process property arguments would be more applicable if Brinkmeyer was

demanding the issuance of a license or seeking to operate a cannabis business outside the State's

licensing scheme. He asks for nothing of the sort. All he asks is for the State to evaluate his

1   application to become an owner of the Stores on its merits, and not to be excluded from

2   Washington's market solely because he lives in a neighboring state.

3          Because the Residency Requirements violate Brinkmeyer's rights to pursue a livelihood

4   and travel, the LCB bears the burden of proving a substantial reason for the discrimination

5   against nonresidents that bears a substantial relationship to the State's objective. *Barnard v.*

6   *Thorstenn*, 489 U.S. 546, 552–53 (1989); *see, e.g.*, *Supreme Ct. of New Hampshire v. Piper*, 470

7   U.S. 274, 284 (1985)*.* A substantial reason for discrimination does not exist "unless there is

8   something to indicate that non-citizens constitute a peculiar source of the evil at which the statute

9   is aimed." *Reitz v. Kipper*, 674 F. Supp. 2d 1194, 1201 (D. Nev. 2009) (quoting *Toomer,* 334

10  U.S. at 398). For the same reasons the State's justifications fail under the dormant Commerce

11  Clause analysis, they fail here. *See* section B(3), *supra*; *see also*, Pet'r's Mot. at 19–20. The State

12  does not and cannot show that nonresidents pose a peculiar source of evil that the Residency

13  Requirements aim to solve. *See* Pet'r's Mot at 16–21. The State does not attempt to and cannot

14  meet this burden. Thus, the Residency Requirements violate the Privileges and Immunities

15  Clause.

16          **2.   The Residency Requirements violate Brinkmeyer's rights under the Equal
             Protection Clause and Privileges or Immunities Clause of the Fourteenth
17           Amendment**

18          Though not extensively addressed by the State, the Residency Requirements also

19  implicate the Equal Protection and Privileges or Immunities Clauses of the Fourteenth

20  Amendment. Durational residency requirements have been challenged under both clauses, and

21  the analysis is similar for both. *Compare Dunn v. Blumstein*, 405 U.S. 330 (1972) (equal

22  protection) *with Saenz*, 526 U.S. 489 (privileges or immunities). Both clauses protect the right to

23  travel, which provides "for those travelers who elect to become permanent residents, the right to

24  be treated like citizens of their new state of residence." *Saenz,* 526 U.S. at 500.

25          The LCB's primary argument on these challenges is that Brinkmeyer lacks standing to

26  assert this aspect of the right to travel because Brinkmeyer intends to remain an Idaho citizen and

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 19
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    it is conjecture that he would become a new Washington resident. LCB Mot. at 10. The LCB

2    ignores the right to travel, as protected by the Fourteenth Amendment, is violated when a state

3    law "actually deters such travel, when impeding travel is its primary objective, or when it uses

4    any classification which serves to penalize the exercise of that right." *Attorney General of New*

5    *York v. Soto–Lopez,* 476 U.S. 898, 903 (1986) (citations and quotation marks omitted). Plaintiffs

6    like Brinkmeyer may assert a residency requirement violated their right to travel even if their

7    travel to a new state was not actually deterred. *Mem'l Hosp. v. Maricopa Cty*., 415 U.S. 250,

8    257–58 (1974). Indeed, requiring actual deterrence to find a violation of the right to travel is a

9    "fundamental misunderstanding of the law." *Dunn*, 405 U.S. at 339. Brinkmeyer thus has

10   standing to make his Fourteenth Amendment right to travel claims, and they are subject to strict

11   scrutiny review. *See Saenz*, 526 U.S. at 501–03; *see also Dunn*, 405 U.S. at 341–42 ("The right

12   to travel is an 'unconditional personal right,' a right whose exercise may not be conditioned");

13   *Soto–Lopez,* 476 U.S. at 904–06.

14   The Residency Requirements violate the Equal Protection and Privileges or Immunities

15   Clauses for the same reasons they violate the Privileges and Immunities Clause in Article IV and

16   the dormant Commerce Clause. The Justifications are not compelling governmental interests.

17   The lone exception may be the interest in improving public safety, but as with the other non-

18   compelling interests, the Residency Requirements are not narrowly tailored to accomplish that

19   interest. As described above, the LCB's broad oversight powers—which tightly regulate licensed

20   cannabis businesses—provide less restrictive means to promote public safety without requiring

21   that equity holders be and remain long-term Washington residents.

22   **3.  The State's justifications fail rational basis review for violating Brinkmeyer's
     right to pursue a profession.**

23

24   Comparatively, Brinkmeyer's challenge under the Due Process Clause relies on his right

25   to pursue a profession, which is not fundamental right under the Fourteenth Amendment.

26   *Dittman v. California*, 191 F.3d 1020, 1029–30 (9th Cir. 1999). Thus, it is subject to rational

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 20
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1   basis review. *Id.*

2       The Residency Requirements fail rational basis review because any legitimate state

3   interest is fully met by the State's existing licensing and enforcement regimes. As the *Gulch*

4   *Gaming* Court reasoned: "The [residency] statute bears no rational relationship to the goal of

5   protecting the health, safety, morals, good order, and general welfare of the inhabitants of the

6   State of South Dakota. Any person owning five percent or more of an [entity] applying for a

7   gaming license must meet certain standards for character, honesty, and morality.… And the

8   individual's prior activities, criminal record, reputation, habits, and associations, shall be such

9   that they pose no threat to the public interests of this state or to the control the gaming." 781 F.

10  Supp. at 631–32. The court reasoned that adding an additional residency requirement did "not

11  further the goal of preventing potentially illegal or dangerous activity from occurring[.]" *Id.* The

12  court also reasoned that prevailing statutes fully accounted for the state's interest in maintaining

13  regulatory control over the licensees and establishments, which left no rational relationship

14  between the residency requirements and any remaining interest. *Id.*

15      This case is on all fours with those rulings. The LCB has a comprehensive licensing and

16  enforcement regime that Brinkmeyer does not challenge. As described above, this regime fully

17  accounts for any legitimate interests the State may have. The LCB only issues licenses after it

18  completes a thorough investigation and verifies the applicant meets its high standards. Dkt. #32

19  ¶ 10 ("All potential licensees must undergo a financial investigation, a criminal background

20  check, and interviews to successfully pass the Board's vetting requirements and be eligible for

21  licensure"). Because residency is not needed to investigate the background of an applicant, the

22  Residency Requirements are left with no remaining legitimate interests to which they could

23  rationally relate. *Tennessee Wine*, 139 S. Ct. at 2475. As such, the Residency Requirements fail

24  to meet rational basis review like the residency requirements considered by the *Gulch Gaming*

25  Court.

26

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 21
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1    **D.      The State's Wild Speculations About Butterfly Effects of This Suit are Unfounded.**

2           The State concludes its motion with a scary story about how striking the Residency

3    Requirements will effectively legalize adult-use cannabis nationally, even in states that ban it, by

4    recognizing a constitutional right to engage in the cannabis trade. LCB Mot. at 20–21. But

5    Brinkmeyer does not assert that right, and the Court can rule for him without creating new

6    fundamental rights. Brinkmeyer asks this Court to take the unremarkable action of enjoining the

7    State from enforcing a licensing scheme that discriminates against nonresidents by completely

8    excluding them from commercial opportunities in the state, as numerous other federal courts

9    have done. Brinkmeyer is not seeking to invalidate the rest of the State's extensive licensing and

10   enforcement regime. Nor does Brinkmeyer ask this Court to consider whether cannabis can be

11   carried across state lines.

12          The State postulates that this Court's order would put it "on a collision course with the

13   Full Faith and Credit Clause" by effectively requiring Idaho to accept cannabis products from

14   Washington. LCB Mot. at 21. This is simply not the case. Numerous federal courts have already

15   struck residency requirements in cannabis for violating the dormant Commerce Clause, and the

16   calamitous outcomes the State claims are imminent simply have not happened. *See Ne. Patients*

17   *Grp.*, 2021 WL 3560840; *Toigo*, 2021 WL 5533412; *Lowe*, 2021 WL 2471476; *NPG*, 2020 WL

18   4741913. The State's theoretical, nonexistent, and demonstrably false crisis allegedly caused by

19   striking Residency Requirements does not justify violating fundamental rights that have existed

20   since the Constitution was ratified.

21          That is likely because the Full Faith and Credit Clause "does not require a State to

22   substitute for its own statute, applicable to persons and events within it, the statute of another

23   State reflecting a conflicting and opposed policy." LCB Mot. at 21 (quoting *Franchise Tax Bd. of*

24   *Cal. v. Hyatt*, 136 S. Ct. 1277, 1281 (2016). No state would be required to legalize cannabis's

25   sale, growth, or import merely because Washington has done so. *Pacific Employers Ins. Co. v.*

26   *Industrial Accident Commission of State of Cal.*, 306 U.S. 493, 501 (1939) ("[T]he very nature of

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 22
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

the federal union of states, to which are reserved some of the attributes of sovereignty, precludes resort to the full faith and credit clause as the means for compelling a state to substitute the statutes of other states for its own statutes."). Washington legalized recreational cannabis in 2012, and yet no states have been forced to follow suit. LCB Mot. at 3. If states wish to outright ban the cannabis market, then that is within their rights, but that does not allow them to act unconstitutionally. *See*, *e.g.*, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 516–17 (1996) (holding state retains the power to ban alcohol but if it chooses to legalize it then it must comply with other constitutional principles). Washington chose to create a cannabis market. The Constitution thus mandates the State provide residents and nonresidents the same opportunities to compete commercially in Washington.

The LCB's scare tactics should not mislead this Court. This Court would be joining a substantial majority by striking the Residency Requirements as unconstitutional. The Court should not reward the LCB for first arguing that this Court should reach the merits of this action, Dkt. #18, and now asking this Court not to exercise its equitable powers when ruling on Brinkmeyer's claims. LCB Mot. at 21. The LCB agreed that this Court should reach the merits of Brinkmeyer's claims, and the Court should do so. A straightforward application of precedent to the facially discriminatory Residency Requirements shows they should be stricken for violating Brinkmeyer's constitutional rights.

## IV.    CONCLUSION

Brinkmeyer's request is narrow. He is not asking the State to change the thorough background, financial, and criminal checks that all cannabis licensees must pass. He is not asking this Court to determine he possesses the right to grow, distribute, or sell cannabis. Brinkmeyer is just asking the LCB to consider him on even footing with any other applicant and cease its discrimination against nonresidents. No more, no less. The Constitution demands that fair treatment.

//

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 23
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

1  Accordingly, Brinkmeyer asks the Court to deny the LCB's Motion for Summary Judgment and

2  grant his competing motion.

3          DATED this 22nd day of February, 2022.

4

5                                          MILLER NASH LLP

6                                          */s/ Andy Murphy*
7                                          Daniel J. Oates, WSBA No. 39334
                                           Andy Murphy, WSBA No. 46664
8                                          MILLER NASH LLP
                                           Pier 70 ~ 2801 Alaskan Way, Suite 300
9                                          Seattle, WA 98121
                                           Tel: 206-624-8300
10                                         Fax: 206-340-9599
                                           Email: *Dan.Oates@millernash.com*
11                                                 *Andy.Murphy@millernash.com*
                                           *Attorneys for Petitioner*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PETITIONER'S RESPONSE TO RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT - 24
Case No. 20-2-01568-34

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on the 22nd day of February, 2022, a copy of the foregoing

3  document was served upon the attorneys of record in the above cause as follows:

4  PENNY ALLEN, WSBA No. 18821          ☐   via Hand Delivery
   ELLEN RANGE, WSBA No. 51334          ☐   via U.S. Mail
5  Assistant Attorneys General          ☐   via Facsimile
   1125 Washington St SE                ☒   via E-Service
6  Olympia, WA 98501                    ☒   via Email
7  Phone: (360) 753-2702
   Email: Pennyl.Allen@atg.wa.gov
8  Ellen.Range@atg.wa.gov

9  *Attorneys for Respondent*

10      Under the laws of the state of Washington, the undersigned hereby declares, under

11  the penalty of perjury, that the foregoing statements are true and correct to the best of my

12  knowledge.

13      Executed at Seattle, Washington, this 22nd day of February, 2022.

14                                    *s/ Brie Geffre*
                                      Brie Geffre, Legal Assistant
15

16

17

18  4886-5808-9997.7

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1
Case No. 20-2-01568-34