# EXHIBIT E

CERTIFICATION OF ENROLLMENT

**SECOND SUBSTITUTE SENATE BILL 5052**

Chapter 70, Laws of 2015

(partial veto)

64th Legislature
2015 Regular Session

MEDICAL MARIJUANA--REGULATION

EFFECTIVE DATE: 7/24/2015 - Except for sections 12, 19, 20, 23 through 26, 31, 35, 40, and 49, which become effective 7/1/2016; and sections 21, 22, 32, and 33, which become effective 4/24/2015.

Passed by the Senate April 14, 2015
  Yeas 41  Nays 8

_____
BRAD OWEN
**President of the Senate**

Passed by the House April 10, 2015
  Yeas 60  Nays 36

_____
FRANK CHOPP
**Speaker of the House of Representatives**

Approved April 24, 2015 2:53 PM, with the exception of Sections 36, 42, 43, 44, 45, 46, and 52 which are vetoed.

CERTIFICATE

I, Hunter G. Goodman, Secretary of the Senate of the State of Washington, do hereby certify that the attached is **SECOND SUBSTITUTE SENATE BILL 5052** as passed by Senate and the House of Representatives on the dates hereon set forth.

_____
HUNTER G. GOODMAN
**Secretary**

FILED

April 25, 2015

_____
JAY INSLEE
**Governor of the State of Washington**

**Secretary of State**
**State of Washington**

## SECOND SUBSTITUTE SENATE BILL 5052

AS AMENDED BY THE HOUSE

Passed Legislature - 2015 Regular Session

**State of Washington**          **64th Legislature**          **2015 Regular Session**

**By** Senate Ways & Means (originally sponsored by Senators Rivers, Hatfield, and Conway)

READ FIRST TIME 02/10/15.

1      AN ACT Relating to establishing the cannabis patient protection
2  act; amending RCW 66.08.012, 69.50.101, 69.50.325, 69.50.331,
3  69.50.342, 69.50.345, 69.50.354, 69.50.357, 69.50.360, 69.50.4013,
4  69.51A.005, 69.51A.010, 69.51A.030, 69.51A.040, 69.51A.043,
5  69.51A.045, 69.51A.055, 69.51A.060, 69.51A.085, 69.51A.100,
6  43.70.320, 69.50.203, 69.50.204, and 9.94A.518; adding new sections
7  to chapter 69.50 RCW; adding new sections to chapter 69.51A RCW;
8  adding a new section to chapter 42.56 RCW; adding a new section to
9  chapter 82.04 RCW; creating new sections; repealing RCW 69.51A.020,
10  69.51A.025, 69.51A.047, 69.51A.070, 69.51A.090, 69.51A.140,
11  69.51A.200, and 69.51A.085; prescribing penalties; providing an
12  effective date; providing a contingent effective date; and declaring
13  an emergency.

14  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

15      NEW SECTION.  **Sec. 1.**  This act may be known and cited as the
16  cannabis patient protection act.

17      NEW SECTION.  **Sec. 2.**  The legislature finds that since voters
18  approved Initiative Measure No. 692 in 1998, it has been the public
19  policy of the state to permit the medical use of marijuana. Between
20  1998 and the present day, there have been multiple legislative

1  attempts to clarify what is meant by the medical use of marijuana and
2  to ensure qualifying patients have a safe, consistent, and adequate
3  source of marijuana for their medical needs.
4      The legislature further finds that qualifying patients are people
5  with serious medical conditions and have been responsible for finding
6  their own source of marijuana for their own personal medical use.
7  Either by growing it themselves, designating someone to grow for
8  them, or participating in collective gardens, patients have developed
9  methods of access in spite of continued federal opposition to the
10  medical use of marijuana. In a time when access itself was an issue
11  and no safe, consistent source of marijuana was available, this
12  unregulated system was permitted by the state to ensure some, albeit
13  limited, access to marijuana for medical use. Also permitted were
14  personal possession limits of fifteen plants and twenty-four ounces
15  of useable marijuana, which was deemed to be the amount of marijuana
16  needed for a sixty-day supply. In a time when supply was not
17  consistent, this amount of marijuana was necessary to ensure patients
18  would be able to address their immediate medical needs.
19      The legislature further finds that while possession amounts are
20  provided in statute, these do not amount to protection from arrest
21  and prosecution for patients. In fact, patients in compliance with
22  state law are not provided arrest protection. They may be arrested
23  and their only remedy is to assert an affirmative defense at trial
24  that they are in compliance with the law and have a medical need. Too
25  many patients using marijuana for medical purposes today do not know
26  this; many falsely believe they cannot be arrested so long as their
27  health care provider has authorized them for the medical use of
28  marijuana.
29      The legislature further finds that in 2012 voters passed
30  Initiative Measure No. 502 which permitted the recreational use of
31  marijuana. For the first time in our nation's history, marijuana
32  would be regulated, taxed, and sold for recreational consumption.
33  Initiative Measure No. 502 provides for strict regulation on the
34  production, processing, and distribution of marijuana. Under
35  Initiative Measure No. 502, marijuana is trackable from seed to sale
36  and may only be sold or grown under license. Marijuana must be tested
37  for impurities and purchasers of marijuana must be informed of the
38  THC level in the marijuana. Since its passage, two hundred fifty
39  producer/processor licenses and sixty-three retail licenses have been
40  issued, covering the majority of the state. With the current product

 1  canopy exceeding 2.9 million square feet, and retailers in place, the
 2  state now has a system of safe, consistent, and adequate access to
 3  marijuana; the marketplace is not the same marketplace envisioned by
 4  the voters in 1998. While medical needs remain, the state is in the
 5  untenable position of having a recreational product that is tested
 6  and subject to production standards that ensure safe access for
 7  recreational users. No such standards exist for medical users and,
 8  consequently, the very people originally meant to be helped through
 9  the medical use of marijuana do not know if their product has been
10  tested for molds, do not know where their marijuana has been grown,
11  have no certainty in the level of THC or CBD in their products, and
12  have no assurances that their products have been handled through
13  quality assurance measures. It is not the public policy of the state
14  to allow qualifying patients to only have access to products that may
15  be endangering their health.
16      The legislature, therefore, intends to adopt a comprehensive act
17  that uses the regulations in place for the recreational market to
18  provide regulation for the medical use of marijuana. It intends to
19  ensure that patients retain their ability to grow their own marijuana
20  for their own medical use and it intends to ensure that patients have
21  the ability to possess more marijuana-infused products, useable
22  marijuana, and marijuana concentrates than what is available to a
23  nonmedical user. It further intends that medical specific regulations
24  be adopted as needed and under consultation of the departments of
25  health and agriculture so that safe handling practices will be
26  adopted and so that testing standards for medical products meet or
27  exceed those standards in use in the recreational market.
28      The legislature further intends that the costs associated with
29  implementing and administering the medical marijuana authorization
30  database shall be financed from the health professions account and
31  that these funds shall be restored to the health professions account
32  through future appropriations using funds derived from the dedicated
33  marijuana account.

34      **Sec. 3.**  RCW 66.08.012 and 2012 c 117 s 265 are each amended to
35  read as follows:
36      There shall be a board, known as the "Washington state liquor
37  ((~~control~~)) and cannabis board," consisting of three members, to be
38  appointed by the governor, with the consent of the senate, who shall
39  each be paid an annual salary to be fixed by the governor in

1  accordance with the provisions of RCW 43.03.040. The governor may, in
2  his or her discretion, appoint one of the members as chair of the
3  board, and a majority of the members shall constitute a quorum of the
4  board.

5  **Sec. 4.**  RCW 69.50.101 and 2014 c 192 s 1 are each amended to
6  read as follows:
7      Unless the context clearly requires otherwise, definitions of
8  terms shall be as indicated where used in this chapter:
9      (a) "Administer" means to apply a controlled substance, whether
10 by injection, inhalation, ingestion, or any other means, directly to
11 the body of a patient or research subject by:
12     (1) a practitioner authorized to prescribe (or, by the
13 practitioner's authorized agent); or
14     (2) the patient or research subject at the direction and in the
15 presence of the practitioner.
16     (b) "Agent" means an authorized person who acts on behalf of or
17 at the direction of a manufacturer, distributor, or dispenser. It
18 does not include a common or contract carrier, public
19 warehouseperson, or employee of the carrier or warehouseperson.
20     (c) "Commission" means the pharmacy quality assurance commission.
21     (d) "Controlled substance" means a drug, substance, or immediate
22 precursor included in Schedules I through V as set forth in federal
23 or state laws, or federal or commission rules.
24     (e)(1) "Controlled substance analog" means a substance the
25 chemical structure of which is substantially similar to the chemical
26 structure of a controlled substance in Schedule I or II and:
27     (i) that has a stimulant, depressant, or hallucinogenic effect on
28 the central nervous system substantially similar to the stimulant,
29 depressant, or hallucinogenic effect on the central nervous system of
30 a controlled substance included in Schedule I or II; or
31     (ii) with respect to a particular individual, that the individual
32 represents or intends to have a stimulant, depressant, or
33 hallucinogenic effect on the central nervous system substantially
34 similar to the stimulant, depressant, or hallucinogenic effect on the
35 central nervous system of a controlled substance included in Schedule
36 I or II.
37     (2) The term does not include:
38     (i) a controlled substance;

1    (ii) a substance for which there is an approved new drug
2    application;
3    (iii) a substance with respect to which an exemption is in effect
4    for investigational use by a particular person under Section 505 of
5    the federal Food, Drug and Cosmetic Act, 21 U.S.C. Sec. 355, to the
6    extent conduct with respect to the substance is pursuant to the
7    exemption; or
8    (iv) any substance to the extent not intended for human
9    consumption before an exemption takes effect with respect to the
10   substance.
11   (f) "Deliver" or "delivery," means the actual or constructive
12   transfer from one person to another of a substance, whether or not
13   there is an agency relationship.
14   (g) "Department" means the department of health.
15   (h) "Dispense" means the interpretation of a prescription or
16   order for a controlled substance and, pursuant to that prescription
17   or order, the proper selection, measuring, compounding, labeling, or
18   packaging necessary to prepare that prescription or order for
19   delivery.
20   (i) "Dispenser" means a practitioner who dispenses.
21   (j) "Distribute" means to deliver other than by administering or
22   dispensing a controlled substance.
23   (k) "Distributor" means a person who distributes.
24   (l) "Drug" means (1) a controlled substance recognized as a drug
25   in the official United States pharmacopoeia/national formulary or the
26   official homeopathic pharmacopoeia of the United States, or any
27   supplement to them; (2) controlled substances intended for use in the
28   diagnosis, cure, mitigation, treatment, or prevention of disease in
29   individuals or animals; (3) controlled substances (other than food)
30   intended to affect the structure or any function of the body of
31   individuals or animals; and (4) controlled substances intended for
32   use as a component of any article specified in (1), (2), or (3) of
33   this subsection. The term does not include devices or their
34   components, parts, or accessories.
35   (m) "Drug enforcement administration" means the drug enforcement
36   administration in the United States Department of Justice, or its
37   successor agency.
38   (n) "Electronic communication of prescription information" means
39   the transmission of a prescription or refill authorization for a drug
40   of a practitioner using computer systems. The term does not include a

1  prescription   or   refill   authorization   verbally   transmitted   by
2  telephone nor a facsimile manually signed by the practitioner.

3      (o) "Immediate precursor" means a substance:

4      (1) that the commission has found to be and by rule designates as
5  being the principal compound commonly used, or produced primarily for
6  use, in the manufacture of a controlled substance;

7      (2) that is an immediate chemical intermediary used or likely to
8  be used in the manufacture of a controlled substance; and

9      (3) the control of which is necessary to prevent, curtail, or
10 limit the manufacture of the controlled substance.

11     (p) "Isomer" means an optical isomer, but in subsection (z)(5) of
12 this section, RCW 69.50.204(a) (12) and (34), and 69.50.206(b)(4),
13 the term includes any geometrical isomer; in RCW 69.50.204(a) (8) and
14 (42), and 69.50.210(c) the term includes any positional isomer; and
15 in RCW 69.50.204(a)(35), 69.50.204(c), and 69.50.208(a) the term
16 includes any positional or geometric isomer.

17     (q) "Lot" means a definite quantity of marijuana, <u>marijuana</u>
18 <u>concentrates,</u> useable marijuana, or marijuana-infused product
19 identified by a lot number, every portion or package of which is
20 uniform within recognized tolerances for the factors that appear in
21 the labeling.

22     (r) "Lot number" shall identify the licensee by business or trade
23 name and Washington state unified business identifier number, and the
24 date of harvest or processing for each lot of marijuana, <u>marijuana</u>
25 <u>concentrates,</u> useable marijuana, or marijuana-infused product.

26     (s) "Manufacture" means the production, preparation, propagation,
27 compounding, conversion, or processing of a controlled substance,
28 either directly or indirectly or by extraction from substances of
29 natural origin, or independently by means of chemical synthesis, or
30 by a combination of extraction and chemical synthesis, and includes
31 any   packaging   or   repackaging   of   the   substance   or   labeling   or
32 relabeling   of   its   container.   The   term   does   not   include   the
33 preparation,   compounding,   packaging,   repackaging,   labeling,   or
34 relabeling of a controlled substance:

35     (1) by a practitioner as an incident to the practitioner's
36 administering or dispensing of a controlled substance in the course
37 of the practitioner's professional practice; or

38     (2) by a practitioner, or by the practitioner's authorized agent
39 under the practitioner's supervision, for the purpose of, or as an

1  incident to, research, teaching, or chemical analysis and not for
2  sale.

3      (t) "Marijuana" or "marihuana" means all parts of the plant
4  *Cannabis*, whether growing or not, with a THC concentration greater
5  than 0.3 percent on a dry weight basis; the seeds thereof; the resin
6  extracted from any part of the plant; and every compound,
7  manufacture, salt, derivative, mixture, or preparation of the plant,
8  its seeds or resin. The term does not include the mature stalks of
9  the plant, fiber produced from the stalks, oil or cake made from the
10 seeds of the plant, any other compound, manufacture, salt,
11 derivative, mixture, or preparation of the mature stalks (except the
12 resin extracted therefrom), fiber, oil, or cake, or the sterilized
13 seed of the plant which is incapable of germination.

14     (u) "Marijuana concentrates" means products consisting wholly or
15 in part of the resin extracted from any part of the plant *Cannabis*
16 and having a THC concentration greater than sixty percent.

17     (v) "Marijuana processor" means a person licensed by the state
18 liquor ((control)) and cannabis board to process marijuana into
19 marijuana concentrates, useable marijuana, and marijuana-infused
20 products, package and label marijuana concentrates, useable
21 marijuana, and marijuana-infused products for sale in retail outlets,
22 and sell marijuana concentrates, useable marijuana, and marijuana-
23 infused products at wholesale to marijuana retailers.

24     (w) "Marijuana producer" means a person licensed by the state
25 liquor ((control)) and cannabis board to produce and sell marijuana
26 at wholesale to marijuana processors and other marijuana producers.

27     (x) "Marijuana-infused products" means products that contain
28 marijuana or marijuana extracts, are intended for human use, and have
29 a THC concentration greater than 0.3 percent and no greater than
30 sixty percent. The term "marijuana-infused products" does not include
31 either useable marijuana or marijuana concentrates.

32     (y) "Marijuana retailer" means a person licensed by the state
33 liquor ((control)) and cannabis board to sell marijuana concentrates,
34 useable marijuana, and marijuana-infused products in a retail outlet.

35     (z) "Narcotic drug" means any of the following, whether produced
36 directly or indirectly by extraction from substances of vegetable
37 origin, or independently by means of chemical synthesis, or by a
38 combination of extraction and chemical synthesis:

39     (1) Opium, opium derivative, and any derivative of opium or opium
40 derivative, including their salts, isomers, and salts of isomers,

1  whenever the existence of the salts, isomers, and salts of isomers is
2  possible within the specific chemical designation. The term does not
3  include the isoquinoline alkaloids of opium.

4     (2) Synthetic opiate and any derivative of synthetic opiate,
5  including their isomers, esters, ethers, salts, and salts of isomers,
6  esters, and ethers, whenever the existence of the isomers, esters,
7  ethers, and salts is possible within the specific chemical
8  designation.

9     (3) Poppy straw and concentrate of poppy straw.

10    (4) Coca leaves, except coca leaves and extracts of coca leaves
11 from which cocaine, ecgonine, and derivatives or ecgonine or their
12 salts have been removed.

13    (5) Cocaine, or any salt, isomer, or salt of isomer thereof.

14    (6) Cocaine base.

15    (7) Ecgonine, or any derivative, salt, isomer, or salt of isomer
16 thereof.

17    (8) Any compound, mixture, or preparation containing any quantity
18 of any substance referred to in subparagraphs (1) through (7).

19    (aa) "Opiate" means any substance having an addiction-forming or
20 addiction-sustaining liability similar to morphine or being capable
21 of conversion into a drug having addiction-forming or addiction-
22 sustaining liability. The term includes opium, substances derived
23 from opium (opium derivatives), and synthetic opiates. The term does
24 not include, unless specifically designated as controlled under RCW
25 69.50.201, the dextrorotatory isomer of 3-methoxy-n-methylmorphinan
26 and its salts (dextromethorphan). The term includes the racemic and
27 levorotatory forms of dextromethorphan.

28    (bb) "Opium poppy" means the plant of the species Papaver
29 somniferum L., except its seeds.

30    (cc) "Person" means individual, corporation, business trust,
31 estate, trust, partnership, association, joint venture, government,
32 governmental subdivision or agency, or any other legal or commercial
33 entity.

34    (dd) "Poppy straw" means all parts, except the seeds, of the
35 opium poppy, after mowing.

36    (ee) "Practitioner" means:

37    (1) A physician under chapter 18.71 RCW; a physician assistant
38 under chapter 18.71A RCW; an osteopathic physician and surgeon under
39 chapter 18.57 RCW; an osteopathic physician assistant under chapter
40 18.57A RCW who is licensed under RCW 18.57A.020 subject to any

1   limitations in RCW 18.57A.040; an optometrist licensed under chapter
2   18.53 RCW who is certified by the optometry board under RCW 18.53.010
3   subject to any limitations in RCW 18.53.010; a dentist under chapter
4   18.32 RCW; a podiatric physician and surgeon under chapter 18.22 RCW;
5   a veterinarian under chapter 18.92 RCW; a registered nurse, advanced
6   registered nurse practitioner, or licensed practical nurse under
7   chapter 18.79 RCW; a naturopathic physician under chapter 18.36A RCW
8   who is licensed under RCW 18.36A.030 subject to any limitations in
9   RCW 18.36A.040; a pharmacist under chapter 18.64 RCW or a scientific
10  investigator under this chapter, licensed, registered or otherwise
11  permitted insofar as is consistent with those licensing laws to
12  distribute, dispense, conduct research with respect to or administer
13  a controlled substance in the course of their professional practice
14  or research in this state.

15      (2) A pharmacy, hospital or other institution licensed,
16  registered, or otherwise permitted to distribute, dispense, conduct
17  research with respect to or to administer a controlled substance in
18  the course of professional practice or research in this state.

19      (3) A physician licensed to practice medicine and surgery, a
20  physician licensed to practice osteopathic medicine and surgery, a
21  dentist licensed to practice dentistry, a podiatric physician and
22  surgeon licensed to practice podiatric medicine and surgery, a
23  licensed physician assistant or a licensed osteopathic physician
24  assistant specifically approved to prescribe controlled substances by
25  his or her state's medical quality assurance commission or equivalent
26  and his or her supervising physician, an advanced registered nurse
27  practitioner licensed to prescribe controlled substances, or a
28  veterinarian licensed to practice veterinary medicine in any state of
29  the United States.

30      (ff) "Prescription" means an order for controlled substances
31  issued by a practitioner duly authorized by law or rule in the state
32  of Washington to prescribe controlled substances within the scope of
33  his or her professional practice for a legitimate medical purpose.

34      (gg) "Production" includes the manufacturing, planting,
35  cultivating, growing, or harvesting of a controlled substance.

36      (hh) "Retail outlet" means a location licensed by the state
37  liquor ((control)) and cannabis board for the retail sale of
38  marijuana concentrates, useable marijuana, and marijuana-infused
39  products.

1    (ii) "Secretary" means the secretary of health or the secretary's
2    designee.

3    (jj) "State," unless the context otherwise requires, means a
4    state of the United States, the District of Columbia, the
5    Commonwealth of Puerto Rico, or a territory or insular possession
6    subject to the jurisdiction of the United States.

7    (kk) "THC concentration" means percent of delta-9
8    tetrahydrocannabinol content per dry weight of any part of the plant
9    *Cannabis*, or per volume or weight of marijuana product, or the
10   combined percent of delta-9 tetrahydrocannabinol and
11   tetrahydrocannabinolic acid in any part of the plant *Cannabis*
12   regardless of moisture content.

13   (ll) "Ultimate user" means an individual who lawfully possesses a
14   controlled substance for the individual's own use or for the use of a
15   member of the individual's household or for administering to an
16   animal owned by the individual or by a member of the individual's
17   household.

18   (mm) "Useable marijuana" means dried marijuana flowers. The term
19   "useable marijuana" does not include either marijuana-infused
20   products or marijuana concentrates.

21   (nn) "Designated provider" has the meaning provided in RCW
22   69.51A.010.

23   (oo) "Qualifying patient" has the meaning provided in RCW
24   69.51A.010.

25   (pp) "CBD concentration" has the meaning provided in RCW
26   69.51A.010.

27   (qq) "Plant" has the meaning provided in RCW 69.51A.010.

28   (rr) "Recognition card" has the meaning provided in RCW
29   69.51A.010.

30   **Sec. 5.**  RCW 69.50.325 and 2014 c 192 s 2 are each amended to
31   read as follows:

32   (1) There shall be a marijuana producer's license to produce
33   marijuana for sale at wholesale to marijuana processors and other
34   marijuana producers, regulated by the state liquor ((control)) and
35   cannabis board and subject to annual renewal. The production,
36   possession, delivery, distribution, and sale of marijuana in
37   accordance with the provisions of this chapter ((3, Laws of 2013))
38   and the rules adopted to implement and enforce it, by a validly
39   licensed marijuana producer, shall not be a criminal or civil offense

1  under Washington state law. Every marijuana producer's license shall
2  be issued in the name of the applicant, shall specify the location at
3  which the marijuana producer intends to operate, which must be within
4  the state of Washington, and the holder thereof shall not allow any
5  other person to use the license. The application fee for a marijuana
6  producer's license shall be two hundred fifty dollars. The annual fee
7  for issuance and renewal of a marijuana producer's license shall be
8  one thousand dollars. A separate license shall be required for each
9  location at which a marijuana producer intends to produce marijuana.

10      (2) There shall be a marijuana processor's license to process,
11  package, and label marijuana concentrates, useable marijuana, and
12  marijuana-infused products for sale at wholesale to marijuana
13  processors and marijuana retailers, regulated by the state liquor
14  ((control)) and cannabis board and subject to annual renewal. The
15  processing, packaging, possession, delivery, distribution, and sale
16  of marijuana, useable marijuana, marijuana-infused products, and
17  marijuana concentrates in accordance with the provisions of this
18  chapter ((3, Laws of 2013)) and chapter 69.51A RCW and the rules
19  adopted to implement and enforce ((it)) these chapters, by a validly
20  licensed marijuana processor, shall not be a criminal or civil
21  offense under Washington state law. Every marijuana processor's
22  license shall be issued in the name of the applicant, shall specify
23  the location at which the licensee intends to operate, which must be
24  within the state of Washington, and the holder thereof shall not
25  allow any other person to use the license. The application fee for a
26  marijuana processor's license shall be two hundred fifty dollars. The
27  annual fee for issuance and renewal of a marijuana processor's
28  license shall be one thousand dollars. A separate license shall be
29  required for each location at which a marijuana processor intends to
30  process marijuana.

31      (3) There shall be a marijuana retailer's license to sell
32  marijuana concentrates, useable marijuana, and marijuana-infused
33  products at retail in retail outlets, regulated by the state liquor
34  ((control)) and cannabis board and subject to annual renewal. The
35  possession, delivery, distribution, and sale of marijuana
36  concentrates, useable marijuana, and marijuana-infused products in
37  accordance with the provisions of this chapter ((3, Laws of 2013))
38  and the rules adopted to implement and enforce it, by a validly
39  licensed marijuana retailer, shall not be a criminal or civil offense
40  under Washington state law. Every marijuana retailer's license shall

1  be issued in the name of the applicant, shall specify the location of
2  the retail outlet the licensee intends to operate, which must be
3  within the state of Washington, and the holder thereof shall not
4  allow any other person to use the license. The application fee for a
5  marijuana retailer's license shall be two hundred fifty dollars. The
6  annual fee for issuance and renewal of a marijuana retailer's license
7  shall be one thousand dollars. A separate license shall be required
8  for each location at which a marijuana retailer intends to sell
9  marijuana concentrates, useable marijuana, and marijuana-infused
10 products.

11     **Sec. 6.**  RCW 69.50.331 and 2013 c 3 s 6 are each amended to read
12 as follows:
13     (1) For the purpose of considering any application for a license
14 to produce, process, or sell marijuana, or for the renewal of a
15 license to produce, process, or sell marijuana, the state liquor
16 ((control)) and cannabis board must conduct a comprehensive, fair,
17 and impartial evaluation of the applications timely received.
18     (a) The state liquor and cannabis board must develop a
19 competitive, merit-based application process that includes, at a
20 minimum, the opportunity for an applicant to demonstrate experience
21 and qualifications in the marijuana industry. The state liquor and
22 cannabis board shall give preference between competing applications
23 in the licensing process to applicants that have the following
24 experience and qualifications, in the following order of priority:
25     (i) First priority is given to applicants who:
26     (A) Applied to the state liquor and cannabis board for a
27 marijuana retailer license prior to July 1, 2014;
28     (B) Operated or were employed by a collective garden before
29 January 1, 2013;
30     (C) Have maintained a state business license and a municipal
31 business license, as applicable in the relevant jurisdiction; and
32     (D) Have had a history of paying all applicable state taxes and
33 fees;
34     (ii) Second priority shall be given to applicants who:
35     (A) Operated or were employed by a collective garden before
36 January 1, 2013;
37     (B) Have maintained a state business license and a municipal
38 business license, as applicable in the relevant jurisdiction; and

1     (C) Have had a history of paying all applicable state taxes and
2  fees; and
3     (iii) Third priority shall be given to all other applicants who
4  do not have the experience and qualifications identified in (a)(i)
5  and (ii) of this subsection.
6     (b) The state liquor and cannabis board may cause an inspection
7  of the premises to be made, and may inquire into all matters in
8  connection with the construction and operation of the premises. For
9  the purpose of reviewing any application for a license and for
10  considering the denial, suspension, revocation, or renewal or denial
11  thereof, of any license, the state liquor ((control)) and cannabis
12  board may consider any prior criminal conduct of the applicant
13  including an administrative violation history record with the state
14  liquor ((control)) and cannabis board and a criminal history record
15  information check. The state liquor ((control)) and cannabis board
16  may submit the criminal history record information check to the
17  Washington state patrol and to the identification division of the
18  federal bureau of investigation in order that these agencies may
19  search their records for prior arrests and convictions of the
20  individual or individuals who filled out the forms. The state liquor
21  ((control)) and cannabis board shall require fingerprinting of any
22  applicant whose criminal history record information check is
23  submitted to the federal bureau of investigation. The provisions of
24  RCW 9.95.240 and of chapter 9.96A RCW shall not apply to these cases.
25  Subject to the provisions of this section, the state liquor
26  ((control)) and cannabis board may, in its discretion, grant or deny
27  the renewal or license applied for. Denial may be based on, without
28  limitation, the existence of chronic illegal activity documented in
29  objections submitted pursuant to subsections (7)(c) and (9) of this
30  section. Authority to approve an uncontested or unopposed license may
31  be granted by the state liquor ((control)) and cannabis board to any
32  staff member the board designates in writing. Conditions for granting
33  this authority shall be adopted by rule.
34     (c) No license of any kind may be issued to:
35     (((a))) (i) A person under the age of twenty-one years;
36     (((b))) (ii) A person doing business as a sole proprietor who has
37  not lawfully resided in the state for at least three months prior to
38  applying to receive a license;
39     (((c))) (iii) A partnership, employee cooperative, association,
40  nonprofit corporation, or corporation unless formed under the laws of

1  this state, and unless all of the members thereof are qualified to
2  obtain a license as provided in this section; or

3      (((d))) (iv) A person whose place of business is conducted by a
4  manager or agent, unless the manager or agent possesses the same
5  qualifications required of the licensee.

6      (2)(a) The state liquor ((control)) and cannabis board may, in
7  its discretion, subject to the provisions of RCW 69.50.334, suspend
8  or cancel any license; and all protections of the licensee from
9  criminal or civil sanctions under state law for producing,
10 processing, or selling marijuana, useable marijuana, or marijuana-
11 infused products thereunder shall be suspended or terminated, as the
12 case may be.

13     (b) The state liquor ((control)) and cannabis board shall
14 immediately suspend the license of a person who has been certified
15 pursuant to RCW 74.20A.320 by the department of social and health
16 services as a person who is not in compliance with a support order.
17 If the person has continued to meet all other requirements for
18 reinstatement during the suspension, reissuance of the license shall
19 be automatic upon the state liquor ((control)) and cannabis board's
20 receipt of a release issued by the department of social and health
21 services stating that the licensee is in compliance with the order.

22     (c) The state liquor ((control)) and cannabis board may request
23 the appointment of administrative law judges under chapter 34.12 RCW
24 who shall have power to administer oaths, issue subpoenas for the
25 attendance of witnesses and the production of papers, books,
26 accounts, documents, and testimony, examine witnesses, and to receive
27 testimony in any inquiry, investigation, hearing, or proceeding in
28 any part of the state, under rules and regulations the state liquor
29 ((control)) and cannabis board may adopt.

30     (d) Witnesses shall be allowed fees and mileage each way to and
31 from any inquiry, investigation, hearing, or proceeding at the rate
32 authorized by RCW 34.05.446. Fees need not be paid in advance of
33 appearance of witnesses to testify or to produce books, records, or
34 other legal evidence.

35     (e) In case of disobedience of any person to comply with the
36 order of the state liquor ((control)) and cannabis board or a
37 subpoena issued by the state liquor ((control)) and cannabis board,
38 or any of its members, or administrative law judges, or on the
39 refusal of a witness to testify to any matter regarding which he or
40 she may be lawfully interrogated, the judge of the superior court of

1   the county in which the person resides, on application of any member
2   of the board or administrative law judge, shall compel obedience by
3   contempt proceedings, as in the case of disobedience of the
4   requirements of a subpoena issued from said court or a refusal to
5   testify therein.

6       (3) Upon receipt of notice of the suspension or cancellation of a
7   license, the licensee shall forthwith deliver up the license to the
8   state liquor ((control)) and cannabis board. Where the license has
9   been suspended only, the state liquor ((control)) and cannabis board
10  shall return the license to the licensee at the expiration or
11  termination of the period of suspension. The state liquor ((control))
12  and cannabis board shall notify all other licensees in the county
13  where the subject licensee has its premises of the suspension or
14  cancellation of the license; and no other licensee or employee of
15  another licensee may allow or cause any marijuana, useable marijuana,
16  or marijuana-infused products to be delivered to or for any person at
17  the premises of the subject licensee.

18      (4) Every license issued under chapter 3, Laws of 2013 shall be
19  subject to all conditions and restrictions imposed by chapter 3, Laws
20  of 2013 or by rules adopted by the state liquor ((control)) and
21  cannabis board to implement and enforce chapter 3, Laws of 2013. All
22  conditions and restrictions imposed by the state liquor ((control))
23  and cannabis board in the issuance of an individual license shall be
24  listed on the face of the individual license along with the trade
25  name, address, and expiration date.

26      (5) Every licensee shall post and keep posted its license, or
27  licenses, in a conspicuous place on the premises.

28      (6) No licensee shall employ any person under the age of twenty-
29  one years.

30      (7)(a) Before the state liquor ((control)) and cannabis board
31  issues a new or renewed license to an applicant it shall give notice
32  of the application to the chief executive officer of the incorporated
33  city or town, if the application is for a license within an
34  incorporated city or town, or to the county legislative authority, if
35  the application is for a license outside the boundaries of
36  incorporated cities or towns.

37      (b) The incorporated city or town through the official or
38  employee selected by it, or the county legislative authority or the
39  official or employee selected by it, shall have the right to file
40  with the state liquor ((control)) and cannabis board within twenty

1  days after the date of transmittal of the notice for applications, or
2  at least thirty days prior to the expiration date for renewals,
3  written objections against the applicant or against the premises for
4  which the new or renewed license is asked. The state liquor
5  ((control)) and cannabis board may extend the time period for
6  submitting written objections.

7      (c) The written objections shall include a statement of all facts
8  upon which the objections are based, and in case written objections
9  are filed, the city or town or county legislative authority may
10  request, and the state liquor ((control)) and cannabis board may in
11  its discretion hold, a hearing subject to the applicable provisions
12  of Title 34 RCW. If the state liquor ((control)) and cannabis board
13  makes an initial decision to deny a license or renewal based on the
14  written objections of an incorporated city or town or county
15  legislative authority, the applicant may request a hearing subject to
16  the applicable provisions of Title 34 RCW. If a hearing is held at
17  the request of the applicant, state liquor ((control)) and cannabis
18  board representatives shall present and defend the state liquor
19  ((control)) and cannabis board's initial decision to deny a license
20  or renewal.

21      (d) Upon the granting of a license under this title the state
22  liquor ((control)) and cannabis board shall send written notification
23  to the chief executive officer of the incorporated city or town in
24  which the license is granted, or to the county legislative authority
25  if the license is granted outside the boundaries of incorporated
26  cities or towns.

27      (8) The state liquor ((control)) and cannabis board shall not
28  issue a license for any premises within one thousand feet of the
29  perimeter of the grounds of any elementary or secondary school,
30  playground, recreation center or facility, child care center, public
31  park, public transit center, or library, or any game arcade admission
32  to which is not restricted to persons aged twenty-one years or older.

33      (9) In determining whether to grant or deny a license or renewal
34  of any license, the state liquor ((control)) and cannabis board shall
35  give substantial weight to objections from an incorporated city or
36  town or county legislative authority based upon chronic illegal
37  activity associated with the applicant's operations of the premises
38  proposed to be licensed or the applicant's operation of any other
39  licensed premises, or the conduct of the applicant's patrons inside
40  or outside the licensed premises. "Chronic illegal activity" means

1  (a) a pervasive pattern of activity that threatens the public health,
2  safety, and welfare of the city, town, or county including, but not
3  limited to, open container violations, assaults, disturbances,
4  disorderly conduct, or other criminal law violations, or as
5  documented in crime statistics, police reports, emergency medical
6  response data, calls for service, field data, or similar records of a
7  law enforcement agency for the city, town, county, or any other
8  municipal corporation or any state agency; or (b) an unreasonably
9  high number of citations for violations of RCW 46.61.502 associated
10 with the applicant's or licensee's operation of any licensed premises
11 as indicated by the reported statements given to law enforcement upon
12 arrest.

13    **Sec. 7.**  RCW 69.50.342 and 2013 c 3 s 9 are each amended to read
14 as follows:
15    (1) For the purpose of carrying into effect the provisions of
16 chapter 3, Laws of 2013 according to their true intent or of
17 supplying any deficiency therein, the state liquor ((control)) and
18 cannabis board may adopt rules not inconsistent with the spirit of
19 chapter 3, Laws of 2013 as are deemed necessary or advisable. Without
20 limiting the generality of the preceding sentence, the state liquor
21 ((control)) and cannabis board is empowered to adopt rules regarding
22 the following:
23    (((1))) (a) The equipment and management of retail outlets and
24 premises where marijuana is produced or processed, and inspection of
25 the retail outlets and premises where marijuana is produced or
26 processed;
27    (((2))) (b) The books and records to be created and maintained by
28 licensees, the reports to be made thereon to the state liquor
29 ((control)) and cannabis board, and inspection of the books and
30 records;
31    (((3))) (c) Methods of producing, processing, and packaging
32 marijuana, useable marijuana, marijuana concentrates, and marijuana-
33 infused products; conditions of sanitation; safe handling
34 requirements; approved pesticides and pesticide testing requirements;
35 and standards of ingredients, quality, and identity of marijuana,
36 useable marijuana, marijuana concentrates, and marijuana-infused
37 products produced, processed, packaged, or sold by licensees;

1    (((4))) (d) Security requirements for retail outlets and premises
2    where marijuana is produced or processed, and safety protocols for
3    licensees and their employees;

4    (((5))) (e) Screening, hiring, training, and supervising
5    employees of licensees;

6    (((6))) (f) Retail outlet locations and hours of operation;

7    (((7))) (g) Labeling requirements and restrictions on
8    advertisement of marijuana, useable marijuana, marijuana
9    concentrates, and marijuana-infused products for sale in retail
10   outlets;

11   (((8))) (h) Forms to be used for purposes of this chapter ((3,
12   Laws of 2013)) and chapter 69.51A RCW or the rules adopted to
13   implement and enforce ((it)) these chapters, the terms and conditions
14   to be contained in licenses issued under this chapter ((3, Laws of
15   2013)) and chapter 69.51A RCW, and the qualifications for receiving a
16   license issued under this chapter ((3, Laws of 2013)) and chapter
17   69.51A RCW, including a criminal history record information check.
18   The state liquor ((control)) and cannabis board may submit any
19   criminal history record information check to the Washington state
20   patrol and to the identification division of the federal bureau of
21   investigation in order that these agencies may search their records
22   for prior arrests and convictions of the individual or individuals
23   who filled out the forms. The state liquor ((control)) and cannabis
24   board shall require fingerprinting of any applicant whose criminal
25   history record information check is submitted to the federal bureau
26   of investigation;

27   (((9))) (i) Application, reinstatement, and renewal fees for
28   licenses issued under this chapter ((3, Laws of 2013)) and chapter
29   69.51A RCW, and fees for anything done or permitted to be done under
30   the rules adopted to implement and enforce this chapter ((3, Laws of
31   2013)) and chapter 69.51A RCW;

32   (((10))) (j) The manner of giving and serving notices required by
33   this chapter ((3, Laws of 2013)) and chapter 69.51A RCW or rules
34   adopted to implement or enforce ((it)) these chapters;

35   (((11))) (k) Times and periods when, and the manner, methods, and
36   means by which, licensees shall transport and deliver marijuana,
37   marijuana concentrates, useable marijuana, and marijuana-infused
38   products within the state;

39   (((12))) (l) Identification, seizure, confiscation, destruction,
40   or donation to law enforcement for training purposes of all

1   marijuana, <u>marijuana concentrates,</u> useable marijuana, and marijuana-
2   infused products produced, processed, sold, or offered for sale
3   within this state which do not conform in all respects to the
4   standards prescribed by <u>this</u> chapter ((<s>3, Laws of 2013</s>)) <u>or chapter</u>
5   <u>69.51A RCW</u> or the rules adopted to implement and enforce ((<s>it:</s>
6   <s>PROVIDED, That nothing in chapter 3, Laws of 2013 shall be construed</s>
7   <s>as authorizing the state liquor control board to seize, confiscate,</s>
8   <s>destroy, or donate to law enforcement marijuana, useable marijuana,</s>
9   <s>or marijuana-infused products produced, processed, sold, offered for</s>
10  <s>sale, or possessed in compliance with the Washington state medical</s>
11  <s>use of cannabis act, chapter 69.51A RCW</s>)) <u>these chapters</u>.
12      <u>(2) Rules adopted on retail outlets holding medical marijuana</u>
13  <u>endorsements must be adopted in coordination and consultation with</u>
14  <u>the department.</u>

15      **Sec. 8.**  RCW 69.50.345 and 2013 c 3 s 10 are each amended to read
16  as follows:
17      The state liquor ((<s>control</s>)) <u>and cannabis</u> board, subject to the
18  provisions of <u>this</u> chapter ((<s>3, Laws of 2013</s>)), must adopt rules ((<s>by</s>
19  <s>December 1, 2013,</s>)) that establish the procedures and criteria
20  necessary to implement the following:
21      (1) Licensing of marijuana producers, marijuana processors, and
22  marijuana retailers, including prescribing forms and establishing
23  application, reinstatement, and renewal fees<u>.</u>
24      <u>(a) Application forms for marijuana producers must request the</u>
25  <u>applicant to state whether the applicant intends to produce marijuana</u>
26  <u>for sale by marijuana retailers holding medical marijuana</u>
27  <u>endorsements and the amount of or percentage of canopy the applicant</u>
28  <u>intends to commit to growing plants determined by the department</u>
29  <u>under section 10 of this act to be of a THC concentration, CBD</u>
30  <u>concentration, or THC to CBD ratio appropriate for marijuana</u>
31  <u>concentrates, useable marijuana, or marijuana-infused products sold</u>
32  <u>to qualifying patients.</u>
33      <u>(b) The state liquor and cannabis board must reconsider and</u>
34  <u>increase limits on the amount of square feet permitted to be in</u>
35  <u>production on the effective date of this section and increase the</u>
36  <u>percentage of production space for those marijuana producers who</u>
37  <u>intend to grow plants for marijuana retailers holding medical</u>
38  <u>marijuana endorsements if the marijuana producer designates the</u>
39  <u>increased production space to plants determined by the department</u>

1    under section 10 of this act to be of a THC concentration, CBD
2    concentration, or THC to CBD ratio appropriate for marijuana
3    concentrates, useable marijuana, or marijuana-infused products to be
4    sold to qualifying patients. If current marijuana producers do not
5    use all the increased production space, the state liquor and cannabis
6    board may reopen the license period for new marijuana producer
7    license applicants but only to those marijuana producers who agree to
8    grow plants for marijuana retailers holding medical marijuana
9    endorsements. Priority in licensing must be given to marijuana
10   producer license applicants who have an application pending on the
11   effective date of this section but who are not yet licensed and then
12   to new marijuana producer license applicants. After January 1, 2017,
13   any reconsideration of the limits on the amount of square feet
14   permitted to be in production to meet the medical needs of qualifying
15   patients must consider information contained in the medical marijuana
16   authorization database established in section 21 of this act;
17        (2) Determining, in consultation with the office of financial
18   management, the maximum number of retail outlets that may be licensed
19   in each county, taking into consideration:
20        (a) Population distribution;
21        (b) Security and safety issues; ((and))
22        (c) The provision of adequate access to licensed sources of
23   marijuana concentrates, useable marijuana, and marijuana-infused
24   products to discourage purchases from the illegal market; and
25        (d) The number of retail outlets holding medical marijuana
26   endorsements necessary to meet the medical needs of qualifying
27   patients. The state liquor and cannabis board must reconsider and
28   increase the maximum number of retail outlets it established before
29   the effective date of this section and allow for a new license
30   application period and a greater number of retail outlets to be
31   permitted in order to accommodate the medical needs of qualifying
32   patients and designated providers. After January 1, 2017, any
33   reconsideration of the maximum number of retail outlets needed to
34   meet the medical needs of qualifying patients must consider
35   information contained in the medical marijuana authorization database
36   established in section 21 of this act;
37        (3) Determining the maximum quantity of marijuana a marijuana
38   producer may have on the premises of a licensed location at any time
39   without violating Washington state law;

1    (4) Determining the maximum quantities of marijuana, <u>marijuana</u>
2  <u>concentrates,</u> useable marijuana, and marijuana-infused products a
3  marijuana processor may have on the premises of a licensed location
4  at any time without violating Washington state law;

5    (5) Determining the maximum quantities of <u>marijuana concentrates,</u>
6  useable marijuana<u>,</u> and marijuana-infused products a marijuana
7  retailer may have on the premises of a retail outlet at any time
8  without violating Washington state law;

9    (6) In making the determinations required by ((<s>subsections (3)</s>
10 <s>through (5) of</s>)) this section, the state liquor ((<s>control</s>)) <u>and</u>
11 <u>cannabis</u> board shall take into consideration:

12   (a) Security and safety issues;

13   (b) The provision of adequate access to licensed sources of
14 marijuana, <u>marijuana concentrates,</u> useable marijuana, and marijuana-
15 infused products to discourage purchases from the illegal market; and

16   (c) Economies of scale, and their impact on licensees' ability to
17 both comply with regulatory requirements and undercut illegal market
18 prices;

19   (7) Determining the nature, form, and capacity of all containers
20 to be used by licensees to contain marijuana, <u>marijuana concentrates,</u>
21 useable marijuana, and marijuana-infused products, and their labeling
22 requirements, to include but not be limited to:

23   (a) The business or trade name and Washington state unified
24 business identifier number of the licensees that ((<s>grew,</s>))
25 processed((<s>,</s>)) and sold the marijuana, <u>marijuana concentrates,</u>
26 useable marijuana, or marijuana-infused product;

27   (b) Lot numbers of the marijuana, <u>marijuana concentrates,</u> useable
28 marijuana, or marijuana-infused product;

29   (c) THC concentration <u>and CBD concentration</u> of the marijuana,
30 <u>marijuana concentrates,</u> useable marijuana, or marijuana-infused
31 product;

32   (d) Medically and scientifically accurate information about the
33 health and safety risks posed by marijuana use; and

34   (e) Language required by RCW 69.04.480;

35   (8) In consultation with the department of agriculture <u>and the</u>
36 <u>department</u>, establishing classes of marijuana, <u>marijuana</u>
37 <u>concentrates,</u> useable marijuana, and marijuana-infused products
38 according to grade, condition, cannabinoid profile, THC
39 concentration, <u>CBD concentration,</u> or other qualitative measurements

1  deemed appropriate by the state liquor ((control)) and cannabis
2  board;

3      (9) Establishing reasonable time, place, and manner restrictions
4  and requirements regarding advertising of marijuana, marijuana
5  concentrates, useable marijuana, and marijuana-infused products that
6  are not inconsistent with the provisions of this chapter ((3, Laws of
7  2013)), taking into consideration:

8      (a) Federal laws relating to marijuana that are applicable within
9  Washington state;

10     (b) Minimizing exposure of people under twenty-one years of age
11 to the advertising; ((and))

12     (c) The inclusion of medically and scientifically accurate
13 information about the health and safety risks posed by marijuana use
14 in the advertising; and

15     (d) Ensuring that retail outlets with medical marijuana
16 endorsements may advertise themselves as medical retail outlets;

17     (10) Specifying and regulating the time and periods when, and the
18 manner, methods, and means by which, licensees shall transport and
19 deliver marijuana, marijuana concentrates, useable marijuana, and
20 marijuana-infused products within the state;

21     (11) In consultation with the department and the department of
22 agriculture, establishing accreditation requirements for testing
23 laboratories used by licensees to demonstrate compliance with
24 standards adopted by the state liquor ((control)) and cannabis board,
25 and prescribing methods of producing, processing, and packaging
26 marijuana, marijuana concentrates, useable marijuana, and marijuana-
27 infused products; conditions of sanitation; and standards of
28 ingredients, quality, and identity of marijuana, marijuana
29 concentrates, useable marijuana, and marijuana-infused products
30 produced, processed, packaged, or sold by licensees;

31     (12) Specifying procedures for identifying, seizing,
32 confiscating, destroying, and donating to law enforcement for
33 training purposes all marijuana, marijuana concentrates, useable
34 marijuana, and marijuana-infused products produced, processed,
35 packaged, labeled, or offered for sale in this state that do not
36 conform in all respects to the standards prescribed by this chapter
37 ((3, Laws of 2013)) or the rules of the state liquor ((control)) and
38 cannabis board.

1    **Sec. 9.**  RCW 69.50.354 and 2014 c 192 s 3 are each amended to
2    read as follows:
3        There may be licensed, in no greater number in each of the
4    counties of the state than as the state liquor ((control)) and
5    cannabis board shall deem advisable, retail outlets established for
6    the purpose of making marijuana concentrates, useable marijuana, and
7    marijuana-infused products available for sale to adults aged twenty-
8    one and over. Retail sale of marijuana concentrates, useable
9    marijuana, and marijuana-infused products in accordance with the
10   provisions of this chapter ((3, Laws of 2013)) and the rules adopted
11   to implement and enforce it, by a validly licensed marijuana retailer
12   or retail outlet employee, shall not be a criminal or civil offense
13   under Washington state law.

14       NEW SECTION.  **Sec. 10.**  A new section is added to chapter 69.50
15   RCW to read as follows:
16       (1) A medical marijuana endorsement to a marijuana retail license
17   is hereby established to permit a marijuana retailer to sell
18   marijuana for medical use to qualifying patients and designated
19   providers. This endorsement also permits such retailers to provide
20   marijuana at no charge, at their discretion, to qualifying patients
21   and designated providers.
22       (2) An applicant may apply for a medical marijuana endorsement
23   concurrently with an application for a marijuana retail license.
24       (3) To be issued an endorsement, a marijuana retailer must:
25       (a) Not authorize the medical use of marijuana for qualifying
26   patients at the retail outlet or permit health care professionals to
27   authorize the medical use of marijuana for qualifying patients at the
28   retail outlet;
29       (b) Carry marijuana concentrates and marijuana-infused products
30   identified by the department under subsection (4) of this section;
31       (c) Not use labels or market marijuana concentrates, useable
32   marijuana, or marijuana-infused products in a way that make them
33   intentionally attractive to minors;
34       (d) Demonstrate the ability to enter qualifying patients and
35   designated providers in the medical marijuana authorization database
36   established in section 21 of this act and issue recognition cards and
37   agree to enter qualifying patients and designated providers into the
38   database and issue recognition cards in compliance with department
39   standards;

1      (e)  Keep  copies  of  the  qualifying  patient's  or  designated
2  provider's  recognition  card,  or  keep  equivalent  records  as  required
3  by  rule  of  the  state  liquor  and  cannabis  board  or  the  department  of
4  revenue  to  document  the  validity  of  tax  exempt  sales; and

5      (f) Meet  other  requirements  as  adopted  by  rule  of  the  department
6  or  the  state  liquor  and  cannabis  board.

7      (4)  The  department,  in  conjunction  with  the  state  liquor  and
8  cannabis  board,  must  adopt  rules  on  requirements  for  marijuana
9  concentrates,  useable  marijuana,  and  marijuana-infused  products  that
10  may  be  sold,  or  provided  at  no  charge,  to  qualifying  patients  or
11  designated  providers  at  a  retail  outlet  holding  a  medical  marijuana
12  endorsement. These  rules  must  include:

13      (a)  THC  concentration,  CBD  concentration,  or  low  THC,  high  CBD
14  ratios  appropriate  for  marijuana  concentrates,  useable  marijuana,  or
15  marijuana-infused  products  sold  to  qualifying  patients  or  designated
16  providers;

17      (b)  Labeling  requirements  including  that  the  labels  attached  to
18  marijuana  concentrates,  useable  marijuana,  or  marijuana-infused
19  products  contain  THC  concentration,  CBD  concentration,  and  THC  to  CBD
20  ratios;

21      (c)  Other  product  requirements,  including  any  additional  mold,
22  fungus,  or  pesticide  testing  requirements,  or  limitations  to  the
23  types  of  solvents  that  may  be  used  in  marijuana  processing  that  the
24  department  deems  necessary  to  address  the  medical  needs  of  qualifying
25  patients;

26      (d)  Safe  handling  requirements  for  marijuana  concentrates,
27  useable  marijuana,  or  marijuana-infused  products; and

28      (e) Training  requirements  for  employees.

29      (5) A  marijuana  retailer  holding  an  endorsement  to  sell  marijuana
30  to  qualifying  patients  or  designated  providers  must  train  its
31  employees  on:

32      (a)  Procedures  regarding  the  recognition  of  valid  authorizations
33  and  the  use  of  equipment  to  enter  qualifying  patients  and  designated
34  providers  into  the  medical  marijuana  authorization  database;

35      (b)  Recognition  of  valid  recognition  cards; and

36      (c)  Recognition  of  strains,  varieties,  THC  concentration,  CBD
37  concentration,  and  THC  to  CBD  ratios  of  marijuana  concentrates,
38  useable  marijuana,  and  marijuana-infused  products,  available  for  sale
39  when  assisting  qualifying  patients  and  designated  providers  at  the
40  retail  outlet.

1  <u>NEW SECTION.</u>  **Sec. 11.**  A new section is added to chapter 69.50
2  RCW to read as follows:
3      A marijuana retailer or a marijuana retailer holding a medical
4  marijuana endorsement may sell products with a THC concentration of
5  0.3 percent or less. Marijuana retailers holding a medical marijuana
6  endorsement may also provide these products at no charge to
7  qualifying patients or designated providers.

8      **Sec. 12.**  RCW 69.50.357 and 2014 c 192 s 4 are each amended to
9  read as follows:
10     (1) Retail outlets shall sell no products or services other than
11  marijuana   concentrates,   useable   marijuana,   marijuana-infused
12  products,  or  paraphernalia  intended  for  the  storage  or  use  of
13  marijuana   concentrates,   useable   marijuana,   or   marijuana-infused
14  products.
15     (2) Licensed marijuana retailers shall not employ persons under
16  twenty-one years of age or allow persons under twenty-one years of
17  age to enter or remain on the premises of a retail outlet. <u>However,</u>
18  <u>qualifying patients between eighteen and twenty-one years of age with</u>
19  <u>a recognition card may enter and remain on the premises of a retail</u>
20  <u>outlet holding a medical marijuana endorsement and may purchase</u>
21  <u>products for their personal medical use. Qualifying patients who are</u>
22  <u>under the age of eighteen with a recognition card and who accompany</u>
23  <u>their designated providers may enter and remain on the premises of a</u>
24  <u>retail outlet holding a medical marijuana endorsement, but may not</u>
25  <u>purchase products for their personal medical use.</u>
26     (3)<u>(a)</u> Licensed marijuana retailers <u>must ensure that all</u>
27  <u>employees are trained on the rules adopted to implement this chapter,</u>
28  <u>identification of persons under the age of twenty-one, and other</u>
29  <u>requirements adopted by the state liquor and cannabis board to ensure</u>
30  <u>that persons under the age of twenty-one are not permitted to enter</u>
31  <u>or remain on the premises of a retail outlet.</u>
32     <u>(b) Licensed marijuana retailers with a medical marijuana</u>
33  <u>endorsement must ensure that all employees are trained on the</u>
34  <u>subjects required by (a) of this subsection as well as identification</u>
35  <u>of authorizations and recognition cards. Employees must also be</u>
36  <u>trained to permit qualifying patients who hold recognition cards and</u>
37  <u>are between the ages of eighteen and twenty-one to enter the premises</u>
38  <u>and purchase marijuana for their personal medical use and to permit</u>
39  <u>qualifying patients who are under the age of eighteen with a</u>

1   recognition card to enter the premises if accompanied by their
2   designated providers.

3        (4) Licensed marijuana retailers shall not display any signage in
4   a window, on a door, or on the outside of the premises of a retail
5   outlet that is visible to the general public from a public right-of-
6   way, other than a single sign no larger than one thousand six hundred
7   square inches identifying the retail outlet by the licensee's
8   business or trade name. Retail outlets that hold medical marijuana
9   endorsements may include this information on signage.

10       (((4))) (5) Licensed marijuana retailers shall not display
11  marijuana concentrates, useable marijuana, or marijuana-infused
12  products in a manner that is visible to the general public from a
13  public right-of-way.

14       (((5))) (6) No licensed marijuana retailer or employee of a
15  retail outlet shall open or consume, or allow to be opened or
16  consumed, any marijuana concentrates, useable marijuana, or
17  marijuana-infused product on the outlet premises.

18       (((6))) (7) The state liquor ((control)) and cannabis board shall
19  fine a licensee one thousand dollars for each violation of any
20  subsection of this section. Fines collected under this section must
21  be deposited into the dedicated marijuana fund created under RCW
22  69.50.530.

23       **Sec. 13.**  RCW 69.50.360 and 2014 c 192 s 5 are each amended to
24  read as follows:
25       The following acts, when performed by a validly licensed
26  marijuana retailer or employee of a validly licensed retail outlet in
27  compliance with rules adopted by the state liquor ((control)) and
28  cannabis board to implement and enforce chapter 3, Laws of 2013,
29  shall not constitute criminal or civil offenses under Washington
30  state law:
31       (1) Purchase and receipt of marijuana concentrates, useable
32  marijuana, or marijuana-infused products that have been properly
33  packaged and labeled from a marijuana processor validly licensed
34  under this chapter ((3, Laws of 2013));
35       (2) Possession of quantities of marijuana concentrates, useable
36  marijuana, or marijuana-infused products that do not exceed the
37  maximum amounts established by the state liquor ((control)) and
38  cannabis board under RCW 69.50.345(5); and

1   (3) Delivery, distribution, and sale, on the premises of the
2   retail outlet, of any combination of the following amounts of
3   marijuana concentrates, useable marijuana, or marijuana-infused
4   product to any person twenty-one years of age or older:
5   (a) One ounce of useable marijuana;
6   (b) Sixteen ounces of marijuana-infused product in solid form;
7   (c) Seventy-two ounces of marijuana-infused product in liquid
8   form; or
9   (d) Seven grams of marijuana concentrate.

10   **Sec. 14.**  RCW 69.50.4013 and 2013 c 3 s 20 are each amended to
11   read as follows:
12   (1) It is unlawful for any person to possess a controlled
13   substance unless the substance was obtained directly from, or
14   pursuant to, a valid prescription or order of a practitioner while
15   acting in the course of his or her professional practice, or except
16   as otherwise authorized by this chapter.
17   (2) Except as provided in RCW 69.50.4014, any person who violates
18   this section is guilty of a class C felony punishable under chapter
19   9A.20 RCW.
20   (3) The possession, by a person twenty-one years of age or older,
21   of useable marijuana or marijuana-infused products in amounts that do
22   not exceed those set forth in RCW 69.50.360(3) is not a violation of
23   this section, this chapter, or any other provision of Washington
24   state law.
25   (4) No person under twenty-one years of age may possess,
26   manufacture, sell, or distribute marijuana, marijuana-infused
27   products, or marijuana concentrates, regardless of THC concentration.
28   This does not include qualifying patients with a valid authorization.
29   (5) The possession by a qualifying patient or designated provider
30   of marijuana concentrates, useable marijuana, marijuana-infused
31   products, or plants in accordance with chapter 69.51A RCW is not a
32   violation of this section, this chapter, or any other provision of
33   Washington state law.

34   NEW SECTION.  **Sec. 15.**  A new section is added to chapter 69.50
35   RCW to read as follows:
36   (1) Nothing in this chapter permits anyone other than a validly
37   licensed marijuana processor to use butane or other explosive gases
38   to extract or separate resin from marijuana or to produce or process

1   any form of marijuana concentrates or marijuana-infused products that
2   include marijuana concentrates not purchased from a validly licensed
3   marijuana retailer as an ingredient. The extraction or separation of
4   resin from marijuana, the processing of marijuana concentrates, and
5   the processing of marijuana-infused products that include marijuana
6   concentrates not purchased from a validly licensed marijuana retailer
7   as an ingredient by any person other than a validly licensed
8   marijuana processor each constitute manufacture of marijuana in
9   violation of RCW 69.50.401. Cooking oil, butter, and other
10  nonexplosive home cooking substances may be used to make marijuana
11  extracts for noncommercial personal use.

12      (2) Except for the use of butane, the state liquor and cannabis
13  board may not enforce this section until it has adopted the rules
14  required by section 28 of this act.


15      **Sec. 16.**   RCW 69.51A.005 and 2011 c 181 s 102 are each amended to
16  read as follows:

17      (1) The legislature finds that:

18      (a) There is medical evidence that some patients with terminal or
19  debilitating medical conditions may, under their health care
20  professional's care, benefit from the medical use of ((cannabis))
21  marijuana. Some of the conditions for which ((cannabis)) marijuana
22  appears to be beneficial include, but are not limited to:

23      (i) Nausea, vomiting, and cachexia associated with cancer, HIV-
24  positive status, AIDS, hepatitis C, anorexia, and their treatments;

25      (ii) Severe muscle spasms associated with multiple sclerosis,
26  epilepsy, and other seizure and spasticity disorders;

27      (iii) Acute or chronic glaucoma;

28      (iv) Crohn's disease; and

29      (v) Some forms of intractable pain.

30      (b) Humanitarian compassion necessitates that the decision to use
31  ((cannabis)) marijuana by patients with terminal or debilitating
32  medical conditions is a personal, individual decision, based upon
33  their health care professional's professional medical judgment and
34  discretion.

35      (2) Therefore, the legislature intends that, so long as such
36  activities are in strict compliance with this chapter:

37      (a) Qualifying patients with terminal or debilitating medical
38  conditions who, in the judgment of their health care professionals,
39  may benefit from the medical use of ((cannabis)) marijuana, shall not

1   be  arrested,  prosecuted,  or  subject  to  other  criminal  sanctions  or
2   civil  consequences  under  state  law  based  solely  on  their  medical  use
3   of  ((cannabis))  marijuana,  notwithstanding  any  other  provision  of
4   law;

5       (b)  Persons  who  act  as  designated  providers  to  such  patients
6   shall  also  not  be  arrested,  prosecuted,  or  subject  to  other  criminal
7   sanctions  or  civil  consequences  under  state  law,  notwithstanding  any
8   other  provision  of  law,  based  solely  on  their  assisting  with  the
9   medical  use  of  ((cannabis))  marijuana;  and

10      (c)  Health  care  professionals  shall  also  not  be  arrested,
11  prosecuted,  or  subject  to  other  criminal  sanctions  or  civil
12  consequences  under  state  law  for  the  proper  authorization  of  medical
13  use  of  ((cannabis))  marijuana  by  qualifying  patients  for  whom,  in  the
14  health  care  professional's  professional  judgment,  the  medical  use  of
15  ((cannabis))  marijuana  may  prove  beneficial.

16      (3)  Nothing  in  this  chapter  establishes  the  medical  necessity  or
17  medical  appropriateness  of  ((cannabis))  marijuana  for  treating
18  terminal  or  debilitating  medical  conditions  as  defined  in  RCW
19  69.51A.010.

20      (4)  Nothing  in  this  chapter  diminishes  the  authority  of
21  correctional  agencies  and  departments,  including  local  governments  or
22  jails,  to  establish  a  procedure  for  determining  when  the  use  of
23  ((cannabis))  marijuana  would  impact  community  safety  or  the  effective
24  supervision  of  those  on  active  supervision  for  a  criminal  conviction,
25  nor  does  it  create  the  right  to  any  accommodation  of  any  medical  use
26  of  ((cannabis))  marijuana  in  any  correctional  facility  or  jail.

27      **Sec. 17.**  RCW  69.51A.010  and  2010  c  284  s  2  are  each  amended  to
28  read  as  follows:
29      The  definitions  in  this  section  apply  throughout  this  chapter
30  unless  the  context  clearly  requires  otherwise.
31      (1)  "Designated  provider"  means  a  person  who((:
32  (a)))  is  ((eighteen))  twenty-one  years  of  age  or  older((:
33  (b)))  and:
34      (a)(i)  Is  the  parent  or  guardian  of  a  qualifying  patient  who  is
35  under  the  age  of  eighteen  and  beginning  July  1,  2016,  holds  a
36  recognition  card;  or
37      (ii)  Has  been  designated  in  writing  by  a  qualifying  patient  to
38  serve  as  ((a))  the  designated  provider  ((under  this  chapter))  for
39  that  patient;

1   (b)(i) Has an authorization from the qualifying patient's health
2   care professional; or
3   (ii) Beginning July 1, 2016:
4   (A) Has been entered into the medical marijuana authorization
5   database as being the designated provider to a qualifying patient;
6   and
7   (B) Has been provided a recognition card;
8   (c) Is prohibited from consuming marijuana obtained for the
9   personal, medical use of the qualifying patient for whom the
10  individual is acting as designated provider; ((and))
11  (d) Provides marijuana to only the qualifying patient that has
12  designated him or her;
13  (e) Is in compliance with the terms and conditions of this
14  chapter; and
15  (f) Is the designated provider to only one patient at any one
16  time.
17  (2) "Health care professional," for purposes of this chapter
18  only, means a physician licensed under chapter 18.71 RCW, a physician
19  assistant licensed under chapter 18.71A RCW, an osteopathic physician
20  licensed under chapter 18.57 RCW, an osteopathic physicians'
21  assistant licensed under chapter 18.57A RCW, a naturopath licensed
22  under chapter 18.36A RCW, or an advanced registered nurse
23  practitioner licensed under chapter 18.79 RCW.
24  (3) "Medical use of marijuana" means the manufacture, production,
25  possession, transportation, delivery, ingestion, application, or
26  administration of marijuana((, as defined in RCW 69.50.101(q),)) for
27  the exclusive benefit of a qualifying patient in the treatment of his
28  or her terminal or debilitating ((illness)) medical condition.
29  (4) "Qualifying patient" means a person who:
30  (a)(i) Is a patient of a health care professional;
31  (((b))) (ii) Has been diagnosed by that health care professional
32  as having a terminal or debilitating medical condition;
33  (((c))) (iii) Is a resident of the state of Washington at the
34  time of such diagnosis;
35  (((d))) (iv) Has been advised by that health care professional
36  about the risks and benefits of the medical use of marijuana; ((and
37  (e))) (v) Has been advised by that health care professional that
38  they may benefit from the medical use of marijuana;
39  (vi)(A) Has an authorization from his or her health care
40  professional; or

1   (B) Beginning July 1, 2016, has been entered into the medical
2   marijuana authorization database and has been provided a recognition
3   card; and
4   (vii) Is otherwise in compliance with the terms and conditions
5   established in this chapter.
6   (b) "Qualifying patient" does not include a person who is
7   actively being supervised for a criminal conviction by a corrections
8   agency or department that has determined that the terms of this
9   chapter are inconsistent with and contrary to his or her supervision
10  and all related processes and procedures related to that supervision.
11  (5) "Tamper-resistant paper" means paper that meets one or more
12  of the following industry-recognized features:
13  (a) One or more features designed to prevent copying of the
14  paper;
15  (b) One or more features designed to prevent the erasure or
16  modification of information on the paper; or
17  (c) One or more features designed to prevent the use of
18  counterfeit ((~~valid documentation~~)) authorization.
19  (6) "Terminal or debilitating medical condition" means a
20  condition severe enough to significantly interfere with the patient's
21  activities of daily living and ability to function, which can be
22  objectively assessed and evaluated and limited to the following:
23  (a) Cancer, human immunodeficiency virus (HIV), multiple
24  sclerosis, epilepsy or other seizure disorder, or spasticity
25  disorders; ((~~or~~))
26  (b) Intractable pain, limited for the purpose of this chapter to
27  mean pain unrelieved by standard medical treatments and medications;
28  ((~~or~~))
29  (c) Glaucoma, either acute or chronic, limited for the purpose of
30  this chapter to mean increased intraocular pressure unrelieved by
31  standard treatments and medications; ((~~or~~))
32  (d) Crohn's disease with debilitating symptoms unrelieved by
33  standard treatments or medications; ((~~or~~))
34  (e) Hepatitis C with debilitating nausea or intractable pain
35  unrelieved by standard treatments or medications; ((~~or~~))
36  (f) Diseases, including anorexia, which result in nausea,
37  vomiting, wasting, appetite loss, cramping, seizures, muscle spasms,
38  or spasticity, when these symptoms are unrelieved by standard
39  treatments or medications; ((~~or~~))

1    (g) ((~~Any other medical condition duly approved by the Washington~~
2  ~~state medical quality assurance commission in consultation with the~~
3  ~~board of osteopathic medicine and surgery as directed in this~~
4  ~~chapter~~)) Posttraumatic stress disorder; or

5    (h) Traumatic brain injury.

6    (7) ((<u>~~Valid documentation~~</u>)) <u>(a) Until July 1, 2016,</u>
7  <u>"authorization"</u> means:

8    (((a))) <u>(i)</u> A statement signed and dated by a qualifying
9  patient's health care professional written on tamper-resistant paper,
10  which states that, in the health care professional's professional
11  opinion, the patient may benefit from the medical use of marijuana;
12  and

13    (((b))) <u>(ii)</u> Proof of identity such as a Washington state
14  driver's license or identicard, as defined in RCW 46.20.035.

15    <u>(b) Beginning July 1, 2016, "authorization" means a form</u>
16  <u>developed by the department that is completed and signed by a</u>
17  <u>qualifying patient's health care professional and printed on tamper-</u>
18  <u>resistant paper.</u>

19    <u>(c) An authorization is not a prescription as defined in RCW</u>
20  <u>69.50.101.</u>

21    <u>(8) "Recognition card" means a card issued to qualifying patients</u>
22  <u>and designated providers by a marijuana retailer with a medical</u>
23  <u>marijuana endorsement that has entered them into the medical</u>
24  <u>marijuana authorization database.</u>

25    <u>(9) "CBD concentration" means the percent of cannabidiol content</u>
26  <u>per dry weight of any part of the plant *Cannabis*, or per volume or</u>
27  <u>weight of marijuana product.</u>

28    <u>(10) "Department" means the department of health.</u>

29    <u>(11) "Marijuana" has the meaning provided in RCW 69.50.101.</u>

30    <u>(12) "Marijuana concentrates" has the meaning provided in RCW</u>
31  <u>69.50.101.</u>

32    <u>(13) "Marijuana processor" has the meaning provided in RCW</u>
33  <u>69.50.101.</u>

34    <u>(14) "Marijuana producer" has the meaning provided in RCW</u>
35  <u>69.50.101.</u>

36    <u>(15) "Marijuana retailer" has the meaning provided in RCW</u>
37  <u>69.50.101.</u>

38    <u>(16) "Marijuana retailer with a medical marijuana endorsement"</u>
39  <u>means a marijuana retailer that has been issued a medical marijuana</u>

1  endorsement by the state liquor and cannabis board pursuant to
2  section 10 of this act.
3    (17) "Marijuana-infused products" has the meaning provided in RCW
4  69.50.101.
5    (18) "Medical marijuana authorization database" means the secure
6  and confidential database established in section 21 of this act.
7    (19) "Plant" means a marijuana plant having at least three
8  distinguishable and distinct leaves, each leaf being at least three
9  centimeters in diameter, and a readily observable root formation
10 consisting of at least two separate and distinct roots, each being at
11 least two centimeters in length. Multiple stalks emanating from the
12 same root ball or root system is considered part of the same single
13 plant.
14   (20) "Retail outlet" has the meaning provided in RCW 69.50.101.
15   (21) "Secretary" means the secretary of the department of health.
16   (22) "THC concentration" has the meaning provided in RCW
17 69.50.101.
18   (23) "Useable marijuana" has the meaning provided in RCW
19 69.50.101.
20   (24) "Low THC, high CBD" means products determined by the
21 department to have a low THC, high CBD ratio under section 10 of this
22 act. Low THC, high CBD products must be inhalable, ingestible, or
23 absorbable.
24   (25) "Public place" has the meaning provided in RCW 70.160.020.
25   (26) "Housing unit" means a house, an apartment, a mobile home, a
26 group of rooms, or a single room that is occupied as separate living
27 quarters, in which the occupants live and eat separately from any
28 other persons in the building, and which have direct access from the
29 outside of the building or through a common hall.

30   **Sec. 18.**  RCW 69.51A.030 and 2011 c 181 s 301 are each amended to
31 read as follows:
32   (1) The following acts do not constitute crimes under state law
33 or unprofessional conduct under chapter 18.130 RCW, and a health care
34 professional may not be arrested, searched, prosecuted, disciplined,
35 or subject to other criminal sanctions or civil consequences or
36 liability under state law, or have real or personal property
37 searched, seized, or forfeited pursuant to state law, notwithstanding
38 any other provision of law as long as the health care professional
39 complies with subsection (2) of this section:

1    (a) Advising a patient about the risks and benefits of medical
2 use of ((~~cannabis~~)) <u>marijuana</u> or that the patient may benefit from
3 the medical use of ((~~cannabis~~)) <u>marijuana</u>; or

4    (b) Providing a patient <u>or designated provider</u> meeting the
5 criteria established under RCW 69.51A.010((~~(26)~~)) with ((~~valid~~
6 ~~documentation~~)) <u>an authorization</u>, based upon the health care
7 professional's assessment of the patient's medical history and
8 current medical condition, ((~~where such use is~~)) <u>if the health care</u>
9 <u>professional has complied with this chapter and he or she determines</u>
10 within a professional standard of care or in the individual health
11 care professional's medical judgment <u>the qualifying patient may</u>
12 <u>benefit from the medical use of marijuana</u>.

13    (2)(a) A health care professional may ((~~only~~)) provide a
14 <u>qualifying</u> patient <u>or that patient's designated provider</u> with ((~~valid~~
15 ~~documentation authorizing~~)) <u>an authorization for</u> the medical use of
16 ((~~cannabis or register the patient with the registry established in~~
17 ~~section 901 of this act if he or she has a newly initiated or~~
18 ~~existing documented relationship with the patient, as a primary care~~
19 ~~provider or a specialist, relating to the diagnosis and ongoing~~
20 ~~treatment or monitoring of the patient's terminal or debilitating~~
21 ~~medical condition, and only after~~:

22 ~~(i) Completing a~~)) <u>marijuana in accordance with this section.</u>

23    <u>(b) In order to authorize for the medical use of marijuana under</u>
24 <u>(a) of this subsection, the health care professional must:</u>

25    <u>(i) Have a documented relationship with the patient, as a</u>
26 <u>principal care provider or a specialist, relating to the diagnosis</u>
27 <u>and ongoing treatment or monitoring of the patient's terminal or</u>
28 <u>debilitating medical condition;</u>

29    <u>(ii) Complete an in-person</u> physical examination of the patient
30 ((~~as appropriate, based on the patient's condition and age~~));

31    (((~~ii) Documenting~~)) <u>(iii) Document</u> the terminal or debilitating
32 medical condition of the patient in the patient's medical record and
33 that the patient may benefit from treatment of this condition or its
34 symptoms with medical use of ((~~cannabis~~)) <u>marijuana</u>;

35    (((~~iii) Informing~~)) <u>(iv) Inform</u> the patient of other options for
36 treating the terminal or debilitating medical condition <u>and</u>
37 <u>documenting in the patient's medical record that the patient has</u>
38 <u>received this information</u>; ((~~and~~
39 ~~(iv) Documenting~~)) <u>(v) Document in the patient's medical record</u>
40 other measures attempted to treat the terminal or debilitating

1   medical condition that do not involve the medical use of ((cannabis))
2   marijuana; and
3       (vi) Complete an authorization on forms developed by the
4   department, in accordance with subsection (3) of this section.
5       (((b))) (c) For a qualifying patient eighteen years of age or
6   older, an authorization expires one year after its issuance. For a
7   qualifying patient less than eighteen years of age, an authorization
8   expires six months after its issuance. An authorization may be
9   renewed upon completion of an in-person physical examination and
10  compliance with the other requirements of (b) of this subsection.
11      (d) A health care professional shall not:
12      (i) Accept, solicit, or offer any form of pecuniary remuneration
13  from or to a ((licensed dispenser, licensed producer, or licensed
14  processor of cannabis products)) marijuana retailer, marijuana
15  processor, or marijuana producer;
16      (ii) Offer a discount or any other thing of value to a qualifying
17  patient who is a customer of, or agrees to be a customer of, a
18  particular ((licensed dispenser, licensed producer, or licensed
19  processor of cannabis products)) marijuana retailer;
20      (iii) Examine or offer to examine a patient for purposes of
21  diagnosing a terminal or debilitating medical condition at a location
22  where ((cannabis)) marijuana is produced, processed, or ((dispensed))
23  sold;
24      (iv) Have a business or practice which consists ((solely))
25  primarily of authorizing the medical use of ((cannabis)) marijuana or
26  authorize the medical use of marijuana at any location other than his
27  or her practice's permanent physical location;
28      (v) ((Include any statement or reference, visual or otherwise, on
29  the medical use of cannabis in any advertisement for his or her
30  business or practice)) Except as provided in section 35 of this act,
31  sell, or provide at no charge, marijuana concentrates, marijuana-
32  infused products, or useable marijuana to a qualifying patient or
33  designated provider; or
34      (vi) Hold an economic interest in an enterprise that produces,
35  processes, or ((dispenses cannabis)) sells marijuana if the health
36  care professional authorizes the medical use of ((cannabis))
37  marijuana.
38      (3) ((A violation of any provision of subsection (2) of this
39  section constitutes unprofessional conduct under chapter 18.130
40  RCW.)) The department shall develop the form for the health care

1  professional to use as an authorization for qualifying patients and
2  designated providers. The form shall include the qualifying patient's
3  or designated provider's name, address, and date of birth; the health
4  care professional's name, address, and license number; the amount of
5  marijuana recommended for the qualifying patient; a telephone number
6  where the authorization can be verified during normal business hours;
7  the dates of issuance and expiration; and a statement that an
8  authorization does not provide protection from arrest unless the
9  qualifying patient or designated provider is also entered in the
10 medical marijuana authorization database and holds a recognition
11 card.
12     (4) Until July 1, 2016, a health care professional who, within a
13 single calendar month, authorizes the medical use of marijuana to
14 more than thirty patients must report the number of authorizations
15 issued.
16     (5) The appropriate health professions disciplining authority may
17 inspect or request patient records to confirm compliance with this
18 section. The health care professional must provide access to or
19 produce documents, records, or other items that are within his or her
20 possession or control within twenty-one calendar days of service of a
21 request by the health professions disciplining authority. If the
22 twenty-one calendar day limit results in a hardship upon the health
23 care professional, he or she may request, for good cause, an
24 extension not to exceed thirty additional calendar days. Failure to
25 produce the documents, records, or other items shall result in
26 citations and fines issued consistent with RCW 18.130.230. Failure to
27 otherwise comply with the requirements of this section shall be
28 considered unprofessional conduct and subject to sanctions under
29 chapter 18.130 RCW.
30     (6) After a health care professional authorizes a qualifying
31 patient for the medical use of marijuana, he or she may discuss with
32 the qualifying patient how to use marijuana and the types of products
33 the qualifying patient should seek from a retail outlet.

34     NEW SECTION.  **Sec. 19.**  A new section is added to chapter 69.51A
35 RCW to read as follows:
36     As part of authorizing a qualifying patient or designated
37 provider, the health care professional may include recommendations on
38 the amount of marijuana that is likely needed by the qualifying

1   patient for his or her medical needs and in accordance with this
2   section.
3       (1) If the health care professional does not include
4   recommendations on the qualifying patient's or designated provider's
5   authorization, the marijuana retailer with a medical marijuana
6   endorsement, when adding the qualifying patient or designated
7   provider to the medical marijuana authorization database, shall enter
8   into the database that the qualifying patient or designated provider
9   may purchase or obtain at a retail outlet holding a medical marijuana
10  endorsement a combination of the following: Forty-eight ounces of
11  marijuana-infused product in solid form; three ounces of useable
12  marijuana; two hundred sixteen ounces of marijuana-infused product in
13  liquid form; or twenty-one grams of marijuana concentrates. The
14  qualifying patient or designated provider may also grow, in his or
15  her domicile, up to six plants for the personal medical use of the
16  qualifying patient and possess up to eight ounces of useable
17  marijuana produced from his or her plants. These amounts shall be
18  specified on the recognition card that is issued to the qualifying
19  patient or designated provider.
20      (2) If the health care professional determines that the medical
21  needs of a qualifying patient exceed the amounts provided for in
22  subsection (1) of this section, the health care professional must
23  specify on the authorization that it is recommended that the patient
24  be allowed to grow, in his or her domicile, up to fifteen plants for
25  the personal medical use of the patient. A patient so authorized may
26  possess up to sixteen ounces of useable marijuana in his or her
27  domicile. The number of plants must be entered into the medical
28  marijuana authorization database by the marijuana retailer with a
29  medical marijuana endorsement and specified on the recognition card
30  that is issued to the qualifying patient or designated provider.
31      (3) If a qualifying patient or designated provider with an
32  authorization from a health care professional has not been entered
33  into the medical marijuana authorization database, he or she may not
34  receive a recognition card and may only purchase at a retail outlet,
35  whether it holds a medical marijuana endorsement or not, the amounts
36  established in RCW 69.50.360. In addition the qualifying patient or
37  the designated provider may grow, in his or her domicile, up to four
38  plants for the personal medical use of the qualifying patient and
39  possess up to six ounces of useable marijuana in his or her domicile.

1    <u>NEW SECTION.</u>   **Sec. 20.**   A new section is added to chapter 69.51A
2    RCW to read as follows:
3        (1) Health care professionals may authorize the medical use of
4    marijuana for qualifying patients who are under the age of eighteen
5    if:
6        (a) The minor's parent or guardian participates in the minor's
7    treatment and agrees to the medical use of marijuana by the minor;
8    and
9        (b) The parent or guardian acts as the designated provider for
10   the minor and has sole control over the minor's marijuana.
11       (2) The minor may not grow plants or purchase marijuana-infused
12   products, useable marijuana, or marijuana concentrates from a
13   marijuana retailer with a medical marijuana endorsement.
14       (3) Both the minor and the minor's parent or guardian who is
15   acting as the designated provider must be entered in the medical
16   marijuana authorization database and hold a recognition card.
17       (4) A health care professional who authorizes the medical use of
18   marijuana by a minor must do so as part of the course of treatment of
19   the minor's terminal or debilitating medical condition. If
20   authorizing a minor for the medical use of marijuana, the health care
21   professional must:
22       (a) Consult with other health care providers involved in the
23   minor's treatment, as medically indicated, before authorization or
24   reauthorization of the medical use of marijuana; and
25       (b) Reexamine the minor at least once every six months or more
26   frequently as medically indicated. The reexamination must:
27       (i) Determine that the minor continues to have a terminal or
28   debilitating medical condition and that the condition benefits from
29   the medical use of marijuana; and
30       (ii) Include a follow-up discussion with the minor's parent or
31   guardian to ensure the parent or guardian continues to participate in
32   the treatment of the minor.

33       <u>NEW SECTION.</u>   **Sec. 21.**   A new section is added to chapter 69.51A
34   RCW to read as follows:
35       (1) The department must contract with an entity to create,
36   administer, and maintain a secure and confidential medical marijuana
37   authorization database that, beginning July 1, 2016, allows:
38       (a) A marijuana retailer with a medical marijuana endorsement to
39   add a qualifying patient or designated provider and include the

1  amount  of  marijuana  concentrates,  useable  marijuana,  marijuana-
2  infused  products,  or  plants  for  which  the  qualifying  patient  is
3  authorized under section 19 of this act;

4      (b)  Persons  authorized  to  prescribe  or  dispense  controlled
5  substances  to  access  health  care  information  on  their  patients  for
6  the  purpose  of  providing  medical  or  pharmaceutical  care  for  their
7  patients;

8      (c)  A  qualifying  patient  or  designated  provider  to  request  and
9  receive  his  or  her  own  health  care  information  or  information  on  any
10 person or entity that has queried their name or information;

11      (d) Appropriate  local,  state,  tribal,  and  federal  law  enforcement
12 or  prosecutorial  officials  who  are  engaged  in  a  bona  fide  specific
13 investigation  of  suspected  marijuana-related  activity  that  may  be
14 illegal  under  Washington  state  law  to  confirm  the  validity  of  the
15 recognition card of a qualifying patient or designated provider;

16      (e)  A  marijuana  retailer  holding  a  medical  marijuana  endorsement
17 to  confirm  the  validity  of  the  recognition  card  of  a  qualifying
18 patient or designated provider;

19      (f)  The  department  of  revenue  to  verify  tax  exemptions  under
20 chapters 82.08 and 82.12 RCW;

21      (g)  The  department  and  the  health  care  professional's
22 disciplining  authorities  to  monitor  authorizations  and  ensure
23 compliance  with  this  chapter  and  chapter  18.130  RCW  by  their
24 licensees; and

25      (h)  Authorizations  to  expire  six  months  or  one  year  after  entry
26 into  the  medical  marijuana  authorization  database,  depending  on
27 whether the authorization is for a minor or an adult.

28      (2)  A  qualifying  patient  and  his  or  her  designated  provider,  if
29 any,  may  be  placed  in  the  medical  marijuana  authorization  database  at
30 a  marijuana  retailer  with  a  medical  marijuana  endorsement.  After  a
31 qualifying  patient  or  designated  provider  is  placed  in  the  medical
32 marijuana  authorization  database,  he  or  she  must  be  provided  with  a
33 recognition  card  that  contains  identifiers  required  in  subsection  (3)
34 of this section.

35      (3)  The  recognition  card  requirements  must  be  developed  by  the
36 department in rule and include:

37      (a) A randomly generated and unique identifying number;

38      (b)  For  designated  providers,  the  unique  identifying  number  of
39 the qualifying patient whom the provider is assisting;

1    (c) A photograph of the qualifying patient's or designated
2 provider's face taken by an employee of the marijuana retailer with a
3 medical marijuana endorsement at the same time that the qualifying
4 patient or designated provider is being placed in the medical
5 marijuana authorization database in accordance with rules adopted by
6 the department;

7    (d) The amount of marijuana concentrates, useable marijuana,
8 marijuana-infused products, or plants for which the qualifying
9 patient is authorized under section 19 of this act;

10    (e) The effective date and expiration date of the recognition
11 card;

12    (f) The name of the health care professional who authorized the
13 qualifying patient or designated provider; and

14    (g) For the recognition card, additional security features as
15 necessary to ensure its validity.

16    (4) For qualifying patients who are eighteen years of age or
17 older and their designated providers, recognition cards are valid for
18 one year from the date the health care professional issued the
19 authorization. For qualifying patients who are under the age of
20 eighteen and their designated providers, recognition cards are valid
21 for six months from the date the health care professional issued the
22 authorization. Qualifying patients may not be reentered into the
23 medical marijuana authorization database until they have been
24 reexamined by a health care professional and determined to meet the
25 definition of qualifying patient. After reexamination, a marijuana
26 retailer with a medical marijuana endorsement must reenter the
27 qualifying patient or designated provider into the medical marijuana
28 authorization database and a new recognition card will then be issued
29 in accordance with department rules.

30    (5) If a recognition card is lost or stolen, a marijuana retailer
31 with a medical marijuana endorsement, in conjunction with the
32 database administrator, may issue a new card that will be valid for
33 six months to one year if the patient is reexamined by a health care
34 professional and determined to meet the definition of qualifying
35 patient and depending on whether the patient is under the age of
36 eighteen or eighteen years of age or older as provided in subsection
37 (4) of this section. If a reexamination is not performed, the
38 expiration date of the replacement recognition card must be the same
39 as the lost or stolen recognition card.

1    (6) The database administrator must remove qualifying patients
2  and designated providers from the medical marijuana authorization
3  database upon expiration of the recognition card. Qualifying patients
4  and designated providers may request to remove themselves from the
5  medical marijuana authorization database before expiration of a
6  recognition card and health care professionals may request to remove
7  qualifying patients and designated providers from the medical
8  marijuana authorization database if the patient or provider no longer
9  qualifies for the medical use of marijuana. The database
10  administrator must retain database records for at least five calendar
11  years to permit the state liquor and cannabis board and the
12  department of revenue to verify eligibility for tax exemptions.

13    (7) During development of the medical marijuana authorization
14  database, the database administrator must consult with the
15  department, stakeholders, and persons with relevant expertise to
16  include, but not be limited to, qualifying patients, designated
17  providers, health care professionals, state and local law enforcement
18  agencies, and the University of Washington computer science and
19  engineering security and privacy research lab or a certified cyber
20  security firm, vendor, or service.

21    (8) The medical marijuana authorization database must meet the
22  following requirements:

23    (a) Any personally identifiable information included in the
24  database must be nonreversible, pursuant to definitions and standards
25  set forth by the national institute of standards and technology;

26    (b) Any personally identifiable information included in the
27  database must not be susceptible to linkage by use of data external
28  to the database;

29    (c) The database must incorporate current best differential
30  privacy practices, allowing for maximum accuracy of database queries
31  while minimizing the chances of identifying the personally
32  identifiable information included therein; and

33    (d) The database must be upgradable and updated in a timely
34  fashion to keep current with state of the art privacy and security
35  standards and practices.

36    (9)(a) Personally identifiable information of qualifying patients
37  and designated providers included in the medical marijuana
38  authorization database is confidential and exempt from public
39  disclosure, inspection, or copying under chapter 42.56 RCW.

1    (b) Information contained in the medical marijuana authorization
2  database may be released in aggregate form, with all personally
3  identifying information redacted, for the purpose of statistical
4  analysis and oversight of agency performance and actions.

5    (c) Information contained in the medical marijuana authorization
6  database shall not be shared with the federal government or its
7  agents unless the particular patient or designated provider is
8  convicted in state court for violating this chapter or chapter 69.50
9  RCW.

10   (10)(a) The department must charge a one dollar fee for each
11  initial and renewal recognition card issued by a marijuana retailer
12  with a medical marijuana endorsement. The marijuana retailer with a
13  medical marijuana endorsement shall collect the fee from the
14  qualifying patient or designated provider at the time that he or she
15  is entered into the database and issued a recognition card. The
16  department shall establish a schedule for marijuana retailers with a
17  medical marijuana endorsement to remit the fees collected. Fees
18  collected under this subsection shall be deposited into the health
19  professions account created under RCW 43.70.320.

20   (b) By November 1, 2016, the department shall report to the
21  governor and the fiscal committees of both the house of
22  representatives and the senate regarding the cost of implementation
23  and administration of the medical marijuana authorization database.
24  The report must specify amounts from the health professions account
25  used to finance the establishment and administration of the medical
26  marijuana authorization database as well as estimates of the
27  continuing costs associated with operating the medical marijuana
28  database. The report must also provide initial enrollment figures in
29  the medical marijuana authorization database and estimates of
30  expected future enrollment.

31   (11) If the database administrator fails to comply with this
32  section, the department may cancel any contracts with the database
33  administrator and contract with another database administrator to
34  continue administration of the database. A database administrator who
35  fails to comply with this section is subject to a fine of up to five
36  thousand dollars in addition to any penalties established in the
37  contract. Fines collected under this section must be deposited into
38  the health professions account created under RCW 43.70.320.

39   (12) The department may adopt rules to implement this section.

1  <u>NEW SECTION.</u>  **Sec. 22.**  A new section is added to chapter 42.56
2  RCW to read as follows:
3       Records  in  the  medical  marijuana  authorization  database
4  established  in  section  21  of  this  act  containing  names  and  other
5  personally  identifiable  information  of  qualifying  patients  and
6  designated providers are exempt from disclosure under this chapter.

7  <u>NEW SECTION.</u>  **Sec. 23.**  A new section is added to chapter 69.51A
8  RCW to read as follows:
9       (1) It is unlawful for a person to knowingly or intentionally:
10      (a) Access the medical marijuana authorization database for any
11  reason not authorized under section 21 of this act;
12      (b) Disclose any information received from the medical marijuana
13  authorization  database  in  violation  of  section  21  of  this  act
14  including,  but  not  limited  to,  qualifying  patient  or  designated
15  provider  names,  addresses,  or  amount  of  marijuana  for  which  they  are
16  authorized;
17      (c) Produce  a  recognition  card  or  to  tamper  with  a  recognition
18  card  for  the  purpose  of  having  it  accepted  by  a  marijuana  retailer
19  holding  a  medical  marijuana  endorsement  in  order  to  purchase
20  marijuana  as  a  qualifying  patient  or  designated  provider  or  to  grow
21  marijuana plants in accordance with this chapter;
22      (d) If a person is a designated provider to a qualifying patient,
23  sell,  donate,  or  supply  marijuana  produced  or  obtained  for  the
24  qualifying  patient  to  another  person,  or  use  the  marijuana  produced
25  or  obtained  for  the  qualifying  patient  for  the  designated  provider's
26  own personal use or benefit; or
27      (e) If  the  person  is  a  qualifying  patient,  sell,  donate,  or
28  otherwise  supply  marijuana  produced  or  obtained  by  the  qualifying
29  patient to another person.
30      (2) A  person  who  violates  this  section  is  guilty  of  a  class  C
31  felony.

32      **Sec. 24.**  RCW 69.51A.040 and 2011 c 181 s 401 are each amended to
33  read as follows:
34      The medical use of ((<s>cannabis</s>)) <u>marijuana</u> in accordance with the
35  terms  and  conditions  of  this  chapter  does  not  constitute  a  crime  and
36  a  qualifying  patient  or  designated  provider  in  compliance  with  the
37  terms  and  conditions  of  this  chapter  may  not  be  arrested,  prosecuted,
38  or  subject  to  other  criminal  sanctions  or  civil  consequences((<s>,</s>))  for

1  possession, manufacture, or delivery of, or for possession with
2  intent to manufacture or deliver, ((cannabis)) marijuana under state
3  law, or have real or personal property seized or forfeited for
4  possession, manufacture, or delivery of, or for possession with
5  intent to manufacture or deliver, ((cannabis)) marijuana under state
6  law, and investigating ((peace)) law enforcement officers and ((law
7  enforcement)) agencies may not be held civilly liable for failure to
8  seize ((cannabis)) marijuana in this circumstance, if:

9      (1)(a) The qualifying patient or designated provider has been
10  entered into the medical marijuana authorization database and holds a
11  valid recognition card and possesses no more than ((fifteen cannabis
12  plants and:

13      (i) No more than twenty-four ounces of useable cannabis;

14      (ii) No more cannabis product than what could reasonably be
15  produced with no more than twenty-four ounces of useable cannabis; or

16      (iii) A combination of useable cannabis and cannabis product that
17  does not exceed a combined total representing possession and
18  processing of no more than twenty-four ounces of useable cannabis))
19  the amount of marijuana concentrates, useable marijuana, plants, or
20  marijuana-infused products authorized under section 19 of this act.

21      (((b))) If a person is both a qualifying patient and a designated
22  provider for another qualifying patient, the person may possess no
23  more than twice the amounts described in ((a) of this subsection))
24  section 19 of this act for the qualifying patient and designated
25  provider, whether the plants, ((useable cannabis, and cannabis
26  product)) marijuana concentrates, useable marijuana, or marijuana-
27  infused products are possessed individually or in combination between
28  the qualifying patient and his or her designated provider;

29      (((2))) (b) The qualifying patient or designated provider
30  presents his or her ((proof of registration with the department of
31  health,)) recognition card to any ((peace)) law enforcement officer
32  who questions the patient or provider regarding his or her medical
33  use of ((cannabis)) marijuana;

34      (((3))) (c) The qualifying patient or designated provider keeps a
35  copy of his or her ((proof of registration with the registry
36  established in section 901 of this act)) recognition card and the
37  qualifying patient or designated provider's contact information
38  posted prominently next to any ((cannabis)) plants, ((cannabis))
39  marijuana concentrates, marijuana-infused products, or useable
40  ((cannabis)) marijuana located at his or her residence;

1    (((4))) (d) The investigating ((peace)) law enforcement officer
2    does not possess evidence that:
3        (((a))) (i) The designated provider has converted ((cannabis))
4    marijuana produced or obtained for the qualifying patient for his or
5    her own personal use or benefit; or
6        (((b))) (ii) The qualifying patient ((has converted cannabis
7    produced or obtained for his or her own medical use to the qualifying
8    patient's personal, nonmedical use or benefit)) sold, donated, or
9    supplied marijuana to another person; and
10        (((5))) (e) The ((investigating peace officer does not possess
11    evidence that the)) designated provider has not served as a
12    designated provider to more than one qualifying patient within a
13    fifteen-day period; ((and
14        (6))) or
15        (2) The ((investigating peace officer has not observed evidence
16    of any of the circumstances identified in section 901(4))) qualifying
17    patient or designated provider participates in a cooperative as
18    provided in section 26 of this act.

19        **Sec. 25.**   RCW 69.51A.043 and 2011 c 181 s 402 are each amended to
20    read as follows:
21        (1) A qualifying patient or designated provider who has a valid
22    authorization from his or her health care professional, but is not
23    ((registered with the registry established in section 901 of this
24    act)) entered in the medical marijuana authorization database and
25    does not have a recognition card may raise the affirmative defense
26    set forth in subsection (2) of this section, if:
27        (a) The qualifying patient or designated provider presents his or
28    her ((valid documentation to any peace)) authorization to any law
29    enforcement officer who questions the patient or provider regarding
30    his or her medical use of ((cannabis)) marijuana;
31        (b) The qualifying patient or designated provider possesses no
32    more ((cannabis)) marijuana than the limits set forth in ((RCW
33    69.51A.040(1))) section 19(3) of this act;
34        (c) The qualifying patient or designated provider is in
35    compliance with all other terms and conditions of this chapter;
36        (d) The investigating ((peace)) law enforcement officer does not
37    have probable cause to believe that the qualifying patient or
38    designated provider has committed a felony, or is committing a

1 misdemeanor in the officer's presence, that does not relate to the
2 medical use of ((cannabis)) marijuana; and

3     (e) No outstanding warrant for arrest exists for the qualifying
4 patient or designated provider((; and

5     (f) The investigating peace officer has not observed evidence of
6 any of the circumstances identified in section 901(4) of this act)).

7     (2) A qualifying patient or designated provider who is not
8 ((registered with the registry established in section 901 of this
9 act)) entered in the medical marijuana authorization database and
10 does not have a recognition card, but who presents his or her ((valid
11 documentation)) authorization to any ((peace)) law enforcement
12 officer who questions the patient or provider regarding his or her
13 medical use of ((cannabis)) marijuana, may assert an affirmative
14 defense to charges of violations of state law relating to
15 ((cannabis)) marijuana through proof at trial, by a preponderance of
16 the evidence, that he or she otherwise meets the requirements of RCW
17 69.51A.040. A qualifying patient or designated provider meeting the
18 conditions of this subsection but possessing more ((cannabis))
19 marijuana than the limits set forth in ((RCW 69.51A.040(1))) section
20 19(3) of this act may, in the investigating ((peace)) law enforcement
21 officer's discretion, be taken into custody and booked into jail in
22 connection with the investigation of the incident.

23     NEW SECTION.  **Sec. 26.**  A new section is added to chapter 69.51A
24 RCW to read as follows:

25     (1) Qualifying patients or designated providers may form a
26 cooperative and share responsibility for acquiring and supplying the
27 resources needed to produce and process marijuana only for the
28 medical use of members of the cooperative. No more than four
29 qualifying patients or designated providers may become members of a
30 cooperative under this section and all members must hold valid
31 recognition cards. All members of the cooperative must be at least
32 twenty-one years old. The designated provider of a qualifying patient
33 who is under twenty-one years old may be a member of a cooperative on
34 the qualifying patient's behalf.

35     (2) Cooperatives may not be located within one mile of a
36 marijuana retailer. People who wish to form a cooperative must
37 register the location with the state liquor and cannabis board and
38 this is the only location where cooperative members may grow or
39 process marijuana. This registration must include the names of all

1  participating members and copies of each participant's recognition
2  card. Only qualifying patients or designated providers registered
3  with the state liquor and cannabis board in association with the
4  location may participate in growing or receive useable marijuana or
5  marijuana-infused products grown at that location. The state liquor
6  and cannabis board must deny the registration of any cooperative if
7  the location is within one mile of a marijuana retailer.

8      (3) If a qualifying patient or designated provider no longer
9  participates in growing at the location, he or she must notify the
10 state liquor and cannabis board within fifteen days of the date the
11 qualifying patient or designated provider ceases participation. The
12 state liquor and cannabis board must remove his or her name from
13 connection to the cooperative. Additional qualifying patients or
14 designated providers may not join the cooperative until sixty days
15 have passed since the date on which the last qualifying patient or
16 designated provider notifies the state liquor and cannabis board that
17 he or she no longer participates in that cooperative.

18     (4) Qualifying patients or designated providers who participate
19 in a cooperative under this section:

20     (a) May grow up to the total amount of plants for which each
21 participating member is authorized on their recognition cards, up to
22 a maximum of sixty plants. At the location, the qualifying patients
23 or designated providers may possess the amount of useable marijuana
24 that can be produced with the number of plants permitted under this
25 subsection, but no more than seventy-two ounces;

26     (b) May only participate in one cooperative;

27     (c) May only grow plants in the cooperative and if he or she
28 grows plants in the cooperative may not grow plants elsewhere;

29     (d) Must provide assistance in growing plants. A monetary
30 contribution or donation is not to be considered assistance under
31 this section. Participants must provide nonmonetary resources and
32 labor in order to participate; and

33     (e) May not sell, donate, or otherwise provide marijuana,
34 marijuana concentrates, useable marijuana, or marijuana-infused
35 products to a person who is not participating under this section.

36     (5) The location of the cooperative must be the domicile of one
37 of the participants. Only one cooperative may be located per property
38 tax parcel. A copy of each participant's recognition card must be
39 kept at the location at all times.

1    (6) The state liquor and cannabis board may adopt rules to
2  implement this section including:

3    (a) Any security requirements necessary to ensure the safety of
4  the cooperative and to reduce the risk of diversion from the
5  cooperative;

6    (b) A seed to sale traceability model that is similar to the seed
7  to sale traceability model used by licensees that will allow the
8  state liquor and cannabis board to track all marijuana grown in a
9  cooperative.

10    (7) The state liquor and cannabis board or law enforcement may
11  inspect a cooperative registered under this section to ensure members
12  are in compliance with this section. The state liquor and cannabis
13  board must adopt rules on reasonable inspection hours and reasons for
14  inspections.

15    NEW SECTION.  **Sec. 27.**  A new section is added to chapter 69.51A
16  RCW to read as follows:

17    (1) Notwithstanding any other provision of this chapter and even
18  if multiple qualifying patients or designated providers reside in the
19  same housing unit, no more than fifteen plants may be grown or
20  located in any one housing unit other than a cooperative established
21  pursuant to section 26 of this act.

22    (2) Neither the production nor processing of marijuana or
23  marijuana-infused products pursuant to this section nor the storage
24  or growing of plants may occur if any portion of such activity can be
25  readily seen by normal unaided vision or readily smelled from a
26  public place or the private property of another housing unit.

27    (3) Cities, towns, counties, and other municipalities may create
28  and enforce civil penalties, including abatement procedures, for the
29  growing or processing of marijuana and for keeping marijuana plants
30  beyond or otherwise not in compliance with this section.

31    NEW SECTION.  **Sec. 28.**  A new section is added to chapter 69.51A
32  RCW to read as follows:

33    (1) Once the state liquor and cannabis board adopts rules under
34  subsection (2) of this section, qualifying patients or designated
35  providers may only extract or separate the resin from marijuana or
36  produce or process any form of marijuana concentrates or
37  marijuana-infused products in accordance with those standards.

1      (2)  The  state  liquor  and  cannabis  board  must  adopt  rules
2  permitting  qualifying  patients  and  designated  providers  to  extract  or
3  separate  the  resin  from  marijuana  using  noncombustable  methods.  The
4  rules  must  provide  the  noncombustible  methods  permitted  and  any
5  restrictions  on  this  practice.

6      **Sec. 29.**  RCW  69.51A.045  and  2011  c  181  s  405  are  each  amended  to
7  read  as  follows:
8      (1)  A  qualifying  patient  or  designated  provider  in  possession  of
9  ((cannabis))  plants,  marijuana  concentrates,  useable  ((cannabis))
10  marijuana,  or  ((cannabis))  marijuana-infused  products  exceeding  the
11  limits  set  forth  in  ((RCW  69.51A.040(1)))  this  chapter  but  otherwise
12  in  compliance  with  all  other  terms  and  conditions  of  this  chapter  may
13  establish  an  affirmative  defense  to  charges  of  violations  of  state
14  law  relating  to  ((cannabis))  marijuana  through  proof  at  trial,  by  a
15  preponderance  of  the  evidence,  that  the  qualifying  patient's
16  necessary  medical  use  exceeds  the  amounts  set  forth  in  RCW
17  69.51A.040((1))).
18      (2)  An  investigating  ((peace))  law  enforcement  officer  may  seize
19  ((cannabis))  plants,  marijuana  concentrates,  useable  ((cannabis))
20  marijuana,  or  ((cannabis))  marijuana-infused  products  exceeding  the
21  amounts  set  forth  in  ((RCW  69.51A.040(1):  PROVIDED,  That))  this
22  chapter. In  the  case  of  ((cannabis))  plants,  the  qualifying  patient
23  or  designated  provider  shall  be  allowed  to  select  the  plants  that
24  will  remain  at  the  location.  The  officer  and  his  or  her  law
25  enforcement  agency  may  not  be  held  civilly  liable  for  failure  to
26  seize  ((cannabis))  marijuana  in  this  circumstance.

27      **Sec. 30.**  RCW  69.51A.055  and  2011  c  181  s  1105  are  each  amended
28  to  read  as  follows:
29      (1)(a)  The  arrest  and  prosecution  protections  established  in  RCW
30  69.51A.040  may  not  be  asserted  in  a  supervision  revocation  or
31  violation  hearing  by  a  person  who  is  supervised  by  a  corrections
32  agency  or  department,  including  local  governments  or  jails,  that  has
33  determined  that  the  terms  of  this  section  are  inconsistent  with  and
34  contrary  to  his  or  her  supervision.
35      (b)  The  affirmative  defenses  established  in  RCW  69.51A.043((,))
36  and  69.51A.045((,  69.51A.047,  and  section  407  of  this  act))  may  not
37  be  asserted  in  a  supervision  revocation  or  violation  hearing  by  a
38  person  who  is  supervised  by  a  corrections  agency  or  department,

1  including local governments or jails, that has determined that the
2  terms of this section are inconsistent with and contrary to his or
3  her supervision.

4      (2) ((The provisions of)) RCW 69.51A.040((~ 69.51A.085, and
5  69.51A.025 do)) does not apply to a person who is supervised for a
6  criminal conviction by a corrections agency or department, including
7  local governments or jails, that has determined that the terms of
8  this chapter are inconsistent with and contrary to his or her
9  supervision.

10     (((3) A person may not be licensed as a licensed producer,
11 licensed processor of cannabis products, or a licensed dispenser
12 under section 601, 602, or 701 of this act if he or she is supervised
13 for a criminal conviction by a corrections agency or department,
14 including local governments or jails, that has determined that
15 licensure is inconsistent with and contrary to his or her
16 supervision.))

17     **Sec. 31.**  RCW 69.51A.060 and 2011 c 181 s 501 are each amended to
18 read as follows:

19     (1) It shall be a class 3 civil infraction to use or display
20 medical ((cannabis)) marijuana in a manner or place which is open to
21 the view of the general public.

22     (2) Nothing in this chapter establishes a right of care as a
23 covered benefit or requires any state purchased health care as
24 defined in RCW 41.05.011 or other health carrier or health plan as
25 defined in Title 48 RCW to be liable for any claim for reimbursement
26 for the medical use of ((cannabis)) marijuana. Such entities may
27 enact coverage or noncoverage criteria or related policies for
28 payment or nonpayment of medical ((cannabis)) marijuana in their sole
29 discretion.

30     (3) Nothing in this chapter requires any health care professional
31 to authorize the medical use of ((cannabis)) marijuana for a patient.

32     (4) Nothing in this chapter requires any accommodation of any on-
33 site medical use of ((cannabis)) marijuana in any place of
34 employment, in any school bus or on any school grounds, in any youth
35 center, in any correctional facility, or smoking ((cannabis))
36 marijuana in any public place or hotel or motel. However, a school
37 may permit a minor who meets the requirements of section 20 of this
38 act to consume marijuana on school grounds. Such use must be in

1  accordance with school policy relating to medication use on school
2  grounds.
3      (5) Nothing in this chapter authorizes the possession or use of
4  marijuana, marijuana concentrates, useable marijuana, or marijuana-
5  infused products on federal property.
6      (((5))) (6) Nothing in this chapter authorizes the use of medical
7  ((cannabis)) marijuana by any person who is subject to the Washington
8  code of military justice in chapter 38.38 RCW.
9      (((6))) (7) Employers may establish drug-free work policies.
10  Nothing in this chapter requires an accommodation for the medical use
11  of ((cannabis)) marijuana if an employer has a drug-free workplace.
12      (((7) It is a class C felony to fraudulently produce any record
13  purporting to be, or tamper with the content of any record for the
14  purpose of having it accepted as, valid documentation under RCW
15  69.51A.010(32)(a), or to backdate such documentation to a time
16  earlier than its actual date of execution.))
17      (8) No person shall be entitled to claim the protection from
18  arrest and prosecution under RCW 69.51A.040 or the affirmative
19  defense under RCW 69.51A.043 for engaging in the medical use of
20  ((cannabis)) marijuana in a way that endangers the health or well-
21  being of any person through the use of a motorized vehicle on a
22  street, road, or highway, including violations of RCW 46.61.502 or
23  46.61.504, or equivalent local ordinances.

24      **Sec. 32.**  RCW 69.51A.085 and 2011 c 181 s 403 are each amended to
25  read as follows:
26      (1) Qualifying patients may create and participate in collective
27  gardens for the purpose of producing, processing, transporting, and
28  delivering ((cannabis)) marijuana for medical use subject to the
29  following conditions:
30      (a) No more than ten qualifying patients may participate in a
31  single collective garden at any time;
32      (b) No person under the age of twenty-one may participate in a
33  collective garden or receive marijuana that was produced, processed,
34  transported, or delivered through a collective garden. A designated
35  provider for a person who is under the age of twenty-one may
36  participate in a collective garden on behalf of the person under the
37  age of twenty-one;
38      (c) A collective garden may contain no more than fifteen plants
39  per patient up to a total of forty-five plants;

1    (((c))) (d) A collective garden may contain no more than twenty-
2    four ounces of useable ((cannabis)) marijuana per patient up to a
3    total of seventy-two ounces of useable ((cannabis)) marijuana;

4    (((d))) (e) A copy of each qualifying patient's ((valid
5    documentation or proof of registration with the registry established
6    in section 901 of this act)) authorization, including a copy of the
7    patient's proof of identity, must be available at all times on the
8    premises of the collective garden; and

9    (((e))) (f) No useable ((cannabis)) marijuana from the collective
10   garden is delivered to anyone other than one of the qualifying
11   patients participating in the collective garden.

12   (2) For purposes of this section, the creation of a "collective
13   garden" means qualifying patients sharing responsibility for
14   acquiring and supplying the resources required to produce and process
15   cannabis for medical use such as, for example, a location for a
16   collective garden; equipment, supplies, and labor necessary to plant,
17   grow, and harvest ((cannabis; cannabis)) marijuana plants, seeds, and
18   cuttings; and equipment, supplies, and labor necessary for proper
19   construction, plumbing, wiring, and ventilation of a garden of
20   ((cannabis)) marijuana plants.

21   (3) A person who knowingly violates a provision of subsection (1)
22   of this section is not entitled to the protections of this chapter.


23   NEW SECTION. **Sec. 33.** A new section is added to chapter 69.50
24   RCW to read as follows:

25   (1) The state liquor and cannabis board may conduct controlled
26   purchase programs to determine whether:

27   (a) A marijuana retailer is unlawfully selling marijuana to
28   persons under the age of twenty-one;

29   (b) A marijuana retailer holding a medical marijuana endorsement
30   is selling to persons under the age of eighteen or selling to persons
31   between the ages of eighteen and twenty-one who do not hold valid
32   recognition cards;

33   (c) Until July 1, 2016, collective gardens under RCW 69.51A.085
34   are providing marijuana to persons under the age of twenty-one; or

35   (d) A cooperative organized under section 26 of this act is
36   permitting a person under the age of twenty-one to participate.

37   (2) Every person under the age of twenty-one years who purchases
38   or attempts to purchase marijuana is guilty of a violation of this
39   section. This section does not apply to:

1    (a) Persons between the ages of eighteen and twenty-one who hold
2    valid recognition cards and purchase marijuana at a marijuana retail
3    outlet holding a medical marijuana endorsement;

4    (b) Persons between the ages of eighteen and twenty-one years who
5    are participating in a controlled purchase program authorized by the
6    state liquor and cannabis board under rules adopted by the board.
7    Violations occurring under a private, controlled purchase program
8    authorized by the state liquor and cannabis board may not be used for
9    criminal or administrative prosecution.

10    (3) A marijuana retailer who conducts an in-house controlled
11    purchase program authorized under this section shall provide his or
12    her employees a written description of the employer's in-house
13    controlled purchase program. The written description must include
14    notice of actions an employer may take as a consequence of an
15    employee's failure to comply with company policies regarding the sale
16    of marijuana during an in-house controlled purchase program.

17    (4) An in-house controlled purchase program authorized under this
18    section shall be for the purposes of employee training and employer
19    self-compliance checks. A marijuana retailer may not terminate an
20    employee solely for a first-time failure to comply with company
21    policies regarding the sale of marijuana during an in-house
22    controlled purchase program authorized under this section.

23    (5) Every person between the ages of eighteen and twenty-one who
24    is convicted of a violation of this section is guilty of a
25    misdemeanor punishable as provided by RCW 9A.20.021.

26    **Sec. 34.**  RCW 69.51A.100 and 2011 c 181 s 404 are each amended to
27    read as follows:

28    (1) A qualifying patient may revoke his or her designation of a
29    specific <u>designated</u> provider and designate a different <u>designated</u>
30    provider at any time. A revocation of designation must be in writing,
31    signed and dated<u>, and provided to the designated provider and, if</u>
32    <u>applicable, the medical marijuana authorization database</u>
33    <u>administrator</u>. The protections of this chapter cease to apply to a
34    person who has served as a designated provider to a qualifying
35    patient seventy-two hours after receipt of that patient's revocation
36    of his or her designation.

37    (2) A person may stop serving as a designated provider to a given
38    qualifying patient at any time <u>by revoking that designation in</u>
39    <u>writing, signed and dated, and provided to the qualifying patient</u>

1   and, if applicable, the medical marijuana authorization database
2   administrator. However, that person may not begin serving as a
3   designated provider to a different qualifying patient until fifteen
4   days have elapsed from the date the last qualifying patient
5   designated him or her to serve as a provider.
6       (3) The department may adopt rules to implement this section,
7   including a procedure to remove the name of the designated provider
8   from the medical marijuana authorization database upon receipt of a
9   revocation under this section.

10      NEW SECTION.  **Sec. 35.**  A new section is added to chapter 69.51A
11  RCW to read as follows:
12      Neither this chapter nor chapter 69.50 RCW prohibits a health
13  care professional from selling or donating topical, noningestible
14  products that have a THC concentration of less than .3 percent to
15  qualifying patients.

16      ***\*NEW SECTION.*  *Sec. 36.*  *A new section is added to chapter 69.51A***
17  ***RCW to read as follows:***
18      ***Employers of a health care professional may not prohibit or limit***
19  ***the authority of any health care professional to:***
20      ***(1) Advise a patient about the risks and benefits of the medical***
21  ***use of marijuana or that the patient may benefit from the medical use***
22  ***of marijuana; or***
23      ***(2) Provide a patient or designated provider meeting the criteria***
24  ***established under RCW 69.51A.010 with an authorization, based upon***
25  ***the health care professional's assessment of the patient's medical***
26  ***history and current medical condition, if the health care***
27  ***professional has complied with this chapter and he or she determines***
28  ***within a professional standard of care or in the individual health***
29  ***care professional's medical judgment the qualifying patient may***
30  ***benefit from the medical use of marijuana.***
    *\*Sec. 36 was vetoed. See message at end of chapter.*

31      NEW SECTION.  **Sec. 37.**  A new section is added to chapter 69.51A
32  RCW to read as follows:
33      A medical marijuana consultant certificate is hereby established.
34      (1) In addition to any other authority provided by law, the
35  secretary of the department may:

1    (a) Adopt rules, in accordance with chapter 34.05 RCW, necessary
2  to implement this chapter;

3    (b) Establish forms and procedures necessary to administer this
4  chapter;

5    (c) Approve training or education programs that meet the
6  requirements of this section and any rules adopted to implement it;

7    (d) Receive criminal history record information that includes
8  nonconviction information data for any purpose associated with
9  initial certification or renewal of certification. The secretary
10 shall require each applicant for initial certification to obtain a
11 state or federal criminal history record information background check
12 through the state patrol or the state patrol and the identification
13 division of the federal bureau of investigation prior to the issuance
14 of any certificate. The secretary shall specify those situations
15 where a state background check is inadequate and an applicant must
16 obtain an electronic fingerprint-based national background check
17 through the state patrol and federal bureau of investigation.
18 Situations where a background check is inadequate may include
19 instances where an applicant has recently lived out-of-state or where
20 the applicant has a criminal record in Washington;

21   (e) Establish administrative procedures, administrative
22 requirements, and fees in accordance with RCW 43.70.110 and
23 43.70.250; and

24   (f) Maintain the official department record of all applicants and
25 certificate holders.

26   (2) A training or education program approved by the secretary
27 must include the following topics:

28   (a) The medical conditions that constitute terminal or
29 debilitating conditions, and the symptoms of those conditions;

30   (b) Short and long-term effects of cannabinoids;

31   (c) Products that may benefit qualifying patients based on the
32 patient's terminal or debilitating medical condition;

33   (d) Risks and benefits of various routes of administration;

34   (e) Safe handling and storage of useable marijuana, marijuana-
35 infused products, and marijuana concentrates, including strategies to
36 reduce access by minors;

37   (f) Demonstrated knowledge of this chapter and the rules adopted
38 to implement it; and

39   (g) Other subjects deemed necessary and appropriate by the
40 secretary to ensure medical marijuana consultant certificate holders

1  are able to provide evidence-based and medically accurate advice on
2  the medical use of marijuana.

3  (3) Medical marijuana consultant certificates are subject to
4  annual renewals and continuing education requirements established by
5  the secretary.

6  (4) The secretary shall have the power to refuse, suspend, or
7  revoke the certificate of any medical marijuana consultant upon proof
8  that:

9  (a) The certificate was procured through fraud,
10  misrepresentation, or deceit;

11  (b) The certificate holder has committed acts in violation of
12  subsection (6) of this section; or

13  (c) The certificate holder has violated or has permitted any
14  employee or volunteer to violate any of the laws of this state
15  relating to drugs or controlled substances or has been convicted of a
16  felony.

17  In any case of the refusal, suspension, or revocation of a
18  certificate by the secretary under the provisions of this chapter,
19  appeal may be taken in accordance with chapter 34.05 RCW, the
20  administrative procedure act.

21  (5) A medical marijuana consultant may provide the following
22  services when acting as an owner, employee, or volunteer of a retail
23  outlet licensed under RCW 69.50.354 and holding a medical marijuana
24  endorsement under section 10 of this act:

25  (a) Assisting a customer with the selection of products sold at
26  the retail outlet that may benefit the qualifying patient's terminal
27  or debilitating medical condition;

28  (b) Describing the risks and benefits of products sold at the
29  retail outlet;

30  (c) Describing the risks and benefits of methods of
31  administration of products sold at the retail outlet;

32  (d) Advising a customer about the safe handling and storage of
33  useable marijuana, marijuana-infused products, and marijuana
34  concentrates, including strategies to reduce access by minors; and

35  (e) Providing instruction and demonstrations to customers about
36  proper use and application of useable marijuana, marijuana-infused
37  products, and marijuana concentrates.

38  (6) Nothing in this section authorizes a medical marijuana
39  consultant to:

1    (a) Offer or undertake to diagnose or cure any human disease,
2    ailment, injury, infirmity, deformity, pain, or other condition,
3    physical or mental, real or imaginary, by use of marijuana or any
4    other means or instrumentality; or

5    (b) Recommend or suggest modification or elimination of any
6    course of treatment that does not involve the medical use of
7    marijuana.

8    (7) Nothing in this section requires an owner, employee, or
9    volunteer of a retail outlet licensed under RCW 69.50.354 and holding
10   a medical marijuana endorsement under section 10 of this act to
11   obtain a medical marijuana consultant certification.

12   (8) Nothing in this section applies to the practice of a health
13   care profession by individuals who are licensed, certified, or
14   registered in a profession listed in RCW 18.130.040(2) and who are
15   performing services within their authorized scope of practice.

16   NEW SECTION.  Sec. 38.  A new section is added to chapter 69.51A
17   RCW to read as follows:

18   The board of naturopathy, the board of osteopathic medicine and
19   surgery, the medical quality assurance commission, and the nursing
20   care quality assurance commission shall develop and approve
21   continuing education programs related to the use of marijuana for
22   medical purposes for the health care providers that they each
23   regulate that are based upon practice guidelines that have been
24   adopted by each entity.

25   Sec. 39.  RCW 43.70.320 and 2008 c 134 s 16 are each amended to
26   read as follows:

27   (1) There is created in the state treasury an account to be known
28   as the health professions account. All fees received by the
29   department for health professions licenses, registration,
30   certifications, renewals, or examinations and the civil penalties
31   assessed and collected by the department under RCW 18.130.190 shall
32   be forwarded to the state treasurer who shall credit such moneys to
33   the health professions account.

34   (2) All expenses incurred in carrying out the health professions
35   licensing activities of the department and implementing and
36   administering the medical marijuana authorization database
37   established in section 21 of this act shall be paid from the account
38   as authorized by legislative appropriation, except as provided in

1  subsection (4) of this section. Any residue in the account shall be
2  accumulated and shall not revert to the general fund at the end of
3  the biennium.

4      (3) The secretary shall biennially prepare a budget request based
5  on the anticipated costs of administering the health professions
6  licensing activities of the department which shall include the
7  estimated income from health professions fees.

8      (4) The secretary shall, at the request of a board or commission
9  as applicable, spend unappropriated funds in the health professions
10 account that are allocated to the requesting board or commission to
11 meet unanticipated costs of that board or commission when revenues
12 exceed more than fifteen percent over the department's estimated
13 six-year spending projections for the requesting board or commission.
14 Unanticipated costs shall be limited to spending as authorized in
15 subsection (3) of this section for anticipated costs.

16     NEW SECTION.  **Sec. 40.**  A new section is added to chapter 82.04
17 RCW to read as follows:

18     (1) This chapter does not apply to any cooperative in respect to
19 growing marijuana, or manufacturing marijuana concentrates, useable
20 marijuana, or marijuana-infused products, as those terms are defined
21 in RCW 69.50.101.

22     (2) The tax preference authorized in this section is not subject
23 to the provisions of RCW 82.32.805 and 82.32.808.

24     NEW SECTION.  **Sec. 41.**  (1) The department of health must develop
25 recommendations on establishing medical marijuana specialty clinics
26 that would allow for the authorization and dispensing of marijuana to
27 patients of health care professionals who work on-site of the clinic
28 and who are certified by the department of health in the medical use
29 of marijuana.

30     (2) Recommendations must be reported to the chairs of the health
31 care committees of both the senate and house of representatives by
32 December 1, 2015.

33     *Sec. 42.  RCW 69.50.203 and 2013 c 19 s 88 are each amended to*
34 *read as follows:*

35     (a) Except as provided in subsection (c) of this section, the
36 commission shall place a substance in Schedule I upon finding that
37 the substance:

1       (1) has high potential for abuse;

2       (2) has no currently accepted medical use in treatment in the
3  United States; and

4       (3) lacks accepted safety for use in treatment under medical
5  supervision.

6       (b) The commission may place a substance in Schedule I without
7  making the findings required by subsection (a) of this section if the
8  substance is controlled under Schedule I of the federal Controlled
9  Substances Act by a federal agency as the result of an international
10 treaty, convention, or protocol.

11      _(c) No marijuana concentrates, useable marijuana, or marijuana-_
12 _infused product that the department has identified in rules adopted_
13 _pursuant to section 10(4) of this act as appropriate for sale to_
14 _qualifying patients and designated providers in a retail outlet that_
15 _holds a medical marijuana endorsement shall be deemed to have met the_
16 _criteria established in subsection (a) of this section and may not be_
17 _placed in Schedule I._

   *Sec. 42 was vetoed. See message at end of chapter.*

18      *Sec. 43.  RCW 69.50.204 and 2010 c 177 s 2 are each amended to
19 read as follows:

20      Unless specifically excepted by state or federal law or
21 regulation or more specifically included in another schedule, the
22 following controlled substances are listed in Schedule I:

23      (a) Any of the following opiates, including their isomers,
24 esters, ethers, salts, and salts of isomers, esters, and ethers
25 whenever the existence of these isomers, esters, ethers, and salts is
26 possible within the specific chemical designation:

27      (1) Acetyl-alpha-methylfentanyl (N-[1-(1-methyl-2-phenethyl)-4-
28 piperidinyl]-N-phenylacetamide);

29      (2) Acetylmethadol;

30      (3) Allylprodine;

31      (4) Alphacetylmethadol, except levo-alphacetylmethadol, also
32 known as levo-alpha-acetylmethadol, levomethadyl acetate, or LAAM;

33      (5) Alphameprodine;

34      (6) Alphamethadol;

35      (7)    Alpha-methylfentanyl   (N-[1-(alpha-methyl-beta-phenyl)
36 ethyl-4-piperidyl] propionanilide); (1-(1-methyl-2-phenylethyl)-4-(N-
37 propanilido) piperidine);

1      *(8)   Alpha-methylthiofentanyl   (N-[1-methyl-2-(2-thienyl)ethyl-4-*
2      *piperidinyl]-N-phenylpropanamide);*
3      *(9) Benzethidine;*
4      *(10) Betacetylmethadol;*
5      *(11)    Beta-hydroxyfentanyl     (N-[1-(2-hydroxy-2-phenethyl)-4-*
6      *piperidinyl]-N-phenylpropanamide);*
7      *(12) Beta-hydroxy-3-methylfentanyl, some trade or other names: N-*
8      *[1-(2-hydrox-2-phenethyl)-3-methyl-4-piperidinyl]-N-*
9      *phenylpropanamide;*
10     *(13) Betameprodine;*
11     *(14) Betamethadol;*
12     *(15) Betaprodine;*
13     *(16) Clonitazene;*
14     *(17) Dextromoramide;*
15     *(18) Diampromide;*
16     *(19) Diethylthiambutene;*
17     *(20) Difenoxin;*
18     *(21) Dimenoxadol;*
19     *(22) Dimepheptanol;*
20     *(23) Dimethylthiambutene;*
21     *(24) Dioxaphetyl butyrate;*
22     *(25) Dipipanone;*
23     *(26) Ethylmethylthiambutene;*
24     *(27) Etonitazene;*
25     *(28) Etoxeridine;*
26     *(29) Furethidine;*
27     *(30) Hydroxypethidine;*
28     *(31) Ketobemidone;*
29     *(32) Levomoramide;*
30     *(33) Levophenacylmorphan;*
31     *(34)      3-Methylfentanyl      (N-[3-methyl-1-(2-phenylethyl)-4-*
32     *piperidyl]-N-phenylprop anamide);*
33     *(35)    3-Methylthiofentanyl   (N-[(3-methyl-1-(2-thienyl)ethyl-4-*
34     *piperidinyl]-N-phenylpropanamide);*
35     *(36) Morpheridine;*
36     *(37) MPPP (1-methyl-4-phenyl-4-propionoxypiperidine);*
37     *(38) Noracymethadol;*
38     *(39) Norlevorphanol;*
39     *(40) Normethadone;*
40     *(41) Norpipanone;*

1    *(42)      Para-fluorofentanyl      (N-(4-fluorophenyl)-N-[1-(2-*
2    *phenethyl)-4-piperidinyl] propanamide);*
3    *(43) PEPAP(1-(-2-phenethyl)-4-phenyl-4-acetoxypiperidine);*
4    *(44) Phenadoxone;*
5    *(45) Phenampromide;*
6    *(46) Phenomorphan;*
7    *(47) Phenoperidine;*
8    *(48) Piritramide;*
9    *(49) Proheptazine;*
10   *(50) Properidine;*
11   *(51) Propiram;*
12   *(52) Racemoramide;*
13   *(53)  Thiofentanyl  (N-phenyl-N-[1-(2-thienyl)ethyl-4-piperidinyl]-*
14   *propanaminde);*
15   *(54) Tilidine;*
16   *(55) Trimeperidine.*
17   *(b)  Opium  derivatives.  Unless  specifically  excepted  or  unless*
18   *listed  in  another  schedule,  any  of  the  following  opium  derivatives,*
19   *including  their  salts,  isomers,  and  salts  of  isomers  whenever  the*
20   *existence  of  those  salts,  isomers,  and  salts  of  isomers  is  possible*
21   *within  the  specific  chemical  designation:*
22   *(1) Acetorphine;*
23   *(2) Acetyldihydrocodeine;*
24   *(3) Benzylmorphine;*
25   *(4) Codeine methylbromide;*
26   *(5) Codeine-N-Oxide;*
27   *(6) Cyprenorphine;*
28   *(7) Desomorphine;*
29   *(8) Dihydromorphine;*
30   *(9) Drotebanol;*
31   *(10) Etorphine, except hydrochloride salt;*
32   *(11) Heroin;*
33   *(12) Hydromorphinol;*
34   *(13) Methyldesorphine;*
35   *(14) Methyldihydromorphine;*
36   *(15) Morphine methylbromide;*
37   *(16) Morphine methylsulfonate;*
38   *(17) Morphine-N-Oxide;*
39   *(18) Myrophine;*
40   *(19) Nicocodeine;*

     2SSB 5052.SL

1    *(20) Nicomorphine;*

2    *(21) Normorphine;*

3    *(22) Pholcodine;*

4    *(23) Thebacon.*

5    *(c)  Hallucinogenic  substances.  Unless  specifically  excepted  or*

6    *unless  listed  in  another  schedule,  any  material,  compound,  mixture,*

7    *or  preparation  which  contains  any  quantity  of  the  following*

8    *hallucinogenic  substances,  including  their  salts,  isomers,  and  salts*

9    *of  isomers  whenever  the  existence  of  those  salts,  isomers,  and  salts*

10   *of  isomers  is  possible  within  the  specific  chemical  designation.  For*

11   *the  purposes  of  this  subsection  only,  the  term  "isomer"  includes  the*

12   *optical,  position,  and  geometric  isomers:*

13   *(1)  Alpha-ethyltryptamine:  Some  trade  or  other  names:*

14   *Etryptamine;  monase;  a-ethyl-1H-indole-3-ethanamine;  3-(2-aminobutyl)*

15   *indole;  a-ET;  and  AET;*

16   *(2) 4-bromo-2,5-dimethoxy-amphetamine: Some trade or other names:*

17   *4-bromo-2,5-dimethoxy-a-methylphenethylamine; 4-bromo-2,5-DMA;*

18   *(3)  4-bromo-2,5-dimethoxyphenethylamine:  Some  trade  or  other*

19   *names:  2-(4-bromo-2,5-dimethoxyphenyl)-1-aminoethane;  alpha-desmethyl*

20   *DOB; 2C-B, nexus;*

21   *(4)  2,5-dimethoxyamphetamine:  Some  trade  or  other  names:  2,5-*

22   *dimethoxy-a-methylphenethylamine; 2,5-DMA;*

23   *(5) 2,5-dimethoxy-4-ethylamphetamine (DOET);*

24   *(6)  2,5-dimethoxy-4-(n)-propylthiophenethylamine:  Other  name:*

25   *2C-T-7;*

26   *(7) 4-methoxyamphetamine: Some trade or other names: 4-methoxy-a-*

27   *methylphenethylamine; paramethoxyamphetamine, PMA;*

28   *(8) 5-methoxy-3,4-methylenedioxy-amphetamine;*

29   *(9)  4-methyl-2,5-dimethoxy-amphetamine:  Some  trade  and  other*

30   *names:  4-methyl-2,5-dimethoxy-a-methylphenethylamine;  "DOM";  and*

31   *"STP";*

32   *(10) 3,4-methylenedioxy amphetamine;*

33   *(11) 3,4-methylenedioxymethamphetamine (MDMA);*

34   *(12)  3,4-methylenedioxy-N-ethylamphetamine,  also  known  as  N-*

35   *ethyl-alpha-methyl-3,4(methylenedioxy)phenethylamine,  N-ethyl  MDA,*

36   *MDE, MDEA;*

37   *(13)  N-hydroxy-3,4-methylenedioxyamphetamine  also  known  as*

38   *N-hydroxy-alpha-methyl-3,4(methylenedioxy)phenethylamine,N-hydroxy*

39   *MDA;*

40   *(14) 3,4,5-trimethoxy amphetamine;*

1      *(15) Alpha-methyltryptamine: Other name: AMT;*

2      *(16) Bufotenine: Some trade or other names: 3-(beta-*
3      *Dimethylaminoethyl)-5-hydroxindole;      3-(2-dimethylaminoethyl)-5-*
4      *indolol; N, N-dimethylserotonin; 5-hydroxy-N,N-dimethyltryptamine;*
5      *mappine;*

6      *(17) Diethyltryptamine: Some trade or other names: N,N-*
7      *Diethyltryptamine; DET;*

8      *(18) Dimethyltryptamine: Some trade or other names: DMT;*

9      *(19) 5-methoxy-N,N-diisopropyltryptamine: Other name: 5-MeO-DIPT;*

10     *(20) Ibogaine: Some trade or other names: 7-Ethyl-6,6 beta,*
11     *7,8,9,10,12,13,-octahydro-2-methoxy-6,9-methano-5H-pyndo (1',2' 1,2)*
12     *azepino (5,4-b) indole; Tabernanthe iboga;*

13     *(21) Lysergic acid diethylamide;*

14     *(22) Marihuana or marijuana, <u>except for any marijuana</u>*
15     *<u>concentrates, useable marijuana, or marijuana-infused products</u>*
16     *<u>identified by the department in rules adopted pursuant to section</u>*
17     *<u>10(4) of this act as appropriate for sale to qualifying patients and</u>*
18     *<u>designated providers in a retail outlet that holds a medical</u>*
19     *<u>marijuana endorsement</u>;*

20     *(23) Mescaline;*

21     *(24) Parahexyl-7374: Some trade or other names: 3-Hexyl-1-*
22     *hydroxy-7, 8, 9, 10-tetrahydro-6, 6, 9-trimethyl-6H-*
23     *dibenzo[b,d]pyran; synhexyl;*

24     *(25) Peyote, meaning all parts of the plant presently classified*
25     *botanically as Lophophora Williamsii Lemaire, whether growing or not,*
26     *the seeds thereof, any extract from any part of such plant, and every*
27     *compound, manufacture, salts, derivative, mixture, or preparation of*
28     *such plant, its seeds, or extracts; (interprets 21 U.S.C. Sec. 812*
29     *(c), Schedule I (c)(12));*

30     *(26) N-ethyl-3-piperidyl benzilate;*

31     *(27) N-methyl-3-piperidyl benzilate;*

32     *(28) Psilocybin;*

33     *(29) Psilocyn;*

34     *(30)<u>(i)</u> Tetrahydrocannabinols, meaning tetrahydrocannabinols*
35     *naturally contained in a plant of the genus Cannabis (cannabis*
36     *plant), as well as synthetic equivalents of the substances contained*
37     *in the plant, or in the resinous extractives of Cannabis, species,*
38     *and/or synthetic substances, derivatives, and their isomers with*
39     *similar chemical structure and pharmacological activity such as the*
40     *following:*

1    (((i))) (A) 1 - cis - or trans tetrahydrocannabinol, and their
2    optical isomers, excluding tetrahydrocannabinol in sesame oil and
3    encapsulated in a soft gelatin capsule in a drug product approved by
4    the United States Food and Drug Administration;
5    (((ii))) (B) 6 - cis - or trans tetrahydrocannabinol, and their
6    optical isomers;
7    (((iii))) (C) 3,4 - cis - or trans tetrahydrocannabinol, and its
8    optical isomers;
9    (Since nomenclature of these substances is not internationally
10   standardized, compounds of these structures, regardless of numerical
11   designation of atomic positions covered.)
12   (ii) The term "tetrahydrocannabinols" does not include any
13   marijuana concentrates, useable marijuana, or marijuana-infused
14   products identified by the department in rules adopted pursuant to
15   section 10(4) of this act as appropriate for sale to qualifying
16   patients and designated providers in a retail outlet that holds a
17   medical marijuana endorsement;
18   (31) Ethylamine analog of phencyclidine: Some trade or other
19   names:   N-ethyl-1phenylcyclohexalymine,   (1-phenylcyclohexl)
20   ethylamine; N-(1-phenylcyclohexyl)ethylamine; cyclohexamine; PCE;
21   (32) Pyrrolidine analog of phencyclidine: Some trade or other
22   names: 1-(1-phencyclohexyl)pyrrolidine; PCPy; PHP;
23   (33) Thiophene analog of phencyclidine: Some trade or other
24   names:   1-(1-[2-thenyl]-cyclohexly)-pipendine;   2-thienylanalog   of
25   phencyclidine; TPCP; TCP;
26   (34) 1-[1-(2-thienyl)cyclohexyl]pyrrolidine: A trade or other
27   name is TCPy.
28   (d) Depressants. Unless specifically excepted or unless listed in
29   another schedule, any material, compound, mixture, or preparation
30   which contains any quantity of the following substances having a
31   depressant effect on the central nervous system, including its salts,
32   isomers, and salts of isomers whenever the existence of such salts,
33   isomers, and salts of isomers is possible within the specific
34   chemical designation.
35   (1) Gamma-hydroxybutyric acid: Some other names include GHB;
36   gamma-hydroxybutyrate; 4-hydroxybutyrate; 4-hydroxybutanoic acid;
37   sodium oxybate; sodium oxybutyrate;
38   (2) Mecloqualone;
39   (3) Methaqualone.

1    *(e) Stimulants. Unless specifically excepted or unless listed in*
2    *another schedule, any material, compound, mixture, or preparation*
3    *which contains any quantity of the following substances having a*
4    *stimulant effect on the central nervous system, including its salts,*
5    *isomers, and salts of isomers:*

6    *(1) Aminorex: Some other names: aminoxaphen; 2-amino-5-phenyl-2-*
7    *oxazoline; or 4, 5-dihydro-5-phenly-2-oxazolamine;*

8    *(2) N-Benzylpiperazine: Some other names: BZP,1-benzylpiperazine;*

9    *(3) Cathinone, also known as 2-amino-1-phenyl-1-propanone,*
10   *alpha-aminopropiophenone, 2-aminopropiophenone and norephedrone;*

11   *(4) Fenethylline;*

12   *(5) Methcathinone: Some other names: 2-(methylamino)-*
13   *propiophenone; alpha-(methylamino)propiophenone; 2-(methylamino)-1-*
14   *phenylpropan-1-one;                    alpha-N-methylaminopropiophenone;*
15   *monomethylpropion; ephedrone; N-methylcathinone; methylcathinone;*
16   *AL-464; AL-422; AL-463 and UR1432, its salts, optical isomers, and*
17   *salts of optical isomers;*

18   *(6) (+-)cis-4-methylaminorex ((+-)cis-4,5-dihydro-4-methyl-5-*
19   *phenyl-2-oxazolamine);*

20   *(7) N-ethylamphetamine;*

21   *(8) N,N-dimethylamphetamine: Some trade or other names: N,N-*
22   *alpha-trimethyl-benzeneethanamine; N,N-alpha-trimethylphenoethylene.*

23   *The controlled substances in this section may be added,*
24   *rescheduled, or deleted as provided for in RCW 69.50.201.*
     *\*Sec. 43 was vetoed. See message at end of chapter.*


25   *\*NEW SECTION. Sec. 44. A new section is added to chapter 69.50*
26   *RCW to read as follows:*

27   *(1) It is unlawful for any person to manufacture, deliver, or*
28   *possess with intent to manufacture or deliver, marijuana*
29   *concentrates, useable marijuana, and marijuana-infused products*
30   *identified by the department in rules adopted pursuant to section*
31   *10(4) of this act as appropriate for sale to qualifying patients and*
32   *designated providers in a retail outlet that holds a medical*
33   *marijuana endorsement, except:*

34   *(a) As those activities are associated with the lawful operation*
35   *as a licensed marijuana producer, processor, retailer, or retailer*
36   *with a medical marijuana endorsement in compliance with this chapter*
37   *and chapter 69.51A RCW;*

1    *(b) In association with the lawful operation of a cooperative*
2    *established pursuant to, and operating in compliance with, section 26*
3    *of this act;*

4    *(c) Until July 1, 2016, in association with the lawful operation*
5    *of a collection garden established pursuant to, and operating in*
6    *compliance with RCW 69.51A.085; or*

7    *(d) As the activities of a designated provider or qualifying*
8    *patient support the personal, medical use of a qualifying patient in*
9    *compliance with section 27 of this act.*

10   *(2) Any person who violates this section is guilty of a class B*
11   *felony.*

*Sec. 44 was vetoed. See message at end of chapter.*

12   *NEW SECTION.  Sec. 45.  A new section is added to chapter 69.50*
13   *RCW to read as follows:*

14   *(1) It is unlawful for any person to possess marijuana*
15   *concentrates, useable marijuana, and marijuana-infused products*
16   *identified by the department in rules adopted pursuant to section*
17   *10(4) of this act as appropriate for sale to qualifying patients and*
18   *designated providers in a retail outlet that holds a medical*
19   *marijuana endorsement, unless:*

20   *(a) It is obtained and possessed by a designated provider or*
21   *qualifying patient in an amount that does not exceed those authorized*
22   *in section 19 of this act and the substance is obtained from:*

23   *(i) A licensed marijuana retailer or retailer with a medical*
24   *marijuana endorsement operating in compliance with this chapter and*
25   *chapter 69.51A RCW;*

26   *(ii) A cooperative established pursuant to, and operating in*
27   *compliance with, section 26 of this act;*

28   *(iii) Until July 1, 2016, a collective garden established*
29   *pursuant to, and operating in compliance with RCW 69.51A.085; or*

30   *(iv) The designated provider or qualifying patient in compliance*
31   *with section 27 of this act; or*

32   *(b) It is obtained and possessed by a person in an amount that*
33   *does not exceed those authorized in RCW 69.50.360 and was obtained*
34   *from a licensed marijuana retailer or retailer with a medical*
35   *marijuana endorsement operating in compliance with this chapter.*

36   *(2) Any person who violates this section is guilty of a class C*
37   *felony.*

*Sec. 45 was vetoed. See message at end of chapter.*

1    *Sec. 46.   RCW 9.94A.518 and 2003 c 53 s 57 are each amended to
2 read as follows:

3                                    *TABLE 4*

4                              *DRUG OFFENSES*

5                           *INCLUDED WITHIN EACH*

6                            *SERIOUSNESS LEVEL*

7        *III   Any felony offense under chapter*
8              *69.50 RCW with a deadly weapon*
9              *special verdict under RCW*
10             *9.94A.602*

11             *Controlled Substance Homicide*
12             *(RCW 69.50.415)*

13             *Delivery of imitation controlled*
14                 *substance by person eighteen or*
15                 *over to person under eighteen*
16                 *(RCW 69.52.030(2))*

17             *Involving a minor in drug dealing*
18                 *(RCW 69.50.4015)*

19             *Manufacture of methamphetamine*
20                 *(RCW 69.50.401(2)(b))*

21             *Over 18 and deliver heroin,*
22                 *methamphetamine, a narcotic*
23                 *from Schedule I or II, or*
24                 *flunitrazepam from Schedule IV*
25                 *to someone under 18 (RCW*
26                 *69.50.406)*

27             *Over 18 and deliver narcotic from*
28                 *Schedule III, IV, or V or a*
29                 *nonnarcotic, except*
30                 *flunitrazepam or*
31                 *methamphetamine, from*
32                 *Schedule I-V to someone under*
33                 *18 and 3 years junior (RCW*
34                 *69.50.406)*

| | | |
|---|---|---|
| 1 | | *Possession of Ephedrine,* |
| 2 | | *Pseudoephedrine, or Anhydrous* |
| 3 | | *Ammonia with intent to* |
| 4 | | *manufacture* |
| 5 | | *methamphetamine (RCW* |
| 6 | | *69.50.440)* |
| 7 | | *Selling for profit (controlled or* |
| 8 | | *counterfeit) any controlled* |
| 9 | | *substance (RCW 69.50.410)* |
| 10 | *II* | *Create, deliver, or possess a* |
| 11 | | *counterfeit controlled substance* |
| 12 | | *(RCW 69.50.4011)* |
| 13 | | *Deliver or possess with intent to* |
| 14 | | *deliver methamphetamine (RCW* |
| 15 | | *69.50.401(2)(b))* |
| 16 | | *Delivery of a material in lieu of a* |
| 17 | | *controlled substance (RCW* |
| 18 | | *69.50.4012)* |
| 19 | | *Maintaining a Dwelling or Place for* |
| 20 | | *Controlled Substances (RCW* |
| 21 | | *69.50.402(1)(f))* |
| 22 | | *Manufacture, deliver, or possess with* |
| 23 | | *intent to deliver amphetamine* |
| 24 | | *(RCW 69.50.401(2)(b))* |
| 25 | | *Manufacture, deliver, or possess with* |
| 26 | | *intent to deliver narcotics from* |
| 27 | | *Schedule I or II or flunitrazepam* |
| 28 | | *from Schedule IV (RCW* |
| 29 | | *69.50.401(2)(a))* |
| 30 | | *Manufacture, deliver, or possess with* |
| 31 | | *intent to deliver narcotics from* |
| 32 | | *Schedule III, IV, or V or* |
| 33 | | *nonnarcotics from Schedule I-V* |
| 34 | | *(except marijuana, amphetamine,* |
| 35 | | *methamphetamines, or* |
| 36 | | *flunitrazepam) (RCW* |
| 37 | | *69.50.401(2) (c) through (e))* |

1              *Manufacture, distribute, or possess*
2                  *with intent to distribute an*
3                  *imitation controlled substance*
4                  *(RCW 69.52.030(1))*

5          *I*   *Forged Prescription (RCW 69.41.020)*

6              *Forged Prescription for a Controlled*
7                  *Substance (RCW 69.50.403)*

8              *Manufacture, deliver, or possess with*
9                  *intent to deliver marijuana (RCW*
10                 *69.50.401(2)(c))*

11             *Manufacture, deliver, or possess with*
12                 *intent to deliver marijuana*
13                 *pursuant to section 44 of this act*

14             *Possesses marijuana pursuant to*
15                 *section 45 of this act*

16             *Possess Controlled Substance that is a*
17                 *Narcotic from Schedule III, IV,*
18                 *or V or Nonnarcotic from*
19                 *Schedule I-V (RCW 69.50.4013)*

20             *Possession of Controlled Substance*
21                 *that is either heroin or narcotics*
22                 *from Schedule I or II (RCW*
23                 *69.50.4013)*

24             *Unlawful Use of Building for Drug*
25                 *Purposes (RCW 69.53.010)*

*Sec. 46 was vetoed. See message at end of chapter.*

26     NEW SECTION.   **Sec. 47.**   All references to the Washington state
27 liquor control board must be construed as referring to the Washington
28 state liquor and cannabis board. The code reviser must prepare
29 legislation for the 2016 legislative session changing all references
30 in the Revised Code of Washington from the Washington state liquor
31 control board to the Washington state liquor and cannabis board.

32     NEW SECTION.   **Sec. 48.**   The following acts or parts of acts are
33 each repealed:

 1    (1) RCW 69.51A.020 (Construction of chapter) and 2011 c 181 s 103
 2  & 1999 c 2 s 3;

 3    (2) RCW 69.51A.025 (Construction of chapter—Compliance with RCW
 4  69.51A.040) and 2011 c 181 s 413;

 5    (3) RCW 69.51A.047 (Failure to register or present valid
 6  documentation—Affirmative defense) and 2011 c 181 s 406;

 7    (4) RCW 69.51A.070 (Addition of medical conditions) and 2007 c
 8  371 s 7 & 1999 c 2 s 9;

 9    (5) RCW 69.51A.090 (Applicability of valid documentation
10  definition) and 2010 c 284 s 5;

11    (6) RCW 69.51A.140 (Counties, cities, towns—Authority to adopt
12  and enforce requirements) and 2011 c 181 s 1102; and

13    (7) RCW 69.51A.200 (Evaluation) and 2011 c 181 s 1001.


14    NEW SECTION.  **Sec. 49.**  RCW 69.51A.085 (Collective gardens) and
15  2015 c ... s 32 (section 32 of this act) and 2011 c 181 s 403 are
16  each repealed.


17    NEW SECTION.  **Sec. 50.**  Sections 12, 19, 20, 23 through 26, 31,
18  35, 40, and 49 of this act take effect July 1, 2016.


19    NEW SECTION.  **Sec. 51.**  Sections 21, 22, 32, and 33 of this act
20  are necessary for the immediate preservation of the public health, or
21  safety, or support of the state government and its existing public
22  institutions, and take effect immediately.


23    ***NEW SECTION.  Sec. 52.  This act takes effect on the dates***
24  ***provided in sections 50 and 51 of this act if House Bill No. 2136, or***
25  ***any subsequent version of House Bill No. 2136, is enacted into law by***
26  ***October 1, 2015.***

    *Sec. 52 was vetoed. See message at end of chapter.*


     Passed by the Senate April 14, 2015.
     Passed by the House April 10, 2015.
     Approved by the Governor April 24, 2015, with the exception of
certain items that were vetoed.
     Filed in Office of Secretary of State April 25, 2015.

     Note: Governor's explanation of partial veto is as follows:

     "I am returning herewith, without my approval as to Sections 36,
42, 43, 44, 45, 46, and 52, Second Substitute Senate Bill No. 5052
entitled:

"AN ACT Relating to establishing the cannabis patient protection act.

After tremendous deliberation, compromise and hard work from our outstanding bipartisan sponsors and co-sponsors, committee chairs and ranking members from both houses, we have a measure that will create a medical marijuana system that works for our state.

I am committed to ensuring a system that serves patients well and makes medicine available in a safe and accessible manner, just like we would do for any medicine. That's what this bill strives to provide. It will help families of patients in real need.

As significant an accomplishment as this bill is for our state — and for patients to be ensured of having a safe place to get medicine they need — I know some remain concerned. These perspectives are important and compelling. I recognize the solution is not perfect. However, I do think this is far better than today's wholly unregulated system.

We will have options for patients and a system of strong enforcement to ensure public safety, especially for children. It is a good thing that this bill allows immediate enforcement of dispensaries to ensure they are not selling marijuana to kids.

I want to be clear that I am committed to implementing this law effectively by ensuring cooperatives are safe for patients in need, not sources of illicit diversion in our communities. To this end, I have directed the Liquor Control Board to work with the Attorney General's Office and local law enforcement to consider all options to ensure patient and public safety.

I also want to reassure you that the Department of Health will create an authorization form that will continue to honor the doctor-patient relationship.

While this bill takes a tremendous step forward, a large volume remains of unfinished work on marijuana tax policy, enforcement, local revenue sharing and funding for public health prevention programs. I strongly support efforts to address these items — and call on legislators to finish the job and provide the tools necessary to ensure a well-regulated and functioning marijuana market in our state.

I am vetoing the following sections:

Section 36. This section prohibits employers of health care providers from limiting medical marijuana recommendations to patients. This is an employment law provision that may cause confusion and potential unintended consequences. This section was added without adequate input.

The sponsors of this legislation have also requested this provision be vetoed to allow time for further discussion to develop appropriate policy.

Sections 42 and 43. These sections remove from Schedule I of our state's Controlled Substances Act any medical marijuana product. This is a laudable idea and I appreciate the intent to reduce the stigma of medical marijuana by rescheduling it from a Schedule I — an illegal — controlled substance to something more appropriate. However, our state's rescheduling system has very limited effect, and rescheduling just medicinal marijuana — not the entire cannabis plant and derivatives — may cause serious problems such as having the

unintended effect of limiting the types of marijuana that are considered medicine. To that end, I have instructed the Department of Health to thoroughly consider this idea in consultation with medical professionals and stakeholders, and bring an appropriate resolution to me and the Legislature by next year. Furthermore, I will continue to advocate for the federal government to consider a national rescheduling solution, which may be most beneficial, considering the limited power that state rescheduling has in this respect.

Sections 44, 45 and 46. These sections create new felonies in our criminal code. Washington state does not need additional criminal penalties related to medical marijuana. Moreover, these sections were added as part of the same amendment that created sections 42 and 43 that would have rescheduled medical marijuana. Because I have vetoed sections 42 and 43, sections 44, 45, and 46 are also unnecessary.

Section 52. This section makes Senate Bill 5052 contingent on the enactment of some version of House Bill 2136 by October 1, 2015. This contingent effective date causes confusion and potentially conflicts with other effective dates in Senate Bill 5052. In addition, if the Legislature is unable to pass a version of House Bill 2136, the Code Reviser's Office has advised me that this provision acts as a null and void clause, in which case we risk jeopardizing the integrity of the system created in this bill. I strongly agree with the need for additional policy and administrative changes to ensure a well-regulated and functioning marijuana market. However, this bill should not be made contingent on those changes.

For these reasons I have vetoed Sections 36, 42, 43, 44, 45, 46, and 52 of Second Substitute Senate Bill No. 5052.

With the exception of Sections 36, 42, 43, 44, 45, 46, and 52, Second Substitute Senate Bill No. 5052 is approved."