# EXHIBIT I

CERTIFICATION OF ENROLLMENT

**ENGROSSED SUBSTITUTE SENATE BILL 5131**

Chapter 317, Laws of 2017

65th Legislature
2017 Regular Session

MARIJUANA--VARIOUS CHANGES

EFFECTIVE DATE: 7/23/2017

Passed by the Senate April 20, 2017
  Yeas 44  Nays 5

_____
CYRUS HABIB
**President of the Senate**

Passed by the House April 20, 2017
  Yeas 63  Nays 33

_____
FRANK CHOPP
**Speaker of the House of Representatives**
Approved May 16, 2017 11:14 AM

_____
JAY INSLEE
**Governor of the State of Washington**

CERTIFICATE

I, Hunter G. Goodman, Secretary of the Senate of the State of Washington, do hereby certify that the attached is **ENGROSSED SUBSTITUTE SENATE BILL 5131** as passed by Senate and the House of Representatives on the dates hereon set forth.

_____
HUNTER G. GOODMAN
**Secretary**

FILED

May 16, 2017

**Secretary of State**
**State of Washington**

_____

### ENGROSSED SUBSTITUTE SENATE BILL 5131

_____

AS AMENDED BY THE CONFERENCE COMMITTEE

Passed Legislature - 2017 Regular Session

**State of Washington**          **65th Legislature**          **2017 Regular Session**

**By** Senate Commerce, Labor & Sports (originally sponsored by Senators Rivers and Conway; by request of Liquor and Cannabis Board)

READ FIRST TIME 02/06/17.

1    AN ACT Relating to marijuana with respect to privileges for
2  research  licenses,  local  authority  notifications,  the  retail
3  licensing  merit-based  application  process,  certain  transfers  of
4  plants and seeds, licensing agreements and contracts, advertising,
5  and  jurisdictional  requirements;  amending  RCW  69.50.325,  69.50.331,
6  69.50.372,  66.08.100,  69.50.366,  69.50.382,  69.51A.250,  69.50.357,
7  69.50.369, and 69.50.4013; reenacting and amending RCW 69.50.101 and
8  42.56.270; adding new sections to chapter 15.120 RCW; adding a new
9  section to chapter 69.51A RCW; adding a new section to chapter 69.50
10  RCW; adding a new chapter to Title 15 RCW; creating new sections; and
11  prescribing penalties.

12  BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF WASHINGTON:

13    **Sec. 1.**  RCW 69.50.325 and 2016 c 170 s 1 are each amended to
14  read as follows:
15    (1) There shall be a marijuana producer's license <u>regulated by</u>
16  <u>the state liquor and cannabis board and subject to annual renewal.</u>
17  <u>The licensee is authorized</u> to produce<u>: (a) M</u>arijuana for sale at
18  wholesale to marijuana processors and other marijuana producers ((~~and~~
19  ~~to produce marijuana~~))<u>; (b) immature</u> plants <u>or clones and seeds</u> for
20  sale to cooperatives as described under RCW 69.51A.250((~~, regulated~~
21  ~~by the state liquor and cannabis board and subject to annual~~

Ex. I, Page 2 of 39

1  ~~renewal~~))<u>; and (c) immature plants or clones and seeds for sale to</u>
2  <u>qualifying patients and designated providers as provided under</u>
3  <u>section 11 of this act</u>. The production, possession, delivery,
4  distribution, and sale of marijuana in accordance with the provisions
5  of this chapter and the rules adopted to implement and enforce it, by
6  a validly licensed marijuana producer, shall not be a criminal or
7  civil offense under Washington state law. Every marijuana producer's
8  license shall be issued in the name of the applicant, shall specify
9  the location at which the marijuana producer intends to operate,
10 which must be within the state of Washington, and the holder thereof
11 shall not allow any other person to use the license. The application
12 fee for a marijuana producer's license shall be two hundred fifty
13 dollars. The annual fee for issuance and renewal of a marijuana
14 producer's license shall be one thousand dollars. A separate license
15 shall be required for each location at which a marijuana producer
16 intends to produce marijuana.
17    (2) There shall be a marijuana processor's license to process,
18 package, and label marijuana concentrates, useable marijuana, and
19 marijuana-infused products for sale at wholesale to marijuana
20 processors and marijuana retailers, regulated by the state liquor and
21 cannabis board and subject to annual renewal. The processing,
22 packaging, possession, delivery, distribution, and sale of marijuana,
23 useable marijuana, marijuana-infused products, and marijuana
24 concentrates in accordance with the provisions of this chapter and
25 chapter 69.51A RCW and the rules adopted to implement and enforce
26 these chapters, by a validly licensed marijuana processor, shall not
27 be a criminal or civil offense under Washington state law. Every
28 marijuana processor's license shall be issued in the name of the
29 applicant, shall specify the location at which the licensee intends
30 to operate, which must be within the state of Washington, and the
31 holder thereof shall not allow any other person to use the license.
32 The application fee for a marijuana processor's license shall be two
33 hundred fifty dollars. The annual fee for issuance and renewal of a
34 marijuana processor's license shall be one thousand dollars. A
35 separate license shall be required for each location at which a
36 marijuana processor intends to process marijuana.
37    (3)<u>(a)</u> There shall be a marijuana retailer's license to sell
38 marijuana concentrates, useable marijuana, and marijuana-infused
39 products at retail in retail outlets, regulated by the state liquor
40 and cannabis board and subject to annual renewal. The possession,

1  delivery, distribution, and sale of marijuana concentrates, useable
2  marijuana, and marijuana-infused products in accordance with the
3  provisions of this chapter and the rules adopted to implement and
4  enforce it, by a validly licensed marijuana retailer, shall not be a
5  criminal or civil offense under Washington state law. Every marijuana
6  retailer's license shall be issued in the name of the applicant,
7  shall specify the location of the retail outlet the licensee intends
8  to operate, which must be within the state of Washington, and the
9  holder thereof shall not allow any other person to use the license.
10 The application fee for a marijuana retailer's license shall be two
11 hundred fifty dollars. The annual fee for issuance and renewal of a
12 marijuana retailer's license shall be one thousand dollars. A
13 separate license shall be required for each location at which a
14 marijuana retailer intends to sell marijuana concentrates, useable
15 marijuana, and marijuana-infused products.
16     (b) An individual retail licensee and all other persons or
17 entities with a financial or other ownership interest in the business
18 operating under the license are limited, in the aggregate, to holding
19 a collective total of not more than five retail marijuana licenses.
20     (c)(i) A marijuana retailer's license is subject to forfeiture in
21 accordance with rules adopted by the state liquor and cannabis board
22 pursuant to this section.
23     (ii) The state liquor and cannabis board shall adopt rules to
24 establish a license forfeiture process for a licensed marijuana
25 retailer that is not fully operational and open to the public within
26 a specified period from the date of license issuance, as established
27 by the state liquor and cannabis board, subject to the following
28 restrictions:
29     (A) No marijuana retailer's license may be subject to forfeiture
30 within the first nine months of license issuance; and
31     (B) The state liquor and cannabis board must require license
32 forfeiture on or before twenty-four calendar months of license
33 issuance if a marijuana retailer is not fully operational and open to
34 the public, unless the board determines that circumstances out of the
35 licensee's control are preventing the licensee from becoming fully
36 operational and that, in the board's discretion, the circumstances
37 warrant extending the forfeiture period beyond twenty-four calendar
38 months.
39     (iii) The state liquor and cannabis board has discretion in
40 adopting rules under this subsection (3)(c).

1    (iv) This subsection (3)(c) applies to marijuana retailer's
2    licenses issued before and after the effective date of this section.
3    However, no license of a marijuana retailer that otherwise meets the
4    conditions for license forfeiture established pursuant to this
5    subsection (3)(c) may be subject to forfeiture within the first nine
6    calendar months of the effective date of this section.
7       (v) The state liquor and cannabis board may not require license
8    forfeiture if the licensee has been incapable of opening a fully
9    operational retail marijuana business due to actions by the city,
10   town, or county with jurisdiction over the licensee that include any
11   of the following:
12      (A) The adoption of a ban or moratorium that prohibits the
13   opening of a retail marijuana business; or
14      (B) The adoption of an ordinance or regulation related to zoning,
15   business licensing, land use, or other regulatory measure that has
16   the effect of preventing a licensee from receiving an occupancy
17   permit from the jurisdiction or which otherwise prevents a licensed
18   marijuana retailer from becoming operational.

19      **Sec. 2.**   RCW 69.50.331 and 2015 2nd sp.s. c 4 s 301 are each
20   amended to read as follows:
21      (1) For the purpose of considering any application for a license
22   to produce, process, research, transport, or deliver marijuana,
23   useable marijuana, marijuana concentrates, or marijuana-infused
24   products subject to the regulations established under RCW 69.50.385,
25   or sell marijuana, or for the renewal of a license to produce,
26   process, research, transport, or deliver marijuana, useable
27   marijuana, marijuana concentrates, or marijuana-infused products
28   subject to the regulations established under RCW 69.50.385, or sell
29   marijuana, the state liquor and cannabis board must conduct a
30   comprehensive, fair, and impartial evaluation of the applications
31   timely received.
32      (a) ((The state liquor and cannabis board must develop a
33   competitive, merit-based application process that includes, at a
34   minimum, the opportunity for an applicant to demonstrate experience
35   and qualifications in the marijuana industry. The state liquor and
36   cannabis board must give preference between competing applications in
37   the licensing process to applicants that have the following
38   experience and qualifications, in the following order of priority:
39      (i) First priority is given to applicants who:

1   ~~(A) Applied to the state liquor and cannabis board for a~~
2   ~~marijuana retailer license prior to July 1, 2014;~~
3   ~~(B) Operated or were employed by a collective garden before~~
4   ~~January 1, 2013;~~
5   ~~(C) Have maintained a state business license and a municipal~~
6   ~~business license, as applicable in the relevant jurisdiction; and~~
7   ~~(D) Have had a history of paying all applicable state taxes and~~
8   ~~fees;~~
9   ~~(ii) Second priority must be given to applicants who:~~
10  ~~(A) Operated or were employed by a collective garden before~~
11  ~~January 1, 2013;~~
12  ~~(B) Have maintained a state business license and a municipal~~
13  ~~business license, as applicable in the relevant jurisdiction; and~~
14  ~~(C) Have had a history of paying all applicable state taxes and~~
15  ~~fees; and~~
16  ~~(iii) Third priority must be given to all other applicants who do~~
17  ~~not have the experience and qualifications identified in (a)(i) and~~
18  ~~(ii) of this subsection.~~
19  ~~(b)~~)) The state liquor and cannabis board may cause an inspection
20  of the premises to be made, and may inquire into all matters in
21  connection with the construction and operation of the premises. For
22  the purpose of reviewing any application for a license and for
23  considering the denial, suspension, revocation, or renewal or denial
24  thereof, of any license, the state liquor and cannabis board may
25  consider any prior criminal conduct of the applicant including an
26  administrative violation history record with the state liquor and
27  cannabis board and a criminal history record information check. The
28  state liquor and cannabis board may submit the criminal history
29  record information check to the Washington state patrol and to the
30  identification division of the federal bureau of investigation in
31  order that these agencies may search their records for prior arrests
32  and convictions of the individual or individuals who filled out the
33  forms. The state liquor and cannabis board must require
34  fingerprinting of any applicant whose criminal history record
35  information check is submitted to the federal bureau of
36  investigation. The provisions of RCW 9.95.240 and of chapter 9.96A
37  RCW do not apply to these cases. Subject to the provisions of this
38  section, the state liquor and cannabis board may, in its discretion,
39  grant or deny the renewal or license applied for. Denial may be based
40  on, without limitation, the existence of chronic illegal activity

1    documented in objections submitted pursuant to subsections (7)(c) and
2    (10) of this section. Authority to approve an uncontested or
3    unopposed license may be granted by the state liquor and cannabis
4    board to any staff member the board designates in writing. Conditions
5    for granting this authority must be adopted by rule.

6        (((e))) (b) No license of any kind may be issued to:

7        (i) A person under the age of twenty-one years;

8        (ii) A person doing business as a sole proprietor who has not
9    lawfully resided in the state for at least six months prior to
10   applying to receive a license;

11       (iii) A partnership, employee cooperative, association, nonprofit
12   corporation, or corporation unless formed under the laws of this
13   state, and unless all of the members thereof are qualified to obtain
14   a license as provided in this section; or

15       (iv) A person whose place of business is conducted by a manager
16   or agent, unless the manager or agent possesses the same
17   qualifications required of the licensee.

18       (2)(a) The state liquor and cannabis board may, in its
19   discretion, subject to the provisions of RCW 69.50.334, suspend or
20   cancel any license; and all protections of the licensee from criminal
21   or civil sanctions under state law for producing, processing,
22   researching, or selling marijuana, marijuana concentrates, useable
23   marijuana, or marijuana-infused products thereunder must be suspended
24   or terminated, as the case may be.

25       (b) The state liquor and cannabis board must immediately suspend
26   the license of a person who has been certified pursuant to RCW
27   74.20A.320 by the department of social and health services as a
28   person who is not in compliance with a support order. If the person
29   has continued to meet all other requirements for reinstatement during
30   the suspension, reissuance of the license is automatic upon the state
31   liquor and cannabis board's receipt of a release issued by the
32   department of social and health services stating that the licensee is
33   in compliance with the order.

34       (c) The state liquor and cannabis board may request the
35   appointment of administrative law judges under chapter 34.12 RCW who
36   shall have power to administer oaths, issue subpoenas for the
37   attendance of witnesses and the production of papers, books,
38   accounts, documents, and testimony, examine witnesses, and to receive
39   testimony in any inquiry, investigation, hearing, or proceeding in

1  any part of the state, under rules and regulations the state liquor
2  and cannabis board may adopt.

3       (d) Witnesses must be allowed fees and mileage each way to and
4  from any inquiry, investigation, hearing, or proceeding at the rate
5  authorized by RCW 34.05.446. Fees need not be paid in advance of
6  appearance of witnesses to testify or to produce books, records, or
7  other legal evidence.

8       (e) In case of disobedience of any person to comply with the
9  order of the state liquor and cannabis board or a subpoena issued by
10 the state liquor and cannabis board, or any of its members, or
11 administrative law judges, or on the refusal of a witness to testify
12 to any matter regarding which he or she may be lawfully interrogated,
13 the judge of the superior court of the county in which the person
14 resides, on application of any member of the board or administrative
15 law judge, compels obedience by contempt proceedings, as in the case
16 of disobedience of the requirements of a subpoena issued from said
17 court or a refusal to testify therein.

18      (3) Upon receipt of notice of the suspension or cancellation of a
19 license, the licensee must forthwith deliver up the license to the
20 state liquor and cannabis board. Where the license has been suspended
21 only, the state liquor and cannabis board must return the license to
22 the licensee at the expiration or termination of the period of
23 suspension. The state liquor and cannabis board must notify all other
24 licensees in the county where the subject licensee has its premises
25 of the suspension or cancellation of the license; and no other
26 licensee or employee of another licensee may allow or cause any
27 marijuana, marijuana concentrates, useable marijuana, or marijuana-
28 infused products to be delivered to or for any person at the premises
29 of the subject licensee.

30      (4) Every license issued under this chapter is subject to all
31 conditions and restrictions imposed by this chapter or by rules
32 adopted by the state liquor and cannabis board to implement and
33 enforce this chapter. All conditions and restrictions imposed by the
34 state liquor and cannabis board in the issuance of an individual
35 license must be listed on the face of the individual license along
36 with the trade name, address, and expiration date.

37      (5) Every licensee must post and keep posted its license, or
38 licenses, in a conspicuous place on the premises.

39      (6) No licensee may employ any person under the age of twenty-one
40 years.

1    (7)(a) Before the state liquor and cannabis board issues a new or
2  renewed license to an applicant it must give notice of the
3  application to the chief executive officer of the incorporated city
4  or town, if the application is for a license within an incorporated
5  city or town, or to the county legislative authority, if the
6  application is for a license outside the boundaries of incorporated
7  cities or towns, or to the tribal government if the application is
8  for a license within Indian country, or to the port authority if the
9  application for a license is located on property owned by a port
10  authority.

11    (b) The incorporated city or town through the official or
12  employee selected by it, ((or)) the county legislative authority or
13  the official or employee selected by it, the tribal government, or
14  port authority has the right to file with the state liquor and
15  cannabis board within twenty days after the date of transmittal of
16  the notice for applications, or at least thirty days prior to the
17  expiration date for renewals, written objections against the
18  applicant or against the premises for which the new or renewed
19  license is asked. The state liquor and cannabis board may extend the
20  time period for submitting written objections upon request from the
21  authority notified by the state liquor and cannabis board.

22    (c) The written objections must include a statement of all facts
23  upon which the objections are based, and in case written objections
24  are filed, the city or town or county legislative authority may
25  request, and the state liquor and cannabis board may in its
26  discretion hold, a hearing subject to the applicable provisions of
27  Title 34 RCW. If the state liquor and cannabis board makes an initial
28  decision to deny a license or renewal based on the written objections
29  of an incorporated city or town or county legislative authority, the
30  applicant may request a hearing subject to the applicable provisions
31  of Title 34 RCW. If a hearing is held at the request of the
32  applicant, state liquor and cannabis board representatives must
33  present and defend the state liquor and cannabis board's initial
34  decision to deny a license or renewal.

35    (d) Upon the granting of a license under this title the state
36  liquor and cannabis board must send written notification to the chief
37  executive officer of the incorporated city or town in which the
38  license is granted, or to the county legislative authority if the
39  license is granted outside the boundaries of incorporated cities or
40  towns.

1  (8)(a) Except as provided in (b) through (d) of this subsection,
2  the state liquor and cannabis board may not issue a license for any
3  premises within one thousand feet of the perimeter of the grounds of
4  any elementary or secondary school, playground, recreation center or
5  facility, child care center, public park, public transit center, or
6  library, or any game arcade admission to which is not restricted to
7  persons aged twenty-one years or older.

8  (b) A city, county, or town may permit the licensing of premises
9  within one thousand feet but not less than one hundred feet of the
10  facilities described in (a) of this subsection, except elementary
11  schools, secondary schools, and playgrounds, by enacting an ordinance
12  authorizing such distance reduction, provided that such distance
13  reduction will not negatively impact the jurisdiction's civil
14  regulatory enforcement, criminal law enforcement interests, public
15  safety, or public health.

16  (c) A city, county, or town may permit the licensing of research
17  premises allowed under RCW 69.50.372 within one thousand feet but not
18  less than one hundred feet of the facilities described in (a) of this
19  subsection by enacting an ordinance authorizing such distance
20  reduction, provided that the ordinance will not negatively impact the
21  jurisdiction's civil regulatory enforcement, criminal law
22  enforcement, public safety, or public health.

23  (d) The state liquor and cannabis board may license premises
24  located in compliance with the distance requirements set in an
25  ordinance adopted under (b) or (c) of this subsection. Before issuing
26  or renewing a research license for premises within one thousand feet
27  but not less than one hundred feet of an elementary school, secondary
28  school, or playground in compliance with an ordinance passed pursuant
29  to (c) of this subsection, the board must ensure that the facility:

30  (i) Meets a security standard exceeding that which applies to
31  marijuana producer, processor, or retailer licensees;

32  (ii) Is inaccessible to the public and no part of the operation
33  of the facility is in view of the general public; and

34  (iii) Bears no advertising or signage indicating that it is a
35  marijuana research facility.

36  (e) The state liquor and cannabis board may not issue a license
37  for any premises within Indian country, as defined in 18 U.S.C. Sec.
38  1151, including any fee patent lands within the exterior boundaries
39  of a reservation, without the consent of the federally recognized
40  tribe associated with the reservation or Indian country.

1    (9) ((~~Subject to section 1601 of this act,~~))A city, town, or
2  county may adopt an ordinance prohibiting a marijuana producer or
3  marijuana processor from operating or locating a business within
4  areas zoned primarily for residential use or rural use with a minimum
5  lot size of five acres or smaller.

6    (10) In determining whether to grant or deny a license or renewal
7  of any license, the state liquor and cannabis board must give
8  substantial weight to objections from an incorporated city or town or
9  county legislative authority based upon chronic illegal activity
10  associated with the applicant's operations of the premises proposed
11  to be licensed or the applicant's operation of any other licensed
12  premises, or the conduct of the applicant's patrons inside or outside
13  the licensed premises. "Chronic illegal activity" means (a) a
14  pervasive pattern of activity that threatens the public health,
15  safety, and welfare of the city, town, or county including, but not
16  limited to, open container violations, assaults, disturbances,
17  disorderly conduct, or other criminal law violations, or as
18  documented in crime statistics, police reports, emergency medical
19  response data, calls for service, field data, or similar records of a
20  law enforcement agency for the city, town, county, or any other
21  municipal corporation or any state agency; or (b) an unreasonably
22  high number of citations for violations of RCW 46.61.502 associated
23  with the applicant's or licensee's operation of any licensed premises
24  as indicated by the reported statements given to law enforcement upon
25  arrest.

26    **Sec. 3.**  RCW 69.50.372 and 2016 sp.s. c 9 s 1 are each amended to
27  read as follows:
28    (1) A marijuana research license is established that permits a
29  licensee to produce, process, and possess marijuana for the following
30  limited research purposes:
31    (a) To test chemical potency and composition levels;
32    (b) To conduct clinical investigations of marijuana-derived drug
33  products;
34    (c) To conduct research on the efficacy and safety of
35  administering marijuana as part of medical treatment; and
36    (d) To conduct genomic or agricultural research.
37    (2) As part of the application process for a marijuana research
38  license, an applicant must submit to the liquor and cannabis board's
39  designated scientific reviewer a description of the research that is

1  intended to be conducted. The liquor and cannabis board must select a
2  scientific reviewer to review an applicant's research project and
3  determine that it meets the requirements of subsection (1) of this
4  section, as well as assess the following:

5      (a) Project quality, study design, value, or impact;

6      (b) Whether applicants have the appropriate personnel, expertise,
7  facilities/infrastructure, funding, and human/animal/other federal
8  approvals in place to successfully conduct the project; and

9      (c) Whether the amount of marijuana to be grown by the applicant
10 is consistent with the project's scope and goals.

11     If the scientific reviewer determines that the research project
12 does not meet the requirements of subsection (1) of this section, the
13 application must be denied.

14     (3) A marijuana research licensee may only sell marijuana grown
15 or within its operation to other marijuana research licensees. The
16 liquor and cannabis board may revoke a marijuana research license for
17 violations of this subsection.

18     (4) A marijuana research licensee may contract with the
19 University of Washington or Washington State University to perform
20 research in conjunction with the university. All research projects,
21 not including those projects conducted pursuant to a contract entered
22 into under RCW 28B.20.502(3), must be approved by the scientific
23 reviewer and meet the requirements of subsection (1) of this section.

24     (5) In establishing a marijuana research license, the liquor and
25 cannabis board may adopt rules on the following:

26     (a) Application requirements;

27     (b) Marijuana research license renewal requirements, including
28 whether additional research projects may be added or considered;

29     (c) Conditions for license revocation;

30     (d) Security measures to ensure marijuana is not diverted to
31 purposes other than research;

32     (e) Amount of plants, useable marijuana, marijuana concentrates,
33 or marijuana-infused products a licensee may have on its premises;

34     (f) Licensee reporting requirements;

35     (g) Conditions under which marijuana grown by <u>licensed</u> marijuana
36 <u>producers and other product types from licensed marijuana</u> processors
37 may be donated to marijuana research licensees; and

38     (h) Additional requirements deemed necessary by the liquor and
39 cannabis board.

1    (6) The production, processing, possession, delivery, donation,
2  and sale of marijuana, including immature plants or clones and seeds,
3  in accordance with this section, RCW 69.50.366(3), and the rules
4  adopted to implement and enforce ((it))this section and RCW
5  69.50.366(3), by a validly licensed marijuana researcher, shall not
6  be a criminal or civil offense under Washington state law. Every
7  marijuana research license must be issued in the name of the
8  applicant, must specify the location at which the marijuana
9  researcher intends to operate, which must be within the state of
10 Washington, and the holder thereof may not allow any other person to
11 use the license.

12   (7) The application fee for a marijuana research license is two
13 hundred fifty dollars. The annual fee for issuance and renewal of a
14 marijuana research license is one thousand dollars. The applicant
15 must pay the cost of the review process directly to the scientific
16 reviewer as designated by the liquor and cannabis board.

17   (8) The scientific reviewer shall review any reports made by
18 marijuana research licensees under liquor and cannabis board rule and
19 provide the liquor and cannabis board with its determination on
20 whether the research project continues to meet research
21 qualifications under this section.

22   (9) For the purposes of this section, "scientific reviewer" means
23 an organization that convenes or contracts with persons who have the
24 training and experience in research practice and research methodology
25 to determine whether a project meets the criteria for a marijuana
26 research license under this section and to review any reports
27 submitted by marijuana research licensees under liquor and cannabis
28 board rule. "Scientific reviewers" include, but are not limited to,
29 educational institutions, research institutions, peer review bodies,
30 or such other organizations that are focused on science or research
31 in its day-to-day activities.

32   **Sec. 4.**  RCW 66.08.100 and 2012 c 117 s 269 are each amended to
33 read as follows:

34   No court of the state of Washington other than the superior court
35 of Thurston county shall have jurisdiction over any action or
36 proceeding against the board or any member thereof for anything done
37 or omitted to be done in or arising out of the performance of his or
38 her or their duties under this title. Neither the board nor any
39 member or members thereof shall be personally liable in any action at

1 law for damages sustained by any person because of any acts performed
2 or done or omitted to be done by the board or any employee of the
3 board in the performance of his or her duties and in the
4 administration of this title or chapter 69.50 or 69.51A RCW.

5    **Sec. 5.**   RCW 69.50.101 and 2015 2nd sp.s. c 4 s 901 are each
6 reenacted and amended to read as follows:
7    The definitions in this section apply throughout this chapter
8 unless the context clearly requires otherwise.
9    (a) "Administer" means to apply a controlled substance, whether
10 by injection, inhalation, ingestion, or any other means, directly to
11 the body of a patient or research subject by:
12    (1) a practitioner authorized to prescribe (or, by the
13 practitioner's authorized agent); or
14    (2) the patient or research subject at the direction and in the
15 presence of the practitioner.
16    (b) "Agent" means an authorized person who acts on behalf of or
17 at the direction of a manufacturer, distributor, or dispenser. It
18 does not include a common or contract carrier, public
19 warehouseperson, or employee of the carrier or warehouseperson.
20    (c) "CBD concentration" has the meaning provided in RCW
21 69.51A.010.
22    (d) "Commission" means the pharmacy quality assurance commission.
23    (e) "Controlled substance" means a drug, substance, or immediate
24 precursor included in Schedules I through V as set forth in federal
25 or state laws, or federal or commission rules.
26    (f)(1) "Controlled substance analog" means a substance the
27 chemical structure of which is substantially similar to the chemical
28 structure of a controlled substance in Schedule I or II and:
29    (i) that has a stimulant, depressant, or hallucinogenic effect on
30 the central nervous system substantially similar to the stimulant,
31 depressant, or hallucinogenic effect on the central nervous system of
32 a controlled substance included in Schedule I or II; or
33    (ii) with respect to a particular individual, that the individual
34 represents or intends to have a stimulant, depressant, or
35 hallucinogenic effect on the central nervous system substantially
36 similar to the stimulant, depressant, or hallucinogenic effect on the
37 central nervous system of a controlled substance included in Schedule
38 I or II.
39    (2) The term does not include:

1    (i) a controlled substance;

2    (ii) a substance for which there is an approved new drug
3    application;

4    (iii) a substance with respect to which an exemption is in effect
5    for investigational use by a particular person under Section 505 of
6    the federal Food, Drug and Cosmetic Act, 21 U.S.C. Sec. 355, to the
7    extent conduct with respect to the substance is pursuant to the
8    exemption; or

9    (iv) any substance to the extent not intended for human
10   consumption before an exemption takes effect with respect to the
11   substance.

12   (g) "Deliver" or "delivery((,))" means the actual or constructive
13   transfer from one person to another of a substance, whether or not
14   there is an agency relationship.

15   (h) "Department" means the department of health.

16   (i) "Designated provider" has the meaning provided in RCW
17   69.51A.010.

18   (j) "Dispense" means the interpretation of a prescription or
19   order for a controlled substance and, pursuant to that prescription
20   or order, the proper selection, measuring, compounding, labeling, or
21   packaging necessary to prepare that prescription or order for
22   delivery.

23   (k) "Dispenser" means a practitioner who dispenses.

24   (l) "Distribute" means to deliver other than by administering or
25   dispensing a controlled substance.

26   (m) "Distributor" means a person who distributes.

27   (n) "Drug" means (1) a controlled substance recognized as a drug
28   in the official United States pharmacopoeia/national formulary or the
29   official homeopathic pharmacopoeia of the United States, or any
30   supplement to them; (2) controlled substances intended for use in the
31   diagnosis, cure, mitigation, treatment, or prevention of disease in
32   individuals or animals; (3) controlled substances (other than food)
33   intended to affect the structure or any function of the body of
34   individuals or animals; and (4) controlled substances intended for
35   use as a component of any article specified in (1), (2), or (3) of
36   this subsection. The term does not include devices or their
37   components, parts, or accessories.

38   (o) "Drug enforcement administration" means the drug enforcement
39   administration in the United States Department of Justice, or its
40   successor agency.

1    (p) "Electronic communication of prescription information" means
2    the transmission of a prescription or refill authorization for a drug
3    of a practitioner using computer systems. The term does not include a
4    prescription   or   refill   authorization   verbally   transmitted   by
5    telephone nor a facsimile manually signed by the practitioner.

6    (q) <u>"Immature plant or clone" means a plant or clone that has no</u>
7    <u>flowers, is less than twelve inches in height, and is less than</u>
8    <u>twelve inches in diameter.</u>

9    <u>(r)</u> "Immediate precursor" means a substance:

10   (1) that the commission has found to be and by rule designates as
11   being the principal compound commonly used, or produced primarily for
12   use, in the manufacture of a controlled substance;

13   (2) that is an immediate chemical intermediary used or likely to
14   be used in the manufacture of a controlled substance; and

15   (3) the control of which is necessary to prevent, curtail, or
16   limit the manufacture of the controlled substance.

17   ((~~(r)~~))<u>(s)</u> "Isomer" means an optical isomer, but in subsection
18   ((~~(dd)~~))<u>(ee)</u>(5) of this section, RCW 69.50.204(a) (12) and (34), and
19   69.50.206(b)(4), the term includes any geometrical isomer; in RCW
20   69.50.204(a) (8) and (42), and 69.50.210(c) the term includes any
21   positional isomer; and in RCW 69.50.204(a)(35), 69.50.204(c), and
22   69.50.208(a) the term includes any positional or geometric isomer.

23   ((~~(s)~~))<u>(t)</u>  "Lot" means a definite quantity of marijuana,
24   marijuana  concentrates,  useable  marijuana,  or  marijuana-infused
25   product identified by a lot number, every portion or package of which
26   is uniform within recognized tolerances for the factors that appear
27   in the labeling.

28   ((~~(t)~~))<u>(u)</u> "Lot number" must identify the licensee by business or
29   trade name and Washington state unified business identifier number,
30   and the date of harvest or processing for each lot of marijuana,
31   marijuana  concentrates,  useable  marijuana,  or  marijuana-infused
32   product.

33   ((~~(u)~~))<u>(v)</u>  "Manufacture"  means  the  production,  preparation,
34   propagation, compounding, conversion, or processing of a controlled
35   substance,  either  directly  or  indirectly  or  by  extraction  from
36   substances of natural origin, or independently by means of chemical
37   synthesis, or by a combination of extraction and chemical synthesis,
38   and  includes  any  packaging  or  repackaging  of  the  substance  or
39   labeling or relabeling of its container. The term does not include

1  the preparation, compounding, packaging, repackaging, labeling, or
2  relabeling of a controlled substance:

3  (1) by a practitioner as an incident to the practitioner's
4  administering or dispensing of a controlled substance in the course
5  of the practitioner's professional practice; or

6  (2) by a practitioner, or by the practitioner's authorized agent
7  under the practitioner's supervision, for the purpose of, or as an
8  incident to, research, teaching, or chemical analysis and not for
9  sale.

10  (((v)))(w) "Marijuana" or "marihuana" means all parts of the
11  plant *Cannabis*, whether growing or not, with a THC concentration
12  greater than 0.3 percent on a dry weight basis; the seeds thereof;
13  the resin extracted from any part of the plant; and every compound,
14  manufacture, salt, derivative, mixture, or preparation of the plant,
15  its seeds or resin. The term does not include the mature stalks of
16  the plant, fiber produced from the stalks, oil or cake made from the
17  seeds of the plant, any other compound, manufacture, salt,
18  derivative, mixture, or preparation of the mature stalks (except the
19  resin extracted therefrom), fiber, oil, or cake, or the sterilized
20  seed of the plant which is incapable of germination.

21  (((w)))(x) "Marijuana concentrates" means products consisting
22  wholly or in part of the resin extracted from any part of the plant
23  *Cannabis* and having a THC concentration greater than ten percent.

24  (((x)))(y) "Marijuana processor" means a person licensed by the
25  state liquor and cannabis board to process marijuana into marijuana
26  concentrates, useable marijuana, and marijuana-infused products,
27  package and label marijuana concentrates, useable marijuana, and
28  marijuana-infused products for sale in retail outlets, and sell
29  marijuana concentrates, useable marijuana, and marijuana-infused
30  products at wholesale to marijuana retailers.

31  (((y)))(z) "Marijuana producer" means a person licensed by the
32  state liquor and cannabis board to produce and sell marijuana at
33  wholesale to marijuana processors and other marijuana producers.

34  (((z)))(aa) "Marijuana products" means useable marijuana,
35  marijuana concentrates, and marijuana-infused products as defined in
36  this section.

37  (((aa)))(bb) "Marijuana researcher" means a person licensed by
38  the state liquor and cannabis board to produce, process, and possess
39  marijuana for the purposes of conducting research on marijuana and
40  marijuana-derived drug products.

1    (((bb))) (cc) "Marijuana retailer" means a person licensed by the
2    state  liquor  and  cannabis  board  to  sell  marijuana  concentrates,
3    useable marijuana, and marijuana-infused products in a retail outlet.

4    (((cc))) (dd) "Marijuana-infused  products"  means  products  that
5    contain marijuana or marijuana extracts, are intended for human use,
6    are  derived  from  marijuana  as  defined  in  subsection  (((v))) (w)  of
7    this  section,  and  have  a  THC  concentration  no  greater  than  ten
8    percent.  The  term  "marijuana-infused  products"  does  not  include
9    either useable marijuana or marijuana concentrates.

10   (((dd))) (ee) "Narcotic drug" means any of the following, whether
11   produced  directly  or  indirectly  by  extraction  from  substances  of
12   vegetable  origin,  or  independently  by  means  of  chemical  synthesis,  or
13   by a combination of extraction and chemical synthesis:

14   (1) Opium, opium derivative, and any derivative of opium or opium
15   derivative,  including  their  salts,  isomers,  and  salts  of  isomers,
16   whenever  the  existence  of  the  salts,  isomers,  and  salts  of  isomers  is
17   possible  within  the  specific  chemical  designation.  The  term  does  not
18   include the isoquinoline alkaloids of opium.

19   (2)  Synthetic  opiate  and  any  derivative  of  synthetic  opiate,
20   including  their  isomers,  esters,  ethers,  salts,  and  salts  of  isomers,
21   esters,  and  ethers,  whenever  the  existence  of  the  isomers,  esters,
22   ethers,  and  salts  is  possible  within  the  specific  chemical
23   designation.

24   (3) Poppy straw and concentrate of poppy straw.

25   (4) Coca  leaves,  except  coca  leaves  and  extracts  of  coca  leaves
26   from  which  cocaine,  ecgonine,  and  derivatives  or  ecgonine  or  their
27   salts have been removed.

28   (5) Cocaine, or any salt, isomer, or salt of isomer thereof.

29   (6) Cocaine base.

30   (7) Ecgonine, or any derivative, salt, isomer, or salt of isomer
31   thereof.

32   (8) Any compound, mixture, or preparation containing any quantity
33   of any substance referred to in subparagraphs (1) through (7).

34   (((ee))) (ff) "Opiate"  means  any  substance  having  an  addiction-
35   forming  or  addiction-sustaining  liability  similar  to  morphine  or
36   being  capable  of  conversion  into  a  drug  having  addiction-forming  or
37   addiction-sustaining  liability.  The  term  includes  opium,  substances
38   derived  from  opium  (opium  derivatives),  and  synthetic  opiates.  The
39   term  does  not  include,  unless  specifically  designated  as  controlled
40   under  RCW  69.50.201,  the  dextrorotatory  isomer  of  3-methoxy-n-

1  methylmorphinan and its salts (dextromethorphan). The term includes
2  the racemic and levorotatory forms of dextromethorphan.

3  (((~~ff~~))) __(gg)__ "Opium poppy" means the plant of the species Papaver
4  somniferum L., except its seeds.

5  (((~~gg~~))) __(hh)__ "Person" means individual, corporation, business
6  trust, estate, trust, partnership, association, joint venture,
7  government, governmental subdivision or agency, or any other legal or
8  commercial entity.

9  (((~~hh~~))) __(ii)__ "Plant" has the meaning provided in RCW 69.51A.010.

10  (((~~ii~~))) __(jj)__ "Poppy straw" means all parts, except the seeds, of
11  the opium poppy, after mowing.

12  (((~~jj~~))) __(kk)__ "Practitioner" means:

13  (1) A physician under chapter 18.71 RCW; a physician assistant
14  under chapter 18.71A RCW; an osteopathic physician and surgeon under
15  chapter 18.57 RCW; an osteopathic physician assistant under chapter
16  18.57A RCW who is licensed under RCW 18.57A.020 subject to any
17  limitations in RCW 18.57A.040; an optometrist licensed under chapter
18  18.53 RCW who is certified by the optometry board under RCW 18.53.010
19  subject to any limitations in RCW 18.53.010; a dentist under chapter
20  18.32 RCW; a podiatric physician and surgeon under chapter 18.22 RCW;
21  a veterinarian under chapter 18.92 RCW; a registered nurse, advanced
22  registered nurse practitioner, or licensed practical nurse under
23  chapter 18.79 RCW; a naturopathic physician under chapter 18.36A RCW
24  who is licensed under RCW 18.36A.030 subject to any limitations in
25  RCW 18.36A.040; a pharmacist under chapter 18.64 RCW or a scientific
26  investigator under this chapter, licensed, registered or otherwise
27  permitted insofar as is consistent with those licensing laws to
28  distribute, dispense, conduct research with respect to or administer
29  a controlled substance in the course of their professional practice
30  or research in this state.

31  (2) A pharmacy, hospital or other institution licensed,
32  registered, or otherwise permitted to distribute, dispense, conduct
33  research with respect to or to administer a controlled substance in
34  the course of professional practice or research in this state.

35  (3) A physician licensed to practice medicine and surgery, a
36  physician licensed to practice osteopathic medicine and surgery, a
37  dentist licensed to practice dentistry, a podiatric physician and
38  surgeon licensed to practice podiatric medicine and surgery, a
39  licensed physician assistant or a licensed osteopathic physician
40  assistant specifically approved to prescribe controlled substances by

1   his or her state's medical quality assurance commission or equivalent
2   and his or her supervising physician, an advanced registered nurse
3   practitioner licensed to prescribe controlled substances, or a
4   veterinarian licensed to practice veterinary medicine in any state of
5   the United States.

6       (((kk)))(ll) "Prescription" means an order for controlled
7   substances issued by a practitioner duly authorized by law or rule in
8   the state of Washington to prescribe controlled substances within the
9   scope of his or her professional practice for a legitimate medical
10  purpose.

11      (((ll)))(mm) "Production" includes the manufacturing, planting,
12  cultivating, growing, or harvesting of a controlled substance.

13      (((mm)))(nn) "Qualifying patient" has the meaning provided in RCW
14  69.51A.010.

15      (((nn)))(oo) "Recognition card" has the meaning provided in RCW
16  69.51A.010.

17      (((oo)))(pp) "Retail outlet" means a location licensed by the
18  state liquor and cannabis board for the retail sale of marijuana
19  concentrates, useable marijuana, and marijuana-infused products.

20      (((pp)))(qq) "Secretary" means the secretary of health or the
21  secretary's designee.

22      (((qq)))(rr) "State," unless the context otherwise requires,
23  means a state of the United States, the District of Columbia, the
24  Commonwealth of Puerto Rico, or a territory or insular possession
25  subject to the jurisdiction of the United States.

26      (((rr)))(ss) "THC concentration" means percent of delta-9
27  tetrahydrocannabinol content per dry weight of any part of the plant
28  *Cannabis*, or per volume or weight of marijuana product, or the
29  combined percent of delta-9 tetrahydrocannabinol and
30  tetrahydrocannabinolic acid in any part of the plant *Cannabis*
31  regardless of moisture content.

32      (((ss)))(tt) "Ultimate user" means an individual who lawfully
33  possesses a controlled substance for the individual's own use or for
34  the use of a member of the individual's household or for
35  administering to an animal owned by the individual or by a member of
36  the individual's household.

37      (((tt)))(uu) "Useable marijuana" means dried marijuana flowers.
38  The term "useable marijuana" does not include either marijuana-
39  infused products or marijuana concentrates.

1    **Sec. 6.**  RCW 69.50.366 and 2015 c 207 s 8 are each amended to
2    read as follows:
3        The  following  acts,  when  performed  by  a  validly  licensed
4    marijuana  producer  or  employee  of  a  validly  licensed  marijuana
5    producer  in  compliance  with  rules  adopted  by  the  state  liquor
6    ((control))and cannabis  board  to  implement  and  enforce  this  chapter
7    ((3, Laws of 2013)),  do  not  constitute  criminal  or  civil  offenses
8    under Washington state law:
9        (1)  Production  or  possession  of  quantities  of  marijuana  that  do
10   not  exceed  the  maximum  amounts  established  by  the  state  liquor
11   ((control))and cannabis  board  under  RCW  69.50.345(3);
12       (2)  Delivery,  distribution,  and  sale  of  marijuana  to  a  marijuana
13   processor  or  another  marijuana  producer  validly  licensed  under  this
14   chapter  ((3, Laws of 2013));  ((and))
15       (3)  Delivery,  distribution,  and  sale  of  immature  plants  or  clones
16   and  marijuana  seeds  to  a  licensed  marijuana  researcher,  and  to
17   receive  or  purchase  immature  plants  or  clones  and  seeds  from  a
18   licensed marijuana researcher; and
19       (4)  Delivery,  distribution,  and  sale  of  marijuana  or  useable
20   marijuana  to  a  federally  recognized  Indian  tribe  as  permitted  under
21   an  agreement  between  the  state  and  the  tribe  entered  into  under  RCW
22   43.06.490.

23       **Sec. 7.**  RCW 69.50.382 and 2015 2nd sp.s. c 4 s 501 are each
24   amended to read as follows:
25       (1)  A  licensed  marijuana  producer,  marijuana  processor,  marijuana
26   researcher,  or  marijuana  retailer,  or  their  employees,  in  accordance
27   with  the  requirements  of  this  chapter  and  the  administrative  rules
28   adopted  thereunder,  may  use  the  services  of  a  common  carrier  subject
29   to  regulation  under  chapters  81.28  and  81.29  RCW  and  licensed  in
30   compliance  with  the  regulations  established  under  RCW  69.50.385,  to
31   physically  transport  or  deliver, as authorized under this chapter,
32   marijuana,  useable  marijuana,  marijuana  concentrates,  immature plants
33   or clones, marijuana seeds,  and  marijuana-infused  products  between
34   licensed  marijuana  businesses  located  within  the  state.
35       (2)  An  employee  of  a  common  carrier  engaged  in  marijuana-related
36   transportation  or  delivery  services  authorized  under  subsection  (1)
37   of  this  section  is  prohibited  from  carrying  or  using  a  firearm  during
38   the  course  of  providing  such  services,  unless:

1  (a) Pursuant to RCW 69.50.385, the state liquor and cannabis
2  board explicitly authorizes the carrying or use of firearms by such
3  employee while engaged in the transportation or delivery services;

4  (b) The employee has an armed private security guard license
5  issued pursuant to RCW 18.170.040; and

6  (c) The employee is in full compliance with the regulations
7  established by the state liquor and cannabis board under RCW
8  69.50.385.

9  (3) A common carrier licensed under RCW 69.50.385 may, for the
10  purpose of transporting and delivering marijuana, useable marijuana,
11  marijuana concentrates, and marijuana-infused products, utilize
12  Washington state ferry routes for such transportation and delivery.

13  (4) The possession of marijuana, useable marijuana, marijuana
14  concentrates, and marijuana-infused products being physically
15  transported or delivered within the state, in amounts not exceeding
16  those that may be established under RCW 69.50.385(3), by a licensed
17  employee of a common carrier when performing the duties authorized
18  under, and in accordance with, this section and RCW 69.50.385, is not
19  a violation of this section, this chapter, or any other provision of
20  Washington state law.

21  **Sec. 8.**  RCW 69.51A.250 and 2016 c 170 s 2 are each amended to
22  read as follows:

23  (1) Qualifying patients or designated providers may form a
24  cooperative and share responsibility for acquiring and supplying the
25  resources needed to produce and process marijuana only for the
26  medical use of members of the cooperative. No more than four
27  qualifying patients or designated providers may become members of a
28  cooperative under this section and all members must hold valid
29  recognition cards. All members of the cooperative must be at least
30  twenty-one years old. The designated provider of a qualifying patient
31  who is under twenty-one years old may be a member of a cooperative on
32  the qualifying patient's behalf. All plants grown in the cooperative
33  must be ((purchased or cloned)) from an immature plant or clone
34  purchased from a licensed marijuana producer as defined in RCW
35  69.50.101. Cooperatives may also purchase marijuana seeds from a
36  licensed marijuana producer.

37  (2) Qualifying patients and designated providers who wish to form
38  a cooperative must register the location with the state liquor and
39  cannabis board and this is the only location where cooperative

1   members may grow or process marijuana. This registration must include
2   the names of all participating members and copies of each
3   participant's recognition card. Only qualifying patients or
4   designated providers registered with the state liquor and cannabis
5   board in association with the location may participate in growing or
6   receive useable marijuana or marijuana-infused products grown at that
7   location.

8       (3) No cooperative may be located in any of the following areas:

9       (a) Within one mile of a marijuana retailer;

10      (b) Within the smaller of either:

11      (i) One thousand feet of the perimeter of the grounds of any
12  elementary or secondary school, playground, recreation center or
13  facility, child care center, public park, public transit center,
14  library, or any game arcade that admission to which is not restricted
15  to persons aged twenty-one years or older; or

16      (ii) The area restricted by ordinance, if the cooperative is
17  located in a city, county, or town that has passed an ordinance
18  pursuant to RCW 69.50.331(8); or

19      (c) Where prohibited by a city, town, or county zoning provision.

20      (4) The state liquor and cannabis board must deny the
21  registration of any cooperative if the location does not comply with
22  the requirements set forth in subsection (3) of this section.

23      (5) If a qualifying patient or designated provider no longer
24  participates in growing at the location, he or she must notify the
25  state liquor and cannabis board within fifteen days of the date the
26  qualifying patient or designated provider ceases participation. The
27  state liquor and cannabis board must remove his or her name from
28  connection to the cooperative. Additional qualifying patients or
29  designated providers may not join the cooperative until sixty days
30  have passed since the date on which the last qualifying patient or
31  designated provider notifies the state liquor and cannabis board that
32  he or she no longer participates in that cooperative.

33      (6) Qualifying patients or designated providers who participate
34  in a cooperative under this section:

35      (a) May grow up to the total amount of plants for which each
36  participating member is authorized on their recognition cards, up to
37  a maximum of sixty plants. At the location, the qualifying patients
38  or designated providers may possess the amount of useable marijuana
39  that can be produced with the number of plants permitted under this
40  subsection, but no more than seventy-two ounces;

1    (b) May only participate in one cooperative;

2    (c) May only grow plants in the cooperative and if he or she
3    grows plants in the cooperative may not grow plants elsewhere;

4    (d) Must provide assistance in growing plants. A monetary
5    contribution or donation is not to be considered assistance under
6    this section. Participants must provide nonmonetary resources and
7    labor in order to participate; and

8    (e) May not sell, donate, or otherwise provide marijuana,
9    marijuana concentrates, useable marijuana, or marijuana-infused
10   products to a person who is not participating under this section.

11   (7) The location of the cooperative must be the domicile of one
12   of the participants. Only one cooperative may be located per property
13   tax parcel. A copy of each participant's recognition card must be
14   kept at the location at all times.

15   (8) The state liquor and cannabis board may adopt rules to
16   implement this section including:

17   (a) Any security requirements necessary to ensure the safety of
18   the cooperative and to reduce the risk of diversion from the
19   cooperative;

20   (b) A seed to sale traceability model that is similar to the seed
21   to sale traceability model used by licensees that will allow the
22   state liquor and cannabis board to track all marijuana grown in a
23   cooperative.

24   (9) The state liquor and cannabis board or law enforcement may
25   inspect a cooperative registered under this section to ensure members
26   are in compliance with this section. The state liquor and cannabis
27   board must adopt rules on reasonable inspection hours and reasons for
28   inspections.

29   NEW SECTION.  **Sec. 9.**  A new section is added to chapter 15.120
30   RCW to read as follows:

31   The department and the state liquor and cannabis board must
32   collaboratively study the feasibility and practicality of
33   implementing a legislatively authorized regulatory framework allowing
34   industrial hemp produced in accordance with the requirements of this
35   chapter to be sold or transferred to marijuana processors, licensed
36   under chapter 69.50 RCW, for processing into industrial hemp or
37   marijuana products to be sold at retail for human consumption.

1    NEW SECTION. **Sec. 10.**   A new section is added to chapter 15.120
2    RCW to read as follows:
3        The department is granted the rule-making authority necessary to
4    implement and enforce the provisions of this chapter. This includes
5    the authority to impose monetary penalties, license suspension or
6    forfeiture, or other sanctions for violations of statutory and
7    regulatory requirements. The rules adopted by the department must be
8    consistent with section 7606 of the federal agricultural act of 2014
9    (128 Stat. 649, 912; 7 U.S.C. Sec. 5940).

10       NEW SECTION. **Sec. 11.**   A new section is added to chapter 69.51A
11   RCW to read as follows:
12       Qualifying patients and designated providers, who hold a
13   recognition card and have been entered into the medical marijuana
14   authorization database, may purchase immature plants or clones from a
15   licensed marijuana producer as defined in RCW 69.50.101. Qualifying
16   patients and designated providers may also purchase marijuana seeds
17   from a licensed marijuana producer.

18       NEW SECTION. **Sec. 12.**   The legislature finds that protecting the
19   state's children, youth, and young adults under the legal age to
20   purchase and consume marijuana, by establishing limited restrictions
21   on the advertising of marijuana and marijuana products, is necessary
22   to assist the state's efforts to discourage and prevent underage
23   consumption and the potential risks associated with underage
24   consumption. The legislature finds that these restrictions assist the
25   state in maintaining a strong and effective regulatory and
26   enforcement system as specified by the federal government. The
27   legislature finds this act leaves ample opportunities for licensed
28   marijuana businesses to market their products to those who are of
29   legal age to purchase them, without infringing on the free speech
30   rights of business owners. Finally, the legislature finds that the
31   state has a substantial and compelling interest in enacting this act
32   aimed at protecting Washington's children, youth, and young adults.

33       **Sec. 13.**   RCW 69.50.357 and 2016 c 171 s 1 are each amended to
34   read as follows:
35       (1) Retail outlets may not sell products or services other than
36   marijuana concentrates, useable marijuana, marijuana-infused
37   products, or paraphernalia intended for the storage or use of

1    marijuana  concentrates,  useable  marijuana,  or  marijuana-infused
2    products.

3        (2)  Licensed  marijuana  retailers  may  not  employ  persons  under
4    twenty-one  years  of  age  or  allow  persons  under  twenty-one  years  of
5    age  to  enter  or  remain  on  the  premises  of  a  retail  outlet.  However,
6    qualifying  patients  between  eighteen  and  twenty-one  years  of  age  with
7    a  recognition  card  may  enter  and  remain  on  the  premises  of  a  retail
8    outlet  holding  a  medical  marijuana  endorsement  and  may  purchase
9    products  for  their  personal  medical  use.  Qualifying  patients  who  are
10   under  the  age  of  eighteen  with  a  recognition  card  and  who  accompany
11   their  designated  providers  may  enter  and  remain  on  the  premises  of  a
12   retail  outlet  holding  a  medical  marijuana  endorsement,  but  may  not
13   purchase  products  for  their  personal  medical  use.

14       (3)(a)  Licensed  marijuana  retailers  must  ensure  that  all
15   employees  are  trained  on  the  rules  adopted  to  implement  this  chapter,
16   identification  of  persons  under  the  age  of  twenty-one,  and  other
17   requirements  adopted  by  the  state  liquor  and  cannabis  board  to  ensure
18   that  persons  under  the  age  of  twenty-one  are  not  permitted  to  enter
19   or  remain  on  the  premises  of  a  retail  outlet.

20       (b)  Licensed  marijuana  retailers  with  a  medical  marijuana
21   endorsement  must  ensure  that  all  employees  are  trained  on  the
22   subjects  required  by  (a)  of  this  subsection  as  well  as  identification
23   of  authorizations  and  recognition  cards.  Employees  must  also  be
24   trained  to  permit  qualifying  patients  who  hold  recognition  cards  and
25   are  between  the  ages  of  eighteen  and  twenty-one  to  enter  the  premises
26   and  purchase  marijuana  for  their  personal  medical  use  and  to  permit
27   qualifying  patients  who  are  under  the  age  of  eighteen  with  a
28   recognition  card  to  enter  the  premises  if  accompanied  by  their
29   designated  providers.

30       (4)  ((~~Licensed  marijuana  retailers  may  not  display  any  signage~~
31   ~~outside  of  the  licensed  premises,  other  than  two  signs  identifying~~
32   ~~the  retail  outlet  by  the  licensee's  business  or  trade  name.  Each  sign~~
33   ~~must  be  no  larger  than  one  thousand  six  hundred  square  inches,  be~~
34   ~~permanently  affixed  to  a  building  or  other  structure,  and  be  posted~~
35   ~~not  less  than  one  thousand  feet  from  any  elementary  school,  secondary~~
36   ~~school,  or  playground.~~

37       ~~(5)~~))  Except  for  the  purposes  of  disposal  as  authorized  by  the
38   <u>state  liquor  and  cannabis</u>  board,  no  licensed  marijuana  retailer  or
39   employee  of  a  retail  outlet  may  open  or  consume,  or  allow  to  be

Ex. 1 Page 26 of 39

1   opened or consumed, any marijuana concentrates, useable marijuana, or
2   marijuana-infused product on the outlet premises.
3       (((6)))(5) The state liquor and cannabis board must fine a
4   licensee one thousand dollars for each violation of any subsection of
5   this section. Fines collected under this section must be deposited
6   into the dedicated marijuana account created under RCW 69.50.530.

7       **Sec. 14.**  RCW 69.50.369 and 2015 2nd sp.s. c 4 s 204 are each
8   amended to read as follows:
9       (1) No licensed marijuana producer, processor, researcher, or
10  retailer may place or maintain, or cause to be placed or maintained,
11  ((an))any sign or other advertisement ((of))for a
12  marijuana((,))business or marijuana product, including useable
13  marijuana, marijuana concentrates, or ((a)) marijuana-infused
14  product, in any form or through any medium whatsoever((:
15      (a)))within one thousand feet of the perimeter of a school
16  grounds, playground, recreation center or facility, child care
17  center, public park, or library, or any game arcade admission to
18  which is not restricted to persons aged twenty-one years or older((:
19      (b) On or in a public transit vehicle or public transit shelter;
20  or
21      (c) On or in a publicly owned or operated property)).
22      (2) Except for the use of billboards as authorized under this
23  section, licensed marijuana retailers may not display any signage
24  outside of the licensed premises, other than two signs identifying
25  the retail outlet by the licensee's business or trade name, stating
26  the location of the business, and identifying the nature of the
27  business. Each sign must be no larger than one thousand six hundred
28  square inches and be permanently affixed to a building or other
29  structure. The location and content of the retail marijuana signs
30  authorized under this subsection are subject to all other
31  requirements and restrictions established in this section for indoor
32  signs, outdoor signs, and other marijuana-related advertising
33  methods.
34      (3) A marijuana licensee may not utilize transit advertisements
35  for the purpose of advertising its business or product line. "Transit
36  advertisements" means advertising on or within private or public
37  vehicles and all advertisements placed at, on, or within any bus
38  stop, taxi stand, transportation waiting area, train station,
39  airport, or any similar transit-related location.

1    (4) A marijuana licensee may not engage in advertising or other
2    marketing practice that specifically targets persons residing outside
3    of the state of Washington.
4    (5) All signs, billboards, or other print advertising for
5    marijuana businesses or marijuana products must contain text stating
6    that marijuana products may be purchased or possessed only by persons
7    twenty-one years of age or older.
8    (6) A marijuana licensee may not:
9    (a) Take any action, directly or indirectly, to target youth in
10   the advertising, promotion, or marketing of marijuana and marijuana
11   products, or take any action the primary purpose of which is to
12   initiate, maintain, or increase the incidence of youth use of
13   marijuana or marijuana products;
14   (b) Use objects such as toys or inflatables, movie or cartoon
15   characters, or any other depiction or image likely to be appealing to
16   youth, where such objects, images, or depictions indicate an intent
17   to cause youth to become interested in the purchase or consumption of
18   marijuana products; or
19   (c) Use or employ a commercial mascot outside of, and in
20   proximity to, a licensed marijuana business. A "commercial mascot"
21   means live human being, animal, or mechanical device used for
22   attracting the attention of motorists and passersby so as to make
23   them aware of marijuana products or the presence of a marijuana
24   business. Commercial mascots include, but are not limited to,
25   inflatable tube displays, persons in costume, or wearing, holding, or
26   spinning a sign with a marijuana-related commercial message or image,
27   where the intent is to draw attention to a marijuana business or its
28   products.
29   (7) A marijuana licensee that engages in outdoor advertising is
30   subject to the advertising requirements and restrictions set forth in
31   this subsection (7) and elsewhere in this chapter.
32   (a) All outdoor advertising signs, including billboards, are
33   limited to text that identifies the retail outlet by the licensee's
34   business or trade name, states the location of the business, and
35   identifies the type or nature of the business. Such signs may not
36   contain any depictions of marijuana plants, marijuana products, or
37   images that might be appealing to children. The state liquor and
38   cannabis board is granted rule-making authority to regulate the text
39   and images that are permissible on outdoor advertising. Such rule

1 making must be consistent with other administrative rules generally
2 applicable to the advertising of marijuana businesses and products.
3     (b) Outdoor advertising is prohibited:
4     (i) On signs and placards in arenas, stadiums, shopping malls,
5 fairs that receive state allocations, farmers markets, and video game
6 arcades, whether any of the foregoing are open air or enclosed, but
7 not including any such sign or placard located in an adult only
8 facility; and
9     (ii) Billboards that are visible from any street, road, highway,
10 right-of-way, or public parking area are prohibited, except as
11 provided in (c) of this subsection.
12     (c) Licensed retail outlets may use a billboard or outdoor sign
13 solely for the purpose of identifying the name of the business, the
14 nature of the business, and providing the public with directional
15 information to the licensed retail outlet. Billboard advertising is
16 subject to the same requirements and restrictions as set forth in (a)
17 of this subsection.
18     (d) Advertising signs within the premises of a retail marijuana
19 business outlet that are visible to the public from outside the
20 premises must meet the signage regulations and requirements
21 applicable to outdoor signs as set forth in this section.
22     (e) The restrictions and regulations applicable to outdoor
23 advertising under this section are not applicable to:
24     (i) An advertisement inside a licensed retail establishment that
25 sells marijuana products that is not placed on the inside surface of
26 a window facing outward; or
27     (ii) An outdoor advertisement at the site of an event to be held
28 at an adult only facility that is placed at such site during the
29 period the facility or enclosed area constitutes an adult only
30 facility, but in no event more than fourteen days before the event,
31 and that does not advertise any marijuana product other than by using
32 a brand name to identify the event.
33     (8) Merchandising within a retail outlet is not advertising for
34 the purposes of this section.
35     (((3)))(9) This section does not apply to a noncommercial
36 message.
37     (((4)))(10)(a) The state liquor and cannabis board must:
38     (i) Adopt rules implementing this section and specifically
39 including provisions regulating the billboards and outdoor signs
40 authorized under this section; and

1 (ii) Fine a licensee one thousand dollars for each violation of
2 ((subsection (1) of)) this section until the state liquor and
3 cannabis board adopts rules prescribing penalties for violations of
4 this section. The rules must establish escalating penalties including
5 fines and up to suspension or revocation of a marijuana license for
6 subsequent violations.

7 (b) Fines collected under this subsection must be deposited into
8 the dedicated marijuana account created under RCW 69.50.530.

9 (11) A city, town, or county may adopt rules of outdoor
10 advertising by licensed marijuana retailers that are more restrictive
11 than the advertising restrictions imposed under this chapter.
12 Enforcement of restrictions to advertising by a city, town, or county
13 is the responsibility of the city, town, or county.

14 **Sec. 15.** RCW 69.50.4013 and 2015 2nd sp.s. c 4 s 503 are each
15 amended to read as follows:

16 (1) It is unlawful for any person to possess a controlled
17 substance unless the substance was obtained directly from, or
18 pursuant to, a valid prescription or order of a practitioner while
19 acting in the course of his or her professional practice, or except
20 as otherwise authorized by this chapter.

21 (2) Except as provided in RCW 69.50.4014, any person who violates
22 this section is guilty of a class C felony punishable under chapter
23 9A.20 RCW.

24 (3)(a) The possession, by a person twenty-one years of age or
25 older, of useable marijuana, marijuana concentrates, or marijuana-
26 infused products in amounts that do not exceed those set forth in RCW
27 69.50.360(3) is not a violation of this section, this chapter, or any
28 other provision of Washington state law.

29 (b) The possession of marijuana, useable marijuana, marijuana
30 concentrates, and marijuana-infused products being physically
31 transported or delivered within the state, in amounts not exceeding
32 those that may be established under RCW 69.50.385(3), by a licensed
33 employee of a common carrier when performing the duties authorized in
34 accordance with RCW 69.50.382 and 69.50.385, is not a violation of
35 this section, this chapter, or any other provision of Washington
36 state law.

37 (4)(a) The delivery by a person twenty-one years of age or older
38 to one or more persons twenty-one years of age or older, during a
39 single twenty-four hour period, for noncommercial purposes and not

1  conditioned upon or done in connection with the provision or receipt
2  of financial consideration, of any of the following marijuana
3  products, is not a violation of this section, this chapter, or any
4  other provisions of Washington state law:
5      (i) One-half ounce of useable marijuana;
6      (ii) Eight ounces of marijuana-infused product in solid form;
7      (iii) Thirty-six ounces of marijuana-infused product in liquid
8  form; or
9      (iv) Three and one-half grams of marijuana concentrates.
10      (b) The act of delivering marijuana or a marijuana product as
11  authorized under this subsection (4) must meet one of the following
12  requirements:
13      (i) The delivery must be done in a location outside of the view
14  of general public and in a nonpublic place; or
15      (ii) The marijuana or marijuana product must be in the original
16  packaging as purchased from the marijuana retailer.
17      (5) No person under twenty-one years of age may possess,
18  manufacture, sell, or distribute marijuana, marijuana-infused
19  products, or marijuana concentrates, regardless of THC concentration.
20  This does not include qualifying patients with a valid authorization.
21      (((5))) (6) The possession by a qualifying patient or designated
22  provider of marijuana concentrates, useable marijuana, marijuana-
23  infused products, or plants in accordance with chapter 69.51A RCW is
24  not a violation of this section, this chapter, or any other provision
25  of Washington state law.

26      NEW SECTION. **Sec. 16.** A new section is added to chapter 69.50
27  RCW to read as follows:
28      (1) A licensed marijuana business may enter into a licensing
29  agreement, or consulting contract, with any individual, partnership,
30  employee cooperative, association, nonprofit corporation, or
31  corporation, for:
32      (a) Any goods or services that are registered as a trademark
33  under federal law or under chapter 19.77 RCW;
34      (b) Any unregistered trademark, trade name, or trade dress; or
35      (c) Any trade secret, technology, or proprietary information used
36  to manufacture a cannabis product or used to provide a service
37  related to a marijuana business.

1 (2) All agreements or contracts entered into by a licensed
2 marijuana business, as authorized under this section, must be
3 disclosed to the state liquor and cannabis board.

4 **Sec. 17.** RCW 42.56.270 and 2016 sp.s. c 9 s 3, 2016 sp.s. c 8 s
5 1, and 2016 c 178 s 1 are each reenacted and amended to read as
6 follows:

7 The following financial, commercial, and proprietary information
8 is exempt from disclosure under this chapter:

9 (1) Valuable formulae, designs, drawings, computer source code or
10 object code, and research data obtained by any agency within five
11 years of the request for disclosure when disclosure would produce
12 private gain and public loss;

13 (2) Financial information supplied by or on behalf of a person,
14 firm, or corporation for the purpose of qualifying to submit a bid or
15 proposal for (a) a ferry system construction or repair contract as
16 required by RCW 47.60.680 through 47.60.750 or (b) highway
17 construction or improvement as required by RCW 47.28.070;

18 (3) Financial and commercial information and records supplied by
19 private persons pertaining to export services provided under chapters
20 43.163 and 53.31 RCW, and by persons pertaining to export projects
21 under RCW 43.23.035;

22 (4) Financial and commercial information and records supplied by
23 businesses or individuals during application for loans or program
24 services provided by chapters 43.325, 43.163, 43.160, 43.330, and
25 43.168 RCW, or during application for economic development loans or
26 program services provided by any local agency;

27 (5) Financial information, business plans, examination reports,
28 and any information produced or obtained in evaluating or examining a
29 business and industrial development corporation organized or seeking
30 certification under chapter 31.24 RCW;

31 (6) Financial and commercial information supplied to the state
32 investment board by any person when the information relates to the
33 investment of public trust or retirement funds and when disclosure
34 would result in loss to such funds or in private loss to the
35 providers of this information;

36 (7) Financial and valuable trade information under RCW 51.36.120;

37 (8) Financial, commercial, operations, and technical and research
38 information and data submitted to or obtained by the clean Washington

1  center in applications for, or delivery of, program services under
2  chapter 70.95H RCW;

3  (9) Financial and commercial information requested by the public
4  stadium authority from any person or organization that leases or uses
5  the stadium and exhibition center as defined in RCW 36.102.010;

6  (10)(a) Financial information, including but not limited to
7  account numbers and values, and other identification numbers supplied
8  by or on behalf of a person, firm, corporation, limited liability
9  company, partnership, or other entity related to an application for a
10 horse racing license submitted pursuant to RCW 67.16.260(1)(b),
11 marijuana producer, processor, or retailer license, liquor license,
12 gambling license, or lottery retail license;

13 (b) Internal control documents, independent auditors' reports and
14 financial statements, and supporting documents: (i) Of house-banked
15 social card game licensees required by the gambling commission
16 pursuant to rules adopted under chapter 9.46 RCW; or (ii) submitted
17 by tribes with an approved tribal/state compact for class III gaming;

18 (11) Proprietary data, trade secrets, or other information that
19 relates to: (a) A vendor's unique methods of conducting business; (b)
20 data unique to the product or services of the vendor; or (c)
21 determining prices or rates to be charged for services, submitted by
22 any vendor to the department of social and health services for
23 purposes of the development, acquisition, or implementation of state
24 purchased health care as defined in RCW 41.05.011;

25 (12)(a) When supplied to and in the records of the department of
26 commerce:

27 (i) Financial and proprietary information collected from any
28 person and provided to the department of commerce pursuant to RCW
29 43.330.050(8); and

30 (ii) Financial or proprietary information collected from any
31 person and provided to the department of commerce or the office of
32 the governor in connection with the siting, recruitment, expansion,
33 retention, or relocation of that person's business and until a siting
34 decision is made, identifying information of any person supplying
35 information under this subsection and the locations being considered
36 for siting, relocation, or expansion of a business;

37 (b) When developed by the department of commerce based on
38 information as described in (a)(i) of this subsection, any work
39 product is not exempt from disclosure;

1    (c) For the purposes of this subsection, "siting decision" means
2  the decision to acquire or not to acquire a site;

3    (d) If there is no written contact for a period of sixty days to
4  the department of commerce from a person connected with siting,
5  recruitment, expansion, retention, or relocation of that person's
6  business, information described in (a)(ii) of this subsection will be
7  available to the public under this chapter;

8    (13) Financial and proprietary information submitted to or
9  obtained by the department of ecology or the authority created under
10  chapter 70.95N RCW to implement chapter 70.95N RCW;

11    (14) Financial, commercial, operations, and technical and
12  research information and data submitted to or obtained by the life
13  sciences discovery fund authority in applications for, or delivery
14  of, grants under chapter 43.350 RCW, to the extent that such
15  information, if revealed, would reasonably be expected to result in
16  private loss to the providers of this information;

17    (15) Financial and commercial information provided as evidence to
18  the department of licensing as required by RCW 19.112.110 or
19  19.112.120, except information disclosed in aggregate form that does
20  not permit the identification of information related to individual
21  fuel licensees;

22    (16) Any production records, mineral assessments, and trade
23  secrets submitted by a permit holder, mine operator, or landowner to
24  the department of natural resources under RCW 78.44.085;

25    (17)(a) Farm plans developed by conservation districts, unless
26  permission to release the farm plan is granted by the landowner or
27  operator who requested the plan, or the farm plan is used for the
28  application or issuance of a permit;

29    (b) Farm plans developed under chapter 90.48 RCW and not under
30  the federal clean water act, 33 U.S.C. Sec. 1251 et seq., are subject
31  to RCW 42.56.610 and 90.64.190;

32    (18) Financial, commercial, operations, and technical and
33  research information and data submitted to or obtained by a health
34  sciences and services authority in applications for, or delivery of,
35  grants under RCW 35.104.010 through 35.104.060, to the extent that
36  such information, if revealed, would reasonably be expected to result
37  in private loss to providers of this information;

38    (19) Information gathered under chapter 19.85 RCW or RCW
39  34.05.328 that can be identified to a particular business;

1   (20) Financial and commercial information submitted to or
2   obtained by the University of Washington, other than information the
3   university is required to disclose under RCW 28B.20.150, when the
4   information relates to investments in private funds, to the extent
5   that such information, if revealed, would reasonably be expected to
6   result in loss to the University of Washington consolidated endowment
7   fund or to result in private loss to the providers of this
8   information;

9   (21) Market share data submitted by a manufacturer under RCW
10  70.95N.190(4);

11  (22) Financial information supplied to the department of
12  financial institutions or to a portal under RCW 21.20.883, when filed
13  by or on behalf of an issuer of securities for the purpose of
14  obtaining the exemption from state securities registration for small
15  securities offerings provided under RCW 21.20.880 or when filed by or
16  on behalf of an investor for the purpose of purchasing such
17  securities;

18  (23) Unaggregated or individual notices of a transfer of crude
19  oil that is financial, proprietary, or commercial information,
20  submitted to the department of ecology pursuant to RCW
21  90.56.565(1)(a), and that is in the possession of the department of
22  ecology or any entity with which the department of ecology has shared
23  the notice pursuant to RCW 90.56.565;

24  (24) Financial institution and retirement account information,
25  and building security plan information, supplied to the liquor and
26  cannabis board pursuant to RCW 69.50.325, 69.50.331, 69.50.342, and
27  69.50.345, when filed by or on behalf of a licensee or prospective
28  licensee for the purpose of obtaining, maintaining, or renewing a
29  license to produce, process, transport, or sell marijuana as allowed
30  under chapter 69.50 RCW; ((and))

31  (25) Marijuana transport information, vehicle and driver
32  identification data, and account numbers or unique access identifiers
33  issued to private entities for traceability system access, submitted
34  by an individual or business to the liquor and cannabis board under
35  the requirements of RCW 69.50.325, 69.50.331, 69.50.342, and
36  69.50.345 for the purpose of marijuana product traceability.
37  Disclosure to local, state, and federal officials is not considered
38  public disclosure for purposes of this section; ((and))

39  (26) Financial and commercial information submitted to or
40  obtained by the retirement board of any city that is responsible for

1 the management of an employees' retirement system pursuant to the
2 authority of chapter 35.39 RCW, when the information relates to
3 investments in private funds, to the extent that such information, if
4 revealed, would reasonably be expected to result in loss to the
5 retirement fund or to result in private loss to the providers of this
6 information except that (a) the names and commitment amounts of the
7 private funds in which retirement funds are invested and (b) the
8 aggregate quarterly performance results for a retirement fund's
9 portfolio of investments in such funds are subject to disclosure;
10 ((and))

11     (27) Proprietary financial, commercial, operations, and technical
12 and research information and data submitted to or obtained by the
13 liquor and cannabis board in applications for marijuana research
14 licenses under RCW 69.50.372, or in reports submitted by marijuana
15 research licensees in accordance with rules adopted by the liquor and
16 cannabis board under RCW 69.50.372; and

17     (28) Trade secrets, technology, proprietary information, and
18 financial considerations contained in any agreements or contracts,
19 entered into by a licensed marijuana business under section 16 of
20 this act, which may be submitted to or obtained by the state liquor
21 and cannabis board.


22     NEW SECTION.  **Sec. 18.**  The definitions in this section apply
23 throughout this chapter unless the context clearly requires
24 otherwise.
25     (1) "Board" means the state liquor and cannabis board.
26     (2) "Licensee facilities" means any premises regulated by the
27 board for producing, processing, or retailing marijuana or marijuana
28 products.
29     (3) "Marijuana" has the meaning provided in RCW 69.50.101.
30     (4) "Marijuana processor" has the meaning provided in RCW
31 69.50.101.
32     (5) "Marijuana producer" has the meaning provided in RCW
33 69.50.101.
34     (6) "Marijuana products" has the meaning provided in RCW
35 69.50.101.
36     (7) "Marijuana retailer" has the meaning provided in RCW
37 69.50.101.

1   (8) "Person" means any natural person, firm, partnership,
2   association, private or public corporation, governmental entity, or
3   other business entity.

4   NEW SECTION.   Sec. 19.   (1) The department may adopt rules
5   establishing:
6   (a) Standards for marijuana and marijuana products produced and
7   processed in a manner consistent with, to the extent practicable, 7
8   C.F.R. Part 205;
9   (b) A self-sustaining program for certifying marijuana producers
10  and marijuana processors as meeting the standards established under
11  (a) of this subsection; and
12  (c) Other rules as necessary for administration of this chapter.
13  (2) To the extent practicable, the program must be consistent
14  with the program established by the director under chapter 15.86 RCW.
15  (3) The rules must include a fee schedule that will provide for
16  the recovery of the full cost of the program including, but not
17  limited to, application processing, inspections, sampling and
18  testing, notifications, public awareness programs, and enforcement.

19  NEW SECTION.   Sec. 20.   (1) No marijuana or marijuana product may
20  be labeled, sold, or represented as produced or processed under the
21  standards established under this chapter unless produced or processed
22  by a person certified by the department under the program established
23  under this chapter.
24  (2) No person may represent, sell, or offer for sale any
25  marijuana or marijuana products as produced or processed under
26  standards adopted under this chapter if the person knows, or has
27  reason to know, that the marijuana or marijuana product has not been
28  produced or processed in conformance with the standards established
29  under this chapter.
30  (3) No person may represent, sell, or offer for sale any
31  marijuana or marijuana products as "organic products" as that term
32  has meaning under chapter 15.86 RCW.

33  NEW SECTION.   Sec. 21.   (1) The department may inspect licensee
34  facilities to verify compliance with this chapter and rules adopted
35  under it.
36  (2) The department may deny, suspend, or revoke a certification
37  provided for in this chapter if the department determines that an

1  applicant  or  certified  person  has  violated  this  chapter  or  rules
2  adopted under it.

3      (3) The department may impose on and collect from any person who
4  has violated this chapter or rules adopted under it a civil fine not
5  exceeding the total of:

6      (a)  The  state's  estimated  costs  of  investigating  and  taking
7  appropriate administrative and enforcement actions for the violation;
8  and

9      (b) One thousand dollars.

10     (4) The board may take enforcement actions against a marijuana
11 producer, marijuana processor, or marijuana retailer license issued
12 by the board, including suspension or revocation of the license, when
13 a licensee continues to violate this chapter after revocation of its
14 certification or, if uncertified, receiving written notice from the
15 department of certification requirements.

16     (5)  The  provisions  of  this  chapter  are  cumulative  and
17 nonexclusive and do not affect any other remedy at law.


18     NEW SECTION.  **Sec. 22.**  Information about marijuana producers,
19 marijuana processors, and marijuana retailers otherwise exempt from
20 public inspection and copying under chapter 42.56 RCW is also exempt
21 from public inspection and copying if submitted to or used by the
22 department.


23     NEW SECTION.  **Sec. 23.**  All fees collected under this chapter
24 must be deposited in an account within the agricultural local fund.
25 The revenue from the fees must be used solely for carrying out the
26 provisions of this chapter, and no appropriation is required for
27 disbursement from the fund.


28     NEW SECTION.  **Sec. 24.**  (1) The state liquor and cannabis board
29 must conduct a study of regulatory options for the legalization of
30 marijuana plant possession and cultivation by recreational marijuana
31 users. In conducting the study, the state liquor and cannabis board
32 must consider the federal guidelines provided by the Cole memorandum,
33 issued by the United States department of justice on August 29, 2013,
34 which allows individual states to implement marijuana legalization
35 policies, provided such states enact strong and effective regulatory
36 and enforcement systems that address public safety, public health,
37 and law enforcement concerns as outlined in the memorandum.

Ex. 1 Page 38 of 39

1   (2) Not later than December 1, 2017, the state liquor and
2   cannabis board must provide the appropriate committees of the
3   legislature written findings and recommendations regarding the
4   adoption and implementation of a regulatory and enforcement system
5   for the legalization of marijuana plant possession and cultivation by
6   recreational marijuana users, in light of the guidelines set forth in
7   the federal Cole memorandum.

8   (3) The study, findings, and recommendations required under this
9   section must be done through the use of the existing resources of the
10  state liquor and cannabis board.

11  <u>NEW SECTION.</u>  **Sec. 25.**  This act applies prospectively only and
12  not retroactively. It applies only to causes of action that arise (if
13  change is substantive) or that are commenced (if change is
14  procedural) on or after the effective date of this section.

15  <u>NEW SECTION.</u>  **Sec. 26.**  If any provision of this act or its
16  application to any person or circumstance is held invalid, the
17  remainder of the act or the application of the provision to other
18  persons or circumstances is not affected.

19  <u>NEW SECTION.</u>  **Sec. 27.**  Sections 18 through 23 of this act
20  constitute a new chapter in Title 15 RCW.

      Passed by the Senate April 20, 2017.
      Passed by the House April 20, 2017.
      Approved by the Governor May 16, 2017.
      Filed in Office of Secretary of State May 16, 2017.

                    **--- END ---**