The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

TODD BRINKMEYER,

Petitioner,

v.

WASHINGTON STATE LIQUOR AND CANNABIS BOARD,

Respondent.

NO. 3:20-cv-05661-BHS

RESPONDENT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:

MARCH 11, 2022



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. REPLY ARGUMENT .......... 2

A. Brinkmeyer Failed to Establish Standing and Ripeness .......... 2

B. This Court Should Not Apply the Dormant Commerce Clause to Protect A National Market That Is Illegal Under Federal Law .......... 3

1. Brinkmeyer's rosy depiction of a national market for marijuana fails in the face of federal law .......... 3

2. Despite Justice Thomas's commentary, selling marijuana is still illegal under federal law .......... 4

3. Where Congress exercises its Commerce Clause powers to ban an item from interstate commerce, the dormant Commerce Clause does not apply .......... 5

4. *Tennessee Wine* does not control .......... 7

5. Washington's Residency Requirements serve to protect public health and safety .......... 7

C. Brinkmeyer's Other Constitutional Challenges .......... 9

1. The Article IV Privileges and Immunities Clause does not protect the interest in traveling to pursue a livelihood in a federally-illegal industry .......... 9

2. Brinkmeyer has not demonstrated he can bring Fourteenth Amendment claims designed to protect the rights of state residents .......... 10

3. The Fourteenth Amendment does not protect the interest in traveling to pursue an illegal livelihood or illegal profession .......... 11

4. Even if this Court finds that the Article IV Privileges and Immunities Clause and the Fourteenth Amendment protections apply to Brinkmeyer, the Residency Requirements survive review .......... 11

III. CONCLUSION .......... 12



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**TABLE OF AUTHORITIES**

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3 .......... 7

U.S. Const. art. IV, § 2 .......... 9

U.S. Const. amend. XIV, § 1 .......... 9, 11

**Cases**

*Allgeyer v. State of La.*, 165 U.S. 578 (1897) .......... 11

*Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185 (2d Cir. 2009) .......... 7

*Attorney General of New York v. Soto-Lopez*, 476 U.S. 898 (1986) .......... 10

*Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 472 U.S. 159 (1985) .......... 5

*Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F. Supp. 2d 1120 (D. Or. 2003) .......... 10

*Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564 (1997) .......... 5

*Chance Mgmt., Inc. v. State of S.D.*, 97 F.3d 1107 (8th Cir. 1996) .......... 8, 11

*Dittman v. California*, 191 F.3d 1020 (9th Cir. 1999) .......... 10

*Dunn v. Blumstein*, 405 U.S. 330 (1972) .......... 10

*Gamble v. United States*, 139 S. Ct. 1960 (2019) .......... 1

*Gen. Motors Corp. v. Tracy*, 519 U.S. 278 (1997) .......... 3

*Gonzales v. Raich*, 545 U.S. 1 (2005) .......... 2, 5-6

*Gulch Gaming, Inc. v. State of S.D.*, 781 F. Supp. 621 (D.S.D. 1991) .......... 9, 11



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

*Heller v. Doe*,
509 U.S. 312 (1993) ... 11

*Maxwell's Pic-Pac, Inc. v. Dehner*,
739 F.3d 936 (6th Cir. 2014) ... 7

*Mem'l Hosp. v. Maricopa Cty.*,
415 U.S. 250 (1974) ... 10

*Memphis A. Philip Randolph Institute v. Hargett*,
2 F.4th 548 (6th Cir. 2021) ... 2

*Ne. Patients Grp. v. Me. Dep't of Admin. and Fin. Servs.*,
No. 1:20-cv-00468-NT, 2021 WL 3560840 (D. Me. Aug. 11, 2021) ... 10

*New England Power Co. v. N.H.*,
455 U.S. 331 (1983) ... 6

*New York v. United States*,
505 U.S. 144 (1992) ... 1

*Pic-A-State PA, Inc. v. Pennsylvania*,
42 F.3d 175 (3d Cir. 1994) ... 3

*Plyler v. Doe*,
457 U.S. 202 (1982) ... 10

*Predka v. Iowa*,
186 F.3d 1082 (8th Cir. 1999) ... 3

*Raich v. Gonzales*,
500 F.3d 850 (2007) ... 11

*Reitz v. Kipper*,
674 F. Supp. 2d 1194 (D. Nev. 2009) ... 11

*Rousso v. State*,
170 Wash.2d 70 (2010) ... 8

*S. Pacific Co. v. Arizona ex rel. Sullivan*,
325 U.S. 761 (1945) ... 6

*S.-Cent. Timber Dev., Inc. v. Wunnicke*,
467 U.S. 82 (1984) ... 6

*Saenz v. Roe*,
526 U.S. 489 (1999) ... 10

*Standing Akimbo, LLC v. United States through Internal Revenue Serv.*,
955 F.3d 1146 (10th Cir. 2020) ... 4



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

*Standing Akimbo, LLC v. United States*,
141 S. Ct. 2236 (2021)........................................................................................ 4

*State v. Conte*
159 Wash.2d 797, 808 (2007)................................................................................ 8

*Susan B. Anthony List v. Dreihaus*,
779 F.3d 628 (6th Cir. 2015) ................................................................................ 5

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*,
139 S. Ct. 2449 (2019)........................................................................................5, 7-8

*Toigo v. Dep't of Health & Senior Servs.*,
No. 2:20-cv-04243, 2021 WL 5533412 (W.D. Mo. June 21, 2021) ...................................... 10

*Trump v. New York*,
141 S.Ct. 530 (2020)........................................................................................... 2

*United Haulers Ass'n, Inc. v. Oneida–Herkimer Solid Waste Mgmt. Auth.*,
550 U.S. 330 (2007)............................................................................................ 8

*Ward v. State*,
79 U.S. 418 (1870).............................................................................................. 9

**Statutes**

16 U.S.C. §§ 824–824k (1976) .................................................................................. 6

18 U.S.C. § 1956 (2016) ........................................................................................ 3, 4

18 U.S.C. § 1957 (2012) ........................................................................................ 3, 4

18 U.S.C. § 2 (1951) ............................................................................................. 4

18 U.S.C. § 3 (1994) ............................................................................................. 4

18 U.S.C. § 846 (1988) .......................................................................................... 4

21 U.S.C. § 812(b) (2018) ...................................................................................... 4

21 U.S.C. § 812(b)(1) (2018)................................................................................... 1, 7

21 U.S.C. § 812(c) (2018) ...................................................................................... 1, 7

Consolidated Appropriations Act,
2021, Pub. L. 116-260 § 531, 134 Stat. 1182, 1282-83 (2020) ............................................ 5

2013 Wash. Sess. Laws 29....................................................................................... 7

2013 Wash. Sess. Laws 28-67 .................................................................................. 1, 7

Wash. Rev. Code § 69.50.331(1)(b) (2020) ..............................................................2, 6-8, 11



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

Wash. Rev. Code § 69.50.335(6)(b) (2020) .... 8

Wash. Rev. Code § 69.50.335(6)(c) (2020).... 8

**Regulations**

Wash. Admin. Code § 314-55-020(11) (2021).... 2, 6-8, 11

Wash. Admin. Code § 314-55-035(1) (2020).... 2, 6-8, 11

Wash. Admin. Code § 314-55-105 (2019) .... 6

**Other Authorities**

BSA Expectations Regarding Marijuana-Related Businesses, February 14, 2014 https://www.fincen.gov/sites/default/files/shared/FIN-2014-G001.pdf. .... 3

Cole Memoradum
Memorandum for all United States Attorneys from James M. Cole, Deputy Attorney General, U.S. Dep't of Justice (Aug. 29, 2013).... 4



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

## I. INTRODUCTION

In his response, Brinkmeyer proclaims that marijuana's illegal status under federal law "changes nothing" and "is a distinction without a difference." Dkt. #43 at p. 7, 21. However, in this same brief, marijuana all but disappears from his claimed rights under the U.S. Constitution. Instead, the ownership of a license to sell a highly-profitable and highly-regulated controlled substance is analogized to the fundamental right to travel or pursue a profession. Brinkmeyer's erroneous framing omits marijuana, because marijuana's status as illegal under federal law is fatal to his constitutional claim. As a result, his analysis fails to grapple with the consequences of his Petition.

This is a unique situation, whereby Washington State elected to tightly regulate a controlled substance and create an intrastate market in the face of federal prohibition. *See New York v. United States*, 505 U.S. 144, 161-66 (1992); *Gamble v. United States*, 139 S. Ct. 1960, 1969 (2019) (noting the ability of States under our federal system to legalize commerce prohibited federally). Washington was one of two courageous states to legalize marijuana in 2012. *Cf.* Initiative-502, 2013 Wash. Sess. Laws 28-67. This was a risky endeavor, in part, because Washington residents risked federal prosecution. In order for this experiment to succeed, it was paramount for the Board to maintain a tightly regulated and well-run regulatory system over a substance the federal government deems not fit for medical use. *See* Dkt. #32, Ex. 1; *and* 21 U.S.C. §§ 812(c), (b)(1) (2018). Other states may not have the same regulatory measures as Washington, but other states have not been as successful as Washington in preventing diversion. Dkt. #32 ¶ 22. Washington's regulations have ensured that 70% of all marijuana purchased in Washington comes from the regulated marijuana market, which is one of the best rates in the country. *Id.*

Despite many states joining Washington in its experiment, marijuana remains illegal under federal law. 21 U.S.C. §§ 812(c), (b)(1) (2018). In the face of this federal prohibition, the dormant Commerce Clause does not apply. The dormant Commerce Clause protects national



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

markets from state regulation where Congress has failed to act. Here, Congress has acted. And unlike the commerce in cases cited by Brinkmeyer, Congress acted to ban marijuana from the national marketplace. *See Gonzales v. Raich,* 545 U.S. 1, 26-27 (2005). Washington's Residency Requirements do not unconstitutionally interfere with interstate commerce that is illegal under federal law.

The Board requests that this Court grant its Motion for Summary Judgment and dismiss Brinkmeyer's Petition for Declaratory Judgment.

## II. REPLY ARGUMENT

### A. Brinkmeyer Failed to Establish Standing and Ripeness

Brinkmeyer must establish standing at the time he filed his Petition. *Trump v. New York*, 141 S.Ct. 530, 536-37 (2020); *Memphis A. Philip Randolph Institute v. Hargett*, 2 F.4th 548, 557 (6th Cir. 2021) ("[I]t is widely accepted that a plaintiff must establish standing at the time the lawsuit commences"). Brinkmeyer's Petition failed to establish a concrete and particularized injury because the Petition contemplated only a "some day" transfer of ownership upon Atkison's death or disability. *See* Dkt. #1, Attach. 2 ¶ 24 ("One of the Retailers owners is in ill health, and in planning out the transfer of his estate upon his declining health or death"); Dkt. #6 at p. 5 ("Atkison is fortunate to have survived over five and on-half years with Stage IV cancer, his health has progressed to where it is prudent for him to plan the disposition of his estate"); Dkt. #10, Ex. A at p. 2-3 ("I have a client that is terminally ill. This person owns cannabis licenses in Washington and is preparing now to plan for the future of the licenses after their death."). There is nothing in the Petition or any other pleading filed before June, 2021 that establishes an immediate transfer of ownership. This failure means at the time the Petition was filed, Brinkmeyer did not have an actual or imminent injury, but only a 'some day' transfer contingent upon future events. Such cannot establish standing and ripeness. Brinkmeyer's Petition should be dismissed.

/ / /



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**B. This Court Should Not Apply the Dormant Commerce Clause to Protect A National Market That Is Illegal Under Federal Law**

**1. Brinkmeyer's rosy depiction of a national market for marijuana fails in the face of federal law**

As shown by the Board, the dormant Commerce Clause does not invalidate state laws to protect an illegal national market. *See* Dkt. #39 at p. 19-20. This point remains unaddressed by Brinkmeyer. There was no analysis by Brinkmeyer of binding authority in *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 (1997), or persuasive authority, such as *Pic-A-State PA, Inc. v. Pennsylvania*, 42 F.3d 175, 179 (3d Cir. 1994) and *Predka v. Iowa*, 186 F.3d 1082, 1085 (8th Cir. 1999). Rather, Brinkmeyer insists there is a thriving interstate investment market. Dkt. #43 at p. 17. However, Brinkmeyer's focus on the movement of money from the sale of marijuana across state lines as opposed to marijuana, the product, is actually "a distinction without a difference." *Contra* Dkt. #43 at p. 21. Both violate federal law.

Federal anti-money laundering statutes, such as the Money Laundering Control Act, make it a crime to knowingly engage in monetary transactions involving proceeds from certain unlawful activity, including the sale of marijuana. *See* 18 U.S.C. §§ 1956 (2016) and 1957 (2012). Although the Financial Crimes Enforcement Network (FinCEN), a bureau of the United States Department of the Treasury, issued guidance in February 2014 on how banks can do business with marijuana-related businesses without triggering Bank Secrecy Act enforcement by FinCEN, it did not legalize such activities, and it does not rule out enforcement actions by federal banking regulators or criminal law enforcement agencies.[1] Therefore, the distinction Brinkmeyer attempts to draw between proceeds from the sale of marijuana and marijuana itself, legally speaking, is non-existent.

As there is no legal national market for marijuana or its proceeds, this Court should not apply the dormant Commerce Clause to protect it.

/ / /

/ / /

[1] *See* https://www.fincen.gov/sites/default/files/shared/FIN-2014-G001.pdf.



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**2. Despite Justice Thomas's commentary, selling marijuana is still illegal under federal law**

The interstate investment market for marijuana only exists at the mercy of the federal government. Ownership of marijuana retail stores across state lines exposes individuals to federal prosecution for conspiring to manufacture and distribute marijuana, 18 U.S.C. § 846 (1988); aiding and abetting the manufacture and distribution of marijuana, 18 U.S.C. § 2 (1951); acting as an accessory after the fact for the manufacture and distribution of marijuana, 18 U.S.C. § 3 (1994); and violating the Money Laundering Control Act, 18 U.S.C. §§ 1956 (2016) and 1957 (2012). Although the federal government has chosen other enforcement priorities, these laws still exist and stand ready for enforcement should these priorities change.

Brinkmeyer faults the Board for failing to address Justice Thomas's comments upon the Supreme Court's denial of certiorari, lamenting the legal landscape for the marijuana industry. Dkt. #43 at p. 16 (citing *Standing Akimbo, LLC v. United States*, 141 S. Ct. 2236, 2238 (2021)). Such comments do not create binding precedent for this Court. And in fact, by denying certiorari, the Supreme Court left standing a case that proves the Board's point. Although states may have legalized the marijuana industry, marijuana related businesses can still be subject of federal investigation and prosecution. *See Standing Akimbo, LLC v. United States through Internal Revenue Serv*., 955 F.3d 1146, 1157-58 (10th Cir. 2020), *cert. denied sub nom. Standing Akimbo, LLC*, 141 S. Ct. at 2238, *reh'g denied*, 210 L. Ed. 2d 1009 (Aug. 23, 2021) (upholding IRS subpoena investigating Controlled Substances Act (CSA) violations by a medical marijuana dispensary in Colorado).

Amicus argues that marijuana is substantially legal under federal law. Dkt. #40-1 at p. 8. Federal law is clear, marijuana is not substantially legal. It remains an illegal substance for which there is no legal national market. *See* 21 U.S.C. § 812(b) (2018). Federal executive branch discretionary enforcement policies such as the Cole Memorandum[2] cannot alter the law.

[2] Memorandum for all United States Attorneys from James M. Cole, Deputy Attorney General, U.S. Dep't of Justice (Aug. 29, 2013)



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

The Cole Memo is an executive branch policy statement regarding prosecutorial discretion. Exercising such discretion does nothing to alter the authority of the CSA. *See, e.g.*, *Susan B. Anthony List v. Dreihaus*, 779 F.3d 628, 630 (6th Cir. 2015). Furthermore, it is Congress, not the executive branch that "unquestionably has the power to repudiate or substantially modify" the presumptions inferred by dormant Commerce Clause doctrine. *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 572 (1997).

Nor does the "Rohrabacher-Farr Amendment," which states the Department of Justice may not use any of its appropriated funds "to prevent [any state] from implementing their own laws, that authorize the use, distribution, possession or cultivation of medical marijuana," change the legal status of the interstate recreational marijuana market. *See, e.g.*, Consolidated Appropriations Act, 2021, Pub. L. 116-260 § 531, 134 Stat. 1182, 1282-83 (2020).

Because Congress's prohibition of marijuana from interstate commerce remains in full effect, all purported interstate commerce relating to marijuana is little more than an illicit and yet-prosecuted drug activity that is entitled to no Constitutional protections.

**3. Where Congress exercises its Commerce Clause powers to ban an item from interstate commerce, the dormant Commerce Clause does not apply**

Where the Supreme Court has already affirmed that the CSA's comprehensive prohibition of marijuana was a lawful exercise of Congress's affirmative Commerce Clause power to eliminate marijuana from the national market of interstate commerce, *see Raich*, 545 U.S. at 26-27, the dormant Commerce Clause precedent cannot and does not apply to the necessary analysis of Congress's exercise of its affirmative Commerce Clause powers. *See Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2465 (2019) ("Dormant Commerce Clause restrictions apply only when Congress has not exercised its Commerce Clause power to regulate the matter at issue."). When Congress has eliminated an interstate market, there is nothing left for the dormant Commerce Clause to protect. Stated another way, "Here the commerce power of Congress is not dormant . . . ." *Ne. Bancorp, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 472 U.S. 159, 174 (1985).



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

The *Wunnicke* and *New England Power Co.*, cases cited by Brinkmeyer, do not involve a Congressional ban on the commerce "burdened" by the state. *See S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984); *New England Power Co. v. N.H.*, 455 U.S. 331, 340-41 (1983). In *Wunnicke*, Alaska required lumber extracted from state lands to be processed within the state prior to export. 467 U.S. at 84-85. Congress had not attempted to regulate interstate commerce for lumber extracted from Alaska state lands. *Id.* at 88-89, 92. Therefore, the dormant Commerce Clause prohibited Alaska from burdening interstate commerce for this lumber. *Id.* at 92-93. Here, unlike the lumber industry, Congress exercised its Commerce Clause powers to ban marijuana from interstate commerce. *Raich*, 545 U.S. at 26-27. As a result, the dormant Commerce Clause should not apply.

Where Congress does act to regulate interstate commerce for a particular industry, then the question becomes whether Congress authorized the states to restrict the flow of interstate commerce. *See New England Power Co.*, 455 U.S. at 340-41 (citing *S. Pacific Co. v. Arizona ex rel. Sullivan,* 325 U.S. 761, 769 (1945)). In *New England Power Co.*, the Supreme Court found that Congress had acted to regulate interstate commerce for hydroelectric power plants by enacting the Federal Power Act. *Id.* at 340 (citing 16 U.S.C. §§ 824–824k (1976)). As a result, New Hampshire's order prohibiting a hydroelectric power plant from selling its hydroelectric energy outside of New Hampshire conflicted with Congress's Commerce Clause powers. *Id.* Here, Congress has acted to ban marijuana from interstate commerce, not simply regulate it. *Raich*, 545 U.S. at 26-27. In such circumstances, a burden on interstate commerce is not Congress's concern, rather it is their intent. Washington's Residency Requirements support the federal government's prohibition on interstate commerce by aiding the State's efforts in creating a wholly intrastate market. *See* Dkt. #42 at p. 17; *see also* Wash. Admin. Code § 314-55-105 (2019) (labeling must state "Unlawful outside Washington State"). Therefore, there is nothing about them that challenge the supremacy of Congress's Commerce Clause powers, and the dormant Commerce Clause should not apply.



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**4. *Tennessee Wine* does not control**

Even if this Court were to apply the dormant Commerce Clause, *Tennessee Wine & Spirits Retailers Association v. Thomas*, 139 S. Ct. 2449 (2019), does not control. *Tennessee Wine* centered on a residency requirement that Tennessee sought to impose on alcohol sellers. *Tennessee Wine* is distinguishable because the article of commerce at issue in the case—alcoholic spirits—is fundamentally different from marijuana. Alcoholic spirits, for one, are lawfully sold and transported in interstate commerce. Marijuana, by contrast, cannot and may not be lawfully sold or transported between any states without direct violation of the CSA's comprehensive prohibition. Because Congress had not exercised its Commerce Clause power to regulate interstate alcohol sellers, the challenged residency requirement was subject to the dormant Commerce Clause. Had Congress expressly prohibited the interstate sale of alcohol, the dormant Commerce Clause restrictions to which Brinkmeyer claims an entitlement here would not have applied. *See Tennessee Wine*, 139 S. Ct. at 2465.

**5. Washington's Residency Requirements serve to protect public health and safety**

The factual and legal distinctions between the marijuana industry and the alcohol industry should affect this Court's review of the Board's Justifications. *See* Dkt. #39 at p. 12-13 (collectively referred to as Justifications). In the face of Congress deeming marijuana a drug with no medical use and high potential for abuse, Washington stepped forward as a state willing to try legalization. *See* 21 U.S.C. §§ 812(c), (b)(1) (2018); Initiative-502, 2013 Wash. Sess. Laws 28-67. In the process, it needed to wrest it away from organized crime and responsibly regulate it, such that the public was not harmed. *See* 2013 Wash. Sess. Laws 29; Dkt. #32, Ex. 1. In order for this experiment to succeed, it needed to keep close tabs not only on the facilities and retail stores, but also on the involved players. The Residency Requirements serve to meet those immediate and present needs. In contrast, alcohol was wrested from organized crime after prohibition ended in 1933. *Cf. Maxwell's Pic-Pac, Inc. v. Dehner*, 739 F.3d 936, 939 (6th Cir. 2014); *Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 198 (2d Cir. 2009) ("Nowadays, alcohol is



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

not prohibited by any state, and the beer industry is one that runs theme parks rather than organized crime dens."). In analyzing the state's justifications for residency requirements in *Tennessee Wine*, Tennessee's purpose for the residency requirements had faded into the quaint and distant past. As such, the Supreme Court did not find Tennessee's justifications compelling. In reviewing the immediate needs that Washington's Residency Requirements serve, this Court should reach a different conclusion.

This Court should instead give credence to the Legislature's expressed interest in taking marijuana out of the hands of organized crimes. *See e.g.*, *Chance Mgmt., Inc. v. State of S.D.*, 97 F.3d 1107, 1114-15 (8th Cir. 1996); *United Haulers Ass'n, Inc. v. Oneida–Herkimer Solid Waste Mgmt. Auth.,* 550 U.S. 330, 335-36, 344 (2007) (recognizing need for a state to extricate waste management from organized crime); *Rousso v. State*, 170 Wash.2d 70, 82 (2010) (holding that regulation of internet gambling served a legitimate interest of preventing the involvement of organized crime). In *Chance Management, Inc.*, the state's need to vet those involved in an industry that attracts organized crime was deemed legitimate. *See Chance Mgmt., Inc.*, 97 F.3d at 1114-15. Residency Requirements enable Washington to be a responsible regulator. As such, this Court should find that they are narrowly tailored to meet a legitimate state purpose.

Brinkmeyer also dismissed the Board's argument that the Residency Requirements are a necessary component of the State's recent Social Equity legislation. He argues this legislation only required social equity applicants "resided in a disproportionately impacted area" and the law did not restrict this area to Washington State. *See* Dkt. #43 at p. 20 (citing Wash. Rev. Code § 69.50.335(6)(b) (2020); *see also* Wash. Rev. Code § 69.50.335(6)(c) (2020). However, this legislation did not specify that these areas needed to be in Washington for the obvious reason that Washington State residency was already the law.[3] *See* Wash. Rev. Code § 69.50.331(1)(b) (2020). As declared by Director Smith, Washington State is not equipped to determine whether an area was disproportionately impacted nationwide. Dkt. #32 ¶ 16. Additionally, Brinkmeyer's

[3] "[T]he legislature is presumed to have full knowledge of existing statutes affecting the matter upon which they are legislating." *State v. Conte*, 159 Wash.2d 797, 808 (2007) (quotations omitted).



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

argument that Social Equity applicants will be hurt by a lack of interstate financing is incorrect. *See* Dkt. #43 at p. 20. Washington law allows for interstate financers. *See* Dkt. #32 ¶ 24.

**C. Brinkmeyer's Other Constitutional Challenges**

In addition to his dormant Commerce Clause claims, Brinkmeyer also claims the Residency Requirements violate his a fundamental right to travel and pursue a livelihood under Article IV and the Fourteenth Amendment, and pursue a profession under the Fourteenth Amendment's Due Process clause. However, this framing of his asserted fundamental right is as incorrect as it is improper. *See* Dkt. #42 at p. 21-22 (proper framing requires a narrow and careful description of the right). Brinkmeyer's primary authority, *Gulch Gaming*, recognized the limited bestowal of fundamental rights, and differentiated ownership of a gaming license from fundamental rights, such as the right to travel. *See Gulch Gaming, Inc. v. State of S.D.*, 781 F. Supp. 621, 631 (D.S.D. 1991). As such, it applied the rational basis standard. *Id.* This Court should similarly frame Brinkmeyer's requested right and apply a rational basis review.

This Court should find Brinkmeyer's interest in owning a marijuana retail license in Washington State as an Idahoan is not protected by the Article IV's Privileges and Immunities Clause, or the Fourteenth Amendment Equal Protection, Privileges and Immunities, and Due Process Clauses.

**1. The Article IV Privileges and Immunities Clause does not protect the interest in traveling to pursue a livelihood in a federally-illegal industry**

The Board established that the Article IV Privileges and Immunities Clause does not protect Brinkmeyer's interest in traveling to pursue an illegal livelihood. *See* Dkt. #42 at p. 22-23. Brinkmeyer admits that the commerce, trade, or business must be lawful. *See* Dkt. #43 at p. 22 (citing *Ward v. State*, 79 U.S. 418, 430 (1870)). But suggests that because this commerce is legal under Washington state law, he should have access to Washington's market. *See* Dkt. #43 at p. 22-23. However, we are in federal court dealing with the federal constitution, not state court. Brinkmeyer cannot escape the federal status of his trade, and as such, his Article IV Privileges and Immunities Clause claim should fail.



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**2. Brinkmeyer has not demonstrated he can bring Fourteenth Amendment claims designed to protect the rights of state residents**

For his Fourteenth Amendment right to travel claims, Brinkmeyer fails to explain how he can bring these claims as a non-resident of Washington. The Fourteenth Amendment was designed to afford protections to all within the boundaries of a state, not outside. *See Plyler v. Doe*, 457 U.S. 202, 211-15 (1982). Every binding Fourteenth Amendment case Brinkmeyer cites was properly brought by a resident of that state. *See* Dkt. #43 at p. 25-27 (citing *Dunn v. Blumstein*, 405 U.S. 330, 331 (1972) (action brought by new state resident); *Saenz v. Roe*, 526 U.S. 489, 493 (1999) (same); *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 898 (1986) (same); *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 251 (1974) (same); *Dittman v. California*, 191 F.3d 1020, 1024 (9th Cir. 1999) (same); *see also* Dkt. #34 at p. 26 (recognizing that the right to travel protects "newly arrived bona fide residents"). In the other analogous challenges to state residency requirements involving non-residents, the non-resident petitioner did not bring these Fourteenth Amendment claims. *See Ne. Patients Grp. v. Me. Dep't of Admin. and Fin. Servs.*, No. 1:20-cv-00468-NT, 2021 WL 3560840 (D. Me. Aug. 11, 2021) (slip opinion); and *Toigo v. Dep't of Health & Senior Servs.*, No. 2:20-cv-04243, 2021 WL 5533412 (W.D. Mo. June 21, 2021) (slip opinion). Brinkmeyer, as a non-resident of Washington, should have similarly refrained from filing claims on behalf of new Washington residents.

In his response, Brinkmeyer conflates the analysis of standing with the analysis of the right to travel. Dkt. #43 at p. 20 (citing *Mem'l Hosp.*, 415 U.S. at 257–58; *Dunn*, 405 U.S. at 339). This puts the cart before the horse. The Board is not requiring actual deterrence – rather Brinkmeyer needs to belong to the class of individuals he claims were unconstitutionally discriminated against – i.e., new residents of Washington State. Unlike the petitioners in *Memorial Hospital* and *Dunn*, Brinkmeyer is not a part of this class and so cannot bring this claim. *See, e.g.*, *Cain v. Tigard-Tualatin Sch. Dist. 23J*, 262 F. Supp. 2d 1120, 1130 (D. Or. 2003) (rejecting student's Fourteenth Amendment's Equal Protection Clause claim because student was not a member of suspect class and student failed to claim a fundamental right).



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

**3. The Fourteenth Amendment does not protect the interest in traveling to pursue an illegal livelihood or illegal profession**

For the same reasons established *supra* for the right to travel under Article IV's Privileges and Immunities clause, the Fourteenth Amendment does not protect the interest to travel to pursue an illegal livelihood or illegal profession. *See Allgeyer v. State of La.,* 165 U.S. 578, 589 (1897) (pursued livelihood must be lawful); *Raich v. Gonzales*, 500 F.3d 850, 866 (9th Cir. 2007) (due process liberty claim denied due to illegal status of marijuana). As a resident of Washington, whether newly arrived or well-established, a person involved in the marijuana industry is only protected under state law. This person is still exposed to enforcement for crimes under federal law. *See* Sections B.1-2, *supra*. Therefore, Brinkmeyer cannot bring his claims under the Fourteenth Amendment.

**4. Even if this Court finds that the Article IV Privileges and Immunities Clause and the Fourteenth Amendment protections apply to Brinkmeyer, the Residency Requirements survive review**

If this Court finds Brinkmeyer's Article IV Privileges and Immunities Clause and Equal Protection and Privileges or Immunities Clauses of the Fourteenth Amendment rights were impinged by the Residency Requirements, it should apply a rational basis review to his claim for a non-fundamental right. *See Heller v. Doe*, 509 U.S. 312, 320 (1993); *Gulch Gaming, Inc.*, 781 F. Supp. at 631; *Chance Mgmt., Inc.*, 97 F.3d at 1114-15. And in applying the rational basis review, this Court should find that the Residency Requirements serve legitimate state interests. *See* Dkt. #42 at p. 25.

Even so, the Residency Requirements survive review under the stricter standards advanced by Brinkmeyer. *See* Dkt. #43 at p. 25 (citing *Reitz v. Kipper*, 674 F. Supp. 2d 1194, 1201 (D. Nev. 2009) (requiring a showing that nonresidents pose a "peculiar source of evil"); Dkt. #34 at p. 26 (right to travel is subject to strict scrutiny). The Board has established the Residency Requirements address a "peculiar source of evil" posed by nonresidents. *Cf. Reitz*, 674 F. Supp. 2d at 1201. As long as there are states where marijuana remains fully illegal, such as Idaho, the marijuana industry will attract organized crime. If the Residency Requirements are



ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

invalidated, the Board will not be able to properly vet non-resident applicants, and organized crime will gain a foothold in Washington's regulated marijuana market. *See* Dkt. #42 at p. 12-14. As such, this Court should uphold Washington's Residency Requirements as a vital part of Washington's regulatory control over an industry involving a controlled substance and one that attracts organized crime.

## III. CONCLUSION

Brinkmeyer's request may appear "narrow," but the consequences are broad and far reaching. He asks this Court to extend the rights and protections of the United States Constitution to guarantee his ability to sell marijuana not just in Washington, but in every state of the nation. Congress's ongoing exercise of its Commerce Clause power to prohibit marijuana from the channels of interstate commerce compels a rejection of any such constitutional right.

DATED this 8th day of March 2022.

ROBERT W. FERGUSON
Attorney General

s/*Penny L. Allen*
PENNY ALLEN, WSBA No. 18821
ELLEN RANGE, WSBA No. 51334
Assistant Attorneys General
1125 Washington St SE
Olympia, WA 98501
Phone: (360) 586-0092
Email: PennyL.Allen@atg.wa.gov
Email: Ellen.Range@atg.wa.gov
*Attorneys for Respondent*