THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD BRINKMEYER

   Petitioner,

 v.

WASHINGTON STATE LIQUOR AND CANNABIS BOARD,

   Respondent.

Case No. 3:20-cv-05661-BHS

**PETITIONER'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**NOTE ON MOTION CALENDAR: MARCH 11, 2022**

**ORAL ARGUMENT REQUESTED**

PETITIONER'S REPLY IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT - i
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA  98121-1128
206.624.8300 | Fax: 206.340.9599

**TABLE OF CONTENTS**

A. Brinkmeyer's claims are justiciable. .......... 1

B. The Residency Requirements violate the dormant Commerce Clause by limiting ownership of licensed businesses only to long-term residents. .......... 2

1. The Residency Requirements burden a lawful interstate market without the necessary congressional approval. .......... 2

2. There are no material distinctions between this case and the others that have stricken residency requirements in cannabis. .......... 4

C. The State's Justifications are irrational and have been rejected as a matter of law. .......... 5

D. The Residency Requirements are not narrowly tailored. .......... 7

E. The Residency Requirements violate Brinkmeyer's fundamental rights to pursue a livelihood and travel—not a fundamental right to cannabis. .......... 8

1. Article IV Privileges and Immunities Clause .......... 9

2. Fourteenth Amendment Right to Travel .......... 9

F. Fourteenth Amendment Right to Pursue a Profession .......... 10

G. The Court should exercise its equitable powers to strike the Residency Requirements. .......... 12

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

The primary purpose of the Constitution was to prevent the type of discrimination the Residency Requirements facially display.[1] *Camps Newfound/Owatonna, Inc. v. Town of Harrison, Me.*, 520 U.S. 564, 571 (1997) ("If there was any one object riding over every other in the adoption of the constitution, it was to keep the commercial intercourse among the States free from all invidious and partial restraints."). The State seeks to justify its economic discrimination by claiming Brinkmeyer's case relies on a fundamental right to marijuana—a right he has never asserted. He instead relies on the settled law that durational residency requirements in commerce are per se violations of the Constitution unless they pass strict scrutiny review. The State has not carried that burden; it ignored that Brinkmeyer refuted most of its arguments in his opening brief, and has not given the Court a valid reason to maintain the Residency Requirements. The Court should thus exercise its equitable powers and strike them.

**A. Brinkmeyer's claims are justiciable.**

Without addressing the exhibit where the LCB confirmed it would rely on the Residency Requirements to deny Brinkmeyer's application, *see* Masse Decl. Ex. A, the LCB asserts Brinkmeyer lacks standing to challenge the Residency Requirements and his claims are not ripe. Dkt. #42 ("LCB Resp.") at 3–4. The LCB acts like it filed a Rule 12 motion by limiting its focus to Brinkmeyer's petition.[2] *Id*. Even when looking solely at his petition, Brinkmeyer has established his claims are justiciable. Brinkmeyer pleaded how Atkison "is in ill health, and, in planning out the transfer of his estate upon his declining health or death, would like to bequeath in part and sell in part his ownership interest" to Brinkmeyer. Dkt. #1-2 ¶ 24. The LCB asserts Atkison is not in declining health, but he has Stage IV cancer and is, right now, making his estate plans. Atkison Decl. ¶¶ 5–6. Consistent with the petition, declarations show those plans involve both a bequest and an immediate sale to Brinkmeyer. *Id*. ¶ 6; Brinkmeyer Decl. ¶ 6. The State does not dispute that sale gives Brinkmeyer standing, but asserts the Court cannot consider the

---

[1] Brinkmeyer uses the same abbreviations in this brief that he used in his previous summary judgment briefing.

[2] Had Brinkmeyer not adequately plead facts regarding his standing, the proper action would be to give him leave to file an amended petition. *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015).

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

declarations on summary judgment. LCB Resp. at 3. The Court can and should. Dkt. #43 ("Pet'r's Resp.") at 3–4; Fed. R. Civ. P. 56(c)(1).

Beyond the frustrated bequest and sale, Brinkmeyer's injuries include the violation of his constitutional rights, the LCB's predetermination to deny any application for equity he submits, and how that predetermination deterred Brinkmeyer from submitting an application. *Id.* at 4–7. The State confirmed the Residency Requirements apply to Brinkmeyer and prevent him from holding equity in the Stores. Masse Decl. Ex. A. His claims are justiciable. Pet'r's Resp. at 2–8.

**B. The Residency Requirements violate the dormant Commerce Clause by limiting ownership of licensed businesses only to long-term residents.**

The State does not dispute the Residency Requirements facially discriminate against nonresidents. Nor does it address how facially discriminatory laws are generally struck without further inquiry as transparent violations of the dormant Commerce Clause. Instead, relying on *General Motors Corp. v. Tracy*, 519 U.S. 278 (1997), the State asserts the dormant Commerce Clause does not apply because Congress exercised its commerce power when passing the CSA. LCB Resp. at 5. Every court to address that question has disagreed. Pet'r's Mot. at 13–16.

**1. The Residency Requirements burden a lawful interstate market without the necessary congressional approval.**

The threshold question in *Tracy*, 519 U.S. at 299, was whether the allegedly favored and disfavored "companies are indeed similarly situated for constitutional purposes," not whether a unified national market exists, as the LCB contends. LCB Resp. at 4–5. The *Tracy* Court found the resident and nonresident actors competed in different markets by providing different products, so the state law at issue did not discriminate against them. *Tracy*, 519 U.S. at 297–300. *Tracy* directs courts to determine whether the favored and disfavored parties in a Commerce Clause challenge are similarly situated. *See, e.g.*, *Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 525–26 (9th Cir. 2009). They are "if their products

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

compete against each other in a single market." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1088 (9th Cir. 2013). Here, Brinkmeyer seeks to participate in the same licensed market Washington reserves to its long-term residents. He clears the threshold set by *Tracy*.

While mischaracterizing the holding in *Tracy*, the LCB cites it and *National Pork Producers Council*, 6 F.4th 1021 (9th Cir. 2021), to assert the dormant Commerce Clause does not apply where there is no national market.[3] LCB Resp. at 4–5. Neither case involved a durational residency requirement in commerce. Moreover, the State ignores how the interstate market for investment in licensed cannabis businesses is booming. Pet'r's Resp. at 11. The State thus ignores the relevant interstate commerce and does not explain how it violates federal law. This commerce strongly resembles investment in gambling companies as some states allow it and others do not. *See Gulch Gaming, Inc. v. State of S.D.*, 781 F. Supp. 621, 626–28 (D.S.D. 1991). If the LCB approves his application, then Brinkmeyer will join a licensed industry that has been legalized by the State. Treating that market as illegal violates state policy. I-502 § 1. Further, whether a market is legal or illegal "is of no constitutional import" when assessing whether the dormant Commerce Clause applies. *Gonzales v. Raich*, 545 U.S. 1, 19 n.29 (2005).

The State asserts its cannabis market is purely intrastate. LCB Resp. at 11. That is false, but if it was true, the dormant Commerce Clause would still apply. *Camps Newfound/Owatonna*, 520 U.S. at 573. Nonresidents can participate in Washington's cannabis market in a variety of ways, just not hold equity. Nonresidents can issue loans to and receive loan payments from cannabis companies, buy cannabis products, be employees of and receive paychecks from cannabis companies, and license their intellectual property and receive royalties from the sale of

---

[3] The State misstates the relevance of *National Pork Producers*. There, the plaintiff challenged requirements California set for the sale of pork meat in California in part by arguing the law created inconsistent standards for pork production nationally. *Nat'l Pork Producers*, 6 F.4th at 1031. The Ninth Circuit recognized "we have held that only state regulation of activities that are inherently national or require a uniform system of regulation violates the dormant Commerce Clause." *Id.* (internal quotes omitted). The fact that a state law violates the dormant Commerce Clause when it regulates certain markets of national concern that must have uniform regulations (such as taxation or interstate transportation) does not change that facially discriminatory laws in commercial licensing schemes separately violate the dormant Commerce Clause.

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

cannabis goods in Washington. WAC 314-55-035(7)(c); LCB Resp. at 11–12; *cf.* WAC 314-55-020(11); RCW 69.50.395; *see also Headspace Int'l LLC v. Podworks Corp.*, 428 P.3d 1260 (Wash. App. 2018). This case implicates interstate commerce, and the dormant Commerce Clause applies. *Camps Newfound/Owatonna*, 520 U.S. at 573.

Facial discrimination in a statute is subject to strict scrutiny even after *Tracy. Tracy*, 519 U.S. at 307 n.15; *see also Camps Newfound/Owatonna*, 520 U.S. at 582 n.16. With that standard, facially discriminatory laws in commerce are virtually per se invalid. Pet'r's Mot. at 7–9. States can adopt economically discriminatory laws only when Congress expressly states an unmistakably clear intent to allow that deviation from the dormant Commerce Clause. Pet'r's Resp. at 9–10. The LCB identifies no portion of the CSA or another statute that allows it to discriminate against nonresidents when regulating cannabis. Furthermore, the State cites no case where a court found that a federal prohibition on a particular good empowered states to economically discriminate against nonresidents when regulating the licensed sale of that good.

**2. There are no material distinctions between this case and the others that have stricken residency requirements in cannabis.**

Instead, the LCB attempts to distinguish the multiple federal court decisions that have stricken residency requirements in cannabis markets. Regarding *Northeast Patients Group v. Maine Dep't of Admin. & Fin. Servs.*, No. 1:20-CV-00468-NT, 2021 WL 3560840 (D. Me. Aug. 11, 2021), the LCB asserts a different outcome should occur because Maine's marijuana industry is not wholly intrastate. LCB Resp. at 11. Neither is Washington's. *Supra* at Section B.1. Further, the court expressly considered and rejected the State's interpretation of *Tracy. Ne. Patients*, 2021 WL 3560840 at *4 n.5. The State does not address the court's analysis on *Tracy* or explain why it was wrong. Thus, the distinctions the LCB advances are inaccurate, so the LCB has presented no reason why this Court should not follow the *Northeast Patients Group* decision.

The LCB asserts the courts in *NPG, LLC v. City of Portland, Maine*, No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020), and *Lowe v. City of Detroit*, 544 F. Supp.

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

3d 804 (E.D. Mich. 2021), should have applied the test in *Champion v. Ames*, 188 U.S. 321 (1903), to determine whether Congress enabled states to pass economically discriminatory laws. LCB Resp. at 10. *Champion* does not describe a Commerce Clause test, but stands for how Congress retains the power to ban markets from interstate commerce. *Champion*, 188 U.S. at 358–61. Of course it can. But when states choose to create markets for goods they could otherwise ban, they must adhere to constitutional limitations. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 513 (1996). The LCB cites no case where a court first considered whether a unified market existed in a challenge to a facially discriminatory state law.

For *Toigo v. Dep't of Health & Senior Servs.*, No. 2:20-CV-04243-NKL, 2021 WL 5533412 (W.D. Mo. June 21, 2021), the State quibbles with a parenthetical that purportedly misrepresents Supreme Court precedent. LCB Resp. at 12–13. The parenthetical the State objects to relates to the case it omitted from its quote, *NPG*. *Toigo*, 2021 WL 5533412, at *3. Both the *NPG* Court and Brinkmeyer cite Supreme Court precedent that identifies the test to determine whether Congress empowered states to economically discriminate. That test remains good law, and the only criticism the LCB has is that the test requires a specific grant of authority. LCB Resp. at 10. That is the law, not a basis to apply a lower standard to the State.

**C. The State's Justifications are irrational and have been rejected as a matter of law.**

Brinkmeyer addressed and refuted the Justifications in his motion, but the State just reiterated its Justifications without responding to Brinkmeyer's arguments. *Compare* Pet'r's Mot. at 9–13 *with* LCB Resp. at 6–8, 13–14. For example, the State asserted the Residency Requirements support Washington's law against interstate tied-houses. LCB Mot. at 7. But the State has no answer for how Washington law does not actually prohibit interstate tied-houses. Pet'r's' Mot. at 11–12. The LCB also has no answer for how, as a matter of law, residency requirements are not necessary to maintain oversight of licensed in-state businesses because the State can cancel licenses if licensees violate its rules, can monitor the business operations in-

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

state, and can thoroughly vet and approve applicants before issuing licenses. *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2475 (2019); *see also* Pet'r's Resp. at 11–16.

The LCB attempts to evade the directly applicable rationale in *Tennessee Wine* by asserting that cannabis attracts organized crime, but the liquor industry does not. LCB Resp. at 7. The liquor industry is renowned for its connection to organized crime. *See, e.g., Arnold's Wines, Inc. v. Boyle*, 571 F.3d 185, 187 (2d Cir. 2009) (describing how a three-tiered system was designed to exclude organized crime from the alcohol industry); *see also* RCW 66.28.290 (describing restrictions in Washington's three-tiered alcohol system). Regardless, the State investigates applicants to determine whether they pose a risk to public health and safety, including having connections to "criminal elements[.]" Smith Decl. ¶ 10. The Justifications thus have the same purpose as the justifications advanced in *Tennessee Wine* (and *Granholm*, and *Toigo*), and fail for the same reasons. *See also H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 538 (1949) ("[T]he state may not use its admitted powers to protect the health and safety of its people as a basis for suppressing competition.").

The State does not refute the logic of *Tennessee Wine*, but asserts the case is inapposite because it involved a different product. LCB Resp. at 7. The point in *Tennessee Wine* was that, given the abundance of nondiscriminatory tools at their disposal, states can successfully regulate licensed in-state business operations without requiring their owners to live in-state. That conclusion remains the same regardless of what goods the licensees sell. The State claims the Court should reach a different result because Congress directed states to treat in-state and out-of-state liquor on the same terms. LCB Resp. at 6. But that same requirement comes from the Constitution. *Camps Newfound/Owatonna.*, 520 U.S. at 571. Federal legislation must *authorize* economic discrimination; an independent act of Congress requiring fair treatment is unnecessary.

The State similarly did not disagree with the logic of *Toigo*, but instead asserted it presented a stronger record than the defendant. LCB Resp. at 13. The conclusory testimony from Captain Bolender and Rebecca Smith bears striking resemblances to the Boger Affidavit the

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

*Toigo* Court considered. 2021 WL 5533412 at *4. All asserted their applicable residency requirement promoted compliance with state law on how cannabis could be used, prevented diversion, aided investigations, and allowed for easier background checks. *Compare id. with* Bolender Decl. ¶¶ 2–6 *and* Smith Decl. ¶¶ 8–18. The *Toigo* Court properly ruled that *Tennessee Wine* rejected those Justifications as a matter of law. 2021 WL 5533412 at *4. While LCB staff believe the Residency Requirements make their job easier, administrative convenience does not justify violating the Constitution. *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 785 (9th Cir. 2014).

The only new Justifications the State added that Brinkmeyer did not address in his motion relate to how the State's Social Equity Program and collective garden system are allegedly served by the Residency Requirements.[4] LCB Mot. at 7. The Social Equity Program has no connection to the Residency Requirements. It applies to those who lived in "disproportionately impacted areas," which are not limited to Washington's borders. RCW 69.50.335(6)(b). The collective garden system has not existed for many years. Pet'r's Resp. at 14–15. The State has not carried its burden of showing the Justifications support the Residency Requirements.

**D. The Residency Requirements are not narrowly tailored.**

The State's response contains no argument that the Residency Requirements are narrowly tailored. To the extent it relies on how the State replaced a three-month residency requirement, that position is circular and unavailing. LCB Mot. at 17. The State argues that the six-month Residency Requirements are supported because "applicants would start out qualifying for a license, but by the end would not, because they were no longer a resident" when the three-month requirement applied. *Id*. This explanation fails to identify any legitimate interest other than compliance with an arbitrary timeframe. There is no justification for a Residency Requirement of any duration. *See Toigo*, 2021 WL 5533412, at *5.

---

[4] The LCB also asserted it did not admit that the primary purpose of the Residency Requirements is economic protectionism. LCB Resp. at 7–8. The very first justification the State identified was "creating business opportunities and jobs for Washingtonians[.]" Answer ¶ 18. That is economic protectionism since the State deprives nonresidents of those same opportunities. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 270–71 (1984).

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

**E. The Residency Requirements violate Brinkmeyer's fundamental rights to pursue a livelihood and travel—not a fundamental right to cannabis.**

Unable to refute how the Residency Requirements' facial discrimination against nonresidents violates the fundamental rights to travel and pursue a livelihood, the State asks the Court to rewrite Brinkmeyer's petition, disregard every brief he has filed in this matter, and treat his claims as vindicating a fundamental right to obtain a cannabis license. LCB Resp. at 15. Brinkmeyer has never asserted a fundamental right to a license or to cannabis. The fundamental right to cannabis was at issue in *Raich v. Gonzales*, 500 F.3d 850, 856 (9th Cir. 2007), because the plaintiff challenged the seizure of six marijuana plants she grew in her backyard. That type of personal use is distinct from the licensed commercial activity in which Brinkmeyer seeks to participate. If Brinkmeyer were asking the Court to order the LCB to issue him a license or grow and sell cannabis outside the licensed market, then the LCB's argument would make more sense. But, as the LCB has acknowledged, it will need to vet Brinkmeyer and verify he meets its high standards before he gets a license even if he prevails in this case. Dkt. #18 at 7–8. Brinkmeyer has no desire to participate in an unlicensed market. Brinkmeyer Decl. ¶ 9.

The LCB relies on *Raich* and other cases interpreting Fourteenth Amendment due process liberty rights to suggest the Court should not apply the tests for violations of the rights to travel or pursue a livelihood. LCB Resp. at 15. But only one of Brinkmeyer's five remaining claims relies on that portion of the Fourteenth Amendment. The LCB cites no case where a Court reframed a fundamental right under Article IV or the Fourteenth Amendment's protection of the right to travel. It is settled law that those portions of the Constitution are violated when a state discriminates against nonresidents when crafting licensing schemes in commerce because that discrimination "deprive[s] citizens of their right to have access to the markets of other States on equal terms." *Granholm v. Heald*, 544 U.S. 460, 473 (2005); *see also* Pet'r's Mot. at 16–22.

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

**1. Article IV Privileges and Immunities Clause**

The LCB asserts Brinkmeyer has no protection to pursue an unlawful livelihood. LCB Resp. at 16–17. But he is not asking the Court to let him to open a cannabis store where they are not already allowed. He asks for the same right as everyone else to apply for a license that will allow him to pursue a livelihood that is legal in Washington and most other states. *See* Smith Decl. Ex. 5. Because the State allows its long-term residents to compete for licenses to do business in Washington, it must give nonresidents those same opportunities to compete. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274, 279–80 (1985) (collecting cases).

Further, the Court need not find a fundamental right to cannabis to find a violation of the rights to travel or pursue a livelihood. Pet'r's Resp. at 17–18. The quintessential violation of those fundamental rights is when a state licensing scheme limits commercial opportunities for nonresidents. *Toomer v. Witsell,* 334 U.S. 385, 395–96 (1948).

To survive Brinkmeyer's Privileges and Immunities Clause challenge, the State needed to prove there was a substantial reason for its differential treatment. Pet'r's Mot. at 19. The State made no attempt to do so.[5] Similarly, the State made no attempt to identify a substantial relationship to legitimate state objectives or explain why less restrictive means are not adequate. *See id*. at 20. To the extent the Court considers the Justifications, they fail here for the same reasons they fail under the dormant Commerce Clause. Therefore, there is no basis to find the Residency Requirements comply with the Privileges and Immunities Clause.

**2. Fourteenth Amendment Right to Travel**

The LCB has asserted Brinkmeyer lacks standing to raise his Fourteenth Amendment right to travel claims because he does not desire to become a Washington resident. LCB Resp. at 4. That is a "fundamental misunderstanding of the law." *Dunn v. Blumstein*, 405 U.S. 330, 339–340 (1972); *see also* Pet'r's Resp. at 19–20.

[5] The State admits the Residency Requirements were "based on *a fear*" that marijuana could be diverted, but offers no evidence that nonresidents are more likely to realize that fear than residents. LCB Resp. at 7 (emphasis added).

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

The State does not attempt to show the Residency Requirements satisfy strict scrutiny. Instead, by analogizing to cases involving divorce and college tuition, it asserts there is no violation of the right to travel because new Washington residents need merely "wait their turn" before gaining the commercial benefits of Washington residency. LCB Resp. at 17–18. Those cases did not involve durational residency requirements in commerce. Instead, both divorce and tuition are portable state benefits, and "the Supreme Court has upheld benefits schemes based on residence when the benefit offered is a portable one that a nonresident could immediately obtain and take out of the state." *Harris v. Hahn*, 827 F.3d 359, 363–64 (5th Cir. 2016) (citing *Martinez v. Bynum*, 461 U.S. 321, 332–33 (1983) (tuition); *Sosna v. Iowa*, 419 U.S. 393, 408–09 (1975) (divorce)). Portable benefits like divorce and education are different than commercial restrictions. *See Hassan v. Town of E. Hampton*, 500 F. Supp. 1034, 1041 (E.D.N.Y. 1980) ("Unlike the Iowa statute considered and upheld in *Sosna* which allows a patient Iowa petitioner to ultimately obtain the desired Iowa divorce adjudication, a similarly patient East Hampton shellfisherman cannot live in the town for one year and then regain the lost opportunity to pursue his livelihood for the statutory waiting period."). There is no "waiting your turn" to make up for lost opportunities in a market the State reserves to its long-term citizens.

**F. Fourteenth Amendment Right to Pursue a Profession**

Brinkmeyer's Fourteenth Amendment right to pursue a profession claim is subject to rational basis review, and he has established there is no rational basis for the Residency Requirements. Pet'r's Mot. at 22–24 (citing *Gulch Gaming*, 781 F. Supp. 621). The LCB disagrees because *Gulch Gaming* involved gambling, not cannabis. LCB Resp. at 8–9. Gambling and licensed cannabis markets are similar. Both have a patchwork of states that have legalized their markets, and both may have investors' whose home states may not have legalized gambling or cannabis. Regulators of both markets seek to exclude the involvement of criminal elements, which is not advanced by residency requirements. *Gulch Gaming*, 781 F. Supp. at 631–32.

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

The LCB misreads *Gulch Gaming* when it asserts the court found no rational basis because South Dakota issued licenses to foreign corporations, but required shareholder residency. LCB Resp. at 9. The court found that distinction was the root of the state's discrimination, but the lack of a rational basis was because the state's legitimate objectives were already achieved by nondiscriminatory means including how the licensees "must meet certain standards for character, honesty, and morality."[6] *Gulch Gaming*, 781 F. Supp. at 631. The same is true in Washington. The State's enforcement powers, vetting process, and discretion in approving applications will remain if the Residency Requirements are struck. Those tools already accomplish the State's goals. Smith Decl. ¶ 22; *see also Toigo*, 2021 WL 5533412, at *5.

The State also relies on *Chance Management, Inc. v. State of South Dakota*, 97 F.3d 1107 (8th Cir. 1996), to assert the Residency Requirements survive rational basis without discussing the market participant exception to the dormant Commerce Clause. In applying that exception, the court held that the state was "acting as a market participant" so the dormant Commerce Clause did not apply. *Id*. at 1111. The court also found the plaintiff did not assert a violation of a fundamental right for his equal protection claim, so rational basis applied. *Id*. at 1114–16. In contrast, the State does not contend it is a market participant in the cannabis industry, and there is no basis to find the market participant exception applies. Unlike the *Chance Management* plaintiff, Brinkmeyer has asserted the Residency Requirements violate his fundamental rights, so strict scrutiny applies to his equal protection claim. Pet'r's Mot. at 21. The court did not criticize the *Gulch Gaming* decision, but found the state's role in administering that residency requirement was different because "[i]n *Gulch Gaming*, the state had no ownership interest in the gaming activity and was acting solely as a regulator" of private businesses. *Chance Management*, 97 F.3d at 1111. The State is not acting as a market participant in its cannabis industry, so the Court should follow *Gulch Gaming*, not *Chance Management*.

---

[6] In its discussion of the Fourteenth Amendment's protection of the right to travel, the *Gulch Gaming* Court did not have the benefit of the Court's clarification of that right in *Saenz*, 526 U.S. 489, which came eight years later.

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

### G. The Court should exercise its equitable powers to strike the Residency Requirements.

The LCB already agreed the Court should reach the merits of Brinkmeyer's claims. Dkt. #18 at 2, 8. But the State now contradicts itself by asking the Court follow the minority of one in *Original Investments v. State*, 542 F. Supp. 3d 1230 (W.D. Okla. 2021), and decline to exercise its equitable powers. LCB Resp. at 5. By the LCB's own admissions, the concerns that led the *Original Investments* Court to decline to exercise its discretion are not present here. There, the court found it would be facilitating illegal conduct, but the LCB admits that will not happen if the Court grants Brinkmeyer's relief. Dkt. #18 at 7–8. Moreover, all three branches of the federal government have warmed to licensed cannabis industries, and the type of relief Brinkmeyer requests is among the relief federal courts award cannabis companies. *See generally* Dkt. #49. It would be more problematic for the Court to allow a facially discriminatory law to remain in effect than to provide injunctive relief that requires the State to treat nonresidents fairly while simultaneously preserving the State's ability to maintain oversight and exercise its discretion when regulating Washington's cannabis industry.

***

The State cannot create a licensed commercial market that makes it and its residents billions of dollars and then exclude nonresidents from competing in that market on similar terms. That type of economic discrimination deeply offends the Constitution as reflected by the abundant federal courts that strike durational residency requirements in commerce, including the cannabis industry. The State already has the tools to achieve its public health and safety goals without limiting ownership of its cannabis businesses to long-term residents. Brinkmeyer asks the Court to grant summary judgment, and join an overwhelming majority of federal courts by enjoining the State from enforcing the Residency Requirements.

DATED this 8th day of March, 2022.

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

MILLER NASH LLP

*/s/ Andy Murphy*

Daniel J. Oates, WSBA No. 39334
Andy Murphy, WSBA No. 46664
MILLER NASH LLP
Pier 70 ~ 2801 Alaskan Way, Suite 300
Seattle, WA 98121
Tel: 206-624-8300
Fax: 206-340-9599
Email: *Dan.Oates@millernash.com*
*Andy.Murphy@millernash.com*
*Attorneys for Petitioner*

PETITIONER'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT - 13
Case No. 20-2-01568-34

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of March, 2022, a copy of the foregoing document was served upon the attorneys of record in the above cause as follows:

| | |
|---|---|
| PENNY ALLEN, WSBA No. 18821<br>ELLEN RANGE, WSBA No. 51334<br>Assistant Attorneys General<br>1125 Washington St SE<br>Olympia, WA 98501<br>Phone: (360) 753-2702<br>Email: Pennyl.Allen@atg.wa.gov<br>Ellen.Range@atg.wa.gov<br><br>*Attorneys for Respondent* | ☐ via Hand Delivery<br>☐ via U.S. Mail<br>☐ via Facsimile<br>☒ via E-Service<br>☐ via Email |
| TAKI V. FLEVARIS, WSBA No. 42555<br>JUSTIN P. MCCARTHY, WSBA No. 58868<br>Pacficia Law Group LLP<br>1191 Second Ave, Ste 2000<br>Seattle, WA 98101<br>Phone: (206) 245-1700<br>Email: taki.flevaris@pacificalawgroup.com<br>justin.mccarthy@pacificalawgroup.com | ☐ via Hand Delivery<br>☐ via U.S. Mail<br>☐ via Facsimile<br>☐ via E-Service<br>☒ via Email |

Under the laws of the state of Washington, the undersigned hereby declares, under the penalty of perjury, that the foregoing statements are true and correct to the best of my knowledge.

Executed at Seattle, Washington, this 8th day of March, 2022.

*s/ Brie Geffre*
Brie Geffre, Legal Assistant

4853-8283-9314.3

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Suite 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599