1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Honorable Benjamin H. Settle

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

TODD BRINKMEYER,

                  Petitioner,

   v.

WASHINGTON STATE LIQUOR AND
CANNABIS BOARD,

                Respondent.

NO. 3:20-cv-05661-BHS

RESPONDENT'S
SUPPLEMENTAL BRIEFING IN
SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:

OCTOBER 21, 2022

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF CONTENTS**

I.    INTRODUCTION................................................................................................ 2

II.   SUPPLEMENTAL ARGUMENT ..................................................................... 3

    A.   The First Circuit's Holding Relies on an Interpretation of the Rohrabacher-Farr Amendment that is Contrary to Ninth Circuit Law and Does Not Account for Washington's Recreational Cannabis Intrastate Market ..................................... 3

    B.   The First Circuit Failed to Adequately Address Congress's Intent to Prohibit a National Cannabis Market and Keep It Intrastate.................................................... 5

    C.   Federal Courts Cannot Give Equitable Remedies to Businesses that Want to Engage in Federal Criminal Activity .............................................................. 7

    D.   Extending Dormant Commerce Clause Protections to Federal Contraband Circumvents Congress's Regulation of Commerce and Causes Serious Implications for State Regulation ................................................................. 7

III.  CONCLUSION .................................................................................................. 9

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1

2

## TABLE OF AUTHORITIES

### <u>Cases</u>

3

*California v. Zook,*
    336 U.S. 725 (1949)................................................................................. 5, 6

4

5

*Gamble v. United States,*
    139 S. Ct. 1960 (2019)................................................................................. 7

6

*Gonzales v. Raich,*
    545 U.S. 1 (2005)....................................................................................... 6, 8

7

8

*Ne. Patients Grp. v. Maine Dep't of Admin. & Fin. Servs.,*
    554 F. Supp. 3d 177 (D. Me. 2021)............................................................. 4

9

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine,*
    45 F.4th 542 (1st Cir. 2022)............................................................... passim

10

11

*Pic-A-State PA, Inc. v. Pennsylvania,*
    42 F.3d 175 (3d Cir. 1994).................................................................... 5, 6

12

*Predka v. Iowa,*
    186 F.3d 1082 (8th Cir. 1999)............................................................... 5, 6

13

14

*Gen. Motors Corp. v. Tracy,*
    519 U.S. 278 (1997).......................................................................... 6, 7, 9

15

*Shelton v. Liquor & Cannabis Board,*
    No. C22-5135, 2022 WL 2651617 (W.D. Wash. July 8, 2022) ............ 2, 7

16

17

*Terk v. Ruch,*
    655 F. Supp. 205 (D. Colo. 1987).......................................................... 5, 6

18

*United States v. McIntosh,*
    833 F.3d 1163 (9th Cir. 2016) ....................................................... 2, 3, 9

19

20

*United States v. Nixon,*
    839 F.3d 885 (9th Cir. 2016) ................................................................. 2, 3

21

### <u>Statutes</u>

22

2013 Wash. Sess. Laws 29...................................................................................... 9

23

2015 Wash. Sess. Laws 287.................................................................................... 4

24

2015 Wash. Sess. Laws 288.................................................................................... 4

25

2015 Wash. Sess. Laws 304.................................................................................... 4

26

Wash. Rev. Code § 69.50.331(1)(b) (2020) ........................................................ 6

Wash. Rev. Code § 69.50.375 (2022)................................................................... 4

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  Wash. Rev. Code § 69.51A.010(19)(a)(iii) (2015) ........................................ 4

2                                    **Regulations**

3  Wash. Admin. Code § 314-55-020(11) (2021) .......................................... 6

4  Wash. Admin. Code § 314-55-035(1) (2020) ........................................... 6

5                              **Other Authorities**

6  *Cole* memo
        Memorandum for all United States Attorneys from James M. Cole, Deputy Attorney
7       General, U.S. Dep't of Justice (Aug. 29, 2013) ...................................... 6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

## I.   INTRODUCTION

2      The dissent, rather than the majority in the First Circuit's divided *Northeast Patients*

3  *Group* decision, offered the analytic approach consistent with this Court's prior rulings and that

4  this Court should continue to follow. As this Court previously recognized, "As an arm of the

5  federal government, this Court cannot order activity that remains federally illegal." *Shelton v.*

6  *Liquor & Cannabis Board*, No. C22-5135, 2022 WL 2651617, at *5 (W.D. Wash. July 8, 2022)

7  (citation omitted). In line with this Court, the dissent in *Northeast Patients Group* correctly

8  recognized: "[A]ppellees should not be able to receive a constitutional remedy in federal court

9  to protect the sale and distribution of a controlled substance which remains illegal under federal

10  law." *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Maine*, 45 F.4th 542, 560

11  (1st Cir. 2022) (Gelpi, J., dissenting).

12      In contrast, the First Circuit held that Maine's residency requirement for officers and

13  directors of medical cannabis dispensaries violated the dormant Commerce Clause. *Ne. Patients*

14  *Grp.*, 45 F.4th at 556. In so doing, it repeatedly relied on a congressional appropriations rider as

15  evidence of congressional approval for a national medical cannabis market. *See id.* at 547, 549,

16  553. However, in considering this same rider, the Ninth Circuit recognized it did not and does

17  not repeal the Controlled Substances Act (CSA). *See United States v. McIntosh*, 833 F.3d 1163,

18  1179 and n.5 (9th Cir. 2016); *United States v. Nixon*, 839 F.3d 885, 887-88 (9th Cir. 2016)

19  (rejecting the argument that the appropriations rider suspended the CSA). Therefore, under the

20  Ninth Circuit's analysis, this Court should not find congressional approval for an interstate

21  market in cannabis.

22      With cannabis's status as federal contraband settled, the usual dormant Commerce

23  Clause analysis does not apply. For this illegal market, there is no reason to ask if there is

24  discrimination against interstate commerce or if there are undue burdens on interstate commerce,

25  where the product and the sale of that product in an interstate market remains illegal. An illicit

26  national market for illegal substances will always exist, but the dormant Commerce Clause

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

should not be invoked to protect that illicit market. The threshold question should be, does the dormant Commerce Clause apply at all? And for Washington's cannabis market, the answer should be no, it does not.

## II.   SUPPLEMENTAL ARGUMENT

This Court should decline to follow the First Circuit's non-binding authority, because: (1) The opinion relies on Congress's tacit approval for a medical cannabis interstate market, whereas the Ninth Circuit has found otherwise; (2) The dormant Commerce Clause should not be used to protect a non-unified market consisting of federal contraband; (3) This Court should not use its equitable powers to support federal criminal activity; and (4) Extending dormant Commerce Clause protections to federal contraband circumvents Congress's prohibition and causes serious implications for state regulation.

### A.   The First Circuit's Holding Relies on an Interpretation of the Rohrabacher-Farr Amendment that is Contrary to Ninth Circuit Law and Does Not Account for Washington's Recreational Cannabis Intrastate Market

The First Circuit primarily based its holding that Maine's medical cannabis residency requirements violated the dormant Commerce Clause on finding an interstate market for medical cannabis. *Ne. Patients Grp.*, 45 F.4th at 547-48. According to the First Circuit, both Congress's Rohrabacher-Farr Amendment and Maine's legislation contemplated and approved an interstate market for medical cannabis. *Id.* However, under Ninth Circuit law and in consideration of Washington's intrastate cannabis framework, this Court should hold that the dormant Commerce Clause does not apply.

The First Circuit considered the Rohrabacher-Farr Amendment to be "the last word" by Congress on the legality of medical cannabis. *Id.* at 549. However, according to the Ninth Circuit, this reading of the Rohrabacher-Farr Amendment is incorrect. *See McIntosh*, 833 F.3d at 1179. Despite defunding enforcement, the Ninth Circuit noted cannabis remains illegal under federal law. *Id.* at n.5; *see also Nixon*, 839 F.3d at 888. Therefore, following the Ninth Circuit's analysis in *McIntosh*, this Court should not rely on the congressional appropriations rider as evidence of

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1   congressional support for an interstate cannabis market as the First Circuit did for the medical

2   cannabis market.

3        Additionally, the First Circuit opinion is limited to the medical cannabis market, a market

4   that does not exist as a separate market from recreational cannabis in Washington. In *Northeast*

5   *Patients Group*, the residency requirements at issue were for officers and directors of medical

6   cannabis dispensaries. *See Ne. Patients Grp.*, 45 F.4th at 544. The court's analysis leaned heavily

7   on the Rohrabacher-Farr Amendment, which solely affects enforcement for medical cannabis.

8   *Id.* at 547, 549, 553. This analysis of the medical cannabis market does not apply to Washington

9   because it does not have a separate medical market, as Maine did. Rather, after the passage of

10  the Cannabis Patient Protection Act in 2015, the medical and recreational markets were

11  integrated and all medical dispensaries were required to obtain licensure or close by July 2016.

12  2015 Wash. Sess. Laws 287-288, 304. Currently, a cannabis retail license may sell both

13  recreational and (with a special endorsement) medical grade cannabis. *See* Wash. Rev.

14  Code § 69.50.375 (2022). As Washington does not have a separate medical cannabis market to

15  which the Rohrabacher-Farr Amendment applies, this Court should not find congressional

16  support for its market to be interstate.

17       Moreover, Maine did not labor to create an intrastate market, as Washington did.

18  The First Circuit found Maine's cannabis legislation encouraged out-of-staters to participate in

19  the medical cannabis market as customers. *See Ne. Patients Grp.*, 45 F.4th at 547. The district

20  court further elaborated that these out-of-staters would presumably bring their cannabis back

21  home with them, thus creating an interstate market for medical cannabis. *See Ne. Patients Grp.*

22  *v. Maine Dep't of Admin. & Fin. Servs.*, 554 F. Supp. 3d 177, 184 (D. Me. 2021). In contrast,

23  Washington passed laws and promulgated regulations that endeavor to create a purely intrastate

24  cannabis market. See Dkt. # 42 at p. 17-18. Washington law does not allow nonresidents to

25  obtain a medical cannabis card. *Id.* at p. 17 (citing Wash. Rev. Code § 69.51A.010(19)(a)(iii)

26  (2015)). It also warns residents and nonresidents that taking cannabis across state lines or onto

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1  federal lands is illegal. *Id.* at 18. This Court should therefore not treat Washington's regulatory

2  scheme as one that embraces interstate commerce.

3  **B.    The First Circuit Failed to Adequately Address Congress's Intent to Prohibit a National Cannabis Market and Keep It Intrastate**

4

5  The First Circuit only briefly addressed whether dormant Commerce Clause protections

6  can be applied if there is no legal market. *See Ne. Patients Grp.,* 45 F.4th at 556-57. It asked,

7  "[W]hy . . . it would be improper for us to apply the dormant Commerce Clause here?" *Id.* at

8  556. It then answered this question by stating, "There is an interstate market, and a state is trying

9  to protect its advantageous position with respect to it." *Id.* It therefore fails to treat the question

10  of applicability as a threshold question. *See id.* As recognized by the dissent, only legal national

11  markets merit the dormant Commerce Clause's concern with states setting up trade barriers and

12  discriminating against out-of-state competitors. *See id.* at 559 (dissent). Other courts concur.

13  *See Pic-A-State PA, Inc. v. Pennsylvania,* 42 F.3d 175, 179-80 (3d Cir. 1994); *Predka v. Iowa*,

14  186 F.3d 1082, 1085 (8th Cir. 1999); *and Terk v. Ruch*, 655 F. Supp. 205, 215 (D. Colo. 1987).

15  The First Circuit relies on *Zook* and *Pic-A-State* to support its conclusion that the dormant

16  Commerce Clause should apply to the medical cannabis market; however, in the Ninth Circuit,

17  these cases support the conclusion that the dormant Commerce Clause should not apply to the

18  cannabis market. *See Ne. Patients Grp.,* 45 F.4th at 557 (citing *California v. Zook*, 336 U.S. 725,

19  726 (1949); *Pic-A-State PA, Inc.*, 42 F.3d at 179-80. The difference in outcome turns on whether

20  there is a finding of congressional approval for an interstate market. In *Zook* and *Pic-A-State*,

21  the courts declined to apply the dormant Commerce Clause to strike down state statutes that

22  aligned with congressional intent to prohibit an interstate market. *See Zook*, 336 U.S. at 735-38;

23  *Pic-A-State PA, Inc.,* 42 F.3d at 179. In *Northeast Patients Group*, the First Circuit found

24  Congress intended for there to be an interstate market in medical cannabis. *See Ne. Patients Grp.,*

25  45 F.4th at 549. Despite this intent, Maine instituted residency restrictions for medical cannabis

26  dispensaries for "pure[ly] protectionis[t]" reasons. *See id.* at 550. Therefore, for medical

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO. 3:20-CV-05661-BHS

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

cannabis, the First Circuit concluded that Maine's residency requirements impermissibly set up trade barriers to an interstate market contemplated by Congress and should be struck down under the dormant Commerce Clause. *Id.* at 553-56.

This same rule of congressional intent compels a different result for Washington's cannabis market that involves recreational cannabis. Under *Zook*, it is congressional intent – and not the still standing illegal market – that matters. *See Zook*, 336 U.S. at 730-31. Furthermore, as articulated by the Third Circuit in *Pic-A-State*, "Where Congress has proscribed certain interstate commerce, . . . it does not offend the purpose of the Commerce Clause for states to discriminate or burden that commerce." *Pic-A-State PA, Inc.,* 42 F.3d at 179. Here, although there may be a national illegal market for cannabis, Congress intended to prohibit all cannabis markets. *See Gonzales v. Raich*, 545 U.S. 1, 26 (2005). Washington's Residency Requirements are part of a regulatory scheme meant to keep the cannabis market intrastate and compliant with the federal guidelines articulated in the *Cole* memo. *See* Dkt. # 42 at p. 17-18; Dkt. #32, Ex. 1. Therefore, like the courts in *Zook* and *Pic-A-State*, this Court should not apply the dormant Commerce Clause to strike our state's Residency Requirements down. Instead, this Court should follow the Third Circuit and Eighth Circuits, which held that the dormant Commerce Clause is not implicated for contraband. *See Pic-A-State*, 42 F.3d at 179; *Predka*, 186 F.3d at 1085; *see also Terk*, 655 F. Supp. at 215.

Additionally, under *General Motors v. Tracy*, this Court could find that the dormant Commerce Clause does not apply to the cannabis industry, because it consists of multiple, non-unified intrastate markets. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 299 (1997). In that case, the Supreme Court held that the dormant Commerce Clause did not apply to state-siloed non-national markets for natural gas. *Id.* at 300. Here, the cannabis industry is also a market consisting of state-siloed, non-national markets. In fact, the Rohrbacher-Farr Amendment, taken in context of the *Cole* memo and the CSA, should be read to signal support for multiple, independent intrastate markets, subject to alternate state regulations – not a national market where states are engaging in

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

1   illegal narcotics trafficking. This interpretation heeds the CSA and allows states to act as the

2   laboratories of democracy. *Cf. Gamble v. United States*, 139 S. Ct. 1960, 1969 (2019). Under *Tracy*,

3   the dormant Commerce Clause does not apply to strike down these state regulations, because there

4   is no national market to protect. 519 U.S. at 300. The First Circuit did not address this second basis

5   for not applying the dormant Commerce Clause to the cannabis market, but it is squarely before this

6   Court. *See* Dkt. # 42 at p. 10-11.

7   **C.      Federal Courts Cannot Give Equitable Remedies to Businesses that Want to Engage
            in Federal Criminal Activity**

8

9           The First Circuit also briefly addressed the dissent's argument that a federal court cannot

10  use its equitable powers to protect activity that is criminal under federal law. *See Ne. Patients*

11  *Grp.,* 45 F.4th at 557. In affirming the district court's injunction, the First Circuit again relied on

12  the fact that Congress barred enforcement of the federal criminal prohibition for medical

13  cannabis. *Id.* at 557-58. It also suggested that a federal court should ignore the illegal status of

14  cannabis and intercede, where, as it found, a business is suffering a constitutional harm. *Id.*

15  However, as demonstrated *supra*, there is no dormant Commerce Clause harm when the product,

16  per the Ninth Circuit, is federal contraband. Likewise, this Court recognizes that cannabis

17  continues to be illegal under the CSA. *See* Show Cause Order, Dkt. # 17 at p. 2. Therefore,

18  "Brinkmeyer is requesting that this Court declare unconstitutional laws that prevent him from

19  engaging in the business of cultivating a controlled substance . . . [and] allow[] [him] to

20  participate in violations of the CSA." *Id.* This Court should reject that request, as it has others.

21  *See, e.g.*, *Shelton*, 2022 WL 2651617, at *5.

22  **D.      Extending Dormant Commerce Clause Protections to Federal Contraband
            Circumvents Congress's Regulation of Commerce and Causes Serious Implications
            for State Regulation**

23

24          The First Circuit's decision applies the dormant Commerce Clause based on its

25  conclusion that Congress's efforts to eradicate cannabis from the interstate market is not

26  completely effective, as evinced by the continued existence of illicit markets. *See Ne. Patients*

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS                                    7                ATTORNEY GENERAL OF WASHINGTON
                                                                                    1125 Washington Street SE
                                                                                         PO Box 40100
                                                                                     Olympia, WA 98504-0100
                                                                                        (360) 664-9006

*Grp.,* 45 F.4th at 547-48. Application of the Commerce Clause, however is tied to Congress's intent to regulate an article, not performance outcomes of Congress's attempted regulation. And the CSA makes plain Congress's intent to exclude cannabis from the interstate market. *Raich*, 545 U.S. at 26.

Indeed, the federal government continues to enforce the CSA with regard to cannabis throughout the country. According to recent data from the Drug Enforcement Administration, in 2021, federal law enforcement agents seized over 5.5 million cannabis plants, 743,920 pounds of processed cannabis, excluding wax/oil and edibles, and made more than 6,600 cannabis related arrests.[1] Seizures and arrests occurred in every state including those with regulated markets such as Washington. These numbers represent a 20 percent increase in seizures and 25 percent more arrests than the previous year. Indeed, the DEA reports that it is "aggressively striving to halt the spread of cannabis cultivation in the United States."[2] There is no question that cannabis remains federally illegal, or that Congress did not intend to allow an illegal interstate market. Without which, this Court should not extend dormant Commerce Clause protection to cannabis and thereby, sanction an interstate market.

Adopting the First Circuit's holding that cannabis production and distribution is entitled to dormant Commerce Clause protection contorts the role of the judiciary vis-à-vis congressional Commerce Clause powers and traditional state police powers. It circumvents Congress's exercise of its Commerce Clause powers to ban cannabis from the market. It is Congress who decides whether a national market should exist, and absent legislation, courts should not extend dormant Commerce Clause protection to a market that Congress declared illegal. A decision here that holds interstate cannabis production and distribution is protected has a significant impact on a state's ability to protect public health and safety by tightly regulating cannabis and keeping it

---

[1] 2021 Final Domestic Cannabis Eradication/Suppression Program Statistical Report, *available at*: https://www.dea.gov/sites/default/files/2022-03/Copy%20of%202021%20DCESP%20Program%20Stats-converted.xlsx.

[2] Domestic Cannabis Suppression / Eradication Program, *available at*: https://www.dea.gov/operations/eradication-program.

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006

"out of the hands of illegal drug organizations." *See* Dkt. # 39 at p. 12-13; 2013 Wash. Sess. Laws 29. For example, states with regulated markets, either medical or recreational, could be limited in their ability to prevent the import or export of cannabis, i.e., federal contraband, if cannabis is protected by the dormant Commerce Clause. This result is not what the constitutional framers intended, despite their parallel worries regarding trade barriers for legal commerce such as apples and livestock. In the end, the dormant Commerce Clause should not be used to trump Congress's exercise of its Commerce Clause powers to ban cannabis from the national market.

### III.   CONCLUSION

In conclusion, *Northeast Patients Group*, does little to disturb the arguments before this Court. The First Circuit's holding depends on a finding of a national market for medical cannabis and congressional support in an appropriations rider that solely concerned medical cannabis. However, the *McIntosh* Ninth Circuit reached a contrary conclusion regarding the effect of the rider. Moreover, this rider poses little to no consequence for Washington's integrated medical and recreational cannabis market. Therefore, this Court should follow the *Tracy* Supreme Court and Eighth and Third Circuit holdings that the dormant Commerce Clause does not apply to non-unified intrastate markets involving federal contraband.

DATED this 21st day of October 2022.

ROBERT W. FERGUSON
Attorney General

*/s/ Ellen Range*
PENNY ALLEN, WSBA No. 18821
ELLEN RANGE, WSBA No. 51334
Assistant Attorneys General
1125 Washington St SE
Olympia, WA 98501
Phone: (360) 586-0092
Email: PennyL.Allen@atg.wa.gov
Email: Ellen.Range@atg.wa.gov
*Attorneys for Respondent*

RESPONDENT'S SUPPLEMENTAL
BRIEFING IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT
-- NO.  3:20-CV-05661-BHS

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 664-9006