THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TODD BRINKMEYER

    Petitioner,

  v.

WASHINGTON STATE LIQUOR AND CANNABIS BOARD,

    Respondent.

Case No. 3:20-cv-05661-BHS

**PETITIONER'S SUPPLEMENTAL BRIEF**

NOTE ON MOTION CALENDAR:

October 21, 2022

PETITIONER'S SUPPLEMENTAL BRIEF
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

## I. INTRODUCTION

The First Circuit has joined the overwhelming majority of federal courts to consider the question by holding that residency requirements for ownership of a licensed cannabis business violate the dormant Commerce Clause. The residency requirement considered by the First Circuit in *Northeast Patients Group v. United Cannabis Patients and Caregivers of Maine*, 45 F.4th 542 (1st Cir. 2022), is functionally equivalent to the Residency Requirements at issue in this case.[1] In both cases, the states conceded the protectionist and discriminatory nature of their respective statutes, but defended them by arguing the dormant Commerce Clause was inapplicable because of the Controlled Substances Act ("CSA"). But both the Washington State Liquor and Cannabis Board ("LCB") and Maine's Department of Administrative and Financial Services ("Maine") misinterpret the CSA as Congressional authorization for states to regulate licensed commerce in unconstitutionally protectionist ways.

Brinkmeyer's challenge on dormant Commerce Clause grounds is the same as the *Northeast Patients* plaintiffs, and Maine advanced the same arguments as the LCB does in this case. Those arguments rely upon the same laws, legal principles, and Supreme Court precedents considered by the First Circuit. Accordingly, Brinkmeyer asks this Court to follow the First Circuit and every District Court considering this issue on the merits by finding that the Residency Requirements violate the dormant Commerce Clause.

## II. EVIDENCE RELIED UPON

This supplemental brief relies on the Declaration of Andy Murphy in Support of Petitioner's Supplemental Brief ("Murphy Decl.") and the Declaration of Scott Atkison in Support of Petitioner's Supplemental Brief ("Atkison Decl.").

## III. FACTUAL BACKGROUND

In 2009, Maine passed a comprehensive medical cannabis reform. *Ne. Patients Grp. v. Maine Dep't of Admin. and Fin. Servs.*, 554 F. Supp. 3d 177, 179 (D. Me. 2021). That regulatory

---

[1] "Residency Requirements" is used as defined in Brinkmeyer's previous briefing to include RCW 69.50.331 (1)(b)(ii)–(iv) and WAC 314-55-020(11).

PETITIONER'S SUPPLEMENTAL BRIEF- 1
USDC No. 3:20-cv-05661-BHS

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

scheme legalized dispensaries to sell cannabis to qualified patients but required that "[a]ll officers or directors of a dispensary must be residents of [Maine]."[2] *Id.* at 180 (quoting 22 M.R.S.A § 2428(6)(H)). Directors, managers, shareholders, board members, and other persons holding management positions or ownership interests in the dispensary are "officers and directors" by statute. *Id.* (quoting 22 M.R.S.A § 2422(6-B)).

A nonresident member of Northeast Patients Group sought to purchase an existing Maine medical cannabis business and challenged the residency requirements.[3] *Id*. The District Court ruled that the residency requirements violated the dormant Commerce Clause despite the CSA. *Id.* at 185. Maine appealed the decision to the First Circuit, which affirmed the District Court. The First Circuit joined every other District Court to address the question on the merits and held that the CSA nor any constitutional principles allow a state to enact protectionist residency requirements for their licensed cannabis markets. *Ne. Patients*, 45 F.4th at 557–58; *see also* Dkt. 34 at 18–19 (listing federal courts have that invalidated residency requirements in cannabis).

### IV. ARGUMENT

That same question is now before this Court. Notably, Brinkmeyer's argument that the Residency Requirements violate the dormant Commerce Clause mirrors the reasoning employed by the First Circuit by arguing that *Tennessee Wine & Spirits Ass'n v. Thomas*, 139 S. Ct. 2449 (2019), forecloses any question that durational residency requirements in commerce violate the dormant Commerce Clause. Dkt. 34 at 12; *Ne. Patients*, 45 F.4th at 546 (directly comparing Maine's residency requirements with the residency requirement in *Tennessee Wine*).

Despite the overwhelming amount of precedent that shows the Residency Requirements are unconstitutional, the LCB, like Maine, argues that the CSA displaces the ordinary dormant Commerce Clause analysis. *See* Dkt. 39 at 18–20. The First Circuit rejected those same

---

[2] Maine previously instituted similar residency requirements for its recreational cannabis market, but Maine's attorney general refused to defend those regulations "as not likely to withstand constitutional challenge." *See* Murphy Decl. Ex. A ("Maine's Appeal Brief") at 19 n.4.
[3] Notably, this desired purchase vested the plaintiff with standing to challenge Maine's residency requirement. *See* Dkt. 43 at 8–13.

PETITIONER'S SUPPLEMENTAL BRIEF- 2
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

arguments when advanced by Maine. Maine's residency requirement is the equivalent of the Residency Requirements in that they prohibit nonresidents from having an ownership interest in a licensed cannabis business.[4] Brinkmeyer asks this Court to apply the same rationale as the First Circuit, reject the LCB's arguments, and find that the Residency Requirements violate the dormant Commerce Clause.

### A. The CSA does not affect the applicability of the dormant Commerce Clause to licensed cannabis markets.

The First Circuit rejected the LCB's two primary arguments regarding the applicability of the dormant Commerce Clause to the Residency Requirements. *See* Dkt. 39 at 18. First, the LCB argues that Congress affirmatively exercised its commerce powers by adopting the CSA, which allegedly "leav[es] no room for a dormant Commerce Clause violation." *Id.* This argument essentially relies upon two propositions: the dormant Commerce Clause is inapplicable where there is no interstate market, and there is no interstate market for cannabis because of the CSA. *Id.* The First Circuit, relying on Supreme Court precedent, rejected this argument and held that an interstate market for cannabis exists. Second, the LCB argues that the "dormant Commerce Clause does not protect interstate markets that Congress deemed illegal." *Id.* The First Circuit also rejected that argument and found nothing in the CSA that precluded applying the dormant Commerce Clause to state laws that allow licensed commerce in a federally illegal good. Brinkmeyer asks this Court to follow suit.

#### 1. The *Northeast Patients* Court rejected the LCB's argument that there is no interstate market for cannabis.

The LCB argues that applying the dormant Commerce Clause requires an interstate market. Dkt. 39 at 19. Brinkmeyer seeks to participate in the interstate market for investing in

---

[4] While Maine's statute was specific to its medical cannabis market, that distinction makes no difference because Washington has combined its medical and recreational cannabis markets. Dkt. 44 Exs. E–F. Moreover, all but one of the cannabis stores Scott Atkison owns have been endorsed by the state to sell medical cannabis. Atkison Decl. ¶ 2; *see also* Murphy Decl. Ex. B at 16. Todd Brinkmeyer seeks to obtain Atkison's interest in four stores that sell medical and recreational cannabis, so he is seeking to join both Washington's medical and recreational cannabis markets. Dkt. 36 ¶ 6. Because the Residency Requirements are blocking Brinkmeyer from engaging in Washington's medical cannabis market, the rationale from *Northeast Patients* is on all fours with this case.

PETITIONER'S SUPPLEMENTAL BRIEF- 3
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

1  cannabis businesses. Dkt. 43 at 16–17. Instead of addressing whether an interstate market for
2  cannabis investment actually exists, the LCB assumes that "[b]y enacting the CSA, Congress
3  foreclosed a national legal market for marijuana." Dkt. 39 at 20. The LCB asserts that "[b]ecause
4  there is not – and cannot presently be – a lawful national market for marijuana, Washington's
5  Residency Requirements cannot and do not run afoul of the dormant Commerce Clause." *Id.*

6  Maine advanced the same argument. Maine's Appeal Brief at 17–18. Like the LCB,
7  Maine did not offer any evidence regarding the nonexistence of an interstate market for cannabis.
8  *See generally*, *id.*

9  The First Circuit found that an interstate market for cannabis exists despite the CSA. *Ne.*
10 *Patients*, 45 F.4th at 547. The court noted that Maine's argument relied on the assumption that
11 Congress's enactment of the CSA absolutely precludes an interstate market for cannabis. *Id.* The
12 court then found that interstate markets in contraband exist regardless of their illegal nature, and
13 it further noted that the Supreme Court had recognized the existence of an "established, albeit
14 illegal, interstate market" for cannabis. *Id.* (quoting *Gonzales v. Raich*, 545 U.S. 1, 18 (2005)).
15 The court also found that Maine's residency requirement suggested the existence of an interstate
16 market by reasoning that the "prohibition even indicates that the market is so robust that, absent
17 the [residency requirement], it would be likely to attract entrants far and wide." *Id.* The First
18 Circuit also noted that the Rohrabacher-Farr Amendment, which prohibits the Department of
19 Justice from expending funds to prosecute legalized medical cannabis activities, indicates that an
20 interstate cannabis market exists with the knowledge and blessing of Congress. *Ne. Patients*, 45
21 F.4th at 547–48.

22 Brinkmeyer asks this Court to follow the First Circuit and find that an interstate cannabis
23 market exists. As an evidentiary matter, Brinkmeyer has shown there is an interstate market for
24 investments in cannabis businesses, which he is a part of and seeks to expand in Washington, and
25 the LCB has offered no competing evidence. *See* Dkt. 43 at 17 (noting that multi-state cannabis
26 operators already exist in Arizona, Arkansas, California, Colorado, Connecticut, Florida, Illinois,

PETITIONER'S SUPPLEMENTAL BRIEF- 4
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

Kentucky, Maine, Maryland, Massachusetts, Michigan, Missouri, Nevada, New Jersey, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Utah, and Vermont). As a legal matter, the First Circuit held by quoting the Supreme Court that there is an interstate market for cannabis despite the CSA. The First Circuit directly addressed and rejected the LCB's arguments. As such, the dormant Commerce Clause is applicable in this case just as it was applicable in *Northeast Patients*.

### 2. The First Circuit rejected the LCB's argument that the CSA enables states to adopt economic protectionist laws for their licensed cannabis markets.

The LCB argues that Congress made the dormant Commerce Clause inapplicable to cannabis by passing the CSA. Dkt. 39 at 18. The LCB argues that because Congress has not remained "dormant" with respect to interstate cannabis, the dormant Commerce Clause is *per se* inapplicable. *Id.* The LCB cites to *Northeast Bancorp, Inc. v. Board of Governors of the Federal Reserve System*, 472 U.S. 159, 174 (1985), to support its argument that the dormant Commerce Clause is inapplicable where Congress has affirmatively acted. Dkt. 39 at 19.

The First Circuit rejected the LCB's interpretation of *Northeast Bancorp* by ruling that case stands for the proposition that Congress may allow protectionist state regulations by adopting statutory text explicitly authorizing the protectionism. *Ne. Patients*, 45 F.4th at 555 n.1; *see Ne. Bancorp*, 472 U.S. at 168–72; *see also see* Dkt. 43 at 15. Contradicting the LCB, the First Circuit noted that *Northeast Bancorp* does not hold that a statute may implicitly allow otherwise unconstitutional conduct by regulating a similar area. *Ne. Patients*, 45 F.4th at 555 n.1. Therefore, *Northeast Bancorp* is inapplicable to this matter because the CSA does not explicitly authorize any state protectionism. *Id.*

It appears the LCB may have been making a more general argument that the CSA, by its mere existence, precludes application of the dormant Commerce Clause. Dkt. 39 at 19–20 (citing *Pic-A-State PA, Inc. v. Pennsylvania*, 42 F.3d 175, 179 (3d. Cir. 1994)). The LCB asserts that Congress prohibiting a type of commercial activity precludes any Commerce Clause protections for that activity. Dkt. 39 at 19–20.

PETITIONER'S SUPPLEMENTAL BRIEF- 5
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

Maine made similar arguments. Maine Appeal Brief at 8–11, 21–22. Interveners in support of Maine's position also cited to *Pic-A-State* for the same proposition as the LCB. Murphy Decl. Ex. C at 11. The First Circuit interpreted this argument to be whether the "negative implication of the Commerce Clause is a nullity with respect to [cannabis] simply because Congress affirmatively exercised its Commerce Clause power to regulate that very market." *Ne. Patients*, 45 F.4th at 548–49.

In rejecting these arguments, the First Circuit described the core question before it was not whether the CSA preempts the residency requirement, but "whether the residency requirement cannot stand because it transgresses the dormant Commerce Clause due to the substantial burden that this requirement (in light of its patently protectionist nature) imposes on interstate commerce." *Id.* at 548. The court noted that "the negative implication of the commerce power may pose an independent bar to a state regulation of an interstate commercial market even when Congress chooses to exercise its affirmative commerce power with respect to that same market without also preempting that state regulation." *Id.*

Accounting for the CSA and the Rohrabacher-Farr Amendment, the court held there was no preemption because Maine was "attempting to regulate an interstate market in a way that no federal statute on its own purports to prohibit." *Id.* (citing *Tenn. Wine*, 139 S. Ct. at 2465 ("[d]ormant Commerce Clause restrictions apply only when Congress has not exercised its Commerce Clause power to regulate the matter at issue") (emphasis in original)). As such, the court found that the salient issue was whether the CSA displaced the applicability of the dormant Commerce Clause, and it found it did not. *Id.* at 549–50. In doing so, the First Circuit treated cannabis the exact same as eggs. *Id*. at 549 ("[T]his case is no different from *United Egg Producers* when it comes to the question of whether the fact that Congress has regulated an interstate market to some extent in and of itself renders the dormant Commerce Clause inoperative as to any state regulation of that same market.")

The First Circuit noted that, since the CSA's passage, Congress has continued to legislate

PETITIONER'S SUPPLEMENTAL BRIEF- 6
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

1  in ways that contemplate the existence of an interstate market in cannabis free from federal
2  criminal enforcement and that market may be subject to state regulation. *Id*. at 549–50. After
3  looking to Congress as its guide, the court could not "conclude solely based on Congress's
4  affirmative exercise of its commerce power with respect to an interstate market either that there
5  is nothing left of that market for the dormant Commerce Clause to protect from state
6  protectionism or that there is no prospect of states attempting to substantially burden that market
7  through protectionist regulation." Thus, the court held the CSA did not preclude the court from
8  applying the dormant Commerce Clause to Maine's residency requirement. *Id.* at 550.

9      The First Circuit distinguished *Pic-A-State* by noting that "the Third Circuit rested its
10  holding on the more fine-grained determination that the state statute that was claimed to violate
11  federal law was <u>consistent</u> with the federal criminal proscription, such that state law, regardless
12  of its possibly protectionist nature, did not offend the purpose of the Commerce Clause." *Id.*
13  (cleaned up; emphasis in original). The court held that *Pic-A-State* does not support the
14  proposition that federal statutes encompassing a field *per se* precludes applying the Commerce
15  Clause to that field. *Id.* Rather, the court held that *Pic-A-State* stands for the proposition that state
16  laws that would otherwise violate the Commerce Clause, but mirror federal laws, are authorized
17  by the parallel federal law. *Id.*

18      Brinkmeyer asks this court to follow the First Circuit's reasoning. As the First Circuit
19  noted, nothing in the CSA shows Congress implicitly or explicitly authorized states to adopt
20  economically discriminatory laws about cannabis. *Ne. Patients*, 45 F.4th at 556 ("we see no basis
21  for concluding in this case that Congress intended to permit state discrimination against out-of-
22  staters in the interstate market in medical marijuana"). Moreover, the Rohrabacher-Farr
23  Amendment is Congress's last word on cannabis, and while it does not repeal the CSA, "the
24  Rohrabacher-Farr Amendment does plainly reflect an effort by Congress to free the market in
25  medical [cannabis] from being subject to the full degree of federal criminal enforcement to
26  which that market otherwise would be subject. And yet, the Rohrabacher-Farr Amendment does

PETITIONER'S SUPPLEMENTAL BRIEF- 7
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

so without in any way indicating that Congress wishes for that interstate commercial market to be the unusual one that states may substantially burden through protectionist measures." *Id*. at 555. Therefore, the CSA does not protect the Residency Requirements because the CSA does not authorize the LCB to discriminate against nonresidents.

### B. The ordinary dormant Commerce Clause test applies to licensed cannabis markets.

The *Northeast Patients'* dissent criticized the majority for applying the traditional dormant Commerce Clause test to Maine's residency requirement. *Id.* at 559. Like the LCB, the dissent argued that applying the standard dormant Commerce Clause test would be incongruous with the fundamental principles animating the dormant Commerce Clause. *Id.* at 558; *see also* Dkt. 39 at 25. Like the LCB, the dissent reasoned that the dormant Commerce Clause's presumption for protecting a national market for competition is reliant upon the underlying legality of the market. *Ne. Patients*, 45 F.4th at 559; *see also* Dkt. 39 at 26.

The dissent and LCB are wrong. This case is about an interstate market for investments in licensed businesses, and this market legally exists. Moreover, as the First Circuit noted, the dissent argues for a fundamental change in the dormant Commerce Clause precedent by arguing that federal illegality creates an implied Congressional blessing of protectionist state laws.[5] *Ne. Patients*, 45 F.4th at 556–57. The First Circuit observed there was an interstate market in which Maine was trying to maintain a local advantage. *Id.* at 556. The court reasoned that Congress anticipated the existence of the interstate cannabis market and that states would attempt to regulate it. *Id.* The First Circuit noted that prior Supreme Court precedent held that where Congress made an activity illegal it implicitly allowed for state regulations that <u>mirror</u> the federal regulation unless Congress indicated otherwise. *Id.* at 557 (citing *California v. Zook*, 336 U.S. 725 (1949)). Therefore, the court found no reason to abandon longstanding precedent that Congress must provide an explicit indication of its intent to allow economic protectionism. *Id.*

---

[5] Adopting this position would incentivize states to create licensed commercial markets for federally illegal goods and then limit participation in those markets solely to their residents. *See Ne. Patients*, 45 F.4th at 556.

PETITIONER'S SUPPLEMENTAL BRIEF- 8
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

It makes no sense that by illegalizing cannabis through the CSA, Congress simultaneously intended to allow states to create markets for cannabis and limit the economic opportunities for those markets solely to their residents. *See id*. at 556 ("Thus, we see no basis for concluding in this case that Congress intended to permit state discrimination against out-of-staters in the interstate market in medical marijuana, unless there is a presumption that Congress means to consent to state protectionism whenever it exercises its commerce power to make participation in an interstate market unlawful."). Moreover, the Residency Requirements do not mirror the CSA because they allow Washington residents to sell cannabis. Because the Residency Requirements conflict with the CSA, the CSA cannot immunize them from being unconstitutional. *See id*. There is no federal law authorizing the Residency Requirements, so they necessarily violate the dormant Commerce Clause

C. **Equitable principles favor striking down the Residency Requirements.**

The First Circuit considered and rejected an argument that federal courts should not exercise their equitable powers to strike residency requirements in cannabis due to the federal illegality of cannabis. *Ne. Patients*, 45 F.4th at 557. The dissent noted one District Court determined that it would refrain from using its equitable powers to strike down a residency requirement in cannabis because it would allegedly facilitate federally illegal conduct. *Id.* at 560, n.2 (dissent) (citing *Original Investments, LLC v. Oklahoma*, 542 F. Supp. 3d 1230,1233 (W.D. Okla. 2021); *see also* Dkt. 34 at 20–21.

The First Circuit rejected the dissent's argument. *Ne. Patients*, 45 F.4th at 557–58. The court reasoned that allowing unconstitutional laws to remain in effect would itself be inequitable. *Id.*; *see also id.* at 553 ("The destructive consequences of allowing states to exercise an unfettered power to discriminate against each other's industry have been of great concern since the Founding. Indeed, '[r]emoving state trade barriers was a principal reason for the adoption of the Constitution,' *Tenn. Wine*, 139 S. Ct. at 2460, and not solely because their removal would benefit consumers."). It further reasoned that, because it had concluded the dormant Commerce

PETITIONER'S SUPPLEMENTAL BRIEF- 9
USDC No. 3:20-cv-05661-BHS

Miller Nash LLP
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

Clause applied, there was no reason for the court to refrain from issuing a judgment regarding whether the residency requirement violated the dormant Commerce Clause. *Id.* Together, this led the First Circuit to conclude that it should exercise its equitable powers to permanently enjoin enforcement of Maine's residency requirement. *Id.*

Brinkmeyer asks this Court to follow the First Circuit's reasoning because Brinkmeyer does not request that this Court facilitate illicit conduct—he merely asks the LCB to assess whether he meets its high standards for licensure without regard to his residency. But even if he did, then the blatant economic discrimination written into the face of the Residency Requirements constitute constitutional violations that this Court should still remedy.

## V. CONCLUSION

Residency requirements in commerce have always been unconstitutional, and the First Circuit is the latest in a long chain of courts to invalidate residency requirements. Brinkmeyer asks this Court to continue that trend and not join a minority of one. There is no meaningful distinction between this case and *Northeast Patients*. The LCB and Maine made the same arguments and relied on the same precedent and statutes. The First Circuit reached the same answer as every District Court that considered the question: residency requirements in cannabis violate the dormant Commerce Clause. Brinkmeyer asks this court to follow the reasoning of the First Circuit and hold the facially discriminatory Residency Requirements are unconstitutional.

DATED this 21st day of October, 2022.

MILLER NASH, LLP

*/s/ Andy Murphy*
Andy Murphy, WSBA No. 46664
*/s/Daniel J. Oates*
Daniel J. Oates, WSBA No. 39334
Email: *Andy.Murphy@millernash.com*
   *Dan.Oates@millernash.com*
*Attorneys for Petitioner*

PETITIONER'S SUPPLEMENTAL BRIEF- 10
USDC No. 3:20-cv-05661-BHS

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599

# CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

DATED this 21st day of October, 2022.

*s/ Andy Murphy*
Andy Murphy

4888-1090-5401.7

CERTIFICATE OF SERVICE - 1
USDC No. 3:20-cv-05661-BHS

**Miller Nash LLP**
Pier 70 | 2801 Alaskan Way | Ste 300
Seattle, WA 98121-1128
206.624.8300 | Fax: 206.340.9599